Eric H. Gibbs (SBN # 178658)
Dylan Hughes (SBN # 209113)
Scott Grzenczyk (SBN # 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:   (415) 981-4800
Facsimile:    (415) 981-4846
ehg@girardgibbs.com

*Liaison Counsel and Counsel*
*for Individual and Representative*
*Plaintiffs Kamneel Maharaj, et al.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | Case No. 2:13-ml-02424-GW-FFM<br><br>**JOINT STATUS REPORT REGARDING DISCOVERY ISSUES** |

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

On July 23, 2013, Liaison Counsel reported that the parties intended to present their agreements and disagreements regarding confirmatory discovery at the August 15 status conference.  Liaison Counsel also reported that he would submit a summary report regarding the parties' agreements and disagreement in advance of the status conference. Below is a summary of the (I) status of discovery, (II) the areas of agreement among Defendants, Settling Plaintiffs, and Liaison Counsel, (III) the areas of disagreement among those parties, and (IV) additional issues that Non-Settling Plaintiffs wish to present to the Court at this time.  Based in part on a report that Liaison Counsel is preparing, Non-Settling Plaintiffs are in the process of determining what additional disagreements they may have with Defendants, Settling Plaintiffs, and Liaison Counsel regarding confirmatory discovery, if any.  To the extent those issues are not addressed at this Thursday's conference, Non-Settling Plaintiffs will raise them with the Court as soon as possible.  Otherwise, Liaison Counsel and the Settling Parties jointly submit the following Status Report.

## I.   Discovery Status

On June 14, 2013 Defendants served responses to Settling and Non-Settling Plaintiffs' 40 document requests.

Since Defendants served their responses, Liaison Counsel, Settling Plaintiffs, and Defendants have continued to meet and confer, seeking to resolve as many disagreements as possible and to identify their remaining areas of disagreement.  Throughout this process Liaison Counsel forwarded meet and confer letters to the Non-Settling Plaintiffs, and convened four conference calls to discuss the status of confirmatory discovery and related issues.

Defendants' document productions are ongoing; however, Hyundai Motor America ("HMA"), Hyundai Motor Company ("HKMC"), and Kia Motors America, Inc. ("KMA") have completed the productions for their designated interviewees.  Because Defendants have agreed to produce documents they produced to the government, subject to certain limitations, they are not able to provide a date by which their productions will

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

be complete.  As Defendants produce documents, Liaison Counsel divides the documents and assigns them to a designated group of firms who are reviewing the documents.  To understand the scope of the current interviewees' knowledge, Liaison Counsel sought and Defendants provided written descriptions of why Defendants selected the scheduled interviewees.  Liaison counsel is in the process of assessing whether additional interviews might be requested.

Liaison Counsel believes that these efforts have significantly advanced the confirmatory discovery process.  Nevertheless, discrete issues remain that the parties have not been able to resolve and need to be put before the Court.

**II.    Issues on Which Defendants, Settling Plaintiffs and Liaison Counsel Agree**

**A.    HKMC Production**

Scope: Defendants, Settling Plaintiffs, and Liaison Counsel have had extensive discussions concerning the scope of HKMC's document production.  While HKMC won't agree to produce documents in response to plaintiffs' requests, it agrees to produce all of the documents that it produced to the EPA in response to the EPA's document requests, which include ESI searches for over 50 custodians, including the four interviewees that HKMC agreed to produce in this litigation.  HKMC's EPA production also includes targeted searches conducted in response to the EPA's requests.  Liaison Counsel reviewed the EPA's requests and the search terms that HKMC used in responding to those requests, confirmed that HKMC will provide the entirety of what it produced to the EPA (save for narrow exceptions discussed below), addressed what vehicles would be part of HKMC's production, and resolved other issues with respect to HKMC's production.

Liaison Counsel agrees with this approach in principle as the EPA document requests overlap significantly with plaintiffs' requests and the EPA search terms are reasonably comprehensive.  However, as HKMC's document productions are ongoing, the full depth and scope of the production is unknown.  HKMC has also not provided responses to plaintiffs' document requests indicating with specificity what responsive

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

documents are contained within the EPA production.  If Liaison Counsel has concerns after review of the complete production, Liaison Counsel will meet and confer with Defendants and, if necessary, bring any issues before the Court.

ESI Search Protocols: HKMC's document production will result from ESI searches it performed using the EPA search terms, not plaintiffs' proposed search terms.  Having reviewed the search terms that HKMC used to respond to the EPA requests, Liaison Counsel agrees that relying on the EPA search terms for the purposes of HKMC's ESI searches is appropriate.

**B.     HMA and KMA ESI Search Protocols**

Defendants, Settling Plaintiffs, and Liaison Counsel agree to conduct ESI searches for HMA's and KMA's respective interviewees using search terms collectively proposed by Settling and Non-Settling Plaintiffs.  As noted below, they have disagreements regarding the scope of the documents produced as a result of the ESI searches.

**C.     Vehicles Outside November 2, 2012 Announcement**

HKMC's Production: Defendants, Settling Plaintiffs, and Liaison Counsel agree that HKMC's corresponding production will include documents related to all Hyundai and Kia vehicles identified in Hyundai's and Kia's March 1, 2013 letters, as modified on May 1, 2013, to the Environmental Protection Agency.  These include all vehicles in the model years 2007-2013 test groups.  Thus, the productions plaintiffs receive from HKMC will include documents related to the fuel economy testing for vehicles outside of the November 2, 2012 announcement.

HMA's and KMA's Production: Given Defendants' representations that HKMC, and not HMA or KMA, performed all of the fuel economy testing for all Hyundai and Kia vehicles, Defendants, Settling Plaintiffs, and Liaison Counsel agree that HMA and KMA's productions will be limited to the vehicles in the November 2, 2012 announcement.

---

3

### D.     Fuel Economy Testing

In response to plaintiffs' requests seeking fuel economy testing and procedural documents, HMA and KMA state that they did not perform the fuel economy testing for Hyundai and Kia vehicles.  Based on these representations, Defendants, Settling Plaintiffs, and Liaison Counsel agree that HMA and KMA would only produce documents related to fuel economy testing to the extent those documents were captured by the ESI searches of their designated interviewees.

### E.     Information Related to Government Investigations

Defendants, Settling Plaintiffs, and Liaison Counsel agree that Defendants will produce all documents produced to and substantive communications with government entities, except confidential business information, confidential financial information, and information they have identified in their responses to plaintiffs' requests for production as information or documents they are not producing.  Defendants will include on a privilege log privileged internal communications regarding government investigations that are withheld from the ESI of their designated interviewees.  Privilege log issues related to the withholding of confidential business and financial information are discussed below.

### F.     Fuel Economy Complaints

Plaintiffs seek documents and communications related to customer complaints regarding the fuel economy of affected vehicles.

Defendants, Settling Plaintiffs, and Liaison Counsel agree that HMA and KMA will produce fuel economy-related complaints from their customer complaint databases, including complete case files, follow-up communications, and case resolution notes. Liaison Counsel does not object to HMA and KMA limiting the production of customer complaints related to fuel economy to those received before November 2, 2012.  But, as discussed below, the parties disagree over the production of complaints related to the reimbursement program.

Defendants, Settling Plaintiffs, and Liaison Counsel also agree that HMA and KMA will produce responsive customer and internal communications related to

4

complaints about fuel economy and the reimbursement program that were gathered during ESI searches for their designated interviewees, which include the heads of their respective customer service departments.

### G.    Voluntary Reimbursement Claim Information

Plaintiffs seek documents related to claims submitted under the voluntary reimbursement program.  Defendants, Settling Plaintiffs, and Liaison Counsel agree that HMA and KMA will provide the number of claims made under the reimbursement program, the percentage of owners and lessees participating in the program, the number of debit cards issued, the value of the distributed debit cards, and the amount spent from distributed debit cards.  HMA and KMA will also produce forms and templates used to calculate payments under the reimbursement program.

### H.    Monroney Stickers

Defendants, Settling Plaintiffs, and Liaison Counsel agree that HMA and KMA will produce exemplar Monroney Stickers for the vehicles included in the November 2, 2012 announcement.

### I.    Vehicle Ownership and Residual Value

Plaintiffs seek documents related to (1) average vehicle ownership of the affected vehicles, and (2) the residual value of the affected vehicles.  Defendants, Settling Plaintiffs, and Liaison Counsel agree that in addition to producing responsive documents generated as a result of the ESI searches of HMA's and KMA's respective designated interviewees, HMA and KMA will identify the departments or groups contacted as part of targeted searches to produce responsive documents regarding vehicle ownership and residual value, if any.

### J.    Documents Supporting Lump-Sum and Reimbursement Calculations

Based on Liaison Counsel's meet and confer efforts and the parties' discussions with the Court at previous status conferences, Liaison Counsel understands that the gas price and average yearly mileage information used to calculate payments under the reimbursement program and settlement were derived from the Monroney Stickers for the

affected vehicles.  The Settling Parties came to an agreement regarding the overall size of the settlement, and adjusted the remaining variable – vehicle ownership length – to produce individual vehicle payments that would aggregate to the agreed-upon settlement size.

Plaintiffs sought information used to determine the variables – gas prices and ownership periods – that are part of the calculations of the payments under the reimbursement program and settlement.  Given the above representations, Liaison Counsel does not believe that additional information is necessary to understand the variables used in calculating class members' payments under the reimbursement program and the lump-sum payment under the settlement.

### K.      Current Interviewees' Background Information and Certifications

Liaison Counsel requested that Defendants provide additional information regarding their proposed interviewees to assist in plaintiffs' evaluation of the scope of the proposed interviewees' knowledge and their preparations for the confirmatory discovery interviews.  Defendants have produced short, written descriptions of why they believe the interviewees currently offered are appropriate for confirmatory discovery.

After the Kia interviews in early June, the parties agreed that Kia would provide certifications from its interviewees that their statements were given under oath, which it has done.

### III.    **Disagreements Between Defendants, Settling Plaintiffs, and Liaison Counsel**

### A.      **Reimbursement Program and Settlement Information**

Plaintiffs sought the production of information related to Hyundai and Kia's development of the reimbursement program and settlement, and the companies' valuations of the expected costs of each.  HMA and KMA stated that they will not produce these documents.

Liaison Counsel's Position: The value of the proposed settlement is largely dependent on whether it provides benefits to class members beyond what the reimbursement program already offers.  *See In re Dry Max Pampers Litigation*, -- F. 3d --

, 2013 WL 3957060, at *4-5 (6th Cir. Aug. 2, 2013) (It is the settling parties' burden to produce information to demonstrate the value of refund program to consumers.).

Defendants have an immense amount of data and other information about their customers, which they would have used when constructing the reimbursement program, in the first instance, and later the proposed settlement. The information plaintiffs seek would provide insight into, among other things, the analyses regarding the development of the reimbursement program and settlement, alternatives to the reimbursement program and settlement that Defendants considered, and the anticipated percentage of participation, money that would be paid out, and money that would revert to Hyundai and Kia under the reimbursement program and the settlement. Having access to this information will enable plaintiffs and the Court to compare the reimbursement program and the settlement and evaluate the extent to which the settlement will maximize the benefits to the class. For example, projections that consumer participation in the reimbursement program will decline significantly over time would weigh in favor of the proposed settlement's lump-sum payments. Conversely, high consumer participation in the reimbursement program would undermine the value of the proposed settlement. Plaintiffs and the Court need to consider this type of information when evaluating the proposed settlement. The information plaintiffs' seek is necessary for confirmation of the settlement.

Settling Plaintiffs' Position: Settling Plaintiffs believe that they will be able to adequately provide valuation information to the Court without the information that may result from the significant burden that it appears these requests will place on Defendants. The Court must determine whether the proposed settlement is fair, adequate, and reasonable under the circumstances. Settling Plaintiffs believe that they will be able to present sufficient information to the Court to make this determination absent the additional materials that Non-Settling Plaintiffs request in this regard.

In addition, Settling Plaintiffs do not believe that the information requested will provide the insight into consumer sentiment that Non-Settling Plaintiffs presume. Simply

1   put, whether consumers would stay in the voluntary program for a long term—and

2   Defendants' projections in this regard—does not shed light on whether consumers would

3   prefer a lump sum payment instead of pay-as-you-go, if it were made available to them.

4   **B.    Information About Reversions**

5       Under both the reimbursement program and settlement, owners of affected vehicles

6   will receive compensation through debit cards.  If money placed onto these debit cards is

7   not spent within a certain period of time those funds will revert back to Hyundai and Kia.

8   Plaintiffs requested that Defendants produce documents related to the reversions, in

9   particular documents showing the amounts placed onto debit cards as payments to class

10  members that Hyundai and Kia project will revert back to the companies.  Defendants

11  have refused to produce this information.

12      Liaison Counsel believes that this information is necessary to evaluate the

13  projected benefits that class members will receive under the reimbursement program and

14  settlement.  If Defendants project that a significant amount of the compensation paid to

15  consumers through the debit cards will revert back to Hyundai and Kia, then class

16  members lose a significant portion of the benefits that the lump-sum payment might

17  provide.  Defendants have stated that a principal benefit of the settlement is that class

18  members can receive the lump sum payments now, as opposed to the yearly payments

19  provided by the reimbursement program.  This benefit, however, becomes illusory if the

20  amounts placed onto debit cards are likely to revert back to Hyundai and Kia.

21  **C.    Privilege Log**

22      HKMC intends to provide a privilege log for the documents captured by the ESI

23  searches of its four designated interviewees that are responsive to the EPA's requests, but

24  withheld from production to the EPA on the basis of attorney client privilege, attorney

25  work product, or other applicable privilege.  Liaison Counsel believes that all documents

26  withheld from the EPA (and thus plaintiffs) on the basis of privilege should be logged on

27  a privilege log, regardless of whether those documents came from the ESI searches of the

28  four interviewees.  For example, documents captured by the ESI searches of the

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

remaining 50 custodians that were withheld from the EPA should also be included on a privilege log.

Defendants also intend to withhold from their production to plaintiffs confidential financial information and confidential business information.  Defendants represented that the withheld information relates to the overall finances of the company and corporate bylaws.  Liaison Counsel believes Defendants should include withheld documents on a privilege log so plaintiffs can evaluate the basis for the withholding.

### D.     November 2, 2012 Privilege Log Limitation

Defendants say that their privilege logs will not include documents dated on or after November 2, 2012.  Defendants describe these documents as post-litigation privileged communications that they will therefore not produce.

However, not all of plaintiffs' requests go to information that would be privileged. Plaintiffs' requests seek the following non-privileged documents that would have been created after November 2, 2012: (1) customer complaints regarding the reimbursement program, (2) communications with government entities and other third parties about the MPG overstatements and reimbursement program, and (3) internal evaluations of, and communications with HKMC, regarding the reimbursement program. Liaison Counsel believes that Defendants should include any of the above documents withheld on the basis of privilege on a privilege log regardless of date.  As HMA and KMA are conducting ESI searches for only eight interviewees total at this point, the burden to log withheld documents will be minimal.

### E.     Operative Contract for Debit Card Providers

Defendants refuse to produce the operative contract for the gift or debit card providers administering the reimbursement program and settlement.

Liaison Counsel's Position: According to the term sheet provided by the Settling Parties, class members will receive payments on debit cards.  It is important for plaintiffs to fully understand the details of the debit cards, including, for example, whether there are any fees associated with the cards, how easy the cards are to obtain and activate,

whether class members can withdraw all of the funds at once or otherwise transfer them to their personal bank accounts, and under what circumstances money left on the cards will revert back to Hyundai and Kia.  This information will assist plaintiffs in determining whether the mechanics of the proposed settlement are the most efficient way to administer the funds going back to the class, and is particularly important in light of Defendants' claims that one of the main benefits provided by the settlement is that it gives class members a convenient way to receive compensation.

Additionally, the parties have entered into a Rule 408 Confidentiality Agreement that recipients of documents produced during the confirmatory discovery process will protect those documents from unauthorized use, disclosure, copying, dissemination, or distribution.  All Non-Settling Plaintiffs that have access to the documents produced during confirmatory discovery have signed the agreement.  Thus, concerns over the sensitive nature of certain documents are not valid.

<u>Settling Plaintiffs' Position:</u> Settling Plaintiffs believe Non-Settling Plaintiffs will be able to obtain the information that they genuinely need in this regard without the production of sensitive business documents that they seek. Settling Plaintiffs believe that it will be sufficient for Settling Parties to provide a concise description of the debit card program, including: any applicable fees for use; how they are obtained and activated, and whether and under what circumstances there is any reversion to defendants of balances on such cards. This information can be provided within or as an attachment to the settlement agreement. Settling Parties believe that they will be able, through the settlement process, to ensure that whatever processes are agreed for settlement administration, such processes will be fully disclosed to the Court, and fair, adequate and reasonable under the circumstances.

## F.    Reimbursement Program Related Complaints

HMA and KMA agreed to produce customer communications and internal communications about the reimbursement program to the extent those communications are present in the ESI of their respective interviewees, but HMA and KMA have not

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

agreed to produce consumer complaints related to the reimbursement program from their respective customer communication databases.

Liaison Counsel's Position: Consumer reaction to the reimbursement program will inform plaintiffs and the Court about the value of the settlement's lump-sum payments to members of the class.  To the extent these documents exist in databases, the burden of producing them will not be overwhelming and the documents will be subject to the Rule 408 Confidentiality Agreement.

Settling Plaintiffs' Position: Settling Plaintiffs do not believe that this information will be necessary for the Settling Parties to provide sufficient information to the Court in support of their contention that the proposed settlement is fair, adequate and reasonable under the circumstances.

## G.   State-By-State Sales Data

HMA and KMA produced national sales data (which was included in the settlement terms), but not state-by-state sales data.  Liaison Counsel believes that this information is necessary to evaluate the impact the settlement has on states with differing consumer protection statutes and available remedies.  It will also inform the potential value of plaintiffs' claims as purchasers in some states may have greater potential claims than purchasers in other states.

Under the Class Action Fairness Act of 2005, Defendants must provide each state attorney general notice of the proposed settlement and related documents, including the number of class members residing in the state and the estimated proportionate share of that state's claims to the entire settlement.  *See* 28 U.S.C. § 1715(b)(7).  As Defendants will already be producing this information to government officials, there is no burden to produce the information to plaintiffs in this litigation so they can more fully evaluate the proposed settlement.

## H.   Decreased Value of Affected Vehicles

Plaintiffs requested information related to the *decreased value* of the affected vehicles, including resale and/or trade in value.  In response, Defendants stated that they

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

will produce market research regarding the *residual value* of the affected vehicles, but have not agreed to produce information related to the *decreased value* of the affected vehicles.

Defendants responses to plaintiffs' request has been framed in such a way that it appears to exclude documents regarding the decrease in value of the affected vehicles. One theory of damages put forward by numerous plaintiffs in this action is that Hyundai and Kia are liable for the decrease in value of affected vehicles caused by the MPG overstatements.  The requested information is therefore relevant to evaluating the potential strengths of plaintiffs' claims.

## I.    Draft Settlement Agreements

Liaison Counsel's Position: Non-Settling Plaintiffs also seek copies of drafts of the settlement agreement exchanged to date.  Defendants provided the term sheet, but, as of the date of their response, Defendants say the Settling Parties had not exchanged a draft settlement agreement.  Defendants otherwise do not agree to produce copies of drafts of the settlement agreement.   Among other things, Liaison Counsel believes that reviewing the proposed settlement in its entirety prior to a preliminary approval motion will allow Non-Settling Plaintiffs, in an efficient fashion, to identify and raise concerns (if any) with the proposed settlement that the Settling Parties could consider prior to submitting the settlement for preliminary approval.

Settling Plaintiffs' Position: Settling Plaintiffs consider draft settlement agreements to be work product the disclosure of which is not necessary to determine whether the proposed settlement is fair, adequate and reasonable under the circumstances.  Draft settlement agreements would *not* be subject to discovery in a Rule 23 fairness hearing as they are plainly and unquestionably work product.  Disclosure of this work product serves no legitimate purpose and would place unnecessary burden and disclosure requirements on Settling Parties. Non-Settling Plaintiffs are entitled to, and will receive, a copy of the final settlement agreement.

## IV.   Non-Settling Plaintiffs' Additional Issues and Objections

### A.   Production of Search Terms Only to Settling Plaintiffs and Liaison Counsel

Defendants produced the search terms used by HKMC in responding to the EPA's document requests only to Settling Plaintiffs and Liaison Counsel.  The production of the search terms to Liaison Counsel was subject to the understandings that (1) Liaison Counsel would agree not to distribute the search terms to other Non-Settling Plaintiffs, and (2) Liaison Counsel would accept them without prejudice to Non-Settling Plaintiffs' ability to petition the Court for access to those documents.

HKMC's production in this litigation is based on the documents it has and is producing to the EPA using these search terms.  Without knowing what the search terms were, Non-Settling Plaintiffs are unable to rely on HKMC's production to the EPA to satisfy HKMC's obligations in this litigation.  Although Liaison Counsel has reviewed the search terms and concluded that they are sufficient, Liaison Counsel's decisions do not bind the remaining Non-Settling Plaintiffs.  Non-Settling Plaintiffs need to be able to review the search terms themselves, as Liaison Counsel has done, to determine whether they agree that relying on HKMC's EPA production is appropriate.

Non-Settling Plaintiffs therefore request that the Court order Defendants to produce the EPA search terms to all plaintiffs that have signed the Rule 408 Confidentiality Agreement.  As noted above, the Confidentiality Agreement protects the information that Defendants produce in this litigation from unauthorized disclosure.

### B.   Production of Babcock Transcript Only to Settling Plaintiffs and Liaison Counsel

During its independent investigation and preliminary review of Defendants' document productions, Liaison Counsel identified Robert Babcock and asked Defendants to make Mr. Babcock available for an interview.

Mr. Babcock is the Director of Certification and Compliance Affairs for the Hyundai-Kia America Technical Center ("HATCI").  HATCI is the design, technology,

13

and engineering arm for all North American vehicles produced by HKMC.  Among other things, HATCI is responsible for communicating with EPA and NHTSA, tracking developments in new federal regulations and communicating them back to designers and engineers, and certifying vehicles for emissions and safety standards and addressing issues related to these standards.  It appears to Liaison Counsel that Mr. Babcock is responsible for all certification and compliance related issues for Hyundai and Kia products sold in the United States.  Mr. Babcock also appears to Liaison Counsel to be responsible for all government related activities, communications, and negotiations for certification and compliance issues involving emissions and safety related matters, including certification, defect investigations, and recalls.  Liaison Counsel's review of the documents produced to-date confirms that Mr. Babcock has extensive knowledge of Hyundai and Kia's mileage overstatement, was the primary point of communication with the EPA, and served as liaison between the agency and HKMC.

In response to Plaintiffs' request that Defendants make Mr. Babcock available for an interview, Defendants proposed providing Mr. Babcock's EPA deposition transcript instead of producing him for an interview.  Liaison Counsel requested, and received (along with Settling Plaintiffs), a copy of the EPA deposition transcript to evaluate that proposal.  The transcript was provided subject to the understandings that (1) Liaison Counsel would agree not to distribute the transcript to other non-settling plaintiffs, and (2) Liaison Counsel would accept them without prejudice to Non-Settling Plaintiffs' ability to petition the Court for access to those documents. If plaintiffs accept Defendants' proposal, Mr. Babcock's EPA deposition, including exhibits, will be produced to plaintiffs' counsel.

Defendants and Liaison Counsel continue to meet and confer regarding the production of Mr. Babcock and other individuals for confirmatory discovery interviews. However, as noted above, Liaison Counsel's decision on this issue will not bind the remaining Non-Settling Plaintiffs.  If Mr. Babcock has relevant information, Non-Settling Plaintiffs must be allowed to determine for themselves whether his EPA deposition

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

transcript can take the place of a confirmatory discovery interview.  Without having access to the transcript, Non-Settling Plaintiffs are unable to make this determination.

Non-Settling Plaintiffs therefore request that the Court order Defendants to produce the Mr. Babcock's EPA deposition transcript to all plaintiffs that have signed the Rule 408 Confidentiality Agreement.  As noted above, the Confidentiality Agreements protects the information that Defendants produce in this litigation from unauthorized disclosure.

### C.       Production of Resumes Only to Settling Plaintiffs, Liaison Counsel, and Counsel Participating in the Confirmatory Discovery Interviews

The resumes of HMA's and HKMC's designated interviewees only to Settling Plaintiffs, Liaison Counsel, and counsel designated to participate in the confirmatory discovery interviews.  The production of the resumes to Liaison Counsel and counsel participating in the confirmatory discovery interviews was subject to the understandings that (1) Liaison Counsel would agree not to distribute the resumes to other Non-Settling Plaintiffs, and (2) Liaison Counsel would accept them without prejudice to Non-Settling Plaintiffs' ability to petition the Court for access to those documents.

One of the issues that has arisen during the confirmatory discovery process is whether Defendants should produce additional individuals for confirmatory discovery interviews, and if so, whom.  In order to participate in this process, Non-Settling Plaintiffs need access to the available information regarding the current interviewees in order to evaluate the scope and depth of their knowledge.  Additionally, many Non-Settling Plaintiffs intend to participate in the confirmatory discovery interviews via a secure chat room, as was done with the previous Kia interviews.  Being able to review the resumes prior to the interviews will allow them to better formulate areas of inquiry.

Non-Settling Plaintiffs therefore request that the Court order Defendants to produce the resumes to all plaintiffs that have signed the Rule 408 Confidentiality Agreement.  As noted above, the Confidentiality Agreements protects the information that Defendants produce in this litigation from unauthorized disclosure.

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

1

2 DATED:  August 13, 2013                   Respectfully submitted,

3

4                                           By:   /s/ Eric H. Gibbs

5                                           Eric H. Gibbs
6                                           Dylan Hughes
                                            Scott Grzenczyk
7                                           **GIRARD GIBBS LLP**
8                                           601 California Street, 14th Floor
                                            San Francisco, California 94104
9                                           Telephone:  (415) 981-4800
                                            Facsimile:  (415) 981-4846
10                                          ehg@girardgibbs.com
11
12                                          *Liaison Counsel and Counsel for Individual and*
13                                          *Representative Plaintiffs Kamneel Maharaj, et al.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS REPORT REGARDING DISCOVERY ISSUES

## <u>CERTIFICATE OF SERVICE</u>

I, Eric H. Gibbs, hereby certify that on August 13, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will serve notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document upon confirmation of e-filing.

/s/ Eric H. Gibbs
Eric H. Gibbs

17