1  Elaine T. Byszewski (SBN 222304)
   *elaine@hbsslaw.com*
2  Hagens Berman Sobol Shapiro LLP
   301 North Lake Avenue, Suite 203
3  Pasadena, CA  91101
   Tel. (213) 330-7150
4  Fax (213) 330-7152

5

6  Robert B. Carey
   *rob@hbsslaw.com*
7  Hagens Berman Sobol Shapiro LLP
   11 West Jefferson Street, Suite 1000
8  Phoenix, AZ  85003
   Tel. (602) 840-5900
9  Fax (602) 840-3012

10

11 Steve W. Berman
   *steve@hbsslaw.com*
12 Hagens Berman Sobol Shapiro LLP
   1918 Eighth Avenue, Suite 3300
13 Seattle, WA 98101
   Tel. (206) 623-7292
14 Fax. (206) 623-0594

15 *Attorneys for Plaintiff Kaylene P. Brady, et al. and*
16 *Nicole Marie Hunter, et al.*

17             UNITED STATES DISTRICT COURT

18             CENTRAL DISTRICT OF CALIFORNIA

19                 WESTERN DIVISION

20 IN RE:  HYUNDAI AND KIA FUEL          MDL Case No. 2:13-ml-2424-GW-FFM
   ECONOMY LITIGATION
21 _____  **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT OF**
22                                       **MOTION FOR CERTIFICATION OF**
                                         **SETTLEMENT CLASS**
23

24                                       Date:  January 23, 2014
                                         Time:  8:30 a.m.
25                                       Judge:  Hon. George Wu; Courtroom:  10

26

27

28

# **TABLE OF CONTENTS**

I.   Class Certification For Settlement Purposes Is Appropriate. ........................... 3

    A.   The proposed Class is ascertainable. ........................................ 4

    B.   The Rule 23(a) factors are met.................................................. 5

        1.   Numerosity............................................................. 5

        2.   Commonality .......................................................... 6

        3.   Typicality .............................................................. 6

        4.   Adequacy ............................................................... 8

    C.   The Rule 23(b)(3) factors are met............................................. 9

        1.   Common issues of fact and law predominate because legal and factual questions will be resolved with proof common to all Plaintiffs and Class members. .......................................... 9

            **a.**   Plaintiffs' CLRA claim ..................................... 10

            **b.**   Plaintiffs' CLRA claim ..................................... 10

            **c.**   Plaintiffs' false-advertising claim ..................... 13

            **d.**   Plaintiffs' breach-of-express warranty claim .................... 14

            **e.**   Plaintiffs' fraud and negligent-representation claim......... 15

            **f.**   Plaintiffs' unjust enrichment claim ..................... 15

        2.   A class action is a superior method of resolving this dispute. .... 16

II.   HAGENS BERMAN AND MCCUNEWRIGHT SHOULD BE APPOINTED SETTLEMENT CLASS COUNSEL. ........................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Honda Motor Co., Inc. v. Super. Ct.,*
199 Cal. App. 4th 1367 (Cal. App. 2d Dist. 2011) ............................................ 12

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591 (1997) ...................................................................... 3, 9, 17

*Ballard v. Equifax Check Servs., Inc.,*
186 F.R.D. 589 (E.D. Cal. 1999) ................................................................ 17

*Beck-Ellman v. Kaz USA, Inc.,*
283 F.R.D. 558 (S.D. Cal. 2012) ................................................................ 16

*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639 (2008) .......................................................................... 20

*Cartwright v. Viking Indus., Inc.,*
No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ...................................................................................... 16

*Chamberlan v. Ford Motor Co.,*
402 F.3d 952 (9th Cir. 2005) ............................................................. 12, 15

*Costelo v. Chertoff,*
258 F.R.D. 600 (C.D. Cal. 2009) ............................................................... 7

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) ................................................................ 7, 8

*Evans v. IAC/Interactive Corp.,*
244 F.R.D. 568 (C.D. Cal. 2007) ............................................................... 4

*Galvan v. KDI Distribution [sic] Inc.,*
No. SACV 08-0999-JVS, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ................................................................................ 4, 7, 9, 17

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ....................................................... 3, 5, 7. 8. 10, 17

MDL Case No.: 2:13-ml-2424-GW-FFM

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir.
    2012) ...................................................................................................................18

*In re Northrop Grumman Corp. ERISA Litig.*,
    No. CV 06-06213 MMM, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011)...........4

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)........................................................................10, 12, 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ...............................................................................20

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ................................................................................9

*Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell
    Banker Real Estate Corp.*,
    281 F.R.D. 422 (C.D. Cal. 2012)........................................................................15

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012)......................................................8, 10, 12, 18

*Keilholtz v. Lennox Hearth Prods. Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ...................................................................5, 16

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ..........................................................................20

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................6

*McKenzie v. Fed. Exp. Corp.*,
    275 F.R.D. 290 (C.D. Cal. 2011).........................................................................20

*Menagerie Prods. v. Citysearch*,
    No. CV 08-4263 CAS (FMO), 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009).......
    ........................................................................................................................5, 15

*Nguyen v. Baxter Healthcare Corp.*,
    275 F.R.D. 596 (C.D. Cal. 2011).........................................................................17

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008)...........................................................5, 6, 11, 12

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012)........................................................................18

*Tchoboian v. Parking Concepts, Inc.*,
   No. SACV 09-422 ...............................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).........................................................................................4

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...........................................................7, 10, 16, 18

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir.), *amended*, 273 F.3d 1266 (9th Cir. 2001) .............3, 20

STATUTES

Cal. Bus. & Prof. Code §§ 17500, *et seq.*..........................................................2, 14

Cal. Com. Code § 2313.............................................................................................2

Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) ..........................2

Unfair Business Practices Act (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)..............2

OTHER AUTHORITIES

FED. R. CIV. P. 23........................................................................................1, 3, 4

FED. R. CIV. P. 23(a) .......................................................................................3, 5

FED. R. CIV. P. 23(a)(1)........................................................................................5

FED. R. CIV. P. 23(a)(2)........................................................................................6

FED. R. CIV. P. 23(a)(3)........................................................................................6

FED. R. CIV. P. 23(a)(4)......................................................................................8, 9

FED. R. CIV. P. 23(b) ...........................................................................................3

FED. R. CIV. P. 23(b)(3) ...............................................................................passim

FED. R. CIV. P. 23(g) .........................................................................................20

Pursuant to Federal Rule of Civil Procedure 23(e), the plaintiffs in *Espinosa, et al. v. Hyundai Motor America*, *Hunter, et al. v. Hyundai Motor America, et al.*, and *Brady, et al. v. Hyundai Motor America, et al.* submit this memorandum of points and authorities in support of their Motion for Certification[1] of the following settlement class (the "Settlement Class"): All current and former owners and lessees of a Class Vehicle (defined below) (i) who were the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States.[2]  The Class Vehicles are as follows:

| Hyundai Vehicles | Kia Vehicles |
|---|---|
| 2012 & 2013 Accent | 2011 & 2012 Optima HEV |
| 2012 & 2013 Azera | 2012 & 2013 Rio |
| 2011, 2012 & 2013 Elantra | 2012 & 2013 Sorento (GDI engine) |
| 2013 Elantra Coupe | 2012 & 2013 Soul |
| 2013 Elantra GT | 2012 & 2013 Soul ECO |
| 2012 & 2013 Genesis | 2012 & 2013 Sportage |
| 2013 Santa Fe Sport | |
| 2011 & 2012 Sonata HEV | |
| 2012 & 2013 Tucson | |
| 2012 & 2013 Veloster | |

---

[1] The Plaintiffs' Motion for Preliminary Approval of Class Settlement and all corresponding exhibits are being filed concurrently with this motion.

[2] The following are excluded from the Class: (i) Rental Fleet Owners; (ii) government entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (iii) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (iv) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle.  (*See* Plaintiffs' Mot. for Prelim. Approval of Settlement, Exhibit 1, Settlement Agreement §§ 1.4, 2.1.)

MDL Case No.: 2:13-ml-2424-GW-FFM

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS

1    The Plaintiffs filed complaints against Hyundai Motor America ("HMA") and

2    Kia Motors America, Inc. ("KMA") asserting claims for violation of the Consumer

3    Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*), violation of the Unfair

4    Business Practices Act (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), violation of False

5    Advertising Laws (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), breach of express

6    warranty (Cal. Com. Code § 2313), fraud, negligent misrepresentation, and unjust

7    enrichment.  Each of these violations is subject to proof common to all Plaintiffs and

8    Class members.  Plaintiffs will prove their case with, among other things, evidence

9    that the Monroney numbers were developed at Defendants' Namyang Research &

10   Development facility in South Korea, their accuracy was affected by a process

11   change and, in some cases, process mistakes in Defendants' testing undertaken in

12   May 2010.  These process changes and mistakes impacted all Class Vehicles

13   uniformly within each model year.  Defendants' misstatements regarding the Class

14   Vehicles' fuel efficiency stemmed from the results of the coastdown testing

15   established to create fuel-economy ratings for all Class Vehicles.

16   Defendants announced their Reimbursement Program on or around November

17   2, 2012, intending to compensate past and current Hyundai or Kia vehicle owners for

18   additional fuel costs incurred to date and in the future by basing a reimbursement

19   amount on the customer's vehicle model, odometer reading, and the average gas

20   price in their area, with a fifteen percent "kicker" added for inconvenience.  Under

21   the Reimbursement Program, customers must visit their local Hyundai or Kia dealer

22   every year for their entire vehicle-ownership period so the dealer can verify the

23   odometer reading and arrange for a debit card containing the Reimbursement

24   Program amount to be sent to the customer.  Plaintiffs filed their class-action lawsuit

25   to rectify deficiencies in the Reimbursement Program.  The proposed Settlement

26   does this by providing for lump-sum payments to Class members, allowing for

27   participation by multiple owners, adding a dealer service credit, and implementing a

28

- 2 –

new car rebate voucher.  (*Id.* at §§ 3.1, 3.2.)  It also provides compensation for
claims asserted in the *Espinosa* action, which alleged that Hyundai falsely advertised
that four of its vehicles achieved a fuel-economy rating of 40 MPG.  Further, the
Settlement provides significant non-monetary benefits.  Defendants must work to
increase disclosure regarding the MPG-overstatement issue, and they must request
that Hyundai and Kia dealers apprise customers who are members of the Class of the
availability of settlement relief and distribute flyers to Class members receiving
vehicle service.  (*Id.* at § 6.2.)

## I.      Class Certification For Settlement Purposes Is Appropriate.

This Court should certify the Settlement Class because it satisfies the
requirements of Rule 23 of the Federal Rules of Civil Procedure.[3]  *Hanlon v.
Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (*citing Amchem*, 521 U.S. at
613-15).  Plaintiffs seeking class certification bear the burden of demonstrating that
each element of Rule 23(a) and at least one of the requirements of Rule 23(b) are
satisfied.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.),
*amended*, 273 F.3d 1266 (9th Cir. 2001) (*citing Hanon v. Dataproducts Corp.*, 976
F.2d 497, 508 (9th Cir.1992)).

Under Rule 23(a), the class must be so numerous that joinder of all members
is impracticable, questions of law or fact must exist that are common to the class, the
claims of the representative parties must be typical of the claims of the class, and the
representative parties must show that they fairly and adequately protect the interests
of the class.  For certification under Rule 23(b)(3), common questions of law or fact
must predominate over questions that affect only individual members of the class,
and a class action must be found to be superior to other available methods of

---

[3] Trial manageability, however, is not a factor to consider when deciding whether
to certify a settlement class, because there will not be a trial.  *Amchem Prods. Inc. v.
Windsor*, 521 U.S. 591, 620 (1997).

- 3 –

1    adjudication.  FED. R. CIV. P. 23(b)(3); *see also Wal-Mart Stores, Inc. v. Dukes*, 131

2    S. Ct. 2541, 2549 n.2 (2011).

3          While the Court's analysis must be rigorous, Rule 23 grants the district court

4    "broad discretion to determine whether a class should be certified, and to revisit that

5    certification throughout the legal proceedings before the court." *Galvan v. KDI*

6    *Distribution [sic] Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *3

7    (C.D. Cal. Oct. 25, 2011) (*quoting Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th

8    Cir. 2001)).  The Court "need only form a 'reasonable judgment' on each

9    certification requirement," taking the complaint's allegations as true and declining to

10   make merits determinations.  *Id.* (internal citations omitted).

11         **A.      The proposed Class is ascertainable.**

12         Although Rule 23 does not expressly require that a proposed class be

13   ascertainable, courts imply such a condition.  *Id.* (*citing Xavier v. Phillip Morris*

14   *USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)).  *See also Evans v.*

15   *IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007) ("A class definition

16   should be precise, objective, and presently ascertainable.").  Ascertainability is

17   satisfied when it is "administratively feasible for the court to determine whether a

18   particular individual is a member."  *In re Northrop Grumman Corp. ERISA Litig.*,

19   No. CV 06-06213 MMM (JCx), 2011 WL 3505264, at *7 n.61 (C.D. Cal. Mar. 29,

20   2011).

21         The Class definition here utilizes objective criteria that make class

22   membership objectively verifiable.  The purchase or lease of a Hyundai or Kia

23   vehicle specified by model and model year is easily demonstrated, and Class

24   members will be readily identified via the R.L. Polk Registration data or other

25   ownership documents.  Any Class members not identified in the Polk data can prove

26   membership in the Class after being reached by the Class notice or through Hyundai

27   and Kia dealers, who are being requested to apprise customers who are members of

28                                          - 4 –

the Class of the availability of settlement relief.  California federal courts have routinely found similar classes to be ascertainable.  *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008) (finding ascertainability when, *inter alia*, the class definition identified a particular make, model, and production period for the class vehicle); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010) (finding ascertainability when unnamed plaintiffs would be able to identify the allegedly defective goods themselves).  Accordingly, the ascertainability requirement is met here.

## B.  The Rule 23(a) factors are met.

### 1.  Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable."  *Hanlon*, 150 F.3d at 1019 (*quoting* FED. R. CIV. P. 23(a)(1)).  Even though there is no "magic number," forty members are sufficient to satisfy the numerosity requirement.  *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *4 (C.D. Cal. Nov. 9, 2009) (*citing Stuart v. Radioshack Corp.*, No. C-07-4499 EMC., 2009 WL 281941, at *5 (N.D. Cal. Feb. 5, 2009) ("courts have found that numerosity is satisfied when class size exceeds 40 members")).  The size of the proposed class need not be exactly determined—it may proceed based on reasonable estimates.  *See Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS (ANx), 2009 WL 2169883, at *4 (C.D. Cal. July 16, 2009).

The numerosity requirement is satisfied here because hundreds of thousands of Class Vehicles were sold in the United States during the Class Period.  According to the press release issued by Defendants on November 2, 2012, the EPA testing errors affected the fuel-economy ratings of approximately 900,000 Hyundai and Kia vehicles sold between 2010 and 2012.  Thus, a reasonable estimate of the size of the Settlement Class would be hundreds of thousands of individuals, which easily satisfies the numerosity requirement.

- 5 –

### 2.   Commonality

Commonality requires "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  All questions of fact and law need not be common to satisfy the rule—"commonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012) (*citing Dukes*, 131 S. Ct. at 2556).  But the class members' claims must "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke."  *Id.* at 588 (*quoting Dukes*, 131 S. Ct. at 2551).

The questions of law and fact that are common to the proposed Settlement Class include: (1) whether a model year of a vehicle received proper testing for its fuel-economy rating; (2) whether a model year's stated EPA fuel-economy rating was inaccurate; (3) whether Defendants' testing methods or presentation of EPA fuel-economy ratings violated federal law; (4) whether HMA made false and misleading statements in advertising about the MPG of certain of its vehicles, and (5) whether Defendants willfully concealed the error or falsity in fuel-economy ratings or recklessly disregarded such error or falsity.  *See also Parkinson*, 258 F.R.D. at 595-96 (finding commonality where "plaintiffs' central common question is whether the 2003 manual-transmission Tiburon suffered from a flywheel defect"). The questions raised by Settlement Class members' claims have a sufficient common factual and legal basis, and their determination will resolve the central issues of this case in one stroke.  Thus, the commonality requirement is satisfied.

### 3.   Typicality

Typicality requires a determination of whether the named plaintiffs' claims are typical of those of the proposed class that they seek to represent.  FED. R. CIV. P. 23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

- 6 –

1    plaintiffs, and whether other class members have been injured by the same course of

2    conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)

3    (*quoting Hanon*, 976 F.2d at 508).  "Typicality refers to the nature of the claim or

4    defense of the class representative, and not to the specific facts from which it arose

5    or the relief sought."  *Id.*  The typicality standard is permissive, requiring only that

6    the representative's claims be "reasonably co-extensive with those of absent class

7    members; they need not be substantially identical."  *Galvan*, 2011 WL 5116585, at

8    *6 (*quoting Hanlon*, 150 F.3d at 1020).  The "focus should be on the defendants'

9    conduct and plaintiff's legal theory, not the injury caused to the plaintiff."  *Costelo v.

10   Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (*quoting Simpson v. Fireman's Fund

11   Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

12          Here, Plaintiffs' claims are typical of the claims of those of the Settlement

13   Class because they arise from a common course of conduct and legal theory.  They

14   have asserted during this litigation that Defendants engaged in false advertising in

15   violation of consumer-protection laws, negligently misrepresented the Class

16   Vehicles' fuel-economy ratings, breached express warranties to Class members by

17   misstating the EPA fuel-economy ratings, and were unjustly enriched by the MPG

18   misstatements.  The Class representatives allege that they own or lease vehicles that

19   are within the Settlement Class definition, each of which was subjected to the flawed

20   EPA testing that led to the MPG overstatements, and that they would not have

21   purchased or leased the vehicles had the MPG rating been accurately stated.  *See

22   Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)

23   (finding typicality where the class representatives alleged that "they, like all

24   prospective class members, were injured by a defective alignment geometry in the

25   vehicles," and where "[the class representatives] and the class seek to recover

26   pursuant to the same legal theories: violation of consumer protection laws, breach of

27   warranty, and unjust enrichment.").  Each Class member's claim arises out of the

28                                      - 7 –

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS

purchase of a Class Vehicle that had a misstated fuel economy rating.  Accordingly, the typicality requirement is satisfied.

### 4.   Adequacy

The adequacy-of-representation requirement of Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 525 (C.D. Cal. 2012) (*quoting Hanlon*, 150 F.3d at 1020).  Adequacy depends on an "absence of antagonism" and a "sharing of interest" between class representatives and absentee class members.  *Id.* (*quoting Ellis*, 657 F.3d at 985).

The Class representatives' interests are aligned with those of the Settlement Class, and there are no conflicts or antagonism—they have suffered economic loss from the same misrepresentations disseminated by Defendants.  Plaintiffs understand and are prepared to fulfill their duties to the Settlement Class.  Throughout the course of this litigation, Plaintiffs have kept abreast of the litigation and been available for multiple communications with Plaintiffs' counsel and provided information for the various pleadings that have been filed.  (*See* Declaration of Robert B. Carey in Support of Plaintiffs' Mot. for Prelim. Approval of Class Settlement ("Carey Decl.") ¶ 13.)

Likewise, Plaintiffs' counsel satisfy the adequacy requirement.  In retaining Steve Berman of Hagens Berman Sobol Shapiro LLP ("Hagens Berman")[4] and Richard McCune of McCuneWright, LLP ("McCuneWright"),[5] Plaintiffs have

---

[4] Attached hereto as Exhibit 1 is a true and correct copy of Hagens Berman's resume.  Please see specifically pages 10-11.

[5] Attached hereto as Exhibit 2 is a true and correct copy of McCuneWright's resume.

- 8 –

employed counsel with the necessary qualifications, experience, and resources to vigorously prosecute this action.  Based on Plaintiffs' counsel's experience in class actions and other complex litigation, coupled with their zealous representation of Plaintiffs, the adequacy-of-counsel prong of Rule 23(a)(4) is satisfied.

### C.    The Rule 23(b)(3) factors are met.

Certification is warranted under Rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently" settling the controversy.  FED. R. CIV. P. 23(b)(3).

### 1.    Common issues of fact and law predominate because legal and factual questions will be resolved with proof common to all Plaintiffs and Class members.

"There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position."  *Galvan*, 2011 WL 5116585, at *8 (*quoting Withers v. eHarmony, Inc.*, CV 09-2266-GHK (RCx), Order Denying Mot. to Cert. Class, Docket No. 13 (June 2, 2010)).  *See also Dukes*, 131 S. Ct. at 2566 (the predominance inquiry is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." (*quoting Amchem*, 521 U.S. at 623)).  The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

Here, common issues predominate because the evidence necessary to establish Plaintiffs' claims is common to the Class representatives and all members of the Class—they would all seek to prove that their Hyundai and Kia vehicles' fuel-

- 9 –

economy ratings were contorted and overstated by Defendants' flawed EPA testing. The evidence and elements are the same whether there are 100 Class members or 900,000: in either instance, Plaintiffs would present the **same** evidence of Hyundai's and Kia's representations, marketing, warranties; the **same** evidence of Defendants' development of and testing related to the Class Vehicles' Monroney numbers at their shared R&D facility in South Korea; and the **same** evidence of the process changes applied to the testing protocols that the Class Vehicles underwent.  *See, e.g., Wolin*, 617 F.3d at 1173 (finding that all of the allegations regarding a common defect, the defendant's failure to reveal material facts in violation of consumer-protection laws, and the defendant's unjust enrichment "are susceptible to proof by generalized evidence.").  These common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," and therefore, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

### a.    Plaintiffs' CLRA claim.

Common issues predominate with respect to Plaintiffs' CLRA claim. Causation for CLRA claims can be shown as to an entire class by proving that material misrepresentations or omissions have been made to the class.  *Keegan*, 284 F.R.D. at 530 (*citing Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)).  Materiality is relevant to prove reliance, since "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id*. at 533-34 (*quoting In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)).  Materiality is established if a reasonable person would attach importance to the information at issue in determining whether to engage in the transaction.  *Id*. at 529, 531-32 (internal citations omitted).  Fuel-economy estimates are material when deciding what vehicle to purchase or lease because fuel costs must be paid by the owner or lessee for the entire time he possesses the vehicle.  Defendants agree that a

- 10 –

1   vehicle's MPG estimate is a material consideration.  *See* Tr. of Media Conference

2   Call with John Krafcik (president and CEO of HMA), Michael Sprague (executive

3   vice president of marketing and communications for KMA), and Dr. Sung Hwan

4   Cho (president of HATCHI group, HMA's and KMA's shared research and

5   development division), Nov. 2, 2012, *available at*

6   https://s3.amazonaws.com/khcdn/pdf/Transcript_of_teleconference_11.2.12.pdf.[6]

7   Here, all Class Vehicles were marketed and sold with inaccurate fuel-economy

8   estimates (Hunter Compl. ¶ 56), and these certified numbers provided by HKMC

9   were materially different from the EPA's coastdown results.  (*See generally* Pl.

10   Mem. of Points and Authorities in Support of Motion for Preliminary Approval of

11   Class Action Settlement  at 4-13)  And the following common, material issues exist

12   with respect to Plaintiffs' CLRA claim: (1) whether Defendants were aware of the

13   alleged error regarding MPG overstatement; (2) whether Defendants had a duty to

14   disclose the alleged error; (3) whether Defendants failed to do so; (4) whether the

15   alleged error would be material to a reasonable consumer; and (5) whether

16   Defendants' actions violated the CLRA.  *See Parkinson*, 258 F.R.D. at 596

17   (predominance with respect to CLRA claim was met with almost these exact same

18

19   —————————————

20   [6] ". . . [G]iven the importance of fuel efficiency to all of us, we are extremely
   sorry about these errors." (Tr. at 2); "Our customers and folks out shopping for
21   Hyundai and Kia cars today can have faith that these fuel economy values have had
   more inspection, more oversight, more confirmatory testing than ever before." (*Id.* at
22   3); "You know the biggest thing we're doing, of course, is this massive relabeling
   effort that we have underway at Hyundai and Kia dealers, beginning today, so we're
   working very, very hard to get the new labels on our cars as quickly as possible,
23   communicating with our dealers now, in real time, and ensuring that consumers have
   the right fuel economy information." (*Id.* at 10); "We're also working with our
24   dealers for this interim period, because there are going to be a few days here, right,
   just on the massive logistics of this, where some of the window stickers won't have
25   been updated in time; for example, what might happen today or the sales that might
   happen tomorrow.  And for those – for those cases, we've got special fact sheets
26   going to our dealerships that we are ensuring consumers understand and check off
   before they buy the car that there's an understanding that the mileage ratings for
27   some of the – for the affected vehicles have in fact changed." (*Id.* at 20).

28                                    - 11 –

1    questions (*citing Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal.

2    2004)).  Therefore, Plaintiffs' CLRA claims satisfy the predominance requirement.

3    **b.    Plaintiffs' UCL claim.**

4         Common issues predominate under Plaintiffs' UCL claim because the same

5    common proof used to establish a violation of the CLRA can be used for a UCL

6    claim.  *Keegan*, 284 F.R.D. at 533.  Furthermore, "relief under the UCL is available

7    without individualized proof of deception, reliance and injury."  *Id.* (*quoting Stearns*,

8    655 F.3d at 1021).  As with Plaintiffs' CLRA claim, there is "a presumption, or at

9    least an inference, of reliance" because Plaintiffs have shown that the alleged MPG

10   overstatement was material.  *Id.* at 533-34 (*quoting In re Tobacco II Cases*, 46 Cal.

11   4th at 327); *see also Parkinson*, 258 F.R.D. at 596 (defendant's alleged knowledge of

12   a defect presents common issues for the CLRA and UCL claims because, if

13   materiality is shown, reliance and causation may be presumed as to the entire class).

14   Here, through Defendants' uniform representations to Class members regarding the

15   mileage disclosed on the Class Vehicles' Monroney labels, all Class members

16   received the same information from Defendants regarding the purported error—that

17   their vehicles had better fuel efficiency than they actually did.  *See Keegan*, 284

18   F.R.D. at 533 (distinguishing *Am. Honda Motor Co., Inc. v. Super. Ct.*, 199 Cal.

19   App. 4th 1367, 1377 (Cal. App. 2d Dist. 2011)).  Thus, the following common

20   questions predominate with respect to Plaintiffs' UCL claim: (1) was the MPG listed

21   on the Class Vehicles' Monroney labels inaccurate; (2) did the manufacturer have a

22   duty to disclose the error; (3) did the manufacturer fail to disclose the error; and (4)

23   was the failure to disclose likely to deceive a reasonable consumer.  *See Parkinson*,

24   258 F.R.D. at 596-97 (predominance with respect to UCL claim was met with

25   similar questions).

26

27

28                                   - 12 –

### c.   Plaintiffs' false-advertising claim.

Plaintiffs' claim for violations of California's false advertising laws ("FAL") also demonstrate that common issues predominate.  Plaintiffs allege that Defendants caused to be made or disseminated through California and the United States, through advertising, including TV, print, internet, billboard, and other marketing materials, statements that were untrue or misleading, and which were known, or which by exercising reasonable care should have been known by Defendants, to be untrue and misleading to consumers and Plaintiffs.  (*Espinosa* Compl. ¶¶ 12-32, *Hunter* Compl. ¶ 73.)  Plaintiffs alleged that Hyundai launched a pervasive ad campaign that consisted of, among other things, TV, internet, and print advertising that consistently referred to the Elantra as the "40 MPG Elantra" and claimed that four Hyundai models, specifically, the Elantra, Accent, Veloster, and Sonata Hybrid, got 40 MPG ("4 Models 40 MPG") through print and internet ads that stated "40 MPG standard every model," when in fact the vehicles did not get 40 MPG.[7]  These misrepresentations were material and likely to deceive a reasonable consumer, and had Plaintiffs and the Class known the Class Vehicles' true MPGs, they would not have purchased or leased their vehicles and/or paid as much for them.  (Espinosa Compl. ¶¶ 74-75.)  Buyers and lessees of the Elantra, Accent, Veloster, and Sonata Hybrid vehicles that were the subject of the "4 Models 40 MPG" ad campaign were induced into purchasing vehicles that did not perform as advertised and suffered damages as a result.  The damages suffered by Class members are the amount they overpaid for their vehicles as a result of HMA's false statements about fuel efficiency.

In their motion for class certification, the Espinosa Plaintiffs proffered the testimony of an expert economist to demonstrate that such damages are uniformly

---

[7] The challenged advertisements are set forth in great detail in Pls.' Mot. for Class Certification ("Mot.") (Espinosa Dkt. 43), at 1-16.

1    quantifiable on a class-wide basis: market prices for automobiles reflect what

2    consumers are willing to pay based on the combination of attributes and features in

3    each model, and economists have a method by which they can determine the added

4    value of each quantifiable feature of a vehicle.  (*Espinosa v. Hyundai Motor Am.*,

5    No. 12-CV-800-GW-FFM, dkt. # 43-6, Declaration of Molley Espey ¶ 21 (C.D.

6    Cal.)).  There is a methodology to uniformly determine the overpayment amount for

7    each Class member, and as such, the elements of proof of the FAL claim (i.e., each

8    Class Vehicle being subject to Defendants' identical testing procedures and process

9    changes) and the factual allegations giving rise thereto, show that common issues of

10   law and fact predominate.  *See In re Tobacco II Cases*, JCCP 4042, 2001 WL

11   34136870, at *3 (Cal. Super. Ct. Apr. 11, 2001) (finding that common issues

12   predominated for all class claims brought under Cal. Bus. & Prof. Code §§ 17500, *et*

13   *seq.* even though "a myriad of distinct issues exist as to each class member's

14   exposure to the alleged deceptive marketing [and] reliance thereon" because the class

15   "assert[ed] identically that Defendants, . . . by way of deceptive advertising and

16   marketing acts, misled the [] public" and "targeted the putative class uniformly in an

17   alleged class-wide effort to seduce and induce people" to purchase their product).

18                    d.        **Plaintiffs' breach-of-express-warranty claim.**

19          The breach-of-express-warranty claim raised by Plaintiffs also satisfies the

20   predominance standard.  Here, Plaintiffs allege that in selling their vehicles,

21   Defendants expressly warranted in advertisements, including in the stickers affixed

22   to the windows of their vehicles, that their vehicles experienced a favorable fuel

23   economy of specific MPGs, depending on the vehicle, and that Defendants breached

24   these express warranties because the fuel-economy ratings for their vehicles are

25   inaccurate.  (Hunter Compl. ¶¶ 90, 92.)  The main questions here are whether the

26   Class Vehicles' MPGs were overstated in breach of Defendants' express warranties

27   to the contrary and whether that breach occurred on a class-wide basis.  As such,

28                                            - 14 –

1   individualized issues of use do not predominate over the issue of the mileage

2   overstatement.  *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir.

3   2005).  Thus, Plaintiffs' express-warranty claims satisfy the predominance standard.

4          **e.**     **Plaintiffs' fraud and negligent-representation claims.**

5         Predominance is also satisfied by Plaintiffs' fraud and negligent-representation

6   claims.  Plaintiffs allege that Defendants affirmatively misrepresented and concealed

7   material facts concerning the fuel economy of their vehicles.  (Hunter Compl. ¶ 96.)

8   Even if Defendants did not affirmatively misrepresent such facts, they still made

9   fuel-economy representations to Plaintiffs and members of the Class that were not

10  true.  (*Id.* ¶ 102.)  Defendants had a duty to disclose the true fuel economy based on

11  their superior knowledge and affirmative misrepresentations to the contrary; at

12  minimum, they had no reasonable grounds for believing these representations were

13  true when they made them.  (*Id.* ¶¶ 97, 103.)  These misrepresentations were made

14  with the intent to induce Plaintiffs and Class members into reliance thereon, causing

15  them harm.  (*Id.* ¶¶ 98, 104.)  Here, it is Defendants' scheme of underlying

16  misrepresentations, "not the details of any individual's experience that forms the

17  nucleus of the class claims."  *Joint Equity Comm. of Investors of Real Estate*

18  *Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 430 (C.D. Cal.

19  2012) (*quoting Menagerie Prods.*, 2009 WL 3770668, at *5).  Therefore,

20  predominance is satisfied through Plaintiffs' claims for fraud and negligent

21  misrepresentation.

22         **f.**     **Plaintiffs' unjust-enrichment claim.**

23

24        Plaintiffs' claim for unjust enrichment also satisfies the predominance

25  requirement.  Plaintiffs alleged that through Defendants' wrongful conduct,

26  Defendants charged a higher price for their vehicles than the vehicles' true value and

27  obtained monies which rightfully belong to Plaintiffs.  (Hunter Compl. ¶ 106.)

28                         - 15 –

Unjust-enrichment claims "are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012) (*citing Keilholtz*, 268 F.R.D. at 341 (certifying class for unjust enrichment claim because "[c]ommon to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their fireplaces.")); *see also Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887, at *12-13 (E.D. Cal. Sept. 14, 2009) (finding predominance because "the crux of plaintiffs' claims is that defendant unjustly retained the benefits of its sale of window products to consumers after it failed to disclose material facts about the defective nature of those products"). Here, Plaintiffs allege that Defendants unjustly retained the benefits of their sales of Class Vehicles to Plaintiffs and the Class after failing to disclose the MPG overstatement associated with the Class Vehicles. The same legal issues are raised for each Class member by this claim, and the same proof—that Defendants knew or should have known about the process-change error that led to the artificially high MPG estimate but failed to disclose the error—will be used to assess each Class member's damage. Therefore, Plaintiffs' unjust-enrichment claim satisfies the predominance requirement.

Each of Plaintiffs causes of action can be proven with common evidence, such as the fact that Defendants used the same testing procedures to establish the Monroney numbers for all Class Vehicles, the testing procedures were subject to the same process change that resulted in inaccurate fuel-efficiency numbers, and the error in the MPG estimates stemmed from Defendants' attempt to actually produce more accurate test results.

### 2. A class action is a superior method of resolving this dispute.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617

- 16 –

F.3d at 1175 (*quoting* 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 1779 at 174 (3d ed. 2005)). Superiority is satisfied "when 'no realistic alternative' to a class action 'exists.'" *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 603 (C.D. Cal. 2011) (*quoting Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)).  No alternatives are feasible where absent class members are unaware of their claims, because the likelihood of multiple, individual claims is remote.  *See Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (because "individual consumers are most likely unaware of their rights . . . . [c]lass action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged." (*quoting Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 610 (D. Ariz. 1982))).

Rule 23(b)(3) provides the following non-exclusive list of factors for the Court to consider in determining superiority: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties encountered in the management of a class action.  FED. R. CIV. P. 23(b)(3); *see also Galvan*, 2011 WL 5116585, at *12.[8]  Each of the relevant Rule 23(b)(3) factors that guide the superiority inquiry is satisfied here.

With respect to factors (A) and (C), the reimbursement amount of extra fuel costs due to the overstated MPG estimates is too low, and the factual, legal, and financial burdens of litigating for a lump-sum payment are too high to incentivize many Class members to litigate their claims individually; this weighs in favor of

---

[8] As explained above, trial manageability is not a factor in deciding whether to certify a settlement class.  *Amchem*, 521 U.S. at 620.

concentrating the claims in a single forum.  *See Hanlon*, 150 F.3d at 1023 (where "the alternative methods of resolution are individual claims for a small amount of consequential damages . . . . litigation costs would dwarf potential recovery"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (finding the "superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis,'" and "class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." (*quoting Wolin*, 617 F.3d at 1175)).  Through the Reimbursement Program, the Class members were offered yearly (or more frequent) reimbursements of their extra fuel costs over an extended claims process—one that might continue for a decade for Class members to receive the full amount to which they are entitled.  Many reasonable consumers would not bring an individual suit to obtain a lump-sum payment, especially if a consumer were to have to litigate difficult and complex issues about how Defendants' coastdown tests are performed and the regulations relating to the calculation of the Monroney numbers, engage in overseas discovery, and accumulate expert and other evidence, all at a high cost and all against well-funded, litigation-savvy defendants like HMA and KMA.  Such evidence includes determining what happened during the testing process at Defendants' R&D facility in Korea and how that translated into Defendants' misrepresentations on the Monroney labels.  *See Keegan*, 284 F.R.D. at 549 ("The funds required to marshal the type of evidence, including expert testimony, that will be necessary to pursue these claims against well-represented corporate defendants would discourage individual class members from filing suit when the expected return is so small.").  Certification thus conserves both individual and already-strapped judicial resources.  *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 639 (S.D. Cal. 2011) ("multiple individual claims could overburden the judiciary"), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).

1    Plaintiffs' counsel have already devoted significant resources and efforts to

2    this class-action litigation, including motion-to-dismiss and class-certification

3    briefing, the propounding of confirmatory discovery on Defendants by Plaintiffs in

4    coordination with the non-settling plaintiffs, Plaintiffs' review of tens of thousands

5    of documents, and the taking seven interviews of KMA and HMA key personnel in

6    the United States and traveling to Korea to inspect the R&D facility where tests were

7    conducted and take four additional interviews of key personnel at Defendants' parent

8    companies' headquarters.  It is unrealistic to suggest that an individual litigant would

9    be able or willing to invest the same resources.

10    Factor (B)—the extent and nature of any similar litigation—also favors

11    certification of this action.  The *Espinosa* false-advertising action was actively

12    litigated before this Court for more than a year before settlement negotiations began:

13    Plaintiffs had filed two amended complaints, this Court had made a substantive

14    ruling in response to HMA's motion to dismiss, the parties had conducted extensive

15    pre-trial discovery, including document review of more than 30,000 documents,

16    Plaintiff and expert depositions, and briefing of a motion for class certification, all

17    before Defendants' November 2012 announcement.  Following the filing of the

18    *Hunter* action, approximately fifty-two federal class-action lawsuits based on the

19    same facts and legal theories at issue here have been filed against HMA, KMA,

20    Hyundai Motor Corporation, and/or Kia Motor Corporation.  Through the MDL

21    process, those cases were transferred to this Court and consolidated with this

22    litigation, and the confirmatory discovery process is ongoing—it has resulted in

23    eleven interviews of Defendants' key personnel in the U.S. and Korea, as well as

24    hundreds of thousands of pages of documents produced.  That the Judicial Panel on

25    Multidistrict Litigation chose this Court to be the transferee court is one indication

26    that having a single class action makes sense.

27

28    - 19 –

The final superiority factor regarding manageability focuses on whether "the complexities of class action treatment outweigh the benefits of considering common issues in one trial . . . ." *McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011) (*quoting Zinser*, 253 F.3d at 1192). The question is not "whether this class action will create significant management problems," but instead "whether it will create relatively more management problems than any of the alternatives." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). A manageability concern "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Id.* at 1272. *See also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) ("failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'" (*quoting In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980))). Here, Plaintiffs do not foresee any serious manageability problems in maintaining this class action and certainly none that make thousands of individual actions better alternatives.

## II.   Hagens Berman and McCuneWright Should Be Appointed Settlement Class Counsel.

Plaintiffs also request that the Court appoint Hagens Berman and McCuneWright as Settlement Class counsel under Rule 23(g). Hagens Berman and McCuneWright have been responsible for the investigation, filing, and litigation of the action, and they negotiated the proposed Settlement.[9] Both firms are experienced in this type of class-action litigation.[10] Therefore, Hagens Berman and

---

[9] Hagens Berman has worked jointly with fellow settling Plaintiffs' counsel, McCuneWright, throughout the settlement negotiations and confirmatory discovery, and both firms continue to work with other supporting counsel.

[10] *See supra* notes 4-5.

- 20 –

1    McCuneWright respectfully request that the Court appoint them as Settlement Class

2    counsel.

3    DATED: December 23, 2013          Hagens Berman Sobol Shapiro LLP

4

5                                      By  /s/Robert B. Carey

6                                      Robert B. Carey

7                                      *rob@hbsslaw.com*
                                       Hagens Berman Sobol Shapiro LLP
8                                      11 West Jefferson Street, Suite 1000

9                                      Phoenix, AZ  85003
                                       Tel. (602) 840-5900
10                                     Fax (602) 840-3012

11
                                       Elaine T. Byszewski (SBN 222304)
12                                     *elaine@hbsslaw.com*

13                                     301 North Lake Avenue, Suite 203
                                       Pasadena, CA  91101
14                                     Tel. (213) 330-7150

15                                     Fax (213) 330-7152

16                                     Steve W. Berman

17                                     *steve@hbsslaw.com*
                                       Hagens Berman Sobol Shapiro LLP
18                                     1918 Eighth Avenue, Suite 3300

19                                     Seattle, WA 98101
                                       Tel. (206) 623-7292
20                                     Fax (206) 623-0594

21
                                       *Attorneys for Plaintiff Kaylene P. Brady, et al.*
22                                     *and Nicole Marie Hunter, et al.*

23    DATED:  December 23, 2013          **MCCUNEWRIGHT LLP**

24

25                                     By  /s/Richard D. McCune

26                                     Richard D. McCune

27                                     *rdm@mccunewright.com*

28                                            - 21 –

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCuneWright LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Tel. (909) 557-1250
Fax (909) 557-1275

*Attorneys for Plaintiffs Kehlie R. Espinosa, Lillian E. Levoff, Thomas Ganim, and Dan Baldeschi*

- 22 –

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Robert B. Carey, hereby certify that on December, 23, 2013, a true and correct copy of the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Certification of Settlement Class was filed electronically with the Clerk of Courts at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/Robert B. Carey_____

- 23 –