# EXHIBIT 1

EXHIBIT 1 - PAGE 42

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and
entered into as of this 23rd day of December, 2013, by and between (1) Named Plaintiffs Nicole
Marie Hunter, Kaylene Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig,
John Dixson, Erin Fanthorpe, Thomas Ganim, Eric Hadesh, Michael Keeth, Lillian E. Levoff,
John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Gary
Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley,
Gregory M. Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams
("Named Plaintiffs" or "Class Representatives"), individually and as representatives of a Class
defined below, (2) Hyundai Motor America ("HMA"); and Kia Motors America, Inc. ( "KMA")
(collectively, the "Parties").

WHEREAS, on November 2, 2012, HMA and KMA each issued a statement informing
the public that they were voluntarily adjusting the fuel economy ratings for certain 2011-2013
model year vehicles.  Both HMA and KMA simultaneously announced that each company was
instituting a reimbursement program to compensate affected vehicle owners and lessees for the
additional fuel costs associated with the adjusted fuel economy ratings.

WHEREAS, on November 2, 2012, Plaintiffs Nicole Marie Hunter, E. Brandon Bowron,
and Giuseppina Roberto, individually and on behalf of a putative class of "all persons who
currently own or lease a Hyundai or Kia automobile whose EPA fuel economy ratings were less
than the fuel economy rating produced by the applicable federal test," filed a complaint against
HMA and KMA in the U.S. District Court for the Central District of California, alleging that,
*inter alia*, the prior fuel economy ratings on certain Hyundai and Kia vehicles misstated the
vehicles' fuel economy (the "Hunter Litigation").  The complaint in the Hunter Litigation
asserted claims under various laws and alleged that, as a result of the purported
misrepresentation, plaintiffs purchased vehicles they would not have otherwise purchased, or
paid more for the vehicles than they would have otherwise paid.

EXHIBIT 1 - PAGE 43

WHEREAS, on November 6, 2012, Named Plaintiffs Kaylene Brady, Travis Brissey, Colnett Brubaker, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson, Erin Fanthorpe, Eric Hadesh, Michael Keeth, John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Steve Perry, Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory M. Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams individually and on behalf of a putative class of "all persons who currently own or lease a Hyundai or Kia automobile whose EPA fuel economy ratings were less than the fuel economy rating produced by the applicable federal test," filed a complaint against HMA and KMA in the U.S. District Court for the Central District of California, making allegations and asserting claims similar to the Hunter Litigation (the "Brady Litigation").

WHEREAS, on January 6, 2012, Kehlie Espinosa filed a class action complaint, which was amended on August 2, 2012, alleging that HMA disseminated false and misleading advertisements regarding fuel economy for a number of Hyundai models, including alleging that the Hyundai Elantra was falsely and misleadingly advertised as achieving 40 mpg, and Named Plaintiffs Lillian Levoff and Thomas Ganim filed a motion for class certification in the Espinosa action on September 14, 2012.

WHEREAS, additional lawsuits were filed asserting similar allegations against HMA and KMA.

WHEREAS, Plaintiffs allege the Reimbursement Program (defined below) to be deficient in several respects, including that the program required owners to request reimbursement several times over the life of the vehicle.

WHEREAS, the Judicial Panel on Multi-District Litigation issued an order, dated February 5, 2013, transferring and centralizing the Hunter Litigation, the Brady Litigation, and other lawsuits in a multi-district litigation ("MDL") in the U.S. District Court for the Central District of California, which is known as In Re: Hyundai and Kia Fuel Economy Litigation, No.

- 2 -

EXHIBIT 1 - PAGE 44

2:13-ml-02424-GW-FFM (hereinafter the "MDL Litigation," which shall mean In Re: Hyundai and Kia Fuel Economy Litigation No. 2:13-ml-02424-GW-FFM and all lawsuits transferred to and centralized in such MDL).

WHEREAS, Class Counsel (defined below) and the Class Representatives have conducted an investigation into the facts and the law regarding the MDL Litigation, and have concluded that a settlement with HMA and KMA according to the terms set forth below is in the best interests of plaintiffs and the Settlement Class.

WHEREAS, as part of the confirmatory discovery process overseen by Judge George H. Wu and with input from liaison counsel who was appointed by the Court, HMA, KMA, and Hyundai Motor Company have produced more than 28,000 documents, totaling more than 300,000 pages.  HMA, KMA, and Hyundai Motor Company have also made eleven witnesses available for interviews as well as produced the transcript of a deposition taken by the Environmental Protection Agency in its related investigation.  As part of the same confirmatory discovery process, settling plaintiffs' counsel inspected Hyundai Motor Group's test track facility in Namyang, South Korea.  Settling Plaintiffs' counsel also independently investigated the circumstances surrounding the market for Hyundai and Kia vehicles at the time the alleged errors were made and reviewed discovery materials from the *Espinosa* case.  The Parties refrained from seeking Court approval of this settlement until confirmatory discovery was substantially complete.

WHEREAS, despite their denial of any liability or culpability and their belief that they have meritorious defenses to the claims alleged, HMA and KMA nevertheless have decided to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation without admission of liability.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, and intending to be legally bound, it

EXHIBIT 1 - PAGE 45

is agreed by and among the undersigned that the MDL Litigation be settled, compromised, and dismissed with prejudice on the terms and conditions set forth below.

    1.    <u>Definitions</u>.

    1.1. "Agreement" means this Settlement Agreement, including any schedules or exhibits hereto.

    1.2. "Class" means all Class Members collectively.

    1.3. "Class Counsel" means Hagens Berman Sobol Shapiro LLP and McCuneWright, LLP.

    1.4. "Class Member" means any current or former owner or lessee of a Class Vehicle who was the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States, except that the following are excluded:  (i)  Rental Fleet Owners (defined below); (ii) government entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (iii) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (iv) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle.  The parties agree that participation in the existing Reimbursement Program was not intended to and does not, by itself, result in a release of any claims, provided that the Parties also agree that nothing in this Agreement should be interpreted to restrict Defendants' ability to argue that any compensation received pursuant to the Reimbursement Program will reduce any losses that are alleged to be sustained by a claimant.

    1.5. "Class Vehicle" means any vehicle identified in Exhibit A.

    1.6. "Court" or "District Court" means the United States District Court for the Central District of California.

- 4 -

EXHIBIT 1 - PAGE 46

1.7.  "Current Fleet Owner" means a governmental entity, corporation, or Person (i) that purchased, on or before November 2, 2012, one or more Fleet Class Vehicles as new vehicles, provided that neither HMA nor KMA agreed to repurchase such Fleet Class Vehicles at a later date and (ii) that remains the owner of such Fleet Class Vehicles on the date of this Settlement Agreement.

1.8.  "Current Lessee" means a Person (i) who leased, on or before November 2, 2012, a Class Vehicle and (ii) who remains the lessee of such Class Vehicle on the date of this Settlement Agreement.

1.9.  "Current Non-Original Owner" means a Person (i) who purchased a Class Vehicle, on or before November 2, 2012,  that was previously owned or leased by another Person; (ii) who remains the owner of such Class Vehicle on the date of this Settlement Agreement; and (iii) who is not a Fleet Owner of such Class Vehicle.

1.10.   "Current Original Owner" means a Person (i) who purchased a Class Vehicle, on or before November 2, 2012, as a new vehicle; (ii) who remains the owner of such Class Vehicle on the date of this Settlement Agreement; and (iii) who is not a Fleet Owner of such Class Vehicle.

1.11.  "Effective Date" shall have the meaning given to it in Section 14 below.

1.12.  "Fleet Class Vehicle" means a Class Vehicle purchased by a governmental entity, corporation, or Person that negotiated the purchase terms with HMA or KMA (as the case may be), as opposed to one of their authorized dealers, provided that neither HMA nor KMA agreed to repurchase such Fleet Class Vehicles at a later date.

1.13.  "Fleet Owner" means a governmental entity, corporation, or Person that purchased one or more Fleet Class Vehicles, on or before November 2, 2012, as new vehicles, provided that neither HMA nor KMA agreed to repurchase such Fleet Class Vehicles at a later date.

- 5 -

EXHIBIT 1 - PAGE 47

1.14.   "Former Fleet Owner" means a governmental entity, corporation, or Person (i) that purchased one or more Fleet Class Vehicles, on or before November 2, 2012, as new vehicles, provided that neither HMA nor KMA agreed to repurchase such Fleet Class Vehicles at a later date and (ii) that does not own such Fleet Class Vehicles as of the date of this Settlement Agreement.

1.15.   "Former Lessee" means a Person (i) who leased a Class Vehicle, on or before November 2, 2012, and (ii) who does not lease or own such Class Vehicle as of the date of this Settlement Agreement.

1.16.   "Former Owner" means a Person (i) who purchased a Class Vehicle, on or before November 2, 2012; (ii) who does not own such Class Vehicle as of the date of this Settlement Agreement; and (iii) who was not a Fleet Owner of such Class Vehicle.

1.17.   "Party" means a Class Representative, HMA, or KMA, and "Parties" means the Class Representatives, HMA, and KMA.

1.18.   "Person" means any individual or entity.

1.19.   "Reimbursement Program(s)" means the compensation programs HMA and KMA announced on November 2, 2012 to compensate owners of Class Vehicles for estimated additional fuel expenses incurred as a result of restated fuel economy ratings, as detailed on the websites http://www.HyundaiMPGinfo.com and http://www.KIAMPGinfo.com.

1.20.   "Releasees" shall refer jointly and severally, individually and collectively to entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated advertisements for the Class Vehicles, HMA, KMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), Hyundai Motor Company, Kia Motors Corporation, all affiliates of the Hyundai Motor Group, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former

- 6 -

EXHIBIT 1 - PAGE 48

officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders), and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

1.21.   "Releasors" shall refer jointly and severally, individually and collectively to the Class Representatives, the Settlement Class Members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

1.22.   "Rental Fleet Owner" means an owner of one or more Fleet Class Vehicles that are available to be rented or leased.

1.23.   "Settlement Class" means all "Settlement Class Members" collectively.

1.24.   "Settlement Class Member" means any Class Member who has not timely elected to "opt out" of the settlement described in this Settlement Agreement.

2.   Certification of the Class.

2.1.   The Parties stipulate and agree that, for the purposes of the settlement set forth herein only, and subject to Court approval, the following Class meets the requirements of Federal Rule of Civil Procedure 23 and should be certified:

> All current and former owners and lessees of a Class Vehicle (i) who were the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States, except that the following are excluded:  (i) Rental Fleet Owners; (ii) government

- 7 -

EXHIBIT 1 - PAGE 49

entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (iii) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (iv) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle.

2.2.    The Parties stipulate and agree that, for the purposes of the settlement set forth herein only, and subject to Court approval, the Class Representatives shall serve as the representatives of the Class and Class Counsel shall be appointed as counsel for the Class.

3.    <u>Consideration for Settlement</u>.

3.1    As consideration for the settlement set forth herein, HMA and KMA will provide to Settlement Class Members the following benefits:

3.1.1    <u>Current Original Owner Compensation.</u>  The compensation for a Current Original Owner shall be the amount set forth in Exhibit B (for Hyundai Class Vehicles) and Exhibit C (for Kia Class Vehicles) in accordance with the specific Class Vehicle(s) the Current Original Owner owns.

3.1.2    <u>Current Non-Original Owner Compensation</u>.  The compensation for a Current Non-Original Owner shall be one half (50 percent) of the amount set forth in Exhibit B (for Hyundai Class Vehicles) and Exhibit C (for Kia Class Vehicles) for Current Original Owners, with respect to the specific Class Vehicle(s) the Current Non-Original Owner owns.

3.1.3    <u>Former Owner Compensation</u>.  The compensation for a Former Owner shall be the amount that the Former Owner is qualified to receive pursuant to the

- 8 -

EXHIBIT 1 - PAGE 50

Reimbursement Program.  A Former Owner may elect an alternative form of compensation as provided by Section 3.2.

    3.1.4  <u>Current Lessee Compensation</u>.  The compensation for a Current Lessee shall be the amount set forth in Exhibit B (for Hyundai Class Vehicles) and Exhibit C (for Kia Class Vehicles) in accordance with the specific Class Vehicle the Current Lessee leases.

    3.1.5  <u>Former Lessee Compensation</u>.  The compensation for a Former Lessee shall be the amount that the Former Lessee is qualified to receive pursuant to the Reimbursement Program.  A Former Lessee may elect an alternative form of compensation as provided by Section 3.2.

    3.1.6  <u>Current Fleet Owner Compensation</u>.  The compensation for a Current Fleet Owner shall be the amount set forth in Exhibit B (for Hyundai Class Vehicles) and Exhibit C (for Kia Class Vehicles) in accordance with the specific Class Vehicles the Fleet Owner owns.

    3.1.7  <u>Former Fleet Owner Compensation</u>.  The compensation for a Former Fleet Owner shall be the amount that the Former Fleet Owner is qualified to receive pursuant to the Reimbursement Program. A Former Owner may elect an alternative form of compensation as provided by Section 3.2.

    3.1.8  <u>Additional Compensation Applicable to Certain Vehicles</u>.  Any Current Original Owner, Current Lessee, or Current Fleet Owner of an Elantra, Accent, Veloster or Sonata Hybrid listed on Exhibit A who remains in the Reimbursement Program may elect to receive the following additional compensation:  (i) $100 for a Current Original Owner or (ii) $50 for a Current Lessee or Current Fleet Owner.  A Settlement Class Member who is entitled to receive additional compensation pursuant to this section 3.1.8 shall remain entitled to receive such additional

- 9 -

EXHIBIT 1 - PAGE 51

compensation without regard to any provision of Section 5.1 or Section 5.2.  A Settlement Class Member who is entitled to receive additional compensation pursuant to this section 3.1.8 may elect an alternative form of compensation as provided by Section 3.2.  An Addendum to this Agreement will address whether a Former Owner of an Elantra, Accent, Veloster or Sonata Hybrid listed on Exhibit A  who was the original retail owner of such Class Vehicle and who sold or otherwise disposed of such Class Vehicle between February 12, 2013 and December 23, 2013 is entitled to any portion of the Additional Compensation described in this Section 3.1.8.

      3.2    <u>Alternative Forms of Compensation</u>.  Compensation under the provisions of paragraphs 3.1.1 through 3.1.7 shall be in one of the following forms, at the Settlement Class Member's election.

      3.2.1    A Settlement Class Member may elect to receive his or her compensation in the form of a debit card that may be used like a credit card or used at an Automatic Teller Machine.  There shall be no restrictions imposed by the issuer that would prevent a Settlement Class Member from depositing the entire balance of the debit card to a checking or other bank account. The cash debit card shall be in the amount indicated pursuant to paragraph 3.1.1 through 3.1.8.  The cash debit card shall be non-transferrable and shall expire one year after it is issued.  There shall be no issuer fees imposed on the recipient of a cash debit card.

      3.2.2    A Settlement Class Member may elect to receive his or her compensation in the form of a dealer service debit card valued at 150% of the amount that otherwise would be paid as a cash debit card.  The dealer service debit card may only be used at any authorized Hyundai dealer (for Hyundai Class Vehicles) or any authorized Kia dealer (for Kia Class Vehicles) in payment towards any merchandise, parts, or service.  The dealer service debit card shall be non-

- 10 -

EXHIBIT 1 - PAGE 52

transferrable and shall expire two years after it is issued.  There shall be no issuer fees imposed on the recipient of a dealer service debit card.

        3.2.3      A Settlement Class Member may elect to receive his or her compensation in the form of a new car rebate certificate valued at 200% of the amount that otherwise would be paid as a cash debit card.  The new car rebate certificate may only be used toward the purchase of a new Hyundai vehicle (for Settlement Class Members who own(ed) or lease(d) Hyundai Class Vehicles) or a new Kia vehicle (for Settlement Class Members who own(ed) or lease(d) Kia Class Vehicles).  The new car rebate certificate shall be non-transferrable, except that it may be transferred to a family member (child, parent, or sibling), and shall expire three years after it is issued. There shall be no issuer fees imposed on the recipient of a new car rebate certificate.

        3.2.4      The value of any debit card, dealer service debit card, and new car rebate certificate shall remain the property of the issuer, HMA or KMA, unless and until it is expended by the Settlement Class Member.  Upon expiration of any debit card, dealer service debit card, or new car rebate certificate, any unexpended funds shall become the permanent property of the issuer (HMA or KMA).

        3.2.5      The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the U.S., or any principle of common law, that provides for how residual amounts in a settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement.  Although the parties expressly agree that this settlement is not governed by California Code of Civil Procedure section 384(b) or other similar laws and does not create a settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Settlement Class Members nonetheless expressly acknowledge

EXHIBIT 1 - PAGE 53

and agree that, to the extent permitted by law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

3.2.6    The Parties acknowledge and agree that the forms of compensation set forth in paragraphs 3.2.1 through 3.2.3 do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

4.    Claim Process.

4.1.    The Parties hereby agree that the Claim Form for this settlement shall be materially the same as Exhibit D to this Settlement Agreement.  HMA shall mail the Claim Form to each Class Member who is a present or former owner or lessee of a Class Vehicle sold by HMA. KMA shall mail the Claim Form to each Class Member who is a present or former owner or lessee of a Class Vehicle sold by KMA.  HMA and KMA shall mail such Claim Form with the Class Notice (identified below in Section 11).

4.2.    In order for a Settlement Class Member to receive compensation pursuant to Section 3, the Claim Form must be properly completed, signed, and mailed to the appropriate addressee identified on the Claim Form with a postmark dated within nine (9) months of the last date permitted by the District Court for mailing of the Class Notice.

4.3.    To the extent that HMA or KMA receives a correctly completed Claim Form with any necessary supporting documentation from a qualifying Settlement Class Member, HMA or KMA (as the case may be) shall issue compensation within ninety (90) days of the later of (i) the Effective Date or (ii) receipt of such completed Claim Form.

- 12 -

EXHIBIT 1 - PAGE 54

5.      Election of Remedies.

5.1.    Except as set forth in Section 3.1.8 and Section 5.3 of this Settlement Agreement, each Settlement Class Member who elects to submit a valid Claim Form to receive a form of compensation under this Settlement Agreement shall no longer be entitled to receive any further compensation pursuant to the Reimbursement Program.

5.2.    Except as set forth in Section 3.1.8, to the extent that a Settlement Class Member previously received benefits pursuant to the Reimbursement Program and subsequently elects to receive a form of compensation pursuant to this Settlement Agreement, the amount of any previously received benefits shall be deducted from the amount of any compensation provided pursuant to Section 3.2 of this Settlement Agreement, provided that any such deduction shall be reduced to the extent that the Settlement Class Member elects to re-pay previously received benefits by submitting payment in the form of a check or money order at the time that the Settlement Class Member submits the Claim Form.  In determining the amount of compensation due to any Settlement Class Member pursuant to Section 3.2.2 or Section 3.2.3 of this Settlement Agreement, the benefit shall be calculated after considering any setoff for compensation previously received and any re-payment of benefits, i.e., the 150% and 200% values set forth in Sections 3.2.2 and Sections 3.2.3 of this Settlement Agreement shall be calculated on the basis of the *net* benefit payable to the Settlement Class Member after making any reduction for benefits previously received and any addition for re-payment of benefits.

5.3.    If the applicable amount of compensation selected under paragraph 3.2.1, 3.2.2, or 3.2.3 (after considering any reductions for benefits previously received or increases for any re-payments, pursuant to Section 5.2) is less than the amount already paid to the Settlement Class Member pursuant to the Reimbursement Program, such Settlement Class Member shall

- 13 -

EXHIBIT 1 - PAGE 55

remain in the Reimbursement Program, provided that nothing in this Section 5.3 shall be interpreted to bar the benefit set forth in Section 3.1.8.

      6.    <u>Communications with Dealers.</u>

      6.1    The Parties acknowledge that each authorized Hyundai dealer and each authorized Kia dealer is owned and operated independently from HMA or KMA, respectively, and that neither HMA nor KMA has authority to direct any authorized Hyundai or Kia dealer to take any action pursuant to this Settlement Agreement.

      6.2    Promptly after the Effective Date of this Settlement Agreement (defined in Section 14), HMA and KMA shall each request, in good faith, that their authorized dealers assist Settlement Class Members who visit the dealer for the purpose of requesting a mileage check pursuant to the Reimbursement Program, by providing such Settlement Class Members who have not submitted a Claim Form with a flyer substantially in the form of Exhibit E.  HMA and KMA shall request that their authorized dealers provide such assistance until the deadline for the submission of Claim Forms.

      7.    <u>Settlement Administration.</u>  HMA and KMA shall bear the costs of settlement administration.

      8.    <u>Confirmatory Discovery.</u>  The Parties hereby agree that, as of the Effective Date of this Agreement, confirmatory discovery will be deemed completed.  The parties acknowledge that the materials produced in connection with confirmatory discovery will be relied on in the settlement approval process.

      9.    <u>Obtaining Court Approval of the Agreement.</u>

      9.1    Upon full execution of this Agreement, the Parties shall request that the Court enter an order substantially in the form of Exhibit F hereto granting preliminary approval to the settlement described in this Agreement, approving the forms and methods of notice to the Settlement Class, and authorizing the dissemination of notice to the Settlement Class.

- 14 -

EXHIBIT 1 - PAGE 56

9.2     If the Court does not preliminarily approve the settlement described in this Agreement, the Agreement shall terminate and be of no force or effect, unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain preliminary approval of the settlement described herein.

9.3     If the Court does not grant final approval of the settlement described in this Agreement, the Agreement shall terminate and be of no force or effect, unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain final approval of the settlement described herein.

10.     <u>Withdrawal from Settlement.</u>

10.1     If any of the conditions set forth below occurs and either (a) all Class Representatives or (b) HMA or (c) KMA gives notice that such party or parties wish to withdraw from this Agreement, then this Agreement shall terminate and be null and void;

10.1.1     any objections to the proposed settlement are sustained, which results in changes to the settlement described in this Agreement that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

10.1.2     any attorney general or other Person is allowed to intervene in the MDL Litigation and such intervention results in changes to the settlement described in this Agreement that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

10.1.3     the final approval of the settlement described in this Agreement results in changes that the withdrawing Party did not agree to and that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);

10.1.4     more than 3% of the Class Members exclude themselves from the settlement described in this Agreement;

- 15 -

EXHIBIT 1 - PAGE 57

10.1.5     the Court determines that Defendants have failed to comply with the confirmatory discovery process in good faith and such failure prejudiced Settlement Class Members;

10.1.6     the materials produced in the discovery process before the Effective Date of this Agreement reveal new information to the Parties which materially changes the facts relied upon in seeking approval of this Agreement; or

10.1.7     the final approval of the settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing Party deems any such modification in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement) or (ii) reversed by an appellate court.

11.     Notice.

11.1     A copy of the Notice of Class Action Settlement substantially in the form attached hereto as Exhibit G (the "Class Notice"), shall be mailed by first class mail to every Class Member who is reasonably ascertainable from an available R.L. Polk database (or a similar database).  Such mailing shall be completed, at the sole expense of HMA and KMA not less than forty-five days prior to the date by which objections to the Agreement and requests for exclusion from the Settlement Class are due, provided that HMA and KMA shall have at least ninety (90) days from receiving notice of the District Court's preliminary approval of the settlement described in this Agreement to initiate such mailing.

11.2     HMA and KMA shall each establish and maintain a website dedicated to the settlement ("Settlement Website") and a toll-free customer service number that Class Members may call.  The Class Notice shall include the address (URL) of the Settlement Website and the toll-free number.  HMA and KMA shall maintain the Settlement Website and toll-free number at least until 30 days following the deadline for the submission of Claim Forms, after

- 16 -

EXHIBIT 1 - PAGE 58

which time HMA and KMA may direct Class Members to a different website and/or toll-free customer service number.

      11.3     The Settlement Website shall enable Class Members to access and download the Class Notice and Claim Form and will provide answers to frequently asked questions (FAQs).

      11.4     The toll-free number shall allow Class Members to request copies of the Class Notice and Claim Form by mail, provide updated address information, locate an authorized dealer, and ask questions concerning the proposed settlement and the process for obtaining the relief available to them pursuant to this Agreement.  HMA and KMA shall provide their customer service personnel with appropriate information to assist Class Members.

      11.5     The Class Notice shall provide a procedure whereby Class Members may exclude themselves from the Settlement Class by mailing a request for exclusion.  Any Class Member who does not timely and validly request exclusion shall be a Settlement Class Member and shall be bound by the terms of this Agreement.

      11.6     The Class Notice shall also provide a procedure for Class Members to object to the settlement set forth herein and/or to the attorneys' fees and costs for which Class Counsel will petition the Court.

      11.7     The Class Representatives and HMA agree to a joint press release in the form of Exhibit I to be issued on or about the day that this Agreement is first filed with the Court.  The Class Representatives and KMA agree to a joint press release in the form of Exhibit J to be issued on or about the day that this Agreement is first filed with the Court.  Excepting of Exhibits I and J, neither the Parties nor their counsel shall issue (or cause any other Person to issue) any press release concerning this Agreement or the settlement set forth herein, unless otherwise agreed to in writing and neither the Parties nor their counsel shall make (or cause any other Person to make) any statements of any kind to the press concerning this Agreement or the settlement set forth herein, except that a Party or a Party's counsel may respond to an inquiry

- 17 -

EXHIBIT 1 - PAGE 59

from a member of the press by (a) directing the member of the press to a public resource to review or obtain a copy of this Agreement or the Class Notice or (b) by supplying additional information to the member of the press, provided that the responding Party will provide such additional information to the other Parties as promptly as practicable.  A Party or a Party's counsel shall provide notice to the other Parties before responding to a press inquiry whenever reasonably possible.  If such notice cannot reasonably be provided before responding to a press inquiry, the responding Party or Party's Counsel shall notify the other Parties promptly after responding to the press inquiry.  Class Counsel shall have the right to provide a link to the Settlement Website(s) on its firm website.

12.     Incentive Awards and Attorneys' Fees and Expenses.

12.1     As part of the settlement set forth herein, and subject to Court approval, HMA and KMA hereby agree to pay reasonable attorneys' fees and expenses to Class Counsel, as well as reasonable incentive awards for the Class Representatives.  In the event that any Class Representatives are co-owners/lessees of a single Class Vehicle, such co-owners collectively will be entitled to a single incentive award.  Such incentive awards shall be paid to Class Counsel within thirty (30) days of the Effective Date of the Settlement Agreement.

12.2     The Parties have not begun negotiations regarding the amount of attorneys' fees and expenses requested by Class Counsel.  After Class Counsel discloses the amount of fees and expenses sought, the Settlement Website referenced in Section 11.2 shall set forth such amounts and shall be updated promptly to reflect any subsequent changes in such amount.

12.3     Payment of attorneys' fees and expenses is subject to HMA and KMA's receipt of Class Counsel's complete wiring instructions and W-9 documentation, and subject to Class Counsel's obligation to make appropriate refunds or repayments to HMA and KMA of the fees and expenses received if, as the result of any appeal and/or further proceedings on remand, or successful collateral attack, the amounts awarded are reduced.  If the settlement set forth

- 18 -

EXHIBIT 1 - PAGE 60

herein becomes effective and the Court approves the attorneys' fees and expenses requested by Class Counsel, HMA and KMA shall pay such attorneys' fees and expenses within thirty (30) days after the later of:  (i) the Effective Date of this Agreement and (ii) receipt by HMA and KMA of Class Counsel's complete wiring instructions and W-9 documentation.

12.4    The payment by HMA and KMA of the attorneys' fees and expenses is separate from and in addition to the other relief afforded the Settlement Class Members in this Agreement.  Thus, the Parties shall request that the Court consider the procedure for and the grant or denial or allowance or disallowance by the Court of the award of attorneys' fees and expenses separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth herein, although any such separate consideration may be part of the settlement approval hearing; and any order or proceedings relating to the award of attorneys' fees and expenses, or any appeal from any order related thereto or reversal or modification thereof, shall not operate to terminate this Agreement or affect or delay the finality of any judgment approving the settlement set forth herein.

12.5    The Parties acknowledge that neither HMA nor KMA has agreed to pay any fees or expenses of any plaintiffs' counsel or any class representative, other than Class Counsel (as defined in Section 1.3) and the Named Plaintiffs (as defined in the first paragraph of this Agreement).

13.    <u>Final Judgment; Release of Claims.</u>

13.1    Upon the Court's final approval of this Settlement Agreement and the settlement set forth herein, the Parties shall request that a final order substantially in the form attached hereto as Exhibit H be entered that:  (a) dismisses the claims for the Settlement Class Members with prejudice; (b) dismisses with prejudice the Hunter Litigation, the Brady Litigation; (c) dismisses without prejudice *Espinosa v. HMA*, et al. No. 2:12-cv-00800 GW (FFMx), and all other lawsuits centralized in the MDL in which the named plaintiffs in such lawsuit(s) did not timely exclude themselves from the settlement set forth herein; and (d) retains

- 19 -

EXHIBIT 1 - PAGE 61

jurisdiction to resolve any future disputes arising out of the terms and conditions of this Agreement and the settlement set forth herein ("Final Order").

13.2    As of the Effective Date of this Agreement as defined below, the Releasors (as defined in Section 1) shall be deemed to hereby fully and irrevocably release, waive, and discharge the Releasees (as defined in Section 1), whether or not specifically named herein, from any and all past, present, and future liabilities, claims, causes of action (whether in contract, tort or otherwise, including statutory, common law, property, and equitable claims), damages, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, or suspected or unsuspected, that (a) were asserted in the MDL Litigation (including lawsuits transferred to and centralized in the MDL Litigation) or (b) relate to (i) the fuel economy of one or more Class Vehicles (including, but not limited to, the actual or reported miles-per-gallon of fuel obtained or achieved in a Class Vehicle); (ii) the marketing or advertising of the fuel economy of such Class Vehicles and any related disclosures or alleged nondisclosures; or (iii) the disclosures, regulatory filings, transactions, actions, conduct, or events that are the subject of the MDL Litigation regarding the Class Vehicles ("Released Claims"); provided that the Released Claims shall include any unknown claims that a Settlement Class Member does not know to exist against any of the Releasees that relate to the fuel economy of one or more Class Vehicles, which, if known, might have affected his or her decision regarding the settlement of the MDL Litigation; provided further that the Class Representatives acknowledge that they and the other Settlement Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this release but the Released Claims shall nonetheless be deemed to include any and all Released Claims without regard to the existence of such different or additional facts concerning each of the Releasees.  Notwithstanding the foregoing, no claims are released hereunder for:  (i) personal injury; (ii) damage to tangible property other

- 20 -

than a Class Vehicle; or (iii) any and all claims that pertain to anything other than the Class Vehicles.

13.3     The release effected by this Settlement Agreement is intended to be a specific release and not a general release.  If, despite, and contrary to the Parties' intention, any court construes the release as a general release under California law and determines that Section 1542 of the California Civil Code is applicable to the release, the Class Representatives, on behalf of themselves and all Settlement Class Members, hereby expressly waive the provisions of such Section 1542, which reads as follows:

> Certain Claims Not Affected By General Release:  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each of the Class Representatives expressly acknowledges that the Class Representative has been advised by Class Counsel of the contents and effect of Section 1542, and with knowledge, each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Settlement Class Members, whatever benefits the Class Representatives and the Settlement Class Members may have had pursuant to such section.  Each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Settlement Class Members, the benefit of any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.

14.     Effective Date of the Agreement.

14.1     The Effective Date of this Agreement shall be the first day after which all of the following events and conditions of this Agreement have been met or have occurred:

14.1.1     The Parties' representatives listed below have all executed this Agreement;

- 21 -

EXHIBIT 1 - PAGE 63

14.1.2     The Court has preliminarily approved the Settlement embodied in this Agreement and authorized the dissemination of notice to the Class Members by entry of an order substantially in the form of Exhibit F hereto;

14.1.3     The Court has entered the Final Order;

14.1.4     The Final Order has become final in that the time for appeal has expired or, if an appeal is taken and the Final Order is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Order is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, the Final Order shall not be considered "final."

15.     <u>No Admission of Liability.</u>

15.1     The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with their Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party or Person.  If this Agreement is terminated or otherwise becomes null and void, the enforceability of this Section shall survive such event.

15.2     Other than a proceeding that takes place in the MDL Litigation in connection with the settlement described herein, this Agreement, acts performed in furtherance of the Agreement or the settlement set forth herein, and documents executed in furtherance of the Agreement or the settlement set forth herein, may not be deemed or used as evidence of an admission or other statement supporting:  (a) the validity of any claim made by the Class Representatives, Settlement Class Members, or Class Counsel (including the appropriateness of class certification); (b) any wrongdoing or liability of the Releasees; or (c) any fault or omission

- 22 -

EXHIBIT 1 - PAGE 64

of the Releasees.  For the avoidance of doubt, it is the Parties intention that the restriction set forth in this Section 15.2 will apply in all courts, administrative agencies, and other proceedings.

       15.3     This Agreement shall not be offered or be admissible in evidence against HMA or KMA, or any of their respective affiliates, or cited or referred to in any action or proceeding, except in an action or proceeding that is in furtherance of its terms or brought to enforce its terms.

       15.4     If this Agreement is terminated or otherwise becomes null and void, the settlement described herein shall have no further force and effect with respect to any Party to the MDL Litigation and neither this Agreement nor any statements made in connection with the settlement negotiations leading to this Agreement shall be offered in evidence against HMA or KMA, or any of their respective affiliates, or cited or referred to in the MDL Litigation or in any other action or proceeding.  If this Agreement is terminated or otherwise becomes null and void, the enforceability of this Section shall survive such event.

16.     <u>Miscellaneous Provisions.</u>

       16.1     The Class Representatives, individually and as representatives of the Class defined above, expressly waive and disclaim any claim of unconscionablility relating to any provision of this Agreement, specifically including, but not limited to, Section 3.2.

       16.3     This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  This Agreement supersedes all prior representations, agreements, understandings, both written and oral, among the Parties, or any of them, with respect to the subject matter of this Agreement.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein, and no Party is relying on any prior oral or written representations, agreements, understandings, or undertakings with respect to the subject matter of this Agreement.

- 23 -

EXHIBIT 1 - PAGE 65

16.4     This Agreement shall be construed in accordance with, and be governed by, the laws of the State of California, without regard for the effect of California's choice of law principles.

16.5     Nothing in this agreement shall waive the Parties' duties under applicable covenants of good faith and fair dealing, which are expressly acknowledged and agreed to by both parties.

16.6     As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

16.7     Each Person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

16.8     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  A scanned, photocopied, or facsimile signature shall be deemed an original for purposes of executing this Agreement.

16.9     The Parties to this Agreement agree to prepare and execute all documents, to seek Court approvals, defend Court approvals, and to do all things reasonably necessary to complete the settlement described in this Agreement, provided that nothing in this Agreement should be interpreted to require a Class Representative to support the settlement set forth in this Agreement unless such Class Representative concludes that the settlement is fair, reasonable and adequate.

16.10    In any construction to be made of this Agreement, this Agreement shall not be construed as having been drafted solely by one or another of the Parties.

- 24 -

16.11    Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Class Notice.

16.12    This Agreement may be amended or modified only by a written instrument signed by the Parties' counsel and approved by the Court.

16.13    This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, successors, and assigns.

- 25 -

EXHIBIT 1 - PAGE 67

For Defendant Hyundai Motor America

DATED:  December 23, 2013

By _____
W. Gerald Flannery, Jr.
Executive Vice President, Secretary
and General Counsel

DATED:  December 23, 2013

By _____
Shon Morgan
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
65 S. Figueroa St., 10th Floor
Los Angeles CA 90017
Attorneys for Defendant Hyundai Motor America

DATED:  December 23, 2013

By _____
Michael L. Kidney
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Attorneys for Defendant Hyundai Motor America

- 26 -

EXHIBIT 1 - PAGE 68

For Defendant Hyundai Motor America

DATED:  December 23, 2013          By_____
                                      W. Gerald Flannery, Jr.
                                      Executive Vice President, Secretary
                                      and General Counsel

DATED:  December 23, 2013          By_____
                                      Shon Morgan
                                      QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
                                      65 S. Figueroa St., 10th Floor
                                      Los Angeles CA 90017
                                      Attorneys for Defendant Hyundai Motor America

DATED:  December 23, 2013          By_____
                                      Michael L. Kidney
                                      HOGAN LOVELLS US LLP
                                      555 Thirteenth Street, NW
                                      Washington, DC 20004
                                      Attorneys for Defendant Hyundai Motor America

- 26 -

EXHIBIT 1 - PAGE 69

For Defendant Hyundai Motor America

DATED:  December 23, 2013             By_____
                                         W. Gerald Flannery, Jr.
                                         Executive Vice President, Secretary
                                         and General Counsel

DATED:  December 23, 2013             By_____
                                         Shon Morgan
                                         QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
                                         65 S. Figueroa St., 10th Floor
                                         Los Angeles CA 90017
                                         Attorneys for Defendant Hyundai Motor America

DATED:  December 23, 2013             By_____
                                         Michael L. Kidney
                                         HOGAN LOVELLS US LLP
                                         555 Thirteenth Street, NW
                                         Washington, DC 20004
                                         Attorneys for Defendant Hyundai Motor America

- 26 -

EXHIBIT 1 - PAGE 70

For Defendant Kia Motors America, Inc.

DATED: _DECEMBER 23, 2013_   By _____

John Yoon
Executive Vice President, HR/Administration/
Diversity Relations & General Counsel

DATED:_____   By_____

James P. Feeney
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304
Attorneys for Defendant Kia Motors
America, Inc.

BDC - 029016/000012 - 4715130 v20

EXHIBIT 1 - PAGE 71

For Defendant Kia Motors America, Inc.

DATED:_____          By_____
                                     John Yoon
                                     Executive Vice President, HR/Administration/
                                     Diversity Relations & General Counsel

DATED: December 23, 2013          By _____
                                     James P. Feeney
                                     DYKEMA GOSSETT PLLC
                                     39577 Woodward Avenue, Suite 300
                                     Bloomfield Hills, MI  48304
                                     Attorneys for Defendant Kia Motors
                                     America, Inc.

EXHIBIT 1 - PAGE 72

For Named Plaintiffs, on behalf of themselves and the
Proposed Settlement Class

DATED: December 23, 2013                 By

                                         Robert B. Carey
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         11 West Jefferson, Suite 1000
                                         Phoenix, Arizona 85003
                                         Attorneys for *Hunter* and *Brady* Plaintiffs

DATED: December 23, 2013                 By

                                         Richard D. McCune
                                         McCuneWright, LLP
                                         2068 Orange Tree Lane, Ste. 216
                                         Redlands, CA 92374
                                         Attorneys for *Espinosa* Plaintiffs

- 28 -

EXHIBIT 1 - PAGE 73

For Named Plaintiffs, on behalf of themselves and the
Proposed Settlement Class

DATED:  December 23, 2013          By_____

Robert B. Carey
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona  85003
Attorneys for *Hunter* and *Brady* Plaintiffs

DATED:  December 23, 2013          By_____

Richard D. McCune
McCuneWright, LLP
2068 Orange Tree Lane, Ste. 216
Redlands, CA  92374
Attorneys for *Espinosa* Plaintiffs

- 28 -

\\DC - 029016/000012 - 4715130 v20

EXHIBIT 1 - PAGE 74

## <u>LIST OF EXHIBITS</u>

<u>Exhibit A</u>:  List Identifying Hyundai Class Vehicles and Kia Class Vehicles

<u>Exhibit B</u>:  Schedule with Compensation Amounts for Current Hyundai Owners

<u>Exhibit C</u>:  Schedule with Compensation Amounts for Current Kia Owners

<u>Exhibit D</u>:  Claim Form

<u>Exhibit E</u>:  Dealer Flyer

<u>Exhibit F</u>:  Proposed Order granting preliminary approval to the Agreement, approving the forms and methods of notice to the Settlement Class and authorizing the dissemination of notice to the Settlement Class.

<u>Exhibit G</u>:  Notice of Class Action Settlement

<u>Exhibit H</u>:  Proposed Final Order

<u>Exhibit I</u>:  Joint Press Release Issued by Class Representatives and HMA

<u>Exhibit J</u>:  Joint Press Release Issued by Class Representatives and KMA

- 29 -

EXHIBIT 1 - PAGE 75

**<u>Exhibit A</u>**

EXHIBIT 1 - PAGE 76

Exhibit A

Class Vehicles
("MY" in the lists below stands for "Model Year")

| **HYUNDAI VEHICLES** | **KIA VEHICLES** |
| --- | --- |

**HYUNDAI VEHICLES**

2013 MY Accent (automatic transmission; 1.6 liter engine)

2013 MY Accent (manual transmission; 1.6 liter engine)

2013 MY Azera (automatic transmission; 3.3 liter engine)

2013 MY Elantra (automatic transmission; 1.8 liter engine)

2013 MY Elantra (manual transmission; 1.8 liter engine)

2013 MY Elantra Coupe (automatic transmission; 1.8 liter engine)

2013 MY Elantra Coupe (manual transmission; 1.8 liter engine)

2013 MY Elantra GT (automatic transmission; 1.8 liter engine)

2013 MY Elantra GT (manual transmission; 1.8 liter engine)

2013 MY Genesis (automatic transmission; 3.8 liter engine)

2013 MY Santa Fe Sport 2WD Turbo (automatic transmission; 2.0 liter engine)

2013 MY Santa Fe Sport 2WD (automatic transmission; 2.4 liter engine)

2013 MY Santa Fe Sport 4WD Turbo (automatic transmission; 2.0 liter engine)

2013 MY Santa Fe Sport 4WD (automatic transmission; 2.4 liter engine)

2013 MY Tucson 2WD (automatic transmission; 2.0 liter engine)

2013 MY Tucson 2WD (automatic transmission; 2.4 liter engine)

2013 MY Tucson 2WD (manual transmission; 2.0 liter engine)

2013 MY Tucson 4WD (automatic transmission; 2.4 liter engine)

2013 MY Veloster Turbo (automatic transmission; 1.6 liter engine)

**KIA VEHICLES**

2013 MY Rio 2WD (automatic transmission; 1.6 liter engine)

2013 MY Rio 2WD (manual transmission; 1.6 liter engine)

2013 MY Rio 2WD (automatic (Eco) transmission; 1.6 liter engine)

2013 MY Sorento 2WD (automatic transmission; 2.4 liter engine (GDI))

2013 MY Sorento 4WD (automatic transmission; 2.4 liter engine (GDI))

2013 MY Soul 2WD (automatic transmission; 1.6 liter engine)

2013 MY Soul 2WD (manual transmission; 1.6 liter engine)

2013 MY Soul 2WD (automatic transmission; 2.0 liter engine)

2013 MY Soul 2WD (manual transmission; 2.0 liter engine)

2013 MY Soul ECO 2WD (automatic transmission; 1.6 liter engine)

2013 MY Soul ECO 2WD (automatic transmission; 2.0 liter engine)

2013 MY Sportage 2WD (automatic transmission; 2.0 liter engine)

2013 MY Sportage 2WD (automatic transmission; 2.4 liter engine)

2013 MY Sportage 2WD (manual transmission; 2.4 liter engine)

2013 MY Sportage 4WD (automatic transmission; 2.0 liter engine)

2013 MY Sportage 4WD (automatic transmission; 2.4 liter engine)

2013 MY Sportage 4WD (manual transmission; 2.4 liter engine)

2012 MY Rio 2WD (automatic transmission; 1.6 liter engine)

2012 MY Rio 2WD (manual transmission; 1.6 liter

EXHIBIT 1 - PAGE 77

2013 MY Veloster (automatic transmission; 1.6 liter engine)

2013 MY Veloster (manual transmission; 1.6 liter engine)

2013 MY Veloster Turbo (manual transmission; 1.6 liter engine)

2012 MY Accent (automatic transmission; 1.6 liter engine)

2012 MY Accent (manual transmission; 1.6 liter engine)

2012 MY Azera (automatic transmission; 3.3 liter engine)

2012 MY Elantra (automatic transmission; 1.8 liter engine)

2012 MY Elantra (manual transmission; 1.8 liter engine)

2012 MY Genesis (automatic transmission; 3.8 liter engine)

2012 MY Genesis (automatic transmission; 4.6 liter engine)

2012 MY Genesis (automatic transmission; 5.0 liter engine)

2012 MY Genesis R-Spec (automatic transmission; 5.0 liter engine)

2012 MY Sonata Hybrid Electric Vehicle (automatic transmission; 2.4 liter engine)

2012 MY Tucson 2WD (automatic transmission; 2.0 liter engine)

2012 MY Tucson 2WD (automatic transmission; 2.4 liter engine)

2012 MY Tucson 2WD (manual transmission; 2.0 liter engine)

2012 MY Tucson 4WD (automatic transmission; 2.4 liter engine)

2012 MY Veloster (automatic transmission; 1.6 liter engine)

2012 MY Veloster (manual transmission; 1.6 liter engine)

2011 MY Elantra (automatic transmission; 1.8 liter engine)

2011 MY Elantra (manual transmission; 1.8 liter engine)

2011 MY Sonata Hybrid Electric Vehicle (automatic transmission; 2.4 liter engine)

2012 MY Sorento 2WD (automatic transmission; 2.4 liter engine (GDI))

2012 MY Sorento 4WD (automatic transmission; 2.4 liter engine (GDI))

2012 MY Soul 2WD (automatic transmission; 1.6 liter engine)

2012 MY Soul 2WD (manual transmission; 1.6 liter engine)

2012 MY Soul 2WD (automatic transmission; 2.0 liter engine)

2012 MY Soul 2WD (manual transmission; 2.0 liter engine)

2012 MY Soul ECO 2WD (automatic transmission; 1.6 liter engine)

2012 MY Soul ECO 2WD (automatic transmission; 2.0 liter engine)

2012 MY Sportage 2WD (automatic transmission; 2.0 liter engine)

2012 MY Sportage 2WD (automatic transmission; 2.4 liter engine)

2012 MY Sportage 2WD (manual transmission; 2.4 liter engine)

2012 MY Sportage 4WD (automatic transmission; 2.0 liter engine)

2012 MY Sportage 4WD (automatic transmission; 2.4 liter engine)

2012 MY Sportage 4WD (manual transmission; 2.4 liter engine)

2012 MY Optima HEV 2WD (automatic transmission; 2.4 liter engine)

2011 MY Optima HEV 2WD (automatic transmission; 2.4 liter engine)

EXHIBIT 1 - PAGE 78

\\DC - 029016/000012 - 5303326 v2

EXHIBIT 1 - PAGE 79

**Exhibit B**

EXHIBIT 1 - PAGE 80

**EXHIBIT B**
**SCHEDULE WITH COMPENSATION AMOUNTS FOR CURRENT  HYUNDAI OWNERS & LESSEES**

| Model | Current Original Owner | Current Lessee | Current Fleet Owner |
|---|---|---|---|
| **2013 Model Year** | | | |
| 2013 Accent (automatic transmission; 1.6 liter engine) | $590 | $335 | $305 |
| 2013 Accent (manual transmission; 1.6 liter engine) | $590 | $330 | $300 |
| 2013 Azera (automatic transmission; 3.3 liter engine) | $480 | $280 | $250 |
| 2013 Elantra (automatic transmission; 1.8 liter engine) | $345 | $195 | $175 |
| 2013 Elantra (manual transmission; 1.8 liter engine) | $345 | $195 | $175 |
| 2013 Elantra Coupe (automatic transmission; 1.8 liter engine) | $240 | $140 | $125 |
| 2013 Elantra Coupe (manual transmission; 1.8 liter engine) | $350 | $195 | $175 |
| 2013 Elantra GT (automatic transmission; 1.8 liter engine) | $715 | $420 | $375 |
| 2013 Elantra GT (manual transmission; 1.8 liter engine) | $480 | $280 | $250 |
| 2013 Genesis (automatic transmission; 3.8 liter engine) | $715 | $420 | $375 |
| 2013 Santa Fe Sport 2WD Turbo (automatic transmission; 2.0 liter engine) | $715 | $420 | $375 |
| 2013 Santa Fe Sport 2WD (automatic transmission; 2.4 liter engine) | $715 | $420 | $375 |
| 2013 Santa Fe Sport 4WD Turbo (automatic transmission; 2.0 liter engine) | $715 | $420 | $375 |
| 2013 Santa Fe Sport 4WD (automatic transmission; 2.4 liter engine) | $480 | $280 | $250 |
| 2013 Tucson 2WD (automatic transmission; 2.0 liter engine) | $480 | $280 | $250 |
| 2013 Tucson 2WD (automatic transmission; 2.4 liter engine) | $240 | $140 | $125 |
| 2013 Tucson 2WD (manual transmission; 2.0 liter engine) | $480 | $280 | $250 |
| 2013 Tucson 4WD (automatic transmission; 2.4 liter engine) | $480 | $280 | $250 |
| 2013 Veloster Turbo (automatic transmission; 1.6 liter engine) | $240 | $140 | $125 |
| 2013 Veloster (automatic transmission; 1.6 liter engine) | $585 | $330 | $300 |
| 2013 Veloster (manual transmission; 1.6 liter engine) | $345 | $195 | $175 |
| 2013 Veloster Turbo (manual transmission; 1.6 liter engine) | $480 | $280 | $250 |
| | | | |
| **2012 Model Year** | | | |
| 2012 Accent (automatic transmission; 1.6 liter engine) | $530 | $290 | $275 |
| 2012 Accent (manual transmission; 1.6 liter engine) | $510 | $280 | $265 |
| 2012 Azera (automatic transmission; 3.3 liter engine) | $515 | $305 | $275 |
| 2012 Elantra (automatic transmission; 1.8 liter engine) | $320 | $165 | $160 |
| 2012 Elantra (manual transmission; 1.8 liter engine) | $320 | $165 | $160 |
| 2012 Genesis (automatic transmission; 3.8 liter engine) | $450 | $270 | $240 |
| 2012 Genesis (automatic transmission; 4.6 liter engine) | $600 | $355 | $315 |
| 2012 Genesis (automatic transmission; 5.0 liter engine) | $600 | $355 | $315 |
| 2012 Genesis R-Spec (automatic transmission; 5.0 liter engine) | $675 | $400 | $355 |
| 2012 Sonata Hybrid Electric Vehicle (automatic transmission; 2.4 liter engine) | $320 | $170 | $160 |
| 2012 Tucson 2WD (automatic transmission; 2.0 liter engine) | $320 | $190 | $170 |
| 2012 Tucson 2WD (automatic transmission; 2.4 liter engine) | $365 | $210 | $190 |
| 2012 Tucson 2WD (manual transmission; 2.0 liter engine) | $420 | $245 | $220 |
| 2012 Tucson 4WD (automatic transmission; 2.4 liter engine) | $425 | $245 | $220 |
| 2012 Veloster (automatic transmission; 1.6 liter engine) | $535 | $320 | $285 |
| 2012 Veloster (manual transmission; 1.6 liter engine) | $360 | $200 | $190 |
| | | | |
| **2011 Model Year** | | | |
| 2011 Elantra (automatic transmission; 1.8 liter engine) | $320 | $160 | $160 |
| 2011 Elantra (manual transmission; 1.8 liter engine) | $345 | $160 | $160 |
| 2011 Sonata Hybrid Electric Vehicle (automatic transmission; 2.4 liter engine) | $280 | $140 | $140 |

EXHIBIT 1 – PAGE 81

**Exhibit C**

EXHIBIT 1 - PAGE 82

*Hunter/Brady v Kia*
**Exhibit C to Settlement Agreement**
**Schedule of Compensation Amount Value for Current Kia Owners/Lessees**

| Affected Vehicle Model List | Current Original Owner Retail | Current Lessee | Current Fleet |
|---|---|---|---|
| **2013MY** | | | |
| 2013 Rio (A-6, 1.6L, 4cyl.) | $ 475 | $ 275 | $ 245 |
| 2013 Rio (M-6, 1.6L, 4cyl.) | $ 475 | $ 275 | $ 245 |
| 2013 Rio Eco (A-6, 1.6L, 4cyl.) | $ 475 | $ 275 | $ 245 |
| 2013 Sorento 2WD (A-6, 2.4L, GDI) | $ 235 | $ 135 | $ 125 |
| 2013 Sorento 4WD (A-6, 2.4L, GDI) | $ 475 | $ 275 | $ 245 |
| 2013 Soul (A-6, 1.6L, 4cyl.) | $ 710 | $ 410 | $ 370 |
| 2013 Soul (A-6, 2.0L, 4cyl.) | $ 1,420 | $ 820 | $ 740 |
| 2013 Soul (M-6, 1.6L, 4cyl.) | $ 710 | $ 410 | $ 370 |
| 2013 Soul (M-6, 2.0L, 4cyl.) | $ 950 | $ 545 | $ 495 |
| *2013 Soul Eco (A-6, 1.6L, 4cyl.) | $ - | $ - | $ - |
| 2013 Soul Eco (A-6, 2.0L, 4cyl.) | $ 1,185 | $ 685 | $ 615 |
| 2013 Sportage 2WD (A-6, 2.0L, 4cyl.) | $ 475 | $ 275 | $ 245 |
| 2013 Sportage 2WD (A-6, 2.4L, 4cyl.) | $ 235 | $ 135 | $ 125 |
| *2013 Sportage 2WD (M-6, 2.4L, 4cyl.) | $ - | $ - | $ - |
| 2013 Sportage 4WD (A-6, 2.0L, 4cyl.) | $ 475 | $ 275 | $ 245 |
| 2013 Sportage 4WD (A-6, 2.4L, 4cyl.) | $ 475 | $ 275 | $ 245 |
| *2013 Sportage 4WD (M-6, 2.4L, 4cyl.) | $ - | $ - | $ - |
| | | | |
| **2012MY** | | | |
| 2012 Optima Hybrid | $ 235 | $ 135 | $ 125 |
| 2012 Rio (A-6, 1.6L, 4cyl.) | $ 475 | $ 265 | $ 245 |
| 2012 Rio (M-6, 1.6L, 4cyl.) | $ 475 | $ 265 | $ 245 |
| 2012 Sorento 2WD (A-6, 2.4L, GDI/SIDI) | $ 475 | $ 265 | $ 245 |
| 2012 Sorento 4WD (A-6, 2.4L, GDI) | $ 410 | $ 230 | $ 210 |
| 2012 Soul (A-6, 1.6L, 4cyl.) | $ 715 | $ 405 | $ 375 |
| 2012 Soul (A-6, 2.0L, 4cyl.) | $ 1,170 | $ 660 | $ 610 |
| 2012 Soul (M-6, 1.6L, 4cyl.) | $ 950 | $ 535 | $ 495 |
| 2012 Soul (M-6, 2.0L, 4cyl.) | $ 935 | $ 525 | $ 485 |
| *2012 Soul Eco (A-6, 1.6L, 4cyl.) | $ - | $ - | $ - |
| *2012 Soul Eco (A-6, 2.0L, 4cyl.) | $ - | $ - | $ - |
| 2012 Sportage 2WD (A-6, 2.0L, 4cyl.) | $ 475 | $ 265 | $ 245 |
| 2012 Sportage 2WD (A-6, 2.4L, 4cyl.) | $ 475 | $ 265 | $ 245 |
| 2012 Sportage 2WD (M-6, 2.4L, 4cyl.) | $ 475 | $ 265 | $ 245 |
| 2012 Sportage 4WD (A-6, 2.0L, 4cyl.) | $ 95 | $ 55 | $ 50 |
| 2012 Sportage 4WD (A-6, 2.4L, 4cyl.) | $ 475 | $ 265 | $ 245 |
| *2012 Sportage 4WD (M-6, 2.4L, 4cyl.) | - | - | - |
| | | | |
| **2011MY** | | | |
| 2011 Optima Hybrid | $ 170 | $ 85 | $ 90 |
| * There are no reported volumes for these vehicles. | | | |

1

EXHIBIT 1 - PAGE 83

**Exhibit D**

EXHIBIT 1 - PAGE 84

<u>CLAIM FORM</u>

To make a claim in the IN RE HYUNDAI/KIA FUEL ECONOMY LITIGATION settlement, please complete and return this form by U.S. mail, postmarked no later than [9 months after deadline for class notice mailing], to:

For <u>Hyundai Vehicles</u>, mail completed form to:          For <u>Kia Vehicles</u>, mail completed form to:

[CLAIMS ADDRESS]                                          [CLAIMS ADDRESS]

<u>IMPORTANT:  BEFORE FILLING OUT THIS FORM, READ THIS ENTIRE CLAIM FORM AND THE ACCOMPANYING CLASS NOTICE CAREFULLY.</u>

<u>THE CLASS NOTICE CONTAINS ADDITIONAL INFORMATION REGARDING YOUR ELIGIBILITY FOR SETTLEMENT BENEFITS AND OTHER IMPORTANT INFORMATION</u>.

**STEP 1:  Are you a current or former owner or lessee of a vehicle listed below?**  □ YES __   □ NO __
If YES, check the box next to your vehicle model and go to STEP 2.  ("MY" in the list below stands for "Model Year.")
If you own more than one vehicle identified below, use a separate Claim Form for each vehicle.

If NO, you are not a class member and you are not eligible for Settlement Benefits.

|  <u>HYUNDAI VEHICLES</u> | <u>Kia VEHICLES</u> |
|---|---|
| □ 2013 MY Accent (automatic transmission; 1.6 liter engine) | □ 2013 MY Rio 2WD (automatic transmission; 1.6 liter engine) |
| □ 2013 MY Accent (manual transmission; 1.6 liter engine) | □ 2013 MY Rio 2WD (manual transmission; 1.6 liter engine) |
| □ 2013 MY Azera (automatic transmission; 3.3 liter engine) | □ 2013 MY Rio 2WD (automatic (Eco) transmission; 1.6 liter engine) |
| □ 2013 MY Elantra (automatic transmission; 1.8 liter engine) | □ 2013 MY Sorento 2WD (automatic transmission; 2.4 liter engine (GDI)) |
| □ 2013 MY Elantra (manual transmission; 1.8 liter engine) | □ 2013 MY Sorento 4WD (automatic transmission; 2.4 liter engine (GDI)) |
| □ 2013 MY Elantra Coupe (automatic transmission; 1.8 liter engine) | □ 2013 MY Soul 2WD (automatic transmission; 1.6 liter engine) |
| □ 2013 MY Elantra Coupe (manual transmission; 1.8 liter engine) | □ 2013 MY Soul 2WD (manual transmission; 1.6 liter engine) |
| □ 2013 MY Elantra GT (automatic transmission; 1.8 liter engine) | □ 2013 MY Soul 2WD (automatic transmission; 2.0 liter engine) |
| □ 2013 MY Elantra GT (manual transmission; 1.8 liter engine) | □ 2013 MY Soul 2WD (manual transmission; 2.0 liter engine) |
| □ 2013 MY Genesis (automatic transmission; 3.8 liter engine) | □ 2013 MY Soul ECO 2WD (automatic transmission; 1.6 liter engine) |
| □ 2013 MY Santa Fe Sport 2WD Turbo (automatic transmission; 2.0 liter engine) | □ 2013 MY Soul ECO 2WD (automatic transmission; 2.0 liter engine) |
| □ 2013 MY Santa Fe Sport 2WD (automatic transmission; 2.4 liter engine) | □ 2013 MY Sportage 2WD (automatic transmission; 2.0 liter engine) |
| □ 2013 MY Santa Fe Sport 4WD Turbo (automatic transmission; 2.0 liter engine) | □ 2013 MY Sportage 2WD (automatic transmission; 2.4 liter engine) |
| □ 2013 MY Santa Fe Sport 4WD (automatic transmission; 2.4 liter engine) | □ 2013 MY Sportage 2WD (manual transmission; 2.4 liter engine) |
| □ 2013 MY Tucson 2WD (automatic transmission; 2.0 liter engine) | □ 2013 MY Sportage 4WD (automatic transmission; 2.0 liter engine) |
| □ 2013 MY Tucson 2WD (automatic transmission; 2.4 liter engine) | □ 2013 MY Sportage 4WD (automatic transmission; 2.4 liter engine) |

1

EXHIBIT 1 - PAGE 85

- ☐ 2013 MY Tucson 2WD (manual transmission; 2.0 liter engine)
- ☐ 2013 MY Tucson 4WD (automatic transmission; 2.4 liter engine)
- ☐ 2013 MY Veloster Turbo (automatic transmission; 1.6 liter engine)
- ☐ 2013 MY Veloster (automatic transmission; 1.6 liter engine)
- ☐ 2013 MY Veloster (manual transmission; 1.6 liter engine)
- ☐ 2013 MY Veloster Turbo (manual transmission; 1.6 liter engine)
- ☐ 2012 MY Accent (automatic transmission; 1.6 liter engine)
- ☐ 2012 MY Accent (manual transmission; 1.6 liter engine)
- ☐ 2012 MY Azera (automatic transmission; 3.3 liter engine)
- ☐ 2012 MY Elantra (automatic transmission; 1.8 liter engine)
- ☐ 2012 MY Elantra (manual transmission; 1.8 liter engine)
- ☐ 2012 MY Genesis (automatic transmission; 3.8 liter engine)
- ☐ 2012 MY Genesis (automatic transmission; 4.6 liter engine)
- ☐ 2012 MY Genesis (automatic transmission; 5.0 liter engine)
- ☐ 2012 MY Genesis R-Spec (automatic transmission; 5.0 liter engine)
- ☐ 2012 MY Sonata Hybrid Electric Vehicle (automatic transmission; 2.4 liter engine)
- ☐ 2012 MY Tucson 2WD (automatic transmission; 2.0 liter engine)
- ☐ 2012 MY Tucson 2WD (automatic transmission; 2.4 liter engine)
- ☐ 2012 MY Tucson 2WD (manual transmission; 2.0 liter engine)
- ☐ 2012 MY Tucson 4WD (automatic transmission; 2.4 liter engine)
- ☐ 2012 MY Veloster (automatic transmission; 1.6 liter engine)
- ☐ 2012 MY Veloster (manual transmission; 1.6 liter engine)
- ☐ 2011 MY Elantra (automatic transmission; 1.8 liter engine)
- ☐ 2011 MY Elantra (manual transmission 1.8 liter engine)
- ☐ 2011 MY Sonata Hybrid Electric Vehicle (automatic transmission; 2.4 liter engine)

- ☐ 2013 MY Sportage 4WD (manual transmission; 2.4 liter engine)
- ☐ 2012 MY Rio 2WD (automatic transmission; 1.6 liter engine)
- ☐ 2012 MY Rio 2WD (manual transmission; 1.6 liter engine)
- ☐ 2012 MY Sorento 2WD (automatic transmission; 2.4 liter engine (GDI))
- ☐ 2012 MY Sorento 4WD (automatic transmission; 2.4 liter engine (GDI))
- ☐ 2012 MY Soul 2WD (automatic transmission; 1.6 liter engine)
- ☐ 2012 MY Soul 2WD (manual transmission; 1.6 liter engine)
- ☐ 2012 MY Soul 2WD (automatic transmission; 2.0 liter engine)
- ☐ 2012 MY Soul 2WD (manual transmission; 2.0 liter engine)
- ☐ 2012 MY Soul ECO 2WD (automatic transmission; 1.6 liter engine)
- ☐ 2012 MY Soul ECO 2WD (automatic transmission; 2.0 liter engine)
- ☐ 2012 MY Sportage 2WD (automatic transmission; 2.0 liter engine)
- ☐ 2012 MY Sportage 2WD (automatic transmission; 2.4 liter engine)
- ☐ 2012 MY Sportage 2WD (manual transmission; 2.4 liter engine)
- ☐ 2012 MY Sportage 4WD (automatic transmission; 2.0 liter engine)
- ☐ 2012 MY Sportage 4WD (automatic transmission; 2.4 liter engine)
- ☐ 2012 MY Sportage 4WD (manual transmission; 2.4 liter engine)
- ☐ 2012 MY Optima HEV 2WD (automatic transmission; 2.4 liter engine)
- ☐ 2011 MY Optima HEV 2WD (automatic transmission; 2.4 liter engine)

2

**STEP 2:  Did you purchase or lease the vehicle identified in STEP 1 on or before November 2, 2012?**

☐ YES __    ☐ NO __   If YES, go to STEP 3.  If NO, you are not a class member and you are not eligible for Settlement Benefits.

**STEP 3:  Place an X on the line next to the category that describes you and go to STEP 4:**

☐  You are the original purchaser of the vehicle identified in STEP 1 AND you still owned the vehicle on [date of settlement agreement].  You are considered a Current Original Owner.

☐  You are the second or subsequent purchaser of the vehicle identified in STEP 1 AND you still owned the vehicle on [date of the settlement agreement].  You are considered a Current Non-Original Owner.

☐  You are a former or current lessee of the vehicle identified in STEP 1 AND you still leased the vehicle on [date of settlement agreement].  You are considered a Current Lessee.

☐  You are a former owner of the vehicle identified in STEP 1, and you no longer owned the vehicle on [date of settlement agreement].  You are considered a Former Owner.

☐  You are a former lessee of the vehicle identified in STEP 1, and you no longer leased the vehicle on [date of settlement agreement].  You are considered a Former Lessee.

☐  You are acting on behalf of a governmental entity or a corporation or other entity that is the current or former owner of the vehicle identified in STEP 1 and that negotiated the purchase terms directly with Hyundai Motor America or Kia Motors America, Inc., as opposed to one of their authorized dealers (hereinafter referred to as a "Fleet Vehicle") AND the purchase agreement does not contain a repurchase provision AND the vehicle is not available to be rented or leased.

If you checked the prior box, also check one of the two boxes below:

☐  The Fleet Vehicle identified in STEP 1 was still owned on [date of settlement agreement] by the governmental entity or corporation or other entity that purchased them.  You are considered a Current Fleet Owner.

☐  The Fleet Vehicle identified in STEP 1 was no longer owned on [date of settlement agreement] by the governmental entity or corporation or other entity that purchased it.  You are considered a Former Fleet Owner.

**STEP 4:**  Determine the maximum cash value of your Settlement Benefits.  For Current owners and lessees review Schedule A, at the end of the Class Notice:  Find your vehicle model as indicated in answer to STEP 1 on Schedule A, and fill in the number listed under the column corresponding to the category you checked in STEP 3.  For Former owners and lessees, utilize the reimbursement calculator located at hyundaimpginfo.com for Hyundai Class Vehicles or KIAmpginfo.com for Kia Class Vehicles.

Write the number here: _____.  Go to STEP 5

**STEP 5:**  Have you previously registered to receive benefits under the Lifetime Reimbursement Program?

☐ YES __    ☐ NO __   If YES, go to STEP 6.  If NO, go to STEP 7.

**STEP 6:**  You may still choose to receive the up-front payment of lump-sum Settlement Benefits instead of future benefits under the Lifetime Reimbursement Program.  If you choose to receive Settlement Benefits in STEP 7 and select the Debit Card option in STEP 8, you will receive the cash value of the Settlement Benefits less the amount of money you previously received under the Reimbursement Program, unless you select one of the alternative compensation benefits: 150% of that amount for a Dealer Service Debit Card, or 200% for a New Purchase Rebate Certificate).

If you are electing to receive either a lump-sum Dealer Service Debit Card or a New Purchase Rebate Certificate, you also may choose to enclose a check to repay the money you received under the Lifetime Reimbursement Program, and credit that amount toward your Settlement Benefit, which will then be used to calculate the value of your Dealer

3

EXHIBIT 1 - PAGE 87

Service Debit Card or New Purchase Rebate Certificate.  Are you enclosing a repayment check with your Claim Form?

    □ YES __   □ NO __  If YES, please make the check payable to Hyundai Motor America (for Hyundai owners/lessees) or Kia Motors America, Inc. (for Kia owners/lessees) and write the amount of your enclosed check here:  _____.

    Go to STEP 7.

**STEP 7**:  Make an election.  Do you want to receive lump-sum **Settlement Benefits** or do you want to remain in, or register for, the **Lifetime Reimbursement Program**?  Lump-sum Settlement Benefits are calculated based upon several factors, including the extra fuel cost for the average time of vehicle ownership.  Lump-sum Settlement Benefits provide compensation in one payment, without the need for additional dealer visits or paperwork.  The Lifetime Reimbursement Program allows you to make periodic requests for reimbursement of extra fuel costs at your Hyundai/Kia dealer for the time of your vehicle ownership.  In making your election, you should consider your own personal circumstances.  Details regarding the Settlement Benefits and the Lifetime Reimbursement Program can be found in Questions 6 through 9 of the Class Notice.  You may elect to receive <u>either</u> lump-sum Settlement Benefits <u>or</u> future benefits under the Lifetime Reimbursement Program, but not both.

    □ **Settlement Benefits**        □ **Lifetime Reimbursement Program**
    **If you selected Settlement Benefits, go to STEP 8.  If you selected Lifetime Reimbursement Program, go to STEP 9.**

**STEP 8:**  Choose how you prefer to receive Settlement Benefits.  Check one of the boxes below and then go to STEP 10.

    □ **Debit Card**.  This debit card can be used like cash and will be pre-loaded with the value of the Settlement Benefits that corresponds to your vehicle (STEP 1) and the category you checked in STEP 3.  The balance of the card can be deposited to a checking or other bank account.  It will expire one year after it is issued.

    □ **Dealer Service Debit Card.**  The dealer service debit card can be used for goods and services at any authorized participating Hyundai dealership (for Hyundai owners/lessees) or Kia dealership (for Kia owners/lessees) and will be pre-loaded with a value that is **1.5 times** (150%) the amount that would otherwise be loaded on a Debit Card for you.  It will expire two years after it is issued.

    □ **New Car Rebate Certificate**.  The new car rebate certificate can be applied toward the purchase of a new Hyundai vehicle (for Hyundai owners/lessees) or Kia vehicle (for Kia owners/lessees) and will be pre-loaded with a value that is **double** (200%) the amount that would otherwise be loaded on a Debit Card for you.  It will expire three years after it is issued.

**STEP 9:  ANSWER ONLY IF YOU CHECKED <u>LIFETIME REIMBURSEMENT PROGRAM</u> IN STEP 7.**  If you are considered a Current Original Owner, Current Lessee, or Current Fleet Owner of an Elantra, Accent, Veloster or Sonata Hybrid Class Vehicle, which of the payment forms described in STEP 8 do you wish to elect for your Additional Compensation?  (This Additional Compensation is described in the response to Question 9 of the Class Notice.)

    □ **Debit Card**.

    □ **Dealer Service Debit Card.**

    □ **New Car Rebate Certificate**.

Note:  if you have not already registered for the Lifetime Reimbursement Program and wish to do so (and you have not checked the "Settlement Benefits" box in STEP 5), registration information is available at:  <u>hyundaimpginfo.com</u> (for Hyundai Class Vehicles) or <u>KIAmpginfo.com</u> (for Kia Class Vehicles).

\\DC - 029016/000012 - 3963821 v14

EXHIBIT 1 - PAGE 88

**STEP 10:  Please print your name and address and vehicle information below.  Please print neatly.**

You:                                                    Your vehicle:

    Name:  _____    Brand (Hyundai or Kia): _____

    Address:  _____    Model: _____

    City:  _____    Model Year: _____

    State:  _____  Zip code: _____    VIN: _____

    Telephone: _____  E-mail: _____

    Go to STEP 11.

**STEP 11:  CERTIFICATION.  You must <u>date, sign, and mail this CLAIM FORM</u> so that it is postmarked by [9 months after deadline for class notice mailing] in order to make a valid claim.**

**You must also <u>provide proof </u>that you owned or leased the vehicle as of November 2, 2012, such as a copy of the most recent registration certificate (or the one in effect on November 2, 2012).  Please also include a copy of the purchase or lease contract.  If you are considered a Former owner or lessee, please also include evidence of the mileage when you bought and sold the vehicle (such as purchase and sale contract or related documents, odometer disclosure statements, smog certifications, repair orders or other documents demonstrating mileage at the time of purchase and/or sale/disposal).**

        **By signing and submitting this Claim From, you certify that all of the foregoing information is true and correct.**

_____            _____
Date                                                    Signature

**PLEASE MAKE SURE YOU WRITE YOUR NAME AND VIN ON EACH PAGE OF THIS FORM.**

**PLEASE MAKE A COPY OF YOUR COMPLETED FORM AND ATTACHMENTS FOR YOUR RECORDS**

EXHIBIT 1 - PAGE 89

**Exhibit E**

EXHIBIT 1 - PAGE 90

TO ALL CUSTOMERS WHO ARE CURRENTLY ENROLLED IN THE [Hyundai/Kia] FUEL ECONOMY LIFETIME REIMBURSEMENT PROGRAM:

Please be advised that you may choose to receive a one-time lump-sum benefit, 150% of this amount in a dealer service debit card, or 200% of this amount in a new car rebate certificate – less amounts already received.  The benefits are offered as part of a class action settlement, in amounts [figures/description to be filled in].  For more information, review the Class Notice issued in connection the class action settlement to determine what action you wish to take.

For more information, and for a copy of the Class Notice, please visit [URL of Settlement website] or call [toll-free number].

**Exhibit F**

EXHIBIT 1 - PAGE 92

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

|  |  |
|---|---|
| In Re: | No. MDL 13-2424-GW(FFMx) |
| HYUNDAI AND KIA FUEL ECONOMY LITIGATION | [PROPOSED] **ORDER GRANTING  PRELIMINARY APPROVAL OF CLASS SETTLEMENT, SETTING A HEARING ON FINAL APPROVAL OF SETTLEMENT, AND DIRECTING NOTICE TO THE CLASS** |

WHEREAS, Named Plaintiffs Nicole Marie Hunter, Kaylene Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson, Erin Fanthorpe, Eric Hadesh, Michael Keeth, John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory M. Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams ("Named Plaintiffs" or "Class Representatives"), individually and as representatives of a Class defined below, and Defendants Hyundai Motor America ("HMA") and Kia Motors America, Inc. ( "KMA") (collectively, the "Parties") have entered into a Settlement Agreement dated December ___, 2013, which, if approved, would resolve this class action;

WHEREAS, the Named Plaintiffs have filed a motion for preliminary approval of the proposed settlement, and the Court has reviewed and considered the motion, the supporting brief, the Settlement Agreement, and all exhibits thereto, including the proposed class notice (the "Notice"), and finds there is sufficient basis for granting preliminary approval of the settlement, directing that notice be disseminated to the class, and setting a hearing at which the Court will consider whether to grant final approval of the settlement;

- 1 -

EXHIBIT 1 - PAGE 93

IT IS HEREBY ORDERED that:

1.      Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.

2.      Pursuant to the Settlement Agreement, the class has been defined as:  All current and former owners and lessees of a Class Vehicle who were the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States, except that the following are excluded:  (i) Rental Fleet Owners; (ii) government entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (iii) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (iv) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle (the "Class"or "Class Members").

2.      The Court preliminarily approves the proposed settlement, finding that the terms of the Settlement Agreement appear sufficiently fair, reasonable, and adequate to warrant dissemination of the Notice of the proposed settlement to the Class.  The Court finds that the Settlement Agreement contains no obvious deficiencies and that the parties entered into the Settlement Agreement in good faith, following arm's-length negotiation between their respective counsel.

3.      The Court appoints Hagens Berman Sobol Shapiro LLP and McCuneWright, LLP as settlement class counsel and Nicole Marie Hunter, Kaylene Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson, Erin Fanthorpe, Eric Hadesh, Michael Keeth, John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza,

\\DC - 029016/000012 - 5295044 v7

EXHIBIT 1 - PAGE 94

Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory M. Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams as class representatives.

4.     The Court hereby approves the form and procedures for disseminating notice of the proposed settlement to the Class as set forth in the Settlement Agreement.  The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Class in full compliance with the requirements of applicable law.

5.     For purposes of identifying current and former owners and lessees of Class Vehicles, R.L. Polk & Company is hereby authorized to provide the names and most current addresses of such owners and lessees to HMA and/or KMA or their designee(s).  Any governmental agency in possession of names or addresses of current and former Class Vehicle owners or lessees is hereby authorized and directed to release that information to R.L. Polk & Company upon request.

6.     As set forth in the Settlement Agreement, HMA and KMA shall bear all costs and expenses in connection with providing notice to the Class and administering the proposed settlement.

7.     Any Class Member shall have the right to opt out of the Class and the settlement by sending a written request for exclusion from the Class to the address listed in the Notice postmarked no later than the deadline provided for such exclusion as set forth in the Notice.  To be effective, the request for exclusion must:  include the Class Member's name, address, telephone number, the Class Member's Vehicle Identification Number (VIN), and signature and state his or her desire to "opt-out" or be "excluded" from the proposed settlement in *In Re:*

EXHIBIT 1 - PAGE 95

*Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx) (C.D. Cal.).  Any Class Member who does not submit a timely and valid request for exclusion shall be subject to and bound by the Settlement Agreement and every order or judgment entered concerning the Settlement Agreement.

8.    Any Class Member who intends to object to final approval of the settlement and/or the amount of attorneys' fees must send a letter, postmarked no later than the deadline provided for such objection to the Court, Class Counsel, and Defense Counsel, as set forth in the Notice.  The letter should state that the Class Member "objects" to the proposed settlement in *In Re: Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx) (C.D. Cal.). Each objection must include the Class Member's name, address, telephone number, the Class Member's Vehicle Identification Number (VIN) and signature and the basis for the objection.

9.    Any Class Member wishing to speak at the Fairness Hearing must send a letter postmarked no later than the deadline for such notice of intention to appear stating his or her desire to appear in person, or through counsel, at the Fairness Hearing to the Court, Class Counsel, and Defense Counsel, as set forth in the Notice.  The letter should state that it is a "Notice of Intention to Appear in *In Re: Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx)."  Such notice of intention to appear must include the Class Member's name, address, telephone number, the Class Member's Vehicle Identification Number (VIN) and signature.

10.    The Court will hold a Fairness Hearing addressing the final approval of the Settlement Agreement, an award of fees and expenses to Class Counsel, and incentive payments to the class representatives, before the undersigned judge at the U.S. District Court, Central District of California, 255 East Temple Street, Los Angeles, CA, 90012-3332.  At the Fairness

- 4 -

Hearing, the Court will consider:  (i) whether the settlement should be approved as fair, reasonable, and adequate for the class; (ii) whether a judgment granting approval of the settlement and dismissing the lawsuit with prejudice should be entered; and (iii) whether Class Counsel's application for attorneys' fees and expenses should be granted.

11.     The following schedule shall govern the class action settlement proceedings:

(i)     HMA and KMA must cause individual notice, substantially in the form attached to the Settlement Agreement as Exhibit G (proposed Class Notice), to be mailed via first-class mail to all reasonably identifiable Class Members, on or before _____.

(ii)    Class Members must mail any letter objecting to the proposed settlement on or before _____.

(iii)   Class Members must mail any letter electing to exclude themselves from the Class on or before _____.

(iv)    Class Members wishing to appear at the Fairness Hearing must mail any letter stating their intent to appear on or before _____.

(v)     The parties shall submit motions for final approval of the proposed settlement, including any exhibits or attachments thereto, on or before _____.

(vi)    The Fairness Hearing shall be held on _____.

The dates established for items (ii), (iii), (iv) and (vi) shall be included in the Notice mailed to Class Members.

12.     Plaintiffs shall file, on or before _____, a motion for attorneys' fees and expenses.  HMA and KMA shall file any responses to the motion on or before

EXHIBIT 1 - PAGE 97

_____, and, if necessary, Plaintiffs shall file a reply brief in support of its motion on

or before _____.


DATED: _____


_____
Hon. George H. Wu
U.S. District Court Judge

- 6 -

**Exhibit G**

EXHIBIT 1 - PAGE 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In Re:<br><br>HYUNDAI AND KIA FUEL ECONOMY LITIGATION | No. MDL 13-2424-GW(FFMx) |

**If you purchased or leased one of the Model Year 2011, 2012 or 2013 Hyundai or Kia vehicles listed in <u>Schedule A</u> at the end of this notice, you may be entitled to cash or other benefits:**

- If the Settlement described below is approved by the Court, certain current and former owners and lessees of the Model Year 2011, 2012 and 2013 Hyundai and Kia vehicles listed in Schedule A (hereinafter "Class Vehicles") can receive a cash payment or other benefits (for more details, see response to Question 9 below: "What does the Settlement provide? What can I get from the Settlement?").

- If you previously received compensation under the reimbursement program initiated by Hyundai Motor America (hereinafter "HMA") and by Kia Motors America, Inc. (hereinafter "KMA") in November 2012, you may still be eligible to receive a cash payment under the Settlement.

- Your legal rights are affected whether you act or don't act. Please read this entire notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DUE DATE |
|---|---|---|
| **DO NOTHING** | To participate in the lump-sum payment program, do nothing now and if the Settlement is approved, fill out a one-time claim form to receive benefits. | |
| **EXCLUDE YOURSELF** | Get no reimbursement under the Settlement. This is the only option that allows you to be part of any other lawsuit against HMA, KMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), Hyundai Motor Company, Kia Motors Corporation, and/or their affiliates in connection with the legal claims in this case. | |
| **OBJECT** | Write to the Court about why you | |

EXHIBIT 1 - PAGE 100

| | don't like the Settlement. | |
|---|---|---|
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. | |

These rights and options–**and the deadlines to exercise them**–are explained in this notice.

- The Court in charge of this matter still has to decide whether to approve the Settlement. Settlement benefits will become available if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**............................................................................................**PAGE 3**
    1. Why did I get this notice?
    2. What are these lawsuits about?
    3. Why are these lawsuits class actions?
    4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT**..................................................................................**PAGE 3**
    5. How do I know if I am part of the Settlement?
    6. What if I already received money under the Lifetime Reimbursement Program?
    7. I'm still not sure if I am included.
    8. How does the Settlement relate to the Reimbursement Program HMA and KMA established in 2012?

**THE SETTLEMENT BENEFITS—WHAT YOU GET**..................................................... **PAGE 5**
    9. What does the Settlement provide? What can I get from the Settlement?

**HOW YOU CAN PARTICIPATE IN THE SETTLEMENT**.............................................**PAGE 8**
    10. How can I participate in the Settlement?
    11. When would I get my Settlement benefits?
    12. What am I giving up to stay in the Class and receive a benefit?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**...................................................**PAGE 8**
    13. How do I get out of the Settlement?
    14. If I don't exclude myself, can I sue HMA and/or KMA for the same thing later?
    15. If I exclude myself, can I get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**.....................................................................**PAGE 10**
    16. Do I have a lawyer in the case?
    17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**.........................................................................**PAGE 10**
    18. How do I tell the Court that I don't like the Settlement?
    19. What's the difference between objecting and excluding?
    20. When and where will the Court decide whether to approve the Settlement?
    21. Do I have to come to the hearing?
    22. May I speak at the hearing?

**IF YOU DO NOTHING**............................................................................................**PAGE 11**
    23. What happens if I do nothing at all?

EXHIBIT 1 - PAGE 101

**GETTING MORE INFORMATION**………………………………………………………….…………**PAGE 11**
    24. Are there more details about the Settlement?
    25. How do I get more information?

# BASIC INFORMATION

## 1.  Why did I get this notice?

You may have purchased or leased one of the vehicles involved in two class action lawsuits.  The Court has ordered this notice to be mailed to you because you have a right to know about a proposed Settlement of the class action lawsuits, and about your options, before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after any objections and appeals are resolved, HMA and KMA will provide benefits agreed to in the Settlement for certain past and present owners and lessees.  This notice explains the lawsuits, the Settlement, your legal rights, the benefits available, who is eligible for them, and how to get them.

The Court in charge of the lawsuits is the U.S. District Court for the Central District of California, and the cases are known as Hunter, et al. v. HMA and KMA, No. 12-1909-GW(FFM) and Brady, et al. v. HMA and KMA, No. 12-1930-GW(FFM).  Both cases were transferred to *In Re: Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx) (hereinafter "MDL Litigation.")  The people who sued are called the Plaintiffs, and the companies they sued, HMA and KMA, are called the Defendants.

## 2.  What are these lawsuits about?

On November 2, 2012, HMA and KMA each issued a statement informing the public that they were voluntarily adjusting the fuel economy ratings downward for the Class Vehicles.  Both HMA and KMA simultaneously announced that each company was instituting a lifetime reimbursement program (hereinafter "Lifetime Reimbursement Program") to compensate affected vehicle owners and lessees for the additional fuel costs associated with the lowered fuel economy ratings.

The lawsuits claimed that, prior to November 2, 2012, the fuel economy ratings for the Class Vehicles constituted actionable misrepresentations.  Plaintiffs claimed that, because of the alleged misrepresentation, they purchased vehicles they otherwise would not have purchased or paid more for the vehicles than they otherwise would have paid.  Plaintiffs also assert that the Lifetime Reimbursement Program is inadequate.  HMA and KMA denied Plaintiffs' Allegations.

## 3.  Why are these lawsuits class actions?

 In a class action, people called "class representatives" sue on behalf of other people who have similar claims.  All of these people together are the "Class" or "Class Members" if the Court approves this procedure.  Then, that Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

EXHIBIT 1 - PAGE 102

## 4.  Why is there a Settlement?

 Both sides in the lawsuit agreed to a Settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get benefits, in exchange for releasing HMA and KMA from liability.  The Settlement does not mean that HMA or KMA broke any laws and/or did anything wrong, and the Court did not decide which side was right.  The Settlement here has been preliminarily approved by the Court, which authorized the issuance of this Notice.  The Class Representatives and the lawyers representing them (called "Class Counsel") believe that the Settlement is in the best interests of all Class Members.

This Notice summarizes the terms of the Settlement.  The Settlement Agreement along with all exhibits and addenda sets forth in greater detail the rights and obligations of the parties.  If there is any conflict between this Notice and the Settlement Agreement, the Settlement Agreement governs.

## WHO IS IN THE SETTLEMENT

## 5.  How do I know if I am part of the Settlement?

Judge Wu has decided that this class will include any current or former owner or lessee of a Class Vehicle who was the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States, except that the following are excluded:  (i) Rental Fleet Owners; (ii) government entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (iii) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (iv) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle.

"Rental Fleet Owner" means an owner of one or more Fleet Class Vehicles that are available to be rented or leased.

"Fleet Class Vehicle" means a Class Vehicle purchased by a governmental entity corporation, or Person that negotiated the purchase terms with HMA or KMA (as the case may be), as opposed to one of their authorized dealers, provided that neither HMA nor KMA agreed to repurchase such Fleet Class Vehicles at a later date.

The Class Vehicles are the Model Year 2011, 2012 and 2013 Hyundai and Kia vehicles listed in Schedule A attached to this Notice.

## 6.  What if I already received money under the Lifetime Reimbursement Program?

In November 2012, HMA and KMA initiated the Lifetime Reimbursement Program to reimburse certain current and former owners and lessees of the Class Vehicles for the additional fuel costs associated with the fuel economy ratings that were adjusted downward on November 2, 2012.  If you received reimbursement pursuant to this Lifetime Reimbursement Program (or if you receive such reimbursement in the future), you will still be a member of the Class, unless you take the steps to exclude yourself from the Class (see response to Question 12 below:  "How do I get out of the Settlement?").  If you do exclude yourself, you can still keep any reimbursement you already received and any reimbursement that you receive in the future pursuant to the Lifetime Reimbursement Program, but you will not have the right to share in the benefits offered in the Settlement.

EXHIBIT 1 - PAGE 103

### 7.  I'm still not sure if I am included.

If you are still not sure whether you are included in this class, you can ask for free help.  You can call [(XXX)-XXX-XXXX (for Hyundai vehicles) and (XXX)-XXX-XXXX (for Kia vehicles)] and ask whether your vehicle is included in the Settlement.  You will need to have your Vehicle Identification Number (VIN) ready.  The VIN is located on a placard on the top of the dashboard and is visible through the driver's side corner of the windshield.  For more information, you can also visit the website [URL].

### 8.  How does the Settlement relate to the Lifetime Reimbursement Program HMA and KMA established in 2012?

Pursuant to the Lifetime Reimbursement Program, owners and lessees who owned or leased their Class Vehicle on or before November 2, 2012, are eligible to receive a personalized debit card that reimburses them for the additional fuel costs associated with the fuel economy ratings that were adjusted downward on November 2, 2012.  The reimbursement formula is based on three factors:  (1) the number of miles the owner or lessee has accumulated on the vehicle in question; (2) the difference between the original and revised combined fuel economy ratings of the vehicle in question, in miles per gallon; and (3) the 2012 average fuel price for the area in which the owner lives, based on U.S. Energy Information Association data.  In addition, HMA and KMA add an extra 15 percent to the reimbursement amount.  Former owners and lessees of the Class Vehicles are eligible to receive a one-time reimbursement using this formula.  Current owners and lessess are eligible to receive a reimbursement for prior accumulated mileage, as well as periodic future reimbursement as the Class Vehicle accumulates mileage in the future.

If you register for the Lifetime Reimbursement Program, you will be eligible to receive benefits for as long as you own or lease your Class Vehicle.

Detailed information about the Lifetime Reimbursement Program, including a tool that provides a reimbursement estimate, is available at https://hyundaimpginfo.com/ for Hyundai vehicle owners and lessees and https://kiampginfo.com/ for Kia vehicle owners and lessees.  To participate in the Lifetime Reimbursement Program, eligible owners and lessees must register within nine (9) months of [Deadline for date that class notice must be mailed.]

**As outlined below, if the Settlement is approved by the Court, you can elect whether to receive the Settlement benefits or remain in (or register for) the Lifetime Reimbursement Program.  To make your choice, you may want to consider the benefits available under the Lifetime Reimbursement Program and the Settlement for your particular Class Vehicle and your other personal circumstances.**

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 9.  What does the Settlement provide?  What can I get from the Settlement?

The following table summarizes the Settlement benefits (assuming that the Settlement receives final court approval):

| If you …. | The Settlement provides: |
|---|---|
|  |  |

EXHIBIT 1 - PAGE 104

| Purchased your Class Vehicle as a new Hyundai or Kia vehicle on or before November 2, 2012 and you still own it ("Current Original Owner") | Compensation in the amount set forth in Schedule A for Current Original Owners of your particular Class Vehicle (less any amount already received pursuant to the Lifetime Reimbursement Program), **AND**<br><br>The opportunity to select one of the alternative forms of compensation set forth below,<br><br>**OR**<br><br>You may elect to remain in, or register for participation in, the Lifetime Reimbursement Program |
|---|---|
| Purchased your Class Vehicle as a used vehicle on or before November 2, 2012 and you still own it ("Current Non-Original Owner") | Compensation in the amount set forth in Schedule A for Current Non-Original Owners of your particular Class Vehicle (less any amount already received pursuant to the Lifetime Reimbursement Program), **AND**<br><br>The opportunity to select one of the alternative forms of compensation set forth below,<br><br>**OR**<br><br>You may elect to remain in, or register for participation in, the Lifetime Reimbursement Program |
| Purchased your Class Vehicle on or before November 2, 2012 and you do <u>not</u> still own it ("Former Owner") | Compensation in the same amount you would receive pursuant to the Lifetime Reimbursement Program (less any amount already received pursuant to the Lifetime Reimbursement Program), **AND**<br><br>The opportunity to select one of the alternative forms of compensation set forth below,<br><br>**OR**<br><br>You may elect to remain in, or register for participation in, the Lifetime Reimbursement Program |
| Leased your Class Vehicle on or before November 2, 2012 and you still lease it ("Current Lessee") | Compensation in the amount set forth in Schedule A for Current Lessees of your particular Class Vehicle (less any amount already received pursuant to the Lifetime Reimbursement Program), **AND**<br><br>The opportunity to select one of the alternative forms of compensation set forth below<br><br>**OR**<br><br>You may elect to remain in, or register for participation in, the applicable Lifetime Reimbursement Program |

6

EXHIBIT 1 - PAGE 105

| | |
|---|---|
| Previously leased a Class Vehicle on or before November 2, 2012 and you do not still lease it ("Former Lessee") | Compensation in the same amount you would receive pursuant to the Lifetime Reimbursement Program (less any amount already received pursuant to the Lifetime Reimbursement Program) **AND** |
| | The opportunity to select one of the alternative forms of compensation set forth below |
| | **OR** |
| | You may elect to remain in, or register for participation in, the Lifetime Reimbursement Program |
| Purchased your Fleet Class Vehicles (defined below) on or before November 2, 2012 and still own them, provided that neither HMA nor KMA agreed to repurchase such Class Vehicles at a later date ("Current Fleet Owner") | Compensation in the amount set forth in Schedule A for Current Fleet Owners of your particular Class Vehicles (less any amount already received pursuant to the Lifetime Reimbursement Program), **AND** |
| | The opportunity to select one of the alternative forms of compensation set forth below |
| | **OR** |
| | You may elect to remain in, or register for participation in, the applicable Lifetime Reimbursement Program |
| Purchased your Fleet Class Vehicles (defined below) on or before November 2, 2012 and you do not still own them, provided that neither HMA nor KMA agreed to repurchase such Class Vehicles at a later date ("Former Fleet Owner") | Compensation in the same amount you would receive pursuant to the Lifetime Reimbursement Program (less any amount already received pursuant to the Lifetime Reimbursement Program) |
| | **AND** |
| | The opportunity to select one of the alternative forms of compensation set forth below **OR** |
| | You may elect to remain in, or register for participation in, the applicable Lifetime Reimbursement Program |

"Fleet Class Vehicle" means a Class Vehicle purchased by a governmental entity corporation, or Person that negotiated the purchase terms with HMA or KMA (as the case may be), as opposed to one of their authorized dealers.

### Additional Compensation Applicable to Certain Vehicles

Any Current Original Owner, Current Lessee, or Current Fleet Owner of an Elantra, Accent, Veloster or Sonata Hybrid listed on Schedule A who elects to remain in or register for the Lifetime Reimbursement Program may elect to receive the additional compensation set forth below:

| | |
|---|---|
| Current Original Owners | $100 per Elantra, Accent, Veloster, and Sonata Hybrid Class Vehicles |
| Current Lessees and Current Fleet Owners | $50 per Elantra, Accent, Veloster, and Sonata Hybrid Class Vehicles |

7

EXHIBIT 1 - PAGE 106

|  |  |
|---|---|

To the extent that any Current Original Owner, Current Lessee, or Current Fleet Owner of an Elantra, Accent, Veloster or Sonata Hybrid listed on Schedule A elects to participate in the Settlement, no further election is necessary as the foregoing amounts are already included in the compensation amounts listed on Schedule A.

## Alternative Forms of Compensation

Each Class Member who elects to receive compensation pursuant to this Settlement may choose to receive such compensation as a Cash Debit Card at 100% cash value, a Dealer Service Debit Card valued at 150% of the amount that otherwise would be paid as a Cash Debit Card, or a New Car Rebate Certificate valued at 200% of the amount that otherwise would be paid as a Cash Debit Card.  The value of any Cash Debit Card, Dealer Service Debit Card, and New Car Rebate Certificate shall remain the property of the issuer, HMA or KMA, unless and until it is expended by the Settlement Class Member.  Upon expiration of any Cash Debit Card, Dealer Service Debit Card, or New Car Rebate Certificate, any unexpended funds shall become the permanent property of the issuer (HMA or KMA).  No issuer fees will be imposed on the recipient of a Cash Debit Card, Dealer Service Debit Card, or New Car Rebate Certificate.

---

- **Cash Debit Card**
  - o   100% of amount awarded
  - o   May be used like a credit card or at an ATM
  - o   No issuer-imposed restrictions that would prevent a recipient transferring the entire balance of the debit card to a checking or other bank account
  - o   Non-transferable
  - o   Expires one year after it is issued

---

- **Dealer Service Debit Card**
  - o   150% of amount that otherwise would be paid as a Cash Debit Card
  - o   May only be used at an authorized Hyundai dealer (for Hyundai Class Vehicles) or an authorized Kia dealer (for Kia Class Vehicles) in payment towards merchandise, parts or service
  - o   Non-transferrable
  - o   Expire two years after it is issued.

---

- **New Car Rebate Certificate**
  - o   200% of the amount that otherwise would be paid as a Cash Debit Card
  - o   May only be used toward the purchase of a new Hyundai vehicle (for Settlement Class Members who own(ed) or lease(d) Hyundai Class Vehicles) or a new Kia vehicle (for Settlement Class Members who own(ed) or lease(d) Kia Class Vehicles).
  - o   Non-transferable, except that it may be transferred to a family member (child, parent or sibling)
  - o   Expires three years after it is issued.

---

**If you previously received benefits pursuant to the Lifetime Reimbursement Program and now wish to obtain a Dealer Service Debit Card or a New Car Rebate Certificate, you may also elect to enclose re-payment for the benefits previously received, which will have the effect of increasing the value of your Dealer Service Debit Card or New Car Rebate Certificate.**

## HOW YOU CAN PARTICIPATE IN THE SETTLEMENT

8

EXHIBIT 1 - PAGE 107

## 10.  How can I participate in the Settlement?

If you wish to receive the benefits offered under this Settlement, then you will be required to submit a claim form (which is enclosed) within nine (9) months of [Deadline for date that class notice must be mailed.].

## 11.  When would I get my Settlement benefits?

The Hon. George H. Wu, U.S. District Court Judge, will hold a hearing on [DATE], at [TIME] at the U.S. District Court for the District of Central California, Western Division, Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street Los Angeles, CA 90012-3332, to decide whether to approve this Settlement.  If the Court approves the Settlement, there may be appeals afterwards.  It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps even more than a year.  You may continue to check on the progress of the Settlement by visiting the following website [URL] or calling [HMA TOLLFREE/KMA TOLLFREE].

## 12.  What am I giving up to stay in the Class and receive a benefit?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against HMA, KMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), Hyundai Motor Company, Kia Motors Corporation, all affiliates of the Hyundai Motor Group, or any other related entity about the legal issues in this case if the Settlement is approved.  It also means that all of the Court's orders will apply to you and legally bind you.

However, nothing in this Settlement will prohibit you from pursuing claims for:  (i) personal injury; (ii) damage to property other than to a Class Vehicle; or (iii) any and all claims that pertain to something other than a Class Vehicle.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to participate in this Settlement, but you want to keep the right to sue or continue to sue HMA or KMA, on your own, about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself—or it is sometimes referred to as opting out of the Class.

## 13.  How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter by mail stating that you want to "opt-out" or "be excluded from the Settlement."  Be sure to include your name, address, telephone number, your signature, the Vehicle Identification Number (VIN) of your vehicle (which is located on a placard on the top of the dashboard visible through the driver's side corner of the windshield), and refer to the case as *In Re: Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx) (C.D. Cal.).  You must mail your exclusion request postmarked no later than [OPT OUT DEADLINE] to:

| To Class Counsel: | To Defense Counsel: |
|---|---|

EXHIBIT 1 - PAGE 108

Robert B. Carey                         Michael L. Kidney
Hagens Berman Sobol Shapiro LLP          Hogan Lovells US LLP
11 West Jefferson Street, Suite 1000     555 Thirteenth St., NW
Phoenix, AZ  85003                       Washington, DC 20004

You can't exclude yourself on the phone or by e-mail.

If you ask to be excluded, you will not qualify for any of the Settlement benefits, and you cannot object to the Settlement.  You will also not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) HMA, KMA, and the related entities listed in the response to the prior question.

## 14.  If I don't exclude myself, can I sue HMA or KMA for the same thing later?

**No.**  Unless you exclude yourself, you give up the right to sue HMA, KMA, Hyundai America Technical Center, Inc., (also doing business as Hyundai-Kia America Technical Center), Hyundai Motor Company, Kia Motors Corporation, all affiliates of the Hyundai Motor Group, and any other related entity for the claims that this Settlement resolves.

If you have a pending lawsuit against HMA, KMA, or the related entities listed, speak to your lawyer who represents you in that lawsuit immediately.  You must exclude yourself from *this* Class to continue your own lawsuit if it concerns the same legal issues in this case.  Remember, the exclusion deadline is [OPT OUT DEADLINE].

## 15.  If I exclude myself, can I get benefits from this Settlement?

**No.**  If you exclude yourself, you will not be eligible for benefits under the Settlement.  But you will not be prohibited by this Settlement from suing, continuing to sue, or being part of a different lawsuit against HMA, KMA, and the other legal entities listed above concerning the legal issues in this case.

# THE LAWYERS REPRESENTING YOU

## 16.  Do I have a lawyer in the case?

The Court has asked lawyers from the law firms of Hagens Berman Sobol Shapiro LLP and McCuneWright, LLP to represent you and the Class.  Together, the lawyers are called Class Counsel.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17.  How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses of no more than [AMOUNT].  The Court may award less than this amount.  HMA or KMA will separately pay the fees and expenses that the Court awards.  HMA or KMA will also separately pay the costs to administer the Settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

EXHIBIT 1 - PAGE 109

**18.  How do I tell the Court that I don't like the Settlement?**

If you stay in the Class, you can object to the Settlement if you don't like any part of it.  You should give reasons why you think the Court should not approve it.  The Court will consider your views.  To object, you must send a letter saying that you object to the Settlement in *In Re: Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx) (C.D. Cal.).  Be sure to include your name, address, telephone number, your signature, the Vehicle Identification Number (VIN) of your vehicle (which is located on a placard on the top of the dashboard visible through the driver's side corner of the windshield), and the reasons you object to the Settlement.  Mail the objection to these three different places postmarked no later than [OBJECTION DEADLINE]:

| To the Court: | To Class Counsel: | To Defense Counsel: |
|---|---|---|
| Clerk of Court U.S. District Court, Central District of California 255 East Temple Street Los Angeles, CA 90012-3332 | Robert B. Carey Hagens Berman Sobol Shapiro LLP 11 West Jefferson Street, Suite 1000 Phoenix, AZ  85003 | Michael L. Kidney Hogan Lovells US LLP 555 Thirteenth St., NW Washington, DC 20004 |

**19.  What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you cannot object because the case no longer affects you.

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you don't have to.

**20.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on [DATE], at [TIME] before Judge Wu in the U.S. District Court for the District of Central California, Western Division, Edward R. Royal Federal Building and United States Courthouse, 255 East Temple Street Los Angeles, CA 90012-3332, to consider whether the Settlement is fair, reasonable and adequate.  If there are objections, the Court will consider them.  Judge Wu will listen to people who have asked to speak at the hearing.  The Court may also decide how much Class Counsel should be paid.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.  The hearing may be rescheduled without further notice.

**21.  Do I have to come to the hearing?**

**No.**  Class Counsel will answer any questions Judge Wu may have.  But you are welcome to come at your own expense.  If you send a written objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

**22.  May I speak at the hearing?**

EXHIBIT 1 - PAGE 110

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In Re: Hyundai and KIA Fuel Economy Litigation*, No. MDL 13-2424-GW(FFMx)."  Be sure to include your name, address, telephone number, the Vehicle Identification Number (VIN) of your vehicle (which is located on a placard on the top of the dashboard visible through the driver's side corner of the windshield), and your signature.  Your Notice of Intention to Appear must be postmarked no later than [Deadline Date], and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses listed in the response to Question 18 above.  You cannot speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

| 23.  What happens if I do nothing at all? |
| --- |

If you do nothing at this time, you will remain in the Class and be eligible for the benefits offered by the Settlement as long as you have submitted a timely and valid claim form, assuming that it is approved by the Court.  But, if you do not exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against HMA, KMA, or any of the other entities listed in the response to Question No. 14 about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| 24.  Are there more details about the Settlement? |
| --- |

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement by writing to Class Counsel at the address listed in the response to Question 18 above, or you can download a copy online by visiting [URL] or request a copy by calling [HMA TOLLFREE/KMA TOLLFREE].

| 25.  How do I get more information? |
| --- |

You can visit the website at [URL] where you will find answers to common questions about the Settlement, plus other information to help you determine whether you are a member of the Class and whether you are eligible for the benefits offered in the Settlement.  If the website does not contain the information you are looking for, you can also call toll-free at [HMA TOLLFREE /KMA TOLLFREE].  You may also contact the Class Counsel listed in the response to Question 18 above.

**Other than a request to review the Court's files at the Clerk of the Court's Office, please do not contact the Clerk of the Court or the Judge with questions.**

BY ORDER OF:

Hon. George H. Wu
U.S. District Court for the
Central District of California

EXHIBIT 1 - PAGE 111

## SCHEDULE A:
## VEHICLES AND CASH DEBIT CARD PAYMENT AMOUNTS

| VEHICLE MODEL | CURRENT ORIGINAL OWNER | CURRENT NON-ORIGINAL OWNER | CURRENT FLEET OWNER | CURRENT LESSEE |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

13

EXHIBIT 1 - PAGE 112

**<u>Exhibit H</u>**

EXHIBIT 1 - PAGE 113

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

No. MDL 13-2424-GW(FFMx)

In Re:

HYUNDAI AND KIA FUEL
ECONOMY LITIGATION

[PROPOSED] **ORDER
GRANTING FINAL
APPROVAL OF CLASS
ACTION SETTLEMENT**

Plaintiffs and Class Representatives Nicole Marie Hunter, Kaylene Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson, Erin Fanthorpe, Thomas Ganim, Eric Hadesh, Michael Keeth, Lillian E. Levoff, John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory M. Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams ("Named Plaintiffs" or "Class Representatives"), individually and as representatives of a Class defined below, and Defendants Hyundai Motor America ("HMA") and Kia Motors America, Inc. ( "KMA") moved this Court for an Order finally approving their settlement and taking certain other actions.  On ____, 2014, the Court held a hearing on the motion and the fairness of the settlement.

Upon considering the parties' Settlement Agreement, all papers in support of the settlement filed by the parties, any objections to the settlement, the arguments of counsel, and the entire record herein, it is hereby ORDERED as follows:

1.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties in this action.

2.     Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.

3.     The following nationwide class is certified for settlement purposes only as

EXHIBIT 1 - PAGE 114

follows pursuant to Federal Rule of Civil Procedure 23:

All current and former owners and lessees of a Class Vehicle (i) who were the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States, except that the following are excluded:  (i) Rental Fleet Owners; (ii) government entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (iii) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (iv) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle (hereinafter "Class" or "Settlement Class").

4.      The Court finds that certification of the Settlement Class is appropriate pursuant to Federal Rule of Civil Procedure 23 because:

a.  The Settlement Class is so numerous that joinder of all members is impracticable, satisfying the requirement of Rule 23(a)(1);

b.  There are questions of law or fact common to the Settlement Class, satisfying the requirements of Rule 23(a)(2), including:  a) whether HMA and KMA violated federal law in connection with deriving or publishing the EPA fuel economy ratings of the Class Vehicles; b) whether the published fuel economy ratings of the Class Vehicles were inaccurate; c) whether HMA and KMA engaged in an unlawful business practice by allegedly failing to disclose the accurate fuel economy ratings of the Class Vehicles; and d) whether HMA's and KMA's conduct violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. and/or California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.

c.  The claims of Class Representatives are typical of the claims of the members of the Settlement Class, satisfying the requirements of Rule 23(a)(3);

d.  The representative parties will fairly and adequately protect the interests of the Settlement Class, satisfying the requirements of Rule 23(a)(4);

EXHIBIT 1 - PAGE 115

\\DC - 029016/000012 - 5295046 v8

1    e.  Questions of law or fact common to the members of the Settlement Class, as

2    set forth above, predominate over questions affecting only individual members and a class action

3    is superior to other methods available for the fair and efficient adjudication of the controversy,

4    satisfying the requirements of Rule 23(b)(3); and

5    f.  The action is manageable as a class action for settlement purposes.

6    5.    If this Order is set aside, materially modified, or overturned by this Court or on

7    appeal, and is not fully reinstated on further appeal, this Order certifying a Settlement Class shall

8    be vacated *nunc pro tunc*.

9    6.    The Court has carefully considered and overruled any objections to the proposed

10    settlement that have been filed.

11    7.    The Court concludes that the proposed settlement is a fair, reasonable and

12    adequate compromise of the claims asserted in this action.

13    8.    The Court appoints Hagens Berman Sobol Shapiro LLP and McCuneWright, LLP

14    as settlement class counsel.

15    9.    The Court approves the terms of the Settlement Agreement as fair, reasonable,

16    and adequate as it applies to the Class Representatives and the members of the Class under

17    Federal Rule of Civil Procedure 23.  The Court further directs implementation of all terms and

18    provisions of the Settlement Agreement.

19    10.    The Class Notice was disseminated in accordance with the procedures required by

20    the Court's _____, 2014 Order and in accordance with applicable law.

21    11.    All parties are bound by this Order and by the Settlement Agreement.

22    12.    The Court dismisses, on the merits and with prejudice, all claims currently

23    pending before it belonging to Class Members who did not request exclusion from the Class in

24    the time and manner provided for in the Class Notice ("Settlement Class Members").

25    13.    The Court dismisses with prejudice Hunter, et al. v. HMA and KMA, No. 12-

26    1909-GW(FFM) and Brady, et al. v. HMA and KMA, No. 12-1930-GW(FFM).  The Court

27    dismisses without prejudice *Espinosa v. HMA*, et al. No. 2:12-cv-00800 GW (FFMx) and all

28    other lawsuits centralized in this MDL in which the named plaintiffs in such lawsuit(s) did not

- 3 -

EXHIBIT 1 - PAGE 116

1   timely exclude themselves from the settlement in accordance with the procedures set forth in the

2   Class Notice.

3       14.     As of the Effective Date of the Agreement, the Releasors (as defined in the

4   Settlement Agreement) shall be deemed to hereby fully and irrevocably release, waive, and

5   discharge the Releasees (as defined in the Settlement Agreement), whether or not specifically

6   named herein, from any and all past, present, and future liabilities, claims, causes of action

7   (whether in contract, tort or otherwise, including statutory, common law, property, and equitable

8   claims), damages, costs, attorneys' fees, losses, or demands, whether known or unknown,

9   existing or potential, or suspected or unsuspected, that (a) were asserted in the MDL Litigation

10  (including lawsuits transferred to and centralized in the MDL Litigation) or (b) relate to (i) the

11  fuel economy of one or more Class Vehicles (including, but not limited to, the actual or

12  reported miles-per-gallon of fuel obtained or achieved in a Class Vehicle); (ii) the marketing or

13  advertising of the fuel economy of such Class Vehicles and any related disclosures or alleged

14  nondisclosures; or (iii) the disclosures, regulatory filings, transactions, actions, conduct, or

15  events that are the subject of the MDL Litigation regarding the Class Vehicles ("Released

16  Claims"); provided that the Released Claims shall include any unknown claims that a

17  Settlement Class Member does not know to exist against any of the Releasees which relate to

18  the fuel economy of one or more Class Vehicles which, if known, might have affected his or

19  her decision regarding the settlement of the MDL Litigation; provided further that the Class

20  Representatives acknowledge that they and the other Settlement Class Members may hereafter

21  discover facts in addition to or different from those that they now know or believe to be true

22  concerning the subject matter of this release but the Released Claims shall nonetheless be

23  deemed to include any and all Released Claims without regard to the existence of such

24  different or additional facts concerning each of the Releasees.  Notwithstanding the foregoing,

25  no claims are released hereunder for:  (i) personal injury; (ii) damage to tangible property other

26  than a Class Vehicle; or (iii) any and all claims that pertain to anything other than the Class

27  Vehicles.

28       15.     All members of the Class who did not make a valid request for exclusion in the

- 4 -

EXHIBIT 1 - PAGE 117

\\DC - 029016/000012 - 5295046 v8

1   time and manner provided in the Class Notice are barred, permanently enjoined, and restrained

2   from commencing or prosecuting any action, suit, proceeding, claim or cause of action in any

3   jurisdiction or court against HMA, KMA, Hyundai America Technical Center, Inc. (also doing

4   business as Hyundai-Kia America Technical Center), Hyundai Motor Company, Kia Motors

5   Corporation, all affiliates of the Hyundai Motor Group or any other Releasee based upon,

6   relating to, or arising out of, any of the Released Claims.

7       16.     The Settlement Agreement, acts performed in furtherance of the Settlement

8   Agreement or the settlement set forth therein, and documents executed in furtherance of the

9   Settlement Agreement or the settlement set forth therein may not be deemed or used as evidence

10  of an admission or other statement supporting:  (a) the validity of any claim made by the Class

11  Representatives, Settlement Class Members, or Class Counsel (including the appropriateness of

12  class certification); (b) any wrongdoing or liability of the Releasees; or (c) any fault or omission

13  of the Releasees in any court, administrative agency, or other proceeding.

14      17.     The Settlement Agreement shall not be offered or be admissible in evidence

15  against HMA, KMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-

16  Kia America Technical Center), Hyundai Motor Company, Kia Motors Corporation, all affiliates

17  of the Hyundai Motor Group, and/or their affiliates or cited or referred to in any action or

18  proceeding, except in an action or proceeding that is in furtherance of its terms or brought to

19  enforce its terms.

20      18.     If this Order is set aside, materially modified, or overturned by this Court or on

21  appeal, and is not fully reinstated on further appeal, this Order shall be deemed vacated and shall

22  have no force or effect whatsoever.

23      19.     Without affecting the finality of the Order in any way, the Court reserves

24  continuing jurisdiction over the parties regarding the enforcement of the terms of the Settlement

25  Agreement.

26

27

28

EXHIBIT 1 - PAGE 118

\\DC - 029016/000012 - 5295046 v8

1    DATED: _____, 2014

2

3                                          _____
                                           Hon. George H. Wu

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1 - PAGE 119

\\DC - 029016/000012 - 5295046 v8

**Exhibit I**

EXHIBIT 1 - PAGE 120

Media Contacts:

**For Hyundai Motor America**
Chris Hosford
(714) 965-3470 office
(714) 743-8764 mobile
chosford@hmausa.com

**For Plaintiffs**
Mark Firmani
Firmani + Associates Inc.
(206) 443-9357
mark@firmani.com

### HYUNDAI MOTOR AMERICA RESOLVES LITIGATION FOLLOWING RESTATEMENT OF FUEL ECONOMY RATINGS

**Automaker Provides Alternative Choice of Single "Lump Sum" Payment To Take Care of Affected Owners**

ORANGE COUNTY, December 23 – Hyundai Motor America today announced that it has entered into an agreement with current and former owners and lessees of vehicles affected by the automaker's November 2012 restatement of fuel economy ratings.  The adjustment affected approximately 27 percent of Hyundai 2011-13 model year vehicles, reducing their combined city/highway fuel economy by 1-2 mpg.  While today's settlement agreement is valued at up to approximately $210 million, that number is dependent on how many customers elect to participate in the settlement's one-time lump sum payment option or remain in the lifetime reimbursement program Hyundai introduced at the time of the restatement.

"We are pleased with the proposed settlement," said W. Gerald Flannery, general counsel of Hyundai Motor America.  "It demonstrates the ongoing Hyundai commitment to taking care of its customers."

At the time of the restatement in 2012, Hyundai provided a lifetime reimbursement program to cover the additional fuel costs associated with the rating change – plus a 15 percent premium in acknowledgement of the inconvenience to customers.  Affected owners and lessees are compensated based on their actual mileage and the fuel costs for the region in which they live.

"Customers responded favorably to the original reimbursement program," added Flannery. "Today's settlement is designed to provide them with an option, again intended to make customers fully whole for Hyundai's fuel economy ratings restatement."

To address plaintiffs' claims including the requirement to return to a dealership for mileage verification, which plaintiffs felt could deter participation in the reimbursement program,

EXHIBIT 1 - PAGE 121

Hyundai agreed to add a lump sum payment option.  The proposed cash lump sum amount,
which varies by vehicle model and ownership type, will result in an average estimated payment
of $353 to Hyundai owners and lessees.  For example, an owner of a 2012 Elantra would receive
a lump sum payment of $320 minus any previous reimbursement payments.  Affected Hyundai
owners may elect the one-time lump sum cash payment or remain in the automaker's lifetime
reimbursement program; the choice is theirs.  Consumers can also elect other options, such as a
dealership credit of 150 percent of the lump sum cash payment amount, or a credit of 200 percent
of the cash amount toward the purchase of a new Hyundai vehicle.

"Hyundai's willingness to create a way for its customers to receive all of their future extra fuel
expenses in a lump sum shows they are serious about making things right for their customers,"
said Rob Carey, a Hagens Berman partner working on the case.  "Hyundai stepped up – and its
customers will now get a full recovery without the inconvenience of repeated dealership visits
and paperwork."

The Court is expected to review the proposed settlement for preliminary approval in early 2014.
Assuming preliminary approval is granted, notices will be sent to individual class members.
Initial details of the settlement are available now at www.hyundaimpginfo.com.  A more in-
depth website dedicated to the settlement will be established following preliminary approval by
the Court.

### About *Hyundai and Kia Fuel Economy Litigation, MDL No. 2424*
Following disclosure of the fuel economy ratings discrepancy in November 2012, approximately
53 federal complaints were filed against Hyundai and Kia and later consolidated (*In re: Hyundai
and Kia Fuel Economy Litigation, MDL No. 2424*) in United States District Court for the Central
District of California before Judge George H. Wu.

### About Hyundai Motor America
Hyundai Motor America, headquartered in Costa Mesa, Calif., is a subsidiary of Hyundai Motor
Co. of Korea. Hyundai vehicles are distributed throughout the United States by Hyundai Motor
America and are sold and serviced through more than 820 dealerships nationwide. All Hyundai
vehicles sold in the U.S. are covered by the Hyundai Assurance program, which includes the 5-
year/60,000-mile fully-transferable new vehicle limited warranty, Hyundai's 10-year/100,000-
mile powertrain limited warranty and five years of complimentary Roadside Assistance. Hyundai
Assurance includes Assurance Connected Care that provides owners of Hyundai models
equipped with the Hyundai Blue Link telematics system with proactive safety and car care
services complimentary for three years. These services include Automatic Collision Notification,
Enhanced Roadside Assistance, Vehicle Diagnostic Alert, Monthly Vehicle Health Report and
in-vehicle service scheduling.

EXHIBIT 1 - PAGE 122

**About Hagens Berman**

Seattle-based Hagens Berman Sobol Shapiro LLP represents consumers, workers, whistleblowers and investors in complex litigation. The firm has offices in nine cities and has been named one of the top plaintiffs' law firms in the country by the National Law Journal seven times. Founded in 1993, HBSS continues to successfully fight for consumer rights in class-action litigation. More about the law firm and its successes can be found at www.hbsslaw.com. Visit the firm's class-action law blog at www.classactionlawtoday.com.

# # #

EXHIBIT 1 - PAGE 123

**Exhibit J**

EXHIBIT 1 - PAGE 124

Media Contacts:

For KMA
Scott McKee, Director of Public Relations
Kia Motors America, Inc.
Phone: (949) 468-4813
Mobile: (949) 943-7064
email: smckee@kiausa.com

For Plaintiffs
Mark Firmani
Firmani + Associates Inc.
Phone: 206-443-9357
mark@firmani.com

## KIA - DRAFT
## PRESS RELEASE

### KIA MOTORS AMERICA AGREES TO RESOLVE LITIGATION PERTAINING TO RESTATEMENT OF FUEL ECONOMY RATINGS

**Automaker Pleased to Reach Agreement and Provide Affected Customers with New Reimbursement Options Including a Lump Sum Cash Payment**

IRVINE, Calif., December 23, 2013 – Kia Motors America (KMA) today announced a proposed settlement of disputes that were raised by current and former owners and lessees of vehicles affected by the automaker's November 2012 restatement of fuel economy ratings.   The adjustment affected approximately 300,000 2011-13 model year Kia vehicles.   While today's proposed settlement agreement is valued at up to approximately $185 million, the final number will be determined by the number of customers that elect to participate in one of the settlement's lump-sum payment options or remain in the lifetime reimbursement program KMA introduced at the time of the restatement, which reimburses based on actual fuel expenses.

"Kia Motors is a responsible company, and the proposed settlement enhances our goal of making things right for our customers by providing new reimbursement options," said John Yoon, KMA Executive Vice President HR, Administration, Diversity Relations, and General Counsel.  "Kia Motors is fully committed to taking care of its customers, and today's settlement adds flexibility by adding lump-sum payment options to the transparent reimbursement program introduced last year."

KMA has previously offered to provide compensation to affected owners for added fuel costs as a result of the MPG adjustments from the time of the original restatement – plus an extra 15

EXHIBIT 1 - PAGE 125

percent for their inconvenience.   Affected owners and lessees are reimbursed based on their actual mileage and the fuel costs for the region in which they live.

To address plaintiffs' claims, including that having to repeatedly return to a dealership would deter participation in the reimbursement program, KMA and the plaintiffs agreed to add lump-sum payment options.   The proposed cash lump-sum amount, which varies by vehicle and ownership type and accounts for previously received compensation, will result in an estimated average payment of about $667 for retail customers.    Consumers can also elect other options such as a dealership credit of 150% of the lump sum cash payment amount, or a credit of 200% of the cash amount towards the purchase of a new Kia vehicle.

"Kia's willingness to create a way for its customers to receive all of their future extra fuel expenses in a lump sum shows they are serious about making things right for their customers," said Rob Carey, a Hagens Berman partner working on the case. "Kia stepped up—and its customers will now get a full recovery without the chores of going to the dealership or filling out paperwork for years on end."

The Court is expected to review the proposed settlement for preliminary approval in early 2014. Assuming preliminary approval is granted, notices will be sent to individual class members. Preliminary details of the settlement are available at www.KiaMPGinfo.com.  A more in-depth website dedicated to the settlement will be established following preliminary approval by the Court.

**About Hyundai and Kia Fuel Economy Litigation, MDL No. 2424**
Following disclosure of the fuel economy ratings discrepancy in November 2012, approximately 53 complaints were filed in federal court against Hyundai and Kia and then consolidated (*In re: Hyundai and Kia Fuel Economy Litigation, MDL No. 2424*) in United States District Court for the Central District of California before Judge George H. Wu.

**About Kia Motors America**
Kia Motors America is the marketing and distribution arm of Kia Motors Corporation based in Seoul, South Korea. KMA offers a complete line of vehicles through more than 765 dealers

EXHIBIT 1 - PAGE 126

throughout the United States and serves as the "Official Automotive Partner" of the NBA and LPGA.  In 2012, KMA recorded its best-ever annual sales total and gained U.S. market share for the 18th consecutive year.  Kia is poised to continue its momentum and will continue to build the brand through design innovation, quality, value, advanced safety features and new technologies.

Information about Kia Motors America and its full vehicle line-up is available at its website – www.kia.com. For media information, including photography, visit www.kiamedia.com.  To receive custom email notifications for press releases the moment they are published, subscribe at http://www.kiamedia.com/us/en/newsalert.

**About Hagens Berman**

Seattle-based Hagens Berman Sobol Shapiro LLP represents consumers, workers, whistleblowers and investors in complex litigation. The firm has offices in nine cities and has been named one of the top plaintiffs' law firms in the country by the National Law Journal seven times. Founded in 1993, HBSS continues to successfully fight for consumer rights in class-action litigation. More about the law firm and its successes can be found at www.hbsslaw.com. Visit the firm's class-action law blog at www.classactionlawtoday.com.

# # #

EXHIBIT 1 - PAGE 127