Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Tel. (213) 330-7150
Fax (213) 330-7152

Robert B. Carey
*rob@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Tel. (602) 840-5900
Fax (602) 840-3012

Steve W. Berman
*steve@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel. (206) 623-7292
Fax (206) 623-0594
*Attorneys for Plaintiff Kaylene P. Brady, et al. and
Nicole Marie Hunter, et al.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  HYUNDAI AND KIA FUEL ECONOMY LITIGATION | MDL Case No. 2:13-ml-2424-GW-FFM |
| | **COMBINED REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AS TO *GENTRY* PLAINTIFFS** |
| | Date:  June 26, 2014 Time:  9:00 a.m. Judge:  Hon. George Wu; Courtroom:  10 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 4

A. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AS TO THE NATIONWIDE CLASS, INCLUDING THE PROPOSED VIRGINIA CLASS GENTRY SEEKS TO REPRESENT ........................................................................ 4

    1. Settling Plaintiffs Have Alleged And Settled The Strongest Claims Available To The Nationwide Class, Including The Virginia Class ............................................... 4

    2. The Proposed Settlement Does Not Prejudice the *Gentry* Plaintiffs Because Virginia Law Likely Provides No Viable Alternative To Settling Plaintiffs' Claims ................. 5

        a. The *Gentry* Plaintiffs' Proposed Theory Likely Provides No Remedy Under Virginia Law ....................... 6

        b. The *Gentry* Plaintiffs' Lemon Law Theory Increases The Risk Of Federal Preemption ....................... 9

        c. The *Gentry* Plaintiffs' Proposed Theory Would Likely Hamper Certification By Replacing Settling Plaintiffs' Classwide Claims With Individualized Lemon Law Claims ........................................... 10

    3. The Opt-Out Process Of Rule 23 Adequately Protects The Interests Of Individual Class Members Who Wish To Pursue Individual Claims ............................................... 11

B. SETTLING PLAINTIFFS ARE TYPICAL OF THE PUTATIVE SETTLEMENT CLASS BECAUSE DEFENDANTS' TESTING MISTAKES PRODUCED UNIFORM, CLASS-WIDE MISREPRESENTATIONS ................... 11

C. SETTLING PLAINTIFFS' COUNSEL HAS ADEQUATELY REPRESENTED THE CLASS BY PURSUING NATIONWIDE CLAIMS UNDER CALIFORNIA LAW, RATHER THAN DUBIOUS CLAIMS UNDER VIRGINIA LAW ............................... 14

D. SETTLING PLAINTIFFS HAVE CONDUCTED THE LITIGATION AND SETTLEMENT IN COMPLIANCE WITH RULE 23 ................................................................................ 15

    1. The Timing Of Plaintiffs' Motion For Class Certification Is Appropriate Relative To The Timing Of Settlement ............... 15

2.   The Confirmatory Discovery Process Was Conducted According To The Rules, And The *Gentry* Plaintiffs Cannot Now Challenge It Having Declined To Participate ........ 16

CONCLUSION ................................................................................................. 18

010339-13  693325 V1

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS (GENTRY)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bruno v. Eckhart Corp.*,
   280 F.R.D. 540 (C.D. Cal. 2012)...................................................................12, 13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..............................................................................5

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..............................................................................13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................12

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) .........................................................................14, 15

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
   Practices, and Prods. Liab. Litig.*,
   No. 10-ML-2151, Doc. # 3928 (C.D. Cal. July 24, 2013) ......................................14

*In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales
   Practices Litig.*,
   No. 09-MD-2015, 2011 WL 1877630 (N.D. Cal. May 17, 2011) .......................11

*Joint Equity Committee of Investors of Real Estate Partners, Inc. v.
   Coldwell Banker Real Estate Corp.*,
   281 F.R.D. 422 (C.D. Cal. 2012)........................................................................12

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) .........................................................................15

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) .........................................................................12, 13

*McGowan v. Faulkner Concrete Pipe Co.*,
   659 F.2d 554 (5th Cir. 1981) ..............................................................................18

*Paduano v. Am. Honda Motor Co., Inc.*,
   169 Cal. App. 4th 1453, 88 Cal. Rptr. 3d 90 (2009)..............................................7

*Pecover v. Elec. Arts Inc.*,
 C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................... 12, 13

*Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*,
 283 F.R.D. 617 (E.D. Wash. 2012)............................................................ 18

*Tanoh v. Dow Chemical Co.*,
 561 F.3d 945 (9th Cir. 2009) ..................................................................... 5

*Williams v. Boeing Co.*,
 517 F.3d 1120 (9th Cir. 2008) ................................................................... 5

*Wolin v. Jaguar Land Rover N. Am. LLC*,
 617 F.3d 1168 (9th Cir. 2010) ........................................................... 10, 13

STATUTES

49 U.S.C. § 32908(b) .................................................................................. 9

49 U.S.C. § 32908(d) ............................................................................. 7, 8

49 U.S.C. § 32919 ...................................................................................... 9

Cal. Civ. Code § 1793.2(d)(2)(A)............................................................. 13

Cal. Civ. Code § 1793.22(e)(1) .................................................................. 2

Va. Code § 59.1-207.10 .............................................................................. 8

Va. Code § 59.1-207.11 .......................................................................... 2, 7

Va. Code § 59.1-207.13 ........................................................................ 7, 13

OTHER AUTHORITIES

40 C.F.R. § 600.302-12 .............................................................................. 9

Fed. R. Civ. P. 23 ..............................................................................passim

Fed. R. Civ. P. 23(a) ........................................................................... 12, 16

Fed. R. Civ. P. 23(a)(3) ............................................................................ 11

FED. R. CIV. P. 23(b)(3) ............................................................................. 3

FED. R. CIV. P. 23(c)(2) ............................................................................ 11

- iv -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FED. R. EVID. 408..................................................................................................4, 18

W. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 11:27 (5th ed. 2011) ......................16

**INTRODUCTION**

Settling Plaintiffs have moved to certify a readily ascertainable nationwide settlement class of past and present owners of Hyundai and Kia vehicles.  The claims of this class arise out of Hyundai and Kia's botched EPA fuel efficiency testing, resulting in false representations and misleading advertising.  These facts provide a basis for class-wide claims of consumer fraud and false advertising under the law of any state, including the law of California that forms the basis of Settling Plaintiffs' claims.  Accordingly, Settling Plaintiffs negotiated a Proposed Settlement which generally affords class members the right to lump-sum payments averaging hundreds of dollars as a valuable alternative to the Defendants' Reimbursement Program.

Nevertheless, the Non-Settling Plaintiffs in *Gentry v. Hyundai* oppose certification and preliminary settlement approval, arguing that Settling Plaintiffs disregarded certain remedies and choice of law questions with respect to Virginia's Lemon Law statute.  (Doc. # 229, 234.)  Their objection lacks merit because there is no true conflict of law or typicality problem that would prevent class certification. The *Gentry* Plaintiffs expressly abandon the strongest theory of class-wide liability in this case—the EPA testing Defendants admit to be flawed—pursuing instead Virginia law claims that are wholly inferior for several reasons, including that they are much more likely (1) individualized and unsuitable for class treatment, (2) meritless under state law, and (3) preempted by federal law.

Settling Plaintiffs are typical of the putative class because they are similarly affected by Defendants' uniform testing flaws.  Settling Plaintiffs are entitled to make the strategic decision to pursue the strongest theory of classwide liability: consumer fraud claims based upon flawed EPA fuel efficiency testing.  Settling Plaintiffs are also entitled to reject the *Gentry* Plaintiffs' proposal to focus on much weaker claims. Settling Plaintiffs and Defendants have agreed to the certification of a nationwide class for settlement purposes.  These circumstances warrant certification of a

- 1 -

nationwide settlement class to address Settling Plaintiffs' meritorious testing-related claims under California law. Settling Plaintiffs urge the Court to reject the empty concerns of the *Gentry* Plaintiffs.

## BACKGROUND

This suit arises out of Defendants' failure to comply with EPA-mandated protocols in testing the fuel efficiency of their vehicles, resulting in inflated and misleading statements about the results of EPA-mandated tests. Settling Plaintiffs filed suit in 2012 individually and on behalf of a nationwide class, alleging far-reaching claims under California law for unfair competition, false advertising, deceptive practices, breach of warranty, fraud, negligent misrepresentation, and unjust enrichment. (Doc. # 185-1, at 9-10.)

Many states, including California and Virginia, have adopted so-called "Lemon Laws," which provide consumers with a buyback right in the event that a dealer or manufacturer is unable to repair a vehicle so that it complies with a written warranty. Among other limitations, these buyback rights are generally reserved for serious issues which "substantially impair[] the use, value, or safety of the new motor vehicle to the buyer or lessee." Cal. Civ. Code § 1793.22(e)(1); *see also* Va. Code § 59.1-207.11 (requiring "significant" impairment of "use, market value, or safety").

While Settling Plaintiffs allege that Defendants breached express warranties, Settling Plaintiffs have not alleged that Defendants breached the Lemon Laws of California or other states by failing to comply with EPA-mandated testing regimes. Settling Plaintiffs limited their case to claim types most likely to provide the greatest level of recovery for each state's consumers on a class-wide basis. On the strength of these claims, Settling Plaintiffs negotiated a generous settlement for affected consumers nationwide, now pending before the Court. (Settlement Agreement, Doc. # 185-2.)

The *Gentry* Plaintiffs oppose certification of the settlement class and settlement approval on the basis that they wish to pursue rights under the Virginia Lemon Law. Mounting a series of unfocused arguments, the *Gentry* Plaintiffs generally object to the Settling Plaintiffs' strategic choice not to pursue a Virginia Lemon Law claim. They argue that the existence of the Virginia Lemon Law renders the Settling Plaintiffs atypical, class counsel inadequate, and the settlement unfair, even though variations in state law do not necessarily preclude a Rule 23(b)(3) class action.

Although the Virginia Plaintiffs claim that their proposed Virginia-based suit would be advantageous for the Virginia Class, the Virginia Plaintiffs expressly abandon and disclaim reliance upon Settling Plaintiffs' primary theory: the admitted flaws in Defendants' EPA-mandated fuel economy testing. (*See* Doc. # 234, at 5 (acknowledging allegations of flawed EPA testing, and stating that "Plaintiffs in *Gentry* do not rely on any of this evidence in proving their case").) In other words, the *Gentry* Plaintiffs decline to hold Defendants liable for advertising EPA fuel economy testing numbers which did not accurately reflect properly conducted EPA fuel economy test results. Instead, the *Gentry* Plaintiffs attempt to assert claims based upon the individualized, in-use experience of class member drivers, which they claim differ from advertised gas mileage estimates produced by the flawed tests. (Doc. # 234, at 5.) Such a claim, even on a state-only class, would be far more difficult to certify. The *Gentry* Plaintiffs' counsel cites no case certifying a class regarding Lemon Law claims of this type, and undersigned counsel is aware of none. Settling Plaintiffs, for the class, preferred to focus on claims that provide greater relief and are capable of certification.

In addition to invoking the Virginia Lemon Law, the *Gentry* Plaintiffs raise various procedural objections. They complain that Settling Plaintiffs should have moved for class certification at an earlier point, even though the Court instructed the Settling Parties that it would take up the issues of class certification and preliminary

- 3 -

settlement approval at the same stage.   (Doc. # 229, at 11-12; Apr. 11, 2013 Hearing

Tr., Doc. # 108, at 16:3-18:10.)  They argue that the settlement is unfair because

Settling Plaintiffs did not conduct sufficient confirmatory discovery.  (Doc. # 234, at

12-15.)  The *Gentry* Plaintiffs declined to participate in the confirmatory discovery

process because their counsel was unwilling to agree to confidentiality and Rule 408

protections as to the exchange of information during this process.  (Doc. # 234 at 15.)

The *Gentry* Plaintiffs' counsel further states that he "requested feedback from his

clients regarding the proposed settlement" and that 92.4% of 600 respondents would

reject the settlement.  (Doc. # 234, at 17-18.)   The *Gentry* Plaintiffs' counsel does not

disclose the number of clients contacted, their identities, the information given, the

question posed, or their specific responses.

## ARGUMENT

**A.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AS TO THE NATIONWIDE CLASS, INCLUDING THE PROPOSED VIRGINIA CLASS GENTRY SEEKS TO REPRESENT**

### 1.  Settling Plaintiffs Have Alleged And Settled The Strongest Claims Available To The Nationwide Class, Including The Virginia Class

Settling Plaintiffs tailored their chosen causes of action to match Defendants'

classwide conduct.  Settling Plaintiffs' central theories of liability rest upon the same

core fact, that Defendants admittedly conducted flawed fuel economy testing and

therefore misrepresented to the public that they had appropriately tested and rated their

vehicles.  Settling Plaintiffs further alleged that Defendants falsely advertised their

wares to the public by touting the gas mileage of certain vehicles which supposedly

achieved 40 MPG, even though the 40 MPG estimate was based upon the results of

flawed tests.

Settling Plaintiffs' case does not depend upon individualized questions about

in-use fuel efficiency.  Instead, it hinges on the Defendants' failure to provide an

accurate estimate, as mandated by federal law, of how each vehicle performed under

1    specific testing conditions.  Settling Plaintiffs seek to enforce the consumer's right to

2    rely upon EPA-sanctioned gas mileage estimates for an apples-to-apples comparison

3    of fuel efficiency among different vehicles.

4         Neither the letter nor spirit of Rule 23 requires Settling Plaintiffs (or any

5    plaintiff) to allege every conceivable theory of liability.  *See Tanoh v. Dow Chemical*

6    *Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (recognizing class action plaintiffs are "masters

7    of their complaint").  To do so, even when such theories appear weak or meritless in

8    addition to being unsuitable for class treatment, would operate to the detriment of both

9    Virginia residents and the entire class.  Instead, settling parties in a class action are

10   entitled to proceed on the most viable claims regarding fuel economy

11   misrepresentations and enter into a settlement releasing fuel-economy related claims,

12   whether or not those claims were raised.  *See Williams v. Boeing Co.*, 517 F.3d 1120,

13   1133-34 (9th Cir. 2008) ("It is well-settled that in order to achieve a comprehensive

14   settlement ... a court may permit the release of a claim based on the identical factual

15   predicate as that underlying the claims in the settled class action even though the claim

16   was not presented and might not have been presentable in the class action." (quoting

17   *Newberg on Class Actions* § 16:7 (4th ed. 2007)) (alteration original)).  To this extent,

18   "[t]he breadth of negotiations is not necessarily strictly confined by the pleadings."

19   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1288 (9th Cir. 1992) (quotation

20   omitted).  The Proposed Settlement represents an appropriate resolution of all claims

21   arising out of Defendants' classwide misconduct.

22         **2.    The Proposed Settlement Does Not Prejudice the *Gentry* Plaintiffs**
23              **Because Virginia Law Likely Provides No Viable Alternative To**
               **Settling Plaintiffs' Claims**

24        The Proposed Settlement avoids significant risks associated with state-specific

25   Lemon Law claims, including those under the Virginia Lemon Law.  Therefore, the

26   *Gentry* Plaintiffs' Virginia Lemon Law claims provide no basis to conclude that the

27   Proposed Settlement would prejudice the Virginia Class.  Conversely, the *Gentry*

28

                                              - 5 -

Plaintiffs announce that they would abandon the strongest liability theory in this case, that is, Defendants' admitted failure to comply with EPA testing standards.  (*See* Doc. # 234, at 5.)  In its place, the *Gentry* Plaintiffs allege a Virginia Lemon Law theory which turns upon individualized issues and appears to lack merit under state and federal law.

The *Gentry* Plaintiffs appear to be the only parties who think that the merits of Lemon Law claims in Virginia (or any other state) outweigh the benefits of the proposed settlement.  The *Krauth/Hasper* Plaintiffs, who are represented by Consumer Watchdog and comprise the only other group opposed to preliminary approval, raise various technical objections to the Proposed Settlement, but they make no mention of Virginia Lemon Law claims, nor have they joined in the *Gentry* Plaintiffs' filings. The remaining Plaintiffs in contact with Liaison Counsel either support or do not object to the proposed settlement.  (*See* May 30, 2014 Liaison Counsel's Report, Doc. # 239.)

### a.   The *Gentry* Plaintiffs' Proposed Theory Likely Provides No Remedy Under Virginia Law

The Virginia Lemon Law does not provide the unlimited buyback remedy that the *Gentry* Plaintiffs suggest, and instead provides only a qualified, time-limited right as to conformity with certain warranties.  The Virginia Lemon Law provides as follows:

> If the manufacturer, its agents or authorized dealers do not conform the motor vehicle to any applicable warranty by repairing or correcting any defect or condition, including those that do not affect the driveability of the vehicle, which significantly impairs the use, market value, or safety of the motor vehicle to the consumer after a reasonable number of attempts during the lemon law rights period, the manufacturer shall:
>
> 1. Replace the motor vehicle with a comparable motor vehicle acceptable to the consumer, or
>
> 2. Accept return of the motor vehicle and refund to the consumer . . . the full contract price . . . .

- 6 -

1   Va. Code § 59.1-207.13.

2          Settling Plaintiffs have alleged that Defendants breached express warranties.  To

3   the extent that Defendants failed to perform the EPA tests correctly, they delivered

4   vehicles with misleading EPA fuel economy estimates because the estimates did not

5   reflect accurate test results.  However, it is one thing to allege that a specification is

6   misleading, and quite another to allege that an inaccuracy, especially one that, at most,

7   moderately overstates fuel efficiency, "significantly impairs the use, market value, or

8   safety of the motor vehicle."  The Virginia Lemon Law defines "significant

9   impairment" as one which "render[s] the new motor vehicle unfit, unreliable or unsafe

10  for ordinary use or reasonable intended purposes."  Va. Code § 59.1-207.11.

11          Accordingly, the *Gentry* Plaintiffs are wrong to argue that Settling Plaintiffs

12  erred in concluding (and making public statements) that a buyback remedy was not

13  available.  The flawed tests do not render the vehicles "unfit, unreliable or unsafe for

14  ordinary use."  It unlikely that they would "significantly impair" the market value of

15  vehicles to the degree usually associated with a complete refund.  Defendants will

16  argue that fuel economy is not the sole or ultimate determinant of market value for

17  their vehicles. Defendants will further argue that the establishment of the

18  Reimbursement Program to compensate vehicle owners for additional fuel expense

19  offsets any diminution in value that might have otherwise given rise to a Lemon Law

20  remedy.

21          Moreover, it is unlikely that the EPA mileage estimate would constitute a

22  warranty as to consumers' driving experiences within the meaning of the Lemon Law.

23  Under 49 U.S.C. § 32908(d), "[a] disclosure about fuel economy or estimated annual

24  fuel costs under this section does not establish a warranty under a law of the United

25  States or a State."  Defendants would be expected to argue that the issue has nothing to

26  do with the vehicle itself, but instead relates to the failure to follow mandatory EPA

27  testing protocols.  *See Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th

28

- 7 -

1453, 1467, 88 Cal. Rptr. 3d 90, 102-03 (2009) (rejecting warranty claim based upon failure to repair vehicle to conform to gas mileage estimate because plaintiff identified no defect in vehicle).  And because the *Gentry* Plaintiffs abandon the flawed-test theory of liability, it is even less clear whether the Lemon Law would require Defendants to "conform" the in-use fuel economy of a given consumer's vehicle to a fuel economy estimate derived from testing conditions independent of the consumer's driving experience.  The *Gentry* Plaintiffs point to no uniform representations about fuel economy other than the Elantra's 40 MPG and post-restatement 38 MPG highway ratings.  (Doc. # 234 at 5; First Amended Compl., *Gentry v. Hyundai Motor Am. Inc.*, No. 14-CV-1359, Doc. # 27 (C.D. Cal.) ("*Gentry* FAC") ¶¶ 7, 10, 14-17.)  These numbers correspond to the EPA mileage ratings, which do not themselves create a separate warranty as to in-use fuel economy under 49 U.S.C. § 32908(d).

Settling Plaintiffs' claims acknowledge the reality that Defendants have re-performed the EPA-mandated tests and provided revised fuel economy information to the public.  On that premise, Settling Plaintiffs' warranty and consumer protection claims aim to make consumers whole for the initial misrepresentations, preserving their right to recover fuel costs under Defendants' existing Reimbursement Program while providing an alternative lump-sum payment.  The Proposed Settlement sets a floor of substantial lump-sum compensation averaging hundreds of dollars, without limiting the availability of Reimbursement Program benefits for consumers whose actual fuel expenses exceed those amounts.  Lemon Laws such as the Virginia Lemon Law exist to protect consumers from the purchase of "a defective motor vehicle" which "creates a hardship for the consumer."  Va. Code  § 59.1-207.10 (statement of legislative intent).  It would not serve that purpose to scuttle the valuable terms of the Proposed Settlement, which offers a direct and immediate benefit to consumers in proportion to their economic grievance.

010339-13  693325 V1

### b.    The *Gentry* Plaintiffs' Lemon Law Theory Increases The Risk Of Federal Preemption

Settling Plaintiffs have already highlighted the risk that Defendants are likely to raise preemption defenses to the claims in this case.  (Doc. # 185-1 at 34.)  Settling Plaintiffs would answer this defense on the basis that federal law only preempts laws that are not "identical" to the federal fuel economy standards, and that Settling Plaintiffs focus on Defendants' failure to follow federal standards of fuel economy testing.  *See* 49 U.S.C. § 32919.  In effect, Settling Plaintiffs assert state law claims that aim to compel Defendants to comply with their federal obligations in testing and reporting the fuel economy of their vehicles.

Whatever preemption risk Settling Plaintiffs face, the *Gentry* Plaintiffs would increase it exponentially by requiring EPA fuel economy estimates to conform to in-use driver experiences.   The *Gentry* Plaintiffs claim the Lemon Law applies because the EPA test numbers did not align with their driving experiences.  (*Gentry* FAC ¶¶ 21-25, 31, 35.)  Defendants already moved to dismiss the *Gentry* Plaintiffs' claims on this very basis, and that motion was not decided.  Defendants argued, and would still be expected to argue, that the Virginia statute is preempted to the extent it requires Defendants to advertise a different number than the EPA requires.  Defendants cite 49 U.S.C. § 32908(b), which requires automakers to display prominent labels disclosing the estimated fuel economy of their vehicles.  The EPA sticker ratings, as well as the fuel economy testing protocols, are determined by federal regulations.  *See* 40 C.F.R. § 600.302-12 (specifying MPG sticker requirements and sources of fuel economy information).

The *Gentry* Plaintiffs run a much higher risk that their claims are preempted by federal law to the extent that they seek to enforce a fuel economy disclosure rule that differs from the federal model.  The *Gentry* Plaintiffs' claims raise additional risks of federal preemption which the Settling Plaintiffs avoid for the class as a whole.

- 9 -

**c.**   **The *Gentry* Plaintiffs' Proposed Theory Would Likely Hamper Certification By Replacing Settling Plaintiffs' Classwide Claims With Individualized Lemon Law Claims**

In addition to being weak, the Virginia Lemon Law claims appear to turn upon individualized issues because the *Gentry* Plaintiffs peg their case to the discrepancies between Defendants' fuel economy estimates and the in-use fuel economy that consumers experience.  Class treatment of such claims is difficult because fuel efficiency depends upon a multitude of factors.  As the discrepancies in Defendants' own tests suggest, the fuel efficiency will vary with tire inflation, warm-up time, road conditions, weather effects, and driving habits.  *Cf. Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010) (doubting whether a class could be certified on a claim for breach of tire warranty because "[t]ires deteriorate at different rates depending on where and how they are driven" and "[w]hether each proposed class member's tires wore out, and whether they wore out prematurely and as a result of the alleged alignment defect, are individual causation and injury issues that could make class-wide adjudication inappropriate").

Settling Plaintiffs have taken care to pursue legal theories which provide full relief for Defendants' uniform misrepresentations, and which provide that relief on a classwide basis.  *See id.* at 1173 (certifying consumer fraud and warranty claim class relating to premature tire wear to the extent that claims arose out of uniform defect in vehicle alignment geometry, rather than individualized factors).  The *Gentry* Plaintiffs are attempting to interject a claim under the Virginia Lemon Law which does none of those things, because it likely lacks merit and would give rise to individualized inquiries.

### 3. The Opt-Out Process Of Rule 23 Adequately Protects The Interests Of Individual Class Members Who Wish To Pursue Individual Claims

The *Gentry* Plaintiffs object that the opt-out process does not sufficiently protect them. (Doc. # 234 at 18-19.)  They further request that the Court provide them with an opportunity to opt out of the settlement while simultaneously objecting to it.  (Doc. # 234 at 20-21.)  Settling Plaintiffs do not contest that all members of the putative nationwide class should receive notice and an opportunity to opt out of the settlement under the plain language of Rule 23(c)(2) because this settlement seeks to certify a damages class.  However, the *Gentry* Plaintiffs are wrong to suggest that they are entitled to opt out while at the same time retaining the right to object to the settlement. "Class members who opt out lack standing to object to a settlement." *See In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales Practices Litig.*, No. 09-MD-2015, 2011 WL 1877630, at *4 n.3 (N.D. Cal. May 17, 2011).

Nor is there any merit to the *Gentry* Plaintiffs' assertion that the opt-out process does not sufficiently protect their interests.  The *Gentry* Plaintiffs fail to invoke any specific aspect of this case that renders the established opt-out process of Rule 23 insufficient.  Generalized statements and quotations from caselaw fail to demonstrate why the general opt-out right provided under the settlement is insufficient, if individual class members wish to pursue Lemon Law claims that are far-fetched or based upon individual circumstances.

### B. SETTLING PLAINTIFFS ARE TYPICAL OF THE PUTATIVE SETTLEMENT CLASS BECAUSE DEFENDANTS' TESTING MISTAKES PRODUCED UNIFORM, CLASS-WIDE MISREPRESENTATIONS

Contrary to what the *Gentry* Plaintiffs argue, Settling Plaintiffs' claims are typical of the putative class under Rule 23(a)(3) because the theory and factual basis of their claims is the same for the class as a whole.  Settling Plaintiffs allege that the flaws in Defendants' EPA testing uniformly affected representations about each class

- 11 -

vehicle, and by extension, the class of purchasers of those vehicles.  Settling Plaintiffs appropriately pursued remedies under California law on behalf of all class members because Defendants' conduct emanates from California and California is the forum of suit.  Contrary to the *Gentry* Plaintiffs' suggestion (based upon legislative history dating from 2005, before the expansion of federal class action jurisdiction), federal courts do in appropriate circumstances certify nationwide classes for claims under a single state's law.  *See, e.g.*, *Pecover v. Elec. Arts Inc.*, C 08-2820 VRW, 2010 WL 8742757, at *19-22 (N.D. Cal. Dec. 21, 2010) (rejecting Due Process and choice of law challenge to application of California law to nationwide class); *Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422 (C.D. Cal. 2012) (certifying nationwide class on fraud, negligent misrepresentation, negligence, and aiding and abetting claims under California law).   Where a party asserts that there is a conflict between the laws of two states, that party must carry the burden of showing that an actual conflict exists.  *See Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 543-48 (C.D. Cal. 2012) (reaffirming Defendants' burden to show, on a case-specific basis, that a material conflict of laws exists under California choice of law rules).  California law may still apply on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012).

Under the permissive standards of Rule 23(a), typicality exists where Plaintiffs' claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Neither the nuances of the Virginia Lemon Law nor the *Gentry* Plaintiffs' Lemon Law claims distinguish the position of the Virginia Class.   "[T]he idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Id.* at 1022-23.  Virginia law is

- 12 -

hardly unique in offering a buyback remedy, and the *Gentry* Plaintiffs identify no material difference between that remedy and parallel remedies under California law. *Compare* Cal. Civ. Code § 1793.2(d)(2)(A), *with* Va. Code § 59.1-207.13. Just as important, the *Gentry* Plaintiffs make no persuasive showing that they are entitled to such a remedy or that such a remedy is available on a class-wide basis, such that they are differently situated from other consumers nationwide.

The *Gentry* Plaintiffs misunderstand the Rule 23 typicality requirement as requiring that all putative class members must be similarly situated in every respect in every instance, even where differences such as the state of residency or vehicle driven make no material difference in the case. Rule 23 requires only that the named plaintiffs be typical with respect to the claims at issue. As explained in Settling Plaintiffs' Motion, "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted); *see also Wolin*, 617 F.3d at 1175 (typicality exists when class representatives allege same cause of injury and pursue legal theories of consumer fraud, breach of warranty, and unjust enrichment which are uniform to the class as a whole).

To the extent that the *Gentry* Plaintiffs invoke unspecified conflicts between California law and the law of other states, there is no substance to their objections. (Doc. # 229, at 26-30.) Choice-of-law questions arise only where an actual, material conflict exists between the potentially applicable law of different states. *See Bruno*, 280 F.R.D. 543-48; *Pecover*, 2010 WL 8742757 at *21. The Court need compare the relative governmental interests of two states only if "there is a true conflict." *Mazza*, 666 F.3d at 590. The *Gentry* Plaintiffs express concern that applying California law to consumers nationally might prejudice Defendants (Doc. # 229, at 21-23), but again,

- 13 -

1   they cite no conflict of law material to this case.  Moreover, the *Gentry* Plaintiffs have

2   no standing to raise typicality objections on Defendants' behalf.   The Proposed

3   Settlement expressly provides that Defendants agree that a nationwide settlement class

4   will be certified.

5         In essence, the *Gentry* Plaintiffs' typicality argument is really a repetitive

6   challenge to the merits of the proposed settlement relative to the *Gentry* Plaintiffs'

7   preferred (and highly problematic) theory of liability.  These arguments do not render

8   the Virginia Class atypical, nor do they impact the Rule 23 analysis.

9   **C.   SETTLING PLAINTIFFS' COUNSEL HAS ADEQUATELY**
**REPRESENTED THE CLASS BY PURSUING NATIONWIDE CLAIMS**

10   **UNDER CALIFORNIA LAW, RATHER THAN DUBIOUS CLAIMS**
**UNDER VIRGINIA LAW**

11

12         The *Gentry* Plaintiffs rehash their challenges to class certification and

13   settlement approval under the guise of attacking the adequacy of counsel.  Settling

14   Plaintiffs are represented by counsel with extensive experience litigating large-scale

15   automotive class actions.  (Doc. #184-2 at 11-13, 30; *see also* Final Order Approving

16   Class Settlement, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales*

17   *Practices, and Prods. Liab. Litig.*, No. 10-ML-2151, Doc. # 3928 (C.D. Cal. July 24,

18   2013)).  Settling Plaintiffs' counsel has demonstrated the ability to evaluate and pursue

19   claims under particular state laws for particular subclasses.  (*See In re Toyota* Third

20   Amended Economic Loss Master Consolidated Complaint, No. 10-ML-2151, Doc. #

21   2836 (C.D. Cal. July 25, 2012)).  Settling Plaintiffs have also demonstrated above the

22   many reasons why the claims asserted by the *Gentry* Plaintiffs do not warrant a

23   different approach to settlement or class certification.

24         Settling Plaintiffs have acted consistent with their obligation to protect the

25   interests of the whole class.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 587 (9th Cir.

26   2010).  "Class representation is inadequate if the named plaintiff fails to prosecute the

27   action vigorously on behalf of the entire class or has an insurmountable conflict of

28

interest with other class members." *Id.* at 589.  The Court should take "special care to ensure that the release of a claim not asserted within a class action or not shared alike by all class members does not represent an advantage to the class bought by the uncompensated sacrifice of claims of members, whether few or many." *See Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) (alterations and quotation marks omitted).

The Proposed Settlement raises none of these concerns with respect to the *Gentry* Plaintiffs or the Virginia Class.  The Settling Plaintiffs duly considered and arrived at their decision to assert claims under California law and to certify a nationwide settlement class, rather than hinging relief upon the unfavorable and uncertain Lemon Law of Virginia.  That strategic decision works no unfairness to the Virginia Class that would justify their exclusion from the Settlement Class.  To the extent that the *Gentry* Plaintiffs suggest that Settling Plaintiffs' counsel failed to consider state-by-state actions or failed to consider the consumer protection laws and Lemon Laws of various states (including the claims invoked by the *Gentry* Plaintiffs), the *Gentry* Plaintiffs' arguments defy common sense.

**D.    SETTLING PLAINTIFFS HAVE CONDUCTED THE LITIGATION AND SETTLEMENT IN COMPLIANCE WITH RULE 23**

   **1.    The Timing Of Plaintiffs' Motion For Class Certification Is Appropriate Relative To The Timing Of Settlement**

Finally, the *Gentry* Plaintiffs object to the submission of Settling Plaintiffs' Motion for Certification of a Settlement Class at the same time as the Motion for Preliminary Approval of the Proposed Settlement.   However, the timing of the instant Motion conforms to the Court's initial direction that it would take up the issue of class certification at the same time as it took up the issue of preliminary settlement approval.  (April 11, 2013 Hearing Tr., Doc. # 108, at 16:3-18:10.)  The parties may, subject to Rule 23 criteria, propose to certify a class for purposes of settlement only,

- 15 -

1   and that is just what the Settling Parties have done here. *See generally* William B.

2   Rubenstein, *Newberg on Class Actions* § 11:27 (5th ed. 2011).

3         Settling Plaintiffs alleged the existence of a nationwide class of vehicle

4   purchasers deceived by uniform misrepresentations of fuel efficiency. Such a class

5   easily satisfies the basic Rule 23(a) requisites of numerosity, commonality, and

6   typicality. Settling Plaintiffs negotiated their settlement on the assumption (expressed

7   in the agreement) that a nationwide class of new and used vehicle purchasers could be

8   certified. Thus, Plaintiff maximized the scope of the putative class, applying the

9   greatest pressure against Defendants and obtaining their ultimate consent to

10   certification for settlement purposes.

11         Under these circumstances, the *Gentry* Plaintiffs' concerns about the timing of

12   certification ring hollow. Contrary to what the *Gentry* Plaintiffs suggest, Settling

13   Plaintiffs did not proceed to negotiate on behalf of a mysterious hypothetical class of

14   uncertain scope and composition. (Doc. # 229, at 5.) The Proposed Settlement

15   expresses the premise and assumption that a nationwide class exists and can be

16   certified. (Settlement Agreement, Doc. # 185-2 at 8-9.) The *Gentry* Plaintiffs also

17   suggest that the timing of certification creates "complex problems" because "tolling of

18   the statute of limitations is not guaranteed under Virginia law." (Doc. # 229, at 12

19   n.2.) But the fact is, the timing of certification has no impact upon the timeliness of

20   the *Gentry* Plaintiffs' claims. The timeliness of claims depends upon the filing of the

21   *Gentry* Plaintiffs' claims.

       **2.**     **The Confirmatory Discovery Process Was Conducted According To**

22             **The Rules, And The *Gentry* Plaintiffs Cannot Now Challenge It**

23             **Having Declined To Participate**

24         Beginning in early 2013, when the framework for settlement was initially

25   proposed, the Settling Plaintiffs undertook a lengthy process of confirmatory

26   discovery. The discovery included eleven deposition-like interviews with engineers

27   and top executives, requests for production, and interrogatories. (Doc. # 185-1,

28

at 14-21, 39; Doc. # 185-3.)  The confirmatory discovery process lasted almost seven months, with routine updates provided to non-settling plaintiffs by way of liaison counsel.  (Doc. # 185-1, at 12.)  Hundreds of thousands of documents were produced in the course of discovery and analyzed by Settling Plaintiffs' counsel.  The sum of information obtained regarding Defendants' coastdown testing protocols and problems, on top of information obtained through discovery in the *Espinosa* action, enabled Plaintiffs to make a reasoned evaluation of the proposed settlement against the strengths and risks of their case.  (Doc. # 185-3, ¶ 7.)

The *Gentry* Plaintiffs object to this confirmatory discovery process on the grounds that rough terms of a settlement were announced three months after the filing of the *Hunter* and *Brady* actions, and thirteen months after the filing of *Espinosa*. (Doc. # 234 at 12.)  But the timing of settlement progress does not reduce its value to the class.  As explained in Settling Plaintiffs' Motion for Preliminary Approval, settlement negotiations in this case were extensive and adversarial, taking place between sophisticated and experienced counsel with the assistance of the Honorable Stephen J. Sundvold (Ret.).  (Doc. # 185-1, at 44.)  Both parties showed a willingness and ability to litigate this case to conclusion.  (Doc. # 185-1, at 43.)  The proposed settlement agreement was not drafted, signed, or presented to the Court until Settling Plaintiffs realized the benefit of their confirmatory discovery efforts in December 2013.  And while Defendants have agreed to pay an award of attorneys' fees, the Parties have purposely delayed fee negotiations until the confirmatory discovery and primary settlement negotiations were completed, with fees to be separately determined without diminishing class members' recovery.  (*See* Doc. # 185-1, at 44.)

Nor do the *Gentry* Plaintiffs make any legitimate challenge to the confidentiality protection that attached to settlement negotiations and related discovery.   (Doc. # 234 at 13-15.)  The use of protective orders is well established in business litigation, particularly litigation which touches upon far-ranging internal business practices and

documents that involve competitively sensitive information.  *See, e.g.*, *Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*, 283 F.R.D. 617, 621 (E.D. Wash. 2012).  The *Gentry* Plaintiffs complain that confirmatory discovery materials could not be used against Defendants at trial, but Federal Rule of Evidence 408 expressly grants such protection in recognition of the importance of free and open communication during the process of settlement negotiations.  Contrary to what the *Gentry* Plaintiffs suggest, nothing about the confirmatory discovery process "immunizes" Defendants from the presentation of evidence on liability.  (Doc. # 234, at 14-15.)  It simply restricts the use of evidence obtained through the settlement process and leaves the parties to normal channels of discovery and proof if settlement efforts fail.

The *Gentry* Plaintiffs have only themselves to blame for refusing to cooperate in the confirmatory discovery process and making no independent evaluation of the mountains of information and documents Settling Plaintiffs obtained. (Doc. # 234 at 15.)  If anything, the *Gentry* Plaintiffs' wilful decision to blind themselves to discovery and remain uninformed about the settlement renders them and their counsel inadequate to represent the class and presents an additional reason to reject their arguments in opposition to settlement.  *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981) (finding class counsel inadequate due to "complete absence of discovery effort on his part, over the two years the suit was pending").

## CONCLUSION

For the foregoing reasons the Court should reject the oppositions of the *Gentry* Plaintiffs and grant Settling Plaintiffs' Motion for Certification of Settlement Class (Doc. # 184) and Motion for Preliminary Approval of Settlement (Doc. # 185).

1

2

3    DATED: June 14, 2014              **HAGENS BERMAN SOBOL SHAPIRO LLP**

4

5                                     By   /s/Robert B. Carey

6                                     Robert B. Carey
                                      *rob@hbsslaw.com*
7                                     Hagens Berman Sobol Shapiro LLP
                                      11 West Jefferson Street, Suite 1000
8                                     Phoenix, AZ  85003
9                                     Tel. (602) 840-5900
                                      Fax (602) 840-3012
10

11                                    Elaine T. Byszewski (SBN 222304)
                                      *elaine@hbsslaw.com*
12                                    301 North Lake Avenue, Suite 203
13                                    Pasadena, CA  91101
                                      Tel. (213) 330-7150
14                                    Fax (213) 330-7152

15

16                                    Steve W. Berman
                                      *steve@hbsslaw.com*
17                                    Hagens Berman Sobol Shapiro LLP
                                      1918 Eighth Avenue, Suite 3300
18                                    Seattle, WA 98101
19                                    Tel. (206) 623-7292
                                      Fax (206) 623-0594
20

21                                    *Attorneys for Plaintiff Kaylene P. Brady, et al.*
22                                    *and Nicole Marie Hunter, et al.*

23

24    DATED: June 14, 2014             **MCCUNEWRIGHT LLP**

25                                    By   /s/Richard D. McCune

26                                    Richard D. McCune
                                      *rdm@mccunewright.com*
27                                    McCuneWright LLP

28                                           - 19 -

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION
                                      FOR CERTIFICATION OF SETTLEMENT CLASS (GENTRY)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Tel. (909) 557-1250
Fax (909) 557-1275

*Attorneys for Plaintiffs Kehlie R. Espinosa,*
*Lillian E. Levoff, Thomas Ganim, and Dan*
*Baldeschi*

- 20 -

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS (GENTRY)

# **CERTIFICATE OF SERVICE**

I, Robert B. Carey, hereby certify that on June 14, 2014, a true and correct copy of the foregoing document was filed electronically with the Clerk of Courts at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record.

      /s/Robert B. Carey

010339-13  693325 V1

COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS (GENTRY)