# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | **MDL 13-2424-GW(FFMx)** | Date | June 26, 2014 |
| Title | *In Re: Hyundai and Kia Fuel Economy Litigation* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| **BY TELEPHONE**<br>Sara D. Avila / Wesley W. Barnett<br>Francis R. Greene / Dean Gresham<br>Justin Saif / Kelly Tucker | Dean Hansell<br>Michael L. Kidney - by telephone<br>Shon Morgan<br>Joseph R. Ashby |
| **IN PERSON**<br>Lewis G. Adler / Derek Brandt<br>James M. Destefano / James P. Feinman<br>Andrew D. Finnicum / James Hail<br>Elaine S. Kusel / Laura Antonini<br>Robert B. Carey / Eric H. Gibbs<br>Scott M. Grzenczyk / Thomas D. Mauriello<br>Richard D. McCune, Jr. / Harvey Rosenfield | |

PROCEEDINGS:   **PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS [184]**

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND ORDER DIRECTING NOTICE TO THE CLASS [185]**

**PLAINTIFFS' IN GENTRY, ET AL. V. HYUNDAI MOTOR AMERICA'S MOTION FOR SUGGESTION OF REMAND AND ENFORCEMENT OF STIPULATION IN OPEN COURT [230]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the above-entitled motions are continued to **July 24, 2014 at 9:30 a.m.** Plaintiffs will have until July 7, 2014 to file their supplemental briefs and revised notice and forms. Responses will be filed by July 16, 2014. Any reply will be filed by noon on July 21, 2014.

| | | | |
|---|---|---|---|
| | | 1 : | 20 |
| | Initials of Preparer | JG | |

*In re: Hyundai and Kia Fuel Economy Litigation*, Case No. 13-ML-2424-GW-FFM
Tentative Rulings on: (1) Motion to Certify Class (Docket No. 184), (2) Motion for Preliminary
Settlement Approval (Docket No. 185), and (3) Plaintiff Gentry's Motion for Suggestion of
Remand (Docket No. 230)

*This tentative ruling contains information from documents filed under seal. Should any party seek to have it
filed under seal or have parts of it redacted, it must advise the Court at the hearing on this matter or the
Court will make the ruling part of the public record.*

## I. Introduction

This litigation arises out of misstatements by Defendants Hyundai Motor America
("HMA") and Kia Motors America ("KMA") ("Defendants") regarding the fuel economy of
certain vehicles in their advertisements and Monroney stickers.[1] It is generally claimed that the
inaccurate information arose from changes to the process used during fuel efficiency testing and,
in some cases, mistakes in the testing process. These process changes and mistakes affected all
vehicles of a single model uniformly, as the tests were used to create fuel efficiency numbers that
were different from what they should have been had the tests been correctly performed according
to the proper standards. On November 2, 2012, Defendants announced that they had discovered
the misstatements and created a Reimbursement Program to compensate owners for additional
fuel costs incurred.

Since that announcement, scores of class-action lawsuits have been filed around the
country regarding the Defendants' former fuel economy misrepresentations. On February 6,
2013, the Judicial Panel on Multidistrict Litigation ("JPML") granted a motion to centralize all
of that litigation in the Central District of California.[2] (Docket No. 1.) Shortly thereafter,
Defendants reached a tentative agreement in principle with the plaintiffs in certain of the class
actions (the "Settling Plaintiffs"). However, this Court limited the proceedings to require the
production of documents previously provided to the Settling Plaintiffs be supplied to all
plaintiffs' counsel who had signed a Rule 408 confidentiality agreement and to permit
confirmatory discovery in the aid of evaluation of the settlement in principle. On December 23,
2013, the Settling Plaintiffs filed their motions for preliminary approval of class settlement and

---

[1] Under federal law (originally sponsored by Senator A. S. Mike Monroney), new passenger vehicles sold in this
country must bear stickers affixed to the window which delineate certain information including fuel economy data.
*See* 15 U.S.C. §§ 1231-33, 49 U.S.C. § 32908, and 49 C.F.R. § 575.401 (2012).

[2] At the time of the JPML order, there were 34 actions pending in 17 different district courts. (Docket No. 1.)

for class certification for purposes of settlement. (Docket Nos. 184, 185.) The vast majority of named plaintiffs in the remaining class actions have now either indicated their agreement with the proposed settlement or have not filed any opposition to it. (*See* Docket No. 239.) Three sets of named plaintiffs have filed objections to the terms of the settlement with a joinder by one additional named plaintiff. (*See* Docket Nos. 234, 236, 238.) Also, one set of named plaintiffs has opposed class certification and seeks a "suggestion of remand" of a portion of their lawsuit to the federal court in Virginia. (*See* Docket No. 230.)

## II. Procedural Background

The litigation history of this action began well before the JPML centralized the litigation in this MDL. One of the first-filed case regarding HMA's fuel economy misrepresentations was *Espinosa v. Hyundai Motor America* – originally filed in California state court on January 6, 2012. *See Espinosa*, Case No. 12-CV-0800-GW-FFM (C.D. Cal.), Notice of Removal, *Espinosa* Docket No. 1.[3] HMA removed the action to this Court on January 30, 2012. (*Id.*) *Espinosa* was filed as a putative class action, originally defining the class as "[a]ll owners of 2010-2012 Hyundai models who purchased their vehicles in the United States;" an alternative class limited to California purchasers was also proposed. (*Id.* at Exh. 1, ¶¶ 23-24.) *Espinosa* asserted causes of action based on California state law.[4] (*Id.*) After removing the case, HMA filed a motion to dismiss. (*Espinosa* Docket No. 8.) The hearing date on that motion was continued by stipulation of the parties, and plaintiffs filed a First Amended Complaint ("FAC") prior to the Court ruling on the motion. (*Espinosa* Docket Nos. 13, 15.) The FAC changed the class definition to include not only purchasers of 2010-2012 Hyundai models, but also lessees. (*Espinosa* Docket No. 15, ¶ 31.) HMA filed a motion to dismiss the FAC raising, *inter alia*, federal preemption, lack of standing, primary jurisdiction, and other contentions. (*Espinosa* Docket No. 17.) The Court referenced certain problems with some of plaintiffs' allegations but ultimately denied that motion after holding a hearing on April 23, 2012. (*Espinosa* Docket Nos. 27, 28.) The Court also held a

---

[3] Citations to the docket in this MDL case are simply referred to by "Docket No."; whereas citations to the dockets of individual actions will include a designation to the case name for that docket reference (e.g. "*Espinosa* Docket No.").

[4] The Complaint alleged six causes of action for: 1) violation of California's Unfair Business Practices Act ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); 2) violation of California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq*.); 3) violation of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq*.); 4) fraud; 5) negligent misrepresentation; and 6) deceit (Cal. Civ. Code § 1710). (*Espinosa* Docket No. 1 at Exh. 1.)

scheduling conference in the matter on March 15, 2012. (*Espinosa* Docket No. 18.) On August 2, 2012, plaintiffs filed a Second Amended Complaint which added additional named plaintiffs. (*Espinosa* Docket No. 40.)

The matter then proceeded to the class certification stage. Plaintiffs filed their motion for class certification on September 14, 2012, after the Court had granted stipulated continuances regarding the deadline for filing such motion. (*See e.g. Espinosa* Docket No. 43.) While that motion was pending, HMA filed an *ex parte* application to stay the action pending resolution of the MDL petition by the JPML, filed by plaintiffs in the *Krauth* action.[5] (*Espinosa* Docket No. 66.) The Court denied the motion to stay. (*Espinosa* Docket No. 69.) The Court also denied the *Krauth* plaintiffs' motion to intervene in the *Espinosa* action. (*Espinosa* Docket No. 97.) On December 28, 2012, the Court held a hearing on the class certification motion but did not make a final ruling on the motion, instead requesting supplemental briefing. (*Id.*) On February 6, 2013 the JPML ordered the creation of the MDL from twelve actions then pending in five different federal courts.[6] (Docket No. 1.) Twenty-two additional actions pending in twelve other districts were designated as potential tag-along actions.[7] (*Id.*) The Court then held a status conference in both the *Espinosa* and MDL matters on February 14, 2013, to discuss the effect of the MDL creation on the *Espinosa* case and vise versa. (*Espinosa* Docket No. 104.) At that status conference, the *Espinosa* parties first advised the Court that a settlement had been reached

---

[5] *Krauth v. Hyundai Motor America*, Case No. 8:12-cv-01935 (C.D. Cal.) filed on November 6, 2012.

[6] The twelve actions originally centralized by the JPML were:
Middle District of Alabama
    *Alex Maturani v. Hyundai Motor America, Inc.*, C.A. No. 2:12-00998, 2:13-CV-813
Central District of California
    *Kehlie R. Espinosa, et al. v. Hyundai Motor America*, C.A. No. 2:12-00800
    *Nicole Marie Hunter, et al. v. Hyundai Motor America, et al.*, C.A. No. 8:12-01909
    *Jeremy Wilton v. Kia Motors America, Inc., et al.*, C.A. No. 8:12-01917
    *Kaylene P. Brady, et al. v. Hyundai Motor America, et al.*, C.A. No. 8:12-01930
    *Gunther Krauth v. Hyundai Motor America*, C.A. No. 8:12-01935
    *Eric Graewingholt, et al. v. Hyundai Motor America, Inc., et al.*, C.A. No. 8:12-01963
    *Reece Thomson, et al. v. Hyundai Motor America, et al.*, C.A. No. 8:12-01981
Northern District of Illinois
    *Nilufar Rezai v. Hyundai Motor America*, C.A. No. 1:12-09124
    *Jack Rottner v. Hyundai Motor America*, C.A. No. 1:12-09196, 2:13-CV-814, 2:13-CV-815
District of New Jersey
    *Lydia Kievit, et al. v. Hyundai Motor America*, C.A. No. 2:12-06999 2:13-CV-816
Southern District of Ohio
    *Rebecca Sanders, et al. v. Hyundai Motor Company, et al.*, C.A. No. 1:12-00853 2:13-CV-817.

[7] In all, there are now more than fifty putative class-actions filed in federal court that have been consolidated in this MDL. *See* Appendix A attached hereto.

between HMA (and potentially with KMA) and the plaintiffs in the *Espinosa*, *Hunter*, and *Brady* class actions. (*See* Feb. 14, 2013 Reporter's Transcript at 7-9, Docket No. 10.) The settlement in principle was negotiated over multiple sessions with the Honorable Stephen J. Sundvold (Ret.) as mediator. (Docket No. 185-1, p.17.)  The Court ordered the settling parties in those cases to provide the non-settling plaintiffs with a general term sheet by February 21, 2013, and to file a joint brief regarding the settlement by February 26, 2013. (Docket No. 4.)

The Court held a status conference on February 28, 2013, at which the parties discussed settlement discovery, confidentiality of all discovery disclosed for purposes of settlement, and the selection of liaison counsel for non-settling plaintiffs. (Docket No. 9.) The Court held a scheduling conference in the MDL on March 28, 2013, at which multiple additional related cases were officially added to the MDL and Eric Gibbs was appointed liaison counsel for the non-settling plaintiffs.[8] (Docket No. 32.) Further, the Court was advised that KMA had agreed to the same settlement terms as HMA. (*Id.*) The Court stayed Defendants' obligation to respond to individual complaints and discovery matters pending settlement and began overseeing the process of confirmatory discovery for settlement purposes. (*Id.*) Further scheduling conferences and status conferences were held by the Court on April 11, 2013,[9] April 25, 2013,[10] May 23, 2013,[11] June 6, 2013, August 15, 2013, and September 26, 2013. (Docket Nos. 76, 86, 101, 117, 131, 143.) In the period between May and September of 2013, the parties amongst themselves and, on occasion, with the Court met a number of times to resolve outstanding discovery issues

---

[8] Eric Gibbs had the support of the non-settling named plaintiffs in 21 of the cases then pending before the Court. (Docket No. 17.) His law firm (Girard Gibbs LLP) specializes in class action litigation. Gibbs has litigated more than 75 class action matters and has previously served as court-appointed lead counsel and as liaison counsel in numerous class action cases. (*Id.*)

[9] Prior to the April 11, 2013 status conference, it had been reported to the Court that the parties were in the process of placing all non-privileged documents provided to the counsel for the Settling Plaintiffs onto an online data base which was to be accessible to any non-settling plaintiffs' counsel who had executed a confidentiality agreement. (Docket Nos. 47, 66.)

[10] Prior to the April 25, 2013 status conference, liaison counsel informed the Court that he had informed counsel for the non-settling plaintiffs as to the procedure for obtaining a password to get access to the secured database containing the documents concerning the proposed settlement and sent to them a 26-page report as to the contents of the database plus a 118-page index of the 10,800 plus documents contained therein. (Docket No. 80, at 2 of 4.)

[11] Prior to the May 23, 2014 status conference, liaison counsel reported as to efforts to coordinate and involve the non-settling plaintiffs' counsel into the confirmatory discovery process including soliciting from said counsel any discovery requests in addition to those proffered by the Settling Plaintiffs' counsel on the Defendants. Additionally, liaison counsel indicated his receipt (from the Settling Plaintiffs' counsel) of the information and data which were used to formulate the final proposed lump sum payment numbers. (Docket No. 99 at 3 of 8.)

such as to the verification standard to be applied to the Defendants' responses to discovery requests made during the settlement confirmation period (Docket No. 111), disputes concerning the interviews of Defendants' officers and employees,[12] etc. The Court held a further hearing on December 9, 2013 to discuss and rule on outstanding issues regarding confirmatory discovery that the parties had been unable to resolve without the Court's assistance. (Docket No. 182.) The Settling Plaintiffs finally filed their motions for class certification for purposes of settlement and for preliminary approval of class settlement on December 23, 2013. (Docket Nos. 184, 185.) The Court held a further scheduling conference on January 10, 2014 where it ruled on certain remaining discovery issues and continued the hearing date for the motions to allow the non-settling plaintiffs additional time to respond. (Docket No. 201.)

On January 30, 2014, liaison counsel filed a report listing in detail the responses of the non-settling plaintiffs as to whether, at that point, they: (1) agreed entirely with the proposed settlement, (2) agreed only in part and – as to their disagreements – what those objections were, (3) were entirely opposed to the settlement, and (4) were unable (or chose not) to respond to the proposed settlement. (Docket No. 211.) On February 11, 2014, the liaison counsel and attorneys for the Defendants and the Settling Plaintiffs filed a stipulation seeking a continuance of the hearing date for the motions because the Defendants and Settling Plaintiffs indicated a willingness to amend the proposed settlement agreement to take into consideration the positions of certain of the non-settling plaintiffs. (Docket No. 212.) That request was granted. (Docket No. 213.) On March 21, 2014, those parties made another request for a continuance indicating progress on amending the settlement terms (for example by creating an online claims process) and stating that a revised settlement agreement would be filed shortly. (Docket No. 218.) Again, a contin-uance was granted. (Docket No. 220.) On May 5, 2014, liaison counsel filed a report containing a revised list of the named plaintiffs who now indicated that they supported the revised proposed settlement, or at least would not file any opposition to it. (Docket No. 239.)

## III. Class Certification

### A. Legal Standard

The Court "must pay 'undiluted, even heightened, attention' to class certification

---

[12] Among the issues raised concerning the interviews (and eventually resolved) were: the dates when they were to occur, the location, who could attend, who could ask questions, who could proffer questions to be asked, the order in which the questioners would proceed, whether the interviews would be streamed so that attorneys in other locations could listen in, etc. (Docket No. 104.)

requirements in a settlement context." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 (1997)). Special attention must be given to those portions of Rule 23 that are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 621. However, considerations of whether class certification would present management problems for trial need not be considered in the settlement context.[13] *Id.*

Under Rule 23, a class action must satisfy four requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are known as numerosity, commonality, typicality, and adequacy. Further, a class action may only be maintained if it also meets one of the requirements of Rule 23(b). Here, the parties seek to certify the settlement class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts also require that the class be ascertainable. *See, e.g., Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007).

B. Discussion

Settling Plaintiffs seek to certify a class for purposes of settlement only (the "Settlement Class"). The proposed Settlement Class consists of all current or former owners or lessees of a specified list of Hyundai and Kia vehicles for which inaccurate statements as to fuel economy were made in advertising and/or selling the vehicles (the "Class Vehicles"[14]), who purchased or leased their vehicle on or before the November 2, 2012 announcement date and where the

---

[13] When a class action is certified for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *see also* Newberg on Class Actions (4th ed.) § 11:27. For example, while individual reliance inquiries could cause those "problems" at trial, a settlement obviously avoids any trial-related difficulties of that sort. *See In re Am. Int'l Grp., Inc. Secs. Litig.*, 689 F.3d 229, 232, 238-43 (2d Cir. 2012).

[14] The Class Vehicles are: 2012 & 2013 Hyundai Accent; 2012 & 2013 Hyundai Azera; 2011, 2012, & 2013 Hyundai Elantra; 2013 Hyundai Elantra Coupe; 2013 Hyundai Elantra GT; 2012 & 2013 Hyundai Genesis; 2013 Hyundai Santa Fe Sport; 2011 & 2012 Hyundai Sonata HEV; 2012 & 2013 Hyundai Tucson; 2012 & 2013 Hyundai Veloster; 2011 & 2012 Kia Optima HEV; 2012 & 2013 Kia Rio; 2012 & 2013 Kia Sorento (GDI engine); 2012 & 2013 Kia Soul; 2012 & 2013 Kia Soul ECO; and 2012 & 2013 Kia Sportage.

vehicle was registered in the District of Columbia or one of the fifty states of the United States.

### 1) *Ascertainability*

"An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 WL 413749, at *5 (N.D. Cal. 2008). The class definition must be sufficient to allow a potential class member to "identify himself or herself as having a right to recover based on the description." *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008).

Here, the proposed Settlement Class is readily ascertainable. There are clear, objective criteria that any individual can use to determine whether they are a class member: *e.g.* the model and model year of the vehicle, whether they owned or leased the vehicle, when they purchased or leased the vehicle, and where the vehicle was registered. *See Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593 (C.D. Cal. 2008) (finding a class ascertainable where "[t]he class definition identifies a particular make, model, and production period for the class vehicle"). Accordingly, the Court would find that the class is ascertainable.

### 2) *Numerosity*

Rule 23(a)(1) requires that joinder of all members of the proposed class is "impracticable." The Settlement Class clearly satisfies the numerosity requirement. It is not disputed that hundreds of thousands of Class Vehicles were sold in the United States prior to November 2, 2012, and any owner or lessee of any of these vehicles prior to that date is a Class Member. Joinder of hundreds of thousands of Class Members is impracticable and therefore the numerosity requirement is satisfied.

### 3) *Commonality*

The commonality requirement is satisfied by the presence of "a single significant question of law or fact." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do. [Internal quotations omitted]"). This requirement is satisfied by the common questions of whether the Class Vehicles received proper fuel economy testing and whether the resulting EPA fuel economy ratings were accurate. Plaintiffs allege that the same process changes were made as to all Class Vehicles such that facts relating to the testing process will be common as to all Class Members, regardless of which Class Vehicle they own. This single issue of fact is significant to the claims of all Class Members, and therefore the commonality requirement is satisfied.

### 4) *Typicality*

Typicality requires that the class representatives have claims that are typical of the proposed class they seek to represent. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, there are 30 Settling Plaintiffs. These Settling Plaintiffs reside in 18 different states and represent owners of 17 out of the 30 Class Vehicles. This group of Settling Plaintiffs taken as a whole, and each Settling Plaintiff taken individually, is typical of the class. Plaintiffs allege that all Class Vehicles were given inaccurate fuel economy ratings based on irregularities in the process used for testing fuel economy. Differences in the magnitude of the fuel economy inaccuracies between Class Vehicles do not alter the conclusion that all Class Members suffered a similar injury based on the same course of conduct.

The named plaintiffs in *Gentry v. Hyundai Motor America*, 3:13-cv-00030 (W.D. Va., Aug. 14, 2013) argue that the Settling Plaintiffs in this action are not typical of the class because they do not represent residents of *every* state or owners of *every* Class Vehicle. As a result, the *Gentry* plaintiffs claim, the legal rights of Class Members who reside in states unrepresented by a lead plaintiff may have claims that differ from the claims that the lead plaintiffs have, making lead plaintiffs atypical. However, the Court is not convinced that variations in the exact vehicle model owned or potential variations in applicable state law make the Settling Plaintiffs atypical. Small variations in the underlying injury do not preclude a finding of typicality. *Hanlon*, 150 F.3d at 1020; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (a level of specificity that provides clear documentation that each job category has a class representative for each type of discrimination claim alleged is not necessary for class representatives to satisfy the typicality requirement); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("Typicality does not require that 'all class members suffer the same injury as the named class representative.'") (quoting *Rosario v. Lidavits*, 963 F.2d 1013, 1018 (7th Cir. 1992)). As a result, the Court finds that the Settling Plaintiffs are sufficiently typical to warrant allowing their

representation of the Settlement Class.

### 5) *Adequacy*

The adequacy of representation requirement involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Settling Plaintiffs do not have any apparent conflicts of interest with other Class Members. Settling Plaintiffs owned or leased a reasonably representative sampling of the same vehicles that other Class Members did. Those vehicles were subjected to the same flawed fuel economy testing and resulted in similar misrepresentations of the fuel economy of the Class Vehicles.

Further, proposed class counsel in this matter, attorneys from Hagens Berman and McCune Wright, have extensive experience litigating and settling complex consumer class actions. There is no reason to believe that the proposed Class Counsel has not vigorously prosecuted this action on behalf of the class. The *Espinosa* case was filed more than two years ago and proposed class counsel engaged in extensive adversarial litigation in that action, including filing a motion for class certification, before the MDL was created and a settlement was reached. Counsel have done and, presumably, will continue to do an adequate job of representing the interests of a very large class of individuals. Therefore, the Court finds that this requirement is met, and designates Hagens Berman and McCune Wright as Class Counsel for purposes of this settlement.

### 6) *Predominance*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an issue or element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Galvan v. KDI Distribution Inc.*, 2011 WL 5116585, at *8 (C.D. Cal. 2011). The primary concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

In order to determine whether common issues predominate, the Court must look at the

underlying causes of action asserted and determine whether the issues that must be decided are susceptible of proof on a classwide basis and must balance such classwide issues against any individualized determinations that must be made. Plaintiffs assert claims for violations of the Consumer Legal Remedies Act, violations of Unfair Competition Law, false advertising, breach of warranty, fraud, negligent misrepresentation, and unjust enrichment.

It is unclear to the Court at this point to what extent a choice of law analysis is necessary under the circumstances of this litigation. It is clear that were the Court addressing the issue of whether class certification is appropriate for purposes of continuing litigation, with the possibility of eventually reaching trial, the Court would need to engage in an extensive choice of law analysis. *See generally Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 589-94 (9th Cir. 2012); *see also Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 921 (2001) (explaining California choice of law analysis). However, the settlement context here makes this case different from *Mazza*. Thus, the Court invites the parties to provide argument at the hearing (and/or through supplemental briefing) as to whether this Court needs to do a conflict of laws analysis in the context of class certification for purposes of settlement only at this point or later at the final approval hearing.[15]

The *Gentry* plaintiffs object to class certification on the grounds that Virginia law provides a materially different remedy to Virginia consumers for the fuel economy misrepresentations. However, other than the *Gentry* plaintiffs, no party objects to class certification or identifies material differences between the consumer protection laws of other states and California's consumer protection laws that would preclude certification of the Settlement Class. Further, in the settlement context, much of the rationale for rigorous application of the predominance requirement to the underlying state law claims at issue does not apply. First, in the settlement context there will be no litigation management issues resulting

---

[15] On the one hand, it could be argued that, potentially, an analysis of the laws of the other states would be required to determine if there were some evidentiary standard or available remedy which would allow a plaintiff under the laws of that state to either more easily establish a claim against the Defendants or obtain a benefit in excess of what would be allowed under California law. For example, if a state provided that if a car manufacturer falsely advertises a material fact as to a vehicle, the consumer plaintiff could get either actual damages or $1,000 plus attorney's fees, that element would have an effect in determining whether the settlement here is fair, reasonable and adequate.

Conversely, however, there may be areas where the differences between California law and another state would have no effect on class certification in the settlement context, especially where the Defendants would be the beneficiary of the difference and they are in agreement to settle this matter anyway. For example, in *Mazza*, it was noted that under California law there is no scienter requirement in its UCL causes of action whereas other state's laws do require the plaintiff to show scienter before he or she can establish that claim. 666 F.3d at 591.

from potentially varying state law causes of action. Even if the underlying causes of action at issue here have some variability in terms of their elements, the level of proof required, and the amount and type of remedy available, these variations are less of a concern because the parties are agreeing to forego pursuit of specific individual claims in favor of the settlement. *See, e.g., Hanlon*, 150 F.3d at 1022-23; *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303-04 (3d Cir. 2011); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004). Further, the opt-out provision of the settlement agreement will allow Class Members who believe that they have a substantially better remedy available to them under the law of their state to opt out of the settlement and pursue that remedy instead. Finally, the Court also notes that variations in state law brought to the Court's attention at the final fairness hearing could potentially impact the Court's determination as to whether the settlement is fair to all members of the nationwide class. However, with the possible exception of Virginia, the Court has not been made aware of any substantial differences in state law that would preclude a finding of predominance in the settlement context. Even in the presence of objections regarding differences in state law, courts often conclude that approval of class certification and settlement is appropriate. *See Hanlon,* 150 F.3d at 1022 ("Although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification. . . . [T]o the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes. . . ."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011); *Cox v. Clarus Marketing Group, LLC*, 291 F.R.D. 473, 480 (S.D. Cal. 2013).

At this point, then, the Court is not convinced that there are any serious differences between the laws of the various states with regard to the underlying claims so as to preclude the conclusion that common issues would predominate such that the Court can approve class certification for settlement purposes. Whether the fuel economy statements were in fact inaccurate can be shown on a classwide basis. Further, whether Defendants knew that their fuel economy statements were false or misleading may be ascertained on a classwide basis. Because the primary issues in proving all of these causes of action involve inquiries as to whether and why these misrepresentations were made, and because such misrepresentations were uniformly made to all consumers by virtue of the Monroney stickers and nationwide advertising, the predominance requirement is likely satisfied. Therefore, unless it is persuaded otherwise by oral

11

argument at the hearing or in supplemental briefing, at this point the Court is inclined to find that the predominance requirement has been satisfied.

### 7) *Superiority*

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). A class action is clearly a superior method for resolving the underlying dispute at issue here. The size of the damages amount for each individual plaintiff make pursuit of individual actions unlikely. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012). Further, Virginia possibly aside, the underlying claims that the individual plaintiffs would have in this case appear to be substantially similar such that adjudication of those claims in one action, and in one settlement, will save substantial judicial and party resources. *See Hartless*, 273 F.R.D. at 639 ("[M]ultiple individual claims could overburden the judiciary."). Therefore, the Court finds that the superiority requirement is met.

In conclusion, the Court finds that the proposed Settlement Class provisionally meets the requirements for class certification in the settlement context.

## IV. Preliminary Approval of Class Settlement

### A. Legal Standard

The Court must determine whether the settlement reached by the parties has the *potential* to be "fair, reasonable, and adequate." To gain *final* approval, the Court would eventually have to determine that the proposed settlements are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). At this – the preliminary approval – stage, however, a court simply determines "whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1063 (C.D. Cal. 2010) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981)); *compare Staton*, 327 F.3d at 952-53 (discussing the detailed examination required at *final* approval). Ultimately, "[t]he judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it." Manual for Complex Litigation (Fourth), § 21.61, at 309. In order to determine whether the proposed settlement is fair, reasonable, and adequate, the Court will ultimately consider multiple factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton*, 327 F.3d at 959. At this stage, then, the Court looks to these factors to inform its determination as to whether the settlement is within the range of what the Court might possibly approve at the final fairness hearing. *See Van Ba Ma v. Covidien Holding, Inc.*, Case No.: SACV 12-02161-DOC (RNBx) 2014 U.S. Dist. LEXIS 13296 (C.D. Cal. Jan. 14, 2014).

    B. The Settlement

        1) *Settlement Process*

The first-filed case – that became part of this MDL (i.e. *Espinosa*) – was removed to this Court on January 30, 2012. After extensive motions practice and initial discovery, that case proceeded to the class certification stage and the Court heard oral arguments on November 29, 2012. However, the Court did not make a final ruling on the motion at that time but required extensive supplemental briefing from the parties. (Docket Nos. 76, 98.) On January 8, 2013, the *Espinosa* parties filed a stipulation indicating that they had initiated formal settlement discussions and sought a continuation of the due dates for the second round of supplemental briefing and to move the date for the second hearing on class certification to March 7, 2013. (Docket No. 98.) That request was granted. (Docket No. 99.) That motion was still pending when the JPML issued its order to create the MDL and, as a result, this Court took the *Espinosa* class certification motion off-calendar. (Docket No. 104.)

Soon after the JPML order consolidated all of the MDL cases in this Court, the *Espinosa*, *Hunter*, and *Brady* plaintiffs[16] announced that they had reached a tentative settlement with HMA after engaging in formal mediation sessions with a retired state court judge. At the initial status conference in the MDL matter, this Court ordered the Settling Plaintiffs to fully apprize counsel for the non-settling plaintiffs as to the terms and details of the proposed settlement. (Docket No. 4.) Thereafter, the Court stayed any motion for class certification or for approval of the settlement pending: (1) the appointment of liaison counsel for the non-settling plaintiffs and to allow them to otherwise organize themselves to efficiently coordinate and litigate the MDL, (2)

---

[16] The *Hunter v. Hyundai Motor America*, Case No. SACV-12-01909 (C.D. Cal.), and *Brady v. Hyundai Motor America*, Case No. SACV-12-1930 (C.D. Cal.), class actions were both filed in November 2012 by the same law firm (i.e. Hagens Berman Sobol Shapiro LLP) that represented the plaintiffs in the *Espinosa* lawsuit.

turning over documents to the counsel for non-settling plaintiffs that had already been exchanged between the Settling Plaintiffs and the Defendants, (3) completion of discovery relating to issues involved in evaluating the proposed settlement, and (4) the resolution of relevant motions as to issues involved in the discovery and/or settlement areas.

Between February and December of 2013, the parties engaged in confirmatory discovery so that the non-settling plaintiffs would have an opportunity to evaluate the proposed settlement in light of the strength of the available evidence. The Court oversaw this confirmatory discovery process and ruled on multiple evidentiary motions in connection with this process. Changes were made to the proposed settlement in response to concerns raised by non-settling plaintiffs during the course of confirmatory discovery and also later. After confirmatory discovery was substantially complete, Settling Plaintiffs filed their motions for class certification and preliminary approval.

### 2) *Settlement Terms*

Following the November 2, 2012 announcement regarding inaccuracies in the fuel efficiency estimates for many Hyundai and Kia vehicles, HMA and KMA unilaterally announced their Reimbursement Programs. Under those voluntary programs, HMA and KMA offered consumers who had purchased one of the Class Vehicles reimbursement for the added fuel costs incurred by the consumers due to the inaccurate fuel economy statements. The Reimbursement Programs required owners of Class Vehicles to take their vehicle to a Hyundai or Kia dealership, where the odometer reading could be verified. Owners then received payment in the form of a debit card. The payment amount was based on the mileage of the vehicle, the amount of overstatement of fuel economy for the particular vehicle model, and the average cost of gas in the area, plus a 15% extra amount for inconvenience. Under the Reimbursement Programs, owners would need to take their vehicle in periodically for additional odometer readings in order to receive further payments.

Against this backdrop, Settling Plaintiffs negotiated a settlement with HMA (the terms of which were ultimately also approved by KMA). The settlement provides for alternatives to the Reimbursement Program. Any individual who owned or leased a Class Vehicle on or before November 2, 2012 is a Class Member. Under the settlement, each Class Member has a number of options to select from. First, Class Members who are already enrolled in a Reimbursement Program may opt to continue in the program and receive no other settlement benefits. However,

Class Members may also elect one of three other remedies, whether or not they have participated in the Reimbursement Program: a lump-sum payment, a dealer service credit, or a new car rebate. The amount of the lump-sum payment to which a Class Member is entitled is based simply on the model of the vehicle and whether they are a current or former owner or lessee. Current owners and lessees will find the amounts to which they are entitled in a chart, while former owners and lessees are entitled to a lump-sum payment equal to the amount to which they would have been entitled under the Reimbursement Program.[17] Second, Class Members can elect to receive a credit for automotive service at a Hyundai or Kia dealership worth 150% of the amount of the lump-sum payment to which they would be entitled. Third, Class Members can obtain a rebate certificate for the purchase of a new Hyundai or Kia vehicle worth 200% of the amount of the lump-sum payment. For Class Members who have already enrolled in the Reimbursement Program, any payment or credit will be reduced by the amount previously paid to that consumer under the Program. If the Class Member has already received more through the Reimbursement Program than he or she would be entitled to under the other settlement options, he must remain in the Program. Current owners or lessees of a Class Vehicle that is a Hyundai Elantra, Accent, Veloster, or Sonata, which were part of Hyundai's "4x40" advertising campaign promoting these four Hyundai models as achieving a 40 mpg fuel economy level, are entitled to an additional $100 (for current owners) or $50 (for current lessees and fleet owners).

These benefits are nontransferable; they must be claimed and used by the current (or former) owner or lessee of a Class Vehicle. The only exception is that the new car rebate may be transferred to an immediate family member. Further, the benefits are subject to expiration dates: the debit card containing the lump-sum payment must be used or deposited within one year; the dealer service credit must be used within two years; and the new car rebate must be used within three years. Any benefits that are unclaimed at the end of the claims period revert back to HMA and KMA, as do any unused benefits that were claimed but not thereafter utilized.

### 3) *Notice and Claims Process*

Notice will be provided by first-class mail, sent to every Class Member whose current

---

[17] The motion for preliminary approval does not address how the settlement figures were calculated. It appears that the lump-sum amounts are correlated to the difference between the stated fuel economy and the modified fuel economy numbers. According to some rough calculations performed by the Court, it appears that the lump-sum amounts for current owners represent approximately 5 years' worth of extra fuel costs, assuming that the vehicle is driven approximately 12,000 miles per year and gas costs $4 per gallon. The Court would ask the settling parties to confirm at the hearing the bases for their calculations. If there appears to be a reasonable method behind the different lump-sum amounts, preliminary approval could be appropriate.

address is reasonably ascertained from an available R.L. Polk & Co. database. The mailing shall be in the form of a postcard.[18] Further, Hyundai and Kia dealerships will provide hand-out flyers to Class Members who bring their vehicles in for service, further extending the reach of the notice.[19]

In order to receive a payment under the settlement, Class Members must submit claims. Claims may be submitted online or may be mailed. The process appears to be relatively simple and straightforward. Claims will be processed by HMA and KMA.

A major problem at this time is that revised copies of the notice and claims documents and forms were not filed until June 24, 2014. (Docket No. 264.) The Court would be obligated to allow additional time for any non-settling plaintiff party to object or provide additional comments in regards to those items.[20]

C. Discussion

    1) *Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Plaintiffs' claims assert that Defendants represented inaccurate fuel economy ratings for Class Vehicles. Each Plaintiff purchased or leased a vehicle whose advertised EPA fuel efficiency numbers were inaccurate and higher than they would have been if proper testing procedures had been followed. Plaintiffs have very strong evidence of the fact that these overstatements were uniformly made, and Defendants do not vigorously dispute that the original fuel economy numbers were inaccurate. Plaintiffs assert damages beyond the value of the extra fuel needed due to the misrepresentations; i.e. certain plaintiffs may not have chosen to purchase the vehicles in the absence of the misrepresentations, and the vehicles may have a lower market value now that the true fuel economy numbers are known. However, were Plaintiffs to litigate this case further, they would face challenges in attempting to show whether Defendants'

---

[18] Apparently there is a dispute as to whether the mailing should be by way of a postcard or letter. The former can more readily grab the recipient's attention but cannot contain as much information as a letter.

[19] It is unclear to this Court why the settlement does not also provide for emailing class members with notice as well, where possible. The settling parties should address this point with the Court at the hearing.

[20] For example, some of the sample notices provided by settling parties erroneously list the Roybal Federal Building address as the location for the final fairness hearing rather than the Spring Street Courthouse address. *See* Docket No. 264-1 at 10 of 14. Likewise, it is unclear why the words "IMPORTANT LEGAL MATTER" appear upside down in Docket No. 264-2 at 2 of 3. These errors must be corrected before class notice can be sent out.

misrepresentations were intentional and on other issues. Additionally, the evidence is unclear with regards to what damages, if any, Plaintiffs actually suffered aside from the extra fuel costs; proving those damages (and establishing whether those damages could be established in a class action proceeding) would also impose challenges for Plaintiffs.

Also, additional litigation in this matter would undoubtedly be extremely costly for all parties involved, given the large size of the class, the large number of counsel for the parties, and the fact that much of the substantial additional discovery needed to litigate this case, were it to continue to be litigated, would need to occur in South Korea. The case also has complex aspects and might take additional years to even get to trial. Therefore, settlement is appropriate here where Plaintiffs have a reasonably strong case, but there remain substantial risks and costs to litigating this action.

### 2) *The Risk of Maintaining Class Action Status Throughout Trial*

No litigation class has been certified in this MDL, and recent decisions in similar cases indicate that whether such a class could be certified for purposes of litigation is unclear. *See, e.g., Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012). Due to the number of different state laws at issue and the fact that there remain plaintiffs who object to certification of a nationwide class, there would be a substantial risk that a nationwide class could not be maintained through trial. Even as to class actions that would be limited to plaintiffs residing within a single state, there would also be problems if the claims of class members raise issues of individual reliance or individual effect. *See generally Halliburton Co. v. Erica P. John Fund, Inc.*, ___ U.S. ___, 2014 U.S. LEXIS 4305 *17-18 (June 24, 2014) ("If every plaintiff had to prove direct reliance on the defendant's misrepresentation, individual issues then would overwhelm the common ones, making certification under Rule 23(b)(3) inappropriate. [Internal quotation marks and citation omitted.]"). Therefore, this factor weighs in favor of approving the settlement.

### 3) *The Amount or Type of Relief Offered in Settlement*

The proposed settlement provides substantial relief for the Class Members. All Class Members are entitled to receive a substantial cash payout, ranging from $240 to $715 for current original Hyundai owners and $170 to $1,420 for current original Kia owners (the payout amounts are smaller for lessees and for former owners), with further options for higher recovery in the form of a dealer service credit or a new car rebate. (*See* Docket No. 185, Exh. 1, p.83.)

17

Plaintiffs are also given the option to remain in the Reimbursement Program should they choose to do so.

However, it is unclear to the Court at this point how the settlement payout amounts compare to the potential recovery for Class Members were they to succeed on their claims at trial. The Court will want to know at the time of final approval how the recovery achieved through the settlement compares to this potential recovery. Given the variety of state court claims that might be viable for different plaintiffs, the variety of causes of action, and the potential for punitive damages if the misrepresentations could be shown to be intentional, the comparison may only be a rough estimate or ballpark figure. However, even such an ambiguous number will assist the Court in ultimately determining whether the settlement is fair, reasonable, and adequate by allowing the Court to weigh the possible recovery amount and the inherent risks of litigation against the amount obtainable by Class Members through the settlement. Relatedly, the Court will want to know the methodology for determining the lump-sum payment amounts for each Class Vehicle. At this time, however, it appears to the Court that the amounts offered are likely fair and reasonable.[21]

### 4) *The Extent of Discovery Completed and the Stage of the Proceedings*

By the time settlement negotiations began, the *Espinosa* action had been actively litigated for more than a year, and extensive discovery had been conducted by the parties. The Settling Plaintiffs had substantial information regarding the fuel economy issues, enabling them to make a reasonable evaluation of whether the amount offered in settlement was adequate. Therefore, although the case tentatively settled very soon after the creation of the MDL, the parties had a reasonably sufficient amount of information with which to negotiate and approve the settlement.

Further, the Court oversaw substantial confirmatory discovery following the announcement of the settlement. This oversight involved ruling on multiple discovery disputes and holding multiple status conferences to oversee the process. Had that discovery provided a wildly different picture of the potential recovery amount or likely success of Plaintiffs' case, it is likely that more parties would object to this Court's approval of the settlement. However, only a few named plaintiffs are currently objecting. Therefore, the Court finds that sufficient discovery was conducted both prior to and following the negotiations between Settling Plaintiffs and

---

[21] It is the Court's understanding that a similar class action was brought in Canada and has been settled. The Court wonders as to whether the settlement there and the one proposed here are comparable.

Defendants that preliminary approval is appropriate. Though the settlement was entered into early in the MDL case, it was not so early relative to the *Espinosa* litigation. Additionally, the settlement was achieved with the involvement of a retired state court judicial officer with experience in litigation matters and settlement practices.

### 5) *The Experience and Views of Counsel*

Though there are a few plaintiffs and their counsel who currently object to the settlement, the overwhelming majority of lead plaintiffs and their attorneys in the underlying actions have expressed either agreement with the settlement or have not opposed it. Both Settling Plaintiffs' counsel and Defendants' counsel support approval of the settlement. The recommendation of counsel is entitled to "great weight," as counsel is best positioned to evaluate and produce a fair settlement. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). In the absence of fraud or collusion of the parties, courts typically defer to the views of counsel. *Id.* The highly experienced counsel in this matter approve the settlement,[22] and there is no indication that the settlement is the product of collusion.[23] As a result, this factor weighs in favor of preliminary approval.

### 6) *The Reaction of Class Members to the Proposed Settlement*

As class notice has not yet been sent out, the Court is not in a position to assess the reaction of Class Members who are not lead plaintiffs in this case. However, because this is an MDL, there are many plaintiffs and concomitant experienced plaintiffs' class counsel already involved in the case. Only four sets of plaintiffs out of the more than fifty cases referenced to in this action have expressed any level of opposition to preliminary approval of the settlement. Further, some of those objections, as discussed below, either lack substantial merit or can be easily addressed by requiring the parties to provide additional information prior to final approval.

---

[22] It is noted that the attorneys representing the *Espinosa, Hunter and Brady* plaintiffs herein were also involved in representing (and reaching a settlement for) the plaintiff class in the Toyota Unintended Acceleration litigation (Case No. 8:10ML 02151), where Judge Selna "recognize[d] the experience of Class Counsel" finding that they had "prosecuted this action vigorously on behalf of the Class."

[23] It is this Court's understanding that, under the settlement, the Settling Plaintiffs' attorneys fees, costs and expenses for administering the settlement will all be borne by the Defendants and will not be subtracted from the sums and other benefits provided to Class Members. *See* Docket No. 264-1 at 11 of 14. However, there is no agreement as to the amount of those fees. Thus, the Settling Plaintiffs' attorneys and counsel representing the other plaintiffs in each of the cases now part of the MDL will have to apply to this Court for the payment of fees, and it would be up to this Court's discretion to determine the appropriate figures.

    The Court would ask the settling parties to confirm that understanding. Further, the Court would require those parties to state for the record as to whether there is any undisclosed "side" agreement(s).

Therefore, this factor weighs in favor of granting preliminary approval.

### 7) *Objections*

The *Gentry* plaintiffs' objections to class certification have already been discussed above. The *Krauth* and *Hasper* plaintiffs, joined by the *Wilson* plaintiffs, have expressed several concerns related to the settlement terms, which the Court will address briefly here. The *Krauth* and *Hasper* plaintiffs bring up the following objections to the terms of the settlement itself: (1) any funds not claimed by Class Members will revert to HMA and KMA; (2) no claims process should be required under the circumstances; (3) the notice is insufficient; and (4) the online claims process is unnecessarily convoluted.

With the exception of nailing down exactly what the notices will look like, however, none of these objections is at all persuasive. First, the fact that the Settling Plaintiffs negotiated for a settlement that involves a reversion of unclaimed funds and requires a claims process does not make the settlement unreasonable.[24] Any settlement is going to be a compromise between what would be most beneficial to Class Members and what Defendants are willing to agree to. While these objections do point out ways in which the settlement could have been more favorable to the class, such terms are routinely approved as part of class settlements and do not cause the Court to hesitate to preliminarily approve the settlement (although the Court must be vigilant at the time of the final approval to be assured that this aspect (and any others) do not evince collusion between the settling parties (*see* footnote 22, *supra*)). *See, e.g., Minor v. FedEx Office & Print Servs., Inc.*, 2013 WL 503268, at *4-5 (N.D. Cal. 2013); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at * 13 (N.D. Cal. 2011).

Second, the online claims process, as described in the second addendum to the settlement agreement (Docket No. 226), is not convoluted or complicated at all. Class Members must simply enter information about themselves and their vehicle. In the Toyota MDL settlement, Judge Selna approved an online claims process very similar to the process at issue here. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 2013 WL 3224585, at *18 (C.D. Cal. 2013). A simpler process could hardly be imagined, given the need to have proper identifying information regarding the Class Member and the terms

---

[24] *But see Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011) (the fact that the settling parties arrange for unclaimed benefits to revert to defendants rather than be added to the class fund or some other disposition can be an indication of "subtle" collusion between those parties) (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.)).

of settlement, which provide for different relief depending on which Class Vehicle the Class Member owns and which remedy the Class Member wishes to select. Alternatively, those who would prefer to submit a paper claims form may do so.

Third, there clearly are some potential issues with the class notice. The *Krauth* and *Hasper* plaintiffs pointed out that the settling parties previously had not submitted a mock-up of the proposed postcard notice, but have submitted only sample language. A revised version has now been belatedly supplied. The Court would agree that notice needs to not only include the relevant facts, but also be calculated to catch the attention of the recipient. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) (notice must reflect a "desire to actually inform"); *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) ("[Notice] is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). The *Krauth* and *Hasper* plaintiffs also point out that for the Reimbursement Program, notice was provided by email; they question why notice could not also be sent by email, in addition to by mail. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (approving email notice where class members are likely to have access to email). The Court would agree. Finally, the *Krauth* and *Hasper* plaintiffs complain that they have not seen the long-form notice such that they can properly assess its adequacy. The Court would discuss these concerns with the parties at the hearing on these motions, as sufficient notice is critical to final approval of the settlement.

Finally, the *Krauth* and *Hasper* plaintiffs object to the manner in which this action was settled. They complain that: (1) the settlement was announced almost immediately upon the creation of the MDL and that, therefore, there was insufficient time for adversarial discovery and inadequate involvement of many of plaintiffs' counsel in the negotiation process; (2) because the case settled so early, Settling Plaintiffs did not have sufficient information to evaluate the strength of their case (let alone the cases of the other named plaintiffs); and (3) the "confirmatory discovery" process was inadequate to remedy the deficiencies in the amount of discovery completed prior to the settlement.

The speed with which settlement was reached may raise some concerns, but it alone does not make the settlement unreasonable or inadequate. Further, the *Espinosa* litigation had been pending for more than a year before the creation of the MDL and the subsequent settlement announcement; the discovery obtained in that litigation informed the Settling Plaintiffs in

21

determining whether HMA's settlement offers were reasonable. While it is true that confirmatory discovery was not as comprehensive as traditional adversarial discovery would have been, this was by design; part of the purpose of an MDL and of class action settlement is to conserve party resources while also obtaining appropriate relief for the class. If the parties had settled with truly no discovery having been conducted, or had the confirmatory discovery revealed substantial disparities between the strength of plaintiffs' case at the time of settlement and the strength of the evidence now, the Court might be inclined to find that the settlement was not reasonable. However, the objecting plaintiffs do not point to any specific discovery that they have obtained, or that they have been unable to obtain, that would substantially alter the strength of the claims in this case. The Court was highly involved in the confirmatory discovery process and resolved multiple discovery disputes, keeping in mind the balance between allowing discovery for purposes of evaluating the settlement and promoting the efficiency and conservation of resources that settlement ought to promote.[25]

In sum, the Court would want to ensure that the notice process was fully fleshed out in order to guarantee that notice would be sufficient for purposes of final approval.[26] Aside from

---

[25] This Court has continually indicated that it would strongly consider the number of named class action plaintiffs who objected to the scope of the discovery and/or to the terms of the ultimate proposed settlement. (*See, e.g.*, Trans. of April 11, 2013 Hrg., pp.16-19.)

[26] The Court has a number of problems with the revised proposed notice and claims forms. However, as indicated above, because the items were filed after the non-settling plaintiffs' time for responding, the Court will have to continue the hearing on the motions to allow them to respond to the forms.

While the Court will not exhaustively list its concerns with the forms here, it would note (in addition to the items cited in footnote 20, supra) the following. On the first page of the revised long-form notice, the box which sets forth Class Members' purported "legal rights and options in this settlement" is ambiguous, confusing and potentially misleading. *See* Docket No. 264-1 at 2 of 14. For example, after the words "Do Nothing," the reader is advised that "To participate in the lump-sum payment program, do nothing now and if the Settlement is approved, fill out a one-time claim form to receive benefits." However, if the recipient has received the notice, the proposed settlement would have been preliminarily approved by the Court and, therefore, he or she must do something fairly soon or else he or she will lose the potential benefits under the settlement. Thus, the advisal to "do nothing now" is misleading. Also, while the reader is told to take action "if the Settlement is approved," how would the recipient know if and when the settlement is approved?

Likewise, the words "Do nothing," "Exclude Yourself," "Object," and "Go to a Hearing" delineated in the box are ambiguous. Are they supposed to be the only choices the recipient has? Are they mutually exclusively? What is the empty "Due Date" column for?

Similarly, the contents of the "basic information" portion of the notice is misleading and confusing. *Id.* at 4 of 14. The references to "two class action lawsuits" – as distinguished from the MDL litigation – does not entirely make sense. Isn't the Court certifying a nationwide class of all persons who purchased or leased a Class Vehicle before November 2, 2012. Therefore, what is the purpose of referring separately to the *Brady* and *Hunter* cases when, as stated in that section, "both cases have been transferred into [the MDL]"? Also, the statement in section 3(regarding "*if* the Court approves this [class action] procedure") mischaracterizes the situation, because if the recipient has gotten the notice, class certification would have already been approved by then.

that, the settlement appears to be within the range of possible settlements appropriate for final approval and provides substantial benefits to the Class Members, and therefore the Court would tentatively GRANT preliminary approval of the settlement.

## V. *Gentry* Plaintiffs' Motion for Suggestion of Remand

The *Gentry* plaintiffs also seek a suggestion of remand for those claims of individuals who purchased their vehicles *after* November 2, 2012. The Settlement Class purports to include only those individuals who purchased their vehicles on or before that date, which is the date upon which HMA and KMA announced the fuel economy misstatements and the Reimbursement Programs. Therefore, any plaintiffs in *Gentry* who purchased their vehicles after November 2, 2012 are not Class Members and therefore will not be bound by the current proposed settlement nor entitled to relief under that settlement.

Claims transferred to an MDL should be remanded only "upon a showing of good cause," which "turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Merrill Lynch Auction Rate Sec. Litig.*, 2010 WL 2541227, at *2 (S.D.N.Y. 2010). Further, "[t]he mere fact that all other cases in a consolidated litigation have been terminated does not constitute 'good cause' as required by the prior decisions of the Panel." *Hildes v. Arthur Andersen LLP*, 2014 WL 1571330, at *2 (S.D. Cal. 2014).

Here, the Court is inclined at some point to suggest remand of claims which are not part of the proposed class settlement. The MDL proceeding has not involved any adversarial discovery that would be duplicative of the confirmatory discovery that occurred, since any confirmatory discovery is subject to the confidentiality agreement and cannot be used to pursue further litigation, but only to confirm the fairness of the settlement. Moreover, it appears that Mr. Gentry himself is the only named plaintiff in any MDL case who purports to bring claims based on a vehicle purchase that occurred after November 2, 2012. Therefore, the efficiencies to be gained through his claims' continued inclusion in the MDL are minimal, especially assuming that the proposed settlement as to pre-November 2, 2012 purchasers is ultimately approved. Further, Hyundai previously indicated that separate treatment of post-November 2, 2012 claims might be appropriate. (*See* Docket 231-1, Exh. B, at pp.31-32.) Finally, Mr. Gentry's claims may

---

While this Court recognizes that the revised notices and forms are merely drafts, it would appear that there needs to be substantial reworking required.

involve different (and potentially more individualized) proof of wrongdoing, since the fuel economy misrepresentations had been corrected to some degree by HMA and KMA through their announcement and Reimbursement Programs. Mr. Gentry, and any other potential members of a post-November 2, 2012 Virginia class, will need to present evidence showing that, despite those announcements, they relied on the former misrepresentations and/or that the dealerships from which they purchased their vehicles failed to change the Monroney stickers or otherwise failed to inform vehicle purchasers of the inaccuracies of prior fuel economy numbers. These elements suggest that those claims might not even be suitable for class action treatment because they are dependent upon individual showings and determinations. Therefore, it is unlikely that the Gentry post-November 2, 2012 purchaser class will benefit from further MDL coordination or that the MDL litigation would benefit from the continued presence of persons who possess solely that claim.[27]

However, because the settlement in the MDL is not yet fully approved, the Court would welcome argument as to whether a suggestion to remand is appropriate now or whether the Court ought to wait until the settlement has advanced further before determining with any certainty whether it is appropriate to suggest a remand of the claims of post-November 2, 2012 purchasers.

## VI. Conclusion

For the foregoing reasons, the Court would tentatively GRANT the motion for class certification and the motion for preliminary approval, and stay determination on the motion for a suggestion of remand.

---

[27] The Court notes that the JPML had previously ordered a remand back to the New Jersey federal court of a portion of a transferred case involving a "warranty class" under state law. (Docket No. 210.)

24

**APPENDIX A**: List of MDL Cases

| Case Name | Filing Location | Original Federal Case Number | Date Filed |
|---|---|---|---|
| *Espinosa v. HMA* | Los Angeles Cty. Sup. Ct.; removed: C.D. Cal. | 12-0800 | 1/6/2012 |
| *Hunter v. HMA* | C.D. Cal. | 12-1909 | 11/2/2012 |
| *Wilton v. KMA* | C.D. Cal. | 12-1917 | 11/5/2012 |
| *Brady v. HMA* | C.D. Cal. | 12-1930 | 11/6/2012 |
| *Krauth v. HMA* | C.D. Cal. | 12-1935 | 11/6/2012 |
| *Graewingholt v. HMA* | C.D. Cal. | 12-1963 | 11/9/2012 |
| *Thomson v. HMA* | C.D. Cal. | 12-1981 | 11/13/2012 |
| *Rezai v. HMA* | N.D. Ill. | 12-9124 | 11/14/2012 |
| *Rottner v. HMA* | N.D. Ill. | 12-9196 | 11/15/2012 |
| *Sanders v. HMA* | S.D. Ohio | 12-0853 | 11/4/2012 |
| *Maturani v. HMA* | M.D. Ala. | 12-0998 | 11/9/2012 |
| *Kievit v. HMA* | D.N.J. | 12-6999 | 11/9/2012 |
| *Reeves v. KMA* | St. Louis Cty. Cir. Ct; removed: E.D. Mo. | 13-0060 | 11/5/2012 |
| *Hammond v. HMA* | E.D. Mo. | 13-0142 | 1/23/2013 |
| *Naythons v. HMA* | D.N.J. | 12-7428 | 12/4/2012 |
| *Torres v. KMA* | W.D. Ark. | 13-5017 | 12/21/2012 |
| *Gordon v. HMA* | S.D. Fla. | 12-22975 | 8/15/2012 |
| *Simmons v. KMA* | C.D. Ill. | 12-1504 | 12/4/2012 |
| *Leggett v. KMA* | W.D. Mo. | 12-6148 | 12/14/2012 |
| *Washburn v. KMA* | E.D. Tex. | 12-0770 | 12/13/2012 |
| *Hayes v. KMA* | D. Mass. | 13-10009 | 1/2/2013 |
| *Armstrong v. KMA* | M.D. Ala. | 12-1065 | 12/6/2012 |
| *Woodruff v. KMA* | N.D. Cal. | 12-6115 | 12/4/2012 |
| *Hoessler v. KMA* | N.D. Ill. | 12-9778 | 12/7/2012 |
| *Lipman v. HMA* | N.D. Ill. | 12-9323 | 11/21/2012 |
| *Dunst v. HMA* | W.D.N.C. | 13-0069 | 2/5/2013 |
| *Gudgalis v. HMA* | N.D. Ill. | 12-9580 | 11/30/2012 |
| *Wilson v. KMA* | D.N.J. | 13-1069 | 1/24/2013 |
| *Sutta v. HMA* | Orange Cty. Sup Ct.; removed: C.D. Cal. | 13-0417 | 3/11/2013 |
| *Thomas v. HMA* | C.D. Cal. | 12-2008 | 11/16/2012 |
| *Olson v. HMA* | C.D. Cal. | 12-2025 | 11/20/2012 |
| *Quiroz v. KMA* | C.D. Cal. | 12-2091 | 12/3/2012 |
| *Kurash v. HMA* | C.D. Cal. | 12-2164 | 12/13/2012 |
| *Carullo v. KMA* | C.D. Cal. | 12-2174 | 12/17/2012 |
| *Weber v. HMA* | C.D. Cal. | 13-0027 | 1/4/2013 |
| *Maharaj v. HMA* | C.D. Cal. | 13-0070 | 1/14/2013 |
| *Iacovozzi v. KMA* | C.D. Cal. | 13-0159 | 1/31/2013 |
| *Hasper v. HMA* | C.D. Cal. | 13-0220 | 2/7/2013 |
| *Bayard v. HMA* | Orange Cty. Sup. Ct.; removed: C.D. Cal. | 13-0257 | 2/13/2013 |
| *Fellers v. KMA* | C.D. Cal. | 13-0384 | 3/5/2013 |
| *Elliott v. HMA* | C.D. Cal. | 13-0385 | 3/5/2013 |

| | | | |
|---|---|---|---|
| *Setser v. KMA* | C.D. Cal. | 13-0387 | 3/5/2013 |
| *Bonsignore v. KMA* | C.D. Cal. | 13-0386 | 3/5/2013 |
| *Young v. KMA* | C.D. Cal. | 13-0167 | 1/9/2013 |
| *Martyn v. HMA* | C.D. Cal. | 13-0475 | 3/26/2013 |
| *Myers v. HMA* | C.D. Cal. | 13-0444 | 3/15/2013 |
| *Figueroa v. HMA* | C.D. Cal. | 13-0373 | 3/1/2013 |
| *Terhost v. KMA* | C.D. Cal. | 13-0476 | 3/26/2013 |
| *Brown v. KMA* | C.D. Cal. | 13-0441 | 3/15/2013 |
| *Cestaro v. HMA* | C.D. Cal. | 13-0442 | 3/15/2013 |
| *Woodward v. KMA* | C.D. Cal. | 13-0443 | 3/15/2013 |
| *Murphy v. HMA* | C.D. Cal. | 13-1504 | 9/25/2013 |
| *Patterson v. KMA* | M.D.N.C. | 13-1003 | 11/11/2013 |
| *Gentry v. HMA* | W.D. Va. | 13-0030 | 8/14/2013 |
| *Abdurahman v. HMA* | Roanoke City Cir. Ct.; removed: W.D. Va. | 14-0002 | 1/9/2014 |
| *Abdul-Mumit v. HMA* | Roanoke City Cir. Ct.; removed: W.D. Va. | 14-0005 | 2/3/2014 |