QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Joseph R. Ashby (Bar No. 248579)
  josephashby@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

  Karin Kramer (Bar No. 87346)
  karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Defendant Hyundai Motor
America and Hyundai Motor Company

[LIST OF COUNSEL CONTINUED ON
NEXT PAGE]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In Re:<br><br>HYUNDAI AND KIA FUEL ECONOMY LITIGATION<br><br>———————————————<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | No. MDL 13-02424-GW (FFMx)<br><br>**SETTLING PARTIES' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:       July 24 2014<br>Time:       9:30 a.m.<br>Courtroom:  10<br>Hon. George H. Wu |

DYKEMA GOSSETT PLLC
  James P. Feeney (Bar No. 219045)
  *jfeeney@dykema.com*
  Benjamin W. Jeffers (*pro hac vice*)
  *bjeffers@dykema.com*
  Dommond E. Lonnie (Bar No. 142662)
  *dlonnie@dykema.com*
333 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 487-1800
Facsimile: (213) 487-1850

Attorneys for Defendant Kia Motors
America, Inc.

HOGAN LOVELLS US LLP
  Dean Hansell (Bar No. 93831)
  dean.hansell@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4665
Facsimile: (310) 785-4601

  Michael L. Kidney (*pro hac vice*)
  michael.kidney@hoganlovells.com
555 Thirteenth St., NW
Washington, DC 20004
Telephone: (202) 637-5883
Facsimile: (202) 637-5910

Attorneys for Defendants Hyundai Motor
America and Hyundai Motor Company

HAGENS BERMAN SOBOL SHAPIRO LLP
  Robert B. Carey (*pro hac vice*)
  *rob@hbsslaw.com*
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012

Attorneys for Plaintiff Kaylene P. Brady, et al.
and Nicole Marie Hunter, et al.

MCCUNEWRIGHT LLP
  Richard D. McCune (Bar No. 132124)
  *rdm@mccunewright.com*
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

Attorneys for Plaintiffs Lillian E. Levoff, Thomas
Ganim, and Dan Baldeschi

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 3

I.    REVISED NOTICE AND CLAIM FORMS PROVIDE GREATER CLARITY AND EASE OF UNDERSTANDING ............................................ 3

II.   APPROVAL OF THIS SETTLEMENT DOES NOT REQUIRE A CONFLICT OF LAWS ANALYSIS .................................................................. 5

    A.   Conflict of Laws Analysis Goes to Manageability Concerns Absent from the Settlement Context ............................................... 5

    B.   Non-Settling Plaintiffs Fail to Meet Their Burden to Establish an Actual Conflict of Law that Would Preclude a Finding that the Settlement is Fair, Reasonable, and Adequate ........................................ 8

    C.   Article III Poses No Bar to a Nationwide Settlement that Includes Vehicle Models the Named Plaintiffs Did Not Purchase ....... 11

III.  *SETTLING PLAINTIFFS:* THE LIKELY RECOVERY PER PLAINTIFF UNDER THE TERMS OF THE SETTLEMENT ..................... 13

IV.   *SETTLING PLAINTIFFS:* THE POTENTIAL RECOVERY IF PLAINTIFFS WERE TO PREVAIL ON EACH OF THEIR CLAIMS ........ 15

V.    A SHORT-FORM MAILER IS THE BEST FORM OF NOTICE ............... 18

VI.   THE PROPOSED SETTLEMENT IS COMPARABLE TO THE CANADIAN CLASS ACTION SETTLEMENT ........................................... 19

CONCLUSION ..................................................................................................... 21

SETTLING PARTIES' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amchem Prods, Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................. 6

*Browne v. Am. Honda Motor Co.,*
  2010 WL 9499072 (C.D. Cal. July 29, 2010) ...................... 12

*Bruno v. Quten Research Inst., LLC.,*
  280 F.R.D. 524 (C.D. Cal. 2011)........................................... 8

*Cox v. Clarus Mktg. Grp., LLC,*
  291 F.R.D. 473 (S.D. Cal. 2013) ..................................... 8, 12

*David v. Am. Suzuki Motor Corp.,*
  2010 WL 1628362 (S.D. Fla. Apr. 15, 2010)....................... 13

*In re: Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
  51 Fed. R. Serv. 3d 569 (D.N.J. 1997) ................................ 16

*Gonzales v. Comcast Corp.,*
  2012 WL 10621 (E.D. Cal. Jan. 3, 2012), ........................... 16

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .......................................... 5, 7

*Hesse v. Sprint Corp.,*
  598 F.3d 581 (9th Cir.  2010) ........................................ 11, 12

*Holt v. Globalinx Pet LLC,*
  2014 WL 347016 (C.D. Cal. Jan. 30, 2014) ......................... 8

*In re HP Inkjet Printer Litig.,*
  2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) .................. 7, 12

*Kent v. Hewlett-Packard Co.,*
  2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) .................... 12

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.,*
  270 F.R.D. 45 (D. Mass. 2010) ......................................12-13

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012).................................................. 7

*In re McNeil Consumer Healthcare, Mktg. & Sales Practices Litig.,*
  2011 WL 2802854 (E.D. Pa. July 15, 2011) ....................... 16

*In re Omnivision Tech. Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................. 9

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) .................................................... 12

*In re Phenylpropanolamine Prods. Liab. Litig.*,
  227 F.R.D. 553 (W.D. Wash. 2004) ........................................ 12

*Saunders v. Taylor*,
  50 Cal. Rptr. 2d 395 (Cal. App. 1996) ..................................... 15

*Simon v. San Paolo U.S. Holding Co.*,
  35 Cal. 4th 1159 (2005) .......................................................... 15

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ................................................................ 17

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...................................................... 6

*TBK Partners Ltd. v. W. Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ...................................................... 9

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ................................... 12

*In re Volkswagen & Audi Warranty Extension Litig.*,
  273 F.R.D. 349 (D. Mass. 2011) .............................................. 12

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...................................................... 6

*Wash. Mutual Bank, FA v. Superior Court*,
  24 Cal. 4th 906 (2001) ............................................................ 11

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................... 5

## **Statutes**

Ala. Code § 8-20A-2 ..................................................................... 9

Alaska Stat. § 45.50.531 ............................................................... 9

Cal. Bus. & Prof. Code § 17205 ................................................. 15

Cal. Civ. Code § 1780 ................................................................. 15

Cal. Civ. Code § 1793.2 .......................................................... 9, 10

Cal. Com. Code § 2714 ............................................................... 15

Fed. R. Civ. P. 23 .......................................................................... 6

815 Ill. Comp. Stat. 380/3 ............................................................ 9

Ind. Code. § 24-5-0.5-4 ........................................................................... 9

N.H. Rev. Stat. § 358-A:10 ..................................................................... 9

N.J. Stat. § 56:12-32 ................................................................................ 9

73 Pa. Stat. § 201-9.2 .............................................................................. 9

Va. Code § 59.1-207.13 ......................................................................... 10

### **Miscellaneous**

2 McLaughlin on Class Actions § 6:3 (10th ed.) ...................................... 7

Settling parties[1] submit the accompanying revised short-form mailer, email notice, long-form notice, and claim form, as well as this supplemental brief in support of the motion for certification of a settlement class, (Dkt. No. 184), and motion for preliminary approval of class settlement, (Dkt. No. 185).

**Preliminary Statement**

Based on the June 26, 2014 hearing and tentative, settling parties submit revised notice and claim documents and address the following, as directed by the Court.

*First*, settling parties will be providing the Court and non-settling plaintiffs with access to a demonstration version of the settlement website.[2]  The settlement website will permit the vast majority of class members to submit their claim online. After class members enter their Unique ID (provided in the short-form mailer and email notice) and vehicle identification number, the online submission forms will be auto-populated with their information and provide specific information about the specific compensation each class member can receive.  Most class members will be able to complete the claims process via the website.  Settling parties have also revised the long-form notice and claim form (for those class members who do not

─────────────────

[1]   Settling parties include: defendants Hyundai Motor America and Kia Motors America, Inc., and plaintiffs Nicole Marie Hunter, Kaylene Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson, Erin Fanthorpe, Thomas Ganim, Eric Hadesh, Michael Keeth, Lillian E. Levoff, John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory M. Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams.

[2]   In order to limit access to the settlement website to the Court, settling parties, and non-settling plaintiffs, settling parties will provide information about accessing the demonstration website via email to the Court's Courtroom Deputy.  Access information will also be provided to liaison counsel for distribution to non-settling plaintiffs' counsel.

1  submit their claim through the website) to provide greater clarity and ease of

2  understanding about class member options and the actions required to exercise each

3  option.

4       *Second*, the Court asked whether—in the context of certifying a settlement

5  class and approving the proposed settlement—the Court must undertake a conflict of

6  laws analysis.  To the extent that conflicts of law may give rise to manageability

7  concerns in the course of litigation, the Ninth Circuit and other federal appellate

8  courts recognize that no analysis is required because settlement classes do not

9  present manageability concerns.  Nor have parties opposing the settlement identified

10  any material difference in state law that would preclude a finding that the settlement

11  is fair, reasonable, and adequate as to their interests.

12       *Third*, the Court asked plaintiffs to provide a valuation of the likely recovery

13  per plaintiff under the terms of the settlement agreement.  It is plaintiffs' position

14  that, for a typical plaintiff, the available lump-sum payment comes close to the

15  amount that would be paid over time under defendants' reimbursement program,

16  assuming an average term of ownership.  Reimbursement amounts are subject to

17  variation with the term of ownership, so the lump-sum payment may be more or less

18  favorable than the reimbursement in individual instances.

19       *Fourth*, the Court asked plaintiffs to provide a valuation of the potential

20  recovery if class members prevailed on their claims in full.  It is plaintiffs' position

21  that, for the average owner, this recovery equals the additional fuel cost for an

22  average term of ownership plus (in a best-case scenario) an award of punitive

23  damages.  The recovery of punitive damages is uncertain, however, and the most

24  likely recovery would correspond to actual past and future fuel costs.

25       *Fifth*, the short-form mailer proposed by settling parties is a hybrid between a

26  letter and a traditional postcard.  The short-form mailer offers the attention-getting

27

28

benefits of a postcard while providing class members with more information than a traditional postcard.

*Sixth*, the Court sought information concerning the terms of the Canadian settlement.  The Canadian settlement provides a compensation structure that parallels the proposed settlement before this Court.  Both agreements employ the same compensation groups, offer comparable amounts, and provide similar benefit options.  The Ontario Superior Court of Justice already has approved the Canadian settlement, and a motion for approval is currently pending in the Superior Court of Quebec.

<u>**Argument**</u>

**I.   REVISED NOTICE AND CLAIM FORMS PROVIDE GREATER CLARITY AND EASE OF UNDERSTANDING**

Settling parties have revised the notice and claim forms based on the Court's direction at the June 26, 2014 hearing.[3]  These revisions are summarized below:

**Short-Form Mailer (Exhibit A).**  A preface has been added to ensure class members understand they are receiving a legal notice about compensation to which they may be entitled, not a solicitation.  It further informs consumers they are not required to pay anything to claim compensation through the settlement.

**Email Notice (Exhibit B).**  Settling parties have added an email notice based on the Court's suggestion that the settling parties consider providing email notice to class members for whom it is feasible.  The email notice is identical to the short-

---

[3]   These documents are specific to Hyundai.  Upon approval by the Court, Kia will generate substantially similar versions that refer only to Kia and its settlement website (www.KiaMPGClassSettlement.com) and/or lifetime reimbursement program website (kiampginfo.com), and which will delete any references to the "4x40" benefits, which are settlement benefits unique to certain Hyundai class members.

1  form mailer, except it adds a brief preface to allay any confusion that might arise for

2  class members who receive both email and traditional mail notices.

3      **Long-Form Notice (Exhibit C).**  The preface has been revised to ensure

4  class members understand this is a Court-approved notice, not a solicitation.  The

5  summary chart at the beginning of the long-form notice has been clarified to assist

6  class members in understanding their options under the settlement, the actions

7  required to exercise those options, and the timeframe within which they must act.

8  The descriptions of the various options throughout the notice have been revised to

9  provide greater ease of understanding.  Also, the explanation of the compensation

10 options has been streamlined and information added to help class members

11 determine the most appropriate form of compensation.  Finally, the Court's address

12 has been corrected, and schedule A completed.

13     **Claim Website.**  The claim website pre-populates the compensation amounts

14 available to individual class members after they enter their Unique ID from the

15 short-form mailer or email notice and vehicle identification number.  The pre-

16 populated information will permit class members to evaluate the compensation they

17 would receive under the different options after adjusting for any compensation

18 received through the reimbursement program.  The vast majority of class members

19 will be able to complete the claims process entirely online.  The *only* class members

20 who will need to mail, fax, or email information to claim compensation are class

21 members who have a change of address or former owners who need to submit proof

22 of mileage.  To assist these class members, the website confirmation page identifies

23 the required documentation and will provide the mailing address, email address, and

24 fax number where the documentation can be sent.  Class members who complete the

25 online process but need to mail, email, or fax additional information will *not* need to

26 complete the paper claim form.

27

28

Case No. 2:13-ml-02424-GW (FFMx)
SETTLING PARTIES' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

**Claim Form (Exhibit D).**  The claim form will be used only by class members who elect not to use the claim website.  For these class members, settling parties revised the document so class members will need only provide their vehicle identification number once.  The form also has been revised to clarify the options in the form, and it refers to the more detailed explanation in the long-form notice.

## II.   APPROVAL OF THIS SETTLEMENT DOES NOT REQUIRE A CONFLICT OF LAWS ANALYSIS

The Court asked whether it "needs to do a conflict of laws analysis in the context of class certification for purposes of settlement only at this point or later at the final approval hearing."  (Tentative at 10).  A detailed conflict of laws analysis is generally not necessary for certification of a multistate settlement class and approval of a class settlement.  For purposes of class certification, conflict of laws is considered part of the Court's Rule 23(b)(3) predominance analysis.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (conflict of laws analysis is part of the predominance inquiry).  The Ninth Circuit's predominance inquiry for settlement classes is satisfied if "a common nucleus of facts and potential legal remedies dominate [the] litigation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (discussing the effect of variations in state law on the predominance inquiry for settlement approval).  While certification of a litigation class may require analysis of conflict of laws issues that impact case manageability, manageability is not a factor in certifying a settlement class.  Nor have non-settling plaintiffs identified any conflict of law that would render the settlement unfair as to them or any other class members.

### A.   Conflict of Laws Analysis Goes to Manageability Concerns Absent from the Settlement Context

The predominance inquiry determines whether proceeding as a class would "achieve economies of *time, effort, and expense*, and promote uniformity of decision

1  as to persons similarly situated." *See* Fed. R. Civ. P. 23(b)(3), Advisory Comm.

2  Notes to 1966 Amendment (emphasis added).  After the Supreme Court held in

3  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), that, "[c]onfronted

4  with a request for settlement-only class certification, a district court need not inquire

5  whether the case, if tried, would present intractable management problems," lower

6  courts concluded that a detailed conflict of laws analysis was not necessary to the

7  predominance inquiry for settlement-only classes.  *See, e.g.*, *In re Warfarin Sodium*

8  *Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("[W]hen dealing with variations

9  in state laws, the same concerns with regards to case manageability that arise with

10  litigation classes are not present with settlement classes . . . those variations are

11  irrelevant to certification of a settlement class." (citing *Amchem*, 521 U.S. at 620));

12  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) ("Because we are

13  presented with a settlement class certification, we are not as concerned with

14  formulating some prediction as to how [variances in state law] would play out at

15  trial, for the proposal is that there be no trial." (citation and quotation marks

16  omitted) (alteration in original)).

17       A leading class action treatise confirms the consensus that manageability

18  issues relating to conflicts among state laws have no bearing upon certification in

19  the settlement context:

20       The Supreme Court's pronouncement in *Amchem Products, Inc. v.*
21       *Windsor*, that a class certified for settlement purposes only must
         satisfy all the Rule 23 requirements of a litigation class except a
22       finding that the case would be manageable at trial ordinarily leaves
         the court ample room to fairly approve a proposed settlement class
23       that might not pass litigation-class muster.  Thus although variations
         in state laws applicable to the claims of members of a putative
24       multistate or nationwide litigation class ordinarily preclude class
         certification, *courts have consistently held that such variations are no*
25       *impediment to certification of a class for settlement purposes only*.
26

27

28

1   2 McLaughlin on Class Actions § 6:3 (10th ed. 2013) (emphasis added).  As a result,

2   the argument HMA made in *Espinosa* as to variations in state laws and the Court's

3   tentative statement that a nationwide litigation class could not be certified do not

4   stand as an impediment to certifying a nationwide class for settlement.[4]

5       In *Hanlon v. Chrysler Corp.*, the Ninth Circuit upheld certification of a

6   nationwide settlement class in a class action seeking damages under various state

7   lemon laws and consumer protection statutes for defective rear latches in Chrysler

8   vehicles.  The court determined that "the idiosyncratic differences between state

9   consumer protection laws are not sufficiently substantive to predominate over the

10   shared claims" and that "to the extent distinct remedies exist, they are local variants

11   of a generally homogenous collection of causes which include products liability,

12   breaches of express and implied warranties, and 'lemon laws.'"  150 F.3d at 1022-

13   23; *see also In re HP Inkjet Printer Litig.*, 2011 WL 1158635, at *5 (N.D. Cal.

14   Mar. 29, 2011) (finding predominance existed where, "as in *Hanlon*, there is no

15   indication that the differences in state consumer protection laws outweigh the

16   commonalities"), *rev'd and vacated on other grounds*, 716 F.3d 1173 (9th Cir.

17   2013) .

18       Here, both because the settlement context does not require a detailed conflict

19   of laws analysis and because the Ninth Circuit in *Hanlon* already has determined

20   that differences in state consumer protection and lemon laws do not defeat

_____

22   [4]   HMA argued in opposition to certification in *Espinosa* that a nationwide
litigation class could not be certified under *Mazza v. American Honda Motor Co.*,
23   666 F.3d 581 (9th Cir. 2012), because of variations in state consumer laws.  (Case
No. 2:12-cv-00800, Dkt. No. 58, at 22-25).  The Court's tentative decision on the
24   *Espinosa* plaintiffs' motion for class certification stated that "certification of a
nationwide class where California law is applied to out-of-state consumers is
25   foreclosed by the Ninth Circuit's decision in *Mazza*."  (Case No. 2:12-cv-00800,
Nov. 29, 2012 Tentative at 15).  *Mazza* addressed the certification of a litigation
26   class, not a settlement class.  666 F.3d at 589.

1   predominance for settlement classes, the Court need go no further than its finding

2   that "no party . . . identifies material differences between the consumer protection

3   laws of other states and California's consumer protection laws that would preclude

4   certification of the Settlement Class."  (Tentative Ruling at 10).

5   **B.  Non-Settling Plaintiffs Fail to Meet Their Burden to Establish an Actual Conflict of Law that Would Preclude a Finding that the Settlement is Fair, Reasonable, and Adequate**

6

7   The party objecting to certification "shoulder[s] the burden for demonstrating

8   that an actual conflict of laws exists between jurisdictions.  [Objectors] must show

9   'material differences in the law, as *shown on the facts of [the] case*.'"  *Holt v.*

10  *Globalinx Pet LLC*, 2014 WL 347016, at *5 (C.D. Cal. Jan. 30, 2014) (emphasis

11  added) (citing *Bruno v. Quten Research Inst., LLC.*, 280 F.R.D. 524, 539-40 (C.D.

12  Cal. 2011)); *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 480 (S.D. Cal. 2013)

13  (finding that the predominance requirement was met where "neither the [d]efendants

14  nor any objectors have informed the Court as to whether the applicable state laws

15  contain material differences with respect to this litigation").  The non-settling

16  plaintiffs have not met this burden here.[5]  The *Gentry* plaintiffs' offer only a general

17  statement that "[n]umerous courts have recognized that conflicts exist among State

18  substantive laws applicable to claims for breach of express and implied warranty,

19  common law fraud, statutory fraud and unjust enrichment."  (Dkt. No. 229, at 7).

20  This argument derives from the litigation context, not the settlement context.

21  Defendants' consent to the certification of a nationwide settlement class undermines

22  the *Gentry* plaintiffs' generalized argument that certification of a nationwide

23  settlement class would somehow violate the rights of defendants.  (Dkt. No. 229, at

24  19-23).

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [5]   Defendants do not concede that the proposed nationwide class could meet the

27  predominance requirement for purposes of litigation.

28

-8-                          Case No. 2:13-ml-02424-GW (FFMx)

SETTLING PARTIES' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

The *Gentry* plaintiffs identify no conflict of law to preclude a finding that the settlement is fair, reasonable, and adequate as to their interests under Rule 23(e)(2).[6] *Cf. TBK Partners Ltd. v. W. Union Corp.*, 675 F.2d 456, 462-62 (2d Cir. 1982) (settling parties may release claims "not shared alike by all class members" so long as they arise out of the same factual predicate and do not represent an "advantage to the class" gained by the "uncompensated sacrifice" of some members). The primary purported difference in state law that they identify is the availability of a buyback remedy under Virginia's lemon law. (*See* Dkt. No. 229, at 16-17, 25). But Virginia is far from unique in this respect. Many states—including California—provide a buyback remedy in their lemon laws. *See* Cal. Civ. Code § 1793.2(d); *see also, e.g.*, Ala. Code § 8-20A-2(b) (consumer may elect between replacement of vehicle or refund of purchase cost); 815 Ill. Comp. Stat. 380/3(a) (same); N.J. Stat. § 56:12-32(a)(1) (manufacturer must provide full refund of purchase price). The *Gentry*

---

[6]   In footnote 15 of its June 26, 2014 Tentative, the Court queried whether a hypothetical remedy of a $1000 penalty and attorney's fees in a different state would impact the fairness of settlement. The proposed settlement provides for a separate award of attorney's fees that will not diminish the recovery of class members. Some states do provide for minimum damages awards in consumer cases, mostly in the $100 to $500 range, with a handful in higher amounts. *E.g.*, 73 Pa. Stat. § 201-9.2 ($100 minimum); Ind. Code. § 24-5-0.5-4(a) ($500 minimum); N.H. Rev. Stat. § 358-A:10(I) ($1,000 minimum). These awards are generally in lieu of, not in addition to, actual damages. Assuming arguendo that the class could satisfy the elements of each claim, the proposed settlement represents a fair compromise of these remedies because it avoids uncertainty, corresponds to out-of-pocket costs, and removes significant hurdles which are not related to the particulars of state law. Even if individual class members have an argument for a somewhat higher recovery at trial, the settlement is fair, reasonable, and adequate as to them, and they benefit from the additional leverage (and avoided litigation costs) that it provides. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (quotation omitted)).

1  plaintiffs have not shown these buyback provisions materially differ from

2  Virginia's—nor can they.  *Compare* Cal. Civ. Code § 1793.2(d)(2)(B) ("In the case

3  of restitution, the manufacturer shall make restitution in an amount equal to the

4  actual price paid or payable by the buyer . . . including any collateral charges such

5  as sales or use tax, license fees, registration fees, and other official fees, plus any

6  incidental damages . . . ."), *and id.* § 1793.2(d)(2) ("[T]he buyer shall be free to elect

7  restitution in lieu of replacement, and in no event shall the buyer be required by the

8  manufacturer to accept a replacement vehicle."), *with* Va. Code § 59.1-207.13(A)(2)

9  ("[The manufacturer shall] [a]ccept return of the motor vehicle and refund to the

10  consumer . . . the full contract price, including all collateral charges, incidental

11  damages . . . . The consumer shall have the unconditional right to choose a refund

12  rather than a replacement vehicle.").

13        Despite the ubiquity of lemon laws (every state has one and there is a federal

14  analogue) and buyback remedies, none of the numerous plaintiffs from other states

15  elected to assert lemon law claims here.  The most obvious reason for this is that the

16  facts do not fit within the standard parameters of lemon law claims—the testing

17  issues that plaintiffs allege do not render the vehicles unmerchantable "lemons;"

18  rather, one stated performance characteristic was revised by a small to moderate

19  percentage.  In addition, settling plaintiffs (all represented by more experienced

20  class action counsel than the *Gentry* plaintiffs) had well-founded concerns that such

21  claims would present additional, unnecessary obstacles to the certification of

22  litigation classes in this case without any countervailing benefit to class members.

23  (Dkt. No. 250, at 23-25; Dkt. No. 249, at 7-8; Dkt. No. 252 at 4-10).  The fact that

24  only *Gentry* has asserted such a claim thus does not establish a conflict among state

25  laws; it merely evidences a strategy difference not germane to whether a settlement

26  class can be certified.  Plaintiffs need not assert every conceivable claim on behalf

27

28

of the nationwide class.[7]  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("[W]e have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement.").

## C.   Article III Poses No Bar to a Nationwide Settlement that Includes Vehicle Models the Named Plaintiffs Did Not Purchase

The *Gentry* plaintiffs erroneously contend that the named plaintiffs in *Brady*, *Espinosa*, and *Hunter* lack Article III standing to serve as the class representatives for a settlement that includes class members whose claims arise under state laws other than those under which the named plaintiffs' claims arise, or to represent class members who purchased vehicle models other than those purchased by the named plaintiffs.  (Dkt. No. 229, at 7-8; Dkt. No. 260, at 3-4).  They are incorrect.  The settling parties are empowered to release claims "based on the identical factual predicate as that underlying the claims in the settled class action" even though "the

---

[7]   The *Gentry* plaintiffs also argue that the choice of law analysis must take into account the Virginia choice of law provision in the automobile purchase and lease agreements, but they have not met their burden of "establishing that the various claims of putative class members fall within [the] scope" of the contractual choice-of-law provision they cite.  *See Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001) (explaining how to determine whether a contractual choice-of-law provision should be taken into account when certifying a nationwide litigation class).  Even could they make such a showing, the authority they cite for the proposition that contractual choice-of-law provisions "may not be disregarded" arose in the context of *litigation,* not settlement where the parties consent to the certification of a nationwide class.  The *Gentry* plaintiffs consistently blur this line in their analysis.  *See id.* at 915 ("[T]he court may certify the nationwide class despite such complexity [of applicable state laws] if it determines the legal questions are sufficiently similar *to be manageable . . . .*" (emphasis added) (citation omitted)).  Regardless of the choice of law provision, as already explained, the *Gentry* plaintiffs make no persuasive argument as to why differences in Virginia and California law present a state law conflict material to the settlement.

1   claim was not presented and might not have been presentable in the class action."

2   *Hesse*, 598 F.3d at 590.  Consistent with this rationale, district courts in the Ninth

3   Circuit routinely certify settlement classes that release claims based on state laws

4   other than those under which the representative plaintiffs allege claims, or that

5   include products other than those the representative plaintiffs purchased, or both.

6   *See, e.g.*, *Cox*, 291 F.R.D. at 480 (approving nationwide settlement of consumer

7   protection claims where some class claims arose under state laws other than those

8   asserted by settling plaintiffs); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052,

9   1066 (C.D. Cal. 2010) (same for false advertising suit); *In re Phenylpropanolamine*

10  *Prods. Liab. Litig.*, 227 F.R.D. 553, 563 (W.D. Wash. 2004) (same for products

11  liability suit; class also included claims arising from products that the representative

12  plaintiffs did not purchase); *HP Inkjet*, 2011 WL 1158635, at *5 (approving

13  nationwide settlement of consumer protection claims where some class claims arose

14  under state laws other than those asserted by the settling plaintiffs); *Kent v. Hewlett-*

15  *Packard Co.*, 2011 WL 4403717, at *1, 4 (N.D. Cal. Sept. 20, 2011) (approving

16  nationwide settlement of consumer protection suit where class included claims

17  arising from products that the representative plaintiffs did not purchase); *Browne v.*

18  *Am. Honda Motor Co.*, 2010 WL 9499072, at *1, 19 (C.D. Cal. July 29, 2010)

19  (same).

20          District courts in other circuits routinely certify settlement classes under these

21  circumstances as well.  *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333,

22  348-49 (3d Cir. 2010) (affirming district court's certification of nationwide

23  settlement of products liability claims); *In re Volkswagen & Audi Warranty*

24  *Extension Litig.*, 273 F.R.D. 349, 351-52 (D. Mass. 2011) (approving nationwide

25  settlement of consumer protection claims where some class claims arose under state

26  laws other than those asserted by settling plaintiffs and where class included claims

27  arising from products that the representative plaintiffs did not purchase); *In re M3*

28

*Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 61 (D. Mass. 2010) (approving nationwide settlement of consumer protection claims where some class claims arose under state laws other than those asserted by the settling plaintiffs); *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *1, 5 (S.D. Fla. Apr. 15, 2010) (same for breach of express warranty claims; class also included claims arising from products that the representative plaintiffs did not purchase).

## III.   *SETTLING PLAINTIFFS:* THE LIKELY RECOVERY PER PLAINTIFF UNDER THE TERMS OF THE SETTLEMENT[8]

Because this action was about expanding the options available to the consumer (in addition to providing $100 for 4 x 40 vehicle owners), the likely recovery per plaintiff depends in large part on the remedy selected. If a class member elects to join (or remain in) the lifetime reimbursement program, he will receive 100% of his losses, plus a 15% inconvenience fee, for the entire term of ownership. For an average driver,[9] this would result in compensation of $100 per year ($87 for fuel costs plus $13 for the inconvenience). Assuming 4.75 years of ownership, the driver would receive $475 after periodically making claims to receive the money. However, to compare that compensation to a lump sum payment now it must be discounted to present value. If the driver were to make a claim for a lump-sum award he would receive $425. (Settlement Agreement, Exh. B (Dkt. No. 185-2)). If the driver were to opt for the in-kind or new-car credit, the actual cash

---

[8]   Sections III is solely on behalf of settling plaintiffs.
[9]   Average fuel losses vary based on the magnitude of fuel economy rating misstatements, the nature of the driving (city/highway), regional fuel prices, etc. To simplify a comparison of remedies we will use the 2012 Tucson (4WD automatic, 2.4 liter engine) as a baseline, because its annual fuel cost increase attributable to the difference between the initial fuel economy rating and the restated version is $87, which approximates the average of all Hyundai vehicles based on the Monroney label fuel prices and the differences in fuel economy ratings. The $87 difference in average fuel costs is based on an owner driving 15,000 miles per year.

value of the award would increase to $637 ($425 x 150%) and $850 ($425 x 200%), respectively.  The likely recovery for an original owner would, in actual cash value, be 100% to 200% of the amounts listed in Exhibits B and C to the settlement agreement.  For a non-original owner, it would be one-half of the original owner amount.  Former owners could receive their actual fuel losses or opt for the in-kind or new car credit.  And owners of "4 x 40" cars receive approximately $100 extra. Additionally, class members who own their vehicle for four years or less will receive significantly more compensation under the settlement than they would under the lifetime reimbursement program.  For example, an average owner who trades in her vehicle after three years will receive $300 from the lifetime reimbursement program, but the same owner can receive $425 under the settlement while still trading in her car after three years.  Class members who drive less than 15,000 miles per year may also receive significantly more compensation under the settlement than they would under the lifetime reimbursement program.  All of these amounts are in addition to defendants' separate payment of attorney's fees.

The difference between the payouts goes beyond dollars.  It includes an economic choice which promotes increased benefits for consumers who find the lifetime reimbursement program inconvenient, or who, because of driving habits, gas prices, and length of ownership, will receive more valuable benefits through the settlement.  It enlarges class members' access to meaningful compensation. Plaintiffs also believe that the proposed settlement has increased and will continue to increase participation in the lifetime reimbursement program; for example, defendants have extended the deadline for participation through the settlement claims period.

Under either approach, a typical driver would receive around $450 without the expenses and risk of trial.  The risks of trial cannot be dismissed, given the lack of punitive damages evidence, the relatively strong restated fuel economy ratings,

and the defenses still available to defendants.  If all class members submit claims under the settlement, the class will recover $392M in cash before deductions for compensation already paid through the lifetime reimbursement program are made.

## IV.   *SETTLING PLAINTIFFS*:  THE POTENTIAL RECOVERY IF PLAINTIFFS WERE TO PREVAIL ON EACH OF THEIR CLAIMS[10]

If, instead of settling, each driver chose to go to trial, he would be seeking either reimbursement for all past and future fuel expenses incurred because of misstatements in the fuel economy ratings, or, for the 4 x 40 vehicles, damages reflecting an inflated purchase price resulting from the MPG misstatement.  Settling plaintiffs' claims under the California Consumer Legal Remedies Act, California's Unfair Competition Law, and False Advertising Law provide for awards of actual damages, attorney's fees, and, in appropriate cases, punitive damages.  *See* Cal. Civ. Code § 1780; Cal. Bus. & Prof. Code § 17205.  The same goes for plaintiffs' allegations of deceit.  *See Saunders v. Taylor*, 50 Cal. Rptr. 2d 395, 399 (Cal. App. 1996); *Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159, 1184 (2005). California warranty and contract claims generally provide for a recovery of actual damages where accepted goods are nonconforming.  *See* Cal. Com. Code § 2714. This analysis assumes plaintiffs prevail over defendants anticipated defenses, such as that class members should recover nothing at trial because the lifetime reimbursement program provides full compensation.  (*See* Case No. 2:14-cv-04366, Dkt. No. 35 at 22-23 (HMA arguing the pre-November 2, 2012 plaintiffs in *Abdurahman* cannot allege damages based on inadequacies in the lifetime reimbursement program)).[11]

---

[10]   Section IV is solely on behalf of settling plaintiffs.

[11]   Although plaintiffs do not agree with defendants' position, defendants have previously relied on the following cases in arguing that plaintiffs cannot allege damages given the compensation offered under the lifetime reimbursement program:
(footnote continued)

For a damages claim reflecting reimbursement of fuel costs, on average, each driver would be entitled to damages at the rate of $87 per year since purchase to the date of trial, and $87 per year for every year thereafter if a jury concludes he would have owned the vehicle and driven an average amount.  If he proved he owned or would have owned the car for a total of 4.75 years, he would receive compensatory damages of $370, discounted to present value, minus fees and expenses.[12]

Potential damages for a claim that purchase prices were inflated would depend upon expert testimony regarding the market impact of MPG discrepancies. The formal analysis has not yet been completed, but plaintiffs' experts estimated that each MPG could be assigned a dollar value between $100 and $500.   For the average vehicle, if plaintiffs had prevailed on certification, causation, trial, and appeal, trial damages would be approximately $1,350 per driver (4.5 MPG x $300 per MPG) for the 4 x 40 owners.  However, that recovery is not cumulative and payments received for additional fuel costs would reduce the award.  Defendants have raised additional arguments regarding class certification and preemption of these claims, increasing Plaintiffs' risk if the 4 x 40 claims were to proceed in litigation.  (*See* Case No. 2:12-cv-00800, Nov. 29, 2012 Tentative at 3-4, 8-15).

---

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 51 Fed. R. Serv. 3d 569 (D.N.J. 1997) (plaintiffs could not allege damages where they were "entitled to the installation of a replacement ignition switch free of charge"); *In re McNeil Consumer Healthcare, Mktg. & Sales Practices Litig.*, 2011 WL 2802854, at *11-15 (E.D. Pa. July 15, 2011) (plaintiffs failed to allege damages where defendant offered cash payments and coupons in conjunction with a recall); and *Gonzales v. Comcast Corp.*, 2012 WL 10621, at *5-6 (E.D. Cal. Jan. 3, 2012) (plaintiffs failed to allege damages where they failed to allege deficiencies in the refund defendant provided) *report and recommendation adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012).

[12]  If his mileage or ownership exceeded these assumptions, his damages would increase, but the same would be true of the reimbursement program.

1    Each driver could also seek a punitive damage award, but no non-settling

2  plaintiffs have attributed additional value to such a claim; such a claim would be

3  hotly contested, as settling plaintiffs previously explained. (*See* Dkt. No. 185-1, at

4  24-27.)  The scope of punitive damages on an economic loss-only case with a full

5  recovery could be limited to a one-to-one ratio.  *See, e.g.*, *State Farm Mut. Auto. Ins.*

6  *Co. v. Campbell*, 538 U.S. 408, 425 (2003).  Likewise, there is no viable claim that

7  the cars are so deficient that the purchase can be revoked.

8    Thus, the best-case scenario for the driver on a claim for fuel costs would

9  result in a recovery of around $740 (based on a best case scenario of $370 in

10  economic damages and $370 in punitive damages), without reducing the damages

11  by a discount to their present value, the time value of money until recovery occurs,

12  and possibly fees and costs.  The best-case scenario for a 4 x 40 owner would be

13  $2,700 (based on $1,350 in economic damages and $1,350 in punitive damages),

14  though these claims face greater risks.  Plaintiffs view an award of $370 in actual

15  fuel costs to be a strong possibility at trial.  While outcomes may vary based on the

16  class member's status, vehicle, and other factors, the underlying analysis would

17  remain the same.

18    Post-purchase diminution in value would not be likely to support recovery of

19  additional amounts.  The impact of the fuel economy ratings misstatement is that

20  owners would have to pay more for fuel than expected.  Outside of the false

21  advertising context (and even there defendants dispute any price impact), that

22  diminution is most easily (and directly) measured by the net present value of the

23  future stream of additional fuel costs.  Thus, reimbursement for the extra expense

24  redresses any diminution of the vehicles.  Here, most of the vehicles are still fairly

25  well situated on fuel economy when compared to their rivals.  The car values have

26

27

28

1    not diminished in any extraordinary way.[13]  Those selling their cars immediately

2    will receive fuel cost compensation based on average ownership but would not incur

3    any of the extra fuel costs and would not have received less for the vehicle because

4    of defendants' misstatements.

5    **V.    A SHORT-FORM MAILER IS THE BEST FORM OF NOTICE**

6        The Court noted that "there is a dispute as to whether the mailing should be

7    by way of a postcard or letter" and that "[t]he former can more readily grab the

8    recipient's attention but cannot contain as much information as a letter." (Tentative

9    at 16 n.18). Settling parties are not proposing a traditional postcard format. Rather,

10    what they propose is a hybrid—a short-form mailer, which is in essence a letter,

11    folded in half. This format serves both purposes: It is sufficiently capacious to

12    permit the same amount of information as a letter, while preserving the attention-

13    getting feature of a postcard. By contrast, concealing the notice in an envelope

14    would offer no benefit; it would merely add the potential drawback of requiring the

15    recipient to open an envelope before reading the notice—an additional step that

16    some class members might not take.

17        The non-settling plaintiffs' other argument for the envelope format is that a

18    short-form mailer "would be too easily confused with junk mail." (Dkt. No. 266, at

19    3). They offer no support for this contention, and no reason to believe that an

20    envelope is less likely to be confused with junk mail. Personal experience teaches

21    that junk mail arrives at least as often in an envelope and that crafty marketers have

22    taught consumers that envelopes that claim to hold "important" information inside

---

23

24      [13]   Bengt Halvorson, Did MPG Overstatement Affect Hyundai And Kia Resale
Values?, The Car Connection (Feb. 24, 2014), available at

25    http://www.thecarconnection.com/news/1090530_did-mpg-overstatement-affect-

26    hyundai-and-kia-resale-values (last visited July 8, 2014) (describing Kelly Blue
Book official's conclusion that "resale values were 'virtually indistinguishable'

27    before and after November 2012" for Hyundai and Kia vehicles).

28

1   generally do not do so.  The short-form mailer settling plaintiffs propose allows

2   people to quickly determine that the information is relevant to them, without the

3   extra step of opening an envelope.  It is also worth noting that the short-form mailer

4   has the added advantage of providing every benefit non-settling plaintiffs seek while

5   using less paper.

## VI.   THE PROPOSED SETTLEMENT IS COMPARABLE TO THE CANADIAN CLASS ACTION SETTLEMENT

8         Following the November 2, 2012 announcement restating fuel economy

9   ratings for certain Hyundai and Kia vehicles, Hyundai Auto Canada Corp.

10  ("Hyundai Canada") and Kia Canada Inc. ("Kia Canada") implemented

11  reimbursement programs for affected Canadian consumers parallel to the ones

12  established by HMA and KMA in the United States.  (Ashby Supp. Decl., Exhs. 18

13  at 5, 19 at 11).  Like their U.S. counterparts, the Canadian reimbursement programs

14  calculate compensation based on the difference between the previous and revised

15  fuel economy ratings, the average fuel price in the consumer's region, and actual

16  mileage driven, as well as a 15% inconvenience premium.  (*Id.*).

17        Since then, class proceedings were initiated in Ontario, Quebec, British

18  Columbia, and Saskatchewan that, as here, alleged the affected vehicles were

19  advertised with incorrect fuel economy ratings.  (*Id.*, Exh. 20 at 14).  When

20  settlement discussions with Hyundai began, the objective was to settle the U.S. and

21  Canadian class actions on the same terms.  Consistent with that aim, both the

22  Canadian and U.S. plaintiffs' counsel participated in settlement discussions.  This

23  process culminated with HMA, Hyundai Canada, settling plaintiffs in the MDL, and

24  the Canadian plaintiffs reaching a settlement in principle with Hyundai at a single

25  mediation before Judge Sundvold in February 2013.  KMA, Kia Canada, settling

26  plaintiffs in the MDL, and the Canadian plaintiffs all attended the later mediation

27

28

1   before Judge Sundvold involving the Kia claims and reached a settlement in

2   principle with Kia on the same terms as the Hyundai agreement.

3       In January 2014, Hyundai Canada and Kia Canada entered into a settlement

4   agreement with plaintiffs representing all current and former owners and lessees of

5   affected vehicles in Canada.  (*Id.*, Exh. 21).  The Canadian settlement agreement

6   provides a compensation structure that substantially mirrors the proposed settlement

7   before this Court.[14]  Notably, the two agreements:

8   •   Place class members into the same compensation groups:  (i) current
9       original owners; (ii) current non-original owners; (iii) former owners;
        (iv) current lessees; (v) former lessees; (vi) current fleet owners; and
10      (vii) former fleet owners.  (*Compare* Ashby Supp. Decl., Exh. 21 at 29-
        30 *with* Dkt. No. 185-2 at 9-10).
11

12  •   Provide comparable compensation amounts by group and vehicle type
        after adjusting for differences between U.S. and Canadian fuel prices.
13       (*Compare* Ashby Supp. Decl., Exh. 21 at 52-54 *with* Dkt. No. 185-2 at
        40, 42).[15]
14

15  •   Offer class members the same alternatives to remaining in the
16      reimbursement program:  (i) a lump sum payment in the form of a debit
        card; (ii) a dealer service debit card valued at 150% of the lump sum
17      amount; or (iii) a new car rebate certificate valued at 200% of the lump

18  _____

19  [14]   Although there are certain differences between the notice provisions in the
20  U.S. and Canadian settlement agreements, they are based primarily on differences
    between U.S. and Canadian procedure.  For instance, a notice of settlement approval
21  hearing was sent to Canadian class members in advance of the hearings in Ontario
    and Quebec.  (*See* Ashby Supp. Decl., Exh. 20).  Once settlement approval is
22  obtained, a second notice will be sent to class members, which is the equivalent of
23  the long-form notice and claim form in the U.S. settlement.  The Canadian parties
    are currently in the process of modifying the claims process to provide an electronic
24  option to parallel the U.S. electronic claims process.  Assuming the Quebec court
25  approves the settlement, counsel expect that the second notice will be sent to class
26  members within the next three months.
    [15]   The U.S. settlement includes additional compensation for the "4x40" vehicles
27  because the "4x40" advertising campaign was unique to HMA.

28

sum amount.  (*Compare* Ashby Supp. Decl., Exh. 21 at 31 *with* Dkt. No. 185-2 at 11-12).

The Canadian settlement agreement requires the parties to seek settlement approval from the Ontario and Quebec courts, and to discontinue the proceedings in British Columbia and Saskatchewan (because they would be absorbed into the Ontario class action).  The parties have filed motions for settlement approval in both the Ontario and Quebec courts.

In an order dated March 19, 2014, the Ontario Superior Court of Justice approved the Canadian settlement.  (*See* Ashby Supp. Decl., Exh. 22).  Despite two objectors and "several persons [who] expressed dissatisfaction," the court found these concerns outweighed by the value of the settlement, the range of options available to class members, the fact that defendants bear administration costs, and because the legal fees will not reduce class members' compensation.  (*Id*. at 98-99).  Based on those factors, the Canadian court was "entirely satisfied" with the settlement.  (*Id*. at 99).  A motion for settlement approval is currently pending in the Quebec court, with an anticipated ruling in August 2014.

## Conclusion

For the reasons set forth herein, settling parties respectfully request the Court grant the *Espinosa*, *Hunter*, and *Brady* plaintiffs' motion to certify a settlement class and motion for preliminary approval of class settlement.

DATED:  July 9, 2014             QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By  */s/ Shon Morgan*
                                 _____
                                    Shon Morgan
                                    Attorneys for Defendants Hyundai Motor
                                    America and Hyundai Motor Company

1   DATED:  July 9, 2014              DYKEMMA GOSSETT PLLC

2

3

4                                     By  /s/ James P. Feeney
                                          James P. Feeney
5                                         Attorneys for Defendant Kia Motors
                                          America, Inc.
6

7   DATED:  July 9, 2014              HAGENS BERMAN SOBOL SHAPIRO LLP

8

9

10                                    By  /s/ Robert B. Carey
                                          Robert B. Carey
11                                        Attorneys for Plaintiff Kaylene P. Brady,
                                          et al. and Nicole Marie Hunter, et al.
12

13  DATED:  July 9, 2014              MCCUNEWRIGHT,  LLP

14

15

16                                    By  /s/ Richard D. McCune
                                          Richard D. McCune
17                                        Attorneys for Plaintiffs Lillian E. Levoff,
                                          Thomas Ganim, and Dan Baldeschi
18

19

20

21

22  **C.D. Cal. L. R. 5-4.3.4(a)(2)(i) Attestation**

23  I attest that the e-signatures of Robert B. Carey and Richard D. McCune were added

24  with the authorization of their co-counsel, John DeStefano.  I further attest that the

25  e-signature of James P. Feeney was added with authorization conveyed by his co-

26  counsel, Benjamin W. Jeffers.

27                                         /s/ Shon Morgan

28