HARVEY ROSENFIELD (SBN 123082)
harvey@consumerwatchdog.org
PAMELA PRESSLEY (SBN 180362)
pam@consumerwatchdog.org
LAURA ANTONINI (SBN 271658)
laura@consumerwatchdog.org
**CONSUMER WATCHDOG**
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522 / Fax: (310) 392-8874

*Attorneys for the Krauth and Hasper, et al. Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | Case No. 2:13-ml-02424-GW-FFM<br><br>***KRAUTH/HASPER* PLAINTIFFS' RESPONSE TO SETTLING PARTIES' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:      July 24, 2014<br>Time:     9:30 a.m.<br>Judge:   Hon. George H. Wu<br>Courtroom:  10 |

# **TABLE OF CONTENTS**

I.    SUMMARY OF BRIEF ......................................................................... 1

II.   CLASS MEMBERS SHOULD BE SENT THE LUMP-SUM PAYMENT AS THE
      DEFAULT OPTION WITHOUT HAVING TO FILE A CLAIM FORM ................... 4

III.  THE REVISED NOTICES DO NOT INCLUDE RELEVANT INFORMATION AND
      ARE NOT CALCULATED TO CATCH THE ATTENTION OF CLASS
      MEMBERS ................................................................................ 5

      A.   The Revised Short-Form Notice and Email Notice Fail to Prominently Display
           Pertinent Information in Clear, Concise Language............................... 6

           1.   The Email Notice Must be Revised to Prominently Display Pertinent
                Information in Clear, Concise Language. ............................. 12

      B.   The Revised Long-Form Notice is Confusing. ..................................... 13

IV.   THE CLAIM FORMS ARE INCOMPLETE, ONEROUS AND CONFUSING. ........ 16

      A.   The Online Claim Form Provided by Settling Parties is Incomplete. ................. 16

      B.   The Paper Claim Form Still Contains Unnecessary Steps and Fails to Provide
           Clear and Prominent Information. .................................................. 20

V.    SETTLING PLAINTIFFS FAIL TO PROVIDE THE METHODOLOGY FOR
      DETERMINING THE LUMP-SUM PAYMENTS .................................... 21

      A.   Settling Plaintiffs Fail to Explain the Methodology for Determining Lump-Sum
           Amounts for Current, Original Owners. ........................................... 21

      B.   Settling Plaintiffs Fail to Explain the Methodology for Determining Lump-Sum
           Amounts for Current, Non-Original Owners. ...................................... 23

      C.   Settling Plaintiffs Fail to Explain the Methodology for Determining the "4 x 40"
           Compensation. ...................................................................... 24

VI.   SETTLING PLAINTIFFS FAIL TO PROVIDE THE TOTAL VALUE OF THE
      PLAINTIFFS' CASE ................................................................... 25

VII.  THE PROPOSED SETTLEMENT SHOULD BE ANALYZED INDEPENDENTLY
      OF THE COMPENSATION PROVIDED BY THE VOLUNTARY PROGRAM.... 29

VIII. A PROCESS FOR RESOLUTION OF POST-NOVEMBER 2, 2012 CLAIMS
      SHOULD BE INCLUDED AS PART OF THE SETTLEMENT .......................... 31

IX.   OUTSTANDING DISCOVERY ISSUES............................................ 31

X.    CONCLUSION ......................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Mullane v. Cent. Hanover Bank & Trust v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................................................................ 8

*State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003) ........................ 26

*Walter v. Hughes Communs., Inc.* 2011 WL 2650711 ........................................ 29

**Statutes**

Fed. R. Civ. P. 23 ................................................................................................ 6

**Other Authorities**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (3d ed. 2010) ........................................ 1, 14

The *Krauth/Hasper* Plaintiffs[1] file this Response to the Settling Parties'
Supplemental Brief in Support of Preliminary Approval of Class Settlement and
Certification of Settlement Class (Dkt. No. 271) ("Supplemental Brief") filed by
Hyundai and Kia and the two firms referred to throughout this litigation as the
"Settling Plaintiffs" on July 9, 2014. Liaison Counsel Eric Gibbs, representing
only "himself and the *Maharaj* plaintiffs," filed a joinder in the Settling Parties'
Supplemental Brief. (Dkt. No. 273.) For purposes of this brief, we will refer to
these parties collectively as the "Settling Parties."

## I. SUMMARY OF BRIEF

At the June 26, 2014 hearing on the Motion for Preliminary Approval (Dkt.
No. 185), the Court made clear that "if I find that there has not been a significant
participation [in the settlement] … I may find a problem of fairness or a problem of
the settlement because of the lack of participation." (June 26, 2014 Hearing Tr. at
60:5-11, attached as Exhibit A to the Declaration of Laura Antonini ("Antonini
Decl.") filed concurrently herewith.)

The *Krauth/Hasper* Plaintiffs share the Court's concern. Unfortunately, the
Settling Parties' Supplemental Brief (Dkt. No. 271) does not address most of the
infirmities in the proposed settlement that were noted by the Court at the June 26
hearing and in the Tentative Ruling circulated shortly thereafter (Dkt. No. 267).
Thus, all the ingredients for an onerous process that "serves as a choke on the total
amount paid to class members" (Federal Judicial Center, *Judges' Class Action
Notice and Claims Process Checklist and Plain Language Guide* at 6 (3d ed.

---

[1] Attempting to discredit the opposition presented on behalf of the *Krauth* and
*Hasper* plaintiffs, Hyundai and Kia's law firm mischaracterizes the role that
Consumer Watchdog and its advocates have played in this and unrelated litigation.
(Defendants' Joinder and Reply in Support of Motion for Preliminary Approval of
Class Settlement, Dkt. No. 250 at 1, fn. 3.) Their assertions, however, are belied by
the record here and in the other case they cite. See Declaration of Harvey
Rosenfield ("Rosenfield Decl.") at ¶¶ 7-8.

2010)) remain extant. To ensure the participation of the class, these items must be addressed.

**Notices.** Though the Court pointed out that it had "major problems" with the Short-Form Notice and Long-Form Notice and directed the Settling Parties to revise them and include an email notice, the revised documents remain needlessly confusing and would not "catch the attention of the recipient." (*See* June 26 Hearing Tr. at 11:8; Tentative Ruling at 21.) (In Section II, the *Krauth/Hasper* Plaintiffs propose necessary changes to the notices.)

**Claim forms.** While the option of an *online* claim form is an improvement, and is relatively easier to navigate, it is clear from testing that the web form is in rudimentary condition. Moreover, the *mail-in* claim form remains overly complicated and requires Class Members to enter duplicative information. (In Section III, the *Krauth/Hasper* Plaintiffs offer suggestions to improve the claim forms.)

The experienced class action lawyers representing the Settling Parties are no doubt aware of the cumulative impact of the proposed notice and claim requirement on claims rates. While providing a confusing and roughly averaged estimate of the "likely recovery per plaintiff," the Settling Parties neglect to provide the Court with an estimate of the *percentage of the class that will actually make a claim*. Experience suggests the number will be very low. (Sections V and VI below.)

Perhaps that is why the Settling Parties are now emphasizing *the benefits of the Voluntary Program* that the Defendants unilaterally unveiled *prior* to this MDL proceeding. (See Section VII below.)

**Maximize compensation by eliminating the claim requirement for lump-sum payments.** At this point in the process, maximizing the Class's ability to obtain the lump-sum payment – the principal benefit of the Proposed Settlement –

is critical. The deficiencies noted by the Court and by the *Krauth/Hasper* Plaintiffs can and should be addressed with one simple fix: <u>dispense with the requirement that Class Members have to fill out a claim form to get the lump sum payment.</u> (The Court's Tentative Ruling did not address this proposal by the *Krauth/Hasper* Plaintiffs.) Defendants have access to *all the information* they need to determine how much each Class Member is entitled to under the terms of the settlement, and can *pre-populate* the Short-Form Notice with this information.

Under this approach, Class Members who want to receive the lump-sum payment would *not need to take any action* upon receipt of the Short-Form Notice. Only those who want to sign-up for the Voluntary Program, get the Dealer Service coupon or the Car Rebate coupon would have to file a claim.

**Compensation estimates.** The Court asked the Settling Parties to explain "the methodology for determining the lump-sum payment amounts for ***each Class Vehicle***" (Tentative Ruling at 18, emphasis added) and to provide a "ballpark figure as to the net worth of all plaintiffs' claims" (June 26 Hearing Tr. at 43:17-18). For the reasons discussed below, Settling Parties' submissions on these issues were insufficient.

**Post-November 2, 2012 claims**. (See Section VIII below.)

**Outstanding discovery issue.**  (See Section IX below.)

***

The *Krauth/Hasper* Plaintiffs appreciate the Court's attention to the details of the notice and claim forms. While we acknowledge that the Court has indicated it is inclined to grant preliminary approval, we urge the Court to withhold its approval until the Settling Parties have presented the Court with revised forms that meet the minimum standards for class actions and provide adequate information regarding the calculations and value of Plaintiffs' claims.

## II.  CLASS MEMBERS SHOULD BE SENT THE LUMP-SUM PAYMENT AS THE DEFAULT OPTION WITHOUT HAVING TO FILE A CLAIM FORM

The Settling Parties offer no explanation for requiring Class Members who simply want the lump-sum cash benefit to file a claim to get it. At oral argument, when the Court asked Counsel for Settling Plaintiffs, Rob Carey, about that option, Mr. Carey was non-committal. (See June 26 Hearing Tr. at 50:3-21.)

Under the particular circumstances of this case, in which Defendants have conceded uniform liability, there is *no reason* to require every Class Member to file a claim in order to obtain the principle benefit of the settlement. This is not a class action where, for example, class members cannot be identified from a defendant's records, or class members need to establish eligibility, or defendants do not have information to ascertain the compensation owed to each individual class member.[2] Here, the Defendants possess or can easily access address data, vehicle ownership/lease/sale dates, and mileage information. This information can be used to *pre-populate* the Short-Form Notice that all Class Members will receive with the compensation to which each Class Member is entitled. The Short-Form Notice should summarize the compensation options (*see* the Short-Form Notice proposed by the *Krauth/Hasper* Plaintiffs, set forth below at page 10 and also attached as Exhibit 1 hereto). Under the *Krauth/Hasper* Plaintiffs' proposal, Class

---

[2]  Attempting to defend the imposition of an unnecessary claim form, Liaison Counsel Eric Gibbs argues, in effect, "everybody does it," citing a completely unrelated 2009 lawsuit in which Consumer Watchdog attorneys co-represented the class. (Liaison Counsel's Response in Support of Proposed Settlement, Dkt. No. 248 at 11-12.) Not only is that litigation irrelevant to this litigation, but Mr. Gibbs fails to note that the principal purpose of the prior suit, and the core feature of its approved settlement, was to require the defendant to revise its advertising; the compensation benefit was ancillary. By contrast, the proposed settlement here requires a claims process for the principle feature of the settlement – the lump-sum cash benefit. (*See* Rosenfield Decl. at ¶9.)

Members who want to receive the lump-sum payment would *not need to take any action* after receipt of the Short-Form Notice. They would receive the lump-sum cash benefit *automatically*.

Only those Class Members who do *not* want the lump-sum benefit – who wish to sign-up for the Voluntary Program, prefer the Dealer Service coupon or the Car Rebate coupon – would have to file a claim.

This process would maximize the likelihood that Class Members get the compensation to which they are entitled by virtue of this settlement. "Whenever there is an option available to distribute fairly a class recovery without requiring a proof of claim by class members as a precondition to sharing in that recovery, the automatic distribution of the class recovery to eligible class members is the preferable option and is more consistent with the objectives of the class action rule." (Alba Conte & Herbert Newberg, Newberg on Class Actions § 8:35, at 272 n.3 (4th ed. 2002).)

Any other process risks a low claims rate. To that point: the Settling Parties should be *ordered to estimate the anticipated claims rate for the lump-sum benefit*. As the Court pointed out at the June 26 hearing, a low participation rate could jeopardize final approval. (See June 26 Hearing Tr.at 59:22-25; 60:1-11.)

## III.   THE REVISED NOTICES DO NOT INCLUDE RELEVANT INFORMATION AND ARE NOT CALCULATED TO CATCH THE ATTENTION OF CLASS MEMBERS

At the June 26 hearing, the Court indicated that there were "major problems" with the Settling Parties' proposed notice and ordered the parties to revise the forms. (June 26 Hearing Tr. at 11:7-8.) In response, Settling Parties submitted a revised Short-Form Notice, added an Email Notice, and revised the Long-Form Notice. But these revisions fall short of the standards of Federal Rule of Civil Procedure 23.

**A. The Revised Short-Form Notice and Email Notice Fail to Prominently Display Pertinent Information in Clear, Concise Language.**

On June 25, 2014, the *Krauth/Hasper* Plaintiffs filed and served a Response to Joint Notice of Filing of Revised Notice and Claim Documents (Dkt. No. 266), highlighting the problems with the original Short-Form Notice and mocked up an example of a Short-Form Notice that would cure the deficiencies in what Settling Plaintiffs proposed (Dkt. No. 266; *see* Ex. 1 attached hereto).

At the hearing on June 26, the Court noted that "*notice needs to not only include the relevant facts, but also be calculated to catch the attention of the recipient.*" (Tentative Ruling at 21, emphasis added, citing *Mullane v. Cent. Hanover Bank & Trust v. W. Pub. Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).) The Settling Parties have submitted a "revised" Short-Form Notice that fails to include relevant information and is not calculated to catch the attention of the recipient.

Set forth below is the Settling Parties' current Short-Form Notice, with numbers corresponding to the list of issues discussed below the image. We also include the *Krauth/Hasper* Plaintiffs' proposed Short-Form Notice for the Court's consideration below at page 10, and attached as Exhibit 1 hereto.

//
//
//
//
//
//
//
//

1

**Settling Parties' Short-Form Notice**

2

3

2

## IMPORTANT LEGAL NOTICE
## FROM THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

**If you purchased or leased certain 2011, 2012, or 2013 model year Hyundai vehicles, you may be entitled to money or other benefits from a proposed settlement.**

3

You are receiving this notice because you likely qualify for a proposed federal court settlement that gives you the option of a lump sum of cash (via debit card), a larger dealership credit for goods and services (via debit card), or an even larger new car rebate certificate. Other benefits exist.  This is not a solicitation and you do not have to pay any money to qualify for settlement benefits.

4

A proposed settlement has been reached in a class action lawsuit alleging that prior to November 2, 2012, the fuel economy ratings for certain Hyundai vehicles were misrepresented. The lawsuit claims that because of the alleged misrepresentations, class members purchased vehicles they otherwise would not have purchased or paid more for the vehicles than they otherwise would have paid. The lawsuit also claims that the Lifetime Reimbursement Program initiated by Hyundai on November 2, 2012 to reimburse class members for increased fuel costs is inadequate. Hyundai has denied the lawsuit's allegations. The parties agreed to resolve these matters before these issues were decided by the Court. The sole purpose of this notice is to inform you of the class action lawsuit and the proposed settlement so that you may decide what to do.

Records available to Hyundai indicate that you may be a class member for a vehicle for which the last four digits of the Vehicle Identification Number (VIN) is [last four digits]. If you are a class member, your rights may be affected, even if you take no action. You may be required to take action in order to get money and/or to protect your rights.

If you are a class member, you may be entitled to receive a cash payment or other benefits. Payments depend on your type of ownership and the year and model, minus any payments you have received under the Lifetime Reimbursement Program.

If you think you qualify, you can go to www.HyundaiMPGClassSettlement.com, where you can make a claim by typing in your vehicle's VIN and the following Unique ID Number:

### [Unique ID]

You should also review a Long Form Notice for more information and, if applicable, the Claim Form. They are available (1) at www.HyundaiMPGClassSettlement.com; (2) by calling, toll-free, at [(xxx) xxx-xxxx]; and/or (3) by writing to the Hyundai Fuel

1

5

Economy Class Action Settlement Center, P.O. Box 10759, Newport Beach, CA 92658.

Two key deadlines are [date] for requests to be excluded and objections and [date] for submitting claims (either through the website or by mailing a Claim Form). There are other deadlines, too. All deadlines are available (and may be updated) at www.HyundaiMPGClassSettlement.com. Para vereste aviso en Español, visita www.HyundaiMPGClassSettlement.com.

24

25

26

27

28

1. **The bland formatting of the body of the Short-Form Notice – no particular text is in bold font -- will deter Class Members from reading it.** The formatting and font on the Short-Form Notice should be revised to prominently display pertinent information about the settlement benefits and Class Members' rights. The *Krauth/Hasper* Plaintiffs have done this in their version below, by highlighting key terms of the settlement in an easy-to-read manner.

2. **The Hyundai logo has been removed from the Short-Form Notice.** This logo, which was one of the few attention-getting features of the previous version of the Short-Form Notice, quickly reinforces to the reader that Hyundai – not a junk mailer – is responsible for the notice. The logo should be featured prominently, as it is in the *Krauth/Hasper* Plaintiffs' Short-Form Notice below, so that Class Members will not inadvertently discard the notice without learning about their rights under the Proposed Settlement.

3. **The Short-Form Notice should be pre-populated to include personalized details, like the year and model of the recipients' vehicles and critical compensation information**, as in the *Krauth/Hasper* Plaintiffs' version below. Personalizing the correspondence will render it much less likely to be confused with junk mail. And informing each Class Member that they are entitled to a precise amount of money is much more likely to elicit a response. The options and values available to Class Members under the Settlement should be included and emphasized, as it is in the *Krauth/Hasper* Plaintiffs' Short-Form Notice, so that Class Members can "quickly determine that the information is relevant to them." (Supp. Brief at 19.)

4. **Legalese discourages consumer comprehension and response.** The Settling Plaintiffs have only altered one phrase of legalese in response to the Court's admonition.[3] Their proposal remains chock full of lawyer-talk. Laypeople will be receiving these notices; they should not have to parse through blocks of unnecessarily legalistic language to understand the Proposed Settlement. Substantial revisions are still necessary to adequately inform a Class Member about the Proposed Settlement and how it will affect her. The *Krauth/Hasper* Plaintiffs' Short-Form Notice, set forth below, describes in clear and concise language the Proposed Settlement and Class Members' rights under the Proposed Settlement.

---

[3] The Settling Parties' previous version of the Short-Form Notice stated that Hyundai's fuel economy ratings "constituted actionable misrepresentations." (*See* Dkt. No. 264, Ex. 2). Now, the Short-Form Notice states that Hyundai's fuel economy ratings "were misrepresented." (Dkt. No. 271, Ex 1.)

5. The purportedly one-page Short-Form Notice spans two pages in the Settling Parties' Supplemental Brief. The Settling Parties must explain how eight additional lines of text will fit onto a single page prior to the approval of this Short-Form Notice.

Here (and also attached as Ex. 1 hereto) is the Krauth/Hasper Plaintiffs' proposed Short-Form Notice, addressing the defects identified in numbers 1 through 5, above:

///

///

///

///

///

///

///

///

///

///

///

///

///

1

*Krauth/Hasper* **Plaintiffs' Model Short-Form Notice**

2

**HYUNDAI**

## IMPORTANT NOTICE ABOUT YOUR HYUNDAI ELANTRA

**Dear Hyundai Elantra Owner:**

A proposed settlement of a class action affects you, because you purchased a Hyundai Elantra on or before November 2, 2012. **You are entitled to benefits under the settlement**. The U.S. District Court for the Central District of California, authorized this notice. **Please read this notice carefully because it affects your legal rights whether you take action or don't act.**

**What is the lawsuit about?**

Class members like you brought a lawsuit alleging Hyundai misrepresented the fuel economy of several of its 2011, 2012, and 2013 vehicles prior to November 2, 2012. The lawsuit claims that people either chose to buy a Hyundai based on the overestimated fuel economy or people would have paid less if they knew the true fuel economy. The lawsuit also claims that Hyundai's Lifetime Reimbursement program did not pay people enough to reimburse them for their fuel costs. Hyundai has denied the lawsuit's allegations. The parties agreed to settle before the Court decided these issues. You are a class member under the settlement because you own a Hyundai Elantra and the last four digits of your Vehicle Identification Number (VIN) are [last four digits]. The settlement will pay class members up to a total of $XXX million.

**How do I get what I am entitled to?**

You are entitled to compensation under the settlement. If you want to participate in the settlement, then you can choose one of the following options:

- **You can do nothing. If you do nothing, you will automatically get a cash debit card worth $345.00**; OR

- **IF you want to participate in Hyundai's Lifetime Reimbursement program, then you must file a claim**. This program offers mileage-based compensation for your additional fuel costs for as long as you own your Hyundai. This option may be better for high-mileage drivers (visit www.HyundaiMPGInfo.com for a reimbursement estimator); OR

- **IF you want a Dealer Service Debit Card with a value of $517.50, then you must file a claim**. This card can only be used at an authorized Hyundai dealer for merchandise, parts or service; OR

- **IF you want a New Car Rebate Certificate with a value of $690.00, then you must file a claim**. This certificate can only be used to purchase a new Hyundai vehicle.

**There are some limitations on these options that you should know about.** More information is available at the toll-free number, the address, and the website listed below.

**What if I don't like the settlement?**

If you don't like the settlement, then you can choose one of the following options:

- You can object to the settlement. You must object before [date].

- You can exclude yourself from the settlement. The opt-out deadline is [date].

**What else should I know?**

**For information about filing a claim, objecting or excluding yourself from the settlement, important deadlines (which can change without notice) or the fees requested by attorneys, you can visit the website below, call toll-free at [number] and/or write to the Hyundai Fuel Economy Class Action Settlement Center, [address details]**. Para vereste aviso en Espanol, vista www.HyundaiMPGClassSettlement.com. For more information, please visit the website at:

www.HyundaiMPGClassSettlement.com

1&4

5

**The Short-Form Notice should be mailed in an envelope.** Settling Parties oppose this, contending that "[p]ersonal experience teaches that junk mail arrives at least as often in an envelope." (Supp. Br. at 18.) This argument misses the point. Regardless of the form that junk mail may take, bona fide correspondence that is truly important almost never arrives as a folded paper. It comes in an envelope. To avoid confusing the Short-Form Notice with junk mail, the Notice should be enclosed in an envelope to reinforce its status as bona fide correspondence.

**External Text.** The currently proposed "Important Legal Notice" reads like junk mail. The *Krauth/Hasper* Plaintiffs propose that the recipient's year and model of the recipient's vehicle be placed on the outside of the envelope. Set forth below (and also attached as Ex. 1 hereto) is the *Krauth/Hasper* Plaintiffs' proposed envelope:





1. <u>The Email Notice Must be Revised to Prominently Display Pertinent Information in Clear, Concise Language.</u>

At the June 26 hearing and in the Tentative Ruling, the Court directed the Settling Parties to utilize email notice. (June 26 Hearing Tr. at 19-20; Tentative Ruling at 21.) Aside from the subject line and a short preface, the proposed Email Notice is identical to the Short-Form Notice. The subject line of the Email Notice currently reads: "HYUNDAI FUEL ECONOMY CLASS ACTION SETTLEMENT." (Dkt. No. 271, Ex. B.)

An email subject line is the first – and sometimes only – chance to convince Internet users to open an email and read it. For this reason, the subject line should include Class Members' personalized details - year, make and model of the recipient's vehicle - to ensure they do not confuse the Email Notice with unsolicited bulk email (i.e., spam). For example, the subject line could say: "**IMPORTANT: Hyundai Class Action Settlement Affecting Your [Year Make Model].**" This personally tailored subject line is more likely to cause Class Members to actually open the Email Notice, read it, and understand their rights under the Settlement.

Moreover, the email should use the Class Member's email address. "Certain current and former owners and lessees…" also reads like junk mail.

The preface text of the Email Notice reads:
Important! Please read the following legal notice. (You may also receive a copy in the U.S. Mail.)
Note that this is not a communication from the Lifetime Reimbursement Program that you may already be participating in. The proposed settlement described below offers benefits in addition to participation in the Lifetime Reimbursement Program.
(Dkt. No. 271, Ex. B. )

This language does not clearly explain the relationship between the Proposed Settlement and the Voluntary Program. The Court directed the Settling Parties to make it "very clear" in the email notice how the Voluntary Program

related to the Proposed Settlement. (See June 26 Hearing Tr. at 19:19–20:4.)
Except in limited circumstances, making a claim under the Proposed Settlement
does not offer benefits *in addition* to the Voluntary Program; making a claim *ends*
participation in the Voluntary Program. (See section VII.) The *Krauth/Hasper*
Plaintiffs propose the following language to fix these two problems:

> Important! Please read the following legal notice concerning your [YEAR]
> Hyundai [MODEL]. You may also receive this notice by U.S. Mail.
> This notice is not related to Hyundai's Lifetime Reimbursement Program.
> This notice relates to a class action settlement that offers you different
> compensation than the Lifetime Reimbursement Program. **This settlement
> affects your legal rights whether you take action or don't act**.

This wording allays any potential confusion about documents received in the mail
and properly characterizes the interplay between the Proposed Settlement and the
Voluntary Program.

Finally, the Settling Parties should clarify that the Email Notice will be in
HTML format and not attached as a Portable Document Format ("PDF"). Savvy
internet users will not open attachments from unknown senders due to the risk that
such attachments may contain malware like a computer virus.

## B. The Revised Long-Form Notice is Confusing.

The Court provided a short list of the problems with the Long-Form Notice,
and noted that there were many others. (*See* Tentative at 22, n.26 [discussing a
subset of the problems with the Long-Form Notice]; June 26 Hearing Tr. at 20:7–
22:9 (same).) Settling Parties made some improvements to the Long-Form Notice:
it no longer purports to be an official court document since the case caption has
been removed, and the Notice prominently displays at the bottom of each page
information sources where Class Members can obtain answers to questions. (*See*
Dkt. No. 271,  Ex. C.) However, it otherwise appears that the Settling Parties

1    misunderstood the Court's call for clarity, and instead made the Long-Form Notice

2    more complicated.[4]

3         The most problematic section of the Long-Form Notice remains the one

4    identified by the Court: the table entitled "Your Legal Rights and Options in This

5    Settlement." (*See* Dkt. No. 271,  Ex. C.) Page one of the Long-Form Notice

6    provides a summary of the notice in the form of a table, and this summary should

7    be succinct. *See, e.g.*, Federal Judicial Center, *Judges' Class Action Notice and*

8    *Claims Process Checklist and Plain Language Guide* at 8 (3d ed. 2010) ("Page one

9    is an overall summary of the notice. The objective is to use the fewest words.").

10   The table on page one of the Long-Form Notice fails to explain Class Members'

11   options in the fewest words, and exemplifies the draftsmanship that concerned the

12   Court. (*See* Tentative at 22 n.26 (characterizing the quality of the Settling Parties'

13   notices and forms as "merely drafts" and noting that there needs to be "substantial

14   reworking").) The Settling Parties must substantially revise the Notice before it can

15   be approved. In the table below, the *Krauth/Hasper* Plaintiffs have corrected the

16   defects (the table assumes the Court permits the use of a claim form); the Settling

17   Parties should use this simple, plain-language format as a template for revising the

18   entire Long-Form Notice. The *Krauth/Hasper* Plaintiffs' proposal:

19   ///

20   ///

21   ///

22   ///

23   ///

24

25   [4] A rough estimate of the fees that the parties intend to request should be in the
     Long-Form Notice. Moreover, it is the *Krauth/Hasper* Plaintiffs' position that no

26   fee mediations should occur until after the Court has granted preliminary approval.

27   To the extent the Settling Parties have any incentive to support further
     improvements for the benefit of the class, negotiating their fees at the same time

28   would undermine that incentive.

*Krauth/Hasper* **Plaintiffs' Proposed Table for the Long-Form Notice**

| YOUR LEGAL RIGHTS AND OPTIONS<br>YOU CAN ONLY CHOOSE ONE OF THESE OPTIONS | | DEADLINES |
|---|---|---|
| **SUBMIT A CLAIM FORM** | • You get a one-time, up-front payment. This payment reflects factors like your past and future fuel costs. | [9 months after deadline for mailing class notice] |
| **ENROLL/REMAIN IN LIFETIME REIMBURSEMENT PROGRAM** | • You receive periodic mileage-based payments for your additional fuel costs for as long as you own your Hyundai.<br><br>• You don't need to do anything if you've already enrolled and wish to remain in the program. You must act if you haven't enrolled in the program and wish to do so. | [9 months after deadline for mailing class notice] |
| **EXCLUDE YOURSELF** | • You **cannot** choose to get a one-time, up-front payment.<br><br>• You **can** still choose to enroll/remain in the Lifetime Reimbursement Program.<br><br>• This is the only option that allows you to bring a lawsuit against Hyundai Motors America, Kia Motors America, and/or their respective affiliates, in connection with the legal claims in this case. | [9 months after deadline for mailing class notice] |
| **DO NOTHING** | • Give up your legal right to bring a lawsuit against Hyundai Motors America, Kia Motors America, and/or their respective affiliates, in connection with the legal claims in this case.<br><br>• Get no one-time, up-front payment.<br><br>• Get no payments under Lifetime Reimbursement Program **unless** you enrolled in the program before [9 months after deadline for mailing class notice]. | [9 months after deadline for mailing class notice] |

## IV.   THE CLAIM FORMS ARE INCOMPLETE, ONEROUS AND CONFUSING.

### A. The Online Claim Form Provided by Settling Parties is Incomplete.

As discussed above, a claim form should not be required for Class Members who want to receive the lump-sum payment. However, if the Court does require a claim form for all compensation options, the online claim form is insufficient because it is incomplete. Before the proposed Settlement can be approved, the website must be tested to ensure that it adequately handles Class Member claims.

On July 13, 2014, Liaison Counsel Eric Gibbs circulated a link to the online claim form website to counsel for the *Krauth/Hasper* Plaintiffs. (Antonini Decl. at ¶4.) Mr. Gibbs provided the *Krauth/Hasper* Plaintiffs with information for five hypothetical Hyundai Class Members to test the online claims website. (*Id.*) However, the hypothetical Class Members selected by the Settling Parties only represented a subset of consumers in the Class: those who have obtained payments through the Voluntary Program. (*Id.*) On July 15, 2014, counsel for the *Krauth/Hasper* Plaintiffs requested examples of how an online claim would look for a Class Member who has not participated in the Voluntary Program. (*Id.*) On July 17, Mr. Gibbs forwarded a second set of hypothetical Hyundai Class Members, two of which have not participated in the Voluntary Program. (*Id.*)

The test examples provided by the Settling Parties omit crucial information. For example, one of the hypothetical consumers is a former owner of a 2012 Hyundai Tucson who participated in Hyundai's Voluntary Program. After inputting his VIN number and "Unique ID," this consumer is required to indicate that he is a former owner, provide the mileage of his vehicle at the time he sold the vehicle, and provide the date he sold the vehicle – information that Hyundai has access to; former owners might only be able to find that data with difficulty. The form should be prepopulated with the information:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16    Additionally, the online claim form informs this hypothetical Class Member

17 that he has received $153.26 under the Voluntary Program, but fails to indicate

18 how this $153.26 amount affects any compensation or benefits he could receive

19 under the Proposed Settlement:

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26

27

28

1
2
3
4
5
6
7
8
9
10
11

> As of July 15, 2014, our records indicate you have received $153.26 under the current Lifetime Reimbursement Program
>
> You will receive one final payment based on the mileage when you bought and sold the vehicle, less any payments received in the current Lifetime Reimbursement Program.
>
> **I hereby authorize the filing and execution of this claim. I declare under penalty of perjury that the following information is true and correct.**
>
> ☐ **Agreed**
>
> \* **Required Field**
>
> **Your payment will be processed and mailed no earlier than the final court effective date, of [TBD].**
>
> 

12
13
14
15
16
17
18

Neither during nor after the submission process is this Class Member informed about how much of a payment he is eligible to receive. He is also never given the option to choose the Dealer Service coupon or the New Car coupon. According to the Settling Parties, *giving former owners that choice is the only reason for requiring former owners to submit a claim in the first place*. Instead, he is simply told that he will get "one final payment."

19
20
21

Worse, this former owner – who by definition has already sold his vehicle – is instructed to visit his local Hyundai Dealership to "have [his] mileage verified in order to receive [his] Lifetime Reimbursement Debit Card."

22
23
24
25
26
27
28

18

## Confirmation Page

Unique ID: 353048094

You have successfully submitted the below information:

- First Name: **JOHN**
- Last Name: **ROJO6**
- Current Address: **932 Fake St**
- Current Apt/Suite:
- Current City: **Fake City**
- Current State: **CA**
- Current Zip: **92344**
- Email Address:
- Telephone #: **9095679438**
- Full VIN: **KM8JUCAC8CU336006**
- MY and Model: **2012 Tucson**
- Transmission and Engine: **AT, 2.4L**
- Category Type: **Former Original Owner**
- Sold Mileage: **219,337**
- Sold Date: **11/19/2012**
- Payment Selection: **Lifetime**
- Payment Type: **Debit Card**

**You must visit your local Hyundai Dealership to have your mileage verified in order to receive your Lifetime Reimbursement Debit Card.**



Print

Hours before the filing of this brief, Mr. Gibbs forwarded to counsel for the *Krauth/Hasper* Plaintiffs an email correspondence between Settling Plaintiffs' counsel and Defense counsel discussing issues with the online claim form website. (Antonini Decl. at ¶5; the email chain is attached as Ex. B to the Antonini Decl.) In this email chain, counsel for Defendants state that certain issues with the website had been fixed, and that one "glitch will take at least a couple more days to fix." (*Ibid.*)

Additionally, there are links to the Long-Form Notice, paper Claim Form and an FAQ sheet on the left margin of the claim form website, but the links are inactive.

The online claim form website is clearly unfinished. Counsel for the *Krauth/Hasper* Plaintiffs cannot confirm at the time of the filing of this brief that the problems with the website have been solved.

## B. The Paper Claim Form Still Contains Unnecessary Steps and Fails to Provide Clear and Prominent Information.

As discussed above, a claim form should not be required for Class Members who simply want the lump-sum payment. However, if the Court does require a claim form for all compensation options, the paper Claim Form is insufficient because it contains unnecessary steps and fails to provide clear and prominent information.

A portion of the class likely fall within the category of "luddites," as the Court quipped, and may not be sophisticated computer users. The Settling Parties have made some improvements to the paper Claim Form: it no longer requires the Class Members to write their VIN and "Unique ID" on each page; the meaning of the phrase "maximum cash value of Your Lump Sum Payment" has been somewhat clarified; and the Claim Form now includes subheadings like "Lump Sum Payment" and "Lifetime Reimbursement Program." (*See* Dkt. No. 271-4.) However, the form is still needlessly complicated and prolix. The following changes should be made:

- Class Members should not be required to list their name on every page of the paper Claim Form.

- Class Members requesting paper Claim Forms over the telephone should receive the document pre-populated with their personal information such as name, address and VIN number, reducing the number of steps and time the Class Member must take in order to complete the form.

- Overall, the Claim Form should be revised to reduce its complexity. In Step 3, for example, the explanation of the "Lump Sum Payment" option will likely confuse Class Members even though it technically includes all the relevant information. It is unclear whether the "maximum cash value" is different from the "compensation amount in Schedule A." Opaque language

and terminology like that should be simplified throughout the form in order to make the Claim Form easier to understand for Class Members.

## V. SETTLING PLAINTIFFS FAIL TO PROVIDE THE METHODOLOGY FOR DETERMINING THE LUMP-SUM PAYMENTS

The Court asked the Settling Parties to explain "the methodology for determining the lump-sum payment amounts for *each Class Vehicle*." (Tentative Ruling at 18, emphasis added.) As the Court noted, the "motion for preliminary approval does not address how the settlement figures were calculated." (*Id.* at 15, fn. 17.) The Court stated, "I think I understood sort of how you got there, but I am not sure if I have all the information necessary to necessarily agree that that is what it is." (June 26 Hearing Tr. at 9:9-12.)

### A. Settling Plaintiffs Fail to Explain the Methodology for Determining Lump-Sum Amounts for Current, Original Owners.

The Settling Plaintiffs fail to present the methodology for "determining the lump-sum payment amounts for each Class Vehicle" as requested by the Court. Instead, they set forth an incoherent and incomplete explanation as to how they arrived at the lump-sum amount for a single hypothetical Class Member: a current, original owner of a 2012 Hyundai Tucson (4WD automatic; 2.4 liter engine) – one of 76 Class Vehicles covered by the Proposed Settlement. (See Supp. Br. at 13:9 – 14:14; Dkt. No. 185-2, Ex. A.)

Settling Parties claim that the lump-sum payment amounts in the charts for current, original owners (*see* Dkt. No. 185-2 at 40, 42) are based primarily on additional fuel costs incurred as a result of Defendants' mileage misrepresentations. (*See* Dkt. No. 185-1 at 4:10-13 ["The Settlement requires Defendants to … provide lump-sum payments to Class members to compensate them for their extra fuel costs"].) However, when one calculates additional fuel costs using the formula for additional fuel costs under the Voluntary Program (ignoring the 15% "inconvenience fee"), there are discrepancies between the lump-

sum amounts and the products of the calculations. Set forth below are two examples illustrating how the lump-sum payment amounts set forth by the Settling Parties do not reflect additional fuel costs.

**Example #1: Current, Original Owner of 2012 Hyundai Elantra (automatic transmission; 1.8 liter engine).** The lump-sum payment for this Class Member is $220, according to lump-sum payment chart attached as Exhibit B to the Proposed Settlement.[5] (Dkt. No. 185-2 at 40.) However, our calculation shows that this Class Member should receive $268 for additional fuel costs. Settling Plaintiffs fail to explain this $48 disparity, or present a methodology that could explain this $48 disparity. The calculation is as follows:

- An "average driver" who drives 15,000 miles per year for 4.75 years will drive 71,250 miles in that time.
- Prior to November 2, 2012, the combined city/highway MPG for the 2012 Hyundai Elantra was 33 MPG. After November 2, 2012, the combined city/highway MPG for the 2012 Hyundai Elantra was 32 MPG. The difference is 1 MPG.
- Over the 4.75 years, the driver paid for 67 more gallons in fuel as a result of Hyundai's misrepresentation. ((71,250 miles / 33 MPG) - (71,250 miles / 32 MPG) = 67 gallons.)
- 67 gallons at $4.00 per gallon = $268

**Example #2: Current, Original Owner of 2013 Kia Sorento 2WD (A-6, 2.4L, GDI).** The lump-sum payment for this Class Member is $235, according to lump-sum payment chart attached as Exhibit C to the Proposed Settlement. (Dkt. No. 185-2 at 42.) However, our calculation shows that this Class Member should

---

[5] The lump-sum chart lists the payment amount for the 2012 Hyundai Elantra as $320. (Dkt. No. 185-2 at 40.) Since the 2012 Hyundai Elantra is one of the "4 x 40" vehicles and the Settling Parties state that the additional $100 for the "4 x 40" payment is folded into the lump-sum amount, (*see, e.g.,* Dkt. No. 250 at 8:6-8), the amount that actually represents the additional fuel costs is $220.

receive $475 in additional fuel costs. Settling Plaintiffs fail to explain this $240 disparity, or present a methodology that could explain this $240 disparity. The calculation is as follows:

- An "average driver" who drives 15,000 miles per year for 4.75 years will drive 71,250 miles in that time.
- Prior to November 2, 2012, the combined city/highway MPG for the 2013 Kia Sorrento 2WD was 25 MPG. After November 2, 2012, the combined city/highway MPG for the for the 2013 Kia Sorrento 2WD was 24 MPG. The difference is 1 MPG.
- Over the 4.75 years, the driver paid for 118.75 more gallons in fuel as a result of Kia's misrepresentation. ((71,250 miles / 25 MPG) - (71,250 miles / 24 MPG) = 118.75 gallons.)
- 118.75 gallons at $4.00 per gallon = $475

As these two examples illustrate, when calculating the additional fuel costs for current, original owners who drive 15,000 over a period of 4.75 years (the Settling Parties' variables for what constitutes an "average" driver), there are discrepancies in the results reported by the Settling Plaintiffs' methodology compared to the lump-sum amounts in the chart. The Settling Parties have not sufficiently provided the methodology requested by the Court and, under our calculations, Class Members appear to be shortchanged by the Proposed Settlement.

### B. Settling Plaintiffs Fail to Explain the Methodology for Determining Lump-Sum Amounts for Current, Non-Original Owners.

Furthermore, the Settling Plaintiffs have not explained the methodology for determining the lump-sum amounts available to current, non-original owners. Under the Proposed Settlement, "For a non-original owner, [the lump-sum] amount would be one-half of the original owner amount." (Supp. Br. at 14:4-5; see Proposed Settlement, Dkt. No. 185-2, § 3.1.2.)  Settling Plaintiffs have provided no

justification for this arbitrary amount. Also, it is unclear what percentage of Class Members are current, non-original owners. More information should be provided.

### C. Settling Plaintiffs Fail to Explain the Methodology for Determining the "4 x 40" Compensation.

The Settling Plaintiffs also have not explained the methodology for determining the values of the "4 x 40" payments to current, original owners and lessees and former owners and lessees.

**Current, original owners and lessees.** Under the Proposed Settlement, current, original owners of "4 x 40" vehicles are entitled to receive $100 and current lessees are entitled to receive $50. (*See* Proposed Settlement, § 3.1.8; Dkt. No. 250 at 8:7-8.) The Settling Parties have provided no justification or explanation for these amounts; they appear to be arbitrary.

**Former owners.** The Proposed Settlement defines a  "Former Owner" as follows: "a Person who (i) purchased a Class Vehicle, on or before November 2, 2012, and (ii) who does not own such Class Vehicle as of the date of this Settlement Agreement [December 23, 2013]; and (iii) who was not a Fleet Owner of such Class Vehicle." (Proposed Settlement, § 1.16.)  Under the Proposed Settlement, former "4 x 40" owners who sold their vehicles between February 12, 2013 and December 23, 2013 are entitled to the additional "4 x 40" compensation. The Settling Parties have failed to explain why former owners who purchased their vehicles prior to November 2, 2012 and sold their vehicle *prior to* February 12, 2013 are not entitled to the additional "4 x 40" payment. The Settling Parties must explain the reason for this arbitrary time limitation.

**Former lessees.** It is unclear why former owners are entitled to the additional "4 x 40" compensation, while former lessees are not entitled to it. (*See* Dkt. No. 206-1.) The Settling Parties must explain the reason for excluding former lessees from the "4 x 40" compensation.

---

## VI.  SETTLING PLAINTIFFS FAIL TO PROVIDE THE TOTAL VALUE OF THE PLAINTIFFS' CASE

In addition to requesting the methodology for the lump-sum amounts, the Court requested that the Settling Parties provide "an estimate as to the total value, and when I say total value, I am talking about total, if they want everything, value of the plaintiff's case." (June 26 Hearing Tr. at 9:22-25.)  The Court explained:

> I want to know what the total, you know, unencumbered, unreduced, what do you call it, that the plaintiffs' claims are worth.
>
> ...
>
> For example, some people may say, well, you know, there was a question as to, you know, if plaintiffs were successful in establishing that because of these misrepresentations with respect to fuel economy, the value of their cars are less. Well, not to say that [it] in fact could be established, but assuming that it could be established, what would be the figure for that. …

(*Id*. at 10:6-17.)

The Settling Plaintiffs again fail to present sufficient information in response to the Court's request. Indeed, they reference "expert testimony" on compensation issues, but then say "the formal analysis has not yet been completed." (Supp. Br. at 16:8-9.) Settling Plaintiffs fail to provide any support for their estimates.

**Damages claim reflecting reimbursement of fuel costs.** In valuing the damages claim reflecting reimbursement of fuel costs, Settling Plaintiffs state:

> "For a damages claim reflecting reimbursement of fuel costs, on average, each driver would be entitled to damages at the rate of $87 per year since purchase to the date of trial, and $87 per year for every year thereafter if a jury concludes he would have owned the vehicle and driven an average amount. If he proved he owned or would have owned the car for a total of 4.75 years, he would receive compensatory damages of $370, discounted to present value, minus fees and expenses."

(Supp. Br. at 16:1-5.)  First, this example uses an average of $87 per year in additional fuel costs based on the additional fuel costs that a hypothetical 2012 Hyundai Tucson owner would have incurred as a result of Defendants' mileage

misrepresentations, without explaining how this $87 value is representative of all Class Members or the entire population of 76 Class Vehicles. Second, the Settling Plaintiffs designated 4.75 years ownership as an average, without providing any support for this number. This value conflicts with the Defendants' own advertised ten year warranty, and the Settling Plaintiffs' initial estimate of ten years, and data reported by other sources.[6] Thus, there is no support for Settling Plaintiffs' estimation of the value of the additional fuel cost damages.

**Damages for a claim that purchase prices were inflated.** The Settling Plaintiffs state that such damages "would depend upon expert testimony regarding the market impact of MPG discrepancies. The formal analysis has not yet been completed, but plaintiffs' experts estimated that each MPG could be assigned a dollar value between $100 and $500." (Supp. Br. at 16:7-10.) Settling Plaintiffs cite to no expert declaration or any source of information to support these numbers.

**Punitive damages.** The Settling Plaintiffs argue that a punitive damage claim "would be hotly contested, as settling plaintiffs previously explained." (Supp. Br. at 17:3-4.) But Settling Plaintiffs have not explained how punitive damage claims would be hotly contested. Then they suggest that "the scope of punitive damages on an economic loss-only case with a full recovery could be limited to a one-to-one ratio," citing the Supreme Court's analysis of constitutional limitations on punitive damage awards, set forth in *State Farm Mut. Auto. Ins. Co.*

---

[6] See *America's Best Warranty*, Hyundai Motor America, http://www.hyundaiusa.com/assurance/america-best-warranty.aspx (last visited Jul. 18, 2014); *Warranty*, Kia Motors America, http://www.kia.com/us/en/content/why-kia/quality/warranty (last visited Jul. 18, 2014); Complaint at 5, *Brady v. Hyundai Motor America*, Dkt. No. 1 (Nov. 6, 2014); Jerry Hirsch, *Americans Keep Their New Cars for Almost Six Years*, L.A. Times, Feb. 21, 2012, *available at* http://articles.latimes.com/2012/feb/21/business/la-fi-mo-holding-cars-longer-20120221.

---

1   *v. Campbell,* 538 U.S. 408, 425 (2003). (Supp. Br. at 17:4-5.) In fact, that decision

2   authorizes a maximum ratio of nine-to-one for most cases. *Id.*

3       The limited discovery produced in this litigation to date[7] establishes that the

4   Defendants were aware that there were discrepancies in the fuel economy testing

5   but failed to take action. Contested or not, Settling Parties offer no reason why,

6   depending on the evidence adduced at a trial, significant punitive damages would

7   not be appropriate.

8       **Post-purchase diminution in value.** Settling Plaintiffs claim that the

9   diminution in value of the Class Vehicles as a result of the mileage misstatement

10  "is most easily (and directly) measured by the net present value of the future

11  stream of additional fuel costs. Thus, reimbursement for the extra expense

12  redresses any diminution of the vehicles." (Supp. Br. at 17:18-24.) These

13  statements are unsubstantiated – Settling Plaintiffs offer no other authority to

14  support their argument that the diminished value of the vehicle is merely equal to

15  the higher fuel costs arising from the Defendants' misrepresentations.

16      **A more realistic estimate of the maximum potential recovery** in this

17  proceeding is far greater than the Settling Plaintiffs now urge. It would be reached

18  by first calculating the additional fuel costs for Class Members, assuming that

19  Class Members kept their cars for 71.4 months – the average length of new car

20

21  ───────────────

22  [7] On March 3, 2013, the Court asked the Settling Plaintiffs to provide the Non-Settling Plaintiffs with all the discovery they had obtained from Defendants.

23  (March 3, 2013 Hearing Tr. at 24:13-20). Defendants subsequently agreed to comply. (April 11, 2013 Hearing Tr. at 7:1-5.) It is abundantly clear from the

24  resulting production, which consisted mostly of advertisements and manuals, that as of that date, the Settling Plaintiffs had *not* conducted sufficient discovery to

25  support a settlement. The only substantive discovery in this case was the limited confirmatory discovery subsequently ordered by the Court. And while the Settling

26  Parties have repeatedly pointed to discovery produced in *Espinosa*, that discovery

27  is of limited utility because it occurred prior to the November 2, 2012 and did not

28  involve the incorrect testing or facts pertinent to the EPA restatement.

ownership[8] – rather than the 4.7 years upon which the Proposed Settlement is based. This is highly conservative: the Defendants' advertising highlights that their vehicles come with a ten-year warranty, suggesting that purchasers are interested in retaining their vehicles for a longer period.[9] Moreover, the Brady plaintiffs' original complaint calculated the economic loss by assuming a ten-year useful life. (Complaint at 5, *Brady v. Hyundai Motor America*, Dkt. No. 1 (Nov. 6, 2014).) Using the Defendants' methodology for compensation under the Voluntary Program,[10] assuming 71.4 months length of ownership, minus the payment for "inconvenience," the economic loss to the class would total $600,650,588.[11] Using an extremely modest premium of, say, 5% to compensate Class Members for vehicle depreciation caused by the fuel economy misrepresentations,[12] Class Members compensatory damages would equal $630,683,117. Assuming a standard three-to-one ratio for punitive damages, the class's claims could be valued at over *$2.5 billion*.

**The estimated value of the Proposed Settlement is Uncertain.** The total amount of compensation delivered by the Proposed Settlement matters greatly to the class, and to this Court's review.

---

[8] *See* Hirsch, fn. 6, supra.
[9] *See* Hyundai and Kia, fn. 6, supra.
[10] The methodology for compensation under the Voluntary Reimbursement Program can be found at *FAQ*, Hyundai MPG Information, http://hyundaimpginfo.com/faq (last visited Jul. 18, 2014). The cost of fuel is calculated using a 52-week average fuel price for the area in which the owner lives, based on U.S. Energy Information Association data. This analysis uses the U.S. Energy Information Association's average California price per gallon in 2013, which is $3.93/gallon. (*See* http://www.eia.gov/petroleum/gasdiesel/.)
[11] The *Brady* Complaint originally estimated the fuel cost to the class as $788,461,537.20. (Complaint at 5, *Brady v. Hyundai Motor America*, Dkt. No. 1 (Nov. 6, 2014).)
[12] Spreading this 5% premium – or $30 million – across the approximately 900,000 affected vehicle amounts to a mere $33 of depreciation per vehicle.

According to the Settling Parties, the Proposed Settlement is valued at *$392 million* "before deduction for compensation already paid through the lifetime reimbursement program." (Supp. Br. at 15:2-3.) Under the Proposed Settlement, Voluntary Program payments are deducted, *dollar for dollar*, from the lump sum payment each class member is entitled to. (*See* Proposed Settlement, §§ 3 and 5.) The Settling Parties have failed to provide the Court with the amount already paid through the Voluntary Program. Assume for the sake of example that 50% of the $392 million has been paid out through the Voluntary Program. The total compensation theoretically provided to Class Members by this Proposed Settlement net of amounts paid under the Voluntary Program would then be $196 million.

However, as a practical matter, that figure may be significantly overstated.  If a claim form is required, a generous claims rate would be around 10%. *See Walter v. Hughes Communs., Inc.* 2011 WL 2650711, at *13 (collecting cases where claims rates vary between 0.1% and 9.7%). In that event, the actual compensation to the class would be approximately $19.6 million.[13] The Court should require Settling Plaintiffs to revise their analysis of the total value of the plaintiffs' claims to provide actual support for the numerical values and statements throughout their analysis.

## VII.  THE PROPOSED SETTLEMENT SHOULD BE ANALYZED INDEPENDENTLY OF THE COMPENSATION PROVIDED BY THE VOLUNTARY PROGRAM.

The Settling Parties conflate the Voluntary Program with the compensation benefits provided by the Proposed Settlement. Settling Plaintiffs state, "this action was about expanding the options available to the consumer" (Dkt. 271 at 13:9, emphasis added); they describe the Proposed Settlement as "a complimentary

---

[13] The actual compensation to Class Members will depend on the composition of the Class's affected vehicles.

settlement" (June 26 Hearing Tr. at 11:16, emphasis added) and "an overlay with an existing device that was designed to give a hundred percent of excess fuel cost" (Id. at 46:5-7, emphasis added); they claim that the Proposed Settlement "enlarges class members' access to meaningful compensation" (Supp. Br. at 14:20, emphasis added); they state that "[w]hat we are offering is, you know, additional capture, in effect, setting a new compensation floor" (June 26 Hearing Tr. at 9:18-20, emphasis added); they "also believe that the proposed settlement has increased and will continue to increase participation in the Voluntary Program" (Supp. Br. at 14:21-22, emphasis added); and note that the Proposed Settlement "includes economic choice which promotes increased benefits" (Supp. Br. at 14:17).

The Settling Parties have not offered any support for their argument that the Voluntary Program should be considered a benefit of the Proposed Settlement.

The Proposed Settlement provides that Class Members can file a claim form to register for the Voluntary Program. (*See, e.g.,* Dkt. No. 271-3 at 1.) Class Members who registered for the Voluntary Program prior to the Proposed Settlement are also told that if they do nothing they will remain in the Voluntary Program. (*See, e.g.,* Dkt. No. 271-3 at 1 ["If you have already enrolled in the Lifetime Reimbursement Program, you do not need to take any further action to remain enrolled"].) And Class Members can opt out of the settlement – without releasing their rights -- and still "remain in or register for the Voluntary Program." (See Dkt. No 271-3 at 2 ["If you exclude yourself, you will be able to remain in or register for the Lifetime Reimbursement Program"].) It is unclear why the Voluntary Program should be considered a part of the Proposed Settlement when Class Members can participate in it without releasing their rights under the Proposed Settlement.

**VIII.   A PROCESS FOR RESOLUTION OF POST-NOVEMBER 2, 2012
CLAIMS SHOULD BE INCLUDED AS PART OF THE
SETTLEMENT**

One of the *Krauth/Hasper* Plaintiffs, Laura Gill of Texas, purchased her

vehicle on November 3, 2012 based on inaccurate Monroney Stickers that had not

been replaced by the dealer. While recognizing the individualized issues involved

in the resolution of post-November 2, 2012 claims, these injured consumers are

entitled to redress and should not be required to file individual lawsuits to get the

compensation to which they are entitled. Hyundai and Kia must propose a process

by which individuals who purchased their vehicles after November 2, 2012 based

on inaccurate Monroney Stickers may resolve their claims.

**IX.   OUTSTANDING DISCOVERY ISSUES**

On November 21, 2013, the parties submitted a Joint Discovery Stipulation

identifying various discovery issues for the Court to resolve. (Dkt. No. 154.) The

*Krauth/Hasper* Plaintiffs challenged Hyundai's assertions of privilege in its

privilege log ("issue number four") and moved to compel documents in response to

document requests, including a request for "Documents and communications

related to Consumer Watchdog, including lawyers employed by or counsel to

Consumer Watchdog, except for documents filed in the above-captioned litigation

OR in *Bird v. Hyundai Motor America*" ("issue number two"). (See Joint

Discovery Stipulation, Dkt. No. 154, at 13:1 – 33:7 and 43:1 – 47:25; Krauth and

Hasper Plaintiffs' Supplemental Discovery Memorandum, Dkt. No. 157-3.)

In the Court's January 10, 2014 Civil Minutes, the Court "order[ed] a further

submission as to issue number two by the Defendants on or before January 15,

2014. The Court will issue its ruling as to issue number four by January 17, 2014."

(Civil Minutes, Dkt. No. 201.) In response, Defendant HMA submitted additional

documents to the court for in camera review. (Dkt. Nos. 206, 207, 209.)  The Court

never ruled on issue number two.  Also, the Court never ruled on issue number

---

four.

The *Krauth/Hasper* Plaintiffs request that the Court rule on these two outstanding discovery issues.

## X.  <u>CONCLUSION</u>

The foregoing defects in the notice and claims process, the lack of information on the methodology for calculating the lump-sum payment amounts, and the unclear valuation of the total value of plaintiffs' claims, in conjunction with the arguments set forth in the *Krauth/Hasper* Plaintiffs' Opposition, warrant additional changes to the proposal before it can be granted preliminary approval.

Respectfully submitted,

Dated:  July 18, 2014               **CONSUMER WATCHDOG**

By:  */s/ Laura Antonini*
                                          LAURA ANTONINI
                                          *Attorneys for Krauth and Hasper, et al.*
                                          *Plaintiffs*