# **EXHIBIT B**

1 | Harvey Rosenfield (SBN 123082)
harvey@consumerwatchdog.org
2 | Todd M. Foreman (SBN 229536)
todd@consumerwatchdog.org
3 | Jerry Flanagan (SBN 271272)
jerry@consumerwatchdog.org
4 | CONSUMER WATCHDOG
1750 Ocean Park Blvd., Suite 200
5 | Santa Monica, CA 90405
Telephone: (310) 392-0522
6 | Fax: (310) 392-8874

7 | *Attorneys for Intervenor R.C. Heublein*

8

9

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

| | |
|---|---|
| BENJAMIN FOGEL, on behalf of himself and the class, | Case No. BC300142 |
| Plaintiff, | ASSIGNED TO: Hon. William F. Highberger |
| vs. | **VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE WILLIAM F. HIGHBERGER [C.C.P. § 170.3(C)] AND DECLARATION OF JERRY FLANAGAN IN SUPPORT THEREOF** |
| FARMERS GROUP, INC., FIRE UNDERWRITERS ASSOCIATION; TRUCK; UNDERWRITERS ASSOCIATION; ZURICH FINANCIAL SERVICES and Does 2 through 100, inclusive, | |
| Defendants. | Action Filed: August 1, 2003 Discovery Cut-Off: None Trial Date: None |
| R.C. Heublein, | |
| Intervenor. | |

1  TO THE COURT AND ALL PARTIES TO THIS ACTION: Intervenor R.C. Heublein hereby

2  objects pursuant to Code of Civil Procedure 170.3, subdivision (c) to Judge William F. Highberger

3  presiding in any further proceedings concerning this action.  Intervenor Heublein's objection is

4  based upon the grounds and facts set forth in the attached sworn Declaration of Jerry Flanagan.

5
6  DATE: June 24, 2011                              Respectfully Submitted,

7                                                   Harvey Rosenfield
                                                    Todd M. Foreman
8                                                   Jerry Flanagan
                                                    CONSUMER WATCHDOG
9
10                                         BY:
11                                                   Jerry Flanagan
                                                     Attorneys for Intervenor
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

### DECLARATION OF JERRY FLANAGAN

I, Jerry Flanagan, declare:

1.      I am over eighteen years of age and Staff Attorney for Consumer Watchdog, counsel for Intervenor R.C. Heublein ("Intervenor" and "Intervenor Heublein") in this matter. This declaration is submitted in support of Intervenor's Verified Statement of Disqualification of Judge William F. Highberger.  Except as otherwise stated, I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would testify competently to the facts stated herein.

2.      Established in 1985, Consumer Watchdog is a nationally recognized, non-profit and non-partisan public benefit corporation.  Its founder, Harvey Rosenfield, authored Proposition 103, the insurance reform measure enacted by California voters on November 8, 1988, which has saved California motorists $61.8 billion on their insurance premiums according to a 2008 Consumer Federation of America report.  (J. Robert Hunter, Consumer Federation of America, State Automobile Insurance Regulation: A National Quality Assessment and In-Depth Review of California's Uniquely Effective Regulatory System, April 2008, p. 24; see also Success Story, *Saving Californians $62 Billion*, Consumer Watchdog < http://www.consumerwatchdog.org/success-story/saving-california-drivers-62-billion> [as of June 24, 2011].)

3.      A core focus of Consumer Watchdog's attorneys' litigation work is the representation of the interests of insurance consumers and policyholders in matters before the Legislature, the courts, and at the California Department of Insurance.  Consumer Watchdog's attorneys have participated in every major lawsuit to enforce Proposition 103, including, *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, *The Foundation for Taxpayer and Consumer Rights v. Garamendi*

(2005) 132 Cal.App.4th 1354, and *Association of California Insurance Companies v. Poizner* (2009) 180 Cal.App.4th 1029, among others.  Consumer Watchdog has filed amicus briefs in numerous civil cases in which the proper interpretation of Proposition 103's provisions have been at issue, as it did in this matter before the Court of Appeal.  (*Fogel v. Farmers Group, Inc.* (2008) 160 Cal.App.4th 1403.)  Additionally, through civil litigation and administrative proceedings, Consumer Watchdog and its attorneys have challenged violations of Proposition 103 by numerous insurance companies, including Farmers, recovering tens of millions of dollars in refunds for policyholders.  (See, e.g., *In the Matter of the Rates, Rating Plans, or Rating Systems of Farmers Insurance Exchange; Fire Insurance Exchange; Mid-Century Insurance Company*, File No. NC03029253 (Cal. Ins. Comm'r, Aug. 8, 2007).)  Consumer Watchdog has also invoked the administrative process to challenge excessive insurance rates, blocking approximately $2.04 billion in unjustified rate increases between 2003 and 2010, as well as illegal practices. (CA Prop. 103 (2003-2010), *Consumer Watchdog Rate Challenge Savings*, Consumer Watchdog <http://www.consumerwatchdog.org/sites/default/files/images/inssavings_0.gif> [as of June 24, 2011].)

4.     Over the course of twenty-five years, Consumer Watchdog's attorneys have also brought numerous class actions, civil lawsuits and writ petitions challenging anti-consumer practices by telecommunications companies, health care providers, health maintenance organizations and health insurers, and the failure of administrative agencies to properly enforce state laws. (See e.g., *Proposition 103 Enforcement Project v. Quackenbush* (S.F. County Super. Ct., No. 982646); *Ross et al v. Aetna, Inc*. et al (San Diego Super. Ct., No. GIC 738288); *The Steven Andrew Olsen Coalition For Patients' Rights v. Kaiser Foundation Health Plan, Inc., et al.* (S.F. County Super. Ct., No. 302263) and *Victa, et. al. v. Kaiser Foundation Health Plan* (S.F. County Super Ct., No. 301998); *Congress of Cal. Seniors, et al. v. Quackenbush* (L.A. County Super. Ct., No.  BC 203264); *Proposition 103 Enforcement Project v. Quackenbush* (LA. County Super. Ct., No.  BC 202 283); *Campbell v. Nextel Communication Inc.* (L.A.

2

Super. Ct., No. BC304559); *Coneff v. AT&T Corp.* (U.S. Dist. Ct. W. Dist. of WA, No. 06-0944 RSM); *Greiner v. DIRECTV* (Super. Ct. L.A. County, No. BC398431); *Faigman v. Cingular Wireless* (U.S. Dist. Ct. No. Dist. of CA, No. C06-04622 MHP); *Consumer Watchdog v. Dept. of Managed Health Care* (Super. Ct. L.A. County, No. BS121397); *Feller et al. v. Anthem Blue Cross of Calif. et al.* (Super. Ct. Ventura County, No. 56-2010).)

5.     In addition to its litigation, Consumer Watchdog engages in research and consumer advocacy in state legislatures and in Congress regarding insurance reform, health care and HMO accountability, deregulation of energy and electricity rates, oil prices, energy conservation, electronic and internet privacy, and campaign finance reform, among other issues. (<http://www.consumerwatchdog.org/> [as of June 24, 2011].)

6.     Judge William F. Highberger is disqualified to preside in any further proceeding in this action according to Code of Civil Procedure sections 170.1, subdivision (a)(6)(A)(iii) and 170.1, subdivision (a)(6)(B) : (i) on the ground that a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial; and (ii) due to his bias or prejudice toward the lawyers representing Intervenor R.C. Heublein apparently derived from an extrajudicial source and without any support in the record.  "Bias is defined as a mental predeliction or prejudice; a leaning of the mind; a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction." (*Pacific and Southwest Annual Conference v. Superior Court of San Diego Co.* (1978) 82 Cal.App.3rd 72, 76; internal citations omitted.)  Disparaging remarks directed at counsel, including those displaying bias, prejudice or impartiality are grounds for disqualification.  (See, e.g, *Evans v. Superior Court* (1930) 107 Cal.App. 372, 382-83; *Liteky v. U.S.* (1994) 510 U.S. 540, 555 [Justice Scalia, writing for the majority, found that a judge's disparaging remarks directed at counsel "*may* [permit a partiality or bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."].)

7.     The standard for disqualification is fundamentally an objective one. "It represents a

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable man would entertain doubts concerning the judge's impartiality, ***disqualification is mandated***." (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104, emphasis added.)

8.    On February 3, 2011, class member R.C. Heublein, through his Consumer Watchdog counsel, intervened in this class action under Code of Civil Procedure section 387, subdivision (a) in order to object to, and for the purpose of improving, the terms of the proposed settlement. As an intervenor, R.C. Heublein is vested "with all of the same procedural rights and remedies of the original parties," including the right to disqualify a judge. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 87; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶ 2:447, p. 2-74 ["If leave to intervene is granted, the intervenor becomes an independent party.  Thereafter, he or she has the same rights as any other party—e.g., to demand a jury trial; to object to the jurisdiction of the court, or to the sufficiency of the pleadings; or to disqualify a judge."].)

9.    The lawsuit in *Fogel v. Farmers Group, Inc.*, No.  BC300142, charges that Farmers Group, Inc. ("FGI") and its parent company Zurich Financial Services ("ZFS") (collectively, "Defendants") forced policyholders of the Fire Insurance Exchange, Truck Insurance Exchange, and Farmers Insurance Exchange (collectively, the "Exchanges") to pay too much for a management fee ("attorney in fact fee") that is contained within the auto, home, and business insurance premiums the Exchanges charge.

10.    The settlement was first announced by the plaintiffs' lawyers by way of news reports on October 8 and October 11, 2010. (Hsu & Lifsher, *Farmers Group Agrees to Pay $455 Million to Settle Policyholder Suit*, The Los Angeles Times (Oct. 8, 2010); McEvoy, *Some Cry Foul Over Farmers Settlement*, Los Angeles Daily Journal (Oct. 11, 2010).)

11.    A complete set of the settlement documents were not filed in the court until January 12, 2011.  The settlement documents were not publicly available from the court until

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

January 18, 2011.

12.     Under the terms of the proposed settlement, current and former policyholders must file a complicated and unnecessary claim form to receive a refund; any unclaimed settlement funds will be transferred to the Exchanges. Although the Exchanges are nominally "owned" by subscribers, and though FGI and the Exchanges are legally separate entities, at least two California Courts of Appeal have applied the "alter ego" doctrine to find that FGI controls the Exchanges, and that the Exchanges and FGI are not truly "separate." (*Tran v. Farmers* (2002) 104 Cal.App.4th 1201, 1219; *Troyk v. Farmers* (2009) 171 Cal.App.4th 1305, 1341.)

13.     Mr. Heublein sought intervention on February 3, 2011 and argued that the proposed settlement is no different from a claims-made reversionary settlement, which are out of favor in California because they provide inadequate benefit to the class.  Intervenor sought new provisions to be added to the settlement agreement specifically requiring the unclaimed settlement funds to be used to benefit current and former policyholders.  Intervenor presented these views in detail in Intervenor R.C. Heublein's Opposition to the Motion for Preliminary Approval of the Settlement, also filed with the court on February 3, and in oral argument at the preliminary approval hearing on March 2, 2011.

14.     Over Intervenor's objections, Judge Highberger granted preliminary approval of the class action settlement.

15.     Plaintiff's counsel completed very little formal discovery, and conducted no depositions of Defendants in the action. To determine whether the proposed settlement provided adequate benefit to class members, on April 13 and April 14, Intervenor Heublein propounded narrowly tailored discovery ("Intervenor's Discovery") to the Exchanges, FGI, and ZFS.  The focus of the discovery was to investigate Intervenor's concerns that money transferred to the Exchanges will be used to benefit the Defendants.  All publicly available information bolstered Intervenor's concern that Defendants will benefit from funds that are supposed to compensate the class.  As part of the discovery, Intervenor sought two depositions.

(Attached as Exhibit A are two true and correct copies of emails I received from counsel representing FGI and the Exchanges stating that they likely would each provide a single deponent.)

16.     At the hearing on the Defendants' and Exchanges' Motion for Protective Order on May 18, 2011 ("Hearing"), brought in response to Intervenor's Discovery requests, Judge William F. Highberger opened the hearing by expressing his bias and personal animosity toward Consumer Watchdog counsel for Intervenor Heublein. Attached as Exhibit B is a true and correct copy of the transcript of the May 18, 2011 hearing on the Motion for Protective Order.

a.     Judge Highberger demonstrated his bias and animosity by stating that Consumer Watchdog is a law firm masquerading as a non-profit organization, a serious accusation implicating state tax laws: "The case when it was originally brought years ago, of course, was brought by Mr. Fogel . . . not by plaintiff in intervention R.C. Heublein, and not by Mr. Harvey Rosenfeld [sic], or his law practice which is presented to the world as Consumer Watchdog." (Exhibit B, p. 2:10-17.)

17.     At the Hearing, Judge Highberger further displayed his lack of impartiality, bias, and prejudice by repeatedly disparaging the purported motivations of Consumer Watchdog attorneys, counsel for Intervenor Heublein, as well as of Mr. Heublein himself:

a.     "I'm suspicious of the real motives of the objector on [sic] plaintiff and intervention and/or counsel." (Exhibit B, p. 4:27-28.)

b.     "I think this is an opportunistic piece of objecting styled as being a plaintiff in intervention, so let me state all of my analysis before I give you a chance to respond because I am suspect of what's going on here." (Exhibit B, p. 5:1-5.)

c.     "I suspect this is a public relations exercise by Mr. Rosenfeld [sic] and Consumer Watchdog not for the benefit of the class, but just to perpetuate the public posture of Consumer Watchdog." (Exhibit B, p. 5:6-9.)

d.     ". . . I'm pretty skeptical about what you're about." (Exhibit B, p. 11: 26-27.)

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

1        e.      "It looks like your self-interest would be in it for public relations."

2  (Exhibit B, p. 12:4-5.)

3        18.      Judge Highberger expressed a predisposition against Consumer Watchdog

4  counsel for Intervenor Heublein, as well as Mr. Heublein himself, by making disparaging

5  statements that Consumer Watchdog's intervention was motivated by a desire to precipitate

6  some sort of "pay-off" from the parties:

7        a.      "It looks passing [sic] like you're trying to be enough of a nuisance that

8  somebody will do what typically happens with objectors, and decide there's some way to make

9  a financial consideration that's enough to stop the objecting, and the court has no desire to see

10  that occur in the context of the class action litigation, but so far the profile of what I see

11  happening seems to fit that as what's happening here . . ." (Exhibit B, p. 5:17-25.)

12        b.       "At the risk of repeating myself, I will point out that the timing of the

13  plaintiff in intervention's first arrival, the timing of the plaintiff in intervention's objection to

14  the class notice, and the desire now to propound such extensive discovery all look to be,

15  particularly when looked at cumulatively, an effort to be enough of a pest so as to motivate one

16  or another of the settling parties to make arrangements that would cause the objecting to stop."

17  (Exhibit B, p. 9:14-22.)

18        c.      " . . . I'm beginning to think that this is just another regrettable example

19  of opportunism in the world of objectors." (Exhibit B, p. 11:2-4.)

20        d.      "There are arguments that this discovery is unhelpful and burdensome,

21  and just tending to be tendentious, and an effort to frustrate the settlement and to upset the apple

22  cart, or to claim granger for Consumer Watchdog . . . ." (Exhibit B, p. 18:18-22.)

23        e.      "To be honest I read your effort at this time as an effort to delay and

24  frustrate so that you make yourselves a player." (Exhibit B, p. 20:5-8.)

25        f.      These statements by Judge Highberger describe conduct that is barred by

26  the California Rules of Professional Conduct (See, e.g., Rule 1-120, 3-110, 3-200).  Nothing in

27  the record supports these accusations, which demonstrate Judge Highberber's lack of

28

7

1  impartiality, bias and prejudice.

2      19.    Judge Highberger displayed his lack of impartiality, bias, and prejudice by

3  castigating Consumer Watchdog counsel for delaying Mr. Heublein's intervention ostensibly in

4  order to disrupt the settlement:

5          a.    "You were late to intervene, but I let you intervene. You were late to attack the

6  terms of the notice." (Exhibit B, p. 5:13-15).

7          b.    In fact, R.C. Heublein did not intervene when the settlement was first publicly

8  announced in October 8, 2010 because he could not learn the actual terms of the settlement

9  until the settlement documents were available to the public three months later – on January 18,

10  2011.  The parties refused to respond to inquiries from counsel for Mr. Heublein requesting

11  details of the proposed settlement prior to that date.  As noted, once his counsel had an adequate

12  opportunity to carefully review the documents, Mr. Heublein promptly moved to intervene on

13  February 2, 2011.

14      20.    Judge Highberger further expressed his lack of impartiality, bias and prejudice

15  against Consumer Watchdog counsel by improperly requiring Intervenor Heublein to choose to

16  opt-out of the proposed settlement, or to object to the settlement as a member of the class,

17  months before other class members are required to make that choice.  At the Hearing, Judge

18  Highberger stated that because of his negative and hostile views of R.C. Heublein's counsel,

19  Mr. Heublein would be forced to make this choice by June 3 (Exhibit B, p. 10:22 ) while the

20  rest of the class has until August 18 to decide whether to opt out.  Judge Highberger

21  acknowledged that there was no precedent for effectively shortening the opt-out date for a

22  single class member, stating that the issue was one of "first impression." (Exhibit B, p. 21:12)[1]

23      21.    Judge Highberger further expressed his lack of impartiality, bias and prejudice

24  against Consumer Watchdog counsel and Mr. Heublein by comparing R.C. Heublein's

25

26  _____

27  [1] Intervenor Heublein is still a party to the litigation. (See Order Granting Joint Motion for
Protective Order, a true and correct copy of which is attached as Exhibit C.)

28

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

1  intervention to the litigation involving "Girls Gone Wild." Judge Highberger said, ". . . If he

2  wants to bring a class of opt out people who are adequate in number to justify a new class, I've

3  seen that happen. I've had one of those with Girls Gone Wild so you can follow on that lovely

4  path where the second class action was composed of opt outs from the first class action, you can

5  give that a whirl." (Exhibit B, p. 24:3-9.)

6       22.    This declaration and the attached Verified Statement of Disqualification are

7  timely.  Objections are routinely found untimely where the party seeking to disqualify the judge

8  delays the disqualification until after the outcome of the trial or decision. (See e.g. *Alhusainy v.*

9  *Superior Court* (2006) 143 Cal.App.4th 385, 394; *Baker v. Civil Service Comm.* (1975) 52

10  Cal.App.3d 590, 594; ["A party may not gamble on a favorable decision."])

11       23.    It cannot be disputed that Intervenor Heublein's Verified Statement of

12  Disqualification and this supporting declaration meet the requirement of setting forth a factual

13  record from which a person might reasonably entertain a doubt that Judge Highberger would be

14  able to be impartial.  The record also contains repeated instances in which Judge Highberger

15  showed bias and prejudice toward Intervenor's counsel.

16       24.    In another disqualification preceding, a trial court granted a disqualification

17  request in which a judge displayed his lack of partiality, bias, and prejudice by making the

18  following remarks to counsel, which appear mild compared to those in the instant

19  disqualification:

20     • "Your interest in this case is apparent and has been from the outset to try to stall out
21       final resolution in this case which the parties affected so that you can move your case
     ahead in Orange County and secure legal fees."

22     • "You failed in all your efforts to try to avoid this case going ahead to settlement and
23       thereby meaning that you're not going to get any fees out of the case in Orange County.
     I wasn't born yesterday. It is so obvious and you don't—if I give you 90 days, you
24       could not come with an answer for what you've done in this case to try and get
     settlement, in violation of my order, to interfere with the operation of that order in an
25       effort to try to get addition fees for your firm. In my estimation, that's outrageous
26       conduct."

27     • "And your arguments here do not address the issues of this case. They are not applicable to
28       the situation that we have here where the Court has issued a preliminary order of approval
     conditionally certifying the class, setting up a procedure whereby a form of notice

approved by the Court is sent to the class for them to use in determining whether or not to opt out, not some misleading letter from a self-serving counsel who is trying to find some way to get legal fees out of the case where it appears that he is not going to . . . ."

- "And as I say, I think someone who would do what you've done here has got to have unmitigated gall. And to sit here and talk to a judge the way you've talked to me—I have, I will tell you, a reverence for our judicial system, for our legal system, that I have held from the time that I entered law school. And I have a great respect for my obligations to maintain the sanctity of that system and its proper operation as a judge. I despair, I have despaired over the past several years, at how mercenary the bar has become and how the guiding force, the driving force of law seems to be how much money a lawyer can make off his or her client's problems. I'm glad I'm out of that now. There are lots of lawyers in the law who have the same regard for the legal system that I do and operate that way, in spite of the pressures they're put under to run up billable hours and all."

- After counsel protested the judge's statements that his conduct was solely motivated by earning legal fees, the Court responded as follows: "Mr. Spencer you have very little credibility in that regard, because if you were truly such a professional idealist as you profess to be, you wouldn't have sent this letter in the first place, because it is a violation of the rules of professional conduct."

(*Hernandez v. Vitamin Shoppe Industries Inc.* (Super. Ct. Marin County, 2006, No. CV 053770), Order RE: Petition to Disqualify Judge for Cause, at 7:1 – 8:12 [a true and correct copy of which is attached as Exhibit D.].)

25.     Per Code of Civil Procedure section 170.3, subdivision (c)(5) the question of Judge Highberger's disqualification shall be heard and determined by another judge agreed upon by all the parties.  In the event the parties are unable to agree, the disqualification shall be heard by a judge selected by the chairperson of the Judicial Council, or if the chairperson is unable to act, the vice chairperson.

26.     Intervenor Heublein does not take this action lightly. Intervenor Heublein recognizes and supports the rights of members of the judicial branch to express their views of the litigation before them. However, Intervenor Heublein is compelled to seek disqualification in this instance for the reasons stated herein.

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

1        I certify and declare under penalty of perjury under the laws of the State of California

2   that the foregoing is true and correct.

3        Executed at Santa Monica, California on June 24, 2011.

4

5        _____

6        Jerry Flanagan
         Attorney for Intervenor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE HIGHBERGER

## EXHIBIT A

**From:** Jerry Flanagan <jerry@consumerwatchdog.org>
**Subject:** **Fwd: UPDATE -- Re: Farmers/Fogel  - Stipulation**
**Date:** June 24, 2011 10:13:49 AM PDT

Begin forwarded message:

**From:** "Tuggy, Stephen A." <STuggy@lockelord.com>
**Date:** April 27, 2011 1:51:53 PM PDT
**To:** Jerry Flanagan <jerry@consumerwatchdog.org>, "Zuromski Jr., Richard J" <Richard.Zuromski@skadden.com>
**Cc:** Todd Foreman <todd@consumerwatchdog.org>, "Kennedy, Raoul D" <Raoul.Kennedy@skadden.com>
**Subject:** **RE: UPDATE -- Re: Farmers/Fogel - Stipulation**

Jerry --

 This confirms we have arranged to produce a PMK witness for the Exchanges during the week of June 6 (if the Court permits an examination on subjects listed in the subpoenas).

 -- Steve

Stephen A. Tuggy
Attorney
Locke Lord Bissell & Liddell LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California  90071
213-687-6764 Direct
213-341-6764 Fax
stuggy@lockelord.com
www.lockelord.com

Atlanta, Austin, Chicago, Dallas, Houston, London, Los Angeles, New Orleans, New York, Sacramento, San Francisco, Washington DC

**From:** Jerry Flanagan [mailto:jerry@consumerwatchdog.org]
**Sent:** Wednesday, April 27, 2011 1:35 PM
**To:** Zuromski Jr., Richard J
**Cc:** Todd Foreman; Kennedy, Raoul D; Tuggy, Stephen A.
**Subject:** Re: UPDATE -- Re: Farmers/Fogel - Stipulation

Richard,

Thanks. This is fine with us. Please ask the Exchanges to confirm by email that they will produce a witness during the week of June 6.

Jerry Flanagan
Counsel for Intervenor

On Apr 27, 2011, at 8:34 AM, Zuromski Jr., Richard J wrote:

> Jerry,
>
> Per our discussion yesterday, Defendants will respond to Intervenor's written discovery requests by May 24, 2011, subject to any other stipulation or Court order.
>
> Regarding depositions, given the delay in the date for the hearing on Defendants' motion for protective order, FGI is endeavoring to produce a single witness to respond to most if not all of Intervenor's numerous deposition topics and will produce that witness during the week of May 31.  I understand that the Exchanges are also attempting to produce a single responsive witness if possible, but that witness will not be available until the week of June 6.  Please let us know if this schedule works for you.
>
> Regards,
>
> Richard

# **EXHIBIT B**

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3   DEPARTMENT NO. 307    HON. WILLIAM F. HIGHBERGER, JUDGE

4

5   BENJAMIN FOGEL,                        )
                                           )
6                      PLAINTIFF,          )
             VS.                           )
7                                          )
    FARMERS GROUP, INC., ET AL,            )CASE NO.
8                                          )BC300142
                       DEFENDANT.          )
9   _____)

10        REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS

11                    MAY 18, 2011

12

13  FOR THE PLAINTIFF:   LAW OFFICES OF ENGSTROM,
                         LIPSCOMB & LACK
14                       BY:  MR. WALTER J. LACK, ESQ.
                         10100 SANTA MONICA BLVD., 12TH FL
15                       LOS ANGELES, CA  90067
                         (310)552-3800 EXT. 320
16
                         GIRARDI & KEESE LAWYERS
17                       BY:  GRAHAM B. LIPPSMITH, ESQ.

18  FOR THE DEFENDANT:   CONSUMER WATCHDOG
    INTERVENOR           BY:  MR. JERRY FLANAGAN, ESQ.
19                       1750 OCEAN PARK BLVD., STE. 200
                         SANTA MONICA, CA 90405-4938
20                       (310)392-0522 EXT. 319

21  FOR THE DEFENDANT:   DEWEY & LEBOEUF
    ZURICH               BY:  MR. JONATHAN E. RICHMAN, ESQ.
22                       1301 AVENUE OF THE AMERICAS
                         NEW YORK, NY 10019-6092
23                       (212)259-8004

24

25  (APPEARANCE CONTINUED ON PAGE 2.)

26                       *COPY*
                         PAMELA GOEPPNER, CSR NO. 10578
27                       OFFICIAL REPORTER

28

```
 1   APPEARANCES (CONTINUED):

 2

 3   FOR THE DEFENDANT:   DEWEY & LEBOEUF
     ZURICH               BY:  MR. MATTHEW M. WALSH, ESQ.
 4                        333 SOUTH GRAND AVENUE, STE. 2600
                          LOS ANGELES, CA 90071-1530
 5                        (213)621-6558

 6

 7   FOR THE DEFENDANT:   SKADDEN, ARPS, SLATE
     FARMERS              MEAGHER & FLOM, LLP
 8                        BY:  MR. DARREL J. HIEBER, ESQ.
                          300 SOUTH GRAND AVENUE
 9                        LOS ANGELES, CA  90071
                          (213)687-5220
10

11   FOR THE DEFENDANT:   SKADDEN, ARPS, SLATE
     FARMERS              MEAGHER & FLOM, LLP
12                        BY:  MR. RAOUL D. KENNEDY, ESQ.
                          525 UNIVERSITY AVENUE
13                        PALO ALTO, CA  94301
                          (650)470-4550
14

15   FOR THE DEFENDANT:   LOCKE, LORD,
     NONPARTY EXCHANGES   BISSELL & LIDDELL, LLP
16                        BY:  MR. STEPHEN TUGGY, ESQ.
                          300 SOUTH GRAND AVENUE, STE. 2600
17                        LOS ANGELES, CA  90071
                          (213)687-6764
18

19

20

21

22

23

24

25

26

27

28
```

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

```
 1   CASE NUMBER:           BC300142

 2   CASE NAME:             FOGEL V. FARMERS GROUP

 3   LOS ANGELES, CALIFORNIA, WEDNESDAY, MAY 18, 2011

 4   DEPARTMENT 307         HON. WILLIAM HIGHBERGER, JUDGE

 5   REPORTER:              PAMELA GOEPPNER, CSR NO. 10578

 6   TIME:                  A.M.

 7   APPEARANCES:           (AS HERETOFORE NOTED.)

 8

 9             THE COURT:  OKAY.  ON THE RECORD, BC300142,

10   FOGEL ON BEHALF OF HIMSELF, AND THE CLASS VS. FARMERS

11   GROUP, INC. AND OTHERS.  TAKE APPEARANCES STARTING WITH

12   PLAINTIFF'S COUNSEL.

13             MR. LACK:  GOOD MORNING, YOUR HONOR, WALTER

14   LACK FOR THE CLASS.

15             THE COURT:  AND ON THE PHONE?

16             MR. LIPPSMITH:  GRAHAM LIPPSMITH ALSO FOR

17   THE CLASS.

18             MR. KENNEDY:  GOOD MORNING, YOUR HONOR,

19   RAOUL KENNEDY AND DARREL HIEBER ON BEHALF OF THE

20   FARMER'S DEFENSE.

21             MR. TUGGY:  GOOD MORNING, YOUR HONOR, STEVE

22   TUGGY OF LOCKELORD ON BEHALF OF THE EXCHANGES.

23             MR. WALSH:  GOOD MORNING, YOUR HONOR,

24   MATTHEW WALSH WITH ZURICH FINANCIAL SERVICES, AND I'D

25   LIKE TO INTRODUCE MY PARTNER, JONATHAN RICHMAN, WHO WAS

26   RECENTLY ADMITTED PRO HAC VICE WHO WILL BE TAKING THE

27   LEAD FOR ZURICH TODAY.

28             MR. FLANAGAN:  GOOD MORNING, YOUR HONOR,
```

```
 1   JERRY FLANAGAN FOR INTERVENOR, R.C. HEUBLEIN.

 2            THE COURT:   THANK YOU FOR YOUR PATIENCE.

 3   THERE ISN'T A WRITTEN TENTATIVE TODAY BECAUSE I WAS UP

 4   IN SAN FRANCISCO AT THE AMERICAN LAW INSTITUTE'S ANNUAL

 5   MEETING, BUT I HAVE HAD A CHANCE TO THINK ABOUT THE

 6   ISSUES PRESENTED BY THE PAPERS AND THE AUTHORITIES

 7   CITED.   SO I'M GOING TO GIVE YOU SOME PRELIMINARY

 8   THOUGHTS THAT ARE THE RESULT OF A FAIR AMOUNT OF

 9   THINKING ABOUT THE CASE.

10            THE CASE WHEN IT WAS ORIGINALLY BROUGHT

11   YEARS AGO, OF COURSE, WAS BROUGHT BY MR. FOGEL THROUGH

12   THE OFFICES OF MR. LACK'S FIRM AND MR. LIPPSMITH'S

13   FIRM, GIRARDI & KEESE, AND ENGSTROM, LIPSCOMB & LACK

14   RESPECTIVELY AS I UNDERSTAND IT, NOT BY PLAINTIFF IN

15   INTERVENTION R.C. HEUBLEIN, AND NOT BY MR. HARVEY

16   ROSENFELD, OR HIS LAW PRACTICE WHICH IS PRESENTED TO

17   THE WORLD AS CONSUMER WATCHDOG.

18            THE CASE IS PROCEEDED AND THE PLAINTIFFS

19   RECOVERED FROM A SUMMARY JUDGMENT ADVERSE TO THEM IN

20   FRONT OF JUDGE LICHTMAN WHO HAD APPLIED THE APPROVED

21   RATE DOCTRINE AS ARGUED BY THE DEFENDANTS TO DETERMINE

22   THAT THERE WAS NOTHING SUSPECT ABOUT THE FEES COLLECTED

23   BY THE ATTORNEY IN FACT AS PART OF THE COST OF

24   PROVIDING THE INSURANCE PURSUANT TO THE TERMS OF THE

25   CONTRACT AND THE RATES CHARGED.

26            ON APPEAL THE COURT OF APPEALS DID ACCEPT

27   THE PLAINTIFF'S ARGUMENT THAT THERE WAS A LEGAL

28   SEPARATENESS, AND AS A MATTER OF LAW AND FACT THE COURT
```

```
 1    OF APPEALS NEEDED TO FIND THAT THERE WAS IN FACT
 2    SEPARATENESS BETWEEN THE EXCHANGES, AND THE ATTORNEY IN
 3    FACT SUCH THAT THE APPROVED RATE DOCTRINE WAS NOT A
 4    SUCCESSFUL AFFIRMATIVE DEFENSE, AND THE COURT OF
 5    APPEALS AGREED PRODUCING WHAT I UNDERSTAND TO BE LAW OF
 6    THE CASE THAT THE EXCHANGES ARE LEGALLY SEPARATE FROM
 7    THE ATTORNEY IN FACT, AND THAT BINDS MY HANDS IN
 8    EVERYTHING I DO IN THE CASE AT THIS POINT AS I SIT HERE
 9    AND GO FORWARD.  IS THAT A CORRECT ANALYSIS, MR. LACK?
10              MR. LACK:  YES, YOUR HONOR.
11              THE COURT:  DO YOU AGREE, MR. LIPPSMITH?
12              MR. LIPPSMITH:  I DO, YOUR HONOR.
13              THE COURT:  ANY DISAGREEMENT FOR THE
14    DEFENDANTS WHO LOST ON APPEAL, MR. KENNEDY.
15              MR. KENNEDY:  NO, YOUR HONOR.
16              THE COURT:  AND THE OTHER PARTIES WEREN'T
17    IN THE CASE -- I GUESS ZURICH WAS ON THE APPEAL; RIGHT?
18              MR. WALSH:  NO, YOUR HONOR.
19              THE COURT:  IT WAS JUST THE FARMERS PARTIES
20    AT THE TIME.  THE DISCOVERY INTERESTINGLY THAT IS
21    PROPOSED ACTUALLY WAS PROPOUNDED BY PLAINTIFF IN
22    INTERVENTION R.C. HEUBLEIN BASICALLY WANTS TO TRY TO
23    PROVE AS A FACTUAL PREMISE THAT THE ATTORNEY IN FACT
24    AND EXCHANGES SHOULD BE TREATED ESSENTIALLY ALL THUS
25    PART AND PARCEL, ONE AND THE SAME THING, AND THE
26    FACTUAL DISCOVERY GOES IN THAT DIRECTION, AND IS SO
27    APTLY PUT.  RARELY DO I FIND SUCH A WELL-TURNED PHRASE
28    AS I DID IN THE REPLY BRIEF FROM MR. KENNEDY'S OFFICE.
```

```
 1    PAGE 7, LINE 16, QUOTE:

 2                    AH, IF THAT WERE ONLY SO.  THE

 3            FARMERS DEFENDANTS OBTAINED SUMMARY

 4            JUDGMENT IN THIS CASE BECAUSE JUDGE

 5            LICHTMAN HELD THAT THE PLAINTIFF WAS

 6            SEEKING A DEFACTO REFUND OF PAID PREMIUMS

 7            THAT HAD BEEN APPROVED BY THE DEPARTMENT

 8            OF INSURANCE, END QUOTE.

 9                    I NEED NOT READ FURTHER, BUT THE MAIN POINT

10    IS WHAT MR. ROSENFELD AND MR. FLANAGAN AND CONSUMER

11    WATCHDOG AND R.C. HEUBLEIN NOW WANT TO ARGUE BASICALLY

12    IS TO HAVE ME BE SO PRESUMPTUOUS AS TO TELL THE COURT

13    OF APPEALS THEY'RE FACTUALLY WRONG, AND THEREFORE THEIR

14    CONCLUSION IS WRONG.

15                    NOW, THE INTERESTING THING, MR. FLANAGAN,

16    IS IF YOU'RE RIGHT THEN MR. LACK AND MR. LIPPSMITH WERE

17    WRONG, AND THIS IS A DEFENSIBLE CASE AND THE VALUE OF

18    THE SETTLEMENT FOR THE CLASS IS NOTHING.  SO THE GREAT

19    ACCOMPLISHMENT OF CONSUMER WATCHDOG IN THIS CASE WILL

20    HAVE BEEN TO ZERO OUT THE VALUE OF THE CASE WHICH IS

21    NOT A REALLY, A BRILLIANT THING FOR AN OBJECTOR TO

22    ACCOMPLISHMENT.

23                    I THINK THAT --

24                    MR. KENNEDY:  YOUR HONOR --

25                    THE COURT:  I'M GOING TO TALK FOR A WHILE

26    AND THEN YOU CAN RESPOND.

27                    I'M SUSPICIOUS OF THE REAL MOTIVES OF THE

28    OBJECTOR ON PLAINTIFF AND INTERVENTION AND/OR COUNSEL.
```

```
 1    SO LET ME FINISH MY PIECE AND THEN YOU CAN RESPOND.  I
 2    THINK THIS IS AN OPPORTUNISTIC PIECE OF OBJECTING
 3    STYLED AS BEING A PLAINTIFF IN INTERVENTION, SO LET ME
 4    STATE ALL OF MY ANALYSIS BEFORE I GIVE YOU A CHANCE TO
 5    RESPOND BECAUSE I AM SUSPECT OF WHAT'S GOING ON HERE.
 6              I SUSPECT THIS IS A PUBLIC RELATIONS
 7    EXERCISE BY MR. ROSENFELD AND CONSUMER WATCHDOG NOT FOR
 8    THE BENEFIT OF THE CLASS, BUT JUST TO PERPETUATE THE
 9    PUBLIC POSTURE OF CONSUMER WATCHDOG.  YOU DIDN'T FILE
10    THIS CASE YEARS AGO.  MR. LIPPSMITH'S AND LACK'S OFFICE
11    AND MR. GIRARDI'S OFFICE TOOK THE RISK.  THEY'VE GOT A
12    SETTLEMENT WHICH YOU'RE BASICALLY TRYING TO DERAIL AT
13    THIS POINT.  YOU WERE LATE TO INTERVENE, BUT I LET YOU
14    INTERVENE.  YOU WERE LATE TO ATTACK THE TERMS OF THE
15    NOTICE.
16              NOW YOU'RE TRYING TO PROPOUND DISCOVERY AND
17    DEMAND OVER 30 DEPOSITIONS.  IT LOOKS PASSING LIKE
18    YOU'RE TRYING TO BE ENOUGH OF A NUISANCE THAT SOMEBODY
19    WILL DO WHAT TYPICALLY HAPPENS WITH OBJECTORS, AND
20    DECIDE THERE'S SOME WAY TO MAKE A FINANCIAL
21    CONSIDERATION THAT'S ENOUGH TO STOP THE OBJECTING, AND
22    THE COURT HAS NO DESIRE TO SEE THAT OCCUR IN THE
23    CONTEXT OF THE CLASS ACTION LITIGATION, BUT SO FAR THE
24    PROFILE OF WHAT I SEE HAPPENING SEEMS TO FIT THAT AS
25    WHAT'S HAPPENING HERE, AND NOT ANY MORE MATERIAL OR
26    BENEFICIAL TO THE CLASS THAN THAT.
27              IT'S MY UNDERSTANDING THAT WHEN THE CASE
28    CAME TO ME, AFTER JUDGE LICHTMAN HAD GONE OVER TO HIS
```

```
 1   FULL-TIME SETTLEMENT DUTIES, THAT I INHERITED IT WITH A
 2   GENERAL STAY OF ALL DISCOVERY IN THE CASE BY REASON OF
 3   THE FACT THAT IT WAS JUDGE LICHTMAN'S PERSPECTIVE OF
 4   THE CASE LOOKED TO BE HEADING TOWARDS SETTLEMENT IF THE
 5   PARTIES WERE ALLOWED TO PROCEED IN THAT DIRECTION.
 6              DOES THAT SQUARE WITH YOUR UNDERSTANDING,
 7   MR. LACK, OF THE PROCEDURAL PROFILE OF THE CASE?
 8              MR. LACK:  THAT'S CORRECT, YOUR HONOR.
 9              THE COURT:  MR. KENNEDY?
10              MR. KENNEDY:  YES, YOUR HONOR.
11              THE COURT:  DO YOU CONCUR, MR. LIPPSMITH?
12              MR. LIPPSMITH:  I DO.
13              THE COURT:  SO WHEN THE PLAINTIFF IN
14   INTERVENTION GOT TO JOIN THE CASE, HE GOT TO JOIN THE
15   CASE IN THE STATUS IN WHICH THE CASE WAS IN, INCLUDING
16   A GENERAL STAY OF DISCOVERY.
17              NOTWITHSTANDING THAT, THE PLAINTIFF IN
18   INTERVENTION PURPORTED TO AVAIL ITSELF OF WHAT
19   OTHERWISE WOULD BE IT'S RIGHT TO PROPOUND DISCOVERY,
20   BUT DID SO IN THE FACE OF A GENERAL STAY THAT WAS NOT
21   LIFTED.  SO LET'S ASSUME THAT THERE WAS GOOD CAUSE TO
22   LIFT THE GENERAL STAY TO BE SOUGHT AFTER THE FACT,
23   WHICH ANALYTICALLY IS PROBABLY WHERE I SHOULD TAKE IT
24   AFTER POINTING OUT THAT THERE WAS NO AUTHORITY TO
25   PROPOUND THE DISCOVERY WHEN IT WAS PROPOUNDED, AND
26   ANALYSIS WHETHER OR NOT ON THE CIRCUMSTANCES THE
27   DISCOVERY IS BENEFICIAL TO THE COURT IN ANALYZING THE
28   MERITS OF THE SETTLEMENT WHEN MADE FOR THE REASONS MADE
```

 1   AT THE TIME MADE ON THE FACTS KNOWN TO THE PARTIES.

 2            I DON'T FIND THE DISCOVERY PARTICULARLY

 3   USEFUL.  AS POINTED OUT IN PLAINTIFF'S PAPERS THERE'S A

 4   HUGE AMOUNT OF DISCOVERY -- EXCUSE ME -- INFORMATION,

 5   NOT LITERALLY DISCOVERY BY DEPOSITION INTERROGATORY,

 6   BUT INFORMATION THAT CAN BE HAD ABOUT THE BUSINESS OF

 7   THE SEVERAL FARMERS ENTITIES, THE EXCHANGES, AND THEIR

 8   RELATIONS WITH THE PARENT OF THE ATTORNEY IN FACT,

 9   ZURICH, BECAUSE IT'S A REGULATED INDUSTRY WITH A FAIR

10   AMOUNT OF CORPORATE DISCLOSURES THAT ARE MADE.

11            AND REALLY THE KEY QUESTION THAT THE COURT

12   OF APPEALS DODGED AND LEFT MURKY, AS NOTED IN THE

13   PAPERS PRESENTED TO ME, IS THE NATURE AND EXTENT OF THE

14   FIDUCIARY DUTY THAT FLOWS AS BETWEEN THE ATTORNEY IN

15   FACT BACK TO THE EXCHANGES, ACKNOWLEDGING THAT IN TERMS

16   OF CLASSIC AGENCY LAW THE ATTORNEY IN FACT FUNCTIONS A

17   AN AGENT, AND WITH AT LEAST NOMINAL DUTIES AS A

18   FIDUCIARY, NOT NECESSARILY THE SAME AS A TRUST OF AN

19   ORPHAN'S TRUST, BUT A FIDUCIARY IN SOME CONCEPTUAL

20   SENSE.

21            THE PARTIES HAVE SHOWN THAT MANY, BUT NOT

22   ALL OF THE SUBSCRIBERS TO THE EXCHANGES ACTUALLY SIGNED

23   SUBSCRIBER AGREEMENTS THAT APPEARED TO ACCEPT MORE THAN

24   THE RATES CHARGED BY THE ATTORNEY IN FACT, ALTHOUGH IT

25   APPEARS THAT THERE HAS BEEN SOME MEANINGFUL PERCENTAGE

26   OF APPARENTLY CARELESS NONCOMPLIANCE IN ENROLLING

27   SUBSCRIBERS WHICH CAUSES IT TO BE THAT MANY BY NUMBER,

28   BUT A SMALL PERCENTAGE OF THE WHOLE, DON'T APPEAR TO

```
 1   HAVE SIGNED THE SUBSCRIBER AGREEMENTS THAT DID
 2   AUTHORIZE THE RATES CHARGED BY THE ATTORNEY IN FACT.
 3             AND, AGAIN, WE HAVE TO BACK UP, AND
 4   REMEMBER THAT THE GROSS PRICE CHARGED BY THE EXCHANGES
 5   FOR THE INSURANCE SERVICES WAS APPARENTLY COMPETITIVELY
 6   ACCEPTABLE SUCH THAT WE HAVE A LARGE CLASS OF PEOPLE
 7   THAT THOUGHT THIS A GOOD SERVICE TO BUY, AND THE
 8   REGULATORY AUTHORITIES HAD LET IT PASS AS AN ACCEPTABLE
 9   RATE TO CHARGE THE PUBLIC IN A RATE REGULATED REGIME,
10   BUT NEVERTHELESS THE ATTORNEY IN FACT APPARENTLY MAKES
11   A PRETTY ROBUST PROFIT, AND SOME OF IT IS PAID TO THE
12   WHOLLY OWNED -- EXCUSE ME -- PARENT OF THE WHOLLY OWNED
13   SUB-DIVIDENDS WHICH IS THE NATURE OF THE CAPITALISTIC
14   ENDEAVOR WHERE A OWNER OF CAPITAL ASSETS WISHES TO GET
15   A REWARD FOR THE INVESTMENT, AND SO WE DO HAVE A FLOW
16   OF FUNDS THAT GOES UP, MUCH OF WHICH WAS THE SUBJECT OF
17   EXECUTED SUBSCRIBER AGREEMENTS, SOME OF WHICH APPEARS
18   NOT TO BE THE SUBJECT OF EXECUTED SUBSCRIBER
19   AGREEMENTS.
20             AS POINTED OUT BY THE MOVING PARTY'S
21   PAPERS, AND THE PLAINTIFF A GOOD QUESTION PRESENTED
22   HERE IS A QUESTION OF LAW, NOT A QUESTION OF FACT IN
23   TERMS OF CASE VALUATION.  AND WHILE THE KULLAR CASES,
24   THE GENERAL PROPOSITION IS VERY MUCH THE CASE ON POINT
25   AS FAR AS THE STATEMENT OF LEGAL PRINCIPLES, THAT'S
26   K-U-L-L-A-R V. FOOT LOCKER RETAIL, INC., 168 CAL.APP.
27   4TH 1116, THAT WAS A FACT DRIVEN CASE WHERE JUDGE
28   KRAMER, AND THE COMPLEX PROGRAM IN SAN FRANCISCO HAD
```

1   APPROVED THE SETTLEMENT OVER OBJECTOR'S COMPLAINTS

2   WITHOUT DIVING INTO MUCH DISCOVERY AS TO WHETHER IT WAS

3   AN ADEQUATE SETTLEMENT, AND ON APPEAL IT WAS FOUND TO

4   BE TOO CURSORY AN ENDEAVOR, AND THE OBJECTORS HAD THE

5   BETTER OF IT, BUT HERE THE KEY QUESTION I HAVE TO

6   ANALYZE I THINK IN DETERMINING WHETHER THE SETTLEMENT,

7   WHICH I HAD GIVEN PRELIMINARY REVIEW AND APPROVAL TO,

8   IS APPROPRIATE IS REALLY GOING TO BE A LEGAL QUESTION.

9   AND THE DISCOVERY THAT'S BEEN PROPOUNDED INCLUDING THE

10  30-PLUS DEPOSITIONS YOU'RE REALLY TRYING TO ESSENTIALLY

11  FIGHT THE COURT OF APPEAL'S FINDING IN HOLDING AS TO

12  THE LEGAL SEPARATENESS OF THE ENTITIES WHICH TO ME

13  SEEMS A POINTLESS EXERCISE GIVEN THE LAW OF THE CASE.

14          AT THE RISK OF REPEATING MYSELF, I WILL

15  POINT OUT THAT THE TIMING OF THE PLAINTIFF IN

16  INTERVENTION'S FIRST ARRIVAL, THE TIMING OF THE

17  PLAINTIFF IN INTERVENTION'S OBJECTION TO THE CLASS

18  NOTICE, AND THE DESIRE NOW TO PROPOUND SUCH EXTENSIVE

19  DISCOVERY ALL LOOK TO BE, PARTICULARLY WHEN LOOKED AT

20  CUMULATIVELY, AN EFFORT TO BE ENOUGH OF A PEST SO AS TO

21  MOTIVATE ONE OR ANOTHER OF THE SETTLING PARTIES TO MAKE

22  ARRANGEMENTS THAT WOULD CAUSE THE OBJECTING TO STOP.

23          I AM INCLINED TO THINK THAT IT IS A PRUDENT

24  EXERCISE OF MY DISCRETION IN THE MANAGEMENT OF CLASS

25  ACTIONS, AND TO ENGAGE IN THE KIND OF FLEXIBLE AND

26  INNOVATIVE TECHNIQUES THAT ARE REQUIRED IN MANAGING

27  THESE KINDS OF CASES WHEN THE CODE OF CIVIL PROCEDURE

28  IS SO SPARSE IN PROVIDING GUIDANCE, AND THE RULES OF

1 COURT ARE NOT MUCH BETTER, TO ACCEPT THE MOVING PARTY'S

2 PROPOSITION THAT THE INTERVENOR SHOULD BE GIVEN A

3 DEADLINE SOONER THAN THE CLASS AS A WHOLE BY WHICH TO

4 MAKE A FINAL AND BINDING DECISION WHETHER OR NOT TO OPT

5 OUT.  ONE WHO OPTS OUT CAN'T BE AN OBJECTOR.  ONE WHO

6 REMAINS IN THE CLASS IS OBJECTING IN THE CONTEXT OF A

7 SETTLEMENT IN WHICH ONE DEMONSTRATIVE WANTS TO

8 PARTICIPATE.

9    THE PLAINTIFF IN INTERVENTION AND OBJECTOR

10 R.C. HEUBLEIN OBVIOUSLY HAS KNOWN ABOUT THIS CASE, AND

11 THE PARTICULARS OF IT, MORE SO THAN YOUR AVERAGE CLASS

12 MEMBER SINCE HE SAW FIT TO ENGAGE COUNSEL TO OBJECT AND

13 INTERVENE.  HE'S REPRESENTED BY SOPHISTICATED COUNSEL

14 IN THE AREA, AND COUNSEL IS FULLY INFORMED WHAT THE

15 CONTENTS OF THE NOTICE IS GOING TO BE SINCE IT HAS BEEN

16 A POINT OF CONTENTION ON A MATTER IN WHICH COUNSEL

17 PARTICIPATED SO THE CONTENTS OF THE NOTICE ARE NO

18 SURPRISE TO COUNSEL FOR R.C. HEUBLEIN, AND WHILE THE

19 REST OF THE CLASS MAY HAVE UNTIL A LATER DATE WHEN THEY

20 FIRST GET ACTUAL COMMUNICATION OF THE NOTICE, IT

21 STRIKES ME THAT IT WOULD COMPORT WITH DUE PROCESS TO

22 GIVE R.C. HEUBLEIN UNTIL JUNE 3 IN WHICH TO SERVE, AND

23 FILE A STATEMENT AS TO WHETHER OR NOT HE INTENDS TO OPT

24 OUT OR REMAIN IN THE CLASS.

25    AS I NOTED EARLIER, R.C. HEUBLEIN DIDN'T

26 SEE FIT TO FILE THE SUIT ORIGINALLY, OR TO JOIN IT

27 BEFORE JUDGE LICHTMAN HAD RULED AGAINST THE PLAINTIFF.

28 R.C. HEUBLEIN DIDN'T PARTICIPATE IN THE APPEAL, WHETHER

NOT FOR REPRODUCTION PER GOVERNMENT CODE 69954(D)

1   OR NOT CONSUMER WATCHDOG DID IS AMICUS, AND AT THIS

2   POINT I'M BEGINNING TO THINK THAT THIS IS JUST ANOTHER

3   REGRETTABLE EXAMPLE OF OPPORTUNISM IN THE WORLD OF

4   OBJECTORS.  AND SO FOR ALL THOSE REASONS I AM DISPOSED

5   TO FULLY GRANT THE MOTION INCLUDING THE SETTING OF THE

6   DATE BY WHICH THE PLAINTIFF IN INTERVENTION NEEDS TO

7   OPT OUT OR NOT.

8             MR. KENNEDY, YOU WISH TO BE HEARD OR

9   SUBMIT?

10            MR. KENNEDY:  WE ARE PREPARED TO SUBMIT,

11  YOUR HONOR.

12            THE COURT:  MR. LACK?

13            MR. LACK:  WE SUBMIT, YOUR HONOR.

14            THE COURT:  MR. LIPPSMITH?

15            MR. LIPPSMITH:  YES, WE SUBMIT, TOO.

16            THE COURT:  MR. TUGGY?

17            MR. TUGGY:  YES, WE SUBMIT.

18            THE COURT:  MR. RICHMAN?

19            MR. RICHMOND:  WE SUBMIT, YOUR HONOR.

20            THE COURT:  MR. FLANAGAN, YOU'VE GOT THE

21  FLOOR.

22            MR. FLANAGAN:  THANK YOU, YOUR HONOR.

23  JERRY FLANAGAN CONSUMER WATCHDOG ON BEHALF OF R.C.

24  HEUBLEIN.  I WOULD JUST LIKE TO ADDRESS A COUPLE OF

25  POINTS THAT YOU RAISED IN YOUR OPENING.

26            THE COURT:  UNDERSTANDABLY BECAUSE I'M

27  PRETTY SCEPTICAL ABOUT WHAT YOU'RE ABOUT.

28            MR. FLANAGAN:  UNDERSTOOD.  A COUPLE

1    ISSUES.  YOU KNOW, IN THE WORLD OF OBJECTORS I

2    UNDERSTAND THAT THERE ARE PROFESSIONALS OUT THERE THAT

3    ARE ONLY IN IT FOR THE MONEY.  WE'RE NOT THAT ENTITY.

4              THE COURT:  IT LOOKS LIKE YOUR

5    SELF-INTEREST WOULD BE IN IT FOR PUBLIC RELATIONS.

6              MR. FLANAGAN:  THAT'S NOT TRUE.  WE WERE

7    APPROACHED BY THE INTERVENOR AFTER NOTICED INFORMATION

8    ABOUT THE TERMS OF THE SETTLEMENT WERE MADE PUBLIC.  HE

9    CALLED US TO BE INVOLVED IN THIS SETTLEMENT.  THE

10   TIMING ON OUR INTERVENTION, AS WE DISCUSSED AT THE

11   EX-PARTE HEARING, WAS DUE TO THE LATE RELEASE OF THE

12   SETTLEMENT AGREEMENT.

13             WE WERE THERE AND THAT'S I THINK ONE OF THE

14   REASONS THE COURT ALLOWED US TO INTERVENE OVER THE

15   OBJECTIONS THAT WE WERE UNTIMELY IS THAT WE DIDN'T

16   REALIZE HOW BAD OF A DEAL FOR THE CLASS THAT THE

17   SETTLEMENT WAS UNTIL THE DOCUMENT WAS PUBLIC.  AT THAT

18   POINT WE ANALYZED IT.  IT WAS QUIET LENGTHY AND WE

19   QUICKLY GOT OUR PAPERS IN FRONT OF THE COURT.

20             THE COURT:  AND THERE HAD BEEN A LAG

21   BETWEEN THE FIRST SPLASH OF PUBLICITY THAT THERE WAS A

22   SETTLEMENT, AND WHEN THE SETTLING PARTIES HAD WHAT THEY

23   CONSIDERED TO BE THE RIGHT PAPERWORK TO PUT IN FRONT OF

24   ME.  SO THAT GAVE YOU SOME COVER.

25             MR. FLANAGAN:  AND THAT WAS THE DETAIL.

26   WELL, THAT'S WHAT THE KEY DETAIL THAT WE SAW WERE THE

27   CLARITY THAT THE UNCLAIMED SETTLEMENT FUNDS WOULD BE

28   REVERTING TO THE EXCHANGES IF THEY WEREN'T CLAIMED BY

1    CLASS MEMBERS.

2              THE COURT:  I DON'T THINK THAT BURDEN IS

3    THE RIGHT WORD.  THEY WOULD BE TRANSFERRED BY ZURICH

4    AND/OR FARMERS TO THE EXCHANGES WHICH ARE, BASED ON

5    WHAT THE COURT OF APPEALS TELLS ME, AND I MUST ACCEPT

6    LEGALLY SEPARATE AND FACTUALLY SEPARATE FROM THE

7    ATTORNEY IN FACT.  IT'S NOT A REVERSION JUST A

8    SEPARATOR ESSENTIALLY IN ONE SENSE OF THINKING ABOUT

9    IT.

10             MR. FLANAGAN:  YES, YOUR HONOR, AND I WANT

11   TO ADDRESS THE ISSUE OF --

12             THE COURT:  NOT A SEPARATOR OF CHARITY, BUT

13   A SEPARATOR OF A PARTY THAT IS ESSENTIALLY STANDING IN

14   THE SHOES OF SUBSCRIBERS AND, THEREFORE, ITS GOOD

15   FORTUNE IS THE SUBSCRIBERS GOOD FORTUNE, INCLUDING FOR

16   REASONS I THINK I'VE SAID BEFORE BUT IT'S WORTH

17   REPEATING, *FARMERS SUBSCRIBERS, SEE DOCKET NO.*

18   *BC377842, FEDERAL INSURANCE VS. MULDEX METRIC* WHERE A

19   FARMER SUBSCRIBER IN A FIVE-WEEK PERIOD WHO PAID A

20   PREMIUM LESS THAN MR. KENNEDY'S LEGAL FEES FOR A MONTH,

21   HAS MULTIMILLION DOLLAR CLAIMS AGAINST FARMERS FOR THE

22   POLICY LIMITS, AND UNLIMITED COST TO DEFENSE.  SO A

23   FORMER SUBSCRIBER HAS AS MUCH INTEREST IN THE FINANCIAL

24   SOLVENCY OF THE EXCHANGES AS A CURRENT SUBSCRIBER.

25             MR. FLANAGAN:  AND WE, OBVIOUSLY INTERVENOR

26   DID NOT AGREE WITH THAT POSITION, AS WE ARGUED AT THE

27   PRELIMINARY APPROVAL HEARING, AND OUR DECLARATION FROM

28   ROBERT HUNTER INSURANCE EXPERT WAS ON RECORD THAT THE

```
 1   SURPLUS THAT FARMERS HOLDS ALREADY IS FAR ABOVE WHAT IS
 2   NECESSARY TO COVER ANY EXCESS, OR UNPLANNED FOR CLAIMS
 3   IN THE FUTURE, WHETHER BY EXISTING POLICY OWNERS OR
 4   OTHERWISE.  SO WE DON'T SEE THAT --
 5           THE COURT:  DID HE ADVISE A.I.G. BEFORE ITS
 6   COLLAPSE?
 7           MR. FLANAGAN:  THE RATE --
 8           THE COURT:  I MEAN A.I.G. LOOKED LIKE IT
 9   WAS A NICE SOLVENT CARRIER, AND IT HAD A NEAR DEATH
10   EXPERIENCE AVOIDED ONLY BY THE TAXPAYERS PUTTING IN
11   ZILLIONS OF DOLLARS.  IT'S HARD TO SAY YOU CAN BE AN
12   OVERFUNDED INSURANCE COMPANY IN TERMS OF CAPITAL
13   RESERVES.
14           MR. FLANAGAN:  WELL, WE DON'T SEE THAT AS A
15   BENEFIT FOR THE CLASS MEMBERS.
16           THE COURT:  FAIR ENOUGH.  POINT OF
17   DISAGREEMENT BUT I'M THE ONE SUPERVISING THE CLASS, NOT
18   MR. ROSENFELD.
19           MR. FLANAGAN:  AND ON THE ISSUE OF OUR
20   FINANCIAL INTEREST HERE, I THINK FIRMLY SAID BEFORE AND
21   I WILL SAY AGAIN, WE'RE NOT HERE FOR ANY KIND OF A
22   FINANCIAL BENEFIT, WHETHER IT BE AS I PRAY OR
23   OTHERWISE?
24           THE COURT:  YOU'RE WAIVING ANY CLAIM TO BE
25   COMPENSATED AS AN OBJECTOR.
26           MR. FLANAGAN:  WE'RE NOT AN OBJECTOR?
27           THE COURT:  YOU'RE WAIVING ANY CLAIM --
28   OKAY.  YOU DON'T WANT -- YOU'RE JUST A PLAINTIFF IN
```

```
 1    INTERVENTION, NOT AN OBJECTOR?

 2              MR. FLANAGAN:  AT THE MOMENT WE'RE ONLY AN

 3    INTERVENOR.

 4              THE COURT:  DOES THAT ANSWER THE QUESTION

 5    WHETHER YOU'RE GOING TO TRY TO GET FEES FOR MAKING THE

 6    BETTER SETTLEMENT?

 7              MR. FLANAGAN:  I DON'T KNOW WHETHER WE

 8    WOULD TRY TO OBJECT AT THIS POINT OR NOT.  THE NEWS

 9    THAT WE HAVE TO SERVE AND FILE BY JUNE 3RD IS NEWS, SO

10    WE'LL HAVE TO TAKE THAT UNDER ADVISEMENT.  ON THE ISSUE

11    OF THE, WHETHER THE FOGEL DECISION, THE APPELLATE COURT

12    DECISION WHETHER IT CONFLICTS WITH THE ALTER EGO

13    DOCTRINE, THE IDEA THAT ALTHOUGH THEY TECHNICALLY SEEK

14    A SEPARATE COMPANY CAN BE CONTROLLED BY ANOTHER IS ONE

15    I WANT TO ADDRESS.  WE TALKED A BIT ABOUT THIS BEFORE.

16              THE OPINION IN THE FOGEL APPELLATE COURT

17    WAS THAT THERE IS A LEGAL SEPARATION BETWEEN F.G.I.,

18    THE ATTORNEY IN FACT AND THE EXCHANGES AND, THEREFORE,

19    F.G.I. IS NOT AN INSURANCE COMPANY.  NOW, THAT DOES

20    NOT --

21              THE COURT:  BUT IF THEY ARE ALTER EGOS THEN

22    IT IS.  I HAVE TO WORK BACKWARDS FROM THEIR ANALYSIS,

23    AND YOU JUST BASICALLY WANT TO REJECT THE CORE PREMISE,

24    THE PREMISE ON WHICH THEIR ENTIRE DECISION IS BASED.

25              MR. FLANAGAN:  BUT THE ISSUE OF THE ALTER

26    EGO DOCTRINE, THE IDEA THAT THERE WOULD BE SUCH A UNITY

27    OF INTEREST BETWEEN THE SEPARATE CORPORATE ENTITIES,

28    THAT THEY'RE ESSENTIALLY IN EFFECT A SINGLE ENTERPRISE.
```

1    IT WAS NOT ADDRESSED BY THE COURT.  IT WAS IN FRONT OF

2    THE COURT OF APPEALS.

3            IT'S A SEPARATE LEGAL ANALYSIS THAT THEY

4    DIDN'T DETERMINE, AND THAT'S WHY WE WANT TO CONTINUE

5    LOOKING AT THE CONTROL ISSUE BECAUSE THIS GOES TO

6    CENTRAL TO THE INTERVENOR'S CONCERN THAT MONEY

7    REVERTING TO THE EXCHANGES TRANSFERRING, WITHOUT ANY

8    PARTICULAR REQUIREMENT ON HOW THAT MONEY IS USED, WILL

9    NOT BE USED FOR THE BENEFIT OF THE MEMBERS OF THE

10   CLASS.

11           THE FACT IS THAT CLAIMS MADE SETTLEMENT

12   IT'S VERY LIKELY THAT THE LARGE PORTION OF THE

13   SETTLEMENT FUND, POTENTIALLY $400 MILLION, WILL BE

14   UNCLAIMED AND, THEREFORE, WILL BE TRANSFERRED TO THE

15   EXCHANGES.

16           THE COURT:  I DON'T DISAGREE ON THAT

17   BECAUSE COLLECTIVE EXPERIENCE OF JUDGES HANDLING CLASS

18   ACTIONS INDICATES THAT THE CLAIMING RATE WHEN FORMS

19   HAVE TO BE USED IN A CONSUMER TYPE CASE TENDS TO BE

20   LOW.  SO THAT WILL PROBABLY HAPPEN AND I'M ANALYZING IT

21   MINDFUL OF THAT.

22           MR. FLANAGAN:  I WANT TO ALSO POINT OUT

23   THAT THE AUTHORITY THAT THE MOVANTS RELY ON IN THEIR

24   BRIEFS SUPPORT OUR POSITION THAT INTERVENORS HAVE THE

25   RIGHT TO DISCOVERY.  I NOTICE IN THEIR --

26           THE COURT:  BUT FOR JUDGE LICHTMAN'S STAY

27   THAT YOU IGNORED, PROBABLY BECAUSE YOU CAME TO THE CASE

28   LATE.  YOU THEORETICALLY DO HAVE THE RIGHT TO PROPOUND

1   DISCOVERY, BUT NOW SINCE A MOTION FOR PROTECTIVE ORDER

2   IS BEFORE ME, BOTH BECAUSE YOU VIOLATED THE STAY WHICH

3   YOU PROBABLY WERE CLUELESS ABOUT, AND BECAUSE I HAVE

4   THE DISCRETIONARY OPPORTUNITY TO DECIDE WHETHER OR NOT

5   THE DISCOVERY IS USEFUL, AT THIS POINT I ASSESS ITS

6   UTILITY AND I FIND NO UTILITY TO IT WHICH IS WHY I'M

7   INCLINED TO GRANT THE MOTION.  BECAUSE CANDIDLY WITH A

8   STAY THAT'S JUST A LITTLE FAUX PAS, BUT YOU KNOW YOU

9   SORT OF DO A MEA CULPA, AND YOU MOVE OUT OF THE CHEW

10  MERITS, BUT ALTHOUGH I HAVEN'T HEARD THE MEA CULPA.

11          MR. FLANAGAN:  ON THE STAY ISSUE THE

12  DEFENDANTS DIDN'T RAISE IT.  THE PLAINTIFFS ACTUALLY

13  WITHOUT AUDIT OR BRIEFING THE PROTECTIVE ORDER MOTION

14  BY THE DEFENDANTS AND EXCHANGES RAISED IT IN PASSING.

15  WE DIDN'T SEE IT IN THE RECORD.  IT'S PROBABLY IN A

16  MEET AND CONFER OR, PARDON ME, ONE OF THE CONFERENCE

17  SESSIONS ON THE LITIGATION.

18          WE WOULD BE HAPPY TO BRIEF THAT SEPARATELY.

19  IT WAS CERTAINLY NOT OUR INTENT HERE TO BE ENGAGED IN

20  MERITS BASED DISCOVERY.  OUR FOCUS HERE IS TO DETERMINE

21  THE REASONABLENESS OF THE SETTLEMENT, AND TEST OUR

22  THEORY THAT BECAUSE OF THE CONTROL OF THE SEPARATE

23  ENTITIES OF F.G.I. AND THE EXCHANGES, MONEY GOING BACK

24  TO THE EXCHANGES WILL BE USED FOR PURPOSES OTHER THAN

25  THE BENEFIT OF THE CLASS.  THOUGH WE WOULD BE HAPPY TO

26  BRIEF THAT.  IF THE ISSUE IS WE COME DOWN TO THE ISSUE

27  OF ASSUMING THE STAY APPLIES, ALTHOUGH AS I UNDERSTAND

28  IT THE STAY WAS REGARDING CLASS CERTIFICATION, WHICH

```
 1   YOU KNOW WHETHER IT'S STILL IN EFFECT AFTER PRELIMINARY
 2   APPROVAL OF THE CLASS IS A BIT BEFUDDLING TO ME, BUT
 3   ASSUMING IT IS, WE BELIEVE THAT A LOT OF OUR DISCOVERY,
 4   IF WE GET DOWN TO THIS POINT, THAT PART OF THE
 5   ARGUMENT, WOULD GO TO CLASS CERTIFICATION.
 6        THE COURT:  MY BOTTOM LINE DECISION TODAY
 7   DOESN'T DEPEND UPON THE FACT THAT YOU IGNORE THE STAY.
 8   IT ASSUMES THAT IT WOULD BE PRUDENT TO LIFT THE STAY,
 9   AND ANALYSIS YOUR DISCOVERY DEMANDS ON THEIR MERITS
10   WHICH IS WHAT I'M REALLY DOING.
11        MR. FLANAGAN:  IF I UNDERSTAND THE ISSUE
12   IS, AS I UNDERSTOOD IT, THE COURT HAD SAID THAT OTHER
13   THAN THE STAY WE WOULD HAVE RIGHTS TO DISCOVERY.
14        THE COURT:  IN A THEORETICAL SENSE AND THEN
15   YOUR ADVERSARY COMES IN, AND SAYS BUT NOT THIS
16   DISCOVERY, THAT'S WHAT A MOTION FOR PROTECTIVE ORDER
17   DOES.  THAT'S WHAT YOUR ADVERSARIES DID.  IT'S BEFORE
18   ME.  THERE ARE ARGUMENTS THAT THIS DISCOVERY IS
19   UNHELPFUL AND BURDENSOME, AND JUST TENDING TO BE
20   TENDENCIOUS, AND AN EFFORT TO FRUSTRATE THE SETTLEMENT
21   AND TO UPSET THE APPLE CART, OR TO CLAIM GRANGER FOR
22   CONSUMER WATCHDOG IN LIEU OF THE PLAINTIFF'S COUNSEL
23   WHO ACTUALLY BROUGHT THE CASE, SEEM TO BE COMPELLING
24   ARGUMENTS.
25        IF THIS WAS SUCH A GOOD CASE WHY DIDN'T YOU
26   FOLKS BRING IT SIX OR EIGHT YEARS AGO?
27        MR. FLANAGAN:  WELL, OUR ORGANIZATION WAS
28   FOLLOWING THIS CASE BEFORE I WAS INVOLVED, BUT VERY
```

```
 1   EARLY ON AS I UNDERSTAND IT WE WERE APPROACHED BY THE
 2   PLAINTIFFS TO HELP WITH THE CASE AT SOME POINT EARLY
 3   ON.  WE WATCHED IT VERY CLOSELY.
 4              THE COURT:  YOU HAVE AN UNKNOWN PARTY,
 5   MR. LACK.
 6              MR. FLANAGAN:  WE BRIEFED THE ISSUE WHEN IT
 7   WENT TO THE COURT OF APPEAL.  WHEN THE SETTLEMENT CAME
 8   OUT WE WERE VERY CONCERNED WITH THE TERMS OF IT.  WHEN
 9   THE ISSUES CAME IN FRONT OF THE MEDIA R.C. HEUBLEIN
10   CALLED US, AND SAID I SAW YOU IN THE NEWSPAPER TALKING
11   ABOUT THE DETAILS OF THIS SETTLEMENT.  IT SEEMS REALLY
12   BAD, PLEASE REPRESENT ME.  THAT'S THE PROCESS.
13   CONSUMER WATCHDOG IS NOT NEW.  R.C. HEUBLEIN CAME TO
14   THE CASE WHEN HE DID BECAUSE OF THE TIMING OF THE
15   RELEASE OF THE DETAILS OF THE SETTLEMENT AGREEMENT, AND
16   AGAIN AS WE BRIEFED IN OUR PAPERS, THE ISSUES IN THE,
17   IN OUR REQUEST FOR DISCOVERY, ALTHOUGH THERE ARE
18   SEVERAL ISSUES THAT WE TALK ABOUT, OR SEVERAL QUESTIONS
19   WE ASK, ALL GO TO THE FUNDAMENTAL OVERARCHING OBJECTION
20   THAT WE RAISED DURING THE PRELIMINARY APPROVAL, WHICH
21   IS THE IDEA THAT MONIES TRANSFER THE EXCHANGES AREN'T
22   BENEFICIAL TO THE CLASS.  THE PARTIES OBJECTED BASED ON
23   THE NUMERIC VALUE OF THE DIFFERENT QUESTIONS WHICH, OF
24   COURSE, IS NOT A LEGAL ARGUMENT AGAINST THE DISCOVERY.
25   I WILL SAY WE COULD HAVE --
26              THE COURT:  BURDENSOMENESS AND DELAY IN THE
27   CONTEXT OF TRYING TO APPROVE, OR AT LEAST SEEK FINAL
28   APPROVAL FOR A COMPLICATED SETTLEMENT.  COMPLICATED
```

```
 1   BOTH BECAUSE IT HAS A FEW COMPLEX TERMS BUT MORE
 2   PARTICULARLY BECAUSE OF THE NOTICE GIVEN IS A HUGE
 3   EXERCISE.  THEY HAVE A RIGHT TO SAY THAT THIS IS JUST
 4   AN EFFORT TO DELAY AND FRUSTRATE.  THAT'S WHAT I'M
 5   READING IT TO BE.  TO BE HONEST I READ YOUR EFFORT AT
 6   THIS TIME AS AN EFFORT TO DELAY AND FRUSTRATE SO THAT
 7   YOU MAKE YOURSELVES A PLAYER, AND I'M NOT PERSUADED
 8   THAT I SHOULD.  THAT'S WHY I'M GOING TO GIVE HEUBLEIN
 9   UNTIL THREE WEEKS FROM -- ACTUALLY, TWO WEEKS FROM THIS
10   FRIDAY TO TELL ME WHETHER HE INTENDS TO STAY IN THE
11   CLASS OR GET OUT OF IT.  HE CAN GET OUT OF IT, AND FILE
12   HIS OWN LAWSUIT, AND SEE IF HE'S GOT THE BETTER OF IT.
13           MR. FLANAGAN:  YOUR HONOR, IN LIGHT OF --
14   WE'RE NOT HERE TO DELAY IT.  IF ANYTHING THE MOVEMENTS,
15   MOVANTS HERE THAT BROUGHT THE MOTION ARE ATTEMPTING TO
16   DELAY.  WE OUR --
17           THE COURT:  RESPECTFULLY YOUR 30 PLUS
18   DEPOSITIONS WOULD DELAY IT.  ANYTHING ELSE THAT'S
19   NONREPETATIVE?  YOU HAVEN'T PERSUADED ME AT ALL.
20           MR. FLANAGAN:  IN 30 DEPOSITIONS WE NOTICED
21   DEPOSITIONS AGAINST F.G.I. AND THE EXCHANGES.  THE
22   EXCHANGES JUST TOLD US THEY ARE GOING TO SEND A SINGLE
23   PERSON.  F.G.I. HAS TOLD US THEY ARE GOING TO SEND US A
24   SINGLE PERSON.
25           THE COURT:  WE HAVE MULTIPLE TOPICS.
26           MR. FLANAGAN:  JUST LASTLY, ON THIS ISSUE
27   THAT OF THE INTERVENOR BEING REQUIRED TO CHOOSE BETWEEN
28   OPTING OUT AND PARTICIPATING, I REQUEST THAT BEFORE YOU
```

1  MAKE THAT DETERMINATION THEY WE WOULD BE ALLOWED TO

2  BRIEF THAT ISSUE.

3          THE COURT:  YOU DID.  BUT AS PER IN THEIR

4  MOVING PAPERS YOU OPPOSED IT IN YOUR OPPOSITION, AND IT

5  WAS THE SUBJECT OF THE REPLY.

6          MR. FLANAGAN:  WE OPPOSED IT IN THE MOTION

7  BECAUSE THERE IS NO LEGAL AUTHORITY FOR THIS IDEA THAT

8  AN INTERVENOR WHO HAS AN INDEPENDENT RIGHTFUL

9  LITIGATION HAS TO OPT OUT, OR CHOOSE TO BECOME OR

10  PARTICIPATE IN THE CLASS --

11          THE COURT:  THAT'S WHY I NOTED IT'S A

12  QUESTION OF FIRST IMPRESSION, AND WE HAVE A VERY VAGUE

13  STATUTE THAT AUTHORIZES CLASS ACTIONS IN CALIFORNIA.

14  IT IS BREATHTAKINGLY SUMMARY BUT INTO THAT HUMBLE

15  VESSEL MUCH WINE HAS BEEN POURED BY THE APPELLATE

16  AUTHORITIES, OUR RULES OF COURT MAKE A PASSING ATTEMPT

17  TO GIVE US A FEW LITTLE ROAD MARKS ABOUT HOW TO DEAL

18  WITH CLASS ACTIONS, BUT MOSTLY IT'S APPELLATE

19  AUTHORITIES, AND WE'RE TOLD THAT WE NEED TO BE ADAPTIVE

20  AND FLEXIBLE AND TRY TO MAKE THINGS WORK GIVEN THAT

21  WE'RE SENT OUT ON THIS PROJECT WITH A REALLY LOUSY SET

22  OF MAPS, AND THAT'S WHAT I NEED TO DO HERE.

23          SO THE QUESTION IS A DUE PROCESS QUESTION

24  GIVEN THAT HEUBLEIN HAS KNOWN ABOUT THE CASE SINCE HE

25  CHOSE TO ENGAGE CONSUMER WATCHDOG MONTHS AGO TO BE HIS

26  COUNSEL, GIVEN THAT HEUBLEIN KNOWS ENOUGH TO HAVE HIS

27  OWN COMPLAINT INTERVENTION.  GIVEN THAT HEUBLEIN IS

28  AWARE OF THE TERMS OF THE NOTICE, AND HAS COMPLAINED

```
 1   ABOUT THE TERMS OF THE NOTICE WEEKS AGO.  GIVEN THAT
 2   HEUBLEIN'S COUNSEL HAS BEEN BEFORE THE COURT TO KNOW
 3   WHAT THE FINAL TERMS OF THE NOTICE ARE IN THE SCHEDULE,
 4   WHY DOES IT VIOLATE R.C. HEUBLEIN'S DUE PROCESS RIGHTS.
 5   TELL HIM YOU KNOW EVERYTHING YOU NEED TO KNOW.  YOU
 6   KNOW WHAT THE NOTICE SAYS.  YOUR DEADLINE HAPPENS TO BE
 7   SOONER BECAUSE THE COURT IS AFRAID THAT YOU ARE FALLING
 8   TO THE CLASS OF BEING NO BETTER THAN A PROFESSIONAL
 9   OBJECTOR, AND/OR YOUR COUNSEL COLLECTIVELY WITH YOU IS
10   TRYING TO ESSENTIALLY TO USE THIS AS A LEVERAGE POINT
11   FOR A PUBLIC RELATIONS GAME IN LIEU OF BRINGING THE
12   CASE IN THE FIRST INSTANCE.
13            MR. FLANAGAN:  YOUR HONOR, THE PROBLEM IS
14   THAT BY REQUIRING THE INTERVENOR TO BE OPTING OUT OF
15   PARTICIPATING YOU ARE ESSENTIALLY AS I UNDERSTAND IT,
16   MAYBE I'M WRONG, DISMISSING HIS COMPLAINT AND
17   INTERVENTION.
18            THE COURT:  NO.  HE OPTS OUT.  HE HAS A
19   COMPLAINT AND INTERVENTION.  HE THINKS HE CAN DO BETTER
20   THAN GIRARDI & KEESE.  HE THINKS HE CAN DO BETTER THAN
21   ENGSTROM, LIPSCOMB & LACK.  HE CAN BEAT SKADDEN LORD --
22   EXCUSE ME -- LOCKELORD, BISSELL AND DEWEY & LEBOEUF ON
23   THE MERITS OF THE CASE HAVE AT IT, AND SEE WHAT YOU CAN
24   MAKE OF THE CASE.  IF IT'S A MUCH BETTER CASE THAN THE
25   TERMS OF THE SETTLEMENT, SHOW US THE STUFF.
26            I FRANKLY THINK IT'S A VERY GOOD SETTLEMENT
27   GIVEN THE LEGAL QUESTIONS THAT ARE VERY MURKY, AND THE
28   FIRST IMPRESSION I THINK IT'S A MARVELOUS JOB THAT
```

```
 1    PLAINTIFF'S COUNSEL HAVE PULLED OFF HERE, BUT IF YOU
 2    THINK YOU CAN DO BETTER AT IT FOR R.C. HEUBLEIN HAVE
 3    HIM TAKE A WHIRL AT IT.
 4              MR. FLANAGAN:  IF I MAY UNDERSTAND THEN,
 5    THE REQUIREMENT IN FRONT OF THE INTERVENOR IS TO CHOOSE
 6    BETWEEN OPTING OUT OR BECOMING A CLASS MEMBER AND
 7    OBJECTING.  WHAT HAPPENS TO THE COMPLAINT AND
 8    INTERVENTION IF HE CHOOSES NO. 2?  DOES IT STILL EXIST
 9    OR DOES HE HAVE RIGHTS?  ARE HIS RIGHTS AS A INTERVENOR
10    LIMITED TO THE RIGHT OF THE OBJECTOR --
11              THE COURT:  YES.  HE WOULD HAVE THE, IF HE
12    DOESN'T OPT OUT HE IS A CLASS MEMBER, AND HAS ONLY THE
13    RIGHTS OF AN OBJECTOR.  IF HE WANTS TO PURSUE HIS OWN
14    ACTION BY OPTING OUT OF THE CLASS, HE CAN MAKE IT WITH
15    WHATEVER CLAIMS AND TORT OR CONTRACT OR OTHERWISE YOU
16    THINK THERE ARE.  YOU DON'T HAVE RES JUDICATA AGAINST
17    YOU AND YOUR ADVERSARY WOULD HAVE TO WAIT IN FEAR AND
18    DREAD AS TO WHAT'S GOING TO HAPPEN WHEN THEY HAVE TO
19    MEET THE CASE ON THE MERITS BECAUSE YOU'LL HAVE A CLAIM
20    THAT'S NOT BARRED BY RES JUDICATA AND WE'LL SEE WHO
21    WINS.
22              MR. FLANAGAN:  SORRY TO KEEP ASKING TO
23    CLARIFY, BUT IT APPEARS TO ME IF WE OPT OUT WE'RE NO
24    LONGER AN INTERVENOR.  RIGHT?  WE'RE NO LONGER IN THE
25    SUIT, WE'RE OUT.
26              THE COURT:  RIGHT.  YOU HAVE A RIGHT TO
27    LITIGATE THESE CLAIMS, AND IF YOUR CURRENT COMPLAINT
28    AND INTERVENTION ISN'T A SUFFICIENT PLEADING TO
```

```
 1   ACCOMPLISH IT, YOU CAN AMEND IT TO PLEAD THE UNDERLYING
 2   CLAIMS YOU WANT THAT YOU THINK HAVE MERIT ON BEHALF OF
 3   R.C. HEUBLEIN, AND IF HE WANTS TO BRING A CLASS OF OPT
 4   OUT PEOPLE WHO ARE ADEQUATE IN NUMBER TO JUSTIFY A NEW
 5   CLASS, I'VE SEEN THAT HAPPEN.  I'VE HAD ONE OF THOSE
 6   WITH GIRLS GONE WILD SO YOU CAN FOLLOW ON THAT LOVELY
 7   PATH WHERE THE SECOND CLASS ACTION WAS COMPOSED OF OPT
 8   OUTS FROM THE FIRST CLASS ACTION, YOU CAN GIVE THAT A
 9   WHIRL.
10            MR. FLANAGAN:  AND IF HE CHOOSES TO STAY IN
11   HIS RIGHTS AS AN INTERVENOR ARE REDUCED BY THE LIMITS
12   THAT APPLY TO AN OBJECTOR?
13            THE COURT:  YES.  I DON'T THINK THAT
14   VIOLATES THE DUE PROCESS RIGHTS.
15            MR. FLANAGAN:  I'M DONE.  THANKS.
16            THE COURT:  OKAY.  MR. LACK?
17            MR. LACK:  JUST HAVE TWO COMMENTS, YOUR
18   HONOR.  FIRST OF ALL, I'VE BEEN INVOLVED IN THIS CASE
19   FROM DAY ONE.  I SIGNED THE CLIENT UP AND TOOK THE CASE
20   IN FROM THE REFERRING LAWYERS.  AT NO TIME DID WE EVER
21   ASK CONSUMER WATCHDOG FOR HELP.  WE RECEIVED A CALL
22   FROM HARVEY ROSENFELD WAY BACK WHEN ASKING US IF WE'D
23   HAVE ANY OBJECTION TO THEIR FILING AN AMICUS BRIEF.  WE
24   STATED WE WOULD NOT; HOWEVER, WE DEEPLY REGRET THAT
25   DECISION BECAUSE THEIR BRIEF TOOK THEM DOWN A PATH OF
26   MANY ISSUES THAT WE WEREN'T EVEN INTERESTED IN.
27            SECOND OF ALL, ANY LAWYER HANDLING THE
28   CLASS REPRESENTATION IN THIS CASE, GIVEN THERE WAS A
```

1    STAY ORDER ALL THESE YEARS, COULD HAVE DONE THREE

2    THINGS:

3            TO COMPLETELY PREPARE THIS CASE FOR TRIAL,

4    FIRST AND FOREMOST, ALL YOU HAD TO DO WAS ATTEND THE

5    INVESTOR DAY CONFERENCES THAT WERE HANDLED, THAT WERE

6    SCHEDULED QUARTERLY.  IT'S A PUBLIC COMPANY.  THERE WAS

7    A WRITTEN TRANSCRIPT PREPARED OF THOSE PROCEEDINGS, AND

8    VIDEOS WHICH LAID BARE ALL THE ADMISSIONS WE NEEDED TO

9    PROVE OUR CASE, WHATEVER OUR THEORY WAS.

10           SECOND OF ALL, THEY FEEL A DOCUMENT EACH

11   YEAR WITH THE NATIONAL ASSOCIATION OF INSURANCE

12   COMMISSIONERS, AND IN EVERY STATE WHERE THEY DO

13   BUSINESS WITH THE DEPARTMENT OF INSURANCE CALLED A

14   CONVENTION STATEMENT, IN SOME CASES IT'S 200 PAGES

15   LONG, BREAKS EVERY CLASS OF BUSINESS THAT THEY HAVE

16   DOWN INTO IT'S CONSTITUENT PARTS.  IT TELLS YOU HOW

17   MUCH THEY PAY FOR CLAIMS, HOW MUCH THEY PAY FOR OTHER

18   SERVICES, WHICH IS THE ATTORNEY IN FACT FEE.  SO

19   STATISTICALLY EVERYTHING WE WOULD NEED, ALL THE RAW

20   DATA IS CONTAINED THERE AS AN ADMISSION.

21           THIRD OF ALL, YOU HIRE THE BEST EXPERT YOU

22   CAN.  THE EXPERT WE HIRED HAD BEEN INVOLVED IN THIS

23   CASE FOR AT LEAST SIX YEARS IS THE VERY EXPERT THAT

24   CONSUMER WATCHDOG RELIES UPON, AND HIRES REGULARLY FOR

25   WHATEVER BATTLES THEY CHOOSE TO PICK.  SO I CAN TELL

26   YOU THAT THE DISCOVERY NOW ANTICIPATED GOES TO ONE

27   THING, AND THAT'S TO ESTABLISH THIS ALTER EGO.

28           THE COURT:  MR. KENNEDY, YOUR THOUGHTS?

```
 1              MR. KENNEDY:  UNLESS THE COURT HAS
 2   QUESTIONS WE'RE STILL PREPARED TO SUBMIT.
 3              THE COURT:  OKAY.  MR. TUGGY?
 4              MR. TUGGY:  WE'RE PREPARED TO SUBMIT, YOUR
 5   HONOR.
 6              THE COURT:  MR. RICHMOND?
 7              MR. RICHMOND:  WE WERE PREPARED TO SUBMIT,
 8   YOUR HONOR.
 9              THE COURT:  SORRY TO MAKE A LONG OBJECTION
10   SO POINTLESS.  THEN THE MOTION'S GRANTED.  LET ME LOOK
11   AT THE PROPOSED ORDER.
12              OBVIOUSLY IF YOU THINK IT'S THAT WRONG,
13   MR. FLANAGAN, YOU CAN AND SHOULD TAKE A WRIT.
14              THERE ARE INTERLINEATIONS IN THE ORDER.
15   MR. KENNEDY IS MOVING PARTY.  YOU CAN GIVE NOTICE WITH
16   THE CORRECT CONFORMED ORDER.
17              MR. KENNEDY:  YES, YOUR HONOR.
18              THE COURT:  COURT'S IN RECESS.
19   ////
20
21
22
23
24
25
26
27
28
```

```
 1            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                 FOR THE COUNTY OF LOS ANGELES

 3    DEPARTMENT NO. 307    HON. WILLIAM F. HIGHBERGER, JUDGE

 4

 5    BENJAMIN FOGEL,                    )
                                         )
 6                    PLAINTIFF,         )
      V.                                 )
 7                                       )
      FARMERS GROUP, INC., ET AL,        )CASE NO.
 8                                       )BC300142
                       DEFENDANT.        )
 9    _____)REPORTER'S
                                          CERTIFICATE
10

11            I, PAMELA GOEPPNER, OFFICIAL REPORTER OF

12    THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE

13    COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT I DID

14    CORRECTLY REPORT THE PROCEEDINGS CONTAINED HEREIN AND

15    THAT THE FOREGOING PAGES 1 THROUGH 26, COMPRISE A FULL,

16    TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS AND

17    TESTIMONY TAKEN IN THE MATTER OF THE ABOVE-ENTITLED

18    CAUSE ON MAY 18, 2011.

19

20            DATED THIS 18TH OF MAY, 2011.

21

22    _____, CSR NO. 10578.
              OFFICIAL REPORTER
23

24

25

26

27

28
```

**EXHIBIT C**

1  RAOUL D. KENNEDY (Bar No. 40892)
   RICHARD J. ZUROMSKI, JR. (Bar No. 227569)
2  JAMES P. SCHAEFER (Bar No. 250417)
   SCOTT J. CARR (Bar No. 245588)
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Embarcadero Center, Suite 3800
4  San Francisco, California 94111-4144
   Telephone:   (415) 984-6400 / Facsimile:   (415) 984-2698
5
   DARREL J. HIEBER (Bar No. 100857)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
7  Los Angeles, California 90071
   Telephone:   (213) 687-5000 / Facsimile:   (213) 687-5600
8
   Attorneys for Defendants and Defendants in Intervention
9  FARMERS GROUP, INC., FIRE UNDERWRITERS
   ASSOCIATION, and TRUCK UNDERWRITERS ASSOCIATION
10

11             SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF LOS ANGELES

13

14  BENJAMIN FOGEL, on behalf of himself and    )  Case No. BC 300142
    the class,                                   )
15                                               )
                     Plaintiffs,                 )  **NOTICE OF ENTRY OF ORDER**
16                                               )  **GRANTING JOINT MOTION FOR**
    v.                                           )  **PROTECTIVE ORDER REGARDING**
17                                               )  **INTERVENOR R.C. HEUBLEIN'S**
    FARMERS GROUP, INC., FIRE                    )  **DEPOSITION NOTICES,**
18  UNDERWRITERS ASSOCIATION; TRUCK             )  **INTERROGATORIES AND**
    UNDERWRITERS ASSOCIATION;                    )  **DOCUMENT PRODUCTION**
19  ZURICH FINANCIAL SERVICES and Does          )  **REQUESTS**
    2 through 100, inclusive,                     )
20                                               )  Dept:  307
                     Defendants.                 )  Judge: Hon. William F. Highberger
21                                               )
    _____ )  Action Filed:      August 1, 2003
22  RC HEUBLEIN,                                 )  Discovery Cut Off: None
                                                 )  Trial Date:        None
23                   Intervenor.                 )
    _____ )
24

25

26

27

28

---

NOTICE OF ENTRY OF ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER          BC 300142

| 1 | TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD: |

1      TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on May 18, 2011, the Court entered the Order Granting Joint

3  Motion For Protective Order Regarding Intervenor R.C. Heublein's Deposition Notices,

4  Interrogatories And Document Production Requests in the above-referenced matter, a true and

5  correct copy of which is attached hereto as Exhibit A.

6

7  DATED:  May 18, 2011           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8

9                         By:  _____

10                             Richard J. Zuromski, Jr.

11               Attorneys for Defendants and Defendants in Intervention
                          FARMERS GROUP, INC.,

12                FIRE UNDERWRITERS ASSOCIATION, and
                  TRUCK UNDERWRITERS ASSOCIATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

NOTICE OF ENTRY OF ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER         BC 300142

# EXHIBIT A

1  RAOUL D. KENNEDY (Bar No. 40892)
   RICHARD J. ZUROMSKI, JR. (Bar No. 227569)
2  JAMES P. SCHAEFER (Bar No. 250417)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
3  Four Embarcadero Center, Suite 3800
   San Francisco, California 94111-4144
4  Telephone:  (415) 984-6400 / Facsimile:  (415) 984-2698

5  DARREL J. HIEBER (Bar No. 100857)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  300 South Grand Avenue, Suite 3400
   Los Angeles, California 90071
7  Telephone:  (213) 687-5000 / Facsimile:  (213) 687-5600

8  Attorneys for Defendants and Defendants in Intervention
   FARMERS GROUP, INC., FIRE UNDERWRITERS
9  ASSOCIATION, and TRUCK UNDERWRITERS ASSOCIATION

10  (List of additional counsel on following page)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 18 2011

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
K. KRYSTKIEWICZ

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                   FOR THE COUNTY OF LOS ANGELES

13

14  BENJAMIN FOGEL, on behalf of himself and          Case No. BC 300142
    the class,
15                                                    [PROPOSED] ORDER GRANTING JOINT
                        Plaintiffs,                   MOTION FOR PROTECTIVE ORDER
16                                                    REGARDING INTERVENOR R.C.
    v.                                                HEUBLEIN'S DEPOSITION NOTICES,
17                                                    INTERROGATORIES AND DOCUMENT
    FARMERS GROUP, INC., FIRE                         PRODUCTION REQUESTS
18  UNDERWRITERS ASSOCIATION; TRUCK
    UNDERWRITERS ASSOCIATION;
19  ZURICH FINANCIAL SERVICES and Does
    2 through 100, inclusive,
20
                        Defendants.
21

22  R.C. HEUBLEIN,

23                      Intervenor.

24

25

26

27

28

    [PROPOSED] ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER          BC 300142

1 | MATTHEW M. WALSH (Bar No. 175004)
JOHN E. SCHREIBER (Bar No. 261558)
2 | DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
3 | Los Angeles, CA  90071-1530
Telephone:  (213) 621-6000
4 | Facsimile:  (213) 621-6100

5 | RALPH C. FERRARA (admitted *pro hac vice*)
DEWEY & LEBOEUF LLP
6 | 1101 New York Avenue, N.W.
Washington, D.C.  20005-4213
7 | Telephone:  (202) 346-8000
Facsimile:  (202) 346-8102
8 |
Attorneys for Defendant and Defendant in Intervention
9 | ZURICH FINANCIAL SERVICES

10 | STEPHEN A. TUGGY (Bar No. 120416)
JONATHAN BANK (Bar No. 43210)
11 | SILVIA HUANG (Bar No. 261190)
LOCKE LORD BISSELL & LIDDELL LLP
12 | 300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071
13 | Telephone:  (213) 485-1500
Facsimile:  (213) 485-1200
14 |
Attorneys for Non-Parties FARMERS
15 | INSURANCE EXCHANGE, FIRE INSURANCE
EXCHANGE, and TRUCK INSURANCE
16 | EXCHANGE

17

18

19

20

21

22

23

24

25

26

27

28

-2-

*only due to the general stay in place*

1   The Court, having considered the papers of the parties and arguments of counsel, and for
2   good cause appearing, hereby determines that Intervenor RC Heublein was required, but did not,
3   seek the Court's permission before propounding discovery, that the discovery propounded is not
4   necessary in order to permit an intelligent evaluation of the terms on which this case is proposed to
5   be settled, and that the discovery propounded is otherwise overly broad and unduly burdensome.
6   The Court hereby **GRANTS** the Joint Motion For Protective Order Regarding Intervenor R.C.
7   Heublein's Deposition Notices, Interrogatories And Document Production Requests, and
8   **ORDERS** that Defendants and the Exchanges are relieved of all obligations to respond to
9   Intervenor's discovery requests. The Court **FURTHER ORDERS** that Intervenor notify the Court
10  and the parties by *(by a filing)* no later than ~~72 hours after the date of this Order~~ *June 3, 2011*, whether Intervenor intends to
11  opt-out of the class or continue as an objector.

12  **IT IS SO ORDERED.**

14  DATED: *5/18*, 2011

The Honorable William F. Highberger
Judge of the Superior Court

[PROPOSED] ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER
646539-Los Angeles Server 2A - MSW
BC 300142

**PROOF OF SERVICE**

   I, the undersigned, declare that: I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the instant case.  My business address is 4 Embarcadero Center, Suite 3800, San Francisco, California 94111.

   On **May 18, 2011**, I served the following documents described as:

**NOTICE OF ENTRY OF ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING INTERVENOR R.C. HEUBLEIN'S DEPOSITION NOTICES, INTERROGATORIES AND DOCUMENT PRODUCTION REQUESTS**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒   (**BY MAIL** *with Courtesy Copy via E-mail*) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at San Francisco, California and placed for collection and mailing following ordinary business practices.

☐   (**BY FEDERAL EXPRESS**) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at San Francisco, California and placed for collection and delivery following ordinary business practices.

   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

   Executed on **May 18, 2011**, at San Francisco, California.

**Mary Ann Rubalcaba**
_____
Type or Print Name

*Mary Ann Rubalcaba*
_____
Signature

-1-

PROOF OF SERVICE                   BC 300142

1

## SERVICE LIST

2  Thomas V. Girardi, Esq.
    Graham B. Lippsmith, Esq.
3  GIRARDI & KEESE
    1126 Wilshire Boulevard
4  Los Angeles, California 90017
    Telephone: (213) 977-0211

Johnathan E. Richman
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019-6092
Telephone: (212) 259-8004

5

6  Matthew M. Walsh, Esq.
    John E. Schreiber, Esq.
    DEWEY & LEBOEUF LLP
7  333 South Grand Avenue, Suite 2600
    Los Angeles, California 90071-1530
8  Telephone: (213) 621-6000

Ralph Ferrara
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington DC 20005-4213
Telephone: (202) 346-8020

9  Harvey Rosenfield
    Pamela Pressley
10  Todd M. Foreman
    Jerry Flanagan
11  CONSUMER WATCHDOG
    1750 Ocean Park Boulevard, Suite 200
12  Santa Monica, California 90405
    Telephone: (310) 392-0522

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**PROOF OF SERVICE**

BC 300142

# **<u>EXHIBIT D</u>**

FILED

~~OCTOBER~~ NOV 1 7 2006
KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: M. Ashley, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF MARIN

| | |
|---|---|
| JANINE PERRY and LISA HERNANDEZ, individually, as private attorney general, and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VITAMIN SHOPPE INDUSTRIES INC., <br><br> Defendant. | Case No.: CV 053770 <br><br> ORDER RE: PETITION TO DISQUALIFY JUDGE FOR CAUSE |

    The Court was assigned this matter by the Judicial Council. This Court has reviewed the Verified Statement of Disqualification of Judge John A. Sutro Jr. and Declaration of Jeffrey Spencer in Support Thereof (including attached Exhibits 1 and 2) as well as Judge Sutro's Amended Order Striking Statement of Disqualification and the Supplemental Verified Answer of Judge John A. Sutro to the Challenge for Cause together with Memorandum of Points and Authorities.

    Additionally, in order to better understand the events giving rise to the transcribed hearing before Judge Sutro on July 3, 2006, this Court requested and received from the of the Marin County Superior Court Clerk's Office the following pleadings:

- Order Granting Joint Motion for Preliminary Approval of Class Action Settlement
- Defendant Vitamin Shoppe's Ex Parte Application for: (1) Corrective Notice; (2) Disqualification of Counsel; (3) Injunction; (4) Sanctions; and (5) Corrective Procedure
- Plaintiff's Joinder in Defendant the Vitamin Shoppe's Ex Parte Application
- Declaration of Edward Wynne in Support of Defendant the Vitamin Shoppe's Ex Parte Application

## BACKGROUND OF CASE

On April 14, 2006 Judge John A. Sutro issued an Order in this case which conditionally certified the Class for settlement purposes only as follows:

> All current and former employees who were or have been employed by The Vitamin Shoppe as Store Managers, Assistant Store Managers, key Carriers or the equivalent between August 12, 2001 and April 14, 2006, and who do not properly elect to exclude themselves from the Class.

> Should for whatever reason the Settlement not become final, the fact that the parties were willing to stipulate to class certification as part of the Settlement shall have no bearing on, nor be admissible in connection with, the issue of whether a class should be certified in a no-settlement context.

Plaintiffs Janine Perry and Tom Vitrano were appointed for all purposes as Class representatives. Wynn Law Firm was appointed as Class Counsel. Judge Sutro gave preliminary approval to the Joint Stipulation Settlement and Release entered into by the Vitamin Shoppe and plaintiffs Perry and Vitrano, individually and on behalf of the Class as a full and final resolution of all claims in the class action lawsuit. He also gave preliminary approval of the Notice of Pendency of Class Action, Proposed Settlement and Hearing Date for Final Approval, the Claim Form, and the Request for Exclusion Form. Rosenthal & Co. was appointed as Claims Administrator and was ordered to mail the Notices and Claim Forms in the manner provided in the Joint Stipulation. A Final Settlement Hearing was calendared for October 6, 2006.

On or about June 21, 2006 and before the Claims Administrator mailed the Notices, the Law Offices of Jeffrey P. Spencer, counsel for Lisa Hernandez, sent a letter addressed to The Vitamin Shoppe's Store Managers and Assistant Managers.  This letter is Exhibit 2 to the Verified Statement of Disqualification.

Upon learning of this mailing, Defendant's counsel Reed Smith LLP and Class counsel Wynn Law Firm applied ex parte for (1) corrective notice;  (2) disqualification of counsel Spencer;  (3) injunction;  (4) sanctions; and (5) corrective procedure.

The hearing was scheduled before Judge Sutro June 29, 2006 at 9:00 a.m.  Per the Verified Statement of Disqualification, Judge Sutro proceeded with the hearing on that date in Mr. Spencer's absence and over his objection.  The hearing was not able to be concluded that morning and Judge Sutro continued the matter until July 3, 2006, when Mr. Spencer as well as Defendant's counsel and Class counsel all made appearances.  A transcript of that hearing is attached as Exhibit 1 to the Verified Statement of Disqualification.

## DISCUSSION

The ex parte application for relief that Class counsel and defense counsel brought before Judge Sutro contended that Mr. Spencer had seriously breached the State Bar rules of ethical behavior by soliciting and communicating with represented parties (members of the Class) and furthermore making untrue, deceptive and misleading statements and omissions in those communications.  As a corollary, the application complained in the most vigorous terms of Mr. Spencer's improper intrusion on the sanctity of the class action settlement approval process.

At the July 3rd hearing Mr. Spencer opposed the Application and argued (and continues to assert in his Verified Statement of Disqualification) that the letter his firm sent did not constitute

1   a communication to represented parties, was not untrue or misleading in its content, and was

2   constitutionally protected free speech.   Mr. Spencer asserted and continues to assert that under

3   the law the Court's Preliminary Approval of Class Action and conditional certification in this

4   action does not constitute class certification and that the Exhibit 2 letter is only a **pre-**

5   **certification** communication to unnamed putative members of the class.  Class counsel and

6   Defense counsel of course took a completely contrary position claiming certification had

7   occurred under the law with the April 14, 2006 Order of the Court.

8       At the ex parte hearing of July 3rd Judge Sutro plainly agreed with moving parties' legal

9   claims for injunctive relief and corrective notice and corrective procedure.   This reviewing

10  Court has studied the cases cited in the Verified Statement of Disqualification, including the case

11  of *Atari Inc. v. Superior Court* (1985) 166 Cal. App. 3rd 867 as well as the state and federal cases

12  cited in the moving parties' ex parte Application for injunctive relieve.  It has also in its research

13  discovered and reviewed an interesting law review article touching on this subject but not

14  directly addressing exactly when certification of a class occurs.  *36 Ga. L. Rev. 353*,  Article:

15  Pre-Certification Communications Ethics in Class Actions.

16       This reviewing court will not and does not base its ruling regarding disqualification on

17  the legal soundness of Judge Sutro's rulings at the hearing.   A party's remedy for an erroneous

18  ruling is not a motion to disqualify, but rather a review by appeal or writ.  *Ryan v. Welte* (1948)

19  87 Cal. App. 2d 888.

20       The analysis does not end there however.  The totality of Judge Sutro's statements made

21  at the subject hearing should be examined to determine whether it would be just for him to

22  remain on this case.

California Code of Civil Procedure sections 170.1(a)(6)(A) and (B) read in pertinent part: "A judge shall be disqualified if …for any reason a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.  Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification."

A judge's impartiality is evaluated by an objective, rather than subjective standard.  Due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. The question becomes whether a reasonable person would entertain doubts concerning the judge's impartiality.  *Catchpole v. Brannon* (1995) 36 Cal. App. 4th 237; *Hall v. Harker* (1999) 69 Cal. App. 4th 836.

At the July 3rd hearing, Judge Sutro decided that Mr. Spencer had violated state bar rules of professional behavior by having improperly solicited and otherwise improperly communicated with clients not his own.  Whether correct or not, this was a finding that Judge Sutro was obliged to make in order to rule on the merits of the ex parte application for injunctive relief.  Such conduct would constitute a serious breach of professional ethics.  Given his finding, Judge Sutro's remarks that Mr. Spencer acted unethically, committed "blatant" and "outrageous" misconduct and engaged in conduct offensive to the Court, while certainly critical and disapproving of counsel, was commentary that Judge Sutro undoubtedly was entitled to make on the record.  It is well settled that expressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are not evidence of bias or prejudice. *Estate of Friedman* (1915) 171 Cal. 431, 440.  "When the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant

which disqualifies him in the trial of the action. It is his duty to consider and pass upon the

evidence produced before him, and when the evidence is in conflict, to resolve that conflict in

favor of the party whose evidence outweighs that of the opposing party. The opinion thus

formed, being the result of a judicial hearing, does not amount to that bias and prejudice

contemplated by section 170, subdivision 5, of the Code of Civil Procedure as a basis for a

change of venue or a change of judges." *Kreling v. Superior Court* (1944) 25 Cal.2d 305, 312.

Neither can Judge Sutro be faulted, given his finding, for adding that he was contemplating a

referral of the matter to the State Bar.

Similarly, Judge Sutro's accusations that Mr. Spencer was "attempting to torpedo the

settlement in this case" were made in conjunction with his belief that Mr. Spencer had

improperly interfered with the class action process by sending false and/or misleading

communications to represented parties who were not his clients.  While harsh in tone and

perhaps unnecessary to any ruling, the remarks were probably fair commentary given the

egregiousness of the behavior Judge Sutro had determined.

This reviewing judge is concerned, however, with other comments Judge Sutro made

during the course of the hearing which appear to show judicial bias against counsel in this

matter.  Bias is defined as a mental predilection or prejudice; a leaning of the mind; "a

predisposition to decide a cause or an issue in a certain way, which does not leave the mind

perfectly open to conviction".  Pacific *and Southwest Annual Conference v. Superior Court of*

*San Diego County* (1978) 82 Cal. App. 3rd 72, 76.   At the hearing, Judge Sutro made the

following remarks:

1    • "Your interest in this case is apparent and has been from the outset to try to stall out
2       final resolution in this case which the parties affected so that you can move your case
3       ahead in Orange County and secure legal fees" (Exhibit 1, page 4.)
4    • "You failed in all your efforts to try to avoid this case going ahead to settlement and
5       thereby meaning that you're not going to get any fees out of the case in Orange
6       County.  I wasn't born yesterday.  It is so obvious and you don't—if I give you 90
7       days, you could not come with an answer for what you've done in this case to try and
8       get settlement, in violation of my order, to interfere with the operation of that order in
9       an effort to try to get addition fees for your firm.  In my estimation, that's outrageous
10      conduct."  (Exhibit 1, page 4)
11   • "And your arguments here do not address the issues of this case.  They are not
12      applicable to the situation that we have here where the Court has issued a preliminary
13      order of approval conditionally certifying the class, setting up a procedure whereby a
14      form of notice approved by the Court is sent to the class for them to use in
15      determining whether or not to opt out, not some misleading letter from a self-serving
16      counsel who is trying to find some way to get legal fees out of the case where it
17      appears that he is not going to…" (Exhibit 1, pages 6,7)
18   • "And as I say, I think someone who would do what you've done here has got to have
19      unmitigated gall.  And to sit here and talk to a judge the way you've talked to me—I
20      have, I will tell you, a reverence for our judicial system, for our legal system, that I
21      have held from the time that I entered law school.  And I have a great respect for my
22      obligations to maintain the sanctity of that system and its proper operation as a judge.
23      I despair, I have despaired over the past several years, at how mercenary the bar has

*Perry v Vitamin Shoppe Industries, Inc.,, CV 053770*
*Order Re: Petition to Disqualify Judge for Cause*
*Page 7 of 9*

become and how the guiding force, the driving force of law seems to be how much money a lawyer can make off his or her client's problems.  I'm glad I'm out of that now.  There are lots of lawyers in the law who have the same regard for the legal system that I do and operate that way, in spite of the pressures they're put under to run up billable hours and all." (Exhibit 1, page 8)

- After counsel protested Judge Sutro's statements that his conduct was solely motivated by earning legal fees, the Court responded as follows:  "Mr. Spencer you have very little credibility in that regard, because if you were truly such a professional idealist as you profess to be, you wouldn't have sent this letter in the first place, because it is a violation of the rules of professional conduct." (Exhibit 1, page 10)

- An obviously sarcastic comment that the Court appreciated how concerned counsel was that the settlement would be effected correctly in the case. (Exhibit 1, page 10)

Much of this gratuitous language to an objective observer is highly indicative that Judge Sutro has adopted a "mental attitude or disposition" against a lawyer to the action.  The comments strongly suggest, if they do not directly state, that the Court believed Mr. Spencer was an attorney who lacked credibility, whose only concern about litigation was to make money for himself, and whose willingness to engage in unprofessional behavior for his own financial gain undermined the principles of justice that Judge Sutro believed so deeply in.  To a member of the discerning public, it would reasonably appear Judge Sutro has formed such a negative opinion of Mr. Spencer that he would be unable to give him fair consideration in any future hearings in this case.

Also, while not in and of itself dispositive of the issue, this reviewing Court is also concerned with Judge Sutro's award of sanctions against counsel on July 3rd.  Although the order

1   regarding the amount of sanctions was continued for further briefing, this Court saw nothing in

2   the moving papers that specified the legal authority for the imposition of sanctions nor the basis

3   for doing so at an ex parte hearing such as this one.  Nor did the Court state the authority when it

4   granted the request for sanctions rather summarily at the hearing.  Again, while this Court is not

5   judging the legal propriety of Judge Sutro's ruling, it does shed some light as to whether his

6   ruling objectively shows the Court's bias and the degree of personal embroilment the Court finds

7   itself in with counsel.

8

9        In *Solberg v. Superior Court* (1977) 19 Cal. 3d 182, 193, the Supreme Court noted:

10

11       "It is often stated that it is not only the *fact* but the *appearance* of prejudice that
         should disqualify a judge. This is a rule that appeals to the reason of the
12       Constitution. . . . [It] is not the fact of prejudice that would impair the legitimacy
         of the judiciary's role but rather the *probable* fact of prejudice, *i.e.*, the appearance
13       of prejudice. The truth of few, if any, ultimate 'facts' of human existence are
         established to that point of complete certitude which eliminates all plausible
14       doubt. A fact as difficult of ascertainment as any person's 'prejudice' is seldom, if
         ever, proven so completely that reasonable persons might not still disagree. And
15       the mere allegation or good faith belief that a fact is true may be sufficient to
         cause reasonable doubt. Since the legitimacy of the Court's role is essentially a
16       perception of the people, in whose secure confidence the courts must remain if
         their powers are to be maintained, it follows that merely probable or even alleged
17       facts or a good faith belief in such facts may be sufficient to disqualify a judge."
18

19

20                                            **ORDER**

21       Judge John A. Sutro is hereby ordered disqualified from sitting and acting in the above

22   case because of the appearance of probable bias toward a lawyer in the proceeding pursuant to

23   CCP § 170.1(a)(6).

24

25

26   Dated:  October 6, 2006

27

28                                         John J. Garibaldi
                                           Judge of the Santa Clara Superior Court
                                           Sitting on Assignment

SUPERIOR COURT OF CALIFORNIA
COUNTY OF MARIN

**FILED**

OCT 19 2006

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Baker, Deputy

**Case Name**: Janine Perry vs Vitamin Shoppe Industries, Inc.

**Action No: CV 053770**

### PROOF OF SERVICE BY MAIL – 1013A, 2015.5 CCP

I am a citizen of the United States. I am over the age of eighteen years. My address is Marin County Superior Court, P. O. Box 4988, San Rafael, CA 94913-4988. On October 19, 2006, I served the ORDER RE: PETITION TO DISQUALIFY JUDGE FOR CAUSE to the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Post Office mail box at San Rafael, California, addressed as follows:

Honorable John A. Sutro, Jr.
c/o Marin County Superior Court
(Hand Delivered)

Sara L Overton
Cummings, McClorey, Davis, Acho &
Associates
3801 University Ave., Ste. 700
Riverside, CA 92501

John P. Zames
Attorney at Law
355 South Grand Ave., Ste. 2900
Los Angeles, CA 90071

Jeffrey P. Spencer
Attorney at Law
635 Camino De Los Mares, Ste. 312
San Clemente, CA 92673

John E. Pickett
Attorney at Law
100 Drakes Landing Rd., Ste 275
Greenbrae, CA 94904

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 19, 2006 at San Rafael, California

Constance Baker, Supervising
Courtroom Clerk

### PROOF OF SERVICE
### [BY OVERNIGHT OR U.S. MAIL, FAX TRANSMISSION, EMAIL TRANSMISSION AND/OR PERSONAL SERVICE]

**State of California, City of Santa Monica, County of Los Angeles**

I am employed in the City of Santa Monica and County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1750 Ocean Park Blvd., Suite #200, Santa Monica, California 90405, and I am employed in the city and county where this service is occurring.

On June 24, 2011, I caused service of true and correct copies of the document entitled

**VERIFIED STATEMENT OF DISQUALIFICATION OF JUDGE WILLIAM F. HIGHBERGER [C.C.P. § 170.3(C)] AND DECLARATION OF JERRY FLANAGAN IN SUPPORT THEREOF**

upon the persons named in the attached service list, in the following manner:

1.      If marked FAX SERVICE, by facsimile transmission this date to the FAX number stated to the person(s) named.

2.      If marked EMAIL, by electronic mail transmission this date to the email address stated.

3.      If marked U.S. MAIL or OVERNIGHT or HAND DELIVERED, by placing this date for collection for regular or overnight mailing true copies of the within document in sealed envelopes, addressed to each of the persons so listed. I am readily familiar with the regular practice of collection and processing of correspondence for mailing of U.S. Mail and for sending of Overnight mail. If mailed by U.S. Mail, these envelopes would be deposited this day in the ordinary course of business with the U.S. Postal Service. If mailed Overnight, these envelopes would be deposited this day in a box or other facility regularly maintained by the express service carrier, or delivered this day to an authorized courier or driver authorized by the express service carrier to receive documents, in the ordinary course of business, fully prepaid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24, 2011, at Santa Monica, California.

Carmen Aguado

---

1

PROOF OF SERVICE

SERVICE LIST

| **Person Served** | **Method of Service** |
|---|---|

WALTER J. LACK                      _____ FAX
DANIEL G. WHALEN           _____ U.S. MAIL
ENGSTROM, LIPSCOMB & LACK  _____ OVERNIGHT MAIL
10100 Santa Monica Blvd., 16th Floor  _____ HAND DELIVERED
Los Angeles, CA 90067          \_\_\_ X \_\_ EMAIL
Ph: (310) 552-3800
Fax: (310) 552-9434
wlack@elllaw.com
dwhalen@elllaw.com

*Attorneys for Plaintiff Benjamin Fogel and the Class*

JOE K. LONGLEY, Admitted *Pro Hac Vice*  _____ FAX
LAW OFFICES OF JOE K. LONGLEY  _____ U.S. MAIL
1609 Shoal Creek Blvd., Suite 100  _____ OVERNIGHT MAIL
Austin, TX 78701            _____ HAND DELIVERED
Ph: (512) 477-4444          \_\_\_ X \_\_ EMAIL
Fax: (512) 477-4470
joe@joelongley.com

*Attorneys for Plaintiff Benjamin Fogel and the Class*

THOMAS V. GIRARDI         _____ FAX
GRAHAM B. LIPPSMITH     _____ U.S. MAIL
GIRARDI & KEESE            _____ OVERNIGHT MAIL
1126 Wilshire Blvd.            _____ HAND DELIVERED
Los Angeles, CA 90017        \_\_\_ X \_\_ EMAIL
Ph: (213) 977-0211
Fax: (213) 481-1554
tgirardi@girardikeese.com
glippsmith@girardikeese.com

*Attorneys for Plaintiff Benjamin Fogel and the Class*

2

PHILIP K. MAXWELL, Admitted *Pro Hac Vice*  _____ FAX
LAW OFFICES OF PHILIP K. MAXWELL  _____ U.S. MAIL
1717 West Avenue  _____ OVERNIGHT MAIL
Austin, TX 78701  _____ HAND DELIVERED
Ph: (512) 457-1111  ___X__ EMAIL
Fax: (512) 457-4111
phil@philmaxwell.com

*Attorneys for Plaintiff Benjamin Fogel and the Class*

DAVID BURROW, Admitted *Pro Hac Vice*  _____ FAX
MITHOFF LAW FIRM  ___X__ U.S. MAIL
One Allen Center - Penthouse  _____ OVERNIGHT MAIL
500 Dallas Street  _____ HAND DELIVERED
Houston, TX 77002  _____ EMAIL
Ph: (713) 654-1122
Fax: (713) 739-8085

*Attorneys for Plaintiff Benjamin Fogel and the Class*

MICHAEL GALLAGHER, Admitted *Pro Hac Vice*  _____ FAX
THE GALLAGHER LAW FIRM  _____ U.S. MAIL
2905 Sackett St.  _____ OVERNIGHT MAIL
Houston, TX 77098  _____ HAND DELIVERED
Ph: (713) 222-8080  ___X__ EMAIL
Fax: (713) 222-0066
pamm@gld-law.com

*Attorneys for Plaintiff Benjamin Fogel and the Class*

DARREL J. HIEBER  _____ FAX
SKADDEN, ARPS, SLATE, MEAGHER &  _____ U.S. MAIL
FLOM, LLP  _____ OVERNIGHT MAIL
300 South Grand Ave., Ste. 3400  _____ HAND DELIVERED
Los Angeles, CA 90071  ___X__ EMAIL
Ph: (213) 687-5000
Fax: (213) 621-5220
darrel.hieber@skadden.com

*Attorneys for Defendant Farmers Group, Inc.*

3

MATTHEW M. WALSH, ESQ.                          _____ FAX
JOHN E. SCHREIBER, ESQ.                         _____ U.S. MAIL
DEWEY& LEBOEUF LLP                              _____ OVERNIGHT MAIL
333 South Grand Avenue, Ste. 2600              _____ HAND DELIVERED
Los Angeles, CA 90071-1530                     __X__ EMAIL
Ph: (213) 621-6000
Fax: (213) 621-6100
mwalsh@dl.com
schreiber@dl.com

*Attorneys for Defendant Farmers Group, Inc.*

RAOUL D. KENNEDY, ESQ.                          _____ FAX
RICHARD J. ZUROMSKI, JR., ESQ.                  _____ U.S. MAIL
DAVIDSON M. PATTIZ                              _____ OVERNIGHT MAIL
JAMES P. SCHAEFER                               _____ HAND DELIVERED
SKADDEN, ARPS, SLATE, MEAGHER &                __X__ EMAIL
FLOM, LLP
Four Embarcadero Center, Ste. 3800
San Francisco, CA 94111-4144
Ph: (415) 984-6400
Fax: (415) 984-2698
raoul.kermedytgskaddea.com
richard.zuromsJd@skadden.com

*Attorneys for Defendant Farmers Group, Inc.*

RALPH FERRARA                                   _____ FAX
DEWEY& LEBOEUF LLP                              _____ U.S. MAIL
1101 New York Avenue, NW                        _____ OVERNIGHT MAIL
Washington, DC 20005-4213                       _____ HAND DELIVERED
Ph: (202) 346-8020                              __X__ EMAIL
Fax: (202) 346-8102
rferrara@dl.com

*Attorneys for Defendant Farmers Group, Inc.*

4

PROOF OF SERVICE

JOHNATHAN E. RICHMAN                          _____ FAX
DEWEY& LEBOEUF LLP                            _____ U.S. MAIL
1301 Avenue of the Americas                  _____ OVERNIGHT MAIL
New York, NY 10019-6092                       _____ HAND DELIVERED
Ph: (212) 259-8004                            __X__ EMAIL
Fax: (212) 259-6333
jrichman@dl.com

*Attorneys for Defendant Farmers Group, Inc*

STEPHEN A. TUGGY                             _____ FAX
JONATHAN BANK                                _____ U.S. MAIL
SILVIA HUANG                                 _____ OVERNIGHT MAIL
LOCKE LORD BISSELL & LIDDELL LLP             _____ HAND DELIVERED
300 South Grand Avenue, Suite 2600           __X__ EMAIL
Los Angeles, California 90071
Ph: (213) 485-1500
Fax: (213) 485-1200
stuggy@lockelord.com
jbank@lockelord.com
shuang@lockelord.com

*Attorneys for Non-Parties Farmers Insurance Exchange, Fire Insurance Exchange, and Truck Insurance Exchange*

JUDGE WILLIAM F. HIGHBERGER               _____ FAX
c/o COURT CLERK                            _____ U.S. MAIL
CENTRAL CIVIL WEST COURTHOUSE              _____ OVERNIGHT MAIL
600 S Commonwealth Ave.                    __X__ HAND DELIVERED
Department 307                             _____ EMAIL
Los Angeles, CA 90005

PROOF OF SERVICE