Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Tel. (213) 330-7150
Fax (213) 330-7152

Robert B. Carey
John M. DeStefano
*rob@hbsslaw.com*
*johnd@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
Tel. (602) 840-5900
Fax (602) 840-3012

Steve W. Berman
*steve@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel. (206) 623-7292
Fax (206) 623-0594
*Attorneys for Plaintiff Kaylene P. Brady, et al. and*
*Nicole Marie Hunter, et al.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  HYUNDAI AND KIA FUEL ECONOMY LITIGATION | MDL No. 2:13-ml-2424-GW-FFM **SETTLING PLAINTIFFS' SUPPLEMENTAL DAMAGES CALCULATIONS IN SUPPORT OF APPROVAL OF PROPOSED SETTLEMENT** Date:  August 21, 2014 Time:  9:30 a.m. Judge:  Hon. George Wu Courtroom:  10 |

1      At the July 24, 2014 hearing, the Court instructed Settling Plaintiffs to submit

2  additional information regarding the aggregate potential damages in the case as well as

3  the general methodology for determining the lump-sum compensation awards for each

4  class vehicle.  Accordingly, Settling Plaintiffs submit this supplemental brief,

5  supported by the accompanying declaration of Robert B. Carey.

6       **I.**       **AGGREGATE POTENTIAL DAMAGES**

7      The aggregate potential damages in this case consist of compensatory damages

8  for the anticipated increased fuel cost over the term of vehicle ownership plus punitive

9  damages (if any) if Plaintiffs were to show intentional deception on the part of

10  Defendants.  Compensatory damages would be reduced to account for amounts paid

11  under Defendants' reimbursement program.

12      To estimate the annual increase in fuel costs recoverable at trial, Settling

13  Plaintiffs use the EPA's assumptions for calculating additional fuel costs: 15,000

14  miles per year, with gas prices between $3.00 and $3.70 during the production

15  timeframe at issue depending upon the model vehicle.[1]  (Carey Decl. ¶ 3.)

16  Multiplying the miles driven by the fuel price and dividing that number by the pre-

17  restatement combined MPG for each vehicle gives the pre-restatement fuel cost.

18  Multiplying the miles driven by the fuel price and dividing that number by the post-

19  restatement combined MPG for each vehicle would give the post-restatement fuel

20  cost.  Aggregating these costs for class members on a per vehicle basis, and then

21  totaling for all vehicles, results in an estimated classwide annual fuel cost of

22

23

24           _____

25      [1] *See, e.g.*, U.S Dep't of Energy, EPA, Fuel Economy Guide: Model Year 2011 at i (sample sticker showing $3.00/gallon and 15,000 mile assumptions), *available at*

26  http://www.fueleconomy.gov/feg/FEG2011.pdf (last visited August 4, 2014); U.S Dep't of Energy, EPA, Fuel Economy Guide: Model Year 2012 at i (sample sticker

27  showing $3.70/gallon), *available at* http://www.fueleconomy.gov/feg/pdfs/guides/ FEG2012.pdf (last visited August 4, 2014).

28

- 1 –

approximately $32,000,000 for Hyundai vehicles and $39,000,000 for Kia vehicles, or $71,000,000 classwide.[2]  (Carey Decl. ¶ 4.)

To arrive at a total damages figure, the annual fuel cost is multiplied by a term of ownership.  Assuming an average term of ownership of six years, which is likely to exceed the actual average ownership period for Hyundai and Kia vehicles,[3] the class would expect to recover $426,000,000.  (Carey Decl. ¶ 5.)  Applying a 15% discount for the net present value of that compensation would yield $362,100,000.  A deduction would then be taken for amounts already paid under Defendants' reimbursement program. (*See* Dkt. No. 284 at 21 (setting forth redacted reimbursement program disbursements as of July 2014)).[4]

Under current Supreme Court doctrine, punitive damages would be limited in a ratio of 9:1 to compensatory damages.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

Settling Plaintiffs heavily discount both the possibility and likely calculation of punitive damages on the facts of this case.  Under California law, punitive damages would require "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice," including "despicable conduct" or an "intentional misrepresentation . . . of a material fact known to the defendant."  Cal. Civ. Code § 3294(a), (c).  As already explained, confirmatory discovery has failed to produce

---

[2] As explained below, the combined MPG rating for some class vehicles remained unchanged before and after the November 2, 2012 restatement.  While fuel cost values were assigned to these vehicles for purposes of figuring lump-sum compensation amounts, no fuel cost was assigned to them for purposes of this potential damages calculation.

[3] *See Nine Cars Americans Keep the Longest*, 24/7 WALL ST., Nov. 6, 2012, http://247wallst.com/special-report/2012/11/06/nine-cars-americans-keep-thelongest/ (failing to list Hyundai or Kia among 2012 car brands the average consumer keeps for six years or more).

[4] Settling Plaintiffs previously explained that the 4 x 40 owners in the class may have a stronger claim to additional amounts, though they face additional risks at the class certification and merits phases. (Dkt. No. 271, at 23.)

1  evidence of reprehensible conduct that would justify the risk of additional litigation

2  over punitive damages.   (Dkt. No. 284, at 18-19.)

3         Moreover, the nature of Defendants' conduct is unlikely to support a high ratio

4  of punitive damages.

5         The degree of reprehensibility of the defendant's conduct is the most
       important indicium of the reasonableness of a punitive damages
6       award. To assess this factor, courts must consider whether: the harm
       caused was physical as opposed to economic; the tortious conduct
7       evinced an indifference to or a reckless disregard of the health or
       safety of others; the target of the conduct had financial vulnerability;
8       the conduct involved repeated actions or was an isolated incident; and
       the harm was the result of intentional malice, trickery, or deceit, or
9       mere accident.(Citation omitted).

10  *Gober v. Ralphs Grocery Co.*, 40 Cal. Rptr. 3d 92, 104 (Cal. App. 2006).  Because this

11  case involves only limited economic loss, rather than a safety issue or another loss

12  which would undermine the overall value of the transaction, it is likely that a court

13  would limit punitive damages to a 1:1 ratio. *See, e.g., Nardelli v. Metro. Grp. Prop. &*

14  *Cas. Ins. Co.*, 230 Ariz. 592, 612 (Ct. App. 2012), *cert. denied*, 133 S. Ct. 2804 (2013)

15  (vacating punitive damages award in economic loss case on federal due process

16  grounds and directing entry of punitive damages in 1:1 ratio to actual damages); *State*

17  *Farm, 538 U.S. at 425.*   ("When compensatory damages are substantial, then a lesser

18  ratio, perhaps only equal to compensatory damages, can reach the outermost limit of

19  the due process guarantee.").

20  **II.    LUMP-SUM PAYMENT CALCULATIONS**

21         Consistent with Settling Plaintiffs' view of the compensatory recovery that is

22  likely available to the class, the Settling Parties used the EPA annual fuel cost

23  discrepancy as a benchmark for calculating the lump-sum settlement benefits available

24  to each class member.  (Carey Decl. ¶ 6.)  The Hyundai settlement was negotiated

25  first, with agreement upon an aggregate amount, $210 million, to represent the total

26  lump-sum cash compensation available to class members (including approximately

27  $45 million in additional compensation for 4x40 owners).  (Carey Decl. ¶ 7.)  Having

28

- 3 –

1    estimated aggregate damages as outlined above, Settling Plaintiffs determined that this

2    aggregate amount would provide for a fair, reasonable, and adequate compensation for

3    class members.  (Carey Decl. ¶ 8.)

4         The parties did not agree on a precise formula for calculating each lump-sum

5    payment.  (Carey Decl. ¶ 9.)  Instead, they agreed to a fair allocation which, subject to

6    minor variations, generally tracked the annual fuel cost increase for each vehicle.

7    (Carey Decl. ¶ 10.)  Lump sum amounts approximate the accumulated fuel cost

8    discrepancy over a 4.75-year term of ownership for current original owners, assuming

9    15,000 miles driven each year, and gas prices between $3.00 and $3.70.[5]  (Carey Decl.

10   ¶ 13.)  To achieve allocation of the full $210 million, many of the lump-sum values

11   were adjusted upward by some slight amount. (Carey Decl. ¶ 14.)

12        The Kia settlement was negotiated after the Hyundai settlement, and settling

13   Plaintiffs sought to achieve a result which provided similar value to each Kia class

14   member.   (Carey Decl. ¶ 15.)  Rather than focus negotiations on the total

15   compensation available, Kia agreed to implement a parallel schedule of compensation

16   built around the same guideline of approximately 4.75 years of ownership, multiplied

17   by the change in EPA annual fuel cost.  (Carey Decl. ¶ 16.)

18        Because of rounding conventions and other nuances of the EPA's evolving fuel

19   cost calculation, some class vehicles with only slight MPG discrepancies showed no

20   difference in EPA estimated fuel cost before and after the November 2, 2012

21   restatement.  (Carey Decl. ¶ 17.)  Defendants agreed that in those cases, rather than

---

[5] For lessees, the assumed term of ownership was adjusted downward to approximate a 2.75-year fuel cost expectancy consistent with the shorter term of a lease.  (Carey Decl. ¶ 11.)  Fleet vehicle owners' assumed term of ownership was adjusted slightly lower, to approximately 2.5 years, reflecting even shorter ownership. (Carey Decl. ¶ 12.)  Non-original owners receive half of the lump-sum amount because the extent of their reliance on the Monroney numbers is less clear and potentially individualized, and their purchases do not directly benefit the Defendants. The lump-sum and enhanced compensation options for former owners are based upon their reimbursement program benefit, because their loss was fixed when they sold their vehicles.

- 4 –

deprive those owners of all compensation, a modest fuel cost difference would be assigned for purposes of calculating the lump-sum benefit. (Carey Decl. ¶ 18.) These adjustments increased the compensation available to the class. (Carey Decl. ¶ 19.) In addition, compensation amounts were rounded off to multiples of $5. (Carey Decl. ¶ 18.)

While slight variations were inevitable, the Settling Parties understood that lump-sum payments should be calculated in a manner equitable to the class, in both substance and appearance. (Carey Decl. ¶ 21.) Accordingly, to control the impact of rounding and other minor adjustments to the lump-sum figures, the Settling Parties ensured that adjusted amounts (net of any additional 4 x 40 benefit) remained close to the goal ratio of 4.75. (Carey Decl. ¶ 22.) At no time did the Settling Parties trade on the interests of one set of class members to benefit another set. (Carey Decl. ¶ 23.) Settling Plaintiffs' goal in settlement was to reach a compromise which would provide all class members with a fair, adequate, and reasonable lump-sum (in addition to enhanced service credit and rebate options) as an alternative to Defendants' reimbursement program. (Carey Decl. ¶ 24.) The online claim form enables class members to compare these benefits side-by-side and select the benefit most valuable to them.

DATED:  August 4, 2014          **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                By  /s/Robert B. Carey

                                Robert B. Carey
                                John M. DeStefano
                                *rob@hbsslaw.com*
                                *johnd@hbsslaw.com*
                                Hagens Berman Sobol Shapiro LLP
                                11 West Jefferson Street, Suite 1000
                                Phoenix, AZ  85003
                                Tel. (602) 840-5900
                                Fax (602) 840-3012

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Tel. (213) 330-7150
Fax (213) 330-7152

Steve W. Berman
*steve@hbsslaw.com*
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel. (206) 623-7292
Fax. (206) 623-0594

*Attorneys for Plaintiff Kaylene P. Brady, et al.*
*and Nicole Marie Hunter, et al.*

DATED: August 4, 2014        MCCUNEWRIGHT LLP

By   /s/Richard D. McCune

Richard D. McCune
*rdm@mccunewright.com*
McCuneWright LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Tel. (909) 557-1250
Fax (909) 557-1275

*Attorneys for Plaintiffs Kehlie R. Espinosa,*
*Lillian E. Levoff, Thomas Ganim, and Dan*
*Baldeschi*

– 6 –

010339-13  693489 V1

SETTLING PLAINTIFFS' SUPPLEMENTAL DAMAGE
CALCULATIONS IN SUPPORT OF APPROVAL OF
PROPOSED SETTLEMENT

# **CERTIFICATE OF SERVICE**

I, Robert B. Carey, hereby certify that on August 4 2014, a true and correct copy of the foregoing document was filed electronically with the Clerk of Courts at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                    /s/Robert B. Carey

SETTLING PLAINTIFFS' SUPPLEMENTAL DAMAGE
CALCULATIONS IN SUPPORT OF APPROVAL OF
PROPOSED SETTLEMENT