## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | MDL 13-2424-GW(FFMx) | Date | August 21, 2014 |
| Title | *In Re: Hyundai and Kia Fuel Economy Litigation* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

**BY TELEPHONE**
Sara D. Avila / Derek Brandt
Justin Saif / Andre D. Finnicum
Justin B. Farar / Francis R. Greene
James Hail / Kelly Tucker
Thomas D. Mauriello

**IN PERSON**
Eric H. Gibbs / Laura Antonini
Harvey Rosenfield / Robert B. Carey
Scott M. Grzenczyk / Richard D. McCune, Jr.
John M. Destefano

Attorneys Present for Defendants:

Dean Hansell
Michael L. Kidney - by telephone
Shon Morgan
Joseph R. Ashby
Benjamin W. Jeffers

PROCEEDINGS: PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS [184];

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND ORDER DIRECTING NOTICE TO THE CLASS [185];

PLAINTIFFS' IN GENTRY, ET AL. V. HYUNDAI MOTOR AMERICA'S MOTION FOR SUGGESTION OF REMAND AND ENFORCEMENT OF STIPULATION IN OPEN COURT [230];

GENTRY AND ABDUL-MUMIT PLAINTIFFS' MOTION FOR PERMISSION TO FILE MOTION TO COMPEL THE SETTLING PARTIES TO DISCLOSE THE RESULTS OF THEIR RECENT ATTORNEY FEE MEDIATION [298]

The Court's Further Consideration of: (1) Motion to Certify Class, (2) Motion for Preliminary Settlement Approval, and (3) Plaintiff Gentry's Motion for Suggestion of Remand, is circulated and attached hereto. Oral argument is held. Based on the Court's Further Consideration, and for reasons stated on the record,

|  |  | 1 | : | 10 |
|---|---|---|---|---|
|  | Initials of Preparer | JG | | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | MDL 13-2424-GW(FFMx) | Date | August 21, 2014 |
|---|---|---|---|
| Title | *In Re: Hyundai and Kia Fuel Economy Litigation* | | |

the Court's determination is as follows:

1. Plaintiffs' Motion for Certification of Settlement Class [184] is GRANTED;

2. Plaintiffs' Motion for Preliminary Approval of Class Settlement and Order Directing Notice to the Class [185] is GRANTED;

3. Plaintiffs' in Gentry, et al. v. Hyundai Motor America's Motion for Suggestion of Remand and Enforcement of Stipulation in Open Court [230] is GRANTED. Counsel for Defendants will file a proposed order forthwith;

4. Gentry and Abdul-Mumit Plaintiffs' Motion for Permission to File Motion to Compel the Settling Parties to Disclose the Results of Their Recent Attorney Fee Mediation [298] is DENIED WITHOUT PREJUDICE.

A Status Conference re Notices is set for **September 3, 2014 at 9:00 a.m.** The settling parties, liaison counsel and defendants are ordered to be present.

|  | 1 | : | 10 |
|---|---|---|---|
| Initials of Preparer | JG | | |

*In re: Hyundai and Kia Fuel Economy Litigation*, Case No. 13-ML-2424-GW-FFM
Further Consideration of: (1) Motion to Certify Class, (2) Motion for Preliminary Settlement Approval, and (3) Plaintiff Gentry's Motion for Suggestion of Remand

## I. Background

On June 26, 2014, the Court held a hearing on the motion for class certification for purposes of settlement, the motion for preliminary settlement approval, and the *Gentry* plaintiff's motion for suggestion of remand. The Court indicated in its tentative ruling (*see* Docket No. 267) that it was inclined to certify a nationwide class for settlement, preliminarily approve the settlement, and, once the class was certified, remand any post-November 2, 2012 claims, since those claims would not be part of the proposed settlement. However, at the June 26 hearing, the Court requested supplemental briefing on the following issues: (1) the role of a conflict of laws analysis in the settlement approval context; (2) revised notice provisions and notice forms; (3) the settlement terms for similar class actions filed against Hyundai and Kia in Canada; (4) an explanation of how the lump-sum payment amounts were calculated for each vehicle; (5) an estimate of the total value of all of plaintiffs' claims were they to succeed on all claims; (6) outstanding discovery issues, as noted by the *Krauth* and *Hasper* plaintiffs at the June 26, 2014 hearing; and (7) when the Court should remand any post-November 2, 2012 claims.

The Court held a second hearing on July 24, 2014 to discuss the issues raised in the supplemental briefing with the parties. In a handout provided to counsel prior to the hearing (*see* Docket No. 290), the Court provisionally concluded that: (1) for the reasons stated in handout, in the prior tentative ruling, at the June 26 hearing (*see* Docket No. 281) and in the Settling Parties' supplemental briefing (*see* Docket No. 294), the choice/conflict of laws aspects were sufficiently resolved except as to limited questions regarding the Virginia/*Gentry* plaintiffs (plus the concomitant remand issue), for which further briefing was solicited; (2) additional revisions to the notice forms and methodology were required; (3) a sufficient exposition of the Canadian Hyundai/Kia settlements had been delineated; (4) further explanation of the lump sum payments and total potential recovery was still needed; and (5) the remaining discovery issues had been ruled upon. At the end of the July 24th hearing, the Court ordered further submissions on three issues: (1) the lump sum payment amounts and total potential recovery calculations for the plaintiff class; (2) revised notice forms, submitted after all plaintiffs' counsel had the opportunity

1

to make suggestions; and (3) the effect of certification of a nationwide class on the putative Virginia/*Gentry* class. The parties have now submitted briefing on these issues.

## II. Discussion

### A. Lump Sum Payments and Total Potential Recovery

Per the Court's request, the Settling Plaintiffs have provided a memorandum and declaration that explain in some detail how the settling parties arrived at the lump sum payment amounts for the different kinds of owners and lessees of different Class Vehicles. *See* Docket No. 297. Settling Plaintiffs explain that the lump sum payment amounts for the Hyundai settlement were calculated in the following manner. First, the Settling Parties agreed on an aggregate amount of $210 million to represent the total lump sum compensation that would be available to Hyundai class members. (*Id.* at 3.) The parties then agreed to a fair allocation of that total amount, informed by the annual fuel cost difference for each Class Vehicle. (*Id.* at 4.) For current original owners, the lump sum amounts approximate the added fuel cost due to the misrepresented fuel economy numbers for an ownership period of 4.75 years, assuming 15,000 miles driven per year and a fuel cost of between $3.00 and $3.70 per gallon. (*Id.*) Some of the fuel economy numbers were then adjusted upward by a slight amount to achieve allocation of the full $210 million. (*Id.*) The Kia settlement was negotiated after the Hyundai settlement, and instead of focusing on a total compensation amount, the Kia lump sum payments were built to parallel the approximations arrived at in the Hyundai settlement. (*Id.*)

As the Court noted from the beginning, the lump sum amounts appear to be correlated to the amount of the fuel economy misstatements. The additional information submitted in Document 297 confirms the Court's view that the different lump sum amounts were determined through a reasonable process and that the resulting numbers are fair, reasonable, and adequate. Though a single formula was not the only underlying determiner of the lump sum payment amounts, rough calculations, combined with a total payout amount, were used and adjusted with fairness in mind. The differences between the recovery amounts stem mostly from differences in the damages suffered as a result of the misrepresentations, rather than any improper favoring of one group of Class Members over another. Therefore, the Court would find that the lump sum payments are fair, reasonable, and adequate, supporting the Court's preliminary approval of the settlement.

As to the total potential recovery in this case, the Settling Plaintiffs have submitted some

2

rough calculations to help the Court evaluate the fairness of the settlement against the possible recovery available to the class if they proceeded with litigation. (*Id.* at 1-2.) The Settling Plaintiffs provided an estimate of the damages to Class Members due to increased fuel costs of approximately $71 million annually. (*Id.*) Assuming an ownership period of six years,[1] which is actually longer than the average Hyundai or Kia owner is expected to keep his or her car, this would result in total damages to the class of $426 million, which would then have to be discounted by the amount already paid in the Reimbursement Program. (*Id.* at 2.) This amount represents the approximate potential compensatory damages recovery. Plaintiffs might also be entitled to punitive damages, though "Settling Plaintiffs heavily discount both the possibility and the likely calculation of punitive damages on the facts of this case." (*Id.*) Settling Plaintiffs believe that were punitive damages awarded in this case, the likely ratio of punitive to compensatory damages would be 1:1, resulting in a total recovery of $852 million; however, any punitive damages amount is highly speculative. (*Id.* at 2-3.) These rough estimates are helpful to the Court and demonstrate that the settlement amount, which was designed to provide $210 million in recovery from Hyundai (and an additional amount from Kia), is a substantial fraction of the total potential recovery in this case.[2] Therefore, the information provided supports the Court's view that the settlement is fair, reasonable, and adequate to the class.

### B. Notice Forms

The parties already revised their proposed notice forms once. The Court reviewed those revised notice documents, as well as the online claims website, prior to the July 24, 2014 hearing. The Court noted that the revisions were an improvement over the original versions of the notice forms, submitted prior to the original June 26, 2014 hearing. However, the *Krauth* and *Hasper* plaintiffs still had objections and suggestions for improvement to the notice forms, and

---

[1] It is unclear to the Court why the Settling Parties used an ownership figure of six years in estimating the overall potential class recovery but utilized 4.75 years in calculating the lump sum payment amounts.

[2] The damage/compensation figures utilized by the Settling Parties does not appear to directly include amounts for potential decreases in the resale values of the Class Vehicles. This Court would not find that omission to render the overall settlement unfair or unreasonable. First, class members who only lease their automobiles would not suffer any of those damages and the amounts provided in the settlement differentiate between owners and lessees. Second, the amount of the deviation between the originally listed and the actual combined miles per gallon figures varied with each model, with some being as little as less than a gallon to a high of about four gallons. *See* Docket No. 197-23 at pages 10 and 11 of 21. For a majority of the Class Vehicles, the difference was one gallon or less. To calculate the loss in resale value based on those differences would be extremely difficult. Third, while not explicitly based on any purported loss of resale value, the settlement amounts included a 15% premium on top of the gasoline reimbursement costs.

the Court indicated that it also found some places where the notice forms could be improved. The parties have now submitted revised notice forms.[3] (Docket No. 304.)

*Issues/notes:*

- The Court was apparently only provided with one set of notice forms in the recent submission. *See* Docket No. 304. In the only example of the long form notice (*Id.* at Exh. 1) first page or two of that document appears to be specific to Hyundai (i.e., it only references owners of Hyundai vehicles, contact information for "HMA," etc.). However, once you get to the later pages of the class notice, the explanation of the lawsuits includes both HMA and KMA. This is somewhat confusing. Is there going to be only one set of notice forms for both the Hyundai and Kia classes or will there be two separate sets? If the former, the notices provided in Docket No. 304 will have to refer to both Hyundai and Kia from page one to the end. If the latter, then the current references to Kia in the forms will have to be excised (to some degree) and a separate set of the notice forms for Kia provided to the Court.
- The biggest problem that the Court has with the forms is that there are too confusing. The Court will address this concern at the hearing but, in the end, it will probably require further sessions with the Settling Parties. However, the Court does not envision that those additional sessions will prevent the Court's preliminary approval of the settlement or the certification of the class action on this date.
- Based on the long-form notice, it seems like opting to participate in the Reimbursement Program is not considered a "settlement benefit" and Class Members can opt out of the settlement class, but still remain in the Reimbursement Program OR REGISTER FOR IT. This aspect of the settlement has seemingly changed and/or been clarified over time. But now, the way the long-form notice is worded, <u>anyone</u> can sign up now for the Reimbursement Program. Those who are former owners or lessees would receive, pursuant to the program, a one-time payment amount for added fuel costs for their term of ownership. This is EXACTLY the same way that the lump sum payment for former class members would be calculated. So it looks like former owners can "opt out" of the

---

[3] The Court at one point had a question as to why the Settlement Agreement had a provision for a 90 day period between the issuance of a preliminary class action settlement approval order and the initiation of mailed notices to class members. That question has now been adequately answered in the Declaration of Jason Erb. *See* Docket No. 307.

settlement, sign up to receive a one-time reimbursement program payment (which is the same as the payment amount they would get if they "participated" in the settlement), and retain the right to sue in the future. Maybe it is only CURRENT owners and lessees who can opt to sign up for the program now? I had previously thought that while those who had already signed up for the program might be able to opt out (they didn't get any new benefits out of the settlement, after all), those who NOW sign up for the Reimbursement Program ARE receiving a settlement benefit, since the Reimbursement Program sign-up period was closed but has now been reopened pursuant to the settlement agreement. Therefore, those who previously did not sign up for the Reimbursement Program but now wish to do so seemingly ought to be bound by the settlement (i.e., they cannot opt out). This issue will also make it hard to assess Class Members' reactions to the settlement, as many could potentially "opt out" while still actually being satisfied with the amounts received under the Reimbursement Program.

- "Step 4" of the long-form notice is a little confusing because at first it looks like the additional compensation is only available for those who elect to participate in the Reimbursement Program. It isn't until the last paragraph of that section that it is mentioned that the lump sum amounts already include this additional compensation. Is there a clearer way to do this?
- There are also a myriad of "nits" which the court will provide to the parties at the hearing.

**C. Virginia Class Members' Opt Out**

As noted previously, the *Gentry* plaintiffs, on behalf of a putative class of Virginians, have opposed preliminary approval of this settlement, citing their belief that a substantially better remedy is available under Virginia law that precludes certification of a nationwide class that includes Virginia class members and that the settlement is not fair and reasonable as to Virginians. The Court has expressed its view that the issues raised by the *Gentry* plaintiffs in this regard will not preclude certification of a nationwide class, especially given that any class members from Virginia will have the opportunity to opt out if they truly believe they are better served by foregoing the present settlement benefits in order to retain their right to sue (or maintain their suit against) the Defendants.

The *Gentry* plaintiffs, realizing that the Court is heading toward approving a nationwide

5

class, are now seeking to have the Court certify a special Virginia class in *Gentry*. The reason for this is that there is purportedly a question of whether Virginia law provides for tolling of the statute of limitations for cross-jurisdictional class actions (i.e., class actions not brought under Virginia law). Therefore, the *Gentry* plaintiffs argue, the settlement opt out will be meaningless for absent class members unless this Court certifies a Virginia class, since the statute of limitations will have run out on absent Virginians' class claims. However, the Court has already indicated that it will not be certifying a Virginia subclass in the MDL litigation as to pre-November 2, 2012 claims but would suggest to the MDL Panel remanding the post-November 2, 2012 claims back to the Virginia court. Additionally, the Court requested further briefing on the potential for Virginia opt-outs to bring (or maintain) their claims in Virginia as a class action.

It may be true that absent Virginians' individual claims will be barred by the statute of limitations. Still, as the Settling Parties point out, this is not a function of the MDL procedure or the underlying facts particular to this case, but merely of the fact that the Court is certifying a nationwide class in the *Hunter* and *Brady* cases. Under Virginia's tolling rules, this same result would occur any time a nationwide class is certified with reference to another state's underlying law. Any nationwide class will necessarily include Virginians, unless they opt out. However, assuming at least one lead plaintiff in *Gentry* opts out of the settlement, *Gentry* remains a separate action that is not extinguished or closed by virtue of this settlement. As a practical matter, it is likely that many of the class actions that were coordinated in this MDL will be dismissed and/or moot because most if not all of the class representatives in those actions will choose to be bound by the settlement rather than retaining their right to pursue individual actions by opting out. Given the number of plaintiffs in *Gentry*, along with their counsel's vehement opposition to this settlement, it appears likely that *Gentry* will still potentially exist as a putative class action as to the Virginia post-November 2, 2012 claims following approval of the nationwide settlement. As to the pre-November 2, 2012 claims, upon completion of the coordinated settlement proceedings, including the claims and opt-out process, the District Court for the Western District of Virginia will be able to assess what remains of that portion of *Gentry*. The parties have pointed to no facts to suggest that *Gentry* could not potentially proceed as a class action, assuming enough individuals opt out of the nationwide *Hunter/Brady* settlement to satisfy the requirements of Rule 23 for class certification of a class of Virginia opt-outs. Given the large number of individually named plaintiffs in *Abdurahman* and *Abdul-Mumit* and the fact

that those plaintiffs are represented by the same counsel as *Gentry*, it seems likely that there could be ample opt-outs to at least potentially support a class action in Virginia district court assuming that Virginia law would permit such class action to proceed.

D. Other Issues

The *Gentry* plaintiffs also make additional arguments on issues for which the Court has already indicated its decision and for which the Court has not ordered supplemental briefing. Some such issues are included in the *Gentry* plaintiffs' briefs ostensibly addressing this issue regarding the potential for a class of Virginia opt-outs proceeding in Virginia. (Docket Nos. 299, 303.) The *Gentry* plaintiffs have also filed a motion to compel the settling parties to disclose the results of their recent attorney fee mediation. (Docket No. 298.)

With regard to the motion to compel disclosure of the result of the attorney fee mediation, the Settling Parties indicate that no fee agreement has been reached at this time. It is unclear, therefore, what the *Gentry* plaintiffs now expect the Settling Parties to presently reveal. The amount requested will necessarily be disclosed to the Court and the class at a later date, at which time the Court will be able to assess whether the amount agreed upon is reasonable. It does appear that the amount of fees that the Settling Parties will request must be completed before the long-form notice is distributed, as the notice leaves a space to inform Class Members of the amount of fees sought. (*See* Docket No. 304-1, p. 13.) The long-form notice further informs Class Members that they can access up-to-date information regarding fee agreements for fees to be paid to counsel other than Settling Plaintiffs' counsel. (*Id.*) Therefore, the information regarding the amount of fees sought will necessarily be disclosed to all parties before or when the long-form notice is sent out. Further, the Court will have to approve the amount of fees agreed upon in this case and may choose to award less than the agreed-upon amount, substantially reducing the risk of collusion or other improprieties in the fee negotiation process suggested by the *Gentry* plaintiffs. Finally, Class Members have less of an interest in the amount of fees requested and awarded here than they would in a settlement where the fees come out of a settlement fund, thereby reducing the amount of money available to class members. It is therefore much less important for Class Members to have access to the exact fee request numbers where those amounts have no bearing on their potential recovery in the case. Class Members will have an opportunity to assess the amount of fees requested prior to deciding whether to opt out of the settlement and will have the opportunity to oppose the requested amount at the final

fairness hearing. Therefore, the Court would to DENY the motion to compel at this time.

### III. Conclusion

For the foregoing reasons, the Court finds that the settlement is fair, reasonable, and adequate to the class. For this reason, the Court would GRANT the motion to certify the settlement class and GRANT the motion for preliminary approval, pending potential additional revisions to the notice forms. The Court would DENY the motion to compel at this time. The Court will discuss with the parties sending to the MDL Panel the suggestion to remand the post November 2, 2012 class back to the Virginia district court.