HARVEY ROSENFIELD (SBN 123082)
harvey@consumerwatchdog.org
PAMELA PRESSLEY (SBN 180362)
pam@consumerwatchdog.org
LAURA ANTONINI (SBN 271658)
laura@consumerwatchdog.org
**CONSUMER WATCHDOG**
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522 / Fax: (310) 392-8874

JONATHAN W. CUNEO
jonc@cuneolaw.com
WILLIAM ANDERSON
wanderson@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, NE
Washington, DC 20002
Tel: (202) 789-3960 / Fax: (202) 789-1813

STEVE M. CAMPORA (SBN 110909)
scampora@dbbwlaw.com
ROBERT A. BUCCOLA (SBN 112880)
rbuccola@dbbwlaw.com
CRAIG C. SHEFFER (SBN 131243)
csheffer@dbbwlaw.com
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500 / Fax: (916) 379-3599

NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000 / Fax: (650) 692-3606

*Attorneys for the Krauth and Hasper, et al. Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | Case No. 2:13-ml-02424-GW-FFM |
| | **PUBLIC REDACTED VERSION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR PAYMENT OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND COMPENSATION TO NAMED PLAINTIFFS** |
| | Date: February 26, 2015 |
| | Time: 8:30 a.m. |
| | Judge: Hon. George H. Wu |
| | Courtroom: 10 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.   FACTUAL LITIGATION HISTORY ................................................................ 3

   A.   Pre-Filing Investigation and Preparation of Complaint in *Bird*. ............... 3

   B.   Discovery and Motion Practice in *Bird*. .................................................... 5

   C.   Pre-filing Investigation and Preparation of Complaints in *Krauth* and *Hasper*; MDL Petition. ...................................................................................................... 6

   D.   Settlement Announcement and Confirmatory Discovery in the MDL. ......... 7

   E.   Improvements to the Settlement Agreement. ............................................... 9

III.   THE CONSUMER WATCHDOG LEGAL TEAM IS ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES AND COSTS ..................................................... 10

   A.   The Consumer Watchdog Legal Team is Entitled to Fees Under California Law 10

     (1)   The Consumer Watchdog Legal Team is Entitled to a Fee Award Under the Consumers Legal Remedies Act ........................................................................ 11

     (2)   The Consumer Watchdog Legal Team is Entitled to a Fee Award Under California's Private Attorney General Statute ...................................................... 12

   B.   California Law Prescribes A Lodestar/Multiplier Method Of Calculating A Reasonable Fee ........................................................................................................ 16

     (1)   The Lodestar Amount Sought by the Consumer Watchdog Legal Team is Reasonable .......................................................................................................... 18

   C.   The Number of Hours Claimed By the Consumer Watchdog Legal Team Are Reasonable and Well-Documented ............................................................................ 18

     (1)   The Consumer Watchdog Legal Team Pursued this Case Efficiently and the Hours Claimed are Reasonable ............................................................................ 18

     (2)   The Consumer Watchdog Legal Team Has Provided Detailed Documentation of Their Time ...................................................................................................... 20

IV.   THE CONSUMER WATCHDOG LEGAL TEAM IS ENTITLED TO RECOVER OUT-OF-POCKET COSTS ........................................................................................ 22

V.   NAMED PLAINTIFFS ARE ENTITLED TO RECEIVE ADDITIONAL COMPENSATION FOR THEIR EFFORTS IN BRINGING THIS ACTION ............... 22

VI.   CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Automotive Prods. PLC v. Tilton Eng'g*, 855 F.Supp. 1101 (C.D. Cal. 1994) ....... 16

*Blackwell v. Foley*, 724 F.Supp.2d 1068 (N.D. Cal 2010) ......................... 16, 18, 20

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................ 20

*Broughton v. Cigna Healthplans*, 21 Cal.4th 1066 (1999) .................................. 11

*Cf. Perkins v. Mobile Housing Bd.*, 847 F.2d 735 (11th Cir. 1988) ....................... 19

*Charlebois v. Angels Baseball LP*, 2012 WL 244849

   (C.D. Cal., May 30, 2012) ............................................................................. 16, 19

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ................................................ 17

*EEOC v. Harris Farms, Inc.*, 2006 U.S. Dist. LEXIS 36903 (E.D. Cal. Mar. 1,

   2006) .................................................................................................................. 19

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ....................................................... 10

*Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005) .................. 10

*Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995) ...................................................... 18

*Gezalyan v. BMW of North America, LLC*, 2010 WL 1133427 (C.D. Cal. 2010) . 10

*Graciano v. Robinson Ford Sales*, 144 Cal.App.4th at 150 (2006) ...................... 11

*Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (2004) ...................... 12, 14, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................... 16, 19

*Heritage Pac. Fin., LLC. v. Monroy*, 215 Cal.App.4th 972 (2013) ...................... 20

*Hogar v. Comty Dev. Comm'n of City of Escondido,* 157 Cal.App.4th 1358 (2007)

   ............................................................................................................................ 13

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980) ............................... 21

*In re Consumer Privacy Cases,* 175 Cal.App.4th 545 (2009) ............................... 15

*In re Worldcom, Inc. Sec. Litig.*, 388 F.Supp.2d 319 (S.D.N.Y. 2005) .................. 16

*Ketchum v. Moses,* 24 Cal.4th 1122 (2001) ......................................................... 15

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal.App.4th 170 ........................ 11

*Mangold v. California Public Utilities Comm.*, 67 F.3d 1470 (9th Cir. 1995) ...... 10

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ............................................................ 20

*Nat'l Fed. of the Blind v. Target Corp.*, 2009 U.S. Dist. LEXIS 84390 (N.D. Cal.,
    Aug. 3, 2009) ................................................................................................ 21

*Paulson v. City of San Diego*, 2007 U.S. Dist. LEXIS 43587 (S.D. Cal. June 15,
    2007) .............................................................................................................. 16

*Pierce v. County of Orange*, 905 F.Supp.2d 1017 (C.D. Cal. 2012) .................... 18

*PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084 (2000) ........................................ 19

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................... 21, 22

*Ryan v. California Interscholastic Federation*, 94 Cal.App.4th 1033 (2001) ........ 15

*San Bernardino Audubon Soc'y v. County of San Bernardino*, 155 Cal.App.3d 738
    (1984) ............................................................................................................. 16

*Serrano v. Priest* ("*Serrano III*"), 20 Cal.3d 25, 48 (1977) ................................ 17

*Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621 (1982) .......................... 16, 20, 21

*Sheppard v. Cons. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314
    (E.D.N.Y. Aug. 1, 2002) ............................................................................... 22

*Tipton–Whittingham v. City of L.A.,* 34 Cal.4th 604 (2204) ................................ 13

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ........... 22

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001) ............................ 19

**Statutes**

United States Code, title 28

§ 1332(d).............................................................................................................. 10

United States Code, title 29

§ 1132(g) (1975) .................................................................................................. 21

United States Code, title 42

§ 12205 ................................................................................................................ 21

California Civil Code

§ 1750 ..................................................................................................... 4

§ 1780(e) ............................................................................................... 10

Califonia Code of Civil Procedure

§ 1021.5 .......................................................................................... 12, 16

Federal Rules of Civil Procedure

23(h) ...................................................................................................... 10

**Other Authorities**

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1303 (2006) .......... 21

## I. <u>INTRODUCTION</u>

From Consumer Watchdog's initial investigation of Hyundai's fuel economy claims in 2011 and its calls for an EPA investigation, to the lawsuits Consumer Watchdog and its co-counsel brought against Hyundai and Kia, through the confirmatory discovery process that dominated this Multi-District Litigation, to the painstaking changes to the proposed notice and claim forms and claims process, Consumer Watchdog and its co-counsel have played an essential role in bringing the companies' intentional economic and environmental misconduct[1] to light and prosecuting the litigation. Consumer Watchdog and its co-counsel have been relentless advocates for Class Members throughout this litigation, insisting on and achieving transparency, accountability and improvements to the Settlement that will directly result in increased compensation to the 900,000 Class Members.

---

[1] The EPA charged that Hyundai and Kia's "use of improper test procedures and analysis resulted in inaccurately low reported road load forces. In particular, Defendants improperly selected results from test runs that were aided by a tailwind rather than correctly using the results of test runs in both directions, Defendants selected favorable results from test runs rather than average the results from the larger set of tests, Defendants restricted their testing times to periods when the temperature allowed vehicles to coast farther and faster, and Defendants specially prepared vehicle tires for optimized test results." (Complaint at ¶34, *United States of America, et al. v. Hyundai Motor Company, et al.*, Case No. 1:14-cv-01837 (D.C. Cir. Nov. 3, 2014) (Dkt. 1).) EPA Administrator Ms. Gina McCarthy told reporters "this is by far the most egregious case" of any mileage misstatement. (David Shepardson, *Hyundai,Kia Agree to $360M MPG Settlement, Detroit News*, Detroit News (Nov. 3, 2014), http://www.detroitnews.com/story/business/autos/foreign/2014/11/03/hyundai-kia-agree-million-mpg-settlement/18404545/.) "Businesses that play by the rules shouldn't have to compete with those breaking the law," she said. (Press Release, EPA, United States Reaches Settlement with Hyundai and Kia in Historic Greenhouse Gas Enforcement Case (Nov. 3, 2014), http://yosemite.epa.gov/opa/admpress.nsf/596e17d7cac720848525781f0043629e/15519081fbf4002285257d8500477615.)

In the three years of litigation, Consumer Watchdog attorneys and co-counsel[2] expended 5,137.95 hours of attorney time, resulting in a collective lodestar of $2,789,522.50, and $31,329.97 in litigation expenses. As explained below, these fees are more than reasonable in light of the work they performed throughout this proceeding.

This Memorandum presents a general overview of the history of the litigation, described in more detail in the declarations of the Consumer Watchdog Legal Team submitted concurrently herewith.  The table below divides the work into five distinct phases, an outline followed by this Memorandum and the detailed Declaration of Laura Antonini.

| | Pre-filing investigation and preparation of complaint in *Bird* (January, 2012 – July 3, 2012) | Discovery and motion practice in *Bird* (July 4, 2012 – December 18, 2014) | Pre-filing investigation and preparation of complaints in *Krauth*, *Hasper*; the MDL Petition (November 2, 2012 – February, 2013) | Confirmatory discovery of the Proposed Settlement in the MDL (February, 2013 – January, 2014) | Improving the Settlement Agreement (December 23, 2013 – December 18, 2014) |
|---|---|---|---|---|---|
| Consumer Watchdog Counsel | $94,122.5 (223.3 hours) | $166,855.00 (375 hours) | $225,145.00 (457.1 hours) | $376,075.00 (618.1 hours) | $626,500.00 (1,104.7 hours) |
| Cuneo Gilbert & LaDuca, LLP | $35,418.75 (58.25 hours) | $66,306.25 (125.75 hours) | $278,906.25 (479.50 hours) | $333,887.50 (534.75 hours) | $83,118.75 (137.50 hours) |
| Cotchett, Pitre & McCarthy, LLP | 0 | $31,009.50 (88.3 hours) | $83,595.50 (169.1 hours) | $150,200.00 (357.6 hours) | $30,962.50 (63.3 hours) |
| Dreyer Babich Buccola Wood Campora, LLP | 0 | $145,920.00 (243.2 hours) | $34,080.00 (56.80 hours) | $17,046.00 (28.41 hours) | $10,374.00 (17.29 hours) |
| Total | $129,541.25 (281.55 hours) | $410,090.75 (832.25 hours) | $621,726.75 (1,162.50 hours) | $877,208.50 (1,538.86 hours) | $750,955.25 (1,322.79 hours) |

---

[2] Counsel for Consumer Watchdog, Cuneo Gilbert & LaDuca, LLP, Cotchett, Pitre & McCarthy, LLP and Dreyer Babich Buccola Wood Campora, LLP (hereafter, "Consumer Watchdog Legal Team") represent 14 Plaintiffs in *Bird v. Hyundai Motor America,* Case No. 34-2012-00127249 (Sacramento Superior Court); *Krauth v. Hyundai Motor America*, Case No. 8:12-cv-01935-GW-FFM (C.D. Cal.); and *Hasper et al. v. Hyundai Motor America et al.*, Case No. 8:13-cv-00220-GW-FFM (C.D. Cal.).

Though Defendants Hyundai Motor America and Kia Motors America chose to settle with two other law firms, there can be no doubt that the Consumer Watchdog Legal Team's work has benefitted Class Members. The Consumer Watchdog Legal Team therefore requests, on behalf of the clients they represent, that the Court order Defendants to pay this request for attorneys' fees and expenses.

The Consumer Watchdog Legal Team also requests that the Court approve an additional payment to the 14 named Plaintiffs they represent in *Bird, Krauth* and *Hasper* in the amount that the Settling Plaintiffs are awarded.

This Motion reflects the Consumer Watchdog Legal Team's fees and expenses through December 18, 2014. As requested by the Court on October 6, 2014, the Consumer Watchdog Legal Team conservatively estimates it will request approximately $36,000 in additional fees for work between December 18, 2014 through final approval to review claims rate data and, if necessary, submit supplemental briefing advocating for additional measures to increase the claims rate.

## II.  FACTUAL LITIGATION HISTORY

### A. Pre-filing Investigation and Preparation of Complaint in *Bird*. (January, 2012 - July 3, 2012)

This litigation began in November 2011 with an investigation by Consumer Watchdog, a nonprofit charitable organization, into numerous fuel economy complaints it received from consumers across the United States about the 2011 and 2012 Hyundai Elantra. (Antonini Decl., ¶23.) Between November 30, 2011 and February 1, 2012, Consumer Watchdog sent a series of letters urging the U.S. Environmental Protection Agency and Hyundai to review and confirm or correct

the accuracy of the Elantra's advertised fuel economy.[3] (*Id.*, ¶¶24-25.) Consumer Watchdog's comments[4] garnered significant media attention. (*Id.*, ¶27.) Hyundai was also paying close attention, ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████

As a result of the media attention, Consumer Watchdog received a high volume of consumer complaints about the fuel economy of the Elantra and other Hyundai vehicles. (Antonini Decl., ¶31.) In January 2012, Consumer Watchdog attorneys began reviewing the complaints, interviewing consumers, and researching relevant factual and legal issues. (*Id.*, ¶¶31-32.)

Recognizing the scope of the case, Consumer Watchdog attorneys associated in the nationally recognized firms of Cotchett, Pitre & McCarthy, LLP; Cuneo Gilbert & LaDuca, LLP; and Dreyer Babich Buccola Wood Campora, LLP. The Declarations of Laura Antonini, William Anderson, Anne Marie Murphy and Steven M. Campora in support of this Motion contain detailed descriptions of the efforts of the Consumer Watchdog Legal Team prior to and throughout the course of this litigation.

In April, 2012, the Consumer Watchdog Legal Team sent a letter on behalf of Hyundai Elantra owners Louis Bird and Gunther Krauth to Hyundai pursuant to the Consumer Legal Remedies Act (California Civil Code § 1750 et seq.),

---

[3] In letters to Hyundai in February 2012, Consumer Watchdog also requested that Hyundai remove or qualify any prominent MPG claims in its 2012 Super Bowl advertising until the Elantra's fuel economy numbers were validated. (Antonini Decl., ¶26.) Shortly thereafter, Hyundai pulled the "40 MPG Elantra" claim from its 2012 Super Bowl advertisement for the Elantra. (*Id.*)

[4] No compensation for those activities is requested in this Motion.

MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

1   demanding that Hyundai cease and desist its continued use of a deceptive

2   marketing campaign regarding the fuel economy of the Elantra and pay damages to

3   Elantra purchasers. (Antonini Decl., ¶33.) Hyundai did not respond. (*Id.*, ¶34.)

4       On July 3, 2012, the Consumer Watchdog Legal Team filed *Bird v. Hyundai*

5   *Motor America,* Case No. 34-2012-00127249 (Sacramento Superior Court) against

6   Hyundai for its unlawful and deceptive advertising of the Elantra.[5] (Antonini Decl.,

7   ¶34.)

8       The filing of *Bird* received widespread national media attention.

9   (Antonini Decl., ¶34, fn.6.) Shortly thereafter, ██████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████

13  **B. Discovery and Motion Practice in *Bird*.**

14      **(July 4, 2012 - December 18, 2014)**

15      Plaintiff *Bird* served his first set of discovery requests on Hyundai on

16  August 1, 2012, initiating what would become a successful pursuit of documents

17  and information about Hyundai's advertising and marketing, consumer complaints,

18  class size, and sales data, all of which would ultimately be produced in the MDL.

19  (Antonini Decl., ¶¶38-39.) This battle was hard fought: In addition to submitting

20  numerous briefs to the Sacramento Superior Court challenging the sufficiency of

21  Hyundai's discovery responses and its attempts to evade discovery, the Consumer

22  —————————————

23  [5] After Consumer Watchdog's letters to the government and Hyundai received
    significant media attention, the law firm of McCune Wright LLP filed a case

24  against Hyundai over fuel economy advertising related to the Hyundai Elantra

25  and Sonata. (*Espinosa v. Hyundai Motor America,* Case No. 8:12-cv-00800
    (C.D. Cal.)). The *Espinosa* complaint cited to Consumer Watchdog's letter to

26  the EPA. (First Amended Complaint at ¶27, *Espinosa* (C.D. Cal. Feb. 23,
    2012) (Dkt. 15).) *Espinosa* was the only similar case pending nationally at the

27  time *Bird* was filed. (Antonini Decl., ¶34, fn.5.)

28  **MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**
    **AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM**

Watchdog Legal Team prepared an opposition to Hyundai's demurrer in 2012, filed a First Amended Complaint, and defended against Hyundai's attempts to stay *Bird*. (*Id.* at ¶¶40-44.) However, after this Court expressed concerns about *Bird* proceeding simultaneously with the MDL, described below, the Sacramento Superior Court stayed *Bird* pending resolution of the MDL. (*Id.* at ¶44.)

### C. Pre-filing Investigation and Preparation of Complaints in *Krauth* and *Hasper*; MDL Petition.

### (November 2, 2012 - February 14, 2013)

On November 2, 2012, the EPA announced that, indeed, an audit had revealed that Hyundai and Kia had provided the EPA with false data, which resulted in inflated fuel economy information in both advertising, and on the window stickers ("Monroney Labels") affixed to each new vehicle sold, for approximately 20 of their 2011– 2013 year vehicles, and that the companies would be adjusting the advertised MPG values of all affected vehicles ("The November 2012 EPA Announcement"). (Antonini Decl., ¶40.) Simultaneously, Hyundai and Kia announced a "Voluntary Reimbursement Program" to purportedly reimburse its customers for "additional fuel costs associated with the fuel economy rating change." (*Id.* at ¶46.)

After talking to affected consumers and researching the Voluntary Reimbursement Program, the Consumer Watchdog Legal Team concluded that the Voluntary Reimbursement Program did not adequately compensate affected consumers across the United States. (Antonini Decl., ¶47.) On November 6, 2012, they filed the complaint in *Krauth* on behalf of Plaintiff Gunther Krauth and a nationwide class of 2011, 2012 and 2013 Hyundai Elantra owners, alleging violations of California law. (*Id.*)

The November 2012 EPA Announcement ignited an onslaught of similar class action complaints against Hyundai and Kia in federal courts across the United

States.[6] (Antonini Decl., ¶48.) Therefore, the Consumer Watchdog Legal Team petitioned for an MDL assignment of all related cases against Defendants on November 19, 2012; it was granted on February 5, 2013. (*Id*., ¶¶48-49, 53.) All federal cases were transferred to the U.S. District Court for the Central District of California.[7] (*Id*., ¶53.)

### D. Settlement Announcement and Confirmatory Discovery in the MDL.

### (February, 2013 – January, 2014)

On February 14, 2013, at the first MDL status conference before this Court, the Hagens Berman and McCune firms announced that they had "had four face-to-face meetings with counsel for Hyundai" between the filing of *Hunter* and the first MDL status conference, and had reached a settlement with Hyundai. (Antonini Decl., ¶54.) At the next MDL status conference on February 28, 2013, Hyundai declared that a settlement agreement would be produced within 60 days. (*Id*.) The Settling Parties did not actually produce a final Settlement Agreement until ten months later, on December 23, 2013. (*Id*., ¶86.)

For the next eleven months, the Consumer Watchdog Legal Team, working from a two-page term sheet, engaged in a "confirmatory discovery" process structured and overseen by the Court. (*See* Antonini Decl., ¶¶58-83.)  During this period, the Court appointed a Liaison Counsel to act as an intermediary between the approximately 58 "non-settling plaintiffs" who were not included in settlement discussions and the Settling Plaintiffs and Defendants. (*Id*., ¶¶56-57.)

---

[6] Among the new cases was *Hunter v. Hyundai Motor America,* Case No. 8:12-cv-01909-JVS-JPR (C.D. Cal.), filed by Hagens Berman Sobol Shapiro LLP. (Antonini Decl., ¶48, fn. 8.) Like the *Espinosa* complaint, *supra* at footnote 5, the *Hunter* complaint relies on a previous inquiry from Consumer Watchdog to the EPA and the White House. (*Id*.)

[7] On April 3, 2013, the District Court consolidated all of the MDL cases.

The Consumer Watchdog Legal Team worked under the constraints of the confirmatory discovery process, cooperating with Liaison Counsel and collaborating with other non-settling plaintiffs. (Antonini Decl., ¶¶58-60.) They aggressively pursued information about the Settlement Agreement from the Settling Parties, seeking full disclosure of the terms of the Settlement Agreement and the underlying support for it. (*Id.*, ¶¶58-83.)  The Consumer Watchdog Legal Team was instrumental in the Court ordering Hyundai and Kia to produce documents they produced to the Settling Parties to the non-settling parties. (*Id.*, ¶¶61-62.)

Once it became clear that the Settling plaintiffs had received little, if any, substantive discovery as to the origin and basis for the Defendants' misrepresentations prior to settling, the Consumer Watchdog Legal Team worked aggressively to obtain discovery that would allow all parties to assess the adequacy of the terms of the proposed settlement. (Antonini Decl., ¶¶63-83.) The Consumer Watchdog Legal Team drafted and revised document requests, reviewed documents and conducted interviews of key witnesses produced by Hyundai and Kia, including Hyundai's former CEO, John Krafcik. (*Id.*)  The Consumer Watchdog Legal Team also doggedly pursued the production of a proper privilege log, leading to the production of a revised privilege log and additional documents. (*Id.*, ¶¶61, 82-83.)  As a result of the Consumer Watchdog Legal Team's efforts during discovery, the Settling Parties produced information about Defendants' conduct around the fuel economy testing and advertising, as well as data and information relevant to the monetary compensation available to Class Members proposed by the Settlement. (*See*, *e.g.*, *id.*, ¶¶64-65.)

## E. Improvements to the Settlement Agreement.
### (December 23, 2013 – December 18, 2014)

Over the course of the year since the Settlement Agreement was filed, the Consumer Watchdog Legal Team submitted to the Court and Settling Parties numerous memoranda, correspondence, and briefs advocating for disclosure of the exact terms, like monetary compensation amounts, of the Settlement Agreement, the production of information needed to determine the fairness of the Settlement and improvements to the Settlement Agreement. (*See* Antonini Decl., ¶¶86-101.) A lengthy analysis by the Consumer Watchdog Legal Team in January, 2014, prepared in response to the Court's request, challenged many aspects of the proposal, both substantive and procedural. Initially, there was widespread agreement among the non-settling plaintiffs' counsel that the notice and claims process and forms were flawed. (*Id.*, ¶¶87, 89.)  However, after the Defendants made two amendments to the terms of the Settlement in May, 2014, reflecting some of the concerns raised by the Consumer Watchdog Legal Team (i.e., establishing an online claims website), Liaison Counsel and the vast majority of non-settling parties either joined Hyundai, Kia and the Settling Plaintiffs in support of the settlement as revised, or took no position. (*Id.*, ¶¶90-91.)

The Consumer Watchdog Legal Team did not agree that the job was done.

The Consumer Watchdog Legal Team formally opposed the Settlement as amended, arguing, among other things, that the class notices (short and long) and the claim form were onerous, unnecessary and highly confusing. (Antonini Decl., ¶93.) The Opposition pointed out that these flaws would greatly lower the claims rate; combined with the provision permitting the Defendants to retain unclaimed funds, the settlement would prove a windfall for the two wrongdoers. (*Id.*)

The Court agreed with the Consumer Watchdog Legal Team. It took six rounds of painstaking, word-for-word and line-by-line revisions, five briefs and proposed revisions, and five hearings to improve the format and language of the notice and claim documents so that Class Members will understand what they are entitled to under the Settlement Agreement and more Class Members will receive notice of the Settlement. (*Id.*, ¶¶94-100.)  Also, at Consumer Watchdog's urging, the Court required the Settling Parties to submit a detailed explanation of how compensation was calculated under the Settlement and submit claim reports after the claims process begins to monitor Class Member participation rates and potentially order a secondary notice. (*Id.*, ¶98.)  Though the Court rejected Consumer Watchdog Legal Team's challenge to the "reverter," the Court promised to carefully monitor the claims process and take action if, as the Consumer Watchdog Legal Team predicted, the claims rate was low. (*Id.*, ¶96.)

## III.   THE CONSUMER WATCHDOG LEGAL TEAM IS ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES AND COSTS

### A. The Consumer Watchdog Legal Team is Entitled to Fees Under California Law

In a certified class action, plaintiffs' counsel may apply to the Court for an award of "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In assessing any fee request, the governing law must first be identified. Here, the Court has diversity jurisdiction arising under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions…"). Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Court therefore applies California state law in assessing plaintiffs' counsel's fee application, as both the availability of a fee award and the method of calculating that award are considered substantive issues

---

**MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM**

reflecting important state policy. *See, e.g., Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("The method of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state."); *Gezalyan v. BMW of North America, LLC*, 2010 WL 1133427, *1 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees.").

### (1) The Consumer Watchdog Legal Team is Entitled to a Fee Award Under the Consumers Legal Remedies Act

The requested fees and cost award is appropriate under the mandatory fee-shifting provision of California's Consumers Legal Remedies Act ("CLRA"). Cal. Civ. Code § 1780(e) ("The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the CLRA]."). "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal.App.4th 170, 178-79 (2007). This effectuates a crucial policy goal of the State: "[T]he availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1085 (1999).

"[I]n deciding prevailing party status under those statutes, the court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level." *Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th at 150 (2006). "It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

*Id.* at 153.

Because the *Bird, Krauth* and *Hasper* Plaintiffs have "succeed[ed] on [] significant issue[s] in litigation which achieves some of the benefit the parties sought in bringing suit[,]" they are prevailing parties. The Settlement is intended to pay Class Members back for unexpected fuel costs resulting from Defendants' fuel economy misrepresentations. Plaintiffs, including the Plaintiffs in *Bird, Krauth* and *Hasper*, brought their actions in part to recover unexpected fuel costs resulting from Defendants' misrepresentations. The *Bird, Krauth*, and *Hasper* Plaintiffs pushed throughout the confirmatory discovery process to maximize the production of information needed to determine whether the proposed settlement was fair and reasonable, including electronic discovery and interviews with Defendants' personnel. (*See* Antonini Decl., ¶¶58-83.) Once the Settlement Agreement was filed, they advocated for and secured disclosure of information about the monetary compensation available under the Settlement, and substantial improvements to the Settlement, including revisions to the notice and claim forms and process in order to better enable Class Members to take advantage of all the benefits of the Settlement Agreement. (*Id.*, ¶¶86-101.)

Also, because of their efforts, the Court set up a process for increased oversight of Class Member participation rates to ensure as many Class Members as possible receive Settlement Benefits. (Antonini Decl., ¶98.)  Thus, the *Bird, Krauth*, and *Hasper* Plaintiffs succeeded on issues that will result in more money being paid to Class Members, one of the central benefits sought in bringing suit.

### (2) The Consumer Watchdog Legal Team is Entitled to a Fee Award Under California's Private Attorney General Statute

Plaintiffs are also entitled to a fee award under California's private attorney general statute, Cal. Code Civ. Proc. § 1021.5. Under this statute, the court may award attorneys' fees to a "successful party" in any action that "has resulted in the

---

1    enforcement of an important right affecting the public interest if: (a) a significant

2    benefit, whether pecuniary or nonpecuniary, has been conferred on the general

3    public or a large class of persons, (b) the necessity and financial burden of private

4    enforcement are such as to make the award appropriate, and (c) such fees should

5    not in the interest of justice be paid out of the recovery, if any." The fundamental

6    objective of the statute is "to encourage suits enforcing public policies by

7    providing substantial attorney fees to successful litigants in such cases." *Graham v.*

8    *DaimlerChrysler Corp.*, 34 Cal.4th 553, 565 (2004).

9

                     i.   *Plaintiffs Are 'Successful Parties' Under the Law*

10         Under California law, the "critical fact" in determining whether a party is a

11   "successful party" for the purposes of section 1021.5 "is the impact of the action,

12   not the manner of its resolution." *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th

13   553, 566 (2004). "Under this broad, pragmatic view of what constitutes a

14   successful party within the meaning of section 1021.5, a plaintiff need not obtain a

15   judgment in its favor to be a successful party. Rather, a plaintiff is a successful

16   party whenever it obtains the relief sought in its lawsuit, regardless of whether that

17   relief is obtained through a voluntary change in the defendant's conduct, through a

18   settlement, or otherwise." *Hogar v. Comty Dev. Comm'n of City of Escondido,* 157

19   Cal.App.4th 1358, 1365 (2007).

20         As discussed above, the information obtained during confirmatory discovery,

21   review of the monetary compensation under the Settlement, the multiple revisions

22   to the notice and claim forms and process, and oversight of claims rates secured by

23   the *Bird, Krauth*, and *Hasper* Plaintiffs will result in more money being paid out to

24   Class Members for unexpected fuel costs, which was a primary component of the

25   relief they sought in their lawsuits. Thus, Plaintiffs are "successful parties" within

26   the meaning of section 1021.5.

27         Also, a plaintiff can be a "successful party" under the pragmatic approach if

28

---

**MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM**

"(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) [] the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense ... and, (3) [] the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." *Tipton– Whittingham v. City of L.A.,* 34 Cal.4th 604, 608 (2004).

The Plaintiffs in *Bird, Krauth,* and *Hasper* should be considered "successful parties" under the catalyst theory.  First, *Bird* was the catalyst for Defendants paying Class Members for unexpected fuel costs, both through the Voluntary Reimbursement Program and through the Settlement Agreement. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ supports that *Bird* was a catalyst: *Bird* was filed on July 3, 2012, and after extensive national media attention on *Bird,* ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Antonini Decl., ¶¶34-35 and Ex. E.) The EPA's audit resulted in the November 2012 EPA Announcement and the Voluntary Reimbursement Program, which in turn resulted in the filing of the cases in the MDL and the Settlement.

Second, the CLRA, UCL, and FAL causes of action in *Bird* are meritorious because they are not "frivolous, unreasonable or groundless and [the lawsuit] achieved its catalytic effect by threat of victory." *See Graham, supra,* 34 Cal.4th 553 at 575.  The "40 MPG Elantra" advertisements challenged in *Bird* clearly violate rules requiring certain disclosures in fuel economy advertising, and the *Bird* lawsuit achieved the catalytic effect of causing the Defendants to initiate the Voluntary Reimbursement Program, and pay consumers back for unexpected fuel costs.

Third, Plaintiffs satisfied the pre-suit notice requirement. Consumer Watchdog's actions between November, 2011 and February, 2012 were an attempt to remedy the harm caused by Hyundai's fuel economy misrepresentations, and the Consumer Watchdog Legal Team sent Hyundai a CLRA demand letter on behalf

of Plaintiffs Louis Bird and Gunther Krauth in April 2012, four months before filing *Bird*, attempting to settle the litigation prior to filing suit.

ii. *Plaintiffs' Actions Have Resulted in the Enforcement of an Important Right Affecting the Public Interest*

Plaintiffs satisfy the other criteria for a fee-shifting award under the California private attorney general statute.

First, the *Bird, Krauth*, and *Hasper* actions conferred a significant benefit on a large class of persons: the 900,000 Class Members entitled to benefits under the Settlement Agreement. As discussed above, as a result of the filing of the *Bird* lawsuit*,* the filing of the *Krauth* and *Hasper* suits, the filing of the MDL petition, the information obtained during confirmatory discovery, the Court's review of the monetary compensation under the Settlement, the claims rate oversight process and the multiple revisions to the notice and claim forms and process secured by the *Bird, Krauth*, and *Hasper* Plaintiffs, Class Members will receive compensation. For example, the Consumer Watchdog Legal Team's efforts improved the clarity and reach of the notice, which will result in more Class Members knowing about and understanding what they are entitled to under the Settlement Agreement.  Their efforts also resulted in Hyundai and Kia establishing an online claims website, providing for email notice, improving the clarity of the language in the online claim website, the short form notice, the paper long-form notice and the paper claim form. (*See* Antonini Decl., ¶¶92-101.) These improvements to the Settlement will result in more Class Members making claims and receiving the benefit of the monetary compensation, which is a significant benefit to these 900,000 Class Members.

Second, the necessity and financial burden of private enforcement make an award appropriate. Without the incentive of an attorneys' fees award, Plaintiffs could not have afforded to hire counsel to pursue this case; their loss, while

certainly not trivial, would not have justified the time and expense of litigation on an individual basis. *See Ryan v. California Interscholastic Federation*, 94 Cal.App.4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter.").

Finally, this is not a case where fees should in the interest of justice be paid out of class members' recovery. The incentive of a Court-awarded fee was necessary in this case because there is no fund from which the Consumer Watchdog Legal Team could be awarded those fees.

## B. California Law Prescribes A Lodestar/Multiplier Method Of Calculating A Reasonable Fee

In cases that involve fee-shifting, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar/multiplier method. *In re Consumer Privacy Cases,* 175 Cal.App.4th 545, 556-557 (2009); *see also Ketchum v. Moses,* 24 Cal.4th 1122, 1137 (2001) ("[T]he lodestar adjustment method, including discretion to award fee enhancements, is well established under California law.")

The lodestar/multiplier method is utilized for calculating fees, with the lodestar representing the "basic fee for comparable legal services in the community." *Paulson v. City of San Diego*, 2007 U.S. Dist. LEXIS 43587, *11 (S.D. Cal. June 15, 2007) (citing *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 579 (2004)).  This amount is arrived at by multiplying the number of hours reasonably expended by counsel by the reasonable hourly rates of such counsel. *See Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal 2010) (applying

lodestar method to C.C.P. § 1021.5); *Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621, 643 (1982) (upholding lodestar method to calculate fees under C.C.P. § 1021.5). Under the lodestar method, Plaintiffs' attorneys are entitled to be compensated for "all hours reasonably spent on the matter." *Charlebois v. Angels Baseball LP*, No. SACV 10-0853 DOC (ANx), 2012 WL 244849, *4 (C.D. Cal., May 30, 2012) (Carter, J.) (citing *Serrano IV*, 32 Cal.3d at 635).

Where, as discussed above, Plaintiffs initiated the litigation and have made significant improvements to the Settlement benefitting hundreds of thousands of consumers, their attorneys "should recover a fully compensatory fee ... encompass[ing] all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see also Automotive Prods. PLC v. Tilton Eng'g*, 855 F.Supp. 1101, 1103 (C.D. Cal. 1994) (applying *Hensley* analysis). A "fully compensatory fee" is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and hours expended by counsel, calculated at prevailing market rates. One purpose in allowing the recovery for all hours and costs reasonably spent on the litigation is "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Audubon Soc'y v. County of San Bernardino*, 155 Cal.App.3d 738, 755 (1984); *see also In re Worldcom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives"). The fee recovery should ensure that attorneys are paid for all the time they reasonably devote to the litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 572-573 (1986) (plurality opinion).

### (1) The Lodestar Amount Sought by the Consumer Watchdog Legal Team is Reasonable

Using the lodestar formula, the Consumer Watchdog Legal Team is entitled to compensation based on the over 5,137.95 hours of work performed by attorneys, law clerks and paralegals whose work contributed to the successful result in this case, with each individual's work compensated at a reasonable rate according to their experience and skill. *See Serrano v. Priest* ("*Serrano III*"), 20 Cal.3d 25, 48 (1977).  Here, the Consumer Watchdog Legal Team's lodestar is reasonable.  As set forth below, the detailed, contemporaneous records summarized in the Antonini Decl. at ¶¶23-106, the Anderson Decl. at ¶¶10-43, the Murphy Decl. at ¶¶3-22, and the Campora Decl. at ¶¶2-6, establish that the Consumer Watchdog Legal Team has so far expended 5,137.95 hours on litigation tasks necessary to obtaining the relief in the Settlement. While the Consumer Watchdog Legal Team could be awarded a multiplier, they are not requesting a multiplier.[8]

### C. The Number of Hours Claimed By the Consumer Watchdog Legal Team Are Reasonable and Well-Documented

### (1) The Consumer Watchdog Legal Team Pursued this Case Efficiently and the Hours Claimed are Reasonable

The Consumer Watchdog Legal Team's detailed declarations demonstrate that this litigation was pursued vigorously and efficiently over three years. (*See* Antonini Decl., ¶¶23-106; Anderson Decl., ¶¶10-43; Murphy Decl., ¶¶3-22; Campora Decl., ¶¶2-6.)

As noted in the table on page 2, and the discussion in Section II above, the Consumer Watchdog Legal Team's time is broken down into five separate time frames.  The time spent by each of the attorneys and staff on each of these phases

---

[8] Prior to briefing and filing this Motion, the Consumer Watchdog Legal Team reached out to counsel for Hyundai to discuss a resolution of their fees, with the understanding that their efforts on behalf of the class would continue. (Antonini Decl., ¶¶20-21.) Counsel for Hyundai did not follow up. (*Id.*)

1   is well within what is reasonable for a class action lawsuit of this complexity and

2   magnitude.

3   Once a fee applicant has satisfied his or her burden to document the hours

4   expended in litigation, any opposition to that fee application bears "a burden of

5   rebuttal that requires submission of evidence to the district court challenging the

6   accuracy and reasonableness of the hours charged or the facts asserted by the

7   prevailing party in its submitted affidavits." *Pierce v. County of Orange*, 905

8   F.Supp.2d 1017, 1025 (C.D. Cal. 2012) (citing *Gates v. Gomez*, 60 F.3d 525, 534-

9   35 (9th Cir. 1995). To reduce the number of hours worked, "it must appear that the

10  time claimed is obviously and convincingly excessive under the circumstances."

11  *Blackwell, supra*, 724 F.Supp.2d at 1081. Here, there is no indication that the

12  Consumer Watchdog Legal Team's time to achieve this result was unreasonable

13  or inefficient. (Antonini Decl., ¶¶14-17, 23-106; Anderson Decl., ¶¶10-43;

14  Murphy Decl., ¶¶3-22; Campora Decl., ¶¶2-8.) *See Blackwell, supra*, 724

15  F.Supp.2d at 1081 ("An attorney's sworn testimony that, in fact, [she] took the

16  time claimed, is considerable weight on the issue of the time required."). The

17  extensive experience of Consumer Watchdog attorneys, Cuneo Gilbert & LaDuca,

18  LLP, Cotchett, Pitre & McCarthy, LLP and Dreyer Babich Buccola Wood

19  Campora, LLP counsel in litigating complex consumer protection cases merits the

20  deference of the Court when considering the appropriateness of the time they

21  spent in connection with this litigation, especially considering the magnitude of

22  the success of their efforts in improving the benefits of the settlement to Class

23  Members. Good work takes time and effort. Here, the effort was extraordinary.

24  *Cf., Charlebois, supra*, 2012 WL 244849 at *11 ("Frankly, the Court suspects that

25  several of the complaints it dismisses every week fail to state a claim because

26  attorneys spend *too little* time researching the grounds for their case; the Court

27

28

sees no reason why it should punish the attorney that researches the law and facts before putting paper to pen.").

### (2) The Consumer Watchdog Legal Team Has Provided Detailed Documentation of Their Time

The declarations submitted by the Consumer Watchdog Legal Team are more than adequate to satisfy the documentation requirements set forth by the United States Supreme Court and the Ninth Circuit.[9] *See Hensley, supra*, 461 U.S. at 437, n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended, but at least counsel should identify the general subject matter of his time expenditures."). Declarations of this specific nature are sufficient to establish the "quality of the services performed and the amount of time devoted to the case." *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 254-255 (2001) (declarations of attorneys establishing the number of hours worked and the hourly rates is sufficient to support an award of attorneys' fees); *EEOC v. Harris Farms, Inc.*, 2006 U.S. Dist. LEXIS 36903, *16 (E.D. Cal. Mar. 1, 2006) (finding sufficient a declaration containing descriptions of hours spent on tasks and "identif[ying] the general subject matter of [the] time expenditure.") The declarations and supporting documentation submitted herewith constitute evidence of the type that courts have relied on in numerous fees decisions. *Cf. Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ("Sworn testimony, that in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case . . .").

### D.   The Hourly Rates Used to Calculate the Lodestar Are Comparable to Other Local Attorneys' Rates

---

[9] The Consumer Watchdog Legal Team will be pleased to submit their time records to the Court, subject to redaction of the information protected by the attorney-client and work product privileges.  (Antonini Decl., ¶10.)

Both the United States Supreme Court and the California Supreme Court have held that fee awards to attorneys are to be based on the prevailing billing rates of attorneys in private practice with similar skills and experience. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (legislative history of civil rights statutes requires that hourly rates for public interest attorneys equal prevailing private market rates); *Serrano IV, supra*, 32 Cal.3d at 640-44 (same). The Consumer Watchdog Legal Team's billing rates are comparable to those of attorneys with similar expertise and experience.

The Consumer Watchdog Legal Team requests compensation for the work in this case at their regular hourly rates for 2014. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). As set forth in the Antonini Decl. at ¶¶9-17, the Anderson Decl. at ¶¶6-9, the Murphy Decl. at ¶¶23-27, and the Campora Decl. at ¶¶7-8, these rates are reasonable as measured by the rates charged by attorneys of comparable skill and experience who specialize in cases of this nature in the geographical region.

In further support of the reasonableness of the rates claimed by the Consumer Watchdog Legal Team in this action, Plaintiffs submit the Declaration of Richard Pearl, an attorneys' fees expert and author of the CEB treatise *California Attorney Fee Awards*. In his Declaration, Mr. Pearl confirms that the rates used by the Consumer Watchdog Legal Team for similarly complex litigation in Southern California at the present time are reasonable and within the prevailing hourly rates of firms with similar expertise and experience. (*See* Pearl Decl. ¶¶ 8-12.) Both federal and state courts have found Mr. Pearl's opinions on attorneys' fee rates reliable. *See Heritage Pac. Fin., LLC. v. Monroy*, 215 Cal.App.4th 972 (2013); *Blackwell v. Foley, supra,* 724 F.Supp.2d *at* 1084 (acknowledging that Judge Patel set the rates in *Nat'l Fed. of the Blind v. Target Corp.*, No. C-06—1802 MHP, 2009 U.S. Dist. LEXIS 84390 (N.D. Cal., August

3, 2009), based upon a market survey of fees in the Northern District of California conducted by Mr. Pearl).

The Consumer Watchdog Legal Team may incur an additional $36,000 in lodestar fees between December 18, 2014 and final approval. (Antonini Decl., ¶22.) If participation rates are low, the Consumer Watchdog Legal Team may submit additional briefing requesting future measures to increase the claims rate. (*Id.*)

## IV.   THE CONSUMER WATCHDOG LEGAL TEAM IS ENTITLED TO RECOVER OUT-OF-POCKET COSTS

The Consumer Watchdog Legal Team is also entitled to recover reimbursement of all reasonable out-of-pocket litigation expenses in prosecuting this public interest action.  *See Serrano IV, supra;* 42 U.S.C. § 12205 (the court "may allow the prevailing party . . . litigation expenses, and costs"); *see also Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980) (noting that "[u]nder 29 U.S.C. § 1132(g) (1975), a court in its discretion may award fees and costs of an action by a plan participant to either party.").

The Consumer Watchdog Legal Team incurred documented out-of-pocket litigation expenses of $31,329.97 in pursuing this case. (*See* Antonini Decl., ¶¶107-108; Anderson Decl., ¶¶44-45; Murphy Decl., ¶28; Campora Decl., ¶¶9-10.)  Counsel kept costs within reasonable limits and have sufficiently detailed their expense entries to allow review by the Court.  (*Id.*)

## V.   NAMED PLAINTIFFS ARE ENTITLED TO RECEIVE ADDITIONAL COMPENSATION FOR THEIR EFFORTS IN BRINGING THIS ACTION

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1303 (2006) (28% of class actions include incentive

awards to class representatives). Such awards "serve an important function in promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc*., No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002). The Ninth Circuit has recognized that service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

In recognition of their contributions toward the prosecution of this case, the Consumer Watchdog Legal Team respectfully requests that the Court approve a service award for each of the named Plaintiffs in *Bird, Krauth* and *Hasper*. All 14 of the *Bird, Krauth,* and *Hasper* Plaintiffs have been actively involved in this case since prior to the filing of each action, and throughout the course of the litigation. (Antonini Decl., ¶109.) These Plaintiffs have expended hours providing the Consumer Watchdog Legal Team with documents and information about their Hyundai and Kia vehicles. (*Id.*) They approved the filing of the original complaints in the relevant actions and the allegations about their situations. (*Id.*) They reviewed relevant pleadings and have been in routine contact with the Consumer Watchdog Legal Team to discuss the status of their cases and the progress of the Settlement throughout this action. (*Id.*)

The Consumer Watchdog Legal Team requests that the Court approve a service award for their Plaintiffs in the amount that the Court awards to the Plaintiffs in the *Espinosa*, *Hunter*, and *Brady* actions. The Settlement Agreement

---

**MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM**

provides for unspecified incentive payments to the named Plaintiffs in the *Espinosa*, *Hunter*, and *Brady* actions.  (Amended Settlement Agreement, §§ 12.1-12.5, Dkt. 354.) The duration of the litigation for the Plaintiffs in *Hunter* and *Brady*, both filed after the November 2 EPA Announcement, is comparable to the 13 named Plaintiffs in the *Krauth* and *Hasper* actions. The *Hunter* and *Brady* Plaintiffs, who were not deposed by Defendants, have presumably contributed the same amount of hours to the prosecution of the case as the Plaintiffs in *Krauth* and *Hasper*. Plaintiff Louis Bird, who filed his case in July, 2012, has been involved in litigation longer than the Plaintiffs in all of the cases in the MDL except for *Espinosa.*

Therefore, the Court should award each named Plaintiff in the *Bird*, *Krauth*, and *Hasper* actions a service award in the amount awarded to the *Espinosa, Hunter* and *Brady* actions.

## VI.  **CONCLUSION**

The corporate misconduct at issue here is deeply disturbing. Hyundai and Kia misrepresented their vehicles' fuel economy, in "by far the most egregious case" of any mileage misstatement to date (*see* fn. 1, *supra*), the principal focus of the companies' marketing and advertising, and an extremely important criterion for consumers. Hyundai and Kia betrayed and financially harmed their customers. Their cheating undermined honest competition and their competitors in the American automobile marketplace. The environment itself was a victim of Hyundai and Kia's misconduct, as the historic penalty levied by the EPA on the two companies last November attests.

The Consumer Watchdog Legal Team was not involved in the Settlement that was reached by Hyundai, Kia and two plaintiffs' law firms just weeks after the EPA confirmed the concerns raised by Consumer Watchdog back in 2011 – concerns that were ignored while the companies engaged in another year's worth

of misrepresentations. But the Consumer Watchdog Legal Team worked as hard as it could – devoted far more time and effort than is typical in such situations – to improve the terms of the proposed settlement, and maximize the ability of the Class to obtain the benefits offered by the Settlement. Our clients, the Class, and the class action system itself deserved no less.

Based on the foregoing, Plaintiffs respectfully request an award of attorneys' fees and costs in the amount of $2,820,852.47 to the Consumer Watchdog Legal Team. The Consumer Watchdog Legal Team also requests the Court award each of the named representatives in the *Bird*, *Krauth*, and *Hasper* actions an incentive payment in the amount the Court awards to the Plaintiffs named as Class Representatives in the Amended Settlement Agreement.

Respectfully submitted,

Dated:  December 23, 2014

**CONSUMER WATCHDOG**

By:  */s/ Harvey Rosenfield*
      Harvey Rosenfield

Pamela Pressley
Laura Antonini
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874

Jonathan W. Cuneo
William H. Anderson
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Niall P. McCarthy
Anne Marie Murphy
Eric J. Buescher
**COTCHETT, PITRE & McCARTHY,
LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 692-3606

Craig C. Sheffer
Steve M. Campora
Robert A. Buccola
**DREYER BABICH BUCCOLA WOOD
CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
Fax: (916) 379-3599

*Attorneys for the Krauth and Hasper, et al.
Plaintiffs*