QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Joseph R. Ashby (Bar No. 248579)
  josephashby@quinnemanuel.com
  John Lee (Bar No. 272229)
  johnlee@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

  Karin Kramer (Bar No. 87346)
  karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Defendants Hyundai Motor
America and Hyundai Motor Company

[LIST OF COUNSEL CONTINUED ON NEXT PAGE]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | CASE NO. 2:13-ML-02424-GW |
| | **PUBLIC REDACTED VERSION** |
| | **DEFENDANTS' OPPOSITION TO THE KRAUTH/HASPER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATION OF NAMED PLAINTIFFS** |
| | [Declarations of Joseph R. Ashby and Gary Greenfield filed concurrently] |
| | Date: March 19, 2015 |
| | Time: 8:30 a.m. |
| | Courtroom: 10 |
| | Hon. George H. Wu |

DYKEMA GOSSETT PLLC
  James P. Feeney (Bar No. 219045)
  *jfeeney@dykema.com*
  Benjamin W. Jeffers (*pro hac vice*)
  *bjeffers@dykema.com*
  Dommond E. Lonnie (Bar No. 142662)
  *dlonnie@dykema.com*
333 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 487-1800
Facsimile: (213) 487-1850

Attorneys for Defendant Kia Motors
America, Inc.

HOGAN LOVELLS US LLP
  Dean Hansell (Bar No. 93831)
  dean.hansell@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4665
Facsimile: (310) 785-4601

  Michael L. Kidney (*pro hac vice*)
  michael.kidney@hoganlovells.com
555 Thirteenth St., NW
Washington, DC 20004
Telephone: (202) 637-5883
Facsimile: (202) 637-5910

Attorneys for Defendants Hyundai Motor
America and Hyundai Motor Company

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT FACTUAL BACKGROUND ................................................. 2

ARGUMENT ........................................................................................... 7

I.   *KRAUTH* COUNSEL CANNOT SEEK FEES FOR A SETTLEMENT THEY DO NOT SUPPORT .............................................................. 7

II.   THE FEES *KRAUTH* COUNSEL REQUEST ARE EXCESSIVE ................ 10

   A.   *Krauth* Counsel Cannot Be Awarded Fees For *Bird* ............................ 10

      1.   They Cannot Claim Fees For *Bird* On A "Catalyst" Theory ..... 10

      2.   The Work In *Bird* Provided No Benefit To The MDL ............... 12

         a.   The Pre-Filing Investigation Did Not Benefit The MDL ................................................................... 12

         b.   The Litigation In *Bird* Was Not For The Benefit Of The MDL ................................................................. 13

   B.   If The Court Awards Fees, The Starting Point For Calculation Should Be The Benefit They Provided, Not Their Claimed Lodestar .............................................................................. 15

      1.   Even After *Bird* Fees Are Deducted, The Claimed Lodestar Is Excessive And Unsupported ................................... 16

   C.   *Krauth* Counsel Cannot Seek Statutory Attorneys' Fees .................... 20

      1.   The *Krauth* And *Hasper* Plaintiffs Are Not "Prevailing Plaintiffs" Under The Consumers Legal Remedies Act ............ 21

      2.   The *Krauth* And *Hasper* Plaintiffs Are Not A "Successful Party" Under The Private Attorney General Statute ................. 22

   D.   These Plaintiffs Are Not Entitled To An Incentive Award ................. 23

CONCLUSION ........................................................................................ 25

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

*Binta B. ex rel. S.A. v. Gordon,*
  710 F.3d 608 (6th Cir. 2013) ............................................................... 11

5

6

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ......................................................... 16, 17

7

*Building a Better Redondo, Inc. v. City of Redondo Beach,*
  203 Cal. App. 4th 852 (2012) ............................................................. 22

8

9

*In re Cmty. Bank of N. Va.,*
  418 F.3d 277 (3d Cir. 2005) ................................................................. 8

10

*In re Consumer Privacy Cases,*
  175 Cal. App. 4th 545 (2009) ............................................................. 16

11

12

*In re Cont'l Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) .............................................................. 23

13

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
  662 F.3d 913 (7th Cir. 2011) ............................................................... 9

14

15

*Cullen v. Netflix, Inc.,*
  2013 WL 1832650 (N.D. Cal. 2013) .................................................... 10

16

*Ebbetts Pass Forest Watch v. Cal. Dep't of Forestry & Fire Prot.,*
  187 Cal. App. 4th 376 (2010) ............................................................. 22

17

18

*Eubank v. Pella Corp.,*
  753 F.3d 718 (7th Cir. 2014) ............................................................... 9

19

*Fleury v. Richemont N. Am., Inc.,*
  2008 WL 4829868 (N.D. Cal. Nov. 4, 2008) .......................................... 7

20

21

*Gascho v. Global Fitness Holdings, LLC,*
  2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) .......................................... 8

22

*Graciano v. Robinson Ford Sales, Inc.,*
  144 Cal. App. 4th 140 (2006) ............................................................. 21

23

24

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) .................................................................... 16, 18

25

*In re HP Inkjet Printer Litig.,*
  2011 WL 2462475 (N.D. Cal. June 20, 2011) ......................................... 8

26

27

*Kim v. Euromotors W./The Auto Gallery,*
  149 Cal. App. 4th 170 (2007) ........................................................ 21, 22

28

Case No. 2:13-ML-02424-GW

*In re Leapfrog Enters., Inc. Sec. Litig.,*
   2008 WL 5000208 (N.D. Cal. Nov. 21, 2008) ........................................... 7

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,*
   487 F.2d 161 (3d Cir. 1973) ...................................................................... 15

*McGraw v. Homeservices Lending LLC,*
   2012 WL 2390742 (S.D. Cal. June 25, 2012) ........................................... 13

*In re Oracle Sec. Litig.,*
   1994 WL 502054 (N.D. Cal. June 18, 1994) ............................................. 24

*Parsons v. Volkswagen of Am.,*
   2014 WL 7148919 (Okla. Dec. 16, 2014) ................................................. 12

*Ramos v. Countrywide Home Loans, Inc.,*
   82 Cal. App. 4th 615 (2000) ..................................................................... 20

*Redman v. RadioShack Corp.,*
   768 F.3d 622 (7th Cir. 2014) ....................................................................... 8

*Rodriguez v. Disner,*
   688 F.3d 645 (9th Cir. 2012) ..................................................................... 18

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ................................................................ 20, 24

*In re S. Ohio Corr. Facility,*
   24 F. App'x 520 (6th Cir. 2001) ............................................................... 23

*Schaffer v. Litton Loan Servicing, LP,*
   2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ........................................ 24

*Sengupta v. City of Monrovia,*
   2010 WL 3368438 (C.D. Cal. Aug. 25, 2010) .......................................... 23

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 23

*Stewart v. Gates,*
   987 F.2d 1450 (9th Cir. 1993) ................................................................... 16

*Thayer v. Wells Fargo Bank, N.A.,*
   92 Cal. App. 4th 819 (2001) ...................................................................... 17

*In re Toys R Us-Del., Inc.,*
   295 F.R.D. 438 (C.D. Cal. 2014) .............................................................. 24

*True v. Am. Honda Motor Co.,*
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...................................................... 8

*Van Vranken v. Atl. Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................... 24

*In re Vitamin Cases*,
   110 Cal. App. 4th 1041 (2003) ........................................................ 17, 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................ 7, 15

*Williams v. Ruan Transp. Corp.*,
   2013 WL 6623254 (E.D. Cal. Dec. 16, 2013) .................................... 16

*Zucker v. Occidental Petroleum Corp.*,
   192 F.3d 1323 (9th Cir. 1999) ........................................................ 8, 9

### <u>Statutes</u>

Cal. Civ. Code § 1780 ........................................................................ 21

Cal. Code Civ. P. § 1021.5 ................................................................ 22

### <u>Miscellaneous</u>

Manual for Complex Litigation (Fourth) § 21.643 ............................ 7

## **Preliminary Statement**

At $2,789,522.50 (plus expenses), the lodestar claimed by the four law firms representing the *Krauth* and *Hasper* plaintiffs ("*Krauth* counsel") eclipses that of any other firm and is hugely inversely proportional to their contribution to the case. Their request must be denied entirely at this point: first because they have never signed on to the settlement and the law does not permit fee awards to objecting counsel at this juncture; and second because they have failed to submit the detail necessary to review their claimed lodestar—an especially important consideration given the time they claim to have spent, their inexplicable deployment of four law firms, and their request for fees incurred in the completely separate *Bird* state court action.

Even should the Court entertain their claim and award fees, their request should be substantially reduced. This MDL did not present the typical challenges for these plaintiffs' counsel. Typically, counsel initiate litigation, face a long campaign with an uncertain future, putting their time and resources at risk. This case was different. These counsel did not file *Krauth* until the EPA had announced its findings and defendants already had decided voluntarily to compensate affected consumers. They did not file *Hasper* until even later, after the MDL was formed and a settlement-in-principle already had been announced. This posture portended a quicker and less risky trajectory and apparently signaled to plaintiffs' counsel they could participate in a settlement and accumulate lodestar by doing little more than finding a plaintiff and participating in group activities (such as hearings and conference calls) to which they made no identifiable or significant contribution.

*Krauth* counsel's request also should be denied or reduced because it proceeds from the erroneous assumption that their claimed lodestar provides the starting point for the calculation of an appropriate fee award. To be entitled to fees, counsel first must show that they conferred a benefit on the litigation that merits a fee award. Although *Krauth* counsel have made perfunctory and conclusory claims

DEFENDANTS' OPPOSITION TO THE KRAUTH/HASPER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

to their contribution, the facts show their participation made virtually no difference to the end result.  The substance of the settlement-in-principle changed little from the time it was announced to preliminary approval.  Its basic structure and compensation components mirrored the voluntary reimbursement program Defendants Hyundai Motor America ("HMA") and Kia Motor America ("Kia") already had designed, and the only change of significance after the initial settlement was announced—adding a web-based claims system—came from liaison counsel. Mostly the *Krauth* counsel contributed a consistently discordant voice, often appearing contrarian simply for their own sake (and even contradicting themselves from week to week), without their discord translating into benefit to the class.

In determining any amount *Krauth* counsel might receive, a useful reference is the fee agreements reached with other counsel for Non-Settling Plaintiffs ("NSPs"), most of whom have agreed to fee amounts.  Of the 28 NSP firms that have agreed to fees, the range accepted was from 22% to 56% of their claimed lodestars.  (Declaration of Joseph R. Ashby ("Ashby Decl."), Exh. 1).  *Krauth* counsel's fees, if any, should fall at the low end of the scale for the reasons set forth above, including their deployment of multiple and inevitably duplicative counsel and their claim for fees in *Bird*—which they used to **compete** with the MDL—and that should be excised entirely from their claim.[1]

## Relevant Factual Background

**These counsel were not the catalyst for the EPA investigation.**  *Krauth* counsel's claim that they were the force behind the EPA investigation and, ultimately, this settlement, is not borne out by the facts.  The EPA sought fuel-economy related information from HMA months before *Krauth* counsel claims to have first contacted HMA.  The EPA itself stated it initiated its inquiry because

---

[1]  Defendants' opposition to *Krauth* plaintiffs' motion for attorneys' fees is supported by the Declaration of Gary Greenfield ("Greenfield Decl.").

1  another automaker had complained. (Automotive News, "Who Fingered Kia,

2  Hyundai? A U.S. Rival, Oge Says" (Dec. 17, 2012) (Ashby Decl., Exh. 2)).

3      *Krauth* counsel's sole evidence that *Bird* was the "catalyst" for recovery in

4  the MDL is that *Bird* was filed on July 3, 2012, ███████████████████████

5  ██████████████████████████████ (*Krauth/Hasper* Plaintiffs' Mot. for

6  Payment of Attorneys' Fees, Reimbursement of Expenses & Compensation to

7  Named Plaintiffs ("Mot."). at 14:9-12 (Dkt. No. 371-1)). ███████████████

8  █████████████████████████████████████████████████████████████████

9  ██████████████████████ (*See* Declaration of Laura Antonini

10 ("Antonini Decl."), Exh. E at 38:7-12 (Dkt. No. 371-2)). ██████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ██████ (*See, e.g.*, Ashby Decl., Exhs. 3, 4).

14     As to the settlement itself, *Krauth* counsel did not participate in forging it and

15 have sought mostly to undermine it. They chose not to participate in the original

16 settlement discussions that led to the settlement-in-principle. Thereafter, they

17 repeatedly denied its existence in representations made to the state court in *Bird*.

18 (*See* Plaintiff Bird's Opp. to HMA's Mot. to Stay at 4 (Ashby Decl., Exh. 7);

19 Plaintiff's Sur Reply in Opp. to Mot. to Stay at 5-6 (Ashby Decl., Exh. 8); Plaintiff

20 Bird's Opp to HMA's Mot. for Reconsideration at 1-3 (Ashby Decl., Exh. 11)). In

21 their stance before this Court, they have acted more like objectors than co-counsel

22 working to bring the settlement to fruition. The changes they suggested that

23 ultimately were adopted went to minor non-substantive issues in the notices in terms

24 of phrasing and whether certain items were in bold or underline. (*See, e.g.*,

25 *Krauth/Hasper* Plaintiffs' Opp. to Mot. for Prelim. Approval at 19-24 (Dkt. No.

26 236); *Krauth/Hasper* Plaintiffs' Resp. to Filing of Revised Notice and Claim Docs.

27 at 2-7 (Dkt. No. 266); *Krauth/Hasper* Plaintiffs' Resp. to Settling Parties' Supp.

28 Brief in Supp. of Prelim. Approval at 9-23 (Dkt. No. 277)). **The Court rejected the**

1   ***Krauth* plaintiffs' challenges to the basic framework of the settlement.**  (*E.g.*,

2   Tentative Ruling re Plaintiffs' Motion for Prelim. Approval at 16 (Dkt. No. 267)

3   (rejecting *Krauth* plaintiffs' objection to the requirements for class members to

4   make claims)).

5       **Neither *Krauth, Hasper*, nor *Bird* is a product of original work.**  Although

6   *Krauth* counsel may have spent time finding plaintiffs for their cases and generating

7   publicity for their filings, the complaints they filed are not original work product.

8   The first action they filed, *Bird*, venued in Sacramento Superior Court, was filed six

9   months after *Espinosa* and merely recast *Espinosa*'s same claims and allegations as

10  a state court action, crafted to avoid removal.  (*See generally Bird* Compl. (Ashby

11  Decl., Exh. 5)).  Their hope, quite clearly, was to try to beat *Espinosa* to class

12  certification and, ultimately, settlement.[2]  Like *Espinosa*, *Bird* asserted, *inter alia*,

13  UCL, CLRA, and false advertising claims based on HMA's alleged failure to

14  include federally mandated disclosures in advertisements.  (*Id*.).  The putative class

15  in *Bird* was encompassed by the putative class alleged in *Espinosa*.  (*Id*. ¶ 35).  The

16  original *Bird* complaint did not allege any fuel economy testing errors.  (*See id*.).

17      Following the November 2, 2012 announcement that defendants were

18  readjusting the EPA fuel economy estimates for certain vehicles, the first case to

19  allege testing errors was filed, *Hunter v. HMA*.  An onslaught of similar cases

20  followed.  *Krauth* was one of those cases.  Filed four days after *Hunter*, it copied

21  almost word-for-word most of the *Bird* allegations, while adding *Hunter*'s

22  allegations about testing.  Shortly thereafter, *Krauth* counsel filed an amended

23  complaint in *Bird*, this time revising *Bird* to copy *Krauth*.  Over two months later,

24  

25      [2]   Indeed, the Court may recall the *Krauth* plaintiffs' counsel's hasty, midnight

26  *ex parte* motions to intervene and be appointed lead counsel in *Espinosa*, filed the
    night before the initial hearing on the motion for class certification—in disregard of

27  this Court's local rules.  (Application for Appointment as Lead Counsel (*Espinosa v.
    HMA*, Case No. 12-cv-0800, Dkt. Nos. 71, 72 (C.D. Cal.))).

28

1  *Krauth* counsel filed *Hasper*, another copycat action.  (*Hasper* Compl. (*Hasper v.*

2  *HMA*, Case No. 13-cv-220, Dkt. No. 1 (C.D. Cal.))).  In the interim, 38 other post-

3  November 2, 2012 MDL cases were filed.  (*Id*. ¶ 7).

4  **_Krauth_ counsel misrepresented to Sacramento Superior Court that there**

5  **was no settlement-in-principle.**  After *Krauth* counsel amended *Bird* to include the

6  allegations in the MDL, HMA moved to stay *Bird* in light of the settlement-in-

7  principle that had been reached in the MDL.  (HMA's Mot. to Stay Proceedings

8  (Ashby Decl., Exh. 6)).  HMA argued that *Bird* was the same case, covering the

9  same class, and represented by the same four law firms as *Krauth* and *Hasper*, and

10  therefore the putative class would obtain relief from the MDL settlement.  (*Id.* at 2-

11  3, 5-7).  Efficiency therefore dictated that *Bird* be stayed so that HMA could devote

12  its efforts to the settlement in the MDL.

13  In response, *Krauth* counsel's effort were directed, once again, not towards

14  the best interests of their class, but rather towards trying to gain leverage in the

15  MDL by pursuing competing litigation in state court.  Despite HMA having

16  provided his counsel with the terms of the settlement-in-principle, the *Bird* plaintiff

17  opposed the motion to stay, falsely claiming that no such settlement was pending.

18  (Plaintiff Bird's Opp. to HMA's Mot. to Stay at 4 (Ashby Decl., Exh. 7); Plaintiff's

19  Sur Reply in Opp. to Mot. to Stay at 6-7 (Ashby Decl., Exh. 8)).  The court denied

20  HMA's motion, finding—based on *Bird* counsel's representations—that no

21  settlement was imminent in the MDL.  (Mar. 28, 2013 Minute Order at 3 (Ashby

22  Decl., Exh. 9)).  Only upon HMA's motion for reconsideration, when it submitted

23  additional evidence establishing the existence of the proposed MDL settlement, was

24  *Bird* stayed on July 10, 2013.  (HMA's Mot. for Reconsideration at 1-3 (Ashby

25  Decl., Exh. 10); May 2, 2013 Minute Order at 2 (Ashby Decl., Exh. 12)).

26  **_Krauth's_ minimal contributions to the MDL.**  *Krauth* counsel cannot

27  identify any significant substantive contribution they made to the settlement that

28  justifies the fees they seek.  They chose not to participate in the negotiations that led

to the MDL settlement.  Each exhibit attached to *Krauth* counsel's motion papers—for which they seek to claim credit for bringing to light in confirmatory discovery—already had been previously produced in *Espinosa*.  (*Id*. ¶ 24).

On December 23, 2013, Settling Plaintiffs moved for preliminary approval of the class settlement.  (Dkt. No. 185-1).  In May 2014, when plaintiffs' counsel had to file briefs in opposition to the motion for preliminary approval, forty-four of the 51 law firms representing plaintiffs in the MDL supported or did not object to the motion.[3]  *Krauth* counsel opposed it, arguing that:  (i) the settlement should not be approved; (ii) defendants should not be permitted to administer the settlement; (iii) a claims process was unnecessary; and (iv) certain changes should be made to the organization and wording of the claim and notice documents.  (Liaison Counsel's Report Listing Non-Settling Plaintiffs Supporting or Not Objecting to the Settlement at 1-2 (Dkt. No. 239); *see, e.g.*, Ltr.from *Krauth/Hasper* Plaintiffs' Counsel to Liaison Counsel at 3 (Dkt. No. 211-3) ("The claims process . . . is . . . completely unnecessary."); *Krauth/Hasper* Plaintiffs' Opp. to *Brady/Hunter/Espinosa* Plaintiffs' Mot. for Prelim. Approval at 16-18 (Dkt. No. 236) (opposing motion for preliminary approval and arguing, *inter alia*, the claims process is unnecessary); *Krauth/Hasper* Plaintiffs' Resp. to Joint Notice of Filing of Revised Notice at 5 (Dkt. No. 266) (stating in their response to the revised notice and claim documents that a "claim form should not be a requirement for Class Members choosing the lump-sum payment"); *Krauth/Hasper* Plaintiffs' Resp. to Settling Parties' Supp. Brief in Support of Prelim. Approval at 4-5 (Dkt. No. 277) ("[T]here is *no reason* to require every Class Member to file a claim in order to obtain the principle benefit of the settlement."  (emphasis in original)); Ltr. from *Krauth/Hasper* Plaintiffs'

---

[3]   The tally is that now 46 of 51 law firms representing plaintiffs in the MDL currently support or do not object to the settlement, because the Law Office of Lewis G. Adler and the Law Office of Paul DePetris now support the settlement.

Counsel to Liaison Counsel at 1 (Dkt. No. 311-1) (providing statement in response to the settling parties' revised notice and claim documents: "We continue to believe that no claim form is necessary . . . .")).

Their objections to the settlement were mostly overruled. The settlement did receive preliminary approval, defendants are administering the settlement, and a claims process is in place. (Order Granting Prelim. Approval (Dkt. No. 319)). The only changes arising from the parties' multiple rounds of briefing were some non-substantive revisions to the organization and wording of the claim and notice forms and website. Most of the changes adopted resulted from suggestions by the Court, not the counsel now seeking fees. (*See id.*; Tentative Ruling re Plaintiffs' Mot. for Prelim. Approval (Dkt. No. 290)).

<u>**Argument**</u>

**I.** *KRAUTH* **COUNSEL CANNOT SEEK FEES FOR A SETTLEMENT THEY DO NOT SUPPORT**

Two principles of class action fee practice meant to ensure that the interests of the class remain paramount to those of counsel preclude awarding fees to *Krauth* counsel. The first is that counsel who object to a settlement may not obtain fees unless and until their objections bear fruit, and those objections must increase the fund or otherwise substantially benefit the class; mere cosmetic changes will not suffice. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002) ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law, they [are] not entitled to fees.").

Courts scrutinize the claimed contributions of objectors to ensure they have conferred more than a technical or coincidental benefit. *In re Leapfrog Enters., Inc. Sec. Litig.*, 2008 WL 5000208, at *2-3 (N.D. Cal. Nov. 21, 2008); *see* Manual for Complex Litigation (Fourth) § 21.643; *Fleury v. Richemont N. Am., Inc.*, 2008 WL 4829868, at *6-12 (N.D. Cal. Nov. 4, 2008) (concluding objector did not confer a substantial benefit upon the class where, *inter alia*, his actions did not result in

material changes to the settlement or affect its terms); *In re HP Inkjet Printer Litig.*, 2011 WL 2462475, at *2 (N.D. Cal. June 20, 2011) (denying motion for attorneys' fees where objectors failed to show their actions benefited the class in any significant way).

The second principle applicable to fee applications by parties who do not support the settlement is that fees must not appear to be a pay-off for counsel to agree to a settlement. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 308 (3d Cir. 2005) (describing concern that class counsel may be enticed by a "red-carpet treatment on fees"); *see also Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *25 (S.D. Ohio Apr. 4, 2014) ("The risk of collusion is also lessened in this action because the parties negotiated the payment of attorneys' fees and costs after having reached agreement on the relief to the Class and Subclasses."), *report and recommendation adopted*, 2014 WL 3543819 (S.D. Ohio July 16, 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) ("[C]lass counsel, as 'economic man,' presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep."); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1327 (9th Cir. 1999) (noting concern that plaintiffs' attorneys may be paid enough money to "induce them to settle the class action"). The fee award should not risk the appearance that counsel's consent to the settlement is being purchased. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010) (holding that concurrent negotiation of the class settlement and attorneys' fees weighed against approving the settlement).

Both principles are implicated by *Krauth* counsel's motion for fees at this time. As pointed out above, *Krauth* counsel has not conferred a substantial benefit on the class. Their proposed changes to the settlement were by and large rejected, and the few changes that were accepted were cosmetic changes to the notice and claim documents. Further, *Krauth* counsel have never stated their support for the

settlement nor indicated they have any intention of joining in it, including in their current fee motion.  Their litigation history shows a pattern of discontent consistent with a party who intends to continue objecting and eventually pursue an appeal.  Counsel have the right to object; what they cannot do is simultaneously object to the settlement and seek fees based on it.  Unless and until they agree to support the settlement and abandon their objector stance, they may not be awarded fees.  *See Zucker*, 192 F.3d at 1327 ("The risk of collusion may be especially high if defendants can buy off the attorneys with money . . . .").

The danger of an appearance of impropriety here is similar to situations where a defendant agrees to pay attorneys' fees while settlement negotiations with class counsel remain ongoing, thus suggesting that class counsel may be "selling out" the class for counsel's own interest in fees.  *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("[W]e and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." (quoting *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011))).  No principled distinction can be made between that situation and this one, and the result should be the same: no fees awarded that appear to hinge on counsel's agreeing to settlement.

To eliminate the risk inherent in this circumstance, the Court should decline to consider *Krauth* counsel's request for fees at this time.  This approach also makes sense from a procedural standpoint.  Based on the principles cited above that prohibit fees to objectors while they maintain their objections, if the Court grants final approval and *Krauth* counsel then objects and pursues an appeal, they could not receive fees under the agreement anyway.  They would need to wait until their

DEFENDANTS' OPPOSITION TO THE KRAUTH/HASPER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

appeal is decided and, if successful, seek fees at that time.  If they are unsuccessful on appeal, they are not entitled to fees.  If, on the other hand, they decide to support the settlement, they can submit a motion for fees at that time.

## II.   THE FEES *KRAUTH* COUNSEL REQUEST ARE EXCESSIVE

Lead counsel in this case, who negotiated the settlement and have led the effort on behalf of plaintiffs throughout, claimed a lodestar of approximately $2,200,000, and agreed to accept fees of $2,700,000, after applying a 1.22 multiplier.  *Krauth* counsel claim a lodestar $1,000,000 *more* than lead counsel, with contributions that, at best, pale by comparison.  Most of the other NSPs have put their limited contributions in appropriate perspective and accepted negative multipliers.

At least three components contribute to the excessive lodestar figure *Krauth* counsel claims: (i) they improperly seek fees for *Bird*, their competing state court action; (ii) they overstaffed the matter with four law firms, each of whom deployed multiple counsel; and (iii) they ask for certain statutory fees to which they are not entitled.  In addition, *Krauth* counsel fail to provide the documentation necessary to evaluate their claimed lodestar.

### A.   *Krauth* Counsel Cannot Be Awarded Fees For *Bird*

#### 1.   They Cannot Claim Fees For *Bird* On A "Catalyst" Theory

*Krauth* counsel claim *Bird* was the "catalyst" for both the voluntary reimbursement program and the MDL settlement and therefore justifies their fee. (Mot. at 14).  Neither the facts (explained above) nor the law support them.

*Krauth* counsel cite no authority for the proposition that this Court can award fees for their work in other litigation, and the law is to the contrary.  Courts consistently reject fee applications based on work performed in separate litigation. For example, in *Cullen v. Netflix, Inc.*, the plaintiff argued he should be entitled to attorneys' fees under a "catalyst" theory based on a favorable result achieved in a later-filed, separate action brought by a different party against the same defendant.

Case No. 2:13-ML-02424-GW

DEFENDANTS' OPPOSITION TO THE KRAUTH/HASPER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

2013 WL 1832650, at *2 (N.D. Cal. May 1, 2013).  The court rejected this argument because: (i) the plaintiff's lawsuit was not the motivation for the later-filed action; (ii) the settlement was negotiated without the plaintiff's participation; and (iii) the plaintiff did not show that his lawsuit played any role in the settlement negotiations or acted as motivation for the defendant to settle.  *Id*. at *3.

These same factors are present here.  *Bird* did not motivate anything and certainly did not inspire the MDL litigation.  It copied *Espinosa*, then added new allegations similar to actions filed after the November 2 announcement.  The MDL cases were triggered by defendants' November 2, 2012 announcement that they were restating fuel economy estimates for certain vehicles.[4]  (*See, e.g.*, *Hunter* Compl. ¶¶ 3, 6-7 (*Hunter v. HMA*, Case No. 12-cv-1909, Dkt. No. 1 (C.D. Cal.)); *Maharaj* Compl. ¶¶ 1, 15-16 (*Maharaj v. HMA*, Case No. 13-cv-0070, Dkt. No. 1 (C.D. Cal.))).  The settlement was negotiated without participation by *Bird*'s counsel, who not only played no role in it but falsely denied its existence to the state court judge.

Other courts also have found it improper to award fees for work performed in separate litigation.  In *Binta B. ex rel. S.A. v. Gordon*, the Sixth Circuit took issue with the prospect of "permitting plaintiffs' counsel to receive fees for work performed in a completely separate case" because "[d]oing so could lead to all sorts of oddities."  710 F.3d 608, 631 (6th Cir. 2013).  One such oddity would be "allow[ing] counsel to be compensated for time spent conducting discovery in a completely separate matter," as *Krauth* counsel seek to do here.  *Id*.; *see also*

---

[4]   *Espinosa v. HMA*, like *Bird*, was based on allegations concerning fuel economy disclosures.  *Espinosa*, however, pre-dated Bird and thus could not have been motivated by *Bird*.  (*See Espinosa* Compl. (*Espinosa v. HMA*, Case No. 12-cv-0800, Dkt. No. 1 (C.D. Cal.))).

*Parsons v. Volkswagen of Am.*, 2014 WL 7148919, at *4-5 (Okla. Dec. 16, 2014) (rejecting award of fees for work performed in an earlier, separate action).

By counsel's deliberate design, *Bird* is not part of the MDL. Accordingly, *Krauth* counsel cannot seek fees here for their work there.

### 2.   The Work In *Bird* Provided No Benefit To The MDL

It is not a stretch to say that *Bird* was litigated with the specific intent of undermining the MDL, not to support the settlement for which *Krauth* counsel now requests fees. *Bird* was a constant distraction, with counsel seeking to diverge from the orderly path being taken in the MDL and urging that they be permitted broad discovery on their own timetable. These efforts were so at odds with the orderly conduct of the MDL that this Court suggested it would consider enjoining the state court proceedings should counsel be permitted to proceed with discovery in that action. (*See* Apr. 25, 2013 Hearing Tr. at 47-56 (Ashby Decl., Exh. 20)).

*Krauth* counsel claim entitlement to fees for two categories of work in *Bird*, neither of which benefited the MDL class: (i) "pre-filing investigation and preparation of complaint;" and (ii) "discovery and motion practice." (Mot. at 2).

### a.   The Pre-Filing Investigation Did Not Benefit The MDL

Their claim to $130,000 in fees for a "pre-filing investigation and preparation of complaint" between January 2012 and July 3, 2012 not only has nothing to do with *this* case, it seems facially suspect. They apparently started their "investigation" when *Espinosa* was filed and ended it by filing a very similar complaint six months later. It is difficult to imagine what went on during that six month period, and imagine we must because *Krauth* counsel have provided no data to support their claimed work. Further raising questions is the fact that they also claim fees for the "pre-filing investigation" in *Krauth/Hasper*, suggesting they seek to recover for the same activities in both the federal and state actions, and undermining their assertion that their work in *Bird* was transferrable to the MDL.

*See McGraw v. Homeservices Lending LLC*, 2012 WL 2390742, at *2 (S.D. Cal. June 25, 2012) (deducting duplicative work from fee calculation).

### b. The Litigation In *Bird* Was Not For The Benefit Of The MDL

Counsel do not purport to explain how motion practice in *Bird* benefited the MDL, and no benefit is apparent. *Bird* counsel admittedly engaged in extensive motion practice—serial, unnecessary, and largely unsuccessful. But far from benefitting the MDL, much of that effort was geared towards *undermining* the MDL by competing with this Court's orders staying all discovery except the confirmatory discovery process. *Bird* discovery was meant to—and did—interfere with HMA's efforts to meet the deadlines in the MDL as it was forced to juggle the demands of both cases.

Significantly, the majority of the $410,000 in fees for discovery and motion practice sought by *Krauth* counsel for their work in *Bird* was incurred *after* the settlement-in-principle was reached and HMA had moved for a stay of *Bird*—a motion counsel fought by falsely representing to the *Bird* court that there was no pending settlement. (*See, e.g.*, Plaintiff Bird's Opp. to HMA's Mot. to Stay (Ashby Decl., Exh. 7)). Their wasteful litigation efforts—none of which contributed to the MDL settlement—included:

- Mr. Bird's motion to compel further responses to document requests. (Ashby Decl., Exh. 13).

- HMA's motion seeking to protect the privacy of its customers from intrusive discovery measures proposed by Mr. Bird. (*Id*. Exh. 14).

- HMA's motion to quash a notice of a person most knowledgeable deposition, which Mr. Bird served before the court had even ruled on HMA's demurrer to his amended complaint (and after this Court had stayed MDL discovery). (*Id*. Exh. 15).

- An additional motion by Mr. Bird concerning document discovery. (*Id*. Exh. 16).

- Multiple rounds of voluminous written discovery.  (*Id.* ¶ 16).

*Krauth* counsel do not and cannot demonstrate how that unnecessary discovery and motion practice—pursued in circumvention of this Court's order staying all MDL discovery apart from confirmatory discovery (Mar. 28, 2013 Hearing Tr. at 39:12-22 (Ashby Decl., Exh. 19))—advanced the interests of the MDL class.  And although counsel portrays *Bird* as a "successful pursuit of documents and information," (Mot. at 5), the bulk of the motion practice in *Bird* consisted of either frivolous arguments rejected by that Court or discovery items that could and should have been resolved informally between the parties.  With no regard for the substantial production and preparation efforts the MDL required of HMA—and despite these same four law firms having two pending cases in the MDL—*Krauth* counsel were peremptory at every turn, refusing to allow reasonable discussions to conclude, or reasonable measures to be taken.  To take just two examples:

- Mr. Bird refused to stipulate to a reasonable protective order to address the treatment of confidential materials produced in discovery, requiring HMA to move for a protective order.  Among the frivolous and unsuccessful arguments made by Mr. Bird in opposition to HMA's motion were that: (i) HMA had somehow "waived" its right to a protective order; (ii) HMA had "waived" the trade secret privilege; (iii) Mr. Bird should be allowed to share HMA's confidential materials with attorneys in any other case involving fuel economy litigation against HMA; (iv) HMA should be required to stipulate in advance to the authenticity of every confidential document it produced; and (v) there should be no provision requiring the receiving party to notify the producing party when it believed it had received inadvertently produced privileged materials.  (*See* Plaintiff's Opp. to HMA's Mot. for Protective Order (Ashby Decl., Exh. 17)).  On March 12, 2013, the court rejected these arguments and granted a protective order.  (Mar. 12, 2013 Minute Order (Ashby Decl., Exh. 18)).

- HMA moved to stay *Bird* based on the settlement-in-principle in the MDL, in order to avoid duplicative and potential conflicting proceedings.  (HMA's Mot. to Stay (Ashby Decl., Exh. 6)).  Mr. Bird

opposed, wrongly claiming no settlement was imminent, even though counsel had in his hands the settlement terms. (Bird's Opp. to HMA's Mot. to Stay (Ashby Decl., Exh. 7)). That Court finally stayed *Bird,* but only after HMA was forced to file a second motion with additional evidence contravening counsel's denial of the settlement. (HMA's Mot. for Reconsideration (Ashby Decl., Exh. 10); May 2, 2013 Minute Order (Ashby Decl., Exh. 12)).

The record is replete with illustrations of the wasteful nature of counsel's litigation activity in *Bird.* Rather than seeking efficiently to resolve discovery disputes, Mr. Bird's counsel repeatedly created unnecessary motion practice in a transparent effort to multiply fees, a tendency the Ninth Circuit has acknowledged: "[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary in litigating a case so as to recover a reasonable fee." *Vizcaino*, 290 F.3d at 1050 n.5 (citation omitted).

## B.   **If The Court Awards Fees, The Starting Point For Calculation Should Be The Benefit They Provided, Not Their Claimed Lodestar**

*Krauth* counsel's fee request begins from the assumption that they are entitled to fees because they brought cases to the MDL. Fee awards are not based on bringing cases; they are based on obtaining value. Counsel cite no case for the proposition that the mere participation in class litigation entitles them to be paid even if their presence in the case makes no difference. If counsel were correct, 10,000 firms could bring 10,000 duplicative cases and all could recover fees for every step they choose to take, whether it provides benefit or not. That is not the law, nor should it be.

The lodestar concept originally was based in the theory of *quantum meruit—* the value of the benefit conferred. *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) (first case discussing lodestar and pointing out that it must be based on benefit conferred). This foundation has not changed over the decades; the lodestar method remains rooted in

the Court's "objective determination of the value of the attorney's services," as the cases counsel cite also show.  *See, e.g.*, *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009) (citation omitted); (*cf.* Mot. at 16 (citing *In re Consumer Privacy Cases*)).  To reward counsel for anything other than the value they contribute to the class not only would be contrary to the law, it would encourage the filing of an infinite number of cases which sole purpose is to allow a hook for a fee award.  As the court said in *Consumer Privacy Cases*, ensuring that the fee award is anchored to value is "vital to the prestige of the bar and the courts." 175 Cal. App. 4th at 557.

### 1.   Even After *Bird* Fees Are Deducted, The Claimed Lodestar Is Excessive And Unsupported

The lodestar should include only those hours that were "reasonably expended on the litigation."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).  It should not include hours that were "excessive, redundant, or otherwise unnecessary."  *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *Williams v. Ruan Transp. Corp.*, 2013 WL 6623254, at *3 (E.D. Cal. Dec. 16, 2013) ("Counsel is expected to exercise good billing judgment by making a good faith effort to exclude hours that are excessive, redundant or otherwise unnecessary." (citations and quotations omitted)).  Here, there is no way to determine what was "reasonably expended" because *Krauth* counsel have not provided information that would permit the Court and defendants to do so.  (*See* Greenfield Decl., ¶¶ 21-25, 32, 40-42).  Nor does their expert, Mr. Pearl, indicate that he reviewed their bills or otherwise audited their hours.

No credible claim can be made that the hours claimed are reasonable on their face.  Plaintiffs engaged four law firms and **17 lawyers** for these substantively identical cases (*Krauth* and *Hasper*) without any explanation why such a bloated deployment was warranted, particularly given the many other lawyers in the MDL.

This is exacerbated by counsels' failure to submit any billing records, such that it cannot be assessed whether any of the work performed by the four firms on overlapping issues was duplicative. (Greenfield Decl., ¶¶ 21-25, 32, 40-42). That a firm invites colleagues to join a litigation does not mean they all get to recover for every minute each of those 17 lawyers' claims to have worked on the case. By their logic, had they pulled in ten law firms, all would be entitled to recover everything claimed to have been billed. There are limits to what may be claimed as lodestar and these plaintiffs exceed it.

This conclusion becomes even more obvious when the fee agreements reached with other counsel are compared; other counsel understood they were part of a whole and accepted less than their lodestar accordingly. (*See* Ashby Decl., Exh. 1). Overstaffing is a red flag for unnecessary and duplicative work. *See Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 841, 844-45 (2001) (reversing an award of attorneys' fees where there was "unnecessary duplication of work by plaintiffs' numerous counsel"); *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1054-55 (2003) (same). A settlement that resolves many private class actions, especially where some plaintiffs are represented by multiple firms, "raises the specter of duplicative and superfluous litigation and hence unnecessary fees and costs." *Vitamin Cases*, 110 Cal. App. 4th at 1054. Courts awarding fees in such settlements should take care not to reward duplication of effort among the various plaintiffs, as well as among multiple firms representing the same plaintiffs. *See id.*

Even were the lodestar accurate as to time spent on non-duplicative and necessary work (which seems implausible), the figure should be adjusted according to reasonableness factors "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42 (citations omitted). "Foremost among these considerations [] is the benefit obtained for the class." *Id*. The Supreme Court "has instructed district courts to [] 'award only that amount of

fees that is reasonable in relation to the results obtained.'" *Id.* (quoting *Hensley*, 461 U.S. at 436 ).  To confer a benefit on the class, an attorney's work must add something substantive to the process or decision in question—for instance, by raising a substantive issue not previously considered by the court, or by offering new legal argument or expertise. *See, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (denying attorneys fees altogether when counsel added no legal argument or expertise to the class's litigation effort) (Greenfield Decl., ¶ 13 ("In a class action, before counsel is entitled to any portion of their lodestar, they must first show that they provided a benefit to the class.")).

*Krauth* counsel seek fees for work of dubious benefit.  For example, they seek fees for more than *1,200* hours for work related to revising the settlement agreement.  (Antonini Decl., ¶ 104 (Consumer Watchdog: 1,104.7 hours); Declaration of William Anderson ("Anderson Decl."), ¶ 42 (Dkt. No. 371-3) (CGL: 137.5 hours); Declaration of Anne Marie Murphy ("Murphy Decl."), ¶ 22 (Dkt. No. 371-4) (CPM: 590 hours for confirmatory discovery and revisions to settlement agreement combined)).  This is an astonishing number of hours, yet they fail to provide any indication what they were allegedly doing for all that time and what those 1,200 hours yielded.  Those few changes wrought were minor and cosmetic. For example, following the July 24, 2014 hearing, Consumer Watchdog proposed a number of "primarily stylistic" changes, which were not incorporated into the revised notice submitted to the court "because they did not appear to add clarity and would require review for the first time by both the Court and the other plaintiff groups."  (Settling Parties' Submission of Proposed Final Notice at 1:22-27 (Dkt. No. 304); *Krauth/Hasper* Plaintiffs' Unincorporated Revisions (Dkt. Nos. 304-4, 304-5, 304-6)).  Some of Consumer Watchdog's proposed revisions even "reflected an inaccurate understanding of the proposed settlement or the lifetime reimbursement program."  (Settling Parties' Submission of Proposed Final Notice at 1:27-2:1 at 1:27-2:1 (Dkt. No. 304)).  These revisions could not have added

1  anything to the notice-revision process because, as noted, they were off-base, and

2  were offered so late in the process that other plaintiffs' counsel were not able to

3  consider them in the discussions. (*See id.* at 1:22-27).

4       They also seek fees for more than 1,100 hours for work related to

5  confirmatory discovery, described only at a high level, such as conferring with

6  liaison counsel about the terms of the settlement agreement, document review,

7  editing discovery requests, and interviews of witnesses. (Antonini Decl., ¶ 86

8  (Consumer Watchdog: 618.1 hours); Anderson Decl., ¶ 37 (CGL: 534.75 hours);

9  Murphy Decl., ¶ 22 (CPM: 590 hours for confirmatory discovery and revisions to

10  settlement agreement combined)). Much of this work surely was duplicative not

11  only of the efforts of settling plaintiffs and liaison counsel, but also of their fellow

12  *Krauth* counsel. (*See* Greenfield Decl., ¶¶ 34-38, 41 (identifying duplicative work

13  performed by counsel even based on the sparse descriptions submitted)).

14       Consumer Watchdog and CGL both participated in all four U.S. interviews of

15  Hyundai witnesses (Antonini Decl., ¶ 78; Anderson Decl., ¶ 34), and CPM

16  participated in three (Murphy Decl., ¶ 13). Consumer Watchdog's participation in

17  the interviews conducted by CGL and CPM consisted of "monitoring," participating

18  in a chat room, and drafting notes. (Antonini Decl., ¶ 80). Similarly, all three firms

19  "analyzed" the proposed settlement and suggested improvements to the notice and

20  claim form. (Antonini Decl. ¶¶ 87-106; Anderson Decl. ¶¶ 38-42; Murphy Decl.

21  ¶¶ 15-19). Yet their input into the notice-revision process was often superfluous at

22  best, as their suggested changes were rejected in favor of those made by other

23  plaintiffs. (*See* Settling Parties' Submission of Proposed Final Notice at 1:22-27

24  (Dkt. No. 304)). No fees should be awarded for this type of duplicative work. (*See*

25  Greenfield Decl., ¶¶ 34-38, 41).

26       *Krauth* counsel also fail to provide support for their requested billing rates.

27  For instance, they seek recovery of fees for work performed by Harvey Rosenfield

28  of Consumer Watchdog at an hourly rate of $925 (Antonini Decl., Exh. B)—the

highest request by any counsel in the MDL—but fail to submit any evidence of Mr. Rosenfield's relevant legal expertise or actual work performed in this litigation that would justify such an inflated rate.  (*See* Greenfield Decl., ¶ 41).  The *Krauth* submission is similarly devoid of substantiation of their other counsel's rates.  (*Id.*, ¶¶ 43, 45-52). The lodestar also should be adjusted based on "the degree of risk undertaken by plaintiffs' counsel in this type of litigation." *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 627 (2000).  The degree of risk depends on, *inter alia*, the number of defendants and claims and the novelty of the legal theories at issue.  *See Vitamin Cases*, 110 Cal. App. 4th at 1056-57 (number of defendants); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (existence of controlling precedents, number of "hurdles in proving [] damages and liability").  Here, *Krauth* counsel faced less risk than other plaintiffs because they filed their first case after *Espinosa* already had received a ruling that permitted that case to proceed beyond the pleading stage.  *Bird* merely sought to proceed on a variant of the theory that survived the pleading stage in *Espinosa*.  They filed their later cases after the EPA announcement and HMA's and Kia's voluntary decision to take responsibility for the fuel estimate discrepancies.  Even among themselves, they spread their risk around to four firms, presumably sharing costs and time so that each firm had to put less on the line.  Their conduct was a model of avoiding risk, rather than assuming it, all while multiplying fee opportunities.

### C.   *Krauth* Counsel Cannot Seek Statutory Attorneys' Fees

*Krauth* counsel's request for fees pursuant to California's Consumers Legal Remedies Act ("CLRA") and private attorney general statute, (Mot. at 11-12), is legally unsupportable.  To recover under either of these statutes, they must be a "prevailing plaintiff" or "successful party."  Neither status properly characterizes the *Krauth* and *Hasper* plaintiffs, because they are not parties to the settlement agreement nor have they expressed support for it.

1.     The *Krauth* And *Hasper* Plaintiffs Are Not "Prevailing Plaintiffs" Under The Consumers Legal Remedies Act

California Civil Code § 1780(e) provides for an award of costs and attorneys' fees in an action brought under the CLRA, but only to a "prevailing plaintiff." Cal. Civ. Code § 1780(e) ("The court shall award court costs and attorney fees to a *prevailing plaintiff* in litigation filed pursuant to this section." (emphasis added)). "[A] plaintiff who is not prevailing is not entitled to attorneys fees." *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 179 (2007).

The *Krauth* and *Hasper* plaintiffs expand the CLRA's fee provision to a situation far beyond that contemplated by the statute's plain terms or courts' interpretation of it. To begin with, their request to be considered a "prevailing party" is not even warranted at this time. Courts assess the propriety of awarding attorneys' fees—including the meaning of "prevailing plaintiff"—after the parties have reached a resolution on the underlying litigation. In the cases relied upon by these plaintiffs, the CLRA claims had been resolved through jury verdict, court order, or the parties' settlement agreement. *See, e.g.*, *Kim*, 149 Cal. App. 4th at 181 (proper to determine whether or not plaintiff is a "prevailing plaintiff" where "the litigation was resolved by a settlement agreement"); *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 151-54 (2006) (conducting prevailing party analysis after the jury entered a verdict on the plaintiff's CLRA claims and the parties reached a settlement).

Here, while the defendants and other plaintiffs' groups have agreed to resolve this litigation, the *Krauth* and *Hasper* plaintiffs' position remains unclear. They are not parties to the settlement and have not indicated whether they intend to support or object to the settlement going forward. Noticeably absent from their current motion, as well as prior filings, are statements of support for the settlement.

In addition, the *Krauth* and *Hasper* plaintiffs overstate their role as a "prevailing party," claiming that they secured "substantial improvement to the

1   Settlement, including revisions to the notice and claim forms and process . . . ."

2   (Mot. at 12).  But, as pointed out earlier, the changes these plaintiffs advocated for

3   largely were not adopted and those that were adopted were of minimal benefit to the

4   class.  The substantive outcomes achieved in this litigation instead resulted from the

5   work of defendants and counsel for other parties, most significantly counsel in

6   *Brady* and *Hunter*, as well as liaison counsel.  A decision suggesting it was *Krauth*

7   counsel who achieved a resolution in this action would be misleading, and an affront

8   to the counsel who did bring the settlement to fruition through constructive efforts.

9   Because they cannot "show[] that [they were] the prevailing plaintiff," an award of

10  attorneys' fees pursuant to the CLRA is not proper.  *Kim*, 149 Cal. App. 4th at 181.

11          2.     The *Krauth* And *Hasper* Plaintiffs Are Not A "Successful Party"

12                 Under The Private Attorney General Statute

13          Attorneys' fees are also not warranted pursuant to California's private

14  attorney general statute.  Under that statute, a court may, in its discretion, award

15  attorneys' fees to a "successful party" in an action "which has resulted in the

16  enforcement of an important right affecting the public interest" if certain conditions

17  have been met.  Cal. Code Civ. P. § 1021.5.  Such fees may be available "when a

18  case has been won on a preliminary matter, the case settled or the opposing party

19  voluntarily withdrew its claim."  *Building a Better Redondo, Inc. v. City of Redondo*

20  *Beach*, 203 Cal. App. 4th 852, 870 n.13 (2012) (citations omitted).  As the movant,

21  the burden is on the *Krauth* and *Hasper* plaintiffs to establish each prerequisite to an

22  award of attorneys' fees under the private attorney general statute.  *Ebbetts Pass*

23  *Forest Watch v. Cal. Dep't of Forestry & Fire Prot.*, 187 Cal. App. 4th 376, 381-82

24  (2010).  This burden includes establishing their status as a "successful party."  *Id.*

25  Because they cannot meet this threshold requirement, attorneys' fees should not be

26  awarded.  *Id.* ("A party seeking an award of section 1021.5 attorney fees must first

27  be 'a successful party.'").  The arguments made above apply here as well and will

28  not be repeated.

1    *Krauth* counsel's quest for attorneys' fees under the catalyst theory similarly

2    fails.  (Mot. at 14).  To establish entitlement to attorneys' fees pursuant to the

3    catalyst theory, these plaintiffs must prove, *inter alia*, that "the lawsuit was a

4    catalyst motivating the defendants to provide the primary relief sought."  *Sengupta*

5    *v. City of Monrovia*, 2010 WL 3368438, at *2 (C.D. Cal. Aug. 25, 2010) (citations

6    omitted).  For the reasons discussed in Section II.A.1, *supra*, the record cannot

7    support any such finding here.

8                    **D.    These Plaintiffs Are Not Entitled To An Incentive Award**

9    *Krauth* counsel seek incentive awards for 14 clients, none of whom is a class

10   representative for the MDL, and including Mr. Bird, who is not even a putative class

11   representative on any case in the MDL.  Their claim is supported by one paragraph

12   containing conclusory statement that these 14 persons spent time on this litigation,

13   such as approving the filing of the complaint, reviewing pleadings, and maintaining

14   contact with their counsel.  (Antonini Decl., ¶109).  The sum total of their work is

15   set forth in one brief paragraph of counsel's declaration, no individual's effort is

16   described, and there is no attempt to even claim they provided a benefit to the class.

17   The request should be denied.

18   Incentive awards are meant to compensate named plaintiffs for "the services

19   they provide and the risks they incur in leading class action litigation."  *See In re S.*

20   *Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001); *In re Cont'l Ill. Sec.*

21   *Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992) (denying an incentive award because

22   named plaintiff's risk was nominal).  Incentive awards must be evaluated

23   individually and should reflect the "degree to which the class has benefitted" from

24   the named plaintiff's actions.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

25   2003) (citations omitted).  Specifically, courts look at "(1) the risk to the class

26   representative in commencing suit, both financial and otherwise; (2) the notoriety

27   and personal difficulties encountered by the class representative; (3) the amount of

28   time and effort spent by the class representative; (4) the duration of the litigation;

and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at \*18 (C.D. Cal. Nov. 13, 2012) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

In practice, the appropriate size of an incentive award hinges largely on the third factor, and whether the named plaintiff "remained fully involved and expended considerable time and energy during the course of the litigation." *In re Toys R Us-Del., Inc.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014) (citation omitted). For example, in *In re Oracle Sec. Litig.*, the court ruled that, due to their "limited participation" in discovery, the named plaintiffs were entitled to only one-fifth of the compensation they requested. 1994 WL 502054, at \*1 (N.D. Cal. June 18, 1994) (awarding $500 each to named plaintiffs who spent "between two and five hours undergoing depositions and [] responded to a few narrow document discovery requests"); *see, e.g.*, *Toys R Us-Del.*, 295 F.R.D. at 471 (C.D. Cal. 2014) (focusing on third factor); *Schaffer*, 2012 WL 10274679, at \*19-20 (same).

Here, the Court cannot assess any of the relevant factors because no supporting information was provided. Instead of making a showing that could support an incentive award, plaintiffs merely claim that incentive awards are "fairly typical in class action cases," citing *Rodriguez*, 563 F.3d at 958, but also citing a statistic that they are awarded in only 28% of class actions. (Mot. at 22:24-23:1.) In *Rodriguez*, the request for incentive awards was denied because they had agreements with class counsel that put the class representatives into a conflict situation with the class. More to the point, the Court explained its "typical" comment by pointing out that incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved." *Rodriguez*, 563 F.3d at 958-59.

These plaintiffs have not settled, nor have they demonstrated that any of the reasons for granting incentive awards apply to them.  The fact that their case was pending for a certain number of months says nothing at all about what they did during those months and whether they did anything to earn a fee.  The *Krauth* and *Hasper* cases (and the *Bird* case, which should not even be under consideration) belong in the 72% of cases where incentive awards are not granted.

<u>Conclusion</u>

For all the above reasons, the Court should deny the *Krauth* counsel's request for fees and incentive awards.

DATED: February 5, 2015          QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP

                                 By /s/ Shon Morgan
                                 _____
                                    Shon Morgan
                                    Attorneys for Defendant Hyundai Motor
                                    America

DATED:  February 5, 2015         DYKEMMA GOSSETT PLLC




                                 By   /s/ James P. Feeney
                                 _____
                                    James P. Feeney
                                    Attorneys for Defendant Kia Motors
                                    America, Inc.

**C.D. Cal. L. R. 5-4.3.4(a)(2) Attestation**

Pursuant to Local Rule 5-4.3.4(a)(2), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

                                    */s/ Shon Morgan*
                                 _____