1   Robert J. Bonsignore, Esq.
2   BONSIGNORE TRIAL LAWYERS, PLLC
3   2513 Morocco Avenue
4   Las Vegas, Nevada 89031
5   Telephone:  781-856-7650
6   rbonsignore@classactions.us
7
8                    Submitted on Behalf of:
9
10           **BONSIGNORE TRIAL LAWYERS, PLLC**
11
12                  Counsel for Plaintiff(s) in:
13           **Brown, et al. v. Kia Motors America, Inc.**
14          **TeHorst, et al. v. Kia Motors America, Inc.**
15         **Iocovozzi, et al. v. Kia Motors America, Inc.**
16          **Cestaro, et al. v. Kia Motors America, Inc.**
17        **Woodward, et al. v. Kia Motors America, Inc.**
18          **Martyn, et al. v. Kia Motors America, Inc.**
19
20              **UNITED STATES DISTRICT COURT**
21              **CENTRAL DISTRICT OF CALIFORNIA**
22
23
24   IN RE:  HYUNDAI AND KIA FUEL        Case No. 2:13-ml-02424-GW-FFM
25   ECONOMY LITIGATION
26                                       **REPLY OF BONSIGNORE**
27                                       **IN SUPPORT OF REQUEST FOR**
28                                       **ATTORNEYS' FEES AND**
                                         **EXPENSES TO #399**

                                         Date:  February 26, 2015

---

BONSIGNORE REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Now comes Bonsignore Trial Lawyers, PLLC ("BTL") and submits this response to Defendants' Opposition to Fee Applications of Certain Non-Settling Parties Represented by Bonsignore LLC and Incentive Award Requested by Plaintiff in Gordon v HMA. #399

Within this submission we continue make use of the term Non Settling Plaintiffs ("NSP"). Much of the argument advanced against BTL is identical to the argument that Defendants have made against all NSP counsel. To the extent possible BTL has avoided repeating argument previously advanced in support of the award of fees to NSP Counsel. *See* #378 *et seq*. To further avoid repetition, we have included where possible references to the record. BTL repeated content or argument only when necessary or to add context.

BTL objects to Defendants' advancement of unsupported opinion and other vitriolic content as fact. BTL also objects to Defendants' failure to place case law in context. The submission of case law without related argument that applied the cited law to facts in the record left BTL guessing as to what the case was offered to support and stymied intelligent response.

BTL also objects to the content of Defendants' objection, including their unsupported contentions and affidavits, because they do not conform to Federal Rules of Evidence 401, 402, 404(b), 602, 701, or 801. In brief, the affidavits do not contain evidence that tends to prove facts of consequence within the knowledge of the affiant or that is rationally based on the affiant's perception and that is not hearsay or opinion or argument.

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

BTL also objects to the Defendants request that BTL be held to a different, and higher standard of review than other counsel.

## PRELIMINARY STATEMENT RESPONSE

Before this court held its first status conference, the Hyundai Defendants announced on February 14, 2013, that it had chose to enter into a purported nation-wide "all in" settlement with counsel for three of the fifty-two federal cases on file and, that it had entered into a tentative settlement agreement with them.  Defendants have never explained the rational for selecting those three cases and two law firms.[1]  As noteworthy as the timing of Defendants' unorthodox and unnerving approach was the fact that Defendants intentionally cut out a respected consumer group and its respected counsel from *any* involvement in the negotiation of a proposed, exceedingly early settlement. BTL considered the fact that the cut out consumer group and counsel had been aggressively litigating a state court-based action as raising numerous and serious red flags.  Other concerns were raised at that hearing.  *See* Plaintiffs' Joint Status Conference Brief, Dkt. #6, at 4-8; Feb. 28, 2013 Hr'g Tr., Dkt. #13, at 15:15-24. *See also,* Supplemental Declaration of Robert J. Bonsignore in Support of Request For Attorney Fees and Expenses or Other Relief filed this day and attached hereto as Exhibit A. ("Supp BTL Dec.").

---

[1] Defendants chastise BTL for filing multiple cases on behalf on consumers that were residents of diverse states but do not offer the same attack against the law firm's it handpicked to enter into a settlement with and made no attempt to distinguish those filings. BTL explains the rational behind the common practice of Plaintiff firms filing multiple complaints below.

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

Defendants begin their case against awarding BTL its fees and expenses by stating as fact their global argument against fees to NSP counsel. Specifically:

> [t]he vast majority of counsel to Non Settling Plaintiffs ("NSPs" sic) in this MDL recognize their limited role, if any in achieving the settlement that has been preliminarily approved. As a result, these counsel agreed to relatively modest fee payments that reflect their lack of risk or role.

Contrary to Defendants' unequivocal statement in fact, all NSP Counsel have specifically rejected Defendants' erroneous statement. *See* Liaison Counsel's Reply, Dkt. #TBD, filed this date. Decisively, this Court assigned to NSP counsel the tasks of carrying out confirmatory discovery and, eventually, commenting on proposed settlement terms and settlement documents. *See* #378-1 (Memorandum and Points of Authority in Supp. of Non-Settling Pl.'s and Mot. for Att'y Fees and Expenses, at.6, 11-15)[2].

Ninth Circuit law dictates that settlements reached before class certification "require a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Correspondingly, the Manual for Complex Litigation advises that settlement review is a demanding task because "the adversariness of litigation is often lost after agreements to settle." *See* Manual for Complex Litig. §21.61. Because this Court assigned tasks to NSP counsel, the Defendants' proposition must be rejected as a matter of law. Nevertheless, there are additional grounds upon

---

[2] "Each Non-Settling Plaintiff has submitted a declaration detailing their counsels' lodestar and the work they performed in this litigation. Under California law, Non-Settling Plaintiffs should be awarded their requested and reasonably incurred attorneys' fees and expenses without a downward adjustment" *Id.* at 23.

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR ATTORNEYS' FEES AND EXPENSES

which such proposition must be rejected. Here, Defendants "refrained from seeking Court approval of the Settlement . . . until confirmatory discovery was substantially complete." *See* Dkt. #354-1 at 3 (Amended Settlement Agreement). Contrary to their current position, Defendants acknowledged the contribution of NSP counsel expressly in their active settlement filing. *See also In re Hyundai and Kia Fuel Economy Litig.*, MDL No. 2424 (J.P.M.L), Dkt #118 (Hyundai Motor America's Opp. to Mot. to Vacate Conditional Transfer Order) ("Hyundai JPML Brief"), at 5(stating "all parties worked together to design and carry out a process for all plaintiffs to obtain the discovery necessary to confirm that the proposed settlement is fair and reasonable.")

Defendants' claim that NSP counsel served no purpose and added no benefit to the class must otherwise be rejected. The specific details of the settlement, how it was reached, as well the many early facts upon which settling counsel based their decision were secrets guarded through to December of 2013 and some through this date.[3] Despite numerous requests, Defendants and Settling Counsel refused to release the full terms of the proposed settlement agreement they had entered into or were continuing to hammer out through ongoing negotiations.

The fact that Defendants deliberately chose to block access to the specific terms of the Settlement, thus ensuring the NSP were never made privy to the rationale behind those terms, bars (or serves as a waiver of) the argument that NSP counsel added no value because Defendants' themselves have eliminated any truly objective basis for review.

---

[3] *See, e.g.*, March 28, 2013 Hr'g Tr. at 14:1-10.

---

**BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

Once charged with certain responsibilities by this Court, NSP counsel were obligated to zealously carry out those duties. BTL did so reasonably by volunteering for work, assigning the most appropriate person available to carry out specific tasks, participating in NSP discussion and debate, following Liaison counsels direction where possible and contributing to the NSP efforts.

Second, Defendants' additional assertion that "Bonsignore, LLC, have not been reasonable, and seek 100% of their claimed lodestar" is false.  Indeed, it is Defendants whom have acted inappropriately. Defense counsel contacted BTL after mediation efforts had failed to further their plan to resolve the fee issue individually.  It was not defense counsel advising Robert Bonsignore that Judge Woo had a history of cutting Plaintiffs' counsels' fees and that many other Plaintiffs' counsels had agreed to cut their fees, nor was it the broaching of a self-serving, arbitrary and convoluted formulae that would be used by Defendant to value BTL's fees that terminated the call.  Rather, it was Defendants' insistence and Mr. Bonsignore's refusal to sign an agreement not to object to Final Approval that terminated the exchange.  Thereafter, defense counsel conditioned any further discussion of an agreed-upon fee on the execution of a signed agreement not to object to Final Approval. BTL refused to condition the negotiation of its fees on an agreement not to object to settlement.

Despite its unwavering belief in its entitlement to full payment, especially in light of the fact it cut from its submitted time all work not related to the confirmatory discovery and review and comment on the terms of the Proposed Settlement, as a present good faith effort to end this debate, BTL will agree at this time to a further

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

reduction of its (already trimmed) fee request by another twenty-five ("25") percent.  At the same time, BTL does not agree not to object to the Final Approval of the Settlement and so this Court should treat it categorically the same as Consumer WatchDog and the Cotchett firm. BTL also requested its clients Brown and Martyn receive incentive awards and objects to their not being awarded and reserves the right to request same at an appropriate time.

Third, Defendants also improperly hinge their conclusion that the BTL fee submission is unreasonable on their having "publically announced a program to compensate customers for diminished fuel economy."  However, the BTL lawsuits were necessitated by the very fact that the program offered by Defendants was unacceptable. In fact, the BTL Plaintiffs believed that the program was in reality designed to achieve a low participation rate, thereby allowing Defendants to get illusory mileage out of its existence alone.

Fourth, Defendants other unsupported broad brush swipes against BTL's fee submission are also far afield.  For example, Defendants take great umbrage to the filing of multiple complaints despite the fact that filing of cases on a state-by-state basis is the majority practice.  In fact, the Judicial Panel on Multi District Litigation's determination of the suitability of a particular controversy for assignment of an MDL designation and for pretrial proceedings before a single court is based largely upon the number of cases filed and the contents of the complaints.  The filing of multiple complaints also provides other valid strategic advantages to Plaintiffs, including choice of law and greater settlement options.  Moreover, throughout Defendants presupposed the existence of

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

universal support for their settlement and support for a nationwide class. They have no basis or right to impute their viewpoint on Plaintiffs' counsel. To be clear, BTL did not share Defendants' beliefs at the time BTL filed. Importantly, BTL did not bill for the research or drafting of its complaints, case investigation, or early communications with clients. *See,* #379 at paragraph 5. *See also,* Supp BTL Dec.

Fifth, Defendants' assertion that compensation to the class was assured is likewise disputed on multiple levels. In the first place, Defendants refused to timely disclose to NSP the specific terms of the Settlement – while the Defendants are entitled to their opinion, they cannot paint it onto NSP counsel who did not even know what the terms were. Secondly, Defendants offer no authority to support their position that "compensation" alone is enough because the benchmark is fair compensation.[4] In line, the Defendants offer no authority to support their position that the offending party determines what is reasonable compensation because none exists. It is more accurately stated that the Plaintiffs and a court approval process determine reasonable compensation. Moreover, efforts undertaken during the confirmatory discovery and the

---

[4] See e.g., "Reviewing proposed settlements ... are usually the most important and challenging assignments judges face in the class action arena. Unlike settlements in other types of litigation, class action settlements are not an unequivocal blessing for judges. Rule changes, precedent, recent legislation, and elemental fairness to class members direct you not to rubber-stamp negotiated settlements on the basis of a cursory review. Current rules, particularly Federal Rule of Civil Procedure 23, unambiguously place you in the position of safeguarding the interests of absent class members by scrutinizing settlements approved by class counsel." Managing Class Action Litigation: A Pocket Guide for Judges Federal Judicial Center Third Edition at 11.

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

settlement negotiation and commenting process posed a greater risk to recovery than those confronted by Defendants who receive payment as the case progresses. As such, Defendants are incorrect when they blithely assert that no risk was assumed by NSP in taking on related work notwithstanding the remarks of the Court. Unlike Defendants' counsel who are paid for work as it is carried out regardless of whether they succeed, NSP fees are entirely contingent. Moreover, the number NSP firms that cut their fees vividly illustrates the very real risk of not getting paid in this particular case.

Sixth, Defendants' assertion that BTL attorneys passively participated in group telephone calls is unsupported and, frankly, offensive. The lawyer who participated in the calls was Robert Bonsignore. Mr. Bonsignore was not passive during the calls, rather he was active and engaged. On document review-specific calls, Fran Whitaker, one of NSP's most active document reviewers participated on tasks assigned to her by Liaison Counsel as required by the circumstances in her discretion. There were no contemporaneous complaints, and she was given additional related work after her first assignments were completed.

Email exchanges and brief calls allowed for Bonsignore and Whitaker to keep current and allowed for Mr. Bonsignore's active remote participation in the formalized interviews of the foreign and domestic witnesses. *See* May 23, 2013 Hr'g Tr.t at 17:9-18:23.[5]

---

[5] Defendants' assertion that the web-based process was added at the suggestion of Liaison Counsel, but not any other NSP counsel, is unsupported by reference. NSP counsel include sophisticated and experienced class counsel who worked as a team. Web based claims process is not novel or cutting edge. Moreover, BTL first raised the

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

Simply put, rather than rebut the actual benefit to the class provided by BTL, defense counsel seek to ignore this Court's instruction and undercut the actual efforts undertaken by a blunt charge that NSP served a limited role, *if any*. (emphasis added). As to Defendants' charge that the detail supporting the lodestar was deficient, BTL provided the same level of detail as any other counsel.  If the detail offered by NSP counsel is sufficient for Defendant to have reach a compromised agreement with other NSP and for this Court to consider and approve it, BTL's detail is, absent the request of the Court for additional information, sufficient for all counsel.

### LEGAL PRINCIPLES RESPONSE

Bonsignore objects to and disagrees with Defendants' argument contained in Paragraph A of its Legal Principles section.  The "presumption" Defendants offer as fact is incorrect as to the Bonsignore firm.  Moreover, Defendants' presumption is unsupported by any evidence and contradicted by the declaration evidence submitted by BTL and other NSP counsel.

### ARGUMENT RESPONSE

### The Bonsignore Firm's Request Should be Granted

Defendants' objection to fees (#399) is best described as "a throw as much at the wall and see what sticks" approach.  In addition to the objections raised above, BTL also objects to the scattered content because it is largely impossible to decipher without

use of the dispute resolution process cited by Liaison Counsel in its moving papers (378-1) and pushed hard for many other matters including discovery in hearings before this Court. Defendants failure to mention that is conspicuous.

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR ATTORNEYS' FEES AND EXPENSES

resort to speculation as to what point is lodged against BTL, and what the relevance of a general proposition of law is.[6]

Defendants overarching argument against the award of fees is that NSP counsel, including BTL, provided no value to the class. Notably, Defendants entirely ignore that this Court instructed NSP counsel directly and through its appointed NSP Liaison Counsel to carry out confirmatory discovery and, later, to comment on the settlement terms and documents. More specifically, much of Defendants' argument is entirely irrelevant to time submitted by BTL because it limited its submitted time to such court-directed efforts.

While Defendants bemoan the payment of attorney fees to BTL's counsel, the confirmatory discovery performed by it significantly contributed to the litigation claims and ultimately fostered the settlement process. That discovery included the following:

1. The government's complaint against Defendants alleged in part that with regard to new motor vehicles from model year 2012 and 2013

    a. Defendants offered for sale and introduced into the United States vehicles that and did not conform to the design specifications in their applications for Certificates of Conformity;

    b. Defendants' vehicles had road load forces that were higher than specified;

---

[6] Defendants' offered opinion on the holding of a particular authority absent a direct application of cited law to fact serves no apparent purpose and waste the resources of the firm and this court.

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

   c.  Defendants overstated the fuel efficiency and understated green house

       gas emission; and

   d.   the reported load forces were determined through the use of

       protocols that were not in conformance with specified test procedures

2.  While Defendants not surprisingly "deny the violations alleged in the

    complaint,"[7] they entered into a consent decree with the United States

    government that requires them to pay a $93,656,000 civil penalty.  *Id.* at 7.

3.  Additionally, Defendants were ordered to pay an additional $6,343,400 civil

    penalty to the California Air Pollution Control Fund.[8]  *Id* at 8.

4.  Defendants were ordered not to deduct any penalties paid under the Decree in

    calculating state and federal income taxes.  *Id.* at 7.

5.  Defendants were ordered to amend their reports to the Environmental

    Protection Agency's Office of Transportation and Air Quality ("EPAQTAP")

    and permanently forfeit credits.[9]  *Id.* at 9.  Defendants agreed to a $5,000

    penalty per day if they did not timely comply.  *Id.* at 12.

---

[7] Introduction to Consent Decree at page 2.  United States of America and the California Air Resource Board v. Hyundai; Hyundai Motor America; Kia Motors Corporation; Kia Motors America; Hyundai America Technical Center, Inc.  United States District Court for the District of Columbia Case 1:14-cv-01837 Document 2-1 at p. 2.  ("Decree")

[8] Payment made through California Air Resource Board.

[9] 2,700,000 credits by Hyundai and 2,050,000 credits by Kia Motors.

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

6. Defendants also agreed to a myriad of other comprehensive "Additional Corrective Measures" and "Coastdown Auditing of Production Vehicles". *Id.* at Appendix A and B. Defendants are required to submit annual progress reports each October 1, 2015 until the termination of the Decree.

7. Defendants were ordered to provide raw data to the EPAQTAQ that support its 2015 and 2016 models.

Additionally, throughout their attack on BTL and other NSP Counsel, Defendants argue that late filing, the absence of original work product and "copy catting" are reasons to discount fees. BTL has not submitted bills for work done outside the confirmatory discovery and settlement commentary period. See Since no time was submitted for the drafting of complaints, early discussions with counsel or case investigation the Defendants assertion that the cases filed do not reflect any original work is irrelevant to the approval of its fee request.

In addition to the fact that this Court's assignment of tasks, a counterweight to Defendants' arguments that NSP counsel had no business in this case after they made an offered to settled is their early (and effective) cutting out of Consumer Watchdog and the Cotchett firm[10] The fact that the Defendants intentionally knocked out respected opponents that had been aggressively litigating an identical case against them in favor of contextually recently filed alternative counsel raised multiple red flags.

---

[10] Defendants' arguments addressed above, such as on the level of detail provided, risk undertaken and tasks actually deleted from the payment request, was addressed above and will not be repeated.

---

**BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

Defendants' assertion that no description of the work carried out by the BTL lawyers and support staffing the case is a stretch. It is entirely inconstant with the level of detail the Defendants found acceptable for NSP who agreed to reduce to writing that they would not oppose the settlement.  In sum, Defendants have requested this court to apply a lighter standard of review for fees requested by counsel who agreed not to oppose a settlement and a much different and higher standard of review for counsel who refused to agree hinge negotiation of their fees on the condition that it not to oppose a settlement without any citation to supporting authority. BTL objects to this approach. Should this Court request or order additional detail, it will be promptly provided.

At the same time, Defendants have cited law supporting the proposition that "[c]ounsel may not increase their lodestar by having senior attorneys perform work more appropriately handled by junior lawyers or non lawyer staff." *See* #399 at 10-11.  BTL did use non-lawyer staff and junior lawyers appropriately.  A junior lawyer experienced in document review – Fran Whitaker - carried out all document reviews.  Additionally, support staff was used efficiently.  Following the appointment of Liaison Counsel, Bonsignore was partnered only with the joint effort of all NSP Counsel as defined by this Court.  Liaison Counsel's call for volunteers was answered in large part by four firms whose identities are self evident in the billing summary submitted by defense counsel. *See* #399 at 17-19.  The firms are Bonsignore, PLLC ($357,485); Berman DeValario ($407,040); Cafferty Clobes ($627,386); Girard Gibbs ($1,467,131).  No other firm besides Bonsignore cut out all time except for confirmatory discovery and settlement review and comment related time. Rather than acknowledge or take

---

**BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

advantage of BTL's effort to reduce the issues in controversy, the Defendants chose to totally ignore this consideration and instead chose to "throw as much against the wall as possible".

Defendants' further suggestion that BTL did not adequately justify their rates evidences only that Defendants did not read the declaration filed in support or the attached firm CV (Exhibit A), or it evidences a standard of review that is inconstant with their acceptance of other affidavits. To put an end to this argument, supplemental detail is provided for the following timekeepers in the attached affidavit and summarized below:

| Timekeeper | Value | Hours | Avg. Rate |
|---|---|---|---|
| Lisa Sleboda | $270.00 | .6 | $450.00 |
| Robert J. Bonsignore | $281,710.00 | 433.40 | $650.00 |
| Richard Kirchner | $8,965.00 | 16.3 | $550.00 |
| Gray Echavarria | $1,162.50 | 9.3 | $125.00 |
| Johnna Lent | $2,587.50 | 20.7 | $125.00 |
| Frances Whitaker | $62,790.00 | 179.40 | $350.00 |
| TOTAL | $357,485.00 | | |

The experience of each timekeeper and a general summary of their status as lawyers or non-lawyers, experience and focus appear below:

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| NAME | TIME | GENERAL | EXPERIENCE |
|---|---|---|---|
| Robert Bonsignore | 433.40 | Was BTL primary counsel assigned to case | CV was attached to #379 |
| Fran Whitaker | 179 | Participation limited to assigned Document Review | Experienced Document reviewer. Dated Resume attached hereto as Exhibit B |
| Lisa Sleboda | .6 | Participation limited to the writing of a focused memo | Experienced researcher and writer reviewer. Dated Resume attached hereto as Exhibit C |
| Richard Kirchner | 16.3 | Participation limited to specific assignments that could be performed less expensively than by having Mr. Bonsignore perform them | Has as worked with Mr. Bonsignore for over 15 years on multiple MDL cases and understands. |
| Gray Echavarria | 9.3 | Participation limited to specific assignments that could be performed less expensively than by having Mr. Bonsignore or any other lawyer perform them | Has worked with Mr. Bonsignore for over 8 years and is a non-lawyer who was in charge of all non lawyer staff in MDL 1631 and 1735. She is presently in charge of all foreign language speaking non-lawyer staff in MDL 2566. |
| Johnna Lent | 20.7 | Participation limited to specific assignments that could be | Has worked with Mr. Bonsignore for a total of 7 years and is non-lawyer |

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

| | | performed less expensively than by having Mr. Bonsignore or any other lawyer perform them | professional staff and is presently in charge of all non-lawyer staff in MDL 2566 |
|---|---|---|---|

Defendants suggest that Mr. Bonsignore conducts most of his work in New Hampshire yet the submitted CV makes clear that Mr. Bonsignore's practice is limited to MDL class actions and other complex litigation in diverse federal courts across the country. Not a single New Hampshire case is listed, and Mr. Bonsignore has no New Hampshire-based cases. Defendants also suggest that New Hampshire hourly rates should be applied to him without any citation to authority. Defendants ignore the evidence submitted that establishes that the rates submitted have been approved by other courts, including Federal Courts in the 9th Circuit and have been the subject of 9th Circuit Appellate decisions. Defendants also fail to offer evidence that the "New Hampshire rate" for lawyer's and staff whose practice is limited to Multi-District and other class action litigation is other than what was submitted or if another such firm, lawyer or staff person actually exists in New Hampshire.

Between March and December 2013, NSP counsel undertook the confirmatory discovery process and BTL volunteered and were given assignments by Liaison Counsel. All work related to the reviewing of documents produced assigned to BTL was carried out by Fran Whitaker, an experienced document reviewer. The rest of the work carried out by NSP counsel is described in great detail in *See* #378-1 (Memorandum and Points of Authority in Supp. of Non-Settling Pl.'s and Mot. for Att'y

---

**BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

Fees and Expenses, at 13- 17).   To address the Defendants' allegations of deficient description of work carried out, BTL's participation is supplemented in the attached Supplemental Declaration of Robert J. Bonsignore in Support of Attorney Fees and Costs.

## CONCLUSION

Wherefore for the foregoing reasons as competently evidenced in the Declarations submitted on behalf of NSP counsels, Liaison Counsel, and by BTL specifically in support of their fee and expense request including the testimony that it its submitted time was already limited to activities it undertook in furtherance of confirmatory discovery and review and comment on the Settlement Agreement, BTL requests that this Court preliminarily approve its attorney fees in the amount of $270,144.00 ($360,192 ÷ 25% OR 90,048.00 = $270,144.00) and its expenses or otherwise act in accordance with its process for approval of fees and expenses.

Dated:  February 26, 2015                    Respectfully submitted,


                                             /s/ Robert J. Bonsignore
                                             Robert J. Bonsignore (NH 21241)
                                             BONSIGNORE TRIAL LAWYERS, PLLC
                                             193 Plummer Hill Road
                                             Belmont, NH  03220
                                             Telephone (781) 856-7650
                                             *Counsel for Plaintiffs Brown, TerHorst,*
                                             *Iocovozzi, Cestaro, Woodward, and Martyn*

---

BTL's REPLY TO DEFENDANTS' RESPONSE TO REQUEST FOR
ATTORNEYS' FEES AND EXPENSES

# EXHIBIT A

## SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES AND EXPENSES OR OTHER RELIEF

1
2
3
4

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
2513 Morocco Avenue
Las Vegas, Nevada 89031
Telephone:  781-856-7650
rbonsignore@classactions.us

5

Submitted on Behalf of:

6

**BONSIGNORE TRIAL LAWYERS, PLLC**

7
8
9
10
11

Counsel for Plaintiff(s) in:
**Brown, et al. v. Kia Motors America, Inc.**
**TeHorst, et al. v. Kia Motors America, Inc.**
**Iocovozzi, et al. v. Kia Motors America, Inc.**
**Cestaro, et al. v. Kia Motors America, Inc.**
**Woodward, et al. v. Kia Motors America, Inc.**
**Martyn, et al. v. Kia Motors America, Inc.**

12

13
14

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

15
16

IN RE: HYUNDAI AND KIA FUEL
ECONOMY LITIGATION

Case No. 2:13-ml-02424-GW-FFM

17
18
19

**SUPPLEMENTAL DECLARATION OF**
**ROBERT J. BONSIGNORE IN SUPPORT**
**OF REQUEST FOR ATTORNEYS' FEES**
**AND EXPENSES OR OTHER RELIEF**

20

Date: February 26, 2015

21
22
23
24
25
26
27
28

SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT
OF REQUEST FOR ATTORNEYS' FEES AND EXPENSES

I, Robert J. Bonsignore, declare as follows:

1.　　　I am a partner at the firm of Bonsignore, PLLC d/b/a Bonsignore Trial Lawyers ("BTL"), counsel for the Non Settling Plaintiffs and counsel of record for Plaintiffs Brown, TeHorst, Iocovozzi, Cestaro, Woodward, and Martyn.

2.　　　This supplemental declaration is submitted in support of the fees and expenses request for work performed by BTL in connection with this litigation.　I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

3.　　　This firms specific substantial experience in complex litigation and consumer protection class action cases was set forth as an attachment to our original declaration in the form of the firm CV. See # 379-4 at pages 10-23.

4.　　　I cut time from my firm's submission that was unrelated to the Confirmatory Discovery Process NSP counsels were advised to undertake.　*See, e.g.* See, e.g., Grzenczyk Decl., Ex. B, Apr. 25, 2013 Hearing Transcript at 42:22-25; Apr. 11, 2013 Hearing Transcript, # 108, at 11:10-17.

5.　　　The hourly rate for the persons staffing the above captioned matter have been approved by Federal courts, including one fee dispute related matter that was reviewed and affirmed by the 9th Circuit Court of Appeals in 2014. The maximum hourly rate charged for non-lawyers is $150. The maximum hourly rate charged for document review is $350. These are our normal and customary rates. All rates charged are our customary hourly rates. Ms. Whitaker's resume at the time of her hire by BTL is attached as B to Bonsignore Reply filed this date. She is presently working in-house document review for one of, if not the largest United States based multi- national manufacturers in the world. Ms Sloboda has worked for BTL since 2012. Her resume at the time of hire is also attached as C to Bonsignore Reply filed this date. Grey Ecchavaria recently returned to BTL after an approximate one year break.

1

6.      When the Defendants intentionally cut out the respected consumer group Consumer WatchDog and its respected counsel the Cotchett firm who had been aggressively litigating a nearly identical state court-based action from *any* involvement in the negotiation of its proposed and exceedingly early settlement, my firm identified that action as raising raised obvious, numerous, and serious red flags.

7.      Contrary to the Defendants contention, BTL's compensation for services in the above titled litigation is wholly contingent on the success of this litigation.

8.      Our fees and expenses have not been paid and remain contested and at risk through the date of this filing. We did not, nor has any NSP requested a multiplier. The Defendants' arguments against NSP counsels receiving payment for work carried out in furtherance of this Courts' Confirmatory Discovery Process and Review and Comment of Settlement Terms Process are ill placed, and in this litigation is more appropriately lodged against the request for a multiplier.

9.      BTL does not advance the position that such time submitted by other NSP counsel's is improper or should not be allowed.

10.      Following the advise that the mediation between NSP counsel and Defendants relating to fees shut down, I received a call from Defense Counsel who advised me Judge Woo had a history of cutting Plaintiffs' counsels' fees and that many other Plaintiffs' counsels had agreed to cut their fees and broached a formulae for payment. From what I heard at the time I concluded the reverse engineered formulae was self-serving, arbitrary and convoluted.  Defense Counsel made clear that he would not go into the full details of the formula or discuss anything more unless I signed an agreement not to object to Final Approval. As I would not, the call was terminated.  Thereafter, defense counsel conditioned any further discussion of an agreed-upon fee on the execution of a signed agreement not to object to Final Approval and I did not respond to those communications which I consider to be the imposition of an

2

SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF REQUEST
FOR ATTORNEYS' FEES AND EXPENSES

agreement not to object to settlement as a condition to he negotiation of related BTL fees. BTL does not agree not to object to the Final Approval of the Settlement.

11.     The Defendants so called "Voluntary Program" was unacceptable. Rather than a reason to discount fees, it should serve as evidence that counsel for the aggrieved class members was necessary. The "Voluntary Program" could alternatively be considered a calculated means by which to reduce related exposure while putting up the appearance of responsibly responding, or a sham. Even now, BTL believes that under the circumstances the Defendants' should be made to compensate each known class member without the class member having to submit a claim form. The low claims rate and the fact that the defendants have ongoing communication and dealings with the members of the class make this necessary.

12.     BTL filed multiple complaints to increase the available state specific laws and settlement potential. BTL did not support a nationwide settlement in this litigation at the time it filed the complaints.

13.     Most generally BTL's time submission is limited to tasks assigned by Liaison Counsel that were carried out in its own discretion and under the supervision myself. I volunteered BTL for tasks called for by Liaison Counsel during the confirmatory discovery and review and comment on the Settlement Agreement process and assigned the work to the most appropriate person advising them we might not get paid on this one, but as always - do your best. I also fulfilled my ethical duty to keep our putative class representative clients informed, and as I was able I communicated with my class reps through support staff or more junior lawyers.

14.     The tasks described in Exhibit 1 of my previous affidavit were carried out in connection with our submitted time. # 379-4.

---

3

SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES AND EXPENSES

15.     The Defendants requested summary billing and gave overly general categories within which to pigeon whole activities. The instructions and guidance was wholly inadequate, but in the spirit of cooperation BTL complied. After the fact the Defendants' made it known that they intended to give weight and validity to some time categories, but not others. It is my opinion that in context, their weight and validity plan is arbitrary and capricious.

16.     The contention that our submission of time is insufficient came only after we rejected the Defendants' demand that we execute a writing that barred us from object to Final Approval of the Settlement. Once the Defendant conditioned negotiation of our fee on the acceptance of a Settlement we ceased communication with them.

17.     While I presently have offices Nevada, New Hampshire, and have recently reopened a Massachusetts office, BTL's practice is nationwide and not specific to any geographic location. As reflected on our firm CV, BTL's practice is almost exclusively limited to multi district litigation and practice before the Federal courts.

18.     Among many other suggestions, I first suggested a dispute resolution process be added to the Settlement Agreement.

19.     During the time I spent working on this matter there were other cases that I could have been working on. Moreover, BTL has more work than time available at our customary rate.

20.     Notwithstanding the above, between March and December 2013, BTL actively worked within the Confirmatory Discovery process as follows:

    a. BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel to together to design and carry out a process for all plaintiffs to obtain the discovery necessary to confirm that the proposed settlement is fair and reasonable.

    b. BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel to together agree upon a discovery schedule and to adjust it as necessary as the Confirmatory Process proceeded. See Liaison

4

SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF REQUEST
FOR ATTORNEYS' FEES AND EXPENSES

Counsel's June 19, 2013 Status Report, # 120.

c. BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel to together agree upon a division of labor and to adjust it as necessary as the Confirmatory Process proceeded. This included but was not limited to the staffing and procedures under which NSP counsel would work during the interviews.

d. BTL, and more specifically Robert Bonsignore, cooperatively participated with Liaison Counsel and all NSP counsel during important strategy and status calls among Plaintiffs' counsels during the Confirmatory Process. Mr. Bonsignore was an extremely active participant during all calls he participated in.

e. BTL, and more specifically Francis Whitaker (dated resume attached), worked as assigned by Liaison Counsel on multiple document reviews. Ms. Whitaker coded the documents and assisted in the preparation of summaries of the document productions. She also participated in calls among Non-Settling Plaintiffs where the scope and contents of the productions were discussed at length. Ms. Whitaker spent on review and coding of documents posted to the online EasyESI database as specifically assigned by Liaison Counsel. She also spent compiling and reviewing document summaries or compilations of "hot documents" that Liaison Counsel to improve her efficiency and to cull documents to be provided to Mr. Bonsignore for discussion. Ms. Whitaker's work product and Mr. Bonsignore's comments and other contributions were integral parts of the confirmatory discovery interviews of Hyundai and Kia personnel for the purpose of asking questions on behalf on Non-Settling Plaintiffs. Mrs. Whitaker also spent time on smaller group calls and correspondence specifically regarding the document review.

f. Mr. Bonsignore participated only on an as necessary to contribute to the NSP Plaintiff strategy calls, interview process and other scattered directly matters.  See Liaison Counsel's April 23, 2013 Status Report, # 80, at 1; Liaison Counsel's May 7, 2013 Status Report, # 92, at 1.

g. BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel to prepare and approve the NSP counsels' single written discovery request. See Liaison Counsel's May 21, 2013 Status Report, #99, at 2:13-5:10.

h. BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel to identify and raise concerns with Defendants' productions and ensured that the process was genuinely at arm's length. Mr. Bonsignore and other NSP counsel objected to the ambiguous parameters pursuant to which Defendants were making their productions. *See e.g.,* Liaison Counsel's June 5, 2013 Status Report, # 111, at 1-2. Mr. Bonsignore also actively participated and contributed during calls among NSP counsel. These

SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES AND EXPENSES

activities contributed to the processes that lead to the NSP discovery being treated like Rule 34 discovery.  See #378-1 at 15.

i.  BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel to staff the interview. In agreeing not to send interviewers, Mr. Bonsignore was assured he would personally be to contribute through a remote process and Liaison counsel was true his word in this respect.  Mr. Bonsignore participated in advanced conference calls with the attorney interviewers, prepared written questions and also participated via the secure chat room. *See e.g,* Grzenczyk Decl., Ex. C, May 23, 2013 Hearing Transcript at 17:9-18:23. See also 378-1 at 15.[1]

j.  BTL, and more specifically Robert Bonsignore, worked cooperatively with Liaison Counsel and all NSP counsel with regard to Settlement. After review of the initial Term Sheet, distributed in February 2013 Mr. Bonsignore and NSP Counsel discussed strengths, weaknesses, inclusions, omissions and areas of interest and to keep track of in calls organized or accepted by Liaison Counsel. Later, after review of Liaison Counsel 's December 20, 2013 memo, which detailed how discovery responses related to the strengths and weaknesses of plaintiffs' claims Mr. Bonsignore and NSP Counsel engaged in further evaluations, debate and discussion during calls organized or accepted by Liaison Counsel. NSP counsel including Robert Bonsignore on behalf of BTL, were required to review settlement-related memos and summaries distributed to Non-Settling Plaintiffs. After review of the proposed settlement filed December 23, 2013 and the two Addendums, filed January 16, 2014, and May 2, 2014, Mr. Bonsignore and NSP Counsel engaged in further evaluations, debate and discussion during calls organized or accepted by Liaison Counsel. After. The work that was carried out during calls with Non-Settling Plaintiffs focused at this time on the settlement, the settlement negotiations conducted by Liaison Counsel and proposed and actual revisions to the settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this day, February 26th, 2015 at Medford, Massachusetts.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore

---

[1] "To provide continuity and avoid unnecessary duplication, Liaison Counsel was also present at each interview and, to ensure that all Non-Settling Plaintiffs could have input into the questioning, operated a secure chatroom that Non-Settling Plaintiffs used to exchange information and submit questions."

SUPPLEMENTAL DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES AND EXPENSES

# ATTACHMENT TO BONSIGNORE DECLARATION

# CURRICULUM VITAE OF BONSIGNORE TRIAL LAWYERS, PLLC

# BONSIGNORE TRIAL LAWYERS, PLLC

## TRIAL LAWYERS
### www.classactions.us

**BONSIGNORE TRAL LAWYERS, PLLC** are highly successful and experienced trial lawyers who limit their practice to complex litigation, class actions, and cases involving significant economic loss or public policy.  The firm concentrates in the practice areas of antitrust, business-to-business wrongs, consumer protection, employment, catastrophic personal injury and Mass Tort litigation.

We have learned through experience that the best way to achieve a favorable settlement is to prepare each case to win at trial.  Bonsignore, PLLC has earned a national and international reputation for its professional integrity, competence and an aggressive approach to case prosecution. Bonsignore, PLLC is capable of litigating any case in any jurisdiction.

The attorneys for Bonsignore, PLLC have represented businesses, government, consumers, and unions in federal and state courts across the United States. The Firm and its principal have been appointed to serve in leadership roles in many complex and multi-district actions.  In addition, the Firm's briefing team has written precedent setting and other exemplary legal briefs.  Over the years, Bonsignore, PLLC has successfully recovered hundreds of millions of dollars for their clients. In actions where Bonsignore, PLLC has served as Lead Trial Counsel, the Firm has been involved in jury verdicts that exceeded $350 million. Robert Bonsignore has successfully argued before both Federal courts of appeal and state based Supreme Courts. Bonsignore Trial Lawyers PLLC represent clients on a national and international level. We have provided legal advise to individual consumers, sole proprietors, partnerships, unions and multi national corporations. Representative clients include national and international manufacturers, sales, service or repair specialists, health care providers financial institutions, and government.

## REPRESENTATIVE CASES BY AREA OF PRACTICE

### Antitrust Protection of Businesses

***In re: Automotive Parts Antitrust Litigation (MDL 2311) (USDC Eastern District of Michigan Southern Division)*** - Bonsignore, PLLC filed among the first 4 cases in what is anticipated to be the largest private antitrust case in United States history on behalf of an American based wire harness manufacturer headquartered in Virginia. In the originally filed complaint, Plaintiffs allege that the Defendants foreign suppliers engaged in a conspiracy over a 10-year period to illegally increase the price of "Wire Harness Systems Products," which include wire harnesses, electrical wiring, lead wire assemblies, cable bond, wiring connectors, wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors. Notably, in a separate governmental investigation, two of the named defendants, Furukawa Electric Co., Ltd. and Yazaki Corporation, as well as some of their executives, pleaded guilty for their involvement in the conspiracy and agreed to pay nearly $700 million in criminal fines and serve prison sentences. Other guilty pleas have been entered as to other automotive parts. Since

that time the number of parts involved in the litigation has increased with an additional 200 plus automotive parts anticipated to be added to the list. Other products include but are not limited to: Wire harness products, Anti-lock brake products; Catalytic converter products: Alternators, starters, ignition parts, and electronics products; Occupant safety system products; Panel products; and more. This action is actively being litigated.

***In Re: Pre-Filled Propane Tank Antitrust Litigation (MDL 2567) USDC (Western District of Missouri)*** Bonsignore, PLLC filed a class action on behalf of a Michigan chain store seeking to represent all business in the United States who purchased certain propane tanks from Blue Rhino and AmeriGas. The complaint alleged that the two largest suppliers of filled propane tanks, Blue Rhinos and AmeriGas conspired to reduce the amount of propane they put in their tanks and thereby raise the per-pound price of propane in violation of federal and state antitrust laws. Plaintiffs claim that no later than Spring 2008 and continuing through at least 2010, Blue Rhino and AmeriGas conspired to fill propane tanks with only 15 pounds of propane but to continue to charge the same price they had previously charged for tanks containing 17 pounds of propane. Defendants regularly communicating to ensure that both companies maintained the agreed-upon prices and fill levels of propane tanks. In May of this 2013, the U.S. Federal Trade Commission issued a complaint against the Defendants alleging substantially the same conspiracy alleged by Bonsignore PLLC. Shortly thereafter, a group of consumers who purchased filled propane tanks from retailers filed.

***Darbar Cusine, Inc. v Chef's Choice Mesquite Charcoal, Lazzari Fuel Company LLC, California Charcoal and Firewood, Inc., (USDC Northern District of California* 3:13-CV-05331 JSC)** - After a year long investigation, Bonsignore, PLLC filed a related class action complaint in the Northern District of California on behalf of all businesses in the United States who purchased bulk lump mesquite charcoal directly from the Defendants. The Plaintiffs' allege the Defendants engaged in unlawful combination and conspiracy to fix, raise, maintain and/or stabilize the prices of mesquite charcoal sold directly by the Defendants and their affiliates during the period from approximately January 1, 2000 through at least September 30, 2010 (the "Class Period"). .

***In Re: Target Corporation Customer Data Security Breach Litigation, (MDL 2522) (USDC District of Minnesota*** - Bonsignore PLLC represents a financial institution in claims related to the major security breach at Target stores that began on or around Nov. 27, just before "Black Friday," and continued through at least Dec. 15, which allowed hackers access to customers' credit and debit card information. As a result of Target's Data Breach, the personal information of approximately 70 million individuals and the confidential financial information of approximately 40 million credit and debit card accounts was accessed by hackers. *See* Target Now Says 70 Million People Hit in Data Breach, The Wall Street Journal, Jan. 10, 2014. Target's wrongful conduct caused banks and credit unions to incur ascertainable economic loss and the class action lawsuit seeks compensation for financial losses associated with the cost of customer fraud loss reimbursements, the cost of credit and debit card cancellations and re-issuances, lost interest, the administrative expenses associated with preventing fraud, the

ascertainable administrative expenses associated with customer inquiries, and the economic cost of fraudulent transactions.

***In re: Batteries (MDL 2420) (USDC Northern District of California)*** - Bonsignore, PLLC filed the second case nationally and represents direct purchasers of Lithium Ion Batteries. The complaint alleges that several of the largest lithium-Ion Battery producers, including LG Chem, Ltd. (KSE: 051910.KS), Panasonic Corporation (NYSE: PC), Sanyo Corporation (TAI: 1614.TW), Sony Corp. (NYSE: SNE), Samsung SDI (KSE: 006405.KS), Hitachi, Ltd. (OTC: HTHIY) and Maxell Corporation of America collectively controlled between 60 to 90 percent of the market for lithium-ion batteries between 2000 and 2011unlawfully conspired to fix and artificially increase the price of the batteries, inflating the cost of notebooks and other portable computers paid by consumers. The complaint also alleges that battery prices fell by nearly 50 percent when several Korean companies entered the market in the early 2000s and that, in response, the Japanese companies who had long controlled the market entered into an illegal price-fixing agreement, resulting in a stabilization of prices that lasted until 2008. In 2008, the lawsuit claims that the defendants received notice that they were being investigated for price-fixing activities by both American and European regulators. Almost immediately after the investigations were disclosed, prices began to fall again, about 10 percent in three months. This action is actively being litigated.

***In re: Aluminum Warehousing Antitrust Litigation (MDL 2481) (USDC Northern District of New York)*** - Bonsignore, PLLC represents direct purchasers of primary aluminum ("Aluminum") on the spot market in the United States from February 1, 2010 through the present at prices linked to or explicitly incorporating London Metal Exchange prices, including the Platts MW US Transaction Premium price and the Platts MW US net-cash premium (the "Midwest Premium"), The litigation is advanced under the antitrust laws of the United States. More specifically, Plaintiffs allege that the Defendants engaged in an unlawful conspiracy for the purposes of restricting the supply of aluminum and thereby increasing the price of aluminum sold both on the LME and in the spot market. This action is actively being litigated.

***In re: Zinc Antitrust Litigation) (USDC Northern District of New York)*** - Bonsignore, PLLC filed the first in the nation antitrust class action on behalf of direct purchasers of zinc ("Zinc"). The complaint alleges that direct purchasers and those who incurred storage fees at one of the defendants warehouses paid substantially more for physical lead and/or zinc ("Zinc") than they otherwise would have since September 15, 2010, due to a conspiracy between major bankers, metals warehousing companies, commodities trading companies, metals trading companies and the company that oversees global metals trading – the London Metal Exchange. CLICK HERE TO SEE A COPY OF THE COMPLAINT

***Dale Bozzio v. EMI Group Limited et al (USDC Northern District of California Oakland Division and Ninth Circuit Court of Appeals #13-15685)*** - Bonsignore, PLLC filed a lawsuit in the Northern District of California, that arises from the widespread and systematic breach of

3

recording contracts involving legacy musicians. The complaint was brought on behalf of a nationwide class for breach of contract and statutory violations of California law against Defendants EMI Group Limited; Capitol Records, LLC; EMI North America, LLC; EMI Recorded Music; and EMI Marketing (collectively referred to herein as "EMI").The complaint alleges that EMI's failure to properly account for and pay its recording artists and music producers for income it has received, and continues to receive, from the licensees of its recorded music catalog for the sale of digital downloads, ringtones and streaming music (collectively, "digital content"). The Standard EMI Recording Agreement typically sets forth payments to EMI's recording artists and producers for licensing of masters at 50% of the receipts of EMI, rather than a lesser percentage (typically 12% to 20%) as a royalty paid to the artist or producer based on the price of each unit sold. The Ninth Circuit has held, in an analogous action against another major record label that royalties for digital downloads and ringtones should be paid pursuant to the amounts agreed to for a "license" and not at the lower rate of a "sale Record labels are paying these musicians a fraction of what they are owed when digital versions of their songs are streamed, downloaded, or installed on phones as ringtones. The USDC dismissed the action as to Bozzio on the basis of standing and an appeal is being actively litigated. Bonsignore, PLLC is co-author of the appellate briefing and will present oral argument.

***In re: After Market Filters Antitrust Litigation (MDL 1957) (USDC Northern District of Illinois)*** – Bonsignore, PLLC represented a direct purchasers of replacement automobile air and oil filters in this nationwide, anti trust price fixing case. This action is actively being litigated.

***In re: Optical Disc Drive Litigation (MDL 2143) (USDC Northern District of California)*** - Bonsignore, PLLC represented direct purchasers in an antitrust action challenging the price fixing of optical disc drive in this international antitrust price fixing case. This action is actively being litigated.

***In re: Employee Benefit Insurance Brokerage Litigation*** **(MDL 1663)** (***USDC New Jersey***) – Bonsignore, PLLC filed one of the first bid-rigging class actions in the country on behalf of a large upstate New York employer and major plastics manufacturer. The lawsuit alleged that insurance companies and brokers conspired with one another to allocate customers and markets and initiated kickbacks ("contingent commissions") with certain insurance companies.  Using the kickback agreements to obtain inflated or false price quotes that they used to steer their customers into purchasing higher priced insurance policies issued by the insurance companies that paid the brokers the highest kickbacks.  Bonsignore, LLC serves as Class Counsel and has been assigned to the Discovery and Class Certification Committees in the multi-district action pending in New Jersey. Robert J. Bonsignore was responsible for taking numerous depositions of the defendants corporate officers and other firm members carried out numerous massive document review projects. On August 16, 2010, the Third Circuit Court of Appeals partially reversed the district court's dismissal of the suit and reinstated many of the core claims in the case. The case was remanded to the district court for further proceedings on the reinstated claims. The Class Plaintiffs have settled with the Zurich, Gallagher and Marsh Defendant groups for an aggregate amount in excess of $218 million. Objections to those settlements were either rejected by the Court of Appeals or dismissed by the appellants, and those settlements are final.

4

On May 23, 2011, Plaintiffs submitted a brief to the Court seeking Preliminary Approval of an additional Settlement Agreement, with 12 of the remaining 16 Defendants, in the amount of $41 million. Final approval of that Settlement was heard on September 14, 2011. For more information about that Settlement and to view a copy of the Detailed Notice of Settlement, please visit the settlement website at www.insurancebrokeragesettlement.com.

***In re: Cement Antitrust Litigation 1:05 cv 979 (USDC Southern District of Indiana)*** – Bonsignore, PLLC represented a direct purchaser (business) in an antitrust action challenging the price fixing of cement in the mid west United States.  The Firm served as Class Counsel in the multi-district litigation that settled for more than $24 INSERT million in the United States District Court for the District of Indiana.

***SKYVA International v. ABB (Privately Settled)*** - Complex matter involving arbitration, mediation, litigation and negotiation of multiple disputes revolving around a $600 million contract and related business relationships and pending relationships with and between Microsoft, IBM, Adjenture, ABB and SKYVA.  Choice of law issues involving this product technology included Swiss, New York, Delaware and Massachusetts' law.

***In Re: Polyester Staple Antitrust Litigation (MDL 1516) (USDC North Carolina)*** – Bonsignore, PLLC filed one of the first direct purchaser (business) cases in the country representing Malden Mills a major textile manufacturing firm.  The firm represented direct purchasers of Polyester Staple in a case alleging a single, nationwide conspiracy among defendants to fix, raise, maintain and/or stabilize the price of, and/or allocate markets and customers for, Polyester Staple in the United States in violation of Section 1 of the Sherman Act, 15 U.S. C. § 1. The claims brought on behalf of Plaintiffs further alleged that, as a result of the unlawful conspiracy, they and other purchasers of Polyester Staple paid more for Polyester Staple than they would have paid absent the conspiracy. Defendants named in the Complaints included Wellman, Inc., Nan Ya Plastics Corporation; Nan Ya Plastics Corporation, America; E.I. DuPont de Nemours and Company, DAK Americas LLC; DAK Fibers LLC.; Arteva Specialties LLC d/b/a KoSa and now named INVISTA S.ar.l.; Arteva Specialties S.ar.l.; and Koch Industries. By Order dated April 22, 2003, the Judicial Panel on Multidistrict litigation centralized the Polyester Staple Antitrust Litigation in the United States District Court for the Western District of North Carolina for coordinated and consolidated pretrial proceedings. On May 20, 2004, the court granted final approval of a $17,150,000 settlement with the DAK defendants. In addition to the settlement amount paid by the DAK Defendants, the Settlement Agreement required these defendants to cooperate with Plaintiffs in connection with their prosecution of claims in this action against the other defendants. On October 5, 2005, the court preliminarily approved settlements with two other defendants, Wellman and Nan Ya, with $6,800,000 being paid to the Class from Wellman and $4,000,000 from Nan Ya. The court held a Fairness Hearing on December 15, 2005. Subsequently, the court granted Plaintiffs' motion for final approval of these settlements and distributions were made to Class members at the end of 2006. On June 24, 2008, the court granted final approval of a $33,000,000 settlement with the Arteva defendants d/b/a KoSa.

## Exemplar Antitrust, Securities & Consumer Protection Litigation

*In re: Apple Shareholders Derivative Litigation-* Bonsignore, PLLC filed among the first 3 shareholder lawsuits against Apple. The complaint alleges Apple entered into illegal non solicitation agreements with high level executives at other companies including Google and Intel and asserts violations of §§10(b) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78n(a) as well as California law. These agreements provided that Apple and other companies would not recruit each other's employees. Accordingly, they regulated the competition for talent and suppressed job mobility. *Bloomberg Businessweek* reported "Silicon Valley's vast wealth and warped sense of entitlement led to an audacious conspiracy to suppress salaries." As a result shareholders suffered significant ascertainable economic loss. This action is being litigated.

*In re TelexFree Securities Litigation (MDL 2566)* Bonsignore, PLLC filed among the first cases against TelexFree, its owners, insider promoters, retained professionals and others for violations of the state and federal law including the unregistered sale of securities,  fraud, aiding and abetting and violations of the Racketeer Influenced Corrupt Organizations Act. Less than one-half of one percent of TelexFree's total revenue came from sales of TelexFree's VOIP between August 2012 and March 2014. During this same period TelexFree received approximately $1.3 million from the sale of about 26,300 VoIP Programs. During this period, TelexFree promised to pay its Promoters returns of over $1.1 billion – nearly a thousand times the amount of revenue derived from sales of the VoIP Programs.  Plaintiffs allege TelexFree was a pryamid scheme. This action is being litigated.

*In re: Vehicle Carrier Services Antitrust Litigation* (MDL 2471) (*USDC District of New Jersey)* Bonsignore, PLLC represents indirect purchasers of Vehicle Carrier Services in multiple states including Arkansas, Hawaii, Iowa, Kansas, Mississippi, Nebraska, Nevada, New Hampshire, North Dakota, South Dakota and Vermont. "Vehicle Carriers" transport large numbers of cars, trucks or other automotive vehicles including agriculture and construction equipment (collectively "Vehicles") across large bodies of water using specialized cargo ships known as Roll On/Roll Off vessels ("RoRos").  "Vehicle Carrier Services" refers to the paid ocean transportation of Vehicles by RoRo. The complaint alleges violations of state law in approximately 30 states were a direct result of a conspiracy among certain Vehicle Carriers, between January 1, 2008 and May 24, 2013, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for, Vehicle Carrier Services in violation of certain state and federal laws. This action is being litigated.

*In re: Hyundai and Kia Fuel Economy Litigation (2424) (USDC Central District of California)* - Bonsignore LLC filed a putative class-action lawsuit against Hyundai Motor America, Hyundai Motor Company of Korea, Kia Motors America, and Kia Motor Company of Korea because they admitted they overstated the fuel economy for many vehicles they sold in the United States after independent tests by the Environmental Protection Agency (EPA) showed a discrepancy. Bonsignore PLLC and others ("Non-Settling Parties") are serving to test the sufficiency of a proposed settlement. Bonsignore LLC was requested and did play a major role in

the related litigation advanced by the Non-Settling Parties and as a result the original settlement was greatly improved. Bonsignore LLC supports the current settlement that is pending final approval. The multi- district class action lawsuit filed in the U.S. District Court for the District of Central California was brought on behalf all consumers who own or lease Hyundai and Kia vehicles whose EPA fuel economy ratings were less than the fuel economy rating produced by the applicable federal test in that model's year. Hyundai will lower fuel-consumption estimates on most Hyundai and Kia models produced in 2012 and 2013. It will reportedly lower estimates by as much as five miles-per-gallon for its Kia Soul Eco and by one or two miles-per-gallon for most other models.

*In re: (CRT) Antitrust Litigation (MDL 1917) (USDC Northern District of California)* - Bonsignore, PLLC filed one of the first indirect purchaser cases in the country and coordinated the filing of 12 other cases. The nationwide action alleges a price fixing conspiracy in the CRT industry. Bonsignore presently represents end use indirect consumers in Nevada and South Dakota.

*In re: Publication Paper Antitrust Litigation (M.D.L.1631) (USDC Connecticut)* - Robert Bonsignore served as the Court appointed Lead Counsel in MDL 1631 for all indirect end use purchasers. The firm was instrumental in the coordination and prosecution of a number of multi-state indirect purchaser actions. This action focuses on the alleged national and international price fixing of certain types of publication grade paper during certain time periods. Final Approval of a class action settlement against the last remaining Defendants was approved and the litigation is finally resolved.

*In re: Intel Corp. Microprocessor Antitrust Litigation*, **MDL 1717 (D. Del.)** - Bonsignore PLLC represent indirect end use purchasers in a number of states in the multi-district class-action lawsuit. Plaintiffs' claim the microprocessor giant unlawfully maintained a monopoly by engaging in a relentless, worldwide campaign to coerce customers to refrain from dealing with Advanced Micro Devices, Inc. (AMD), another microprocessor manufacturer. Specifically, that Intel forced PC makers and technology partners to boycott its competitors product launches and promotions; forced major customers into exclusive or near-exclusive deals, conditioned rebates, allowances, and market development funding on customers' agreements to severely limit purchases from its competitor AMD; established a system of discriminatory, retroactive, first-dollar rebates triggered by purchases at such high levels that in effect deny customers the freedom to purchase any significant volume of processors; threatened retaliation against customers introducing AMD computer platforms; established and enforced quotas among key retailers effectively requiring them to stock overwhelmingly, if not exclusively, Intel-powered computers, thereby limiting consumer choice; and otherwise unlawfully leveraged its market power by forcing technical standards and products on the industry. This action is actively being litigated.

*In re: Massachusetts Smokeless Tobacco Litigation (Massachusetts Superior Court Business Litigation Session)* - Robert Bonsignore was appointed as Co-Lead Counsel by the Chief Justice of the Business Litigation Session for the Commonwealth of Massachusetts.  This action was

fiercely litigated for 7 years. Notably, this was the first contested indirect purchaser class action in the Commonwealth of Massachusetts to be certified.  The action sought economic damages for consumers and alleged that U.S. Smokeless unlawfully created and maintained an unlawful monopoly and artificially inflated prices. The action was also noteworthy because counsels certified a fifteen-year class period by successfully establishing that fraudulent concealment of the bad acts was included in the questioned conduct. The all cash $10.16 million dollar settlement provided the greatest recovery per consumer (consumer class members are eligible to receive up $700 cash) in any price fixing action brought against the manufacturers of moist smokeless tobacco. The settlement received Preliminary Approval on May 22, 2009 and received Final Approval on October 23, 2009.

***In re:  California Vitamin Cases* (San Francisco Superior Court) –** Robert Bonsignore served on the Executive Committee in *In Re: Vitamin Cases* which was settled on behalf of California indirect purchasers. This action advanced antitrust claims against an international cartel of vitamin manufacturers accused of fixing prices and allocating markets in every level of the chain of distribution. In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins. In December 2006, the Court granted final approval to over $8.8 million in additional settlement

***In re: Dynamic Random Access Memory Antitrust Litigation (MDL 1486) (USDC Northern District of California)* –** Robert Bonsignore filed one of the first indirect purchaser DRAM cases in the country. Robert Bonsignore was selected to serve as a member of the Executive Committee.  Subsequent to filing, Bonsignore, LLC coordinated the consolidation and coordination of like cases in 48 states. The nationwide action alleges a price fixing conspiracy in the DRAM industry. Robert Bonsignore was appointed by the USDC to serve as interim lead counsel of a related putative class later absorbed into MDL 1486.

***In re: Chocolate Antitrust Litigation (MDL 1935) (USDC Middle District of Pennsylvania)* -** Bonsignore PLLC represented indirect end use purchaser of chocolate in 14 of 29 states involved in the litigation. The action alleges an international price fixing conspiracy in the Chocolate industry. Robert J. Bonsignore was responsible for taking numerous depositions of the defendant's corporate officers, corporate document discovery, and was designated to serve as the discovery liaison with the largest purchaser of chocolate in the United States. Mr. Bonsignore also served on the 5-person Plaintiffs' Settlement Negotiation team and the expert witness and class certifications teams.  Other firm members carried out numerous massive document review projects.

***In re: Neurontin Marketing Litigation (MDL) (USDC District of Massachusetts)* –** Bonsignore, PLLC filed a consumer protection class action alleging that the manufacturers of Neurontin falsely represented that the drug was effective for conditions that completely lacked any scientific support and validity.  Plaintiffs pointed to internal documents comparing this unfair and deceptive marketing plan to the sale of "snake oil." Plaintiffs further offered proof that

8

the manufacturers targeted the most vulnerable and defenseless segments of population in our society - the mentally ill, the terminally ill, and those in chronic pain.

## Employment

*In re: Wal-Mart Wage and Hour Practices Litigation (M.D.L. 1735) (USDC District of Nevada and Ninth Circuit Court of Appeals)* - This successfully and finally resolved multi – district class action is the largest certified class in a wage and hour case in United States history. The filing, coordination and prosecution of coordinated proceedings in 39 states were found to have been the brainchild of Robert Bonsignore. Bonsignore first successfully, argued that the litigation should be granted MDL status and coordinated for all pre-trial proceedings. Mr. Bonsignore was then appointed by the court to serve as national Co-Lead Counsel in this Multi District Litigation and fully litigated the action. This action focused on allegations that Wal-Mart systematically failed to pay its hourly employees for all time worked, including supplemental benefits. The action settled for $85 million dollars plus injunctive relief designed to prevent the alleged violations from occurring again. After the settlement received Finally Approval a law firm that entered the case one-month prior to the execution of the Settlement Agreement purchased an interest in the attorney fees award. (Objector) After the allocation of the attorney fees was arbitrated, the Objector filed an FAA 10 appeal of the Arbitration Award. The District Court rejected that appeal in a lengthy opinion, finding the challenge to be meritless.  The Objector appealed to the Ninth Circuit Court of Appeals. On December 18, 2013, nearly 10 years after the litigation was filed the 9th Circuit Court of Appeals found the appeal to be meritless and affirmed the District Courts ruling. Robert Bonsignore briefed and argued all appeals. Mr. Bonsignore's oral argument before the 9th Circuit Court of Appeals can be heard at http://www.ca9.uscourts.gov/media/view.php?pk_id=0000011351. (Carolyn Burton, et al v. Class Counsel and Party to Arb, et al No.  11-17718)

*In re: Wal-Mart Massachusetts Wage and Hour Litigation*- Bonsignore served as Class Counsel in *Salvas v. Wal-Mart Stores, Inc.,* a certified Massachusetts class action of 67,000 hourly employees alleging wage and hour violations against Wal-Mart occurring in the Commonwealth of Massachusetts.  This action is the largest certified employment class in Massachusetts state history. Notably, rulings and bodies of evidence obtained in this action have been relied upon in other employment litigation around the country. Attorney Robert Bonsignore successfully convinced the Massachusetts Supreme Judicial Court to reverse a trial court decision decertifying the class. The argument, which is the second most watched archived SJC argument, set numerous precedents that have been frequently cited in numerous decisions.

*In re: Federal Express (MDL 1700) (Northern District of Indiana)* – Bonsignore represented misclassified employees of Federal Express in South Dakota and Colorado. The action seeks to reclassify route drivers as employees and to obtain back compensation for the economic loss suffered by the drivers during the period they were misclassified. The litigation is pending with certification granted in part and denied in part. Attorney Generals in a number of states requested Fed Ex on July 1, 2009 to properly classify their drivers. The litigation is presently on appeal.

9

**Exemplar Products Liability & Mass Tort Cases**

*In re: Silicone Gel Breast Implant Product Liability Litigation (MDL 926) (USDC Northern District of Alabama and USDC Eastern District of Michigan)* – Bonsignore represented over 400 pre-1991 recipients of saline and silicone breast implants. During the multi-district litigation, Bonsignore, LLC served as Co-Counsel and on the Discovery Committee.  Robert Bonsignore was part of the discovery team. A $2.35 billion fund was created in one of the largest class action settlements in U.S. history.

*In re: Mercury Vaccine Litigation* – Bonsignore filed several of the first consumer protection class action cases in the country alleging that the toxic levels of mercury coupled with the increased number of vaccinations poisoned infants and directly caused their learning disabilities and autism. The action sought medical monitoring, a public release of related studies and data that could be used in diagnosis and treatment, and to reimburse the families as well as local and federal government for the staggering costs associated with the treatment of the affected children.  The Firm helped spearhead a collective group of North America's best trial lawyers and significantly contributed to this national litigation.  Bonsignore, LLC served on the Executive, Science, Expert, Class Certification, State Coordination and Discovery Committees. The related claims gained no traction because the science relied upon were compromised when a researcher exaggerated his findings. The sudden and continuing spike in the rate of autism remains stunning and unexplained.

*In re: Rezulin Products Liability* Litigation (MDL 1348) *(USDC Southern District of New York)* - Bonsignore filed one of the first wrongful death, liver failure and consumer protection class action cases in the country.  The action alleged that the makers of the diabetes drug did not adequately test its safety and efficacy prior to mass marketing it to consumers. On March 21, 2000, per the FDA's request, Warner-Lambert finally issued the Rezulin recall after its controversial run on the U.S. market. Robert Bonsignore's early aggressive discovery lead to the key admission that Warner Lambert had health department reviewers of the drug on its payroll at the time it was approved. Robert Bonsignore served on the Science, Expert, Class Certification, State Coordination and Discovery Committees in the multi-district action.  In addition, Robert Bonsignore was selected to take critical depositions. Mr. Bonsignore also secured the largest single award in an individual action, obtaining a $3.75 million dollar recovery for his client.

*In re: Sulzer Orthopedics, Inc., Hip Prothesis and Knee Prothesis Product Liability Litigation* **(MDL 1410)** *(USDC Northern District of Ohio)* - Bonsignore filed one of the first hip failure consumer protection class actions cases in the country.  Bonsignore, LLC took and attended the first depositions obtaining key admissions. The aggressive discovery conducted by Bonsignore, LLC resulted in key admissions by one of its chief worldwide recall investigators.  The multi-district class action alleged that the makers of hip and knee prostheses negligently coated these medical devices with commercial grade motor oil and did not adequately test safety and efficacy prior to mass marketing to consumers. The related products were recalled from the United States market.  A settlement was reached approximating $1 billion.

10

***In re: VIOXX Product Liability Litigation* (MDL 1657) *(USDC Eastern District of Louisiana)*** Bonsignore, served as class-counsel in the multi-district action concerning VIOXX. The Firm represented patients who claimed that it's manufacturer didn't adequately disclose Vioxx safety data to the U.S. Food and Drug Administration, didn't properly warn doctors and patients of the drug's risks and misrepresented the potential harm in marketing materials and suffered personal injury as a result. A class settlement was reached with Janssen Pharmaceutica, a Johnson & Johnson company, and the creation of a $90 million settlement fund.

***In re: Propulsid Product Liability Litigation* (MDL 1355) *(USDC Eastern District of Louisiana)*** - Bonsignore, served as class-counsel and member of the Discovery Committee in the multi-district action concerning the heartburn drug Propulsid. The Firm represented patients who alleged that Propulsid caused them heart problems. A class settlement was reached with Janssen Pharmaceutica, a Johnson & Johnson company, and the creation of a $90 million settlement fund.

***In re: Lead Paint*** – Bonsignore represented the City of Providence Rhode Island in an action seeking to have the manufacturers of lead paint pay for its removal and to pay for the costs absorbed by the city for the health care and special education of children who suffered from lead paint poisoning. Most recently Bonsignore served as antitrust advisor to the Chief Counsel for the City of Providence. Legislation Mr. Bonsignore drafted that provided for municipalities and school districts to bring an indirect purchaser antitrust case was signed into law in 2013.

## PRINCIPAL

**ROBERT J. BONSIGNORE**.  Mr. Bonsignore began his career in the Office of the District Attorney for Middlesex County, Massachusetts.  Since 1990 when he began his own law firm specializing in complex litigation and trial work, he has been lead trial counsel in cases with jury verdicts totaling in excess of $350 million dollars.  Mr. Bonsignore has extensive experience in antitrust, consumer protection, complex litigation, class actions, multi-district litigation, Judicial Panel on Multi District Litigation proceedings, and commercial cases.  He also has received significant jury verdicts in wrongful death and catastrophic injury cases.

Between 2001 and 2004, Mr. Bonsignore was appointed Lead Counsel in five separate certified class actions by the Chief Justice of the Business Litigation Session for the Commonwealth of Massachusetts advancing claims raised pursuant of Massachusetts General Law 93A.  All received Final Approval without appeal. Mr. Bonsignore was also appointed Lead or Co-Lead counsel in four other certified and class actions that received Final Approval.  Mr. Bonsignore successfully argued the re-certification of the largest employment class action in Massachusetts' history at the Supreme Judicial Court level. At the trial court level, Mr. Bonsignore presented the oral argument at the first contested consumer indirect purchaser monopolization class action to be certified pursuant to Mass. General Laws Chapter 93A.

In cases pending in United States Federal Courts, Mr. Bonsignore has been appointed national Lead Counsel in 2 cases assigned Multi District Litigation status by the Judicial Panel on Multi-District Litigation. MDL 1631 consolidated all indirect purchaser anti-trust actions filed nationwide addressing price fixing in the Publication Paper Industry. M.D.L 1735 consolidated cases nationwide addressing Wage and Hour violations by Wal-Mart Inc. Both actions in which Mr. Bonsignore was appointed Lead Counsel were settled after being aggressively litigated and received Final Approval.

Mr. Bonsignore has served as a member of the American Antitrust Institute's Board of Directors since 2009. The American Trial Lawyers Association has selected him as a peer reviewed "Top Trial Lawyer" each year since 2007. In 2010 he received the Outstanding Public Service Award from the Ipswich River Foundation. He is a 2010 graduate of the Trial Lawyers College.

Mr. Bonsignore was extensively involved in trial preparation in cases against tobacco manufacturers brought by public entities as well as private attorneys general and was counsel of record for the former Governor of California as well as Orange and Los Angeles counties. Mr. Bonsignore is frequently requested to speak at Continuing Legal Education seminars across the country. He has lectured on topics ranging from antitrust to consumer advocacy and from trial techniques to ethics.

Mr. Bonsignore has successfully tried to verdict several high profile cases including cases selected by the Association of Trial Lawyers of America (ATLA) as the most outstanding jury verdicts of the year. Legal publications have featured Mr. Bonsignore's success in first obtaining admissions of payoffs to medical reviewers in the Rezulin litigation. Mr. Bonsignore's finding of Sulzer's document destruction in the hip replacement litigation was publicized in the United States and Europe. His work on Sulzer hip litigation also merited a feature story in the European news magazine FACTS, where he was headlined as the "American Killer Lawyer." Mr. Bonsignore is AV rated by Martindale Hubbell and was awarded Diplomat status by the National College of Advocacy. He has co-authored a trial techniques treatise, writing on Direct Examination for Lexus/Nexus.

Mr. Bonsignore is a past recipient of the Association of Trial Lawyers of America (ATLA) F. Scott Baldwin Most Outstanding Young Trial Lawyer in America Award that he received in 1997. He also is a seven-time recipient of the prestigious Wiedemann-Wysocki Citation of Excellence Award that is awarded by the trial bar (ATLA) to the most outstanding members of its ranks. In 1994, he received the Massachusetts Junior Chamber of Commerce Most Outstanding Young Leader Award, and in 1997 he was honored by the Massachusetts Bar Association with the Most Outstanding Young Lawyer Award. In 2005, Mr. Bonsignore was presented with the Joseph Tonihill award that is recognized as the most prestigious award presented by the Association of Trial Lawyers of America for consumer advocacy. Mr. Bonsignore is a Life Member of the Massachusetts Bar Foundation, National Association of Criminal Defense Lawyers, and the Association of Trial Lawyers of America (ret.) and the Spence Trial Lawyer College Ranch Club.

12

As a past Chair of the Association of Trial Lawyers of America, Young Lawyers Division, Mr. Bonsignore was credited with creating the practice of appointing one man and one woman representative wherever possible in each representative member state, province or country for the purpose of representing the interests of young lawyers to the bar.  He created and instituted a program promoting local public service by young lawyers.  In recognition of the nature and scope of this undertaking and its continued viability over time, each year, the Association of Trial Lawyers of America Young Lawyers Division, presented the Robert J. Bonsignore Public Service Award to a representative bar group that performs the most outstanding acts of public service.

Mr. Bonsignore previously served on the Boards of the non-profit Trial Lawyers for Public Justice and is a national officer for the Civil Justice Foundation.   Mr. Bonsignore is a life member of the National Conference of Bar Presidents of the American Bar Association and has served on the Articles and Bylaws Committee since 1999.  Mr. Bonsignore has previously served as a Consumer Advisory Commissioner for the Office of the Attorney General for the Commonwealth of Massachusetts and as an Assistant District Attorney for Middlesex County. Forbes Sky Radio as one of America's Best Lawyers selected Mr. Bonsignore.

Mr. Bonsignore is frequently called upon to serve as counsel in team approach litigation because of his decade long experience and proven track record in Multi District Litigation. After establishing himself as a trial lawyer and working cooperatively in the Breast Implant litigation in 2000, Mr. Bonsignore was selected as the firm representative of Robinson, Calcagnie & Robinson to the "megafirm" of Herman, Middleton, Casey, Kitchens & Robinson (HMCKR). HMCKR formally brought together nationally top-ranked law firms to jointly prosecute MDL actions (multi-district class actions) and other complex litigation involving antitrust, unfair competition, and pharmaceutical matters. Other mega-firm members selected Mr. Bonsignore based on his skill, experience, work ethic accomplishment, and demonstrated ability to work cooperatively with co-counsel and opposing counsel on a multitude of projects.
Most recently Mr. Bonsignore served as lead counsel in MDL 1735, the largest WH class certified in United States history and MDL 1631, an international antitrust matter. Both are finally resolved. Mr. Bonsignore previously selected to serve as lead counsel in over a dozen multi party class actions against including those against Smokeless Tobacco. Mr. Bonsignore was behind or an integral part of the prosecution of many other class actions.

**The Curriculum Vitae of each lawyer in the Firm is available upon request.1 All inquiries should be directed to:**

---

1 **DISCLAIMER State Practice Advertising Restrictions & Disclaimers**

All states and jurisdictions have statutes that make it unlawful for any person or group of persons to hold themselves out as attorneys unless admitted and licensed to practice as an attorney at law.  In some jurisdictions this site may be considered advertising.  The material in this CV does not constitute a solicitation in any state where the Firm's attorneys are not admitted and licensed to practice.  The hiring of an attorney is an important decision that should neither be based solely upon written information about our qualifications and experience nor solely upon advertisements.

**Robert J. Bonsignore**
**Bonsignore Trial Lawyers, PLLC**
**193 Plummer Hill Road**
**Belmont, NH  03220**
**Telephone:  781-856-7650**
**E-mail:  rbonsignore@classactions.us**

The materials on this site are provided for informational purposes only, do not constitute legal advice, do not necessarily reflect the opinions of **Bonsignore Trial Lawyers, PLLC**, or any of its attorneys or clients, and are not guaranteed to be correct, complete, or up to date.  This CV is not intended to create an attorney-client relationship between you and **Bonsignore Trial Lawyers, PLLC** or any of its attorneys, and you should not act or rely on any information in this site without seeking the advice of an attorney.

Our attorneys litigate in federal district courts throughout the United States.  Our attorneys may also litigate in state courts where they are licensed to practice.  We currently have attorneys licensed to practice in the following states: Hawaii, Massachusetts, Pennsylvania, Nevada and New Hampshire.

If you communicate with us in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential and does not create an attorney-client relationship between you and **Bonsignore Trial Lawyers, PLLC**.  If you communicate with us by e-mail in connection with a matter for which we already represent you, please remember that Internet e-mail is not secure and you should avoid sending sensitive or confidential Internet e-mail messages unless they are adequately encrypted.

To the extent the State Bar Rules in your jurisdiction require us to designate a principal office and/or single attorney responsible for this site, **Bonsignore Trial Lawyers, PLLC** designates its principal offices as Belmont New Hampshire, and designates Robert J. Bonsignore as the attorney responsible for communications.

14

# EXHIBIT B

## RESUME OF FRANCES M. WHITAKER

**Frances M. Whitaker, Esquire**
28 Rosegate Farm Drive, Manchester, NH 03109
(603) 540-2956 • fmwhitaker@comcast.net

## Career Highlights

Manage complex projects, including hearing preparation, propounding and responding to discovery requests, planning and probating estates, and providing general case management.

Draft, revise, and edit for accuracy and grammar pleadings, discovery requests, appellate briefs, estate plans, agreements, and correspondence.

Supervise, train, and mentor litigation support staff for small and large cases, including a multimillion-dollar litigation, which required coordinating document production to and from defendants involving more than 90-million pages.

Communicate and coordinate legal services among attorneys, experts, and support staff in four states. Complete projects and fulfill requests for litigation teams in different states.

Learn and use new computer technologies to manage discovery, documents, and communication for small and large litigation cases.

## Technologies

| | | |
|---|---|---|
| Apple computers | Summation | Microsoft Word |
| Westlaw | CM-EFC | Excel |
| LexisNexis | Document database software | PowerPoint |

## Relevant Experience

**Hargrove Madden LLP**, Lexington, KY                    October 2011-present
    Associate Attorney

**Atkins Law Offices, P.C.**, Londonderry, NH             March 2008 – October 2011
    Associate Attorney

**Welts, White & Fontaine, P.C.**, Nashua, NH            June 2005 – March 2008
    Associate Attorney

**CBT Corporation**, Boston, MA,                         March 1993 – August 2001
    Litigation Support/Paralegal Manager

## Education

**Franklin Pierce Law Center**, Concord, NH
    Juris Doctor, Magna Cum Laude, May 2004
    Delores K. Hanna Best Brief Award, Saul Lefkowitz Moot Court Competition, 2003
**Rivier College,** Nashua, New Hampshire
    Post-baccalaureate Paralegal Certificate
**Siena College**, Loudonville, NY
    Bachelor of Arts

## Bar Admission

New Hampshire; United States District Court, District of New Hampshire; Massachusetts

## Associations

Co-chair, Elder Law, Estate Planning & Probate Section of the New Hampshire Bar Association
Board of Directors, Peterborough Chamber of Commerce
Queen City Rotary Club

# EXHIBIT C

## RESUME OF LISA M. SLEBODA

**LISA A. SLEBODA**
200 South Main Street
Muncy, PA  17756
lsleboda327@classactions.us

## EXPERIENCE

**BONSIGNORE TRIAL LAWYERS, PLLC**, Medford, Massachusetts  February 2012 to date
Primary practice in general litigation, specializing in class action representations.  Perform research and draft documents utilized in evaluating claims and pursuing all subsequent phases of litigation.

**MIELE & RYMSZA, P.C.**, Williamsport, Pennsylvania
Contract Attorney (May 2002 – present)
Primary practice in criminal defense, general litigation and family law.  Perform research and draft various submissions to federal and state courts in connection with all phases of litigation.

**NUKK-FREEMAN & CERRA, P.C.**, Short Hills, New Jersey
Contract Attorney (May 2006 – June 2008)
Primary practice in employment law.  Performed research and drafted legal memoranda and briefs for state and federal cases.  Composed legal issue summary for firm website.

**GIBSON, DUNN & CRUTCHER LLP**, New York, New York
Contract Attorney (January 1998 – April 2002)
Associate, Litigation Department (October 1993 – January 1998)
Summer Associate (May – August 1992)
Primary practice in commercial litigation, including contracts, libel, employment discrimination, insurance defense, bankruptcy, business tort and copyright.  Experience includes:
- *Commercial Litigation*:  Drafted briefs, pleadings, affidavits, discovery requests and responses, legal memoranda, and settlement agreements.  Represented clients at status conferences before the court.  Took and defended depositions.  Coordinated discovery matters.
- *Corporate Transactions*:  Drafted and negotiated license, lease and purchase agreements.
- *Special Assignment*:  Worked in-house for major corporate media client.  Investigated discrimination claims and drafted position letters to the EEOC.  Drafted and negotiated contracts.  Appealed denial of reporters' FOIA requests.  Performed pre-publication libel review.
- *Pro Bono*:  Represented inmate in freedom of religion action under RFRA and Section 1983.

**MAGISTRATE JUDGE JACOB HAGOPIAN, U.S.D.C., D.R.I.**, Providence, Rhode Island
Summer Clerk (May – July 1991)
Revised Magistrate Judge's "Guide to Litigation under Section 1983" prepared for federal courts' use.  Wrote decisions on Section 1983 claims and appeals from bankruptcy courts' orders.

## EDUCATION

**NEW YORK UNIVERSITY SCHOOL OF LAW**, New York, New York
J.D., May 1993
Activities:    *Journal of Law and Social Change*:  Member
                    Unemployment Action Center:  Member

**UNIVERSITY OF PENNSYLVANIA**, Philadelphia, Pennsylvania
B.A., *magna cum laude*, in Communications, May 1990
Minor in Economics
Honors:  Phi Beta Kappa; Dean's List (1987-90)

## ADMISSIONS

Pennsylvania State Bar, New York State Bar, Southern District of New York, diverse courts *pro hac vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION OF E-FILED SIGNATURE**

I, Eric H. Gibbs, am the ECF User whose ID and password are being used to file Reply of Bonsignore in Support of Request for Attorneys' Fees and Expenses to #399.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Robert J. Bonsignore has concurred in this filing.

*/s/ Eric H. Gibbs*