1   HARVEY ROSENFIELD (SBN 123082)
    harvey@consumerwatchdog.org
2   PAMELA PRESSLEY (SBN 180362)
    pam@consumerwatchdog.org
3   LAURA ANTONINI (SBN 271658)
    laura@consumerwatchdog.org
4   **CONSUMER WATCHDOG**
    2701 Ocean Park Blvd., Suite 112
5   Santa Monica, CA 90405
    Tel: (310) 392-0522 / Fax: (310) 392-8874
6
    JONATHAN W. CUNEO
7   jonc@cuneolaw.com
    WILLIAM ANDERSON
8   wanderson@cuneolaw.com
    **CUNEO GILBERT & LADUCA, LLP**
9   507 C Street, NE
    Washington, DC 20002
10  Tel: (202) 789-3960 / Fax: (202) 789-1813

11  STEVE M. CAMPORA (SBN 110909)          NIALL P. McCARTHY (SBN 160175)
    scampora@dbbwlaw.com                   nmccarthy@cpmlegal.com
12  ROBERT A. BUCCOLA (SBN 112880)         ANNE MARIE MURPHY (SBN 202540)
    rbuccola@dbbwlaw.com                   amurphy@cpmlegal.com
13  CRAIG C. SHEFFER (SBN 131243)          ERIC J. BUESCHER (SBN 271323)
    csheffer@dbbwlaw.com                   ebuescher@cpmlegal.com
14  **DREYER BABICH BUCCOLA WOOD**         **COTCHETT, PITRE & McCARTHY, LLP**
    **CAMPORA, LLP**                       840 Malcolm Road
15  20 Bicentennial Circle                 Burlingame, CA 94010
    Sacramento, CA 95826                    Tel: (650) 697-6000 / Fax: (650) 692-3606
16  Tel: (916) 379-3500 / Fax: (916) 379-3599

17  *Attorneys for the Krauth and Hasper, et al. Plaintiffs*

18                **UNITED STATES DISTRICT COURT**

19                **CENTRAL DISTRICT OF CALIFORNIA**

| 20 IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | Case No. 2:13-ml-02424-GW-FFM |
|---|---|
| 21 | **PUBLIC REDACTED VERSION** |
| 22 | ***KRAUTH/HASPER* PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PAYMENT OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND COMPENSATION TO NAMED PLAINTIFFS** |
| 23 24 | |
| 25 | Date:        March 19, 2015 |
| 26 | Time:        8:30 a.m. |
| 27 | Judge:       Hon. George H. Wu |
| | Courtroom:   10 |
| 28 | |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.   THE CONSUMER WATCHDOG LEGAL TEAM IS ENTITLED TO ITS REASONABLE FEES FOR OBTAINING BENEFITS FOR THE CLASS *THROUGHOUT THE LITIGATION*..............................................................3

  A.  Defendants' Arguments about the State *Bird* Case Fail.................3

    (1)  *Bird* Provided a Benefit to the Class.....................................3

  B.  Case Law Confirms that the Consumer Watchdog Legal Team is Entitled to Fees for Its Work in *Bird*............................................7

  C.  Defendants' Arguments About the MDL Fail..............................10

    (1)  *Krauth* and *Hasper* Provided a Benefit to the Class..............10

    (2)  The Consumer Watchdog Legal Team is Entitled to Compensation Under Fee Shifting Statutes............................15

III.   DEFENDANTS' EVIDENCE FAILS TO REBUT THE FEE REQUEST. ...17

  A.  The Consumer Watchdog Legal Team Did Not Overstaff or Duplicate Efforts.....................................................................18

  B.  The Time Spent by the Consumer Watchdog Legal Team is Properly Documented and Reasonable. ..........................................20

  C.  The Consumer Watchdog Legal Team's Hourly Rates are Supported. ........21

IV.   THERE IS NO BAR TO AWARDING FEES TO THE CONSUMER WATCHDOG LEGAL TEAM WHILE IT CONTINUES TO FIGHT FOR THE CLASS. ..............................................................................22

V.   NAMED PLAINTIFFS IN *BIRD, KRAUTH* AND *HASPER* HAVE SHOWN THEY ARE ENTITLED TO INCENTIVE AWARDS. ..........................23

VI.   CONCLUSION.........................................................................................24

# **TABLE OF AUTHORITIES**

**Cases**

*Aarons v. BMW of N. Am., LLC,*
2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 2014) ....................................16

*Apple Inc. v. Samsung Electronics Co.,*
2014 WL 2854994, (N.D. Cal. Jun. 20, 2014) ....................................................19

*Binta B. ex rel. S.A. v. Gordon,* 710 F.3d 608 (6th Cir. 2013) ..................................8

*Blackwell v. Foley,* 724 F.Supp.2d 1068 (N.D. Cal. 2010) ..............................17, 20

*Californians for Responsible Toxics Mgmt. v. Kizer,*
211 Cal. App. 3d 961 (1989) .............................................................................10

*Carlough v. Amchem Prods.,* 10 F.3d 189 (3d Cir. 1993) .......................................6

*Charlebois v. Angels Baseball LP,*
2012 U.S. Dist. LEXIS 91069 (C.D. Cal. May 30, 2012) ...................................19

*Chabner v. United of Omaha Life Ins. Co.,*
1999 U.S. Dist. LEXIS 16552 (N.D. Cal. Oct. 12, 1999) ...................................18

*Children's Hosp. & Med. Ctr. v. Bonta,* 97 Cal. App. 4th 740 (2002) ....................8

*Cullen v. Netflix,* 2013 WL 1832650 (N.D. Cal. 2013) .......................................9, 10

*Farmland Irrigation Company v. Dopplmaier,* 48 Cal.2d 208 (1957) ....................6

*First Nat. Ins. Co. of Am. v. MBA Const.,*
2005 WL 3406336 (E.D. Cal. Dec. 12, 2005) ......................................................8

*Fleury v. Richemont N. Am., Inc.,* 2008 WL 4829868 (N.D. Cal. Nov. 4, 2008) ...23

*Garcia v. Resurgent Capital Servs., L.P.,*
2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) ....................................................19

*Graciano v. Robinson Ford Sales,* 144 Cal. App. 4th 140, 153 (2006) ............15, 17

*Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 565 (2004) .........................15

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) .......................................................15, 20

*Hull v. Rossi,* 13 Cal.App.4th 1763 (1993) ............................................................14

*Johnson v. University College,* 706 F.2d 1205 (11th Cir. 1983) ...........................18

*Kim v. Euromotors W./The Auto Gallery,* 149 Cal. App. 4th 170 (2007) .........15, 17

*Lyons v. Chinese Hosp. Ass'n,* 136 Cal. App. 4th 1331 (2006) ..............................15

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)..............................17

*Muan v. Vitug*, 2014 WL 2770016 (N.D. Cal. Jun. 18, 2014) ................................19

*Overbo v. Loews Cal. Theatres, Inc.*,
   2010 U.S. Dist. LEXIS 145736 (N.D. Cal. Aug. 13, 2010) ...............................19

*Parsons v. Volkswagen of Am., Inc.*, 341 P.3d 662 (2014) ........................................9

*Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101 (2009) ....................18

*Pierce v. County of Orange*, 905 F.Supp.2d 1017 (C.D. Cal. 2012)................17, 19

*Probe v. State Teachers' Retirement System*, 780 F.2d 776 (9th Cir. 1986) ..........18

*RiverWatch v. County of San Diego Dept. of Environmental Health*,
   175 Cal. App. 4th 768 (2009).................................................................................15

*Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679 (C.D. Cal. 2012) .......24

*Serrano v. Unruh* (*Serrano IV*) 32 Cal.3d 621 (1982) ..........................................16

*United Steelworkers of America v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990).........................................................................21, 22

*Wilson v. Airborne, Inc.*, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008)...............24

**Statutes**

California Code of Civil Procedure

§ 1021.5 .................................................................................................................15, 17

**Other Authorities**

National Consumer Law Center, Consumer Class Actions (8th ed. 2013).............23

Richard M. Pearl, *California Attorney Fee Awards* (Third Ed.)

§ 2.45 ..........................................................................................................................15

§ 2.62 ..........................................................................................................................14

§ 9.74 ..........................................................................................................................18

§ 9.90 ..........................................................................................................................17

§ 9.92 ..........................................................................................................................21

§ 9.107 ........................................................................................................................22

## I.  <u>INTRODUCTION</u>

Hyundai and Kia's Opposition to the *Krauth/Hasper* Plaintiffs' Motion for Payment of Attorneys' Fees, Reimbursement of Expenses and Compensation to Named Plaintiffs ("Motion") (Dkt. 371) is primarily premised on the fact that the *Krauth/Hasper* Plaintiffs, represented by the Consumer Watchdog Legal Team, have not expressed their support for the Settlement. Under the paradigm devised by Defendants, the only lawyers who get paid are the lawyers with whom Defendants choose to negotiate and those who agree not to seek any improvements to the Settlement.

The law, of course, is to the contrary. The Consumer Watchdog Legal Team is entitled by established jurisprudence to compensation for the substantial benefits its legal work conferred upon the class at *every stage* of the process: the investigatory work it performed before any lawsuits were filed; for litigating the *Bird* case in state court beginning months before this MDL began; for initiating and securing this MDL after the EPA confirmed the Defendants' mileage misrepresentations; for insisting that Defendants and the two firms they chose to settle with a few weeks later justify their deal; for seeking the discovery that the Settling Plaintiffs had failed to obtain; and for demanding and obtaining better terms. A portion of those efforts on behalf of the Class occurred for months after almost every other plaintiff firm signed off on the Settlement and negotiated their fees.

Defendants' argument that the Consumer Watchdog Legal Team provided no benefits to the Class is absurd on its face. Hyundai and Kia rely on gross factual misrepresentations, unsupported legal arguments, bluster and the improper and unsubstantiated musings of a declarant who conducted a "legal audit" of our fee application. Their rendition of our role is belied by the extensive record in this case – numerous court filings, transcripts of the hearings – and our unceasing advocacy, all of which are summarized in our Motion, this Reply, and the accompanying

Declarations. These documents provide a comprehensive picture of the tasks performed, including substantive explanations of how time was expended for each task and time period, supporting the reasonableness of the hours.

Defendants' contention that the Consumer Watchdog Legal Team *cannot* be compensated for its work because we do not support the Settlement contradicts the most basic principles of class action law.

Indeed, the departure from established principles that Defendants ask this Court to endorse would create a dangerous precedent. It would permit wrongdoers like Hyundai and Kia to potentially buy off plaintiff's lawyers and *punish* those advocates – like the Consumer Watchdog Legal Team here – who are prepared to fight harder for consumers in the class. This is particularly troublesome, where, as here, two of the 60 plaintiff firms settled with Defendants even before the first hearing in this MDL.

Though they clearly did not intend to, Defendants themselves acknowledge the impropriety of their opposition to the Motion. They claim that compensating us for our work now would create a conflict in our obligation to the Class. But that's exactly the conflict that Hyundai and Kia created when they *insisted that all plaintiff's lawyers agree not to contest the terms of the Settlement, or final approval, as a condition of getting paid.*

As they have throughout this litigation, Hyundai and Kia complain about the Consumer Watchdog Legal Team's tenacity and refusal to "support the settlement." (Defendants' Opp. to Motion ("Opp.") at 9:5-6 (Dkt. 397)). This is hardly the behavior of "objectors." (*Id.* at 3:21). To the contrary, all of the Consumer Watchdog Legal Team's efforts were directed to *improving* the Settlement so that it might pass the "fair, adequate and reasonable" standard for final approval.[1]

---

[1] Defendants repeatedly complain that the Consumer Watchdog Legal Team "chose not to participate in original settlement discussions that led to the settlement-in-principle," as if that is an independent basis to deny compensation.

The Consumer Watchdog Legal Team has worked for three years to bring Hyundai and Kia's consumer, environmental and competitor misconduct to justice. It continues to do so. It deserves to be compensated, not punished, for the work that has so clearly and continuously benefitted the class at each stage of the proceeding.

## II. THE CONSUMER WATCHDOG LEGAL TEAM IS ENTITLED TO ITS REASONABLE FEES FOR OBTAINING BENEFITS FOR THE CLASS *THROUGHOUT THE LITIGATION.*

Hyundai and Kia claim that our work provided no benefit to the Class and we are not entitled to seek fees under the law. Defendants are incorrect.

### A. Defendants' Arguments about the State *Bird* Case Fail.

#### (1) *Bird* Provided a Benefit to the Class.

##### i. The Work Prior to Bird Benefitted the Class.

Defendants contend that the work performed by the Consumer Watchdog Legal Team during the pre-filing phase in the *Bird* case in Sacramento Superior Court provided no benefit to the MDL because *Bird* "has nothing to do with" the MDL and is similar to *Espinosa*. (Opp. at 12:18-22).

To the contrary, the evidence provided shows that the work performed during that time (by Consumer Watchdog and Cuneo Gilbert & LaDuca, LLP attorneys) *led directly to* this MDL, and to Defendants correcting their fuel economy advertising and agreeing to pay Class Members for unexpected fuel costs.

---

(Opp. at 3:15-16; *id*. at 5:28 – 6:1). It is not. But, for the record, at no point during the course of *Bird* or the MDL was the Consumer Watchdog Legal Team ever approached by counsel for any party to participate in settlement negotiations, nor were we aware of negotiations prior to Settling Parties' announcement about a settlement on February 14, 2013. (Antonini Reply Decl., ¶21).

*KRAUTH/HASPER* **PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES**; Case No. 2:13-ml-02424-GW-FFM

1    To begin, it's clear that Consumer Watchdog's communications with

2    Hyundai, the White House, the EPA and the resulting news media coverage forced

3    the company to address the misrepresentations internally (if only to publicly deny

4    them). Documents produced in confirmatory discovery show that ███████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    (Motion at 3:20 – 5:12; Decl. of Laura Antonini in Support of Motion, ("Antonini

8    Decl."), ¶¶28-29, 31-34, Exs. C and D (Dkt. 371-2)).

9    The EPA investigation leading to Defendants' mileage restatements, the

10   Voluntary Program to pay consumers for unexpected fuel costs, and, ultimately,

11   this MDL, ████████████████ Consumer Watchdog and its counsel began

12   contacting Hyundai and garnering significant media attention. (Motion at  3:20 –

13   5:12; Antonini Decl., ¶¶23-35, Ex. E). The EPA Complaint filed against

14   Defendants in the mileage misrepresentation enforcement action states explicitly

15   that it is based on "[a]udit testing by EPA's Office of Transportation and Air

16   Quality [] in 2012 and subsequent investigation." (Decl. of Laura Antonini in

17   Support of Reply in Support of Motion ("Antonini Reply Decl."), ¶6, Ex. C, ¶33).

18   To refute these facts, Defendants provide evidence meant to show that ████

19   ████████████████████████ However, their evidence does not

20   substantiate their argument. ████████████████████████████

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████ (Antonini Reply

25   Decl., ¶4, Ex. A; see Declaration of Joseph R. Ashby ("Ashby Decl."), Exs. 3 and

26   4 (Dkt. 397-1)).  Defendants also provide an article from "Automotive News"

27   quoting a retired EPA official saying the investigation was launched in response to

28

1  a 2010 complaint from another automaker. (Opp. at 2:25 – 3:2; Ashby Decl., Ex.

2  2). That article is hearsay, irrelevant in light of the evidence above, and conflicts

3  with the EPA's news release stating that its investigation was prompted by

4  consumer complaints. (Antonini Reply Decl., ¶5, Ex. B).

5       Defendants also denigrate the investigation preceding *Bird* by claiming *Bird*

6  simply copied the *Espinosa* complaint. (Opp. at 4:8-16, 12:21-22). Wrong again.

7  *Bird* is not *Espinosa*. The *Bird* complaint (1) alleged specific violations of Federal

8  Trade Commission regulations on fuel economy disclosures, (2) focused on

9  different Hyundai Elantra advertisements, and (3) most importantly, *sought*

10  *different monetary compensation*. (Antonini Reply Decl., ¶¶7-8). *Espinosa* sought

11  specifically to "to rescind the sales … and/or reimburse … the purchase price" of

12  the Hyundai vehicles to Class Members. (*Id.*, ¶8). However, *Bird sought the very*

13  *relief that Defendants are paying through the Voluntary Program and the*

14  *Settlement here: "monies paid for unexpected fuel costs."* (*Id.*, ¶7). Thus it is clear

15  that *Bird* was the result of the Consumer Watchdog Legal Team's own original

16  investigation into Hyundai's deceptive marketing of the Elantra. Any similarities

17  between *Bird* and *Espinosa* are likely the result of the fact that the *Espinosa*

18  complaint actually cited to Consumer Watchdog's investigation and subsequent

19  letter to the EPA.[2]

20            *ii.*     *The Work During Bird Benefitted the Class.*

21       Defendants say the discovery and motion practice in *Bird* provided no

22  benefit to the Class because it took place after a "settlement-in-principle" was in

23  place, and was "unsuccessful." (Opp. at 13:5-18). Their arguments are unfounded

24  and disingenuous.

25

26

27  _____

   [2] Notably, the complaints filed by both Settling Plaintiffs' counsel - *Espinosa* and

28  *Hunter* - cite to Consumer Watchdog's work. (Motion at 5, n. 5, and 7, n. 6).

1    First, Defendants claim that the majority of Bird's discovery and motion

2  work was done after a "settlement-in-principal" had been reached ignored the fact

3  that  Bird began pursuing discovery in August, 2012, an effort which continued for

4  *six months* prior to the centralization of cases in the MDL and the Settling Parties'

5  surprising announcement on February 14, 2013 that they had negotiated a

6  settlement. Details about the proposed settlement trickled out slowly in the

7  following months, and the Settling Parties did not file the full Settlement

8  Agreement until December 23, 2013.

9    Second, Defendants imply that the *Bird* litigation should have stopped the

10  moment the "settlement" was announced before this Court. However, that is wrong

11  as a matter of law. Until it was entirely clear that the dispute had been resolved in

12  the MDL, *Bird* had the right, and in fact the duty, to proceed in state court. *See*

13  *Farmland Irrigation Company v. Dopplmaier,* 48 Cal.2d 208, 215 (1957) ("When

14  an action is brought in a court of this state involving the same parties and the same

15  subject matter as an action already pending in a court of another jurisdiction, a stay

16  of the California proceedings is not a matter of right, but within the sound

17  discretion of the trial court."). It is common for state and federal class actions to

18  proceed in tandem until one ultimately concludes.[3]

18    The reason for this practical rule is that class actions in federal courts may

19  fail (and in fact frequently do so), leaving state cases as the only avenue of redress.

20  Hyundai initially moved to stay *Bird*, but, citing this rule, Bird pointed out that no

21  settlement agreement had been presented by the Settling Parties in the MDL (only

22  a term sheet), and no discovery had taken place.[4] The Sacramento Superior Court

23  _____

24  [3] In *Carlough v. Amchem Prods.*, 10 F.3d 189, 202 (3d Cir. 1993), the Court stated,
"In recognition of the independence and equivalent stature of the state and federal

25  courts, we held that actions derived from the same cause against the same
defendants may be maintained simultaneously in federal and state court. The effect

26  of a judgment in one would be determined by the principle of res judicata."

27  [4] Defendants assert that the Consumer Watchdog Legal Team told the *Bird* court
that no settlement existed. (Opp. at 5:4-25). This is false. An examination of the

28  _____

therefore denied Hyundai's motion. Months later, as confirmatory discovery proceeded in the MDL and this Court expressed its concerns, the Superior Court stayed the case pending resolution in this forum.

Third, the Class in the MDL benefitted from the contentious discovery battle in *Bird* that began in August, 2012. Months of extensive motion practice were necessitated by Hyundai's steadfast refusal to properly respond to Bird's discovery requests. The Superior Court ultimately agreed with Bird's position and ordered responses without objection to his document production requests and special interrogatories. (Antonini Decl., ¶¶38-39; Antonini Reply Decl., ¶¶9-10, Exs. E, F, and G). All of the discovery produced in *Bird* was ultimately produced in the MDL. (*Id.*). Undoubtedly, the *Bird* court's favorable position on these discovery issues was of concern to Hyundai and likely compelled its disclosure of thousands of additional pages of documentation during the confirmatory discovery here. Bird's continuing success in motion practice likely opened the door for less adversarial discovery in the MDL. These documents assisted all Plaintiffs' counsel in the MDL in assessing the adequacy of the proposed settlement. (Antonini Decl., ¶¶38-39).

### B. Case Law Confirms that the Consumer Watchdog Legal Team is Entitled to Fees for Its Work in *Bird*.

Defendants claim that the Court has no authority to award fees for *Bird* because *Bird* is a "completely separate case" and that the catalyst theory cannot be applied to *Bird*. (Opp. at 10:20 – 12:4). The law is to the contrary.

---

documents they rely upon shows that Consumer Watchdog Legal Team accurately informed the court of the status of the MDL in its filings. (See Antonini Reply Decl., ¶11).

**KRAUTH/HASPER PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES**; Case No. 2:13-ml-02424-GW-FFM

7

*i. Fees for Bird are Warranted Because Bird is "Closely Related" to the MDL and Was "Useful to [the MDL's] Resolution."*

At the same time that Defendants argue – incorrectly – that *Bird* was a copy-cat case (see above), they argue that *Bird* is a "completely separate matter" and thus cannot be compensated by this Court. (Opp. at 11:16-22). That's not what Hyundai told the *Bird* court,[5] and in any case, it's not the law.

"California case law clearly provides a trial court discretion to award a fee that compensates work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded but was nonetheless *closely related* to the action in which fees are sought and *useful* to its resolution." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 779-82 (2002) (emphasis added); *see First Nat. Ins. Co. of Am. v. MBA Const.*, 2005 WL 3406336, at *5 (E.D. Cal. Dec. 12, 2005) ("[A] trial court may, in its discretion, determine that time reasonably expended on an action includes time spent on other separate but closely related court proceedings") (citation omitted); Richard M. Pearl, *California Attorney Fee Awards* (Third Ed.) ("Pearl Treatise"), § 9.13. By Defendants' own admission, *Bird* is "closely related" to the MDL, and, as discussed above at pages 3-7, was "useful to [the MDL's] resolution."

Defendants cite two cases to claim that this Court cannot award fees for *Bird*. (Opp. at 11:16 – 12:2). The cases are inapposite. In *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 630-31 (6th Cir. 2013), an attorney could not recover fees for work in a prior action because the prior action was unsuccessful on the merits and "had nothing to do with the efforts" of lawyers in the later-filed action in

---

[5] Defendants' claim now that *Bird* is a "completely separate matter" directly conflicts with the representations Hyundai made to the *Bird* court when arguing for a stay: "all of Mr. Bird's claims are at issue in [*Krauth*] and the other now centralized cases." (Ashby Decl., Ex. 6 at 2:27-28).

which the attorney sought fees. In *Parsons v. Volkswagen of Am., Inc.*, 341 P.3d 662, 667-68 (2014), an attorney could not recover fees in an Oklahoma class action for work in a related Florida action because the Florida action had failed at the class certification stage and the court determined the Florida action was not "of assistance to" the Oklahoma action. By Defendants' own admission (*see* n. 5), *Bird* is "closely related" to the MDL, and was "of assistance" and "useful to [the MDL's] resolution"; *Bird* never received an adverse ruling on any issue relevant to the MDL.

### ii. Fees for Bird are Also Warranted under a Catalyst Theory.

Plaintiff Bird has established the three requisite factors necessary to be a "prevailing" party under a catalyst theory: (1) the work in *Bird* prior to the November 2012 EPA Announcement was a catalyst that motivated Defendants to provide the primary relief sought in *Bird* and here: reimbursement of unexpected fuel costs, both through the Voluntary Program and the Settlement; (2) *Bird* is meritorious; and (3) Bird reasonably attempted to settle the litigation prior to filing suit. (Motion at 13:27 – 15:2)

Defendants rely on *Cullen v. Netflix,* 2013 WL 1832650 (N.D. Cal. 2013), for their argument that *Bird* does not meet the three factors under the catalyst theory. In *Cullen*, the plaintiff had challenged Netflix's practices but lost; when Netflix changed its practices as part of the settlement of a subsequent class action brought by a non-profit organization, the attorney sought his fees for his work in the earlier case, claiming that it was the motivation for the later lawsuit. *Id*. at *2-3. The court found that the plaintiff failed to show the requisite "causal connection" between his failed lawsuit and the settlement. *Id.*

Unlike in *Cullen*, the facts here establish the requisite "causal connection" between *Bird* and the relief provided through the Voluntary Program and the Settlement. Hyundai and Kia focus on the fact that the plaintiff in *Cullen* had not been involved in the settlement negotiations in the later case – one of the facts that

led the *Cullen* court to conclude that the plaintiff's prior lawsuit did not motivate the later suit. Here, the fact that the Consumer Watchdog Legal Team did not participate in settlement negotiations has no bearing on the strength of the "causal connection": the chronology of events, set forth in section II.A.1 above, raises an "inference" that *Bird* was the catalyst for the relief. *See Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 968 (1989) ("When, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief."). *Cullen* also does not apply because here the claims in *Bird* are meritorious, and those claims were never dismissed by a court. Defendants have failed to rebut the evidence showing that *Bird* was the catalyst for relief here.

## C. Defendants' Arguments About the MDL Fail.

### (1) *Krauth* and *Hasper* Provided a Benefit to the Class.

#### i. The Pre-Filing Investigations of Krauth, Hasper and the MDL Petition Benefitted the Class.

Defendants suggest that the pre-filing investigations of *Krauth* and *Hasper* were the same as the investigation performed in *Bird* and therefore the later pre-filing efforts did not benefit the class. (Opp. at 12:24-27). They are wrong. *Bird*, *Krauth,* and *Hasper* are distinct.

Contrary to Defendants' characterizations (Opp. at 4:20-21), *Krauth* is not the same as *Bird*. *Krauth* was filed in federal court after the November 2012 EPA Announcement on behalf of a national class of Elantra owners, while *Bird* was filed prior to the November 2012 EPA Announcement in state court on behalf of California Elantra owners. (Motion at 6:18-24; Antonini Decl., ¶47).

Nor is *Hasper* like any other complaint filed in the MDL. Far from being a copycat case as Defendants claim (Opp. at 5:1, 15:15-27), *Hasper* alleges causes of action under seven states' consumer protection statutes. (Antonini Decl., ¶52).

*Hasper* also includes a comprehensive set of class representatives covering almost every model vehicle affected by the November 2012 EPA Announcement. (*Id.*). The pre-filing investigation of *Hasper* focused on interviewing Hyundai and Kia owners of over 20 different vehicle models and researching factual and legal issues related to the November 2012 EPA Announcement. (*Id.,* ¶¶52, 55).

*Hasper* was filed before the settlement was announced. Defendants falsely assert that the Consumer Watchdog Legal Team filed *Hasper after* the settlement here was announced. (Opp. at 1:18-19). This is false. *Hasper* was filed on February 7, 2013. The existence of the settlement here was kept a closely guarded secret until it was announced on February 14, 2013. (Antonini Decl., ¶¶52, 55).

Based on Hyundai counsel's highly adversarial litigation tactics in *Bird*, it seemed unlikely at the time *Hasper* was filed that Hyundai would settle the litigation. The Consumer Watchdog Legal Team filed the comprehensive *Hasper* Complaint to ensure all affected consumers would be adequately represented. (Antonini Decl., ¶¶52, 55).

Plaintiff Krauth also filed the MDL Petition, which clearly contributed to the outcome of the Settlement by consolidating all of the cases and creating this MDL.

### *ii. The Discovery Efforts in the MDL Benefitted the Class.*

Defendants assert that the Consumer Watchdog Legal Team's efforts during the discovery phase of the MDL involved "participation in group activities (such as hearings and conference calls) to which they made no identifiable or significant contribution." (Opp. at 1:21-23).  This bizarre contention is directly refuted by the facts. (Motion at 7:16 – 8:24; Antonini Decl., ¶¶59-86).

At the behest of the Consumer Watchdog Legal Team, the Court ordered Defendants to produce the same documents to Non-Settling Plaintiffs' counsel that they produced to Settling Plaintiffs. (Antonini Decl., ¶¶62-63). Once it became clear that the Settling Plaintiffs had obtained minimal substantive discovery

---

***KRAUTH/HASPER* PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1  concerning the origin and basis for Defendants' misrepresentations prior to
2  announcing their settlement, the Consumer Watchdog Legal Team worked
3  aggressively to obtain discovery that would allow all parties to assess the adequacy
4  of the terms of the proposed settlement. (*Id.*, ¶¶63-83).

5        The Consumer Watchdog Legal Team appeared and vocally participated in
6  each of the eight status conferences during which we successfully urged the Court
7  to require Defendants to fully comply with responding to discovery requests and
8  include Non-Settling Plaintiffs' counsel in all aspects of confirmatory discovery.
9  (Antonini Decl., ¶¶62, 63, 65, 68, 71, 73, 84; Antonini Reply Decl., ¶12).

10       The Consumer Watchdog Legal Team also actively participated in each of
11 the 21 telephonic calls with Liaison Counsel and other Non-Settling Plaintiffs'
12 counsel during this time frame. Those calls concerned both substantive and
13 procedural issues covering discovery matters. (Antonini Decl., ¶¶60-61, Antonini
14 Reply Decl., ¶13).

15       Out of an abundance of caution with respect to possibly privileged
16 communications, the Consumer Watchdog Legal Team will not present the details
17 of each of those calls. However, it is accurate to say that of the 20 to 40 plaintiffs'
18 lawyers who phoned in, the Consumer Watchdog Legal Team took the leading
19 role, with the exception of Liaison Counsel. (Antonini Reply Decl., ¶13).
20 Specifically, the undersigned engaged and provided input by suggesting strategy,
21 addressing discovery questions, seeking hard deadlines, transparency and the
22 opportunity for full input from all Non-Settling Plaintiffs *at every juncture.* (*Id.*).
23 These conference calls often required significant follow-up with Liaison Counsel
24 by the Consumer Watchdog Legal Team to ensure that requested information was
25 being provided.

26

27

28

---

*KRAUTH/HASPER* **PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

*iii. The Improvements to the Settlement Benefitted the Class.*

Defendants' attempts to minimize the Consumer Watchdog Legal Team's efforts on behalf of the Class to a farcical degree.

For example, Defendants repeatedly insist that the Consumer Watchdog Legal Team made only "minor and cosmetic" changes to the notice and claim forms (Opp. at 18:19) during a period in which the Consumer Watchdog Legal Team single-handedly worked (with the Court's continuous support) to improve the likelihood that Class Members would understand and file the appropriate forms. Examination of the record reveals the Defendants' arguments to be specious. (Antonini Decl., ¶¶87-102; Antonini Reply Decl., ¶¶14-18).

Between the time the Settling Parties finally filed their Motion for Preliminary Approval, on December 23, 2013, and the time the Consumer Watchdog Legal Team filed its Opposition to the Motion for Preliminary Approval on May 30, 2014, the Settling Parties provided further information about the Settlement and made two amendments to Settlement Agreement, both of which addressed issues raised by the Consumer Watchdog Legal Team in a 14-page memorandum filed with the Court on January 30, 2014. (Antonini Decl., ¶¶87-91).

Shortly thereafter, in a filing on May 7, 2014 (Dkt. 239), all but two of the other Non-Settling Plaintiffs' firms supported, no longer objected, or chose not to state their position regarding the Settlement. (Antonini Decl., ¶92).

The Consumer Watchdog Legal Team believed the Settlement required further improvement, so it filed an Opposition to the Motion for Preliminary Approval. Of the 58 other firms, only two others filed oppositions. This Court asked Defendants to address most of the Consumer Watchdog Legal Team's concerns. (Antonini Decl., ¶¶87-102; Antonini Reply Decl., ¶¶14-18).

Defendants bear principal responsibility for the lengthy, meticulous revisions that ensued. They chose to utilize a claims process coupled with a

1  reversionary provision that eliminated their incentive to make the notice and claim

2  forms simple and understandable. The result was incomprehensible (and often

3  unfinished) documents submitted to the Court on multiple occasions. The notice

4  and claims forms were to be the principal, if not exclusive, means of informing all

5  900,000 Class Members across the country of their rights and benefits under the

6  Settlement.

7      Defendants quote from a brief submitted by Settling Parties that the

8  Consumer Watchdog Legal Team's proposed revisions "even 'reflected an

9  inaccurate understanding of the proposed settlement or the lifetime reimbursement

10  program.'" (Opp. at 18:25-27 (citing Dkt. 304)). This argument works against

11  Defendants: to the extent our proposed revisions did not accurately reflect what the

12  parties to the settlement intended, that was the fault of those who drafted the

13  documents.  The Court will recall how Defendants' own counsel struggled at times

14  to explain to the Court key settlement provisions that were questioned by the

15  Consumer Watchdog Legal Team. (Antonini Reply Decl., ¶17).

16      Between the time the Consumer Watchdog Legal Team filed its Opposition

17  and the time the Court finally granted preliminary approval on October 3, 2014, the

18  Consumer Watchdog Legal Team reviewed six sets of notice and claim forms,

19  provided six sets of redlined edits and comments to the notice and claim forms, and

20  attended five hearings on them. (Antonini Decl., ¶¶95-101). At each hearing, the

21  Court either independently asked for the Consumer Watchdog Legal Team's input

22  or readily granted its requests to submit input. (Antonini Reply Decl., ¶15).[6] The

23

24  [6] That the Court suggested certain changes does not preclude recovery of fees here.

25  "The argument that the prevailing party's participation was unnecessary because
   the court would have reached the same result without it was rejected in *Hull v.*

26  *Rossi*, 13 Cal.App.4th 1763, 1768 (1993): '[a] prospective private attorney general

27  should not have to rely on the prospect that the court will do the right thing without
   opposition.'" Pearl Treatise, § 2.62.

28  _____
   ***KRAUTH/HASPER* PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND
   EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1  transcripts show that the Court agreed with the Consumer Watchdog Legal Team

2  again and again, delaying preliminary approval and admonishing the Settling

3  Parties for submitting documents to the Court with typos, formatting errors and

4  nonsensical descriptions of the compensation options. (*Id.*, ¶¶14-18).

### (2) The Consumer Watchdog Legal Team is Entitled to Compensation Under Fee Shifting Statutes.

Defendants claim that the *Krauth/Hasper* Plaintiffs are not "successful" or "prevailing" parties under the CLRA and California's private attorney general statute, California Code of Civil Procedure section 1021.5 ("CCP § 1021.5"). (Opp. at 20:22-27). Nothing in the law supports their position.

#### i. Bird, Krauth and Hasper Plaintiffs are "Prevailing Parties" Under the CLRA.

"[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 178-79 (2007). Defendants ignore that "[t]he definition of 'prevailing party' for purposes of fee-shifting statutes is pragmatic and flexible, depending more on the impact of the action than on the manner in which the action is resolved." Pearl Treatise, § 2.45 (citing *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 565 (2004). "It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit*." *Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140, 153 (2006) (emphasis added) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). It is not necessary that the party obtain the "primary" or "central" relief sought. *Lyons v. Chinese Hosp. Ass'n,* 136 Cal. App. 4th 1331, 1346-48 (2006); *RiverWatch v. County of San Diego Dept. of Environmental Health*, 175 Cal. App. 4th 768 (2009).

---

**KRAUTH/HASPER PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1    Prevailing parties are entitled to compensation for all hours reasonably spent on the

2    matter. *Serrano v. Unruh* (*Serrano IV*) 32 Cal.3d 621, 632-33 (1982).

3        Defendants argue that the *Bird*, *Krauth,* and *Hasper* Plaintiffs are not

4    successful parties based on the now thoroughly discredited argument that they did

5    not improve the Settlement. (Opp. at 21:27 – 28:10). As discussed above at pages

6    10-15, Plaintiffs have established their contribution to the MDL during all phases

7    of this litigation for which they seek fees. As a result of this contribution, more

8    money will be paid to Class Members – one of the central benefits in bringing the

9    lawsuits. *Aarons v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 118442, *36-37

10    (C.D. Cal. Apr. 2014) (where settlement is favorable to the class, it constitutes a

11    victory for class members, making an award of fees and costs mandatory under the

12    CLRA).

13        Plaintiffs' collective efforts resulted in a settlement that is better than what

14    Class Members would have received absent the litigation. Therefore, the *Bird*,

15    *Krauth*, and *Hasper* Plaintiffs (like the rest of Plaintiffs and their counsel) are

16    "prevailing parties" entitled to fee awards as mandated by CLRA.

17        Finally, Defendants claim that the Court cannot assess whether the

18    *Krauth/Hasper* Plaintiffs are "prevailing parties" because they have not expressed

19    their support for the Settlement. (Opp. at 21:11-12, 21:22-26). Defendants cite no

20    authority, nor can they, for the proposition that a "prevailing party" determination

21    can only be made upon a party's decision to support a settlement. Nothing in the

22    law or the cases cited by Defendants, (Opp. at 21:16-21) preclude the Court from

23    deciding whether Plaintiffs are "prevailing parties" at this time.

24                 *ii. Fees for the MDL are Warranted Because the Bird, Krauth*

25                  *and Hasper Plaintiffs are "Successful Parties" Under CCP §*

26                  *1021.5.*

27        Defendants invoke the same defective arguments made under their CLRA

28    analysis to conclude that the *Krauth/Hasper* Plaintiffs are not "successful parties"

1   for purposes of CCP § 1021.5. (Opp. at 22:11-28). Under CCP § 1021.5, a court

2   may award attorney's fees to a "successful party" if, among other things, a

3   "significant benefit, whether pecuniary or non-pecuniary, has been conferred on

4   the general public or a large class of persons." The "prevailing party" analysis

5   under the CLRA is the same as the "successful party" analysis under CCP §

6   1021.5. *See*, *Kim*, 149 Cal. App. 4th at 179; *Graciano*, 144 Cal. App. 4th at 153.

7       Defendants do not challenge the arguments that the *Krauth/Hasper* Plaintiffs

8   satisfy the other criteria for a fee-shifting award under CCP § 1021.5.

9   **III.  DEFENDANTS' EVIDENCE FAILS TO REBUT THE FEE

10         REQUEST.**

11      Once a fee applicant has satisfied its burden to document the hours expended

12  in litigation, any opposition to that fee application bears "a burden of rebuttal that

13  requires submission of evidence to the district court challenging the accuracy and

14  reasonableness of the hours charged or the facts asserted by the prevailing party in

15  its submitted affidavits." *Pierce v. County of Orange*, 905 F.Supp.2d 1017, 1025

16  (C.D. Cal. 2012) (citation omitted). To reduce the number of hours worked, "it

17  must appear that the time claimed is *obviously and convincingly excessive* under

18  the circumstances." *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal.

19  2010) (emphasis added).  "If opposing counsel cannot come up with specific

20  reasons for reducing the fee request that the district court finds persuasive, it

21  should normally grant the award in full…." *Moreno v. City of Sacramento*, 534

22  F.3d 1106, 1116 (9th Cir. 2008); s*ee also* Pearl Treatise, § 9.90.

23      For the reasons set forth below, Defendants' Opposition, and the arguments

24  and unsupported speculation of their consultant Gary Greenfield,[7] fail to rebut the

25  reasonableness of the Consumer Watchdog Legal Team's claimed hours.

26  _____

27  [7] The Consumer Watchdog Legal Team objects to Mr. Greenfield's "legal audit" of

28  the fee request. It far exceeds the permissible scope of such a declaration. It is

### A. The Consumer Watchdog Legal Team Did Not Overstaff or Duplicate Efforts.

Defendants claim that the Consumer Watchdog Legal Team is overstaffed. (Opp. 16:26-28). Mr. Greenfield asserts – with no factual basis – that "[i]t is almost inevitable that, with work being done by four firms, multiple personnel will be reviewing and revising work product, communicating with each other and reviewing communications, even if not necessary." (Greenfield Decl., ¶31). Such vague, speculative and self-serving assertions fail to rebut the detailed Declarations submitted by the Consumer Watchdog Legal Team.

Multiple attorneys are necessary to prosecute complex cases against powerful defendants like Hyundai and Kia with unlimited legal resources. This is especially true here, where the Consumer Watchdog Legal Team often stood alone in advocating on behalf of the Class against droves of lawyers for Defendants' and the Settling Parties.

The key is whether the division of labor is *reasonable*. "[A] team approach is often necessary in litigation and [] fees should be denied for duplication 'only if the attorneys are *unreasonably* doing the *same* work.'" Pearl Treatise, § 9.74 (citing *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir. 1983)); *see also Probe v. State Teachers' Retirement System*, 780 F.2d 776, 785 (9th Cir. 1986); *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 113 (2009).

Additionally, it should be apparent that frequent communications among counsel are essential precisely to *minimize* duplication of effort. Having drafts of documents reviewed and commented on by colleagues enhances the quality of the final work product.  There is nothing inherently unreasonable about such collaborative activity in class action litigation. *See Chabner v. United of Omaha Life Ins. Co.*, 1999 U.S. Dist. LEXIS 16552, at *11-12 (N.D. Cal. Oct. 12, 1999);

---

replete with legal arguments and opinions, which (apart from being incorrect) belong in the Defendants' brief, and concern matters for the Court to decide.

1   *see also Overbo v. Loews Cal. Theatres, Inc.*, 2010 U.S. Dist. LEXIS 145736, at

2   *36-37 (N.D. Cal. Aug. 13, 2010). To the contrary, exemplary work takes time and

3   effort.

4          The only items that Defendants specifically point to as duplicative are: that

5   three firms were involved in drafting and reviewing motions to compel discovery

6   (Greenfield Decl., ¶38), the participation of multiple lawyers in interviews of

7   Hyundai and Kia witnesses (*id.*, ¶36; Opp. at 19:14-18), and that three firms spent

8   time analyzing the proposed settlement and proposed revisions to the notice and

9   claim forms (*id.*, 19:18-20), and say the Dreyer Babich Buccola Wood Campora,

10  LLP ("DBBWC") firm's involvement in the case was "unreasonable." (Greenfield

11  Decl., ¶51).  It is entirely reasonable for multiple attorneys to review the same

12  documents and participate and assist each other when questioning witnesses. *See*

13  *Pierce v County of Orange*, 905 F.Supp.2d at 1028 (time spent summarizing

14  depositions compensable); *Muan v. Vitug*, 2014 WL 2770016, at *2 (N.D. Cal. Jun.

15  18, 2014) (court awarded fees when two attorneys were present at mediation

16  sessions, depositions, meetings, and trial); *Apple Inc. v. Samsung Electronics Co.*,

17  2014 WL 2854994, at *3 (N.D. Cal. Jun. 20, 2014) (court refused to reduce fees

18  for multiple attorneys attending depositions and hearings); *Garcia v. Resurgent*

19  *Capital Servs., L.P.* 2012 WL 3778852, at *7 (N.D. Cal. Aug. 30, 2012) (fees

20  reasonable when two attorneys worked on the same brief). Selecting DBBWC as

21  principle litigators of the *Bird* case was both reasonable and highly efficient, since

22  their offices are in Sacramento, where *Bird* was filed.

23         No doubt Hyundai and Kia are dismayed by the tenacity of the Consumer

24  Watchdog Legal Team, but that kind of commitment to the Class is required of

25  class action lawyers. To deny compensation for doing a thorough job would

26  discourage plaintiffs' lawyers from doing what the job requires. *Cf., Charlebois v.*

27

28

1 | *Angels Baseball LP,* 2012 U.S. Dist. LEXIS 91069, at *11 (C.D. Cal. May 30,
2 | 2012).

3 | Each firm assigned to this litigation had a specific role in achieving this
4 | successful result for Class Members, as explained in detail in the declarations that
5 | accompanied the Motion. (Antonini Decl., ¶¶23-106, Anderson Decl., ¶¶10-43
6 | (Dkt. 385-1), Murphy Decl., ¶¶3-22 (Dkt. 385-2), Campora Decl., ¶¶2-6 (Dkt. 371-
7 | 5)). The procedural and factual history of the case supports the number of attorneys
8 | on the Consumer Watchdog Legal Team who worked on this case. Defendants
9 | argue that the reduced fees they negotiated with other Non-Settling Plaintiffs'
10 | counsel are evidence that those lawyers acknowledge their work was duplicative
11 | and thus worth less. (*See* Opp. at 2:11 – 2:15; 17:9-21). That other Non-Settling
12 | Plaintiffs' counsel accepted less than their lodestar is completely irrelevant. The
13 | sustained efforts, and indisputable benefits, of the Consumer Watchdog Legal
14 | Team should be judged on their own. It played a unique role in this proceeding.
15 | That it fought on when others stopped is not an argument for denying it full
16 | compensation.

### B. The Time Spent by the Consumer Watchdog Legal Team is Properly Documented and Reasonable.

19 | Defendants repeatedly claim the documentation provided by the Consumer
20 | Watchdog Legal Team is insufficient. (Opp. at 16:20-23). This is incorrect. The
21 | Consumer Watchdog Legal Team has provided information that easily permits the
22 | Court to assess the reasonableness of the time expended in this ligation. We
23 | submitted extremely detailed declarations providing a comprehensive picture of
24 | the work we performed in this case over five phases of litigation, including
25 | substantive explanations of how such hours were spent and how that time was
26 | expended for each task and time period. (Antonini Decl. at ¶¶23-106, Anderson
27 | Decl., ¶¶10-43, Murphy Decl., ¶¶3-22, and Campora Decl., ¶¶2-6). An "attorney's

28 |

---

***KRAUTH/HASPER* PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1   sworn testimony that, in fact, [she] took the time claimed, is considerable weight

2   on the issue of the time required." *Blackwell,* 724 F.Supp.2d at 1081. The

3   declarations submitted are more than adequate to satisfy the documentation

4   requirements set forth by the United States Supreme Court. *See Hensley v.*

5   *Eckerhart,* 461 U.S. at 437, n. 12 ("Plaintiff's counsel, of course, is not required to

6   record in great detail how each minute of his time was expended, but at least

7   counsel should identify the general subject matter of his time expenditures.").[8]

8
### C. The Consumer Watchdog Legal Team's Hourly Rates are
9   ### Supported.

10      Defendants make a cursory and unsubstantiated challenge to the support

11   provided by the Consumer Watchdog Legal Team for their hourly rates.

12      The documents filed concurrently with the Motion provide ample support

13   for counsel's requested hourly rates. Affidavits of plaintiffs' counsel and other

14   attorneys regarding prevailing fees in the community, and rate determinations in

15   other cases, particularly those setting a rate for the same plaintiffs' attorneys, are

16   satisfactory evidence of the prevailing market rate. *United Steelworkers of America*

17   *v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also* Pearl Treatise,

18   § 9.92.

19      The declarations of the Consumer Watchdog Legal Team lawyers describe

20   counsel's experience, skill, and concrete standards for establishing the

21   reasonableness of these billing rates. (Antonini Decl. at ¶¶6, 12, Antonini Reply

22   Decl., ¶¶22-39, Anderson Decl., ¶9, Murphy Decl., ¶¶22-27, and Campora Decl.,

23   ¶¶7-8.) The Consumer Watchdog Legal Team lawyers here have the "special

24   _____

25   [8] As stated in the Motion, the Consumer Watchdog Legal Team is willing to
provide timesheets, which contain billing details as well as work product and
26   privileged information, for the Court's *in camera* review to verify the summaries
provided to the Court. (Motion at 20, n. 9.) Defendants' suggestion that their so-
27   called expert must review the detailed time records is nonsense.

28   *KRAUTH/HASPER* **PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND
EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1  expertise, background, or skill level" that courts routinely conclude justify such
2  rates. Pearl Treatise, § 9.107.

3      In his declaration, which contains extensive rate surveys, Mr. Pearl, a
4  renowned attorneys fee expert and author of a seminal treatise on the topic,
5  confirms that the rates used by each member of the Consumer Watchdog Legal
6  Team for similarly complex litigation in Southern California are within the
7  prevailing hourly rates of attorneys with similar expertise and experience in
8  complex litigation. (*See* Pearl Decl., ¶8 (Dkt. 371-6).)

9      Defendants have failed their burden to demonstrate otherwise. The
10 Opposition is devoid of any factual support that rebuts the evidence submitted by
11 Mr. Pearl. Mr. Greenfield offers *no evidence* that the claimed hourly rates are
12 incorrect. Attorney rates are presumed reasonable when no contrary evidence is
13 presented to contradict the validity of the rates. *United Steelworkers of Am. v.*
14 *Phelps Dodge Corp.*, 896 F.2d at 407.

15 **IV.   THERE IS NO BAR TO AWARDING FEES TO THE CONSUMER**
16 **WATCHDOG LEGAL TEAM WHILE IT CONTINUES TO FIGHT**
   **FOR THE CLASS.**

17     Defendants say the Court should not compensate the Consumer Watchdog
18 Legal Team because that would appear to be a pay-off for counsel to agree to a
19 settlement. (Opp. at 8:9). Strangely, Defendants fail to acknowledge that the Court
20 ordered the Consumer Watchdog Legal Team to submit the Motion, with the
21 understanding that it may perform more work to improve the Settlement after
22 submission of the Motion. (Antonini Reply Decl., ¶6).
23     The Consumer Watchdog Legal Team cannot state its position on the
24 Settlement since Defendants have not produced all of the claims reports at the time
25 of this filing. The Court previously stated that it will review claim rates after
26 Defendants have submitted three reports over a 90 day time frame, and that period
27
28

---

*KRAUTH/HASPER* **PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1   has not yet concluded. (Antonini Reply Decl., ¶20). If the participation rates are

2   low, the Court has suggested that it may require measures such as additional notice

3   and extending the claims submission deadline in order to improve participation

4   (*id.*); thus, the Consumer Watchdog Legal Team may need to file a request for

5   secondary notice once all of the claims reports have been submitted. However, this

6   does not preclude an award of fees.

7        Nothing in the law prevents the Court from awarding fees at this time.[9]

8   Defendants fail to cite a single case that actually supports the proposition that

9   counsel "cannot [] simultaneously object to the settlement and seek fees based on

10  it." (Opp. at 9:4-5). The cases cited by Defendants (Opp. at 8:5-23) are inapposite:

11  they correctly hold that lawyers should not get paid if they do not provide a

12  substantial benefit to the class. (*See* Opp. at 7:20 – 8:4).

13       Moreover, Defendants' positions are contradictory: Defendants argue, on the

14  one hand, that "[u]nless and until they agree to support the settlement … they may

15  not be awarded fees" and, on the other hand, state, "no fees [should be] awarded

16  that appear to hinge on counsel's agreeing to settlement." (*Compare* Opp. at 9:4-8

17  *with* Opp. at 9:21-22). Indeed, if there is a conflict in this case, Hyundai and Kia

18  created it when they *insisted that all plaintiff's lawyers agree not to contest the*

19  *terms of the settlement, or final approval, as a condition of getting paid.*

20  **V.   NAMED PLAINTIFFS IN *BIRD, KRAUTH* AND *HASPER* HAVE**

21  **SHOWN THEY ARE ENTITLED TO INCENTIVE AWARDS.**

22       The named Plaintiffs in *Bird, Krauth* and *Hasper* should not be deprived of

23  incentive awards because they are continuing to advocate for the Class and have

24  not stated a position on the Settlement. *See* National Consumer Law Center,

25  _____

26  [9] Though cited by Defendants, *Fleury v. Richemont N. Am., Inc.,* 2008 WL
    4829868 (N.D. Cal. Nov. 4, 2008), supports a compensation award here. The court

27  ordered that "any petition" for fees had to be made prior to final approval—
    including those of counsel for objectors.

28  _____

*KRAUTH/HASPER* **PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND
EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

Consumer Class Actions (8th ed. 2013), § 14.7.7 ("The possibility of an award should not impact upon the representative's decision whether to approve the proposed settlement"). Not only have these Plaintiffs devoted time and energy to this case,[10] they lent their names to the pleadings posted on public websites and discussed in the media, advocating for improvements to the Settlement on behalf of Class Members. (Antonini Reply Decl., ¶40; *see Wilson v. Airborne, Inc.*, 2008 WL 3854963, at *13 (C.D. Cal. Aug. 13, 2008) (finding that the media attention class representatives attracted supported incentive awards)). These Plaintiffs have clearly shown a "commitment to the class . . . despite the fact that they stood to receive only a small portion of the Settlement" benefits. *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *18 (C.D. Cal. 2012). Thus, the Court should award the *Bird*, *Krauth* and *Hasper* Plaintiffs service awards in the amount awarded to other named plaintiffs in this action.

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court award the Consumer Watchdog Legal Team their attorneys' fees and costs in the amount of $2,820,852.47 and the named Plaintiffs in *Bird, Krauth* and *Hasper* service awards.

Respectfully submitted,

Dated:  March 5, 2015            **CONSUMER WATCHDOG**

By:   */s/ Harvey Rosenfield*
Harvey Rosenfield

---

[10] Motion at 23:16-24; Antonini Decl., ¶109. Plaintiff Bird also participated in the widespread, national media coverage related to the filing of his lawsuit. (*See* Antonini Decl. at ¶34, n. 6).

*KRAUTH/HASPER* **PLAINTIFFS' REPLY ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

Pamela Pressley
Laura Antonini
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874

Jonathan W. Cuneo
William H. Anderson
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Niall P. McCarthy
Anne Marie Murphy
Eric J. Buescher
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 692-3606

Craig C. Sheffer
Steve M. Campora
Robert A. Buccola
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
Fax: (916) 379-3599

*Attorneys for the Krauth and Hasper, et al. Plaintiffs*