# EXHIBIT "1"

In re Online DVD-Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

Case 2:13-ml-02424-GW-FFM   Document 434-1   Filed 03/18/15   Page 2 of 19   Page ID #:9996

2015 WL 846008
United States Court of Appeals,
Ninth Circuit.

In re ONLINE DVD–RENTAL
ANTITRUST LITIGATION.
Andrea Resnick; Bryan Eastman; Amy Latham;
Melanie Miscioscia; Stan Magee; Michael Orozco;
Lisa Sivek; Michael Wiener, Plaintiffs–Appellees,
v.
Theodore H. Frank, Objector–Appellant,
v.
Netflix, Inc.; Wal–Mart Stores, Inc.;
Walmart.Com USA LLC, Defendants–Appellees.
In re Online Dvd–Rental Antitrust Litigation.
Andrea Resnick; Bryan Eastman; Amy Latham;
Melanie Miscioscia; Stan Magee; Michael Orozco;
Lisa Sivek; Michael Wiener, Plaintiffs–Appellees,
v.
Jon M. Zimmerman, Objector–Appellant,
v.
Netflix, Inc.; Wal–Mart Stores, Inc.;
Walmart.Com USA LLC, Defendants–Appellees.
In re Online Dvd–Rental Antitrust Litigation.
Andrea Resnick; Bryan Eastman; Amy Latham;
Melanie Miscioscia; Stan Magee; Michael Orozco;
Lisa Sivek; Michael Wiener, Plaintiffs–Appellees,
v.
Edmund F. Bandas, Objector–Appellant,
v.
Netflix, Inc.; Wal–Mart Stores, Inc.;
Walmart.Com USA LLC, Defendants–Appellees.
In re Online Dvd–Rental Antitrust Litigation.
Andrea Resnick; Bryan Eastman; Amy Latham;
Melanie Miscioscia; Stan Magee; Michael Orozco;
Lisa Sivek; Michael Wiener, Plaintiffs–Appellees,
v.
Maria Cope, Objector–Appellant,
v.
Netflix, Inc.; Wal–Mart Stores, Inc.;
Walmart.Com USA LLC, Defendants–Appellees.
In re Online Dvd–Rental Antitrust Litigation.
Andrea Resnick; Bryan Eastman; Amy Latham;
Melanie Miscioscia; Stan Magee; Michael Orozco;
Lisa Sivek; Michael Wiener, Plaintiffs–Appellees,
v.
John Sullivan, Objector–Appellant,
v.
Netflix, Inc.; Wal–Mart Stores, Inc.;
Walmart.Com USA LLC, Defendants–Appellees.
In re Online Dvd–Rental Antitrust Litigation.
Andrea Resnick; Bryan Eastman; Amy Latham;
Melanie Miscioscia; Stan Magee; Michael Orozco;
Lisa Sivek; Michael Wiener, Plaintiffs–Appellees,
v.
Tracey Klinge Cox, Objector–Appellant,
v.
Netflix, Inc.; Wal–Mart Stores, Inc.;
Walmart.Com USA LLC, Defendants–Appellees.

Nos. 12–15705, 12–15889, 12–15957, 12–
15996, 12–16010, 12–16038.    |    Argued and
Submitted Feb. 13, 2014.    |    Filed Feb. 27, 2015.

**Synopsis**
**Background:** Individuals representing putative class of subscribers to internet-based DVD rental service filed antitrust action against internet-based DVD-rental service and large discount retailer, challenging as anticompetitive promotion agreement that divided up DVD-related businesses between the two companies. Plaintiffs moved for certification of litigation class of subscribers to internet-based DVD-rental service. The United States District Court for the Northern District of California, Phyllis J. Hamilton, J., 2010 WL 5396064, granted motion, then later denied approval of initial settlement agreement between retailer and global class of those subscribers and subscribers to another competing online DVD rental service, but conditionally approved settlement agreement between retailer and class of subscribers to internet-based DVD-rental service, gave preliminary approval of settlement and form and plan of notice, and denied renewed motion to decertify litigation class. Class members appealed.

**Holdings:** The Court of Appeals, Sidney R. Thomas, Chief Judge, held that:

[1] district court did not abuse its discretion in certifying the settlement class, despite objector's contention that class

**In re Online DVD-Rental Antitrust Litigation, --- F.3d ---- (2015)**
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 3 of 19 Page ID #:9997

representatives were inadequate because their incentive awards were much larger than average settlement payout;

[2] district court did not abuse its discretion in approving claimant-fund-sharing mechanism;

[3] district court's notice of settlement did not violate either class action rule or due process;

[4] district court did not err in approving settlement as fair, reasonable, and adequate, based on consideration of *Churchill* factors;;

[5] portion of settlement that would be paid in gift cards to discount retailer was not a "coupon settlement" within meaning of Class Action Fairness Act (CAFA);

[6] district court did not err in calculating attorney fee award as percentage of total settlement fund, including notice and administrative costs;

[7] district court provided adequate notice to class of attorney fee provision; and

[8] district court provided an adequate explanation of its rationale for fee award.

Affirmed.

See, also, ––– F.3d ––––, 2015 WL 845842.

West Headnotes (25)

[1]  **Federal Courts**
    🔑 Class Actions

    Court of Appeals reviews district court's decision to approve class action settlement for clear abuse of discretion. Fed.Rules Civ.Proc.Rule 23(e), 28 U.S.C.A.

    Cases that cite this headnote

[2]  **Federal Courts**
    🔑 Costs and Attorney Fees

    Court of Appeals reviews district court's award of fees and costs to class counsel, as well as its method of calculation, for abuse of discretion. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

    Cases that cite this headnote

[3]  **Federal Courts**
    🔑 Class Actions

    Court of Appeals reviews court's order on class certification for abuse of discretion. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

    Cases that cite this headnote

[4]  **Federal Civil Procedure**
    🔑 Representation of Class; Typicality; Standing in General

    While examination of potential conflicts of interest has long been an important prerequisite to class certification and is especially critical when class settlement is tendered along with motion for class certification, court does not favor denial of class certification on basis of speculative conflicts, nor does district court abuse its discretion when conflicts are trivial; only conflicts that are fundamental to suit and that go to heart of litigation prevent plaintiff from meeting adequacy requirement for certification. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

    Cases that cite this headnote

[5]  **Federal Civil Procedure**
    🔑 Particular Items

    District court did not abuse its discretion in approving settlement class in antitrust class action, despite objector's contention that the nine class representatives were inadequate because their representatives' awards, at $5,000 each, were significantly larger than the $12 each unnamed class member would receive; there were no structural differences in claims of class representatives and other class members, nor did settlement explicitly condition incentive awards on class representatives' support for settlement, and agreement provided no guarantee that class representatives would receive incentive payments, leaving that decision

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 4 of 19 Page ID #:9998

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

to later discretion of district court. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

Cases that cite this headnote

[6]  **Federal Civil Procedure**
🗝 Representation of Class;  Typicality;  Standing in General

**Federal Civil Procedure**
🗝 Particular Items

Incentive awards that are intended to compensate class representatives for work undertaken on behalf of class are fairly typical in class action cases, and incentive payments to class representatives do not, by themselves, create impermissible conflict between class members and their representatives; rather, resolution of two questions determines legal adequacy, (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

Cases that cite this headnote

[7]  **Compromise and Settlement**
🗝 Fairness, Adequacy, and Reasonableness

To assess fairness of class action settlement, court looks to eight "*Churchill* factors" including (1) strength of plaintiff's case, (2) risk, expense, complexity, and likely duration of further litigation, (3) risk of maintaining class action status throughout trial, (4) amount offered in settlement, (5) extent of discovery completed and stage of proceedings, (6) experience and view of counsel, (7) presence of governmental participant, and (8) reaction of class members to proposed settlement. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

Cases that cite this headnote

[8]  **Federal Courts**
🗝 Class Actions

Review of district court's decision to approve a class action settlement is extremely limited; it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. Fed.Rules Civ.Proc.Rule 23(e), 28 U.S.C.A.

Cases that cite this headnote

[9]  **Compromise and Settlement**
🗝 Antitrust and Trade Regulation Actions

**Deposits in Court**
🗝 Disposition Under Judgment or Order of Court

District court did not abuse its discretion in approving "claimant-fund-sharing" mechanism as part of antitrust class settlement, despite objector's contention that because so few class members actually filed claims, settlement should not have used approach whereby each class member who submitted claim received equal share of settlement fund, regardless of harm he or she suffered.

Cases that cite this headnote

[10] **Deposits in Court**
🗝 Disposition Under Judgment or Order of Court

Concepts of claimant fund approach and fluid recovery should not be conflated; "fluid recovery" can be used interchangeably with "cy pres" distributions to describe distribution that confers indirect benefit on class members, whereas "claimant fund" approach provides direct compensation to class members.

Cases that cite this headnote

[11] **Federal Courts**
🗝 Class Actions

Court of Appeals reviews de novo whether notice of proposed settlement in class action satisfies due process. U.S.C.A. Const.Amend. 5.

Cases that cite this headnote

[12] **Compromise and Settlement**
🗝 Notice and Communications

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 5 of 19 Page ID #:9999

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

**Constitutional Law**
  Compromise and Settlement

**Federal Civil Procedure**
  Sufficiency

District court's notice of settlement of antitrust class action against large discount retailer did not violate either federal civil rule governing class actions or due process; notice provided was not deficient despite two objectors' argument that it failed to provide estimate as to how much of an award each claimant would receive, did not disclose what cost average claimant had incurred due to anticompetitive conduct at issue, neglected to state fact that administration costs would be deducted from settlement fund, and did not reveal that state class attorneys could claim fees from settlement fund that would further reduce amount available to class members and drive attorney fees request over 25%. U.S.C.A. Const.Amend. 5; Fed.Rules Civ.Proc.Rule 23(e)(1), 28 U.S.C.A.

Cases that cite this headnote

[13] **Compromise and Settlement**
  Notice and Communications

**Federal Civil Procedure**
  Sufficiency

Notice of proposed class-action settlement provided pursuant to rule must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. Fed.Rules Civ.Proc.Rule 23(e), 28 U.S.C.A.

Cases that cite this headnote

[14] **Compromise and Settlement**
  Notice and Communications

**Constitutional Law**
  Compromise and Settlement

**Federal Civil Procedure**
  Sufficiency

District court's notice of settlement of antitrust class action against large discount retailer did not violate either federal civil rule governing class actions or due process despite objector's contention that "dual notice" was misleading and constitutionally and statutorily deficient because class members received information about subject case and another case against internet-based DVD rental service in one notice and e-mail did not include information about district court's decision to grant summary judgment for defendant in the other case. U.S.C.A. Const.Amend. 5; Fed.Rules Civ.Proc.Rule 23(e)(1), 28 U.S.C.A.

Cases that cite this headnote

[15] **Federal Civil Procedure**
  Particular Items

Settlement agreement in antitrust class action was not unfair despite objector's argument that incentive awards for nine class representatives were unreasonably large, even though the $5,000 incentive award each representative received was roughly 417 times larger than $12 individual award; the $45,000 in incentive awards made up mere .17% of total settlement fund of $27.25 million. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

Cases that cite this headnote

[16] **Compromise and Settlement**
  Antitrust and Trade Regulation Actions

**Compromise and Settlement**
  Class, Existence and Determination;  Parties

**Federal Civil Procedure**
  Options;  Withdrawal

A "reverter" provision that allowed large discount retailer to keep excess settlement funds in antitrust class action and confidential "opt-out" provision that allowed it to leave settlement agreement at any time did not make that agreement unfair; one clause of reverter provision applied only if settlement was not approved so any argument regarding it was moot, the other relevant clause allowed return of funds only if retailer had transferred monies in excess of amount needed to pay all costs and claims under settlement, and, under the opt-out-provision, which allowed retailer to opt out if a certain percentage of class members opted out of



Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 6 of 19 Page ID #:10000

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

the settlement, only the exact threshold was kept confidential, for practical reasons. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

Cases that cite this headnote

[17]   **Compromise and Settlement**
       *Antitrust and Trade Regulation Actions*
       **Compromise and Settlement**
       *Determination; Findings*

District court provided sufficient explanation for, and did not abuse its considerable discretion in, approving settlement agreement in antitrust class action against large discount retailer as fair, reasonable and adequate despite objector's contention that court failed to fully explain its decision under *Churchill* factors; record reflected that district judge considered those factors, most importantly class's chance of success if it continued to pursue litigation, and given her decision in corresponding case against internet-based DVD rental service and length and complexity of case thus far, she reasoned that settlement was fair in large part because it would provide class members with their only chance at relief. Fed.Rules Civ.Proc.Rule 23(e)(2), 28 U.S.C.A.

Cases that cite this headnote

[18]   **Compromise and Settlement**
       *Fairness, Adequacy, and Reasonableness*
       **Federal Civil Procedure**
       *Class Actions; Settlements*

In awarding attorney fees in settled class action, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

Cases that cite this headnote

[19]   **Attorney and Client**
       *Allowance and Payment from Funds in Court*

In the Ninth Circuit, there are two primary methods to calculate attorneys fees in class action where a settlement produces a common fund for the benefit of an entire class; under the "percentage-of-recovery" method, attorney fees equal some percentage of common settlement fund, with benchmark percentage in Ninth Circuit being 25%, whereas "lodestar" method requires multiplying the number of hours prevailing party reasonably expended on litigation, as supported by adequate documentation, by reasonable hourly rate for region and for lawyer's experience. Fed.Rules Civ.Proc.Rule 23(h), 28 U.S.C.A.

Cases that cite this headnote

[20]   **Federal Civil Procedure**
       *Class Actions; Settlements*

While district court has discretion in calculating fees or approving fee request in class actions, it abuses that discretion when it uses mechanical or formulaic approach that results in an unreasonable reward.

Cases that cite this headnote

[21]   **Antitrust and Trade Regulation**
       *Costs and Attorney Fees*

Portion of settlement of antitrust class action that would be paid in gift cards from discount retailer was not a "coupon settlement" and attorney fee award was not attributable to award of coupons within meaning of Class Action Fairness Act (CAFA); gift cards were sufficiently different from coupons, especially given fact that claimants could choose between gift cards and cash, gift cards were freely transferable, and they had no expiration date. 28 U.S.C.A. § 1712(a).

Cases that cite this headnote

[22]   **Attorney and Client**
       *Allowance and Payment from Funds in Court*

District court did not err in calculating attorney fee award in settled antitrust class action as percentage of total settlement fund, including notice and administrative costs, and litigation expenses.

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 7 of 19 Page ID #:10001

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

[23] **Compromise and Settlement**
  Notice and Communications

  **Federal Civil Procedure**
  Sufficiency

District court provided adequate notice of attorney fee petition to class members; notice e-mailed and mailed to class members informed them that class counsel would be seeking fees in amount of 25% of total settlement fund and also gave class members clear deadline for filing objection, and district court set deadline for filing fee motion fifteen days before deadline for filing objection. Fed.Rules Civ.Proc.Rule 23(h)(1), 28 U.S.C.A.

Cases that cite this headnote

[24] **Attorney and Client**
  Allowance and Payment from Funds in Court

Factors courts may consider in assessing request for attorney fees in common fund case that was calculated using percentage-of-recovery method include extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law in some circumstances, the burdens class counsel experienced while litigating the case, e.g., cost, duration, and foregoing other work, and whether the case was handled on a contingency basis; in addition, a court may cross-check its percentage-of-recovery figure against a lodestar calculation.

Cases that cite this headnote

[25] **Attorney and Client**
  Allowance and Payment from Funds in Court

District court did not abuse its discretion in its analysis, explanation, and approval of class counsel's request for attorney fees in settled antitrust class action; class counsel requested, and court awarded, the 25% benchmark award only, while it was not per se valid benchmark was helpful starting point, counsel compared benchmark to summary lodestar numbers provided by class counsel and concluded those lodestar estimates were three times benchmark, and district judge provided reasoned explanation for her decision to approve fee request, both in her order and in oral ruling.

Cases that cite this headnote

**Attorneys and Law Firms**

Theodore H. Frank (argued), Center for Class Action Fairness, WA, D.C.; Gary Sibley, Dallas, TX; Joseph Darrell Palmer, Law Offices of Darrell Palmer PC, Solana Beach, CA; Christopher A. Bandas, Bandas Law Firm, P.C., Corpus Christi, TX; Christopher V. Langone and Grenville Pridham, Law Office of Christopher Langone, Ithaca, NY; Joshua R. Furman (argued), Joshua R. Furman Law Corp., Los Angeles, CA, for Objector–Appellants Frank, Cope, Cox, Bandas, Sullivan, and Zimmerman.

Todd A. Seaver, (argued), Joseph J. Tabacco, Jr., and Christopher T. Heffelfinger, Berman DeValerio, San Francisco, CA, for Plaintiffs–Appellees.

Appeal from the United States District Court for the Northern District of California, Phyllis J. Hamilton, District Judge, Presiding. D.C. No. 4:09–md–02029–PJH.

Before: SIDNEY R. THOMAS, Chief Judge, STEPHEN REINHARDT, Circuit Judge, and LLOYD D. GEORGE, Senior District Judge.[*]

**OPINION**

THOMAS, Chief Judge:

**\*1** In this appeal, class members challenge the district court's approval of a settlement between Walmart[1] and a class of Netflix DVD subscribers arguing, among other matters, that the gift card portion of the settlement constituted a coupon settlement within the meaning of the Class Action Fairness Act ("CAFA"), Pub.L. No. 109–2, 119 Stat. 4

Case 2:13-ml-02424-GW-FFM   Document 434-1   Filed 03/18/15   Page 8 of 19   Page ID
 #:10002

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

(2005). We hold that the settlement was fair and that the fee award was proper, and we affirm the district court.

**I**

Before its focus changed to streaming video, Netflix's primary business was renting DVDs to subscribers online and shipping them out by mail. Other companies, including retail giant Walmart, tried to compete. Netflix reached an agreement with Walmart that divided up DVD-related business between the two companies. Under the agreement, Netflix stopped selling DVDs, and focused solely on its DVD rental business. In return, Walmart wound down its own burgeoning online rental service, but continued to act as a major DVD seller.

In 2009, Andrea Resnick and seven other class representatives ("plaintiffs") filed a consolidated amended class action complaint against Netflix and Walmart, challenging the agreement as anti-competitive. Plaintiffs assert that as a result of the agreement and Walmart's subsequent departure from the rental business, Netflix charged its customers unfairly high monthly subscription prices.

The district court granted plaintiffs' motion for certification of a litigation class of Netflix subscribers. The court denied approval of an initial settlement agreement between Walmart and a global class of both Netflix subscribers and subscribers to Blockbuster's online DVD rental service. However, a class of just Netflix subscribers then reached a settlement agreement with Walmart. The court conditionally approved the Netflix settlement class and also gave preliminary approval of the settlement, and the form and plan of notice. The court denied a renewed motion by Netflix to decertify the Netflix litigation class. [2]

In the settlement agreement, Walmart agreed to pay a total amount of $27,250,000, comprising both a "Cash Component" and a "Gift Card Component," in exchange for dismissal with prejudice of all claims asserted in the complaint. The class consists of:

> any person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Netflix on or after May 19, 2005, up to and including the date the Court grants Preliminary Approval of the Settlement, or some other date to be agreed to by the parties to this Agreement. [3]

The Cash Component funded attorneys' fees and expenses, costs of notice and administration, and incentive payments to class representatives. The amount remaining constituted the Gift Card Component and was used to provide class members with either gift cards or, if they so chose, the cash equivalent of a gift card. The gift card could only be used at the Walmart website and was freely transferrable, although it could not be resold. To receive payment, a class member was required to submit a claim form. A claimant could submit a claim for a gift card via e-mail, the class action website, or regular mail. A claimant could submit a claim for cash by regular mail only, and had to include the last four digits of his or her Social Security Number. Each claimant received an equal share of the Gift Card Component. In other words, the Gift Card Component (the amount remaining after subtracting attorneys' fees and expenses, notice and administration costs, and incentive payments) was split evenly among all valid claimants, regardless of the specific damages each individual claimant incurred.

**\*2** Initial e-mail notice of the settlement was provided to some 35 million class members. Notice was mailed to more than 9 million class members whose email addresses were invalid such that the email notice "bounced back." The notice informed class members about the settlement and claims-submission process; stated that class counsel would seek $1.7 million in reimbursement of litigation expenses and fees of 25% of the total settlement fund of $27,250,000 and that Class Representatives would receive $5,000 each in incentive payments; it also set a deadline for filing a claim, leaving the class, or objecting to the settlement of February 14, 2012. The notice encouraged class members to visit the class website for more details. In response to the notice, 1,183,444 claims were submitted. 744,202 requests were for gift cards and 434,253 were for the equivalent value in cash. 722 class members opted out of the class and 30 lodged objections.

The appellants in this consolidated appeal, members of the proposed class, all objected to the settlement. At a March 14, 2012 fairness hearing and in the accompanying March 29, 2012 orders, the court gave final approval to the settlement and settlement class and awarded attorneys' fees. The judge rejected all objections, concluding that not "one objection was sufficient [ ]—singular or in the aggregate—to preclude [her] from approving this settlement." The court determined

In re Online DVD-Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 9 of 19 Page ID #:10003

that CAFA's coupon—settlement provisions should not apply because the Walmart gift cards were sufficiently different from coupons—especially given the fact that claimants could choose between gift cards and cash, the gift cards were freely transferrable, and they had no expiration date.

The court concluded the attorneys' fees were properly calculated as 25% of the settlement fund, including administration and notice costs. It decided the percentage amount was fair, especially given that the alternative lodestar calculation would have resulted in attorneys' fees three times larger than the amount class counsel requested. The court approved attorneys' fees of $6,812,500 (25% of the total fund of $27,250,000), reimbursement of some litigation expenses totaling $1,700,000, incentive awards of $5,000 each for nine class representatives (totaling $45,000), and payment of notice and administration costs out of the fund. Administration and notice costs totaled roughly $4.5 million, leaving roughly $14.1 million in the settlement fund for the Gift Card Component. Divided among almost 1.2 million claims, the Gift Card Component will provide claimants with roughly $12 each. [4]

Following the court's approval of the settlement, six objectors, Theodore Frank, Tracey Klinge Cox, Maria Cope, Edmund F. Bandas, John Sullivan, and Jon M. Zimmerman ("Objectors"), timely appealed and their cases were consolidated.

[1] [2] [3] We have jurisdiction under 28 U.S.C. § 1291. We review a district court's decision to approve a class action settlement "for clear abuse of discretion." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 940 (9th Cir.2011) (citing *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir.2009)). Similarly, we review a court's "award of fees and costs to class counsel, as well as its method of calculation" for abuse of discretion. *Id.* (citing *Lobatz v. U.S. W. Cellular of Cal., Inc.,* 222 F.3d 1142, 1148–49 (9th Cir.2000)). We review a court's "order on class certification for an abuse of discretion," as well. *Parra v. Bashas', Inc.,* 536 F.3d 975, 977 (9th Cir.2008).

II

**\*3** The district court did not abuse its discretion in certifying the settlement class. In *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court clarified the difference between certifying a litigation class under Federal Rule of Civil Procedure 23(a) and (b) and certifying a settlement class under Rule 23(e). The Court noted that Rule 23(e) "was designed to function as an additional requirement, not a superseding direction, for the 'class action' to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)." *Id.* Thus, just because a settlement appears to be fair, reasonable, and adequate under Rule 23(e) does not mean a class has met the certification requirements of Rule 23(a) and (b). *Id.* at 621, 117 S.Ct. 2231 ("[I]f a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rules 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed."). Here, the district court certified the settlement class of Netflix subscribers pursuant to Rules 23(a) and (b)(3).

[4] We have observed that "[e]xamination of potential conflicts of interest has long been an important prerequisite to class certification" and "is especially critical when the a[sic] class settlement is tendered along with a motion for class certification." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). However, we do not "favor denial of class certification on the basis of speculative conflicts." *Cummings v. Connell,* 316 F.3d 886, 896 (9th Cir.2003). Nor does a district court abuse its discretion when conflicts are trivial. *Abbott v. Lockheed Martin Corp.,* 725 F.3d 803, 813 (7th Cir.2013). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed.2011). A conflict is fundamental when it goes to the specific issues in controversy. *Id.*

[5] Cox argues the district court certified a class in violation of Rule 23(a), because the class representatives are not able to adequately represent the class. Relying on *Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 187–89 (3d Cir.2012), Cox argues the representatives are not capable of adequately representing the class because the nine class representatives' awards under the settlement, at $5,000 each, are significantly larger than the $12 each unnamed class member will receive. Cox argues that, like in *Dewey,* there is an arbitrary line drawn in this case between class representatives and all other class members.

[6] However, incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class "are fairly typical in class action

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 10 of 19 Page ID #:10004

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

cases." *Rodriguez,* 563 F.3d at 958. Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives. *Cobell v. Salazar,* 679 F.3d 909, 922 (D.C.Cir.2012); *White v. Nat'l Football League,* 41 F.3d 402, 408 (8th Cir.1994), *abrogated on other grounds by Amchem Prods. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Rather, "[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. As to the latter question, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1112 (5th Cir.1978).

**\*4** Here, as in *Hanlon,* there were no structural differences in the claims of the class representatives and the other class members. *Hanlon,* 150 F.3d at 1021. This case does not involve an *ex ante* incentive agreement between the class representatives and class counsel, which we criticized in *Rodriguez,* 563 F.3d at 958–60. Nor does it involve a settlement which explicitly conditioned the incentive awards on the class representatives' support for the settlement, as was the case in *Radcliffe v. Experian Information Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir.2013). In this case, as in *Cobell,* the class settlement agreement provided no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court. *Cobell,* 679 F.3d at 922. The amount sought and awarded was relatively small, well within the usual norms of "modest compensation" paid to class representatives for services performed in the class action. *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1080 (7th Cir.2013). Indeed, we approved an identical incentive fee in *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir.2000). Thus, the district court did not abuse its discretion in certifying the settlement class.

*Dewey* is not to the contrary. The settlement in that case was structured far differently than in this case. *Id.* at 187. The class in Dewey was split up into two groups: a reimbursement group and a residual group. *Id.* All of the class representatives were in the reimbursement group. As a result, the class representatives were apt to favor the reimbursement group's interests over the residual group's, which the court held was an impermissible conflict under Rule 23(a). *Id.* This case involved only one settlement class, with no subclasses.

Each class member was entitled to the same distribution, so the class representatives had no incentive to favor one subclass over another. In short, this case does not involve the intra-class structural conflict that concerned the court in *Dewey.* Indeed, read properly, in its extensive discussion of what conflicts are "fundamental," Dewey supports our conclusion that there was no fundamental conflict between the class representatives and class members that would prevent settlement class certification. Therefore, the district court did not abuse its discretion in certifying the settlement class. [5]

### III

The district court did not err in approving the settlement. We have previously recognized that settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 946 (internal quotation marks omitted).

[7] [8] To guard against these dangers, Federal Rule of Civil Procedure 23(e) "requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *Id.* at 946. To assess the fairness of a settlement, we look to the eight *Churchill* factors, including:

> **\*5** (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Id.* (quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004)); *see also Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993). [6] "Our review of the district court's decision to approve a class action settlement is extremely limited. It is the settlement taken as a

whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon,* 150 F.3d at 1026 (internal citation omitted). Keeping this standard in mind, we review Objectors' various challenges to the district court's decision to approve the settlement agreement.

### A

[9] The district court did not err in using the claimant fund mechanism. Zimmerman argues that because so few class members actually filed claims, the settlement should not have used the claimant fund sharing approach—whereby each class member who submits a claim receives an equal share of the settlement fund, regardless of the harm he or she suffered. Labeling claimant fund sharing a type of fluid recovery, Zimmerman argues that both state and federal courts disfavor fluid recovery distribution methods, especially when only a small proportion of class members participate. *See Democratic Cent. Comm. of the Dist. of Columbia v. Washington Metro. Area Transit Comm'n,* 84 F.3d 451, 455 n. 2 (D.C.Cir.1996) ("Implementing fluid recovery ... in federal class actions is controversial."); *see also State v. Levi Strauss & Co.,* 41 Cal.3d 460, 476, 224 Cal.Rptr. 605, 715 P.2d 564 (Cal.1986) ("Hence, the advantages of claimant fund sharing can only be realized where a large proportion of class members participate and submit accurate claims.").

[10] The district court did not abuse its discretion in approving this claimant-fund-sharing settlement. First, we are careful not to conflate the concepts of "claimant fund approach" and "fluid recovery." Indeed, we have previously used "fluid recovery" interchangeably with "cy pres" distributions to describe a distribution that confers an indirect benefit on class members. *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir.2012) ("A *cy pres* remedy, sometimes called 'fluid recovery,' is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." (internal citation omitted)). The claimant fund approach in this case, however, provides direct compensation to class members.

Zimmerman cites the California Supreme Court, which has called claimant fund sharing one "method[ ] of fluid recovery" and has noted that claimant fund sharing is unique among fluid recovery methods because it provides actual compensatory benefits to class members. *Levi Strauss & Co.,* 41 Cal.3d at 476, 224 Cal.Rptr. 605, 715 P.2d 564 (explaining that claimant fund sharing "uses the entire class recovery to provide monetary compensation to individual class members"). Nevertheless, Zimmerman does not cite any binding or persuasive federal authority for the proposition that claimant fund sharing is prohibited when only a small number of class members file settlement claims. In *Six (6) Mexican Workers v. Arizona Citrus Growers,* we noted that settlements have been approved where less than five percent of class members file claims. 904 F.2d 1301, 1306 (9th Cir.1990).

*6 Moreover, we have employed similar methodology in other cases. *See, e.g., Dennis v. Kellogg Co.,* 697 F.3d 858, 862–63, 868 (9th Cir.2012) (rejecting a settlement because the cy pres portion of the award lacked specificity; another part of the settlement fund was distributed to claimants who submitted claims and not to silent class members). Finally, because this case involves a settlement agreement with a class of plaintiffs who were allegedly harmed by paying excessively high Netflix subscription prices, the concerns we have raised before regarding fluid recovery are not implicated here. *See Six (6) Mexican Workers,* 904 F.2d at 1306 (noting, following a class action antitrust case tried to a judge, that the Second and Ninth Circuit's concerns over fluid recovery involve "the impermissible circumvention of individual proof requirements" rather than the allocation of unclaimed damages). The district court did not abuse its discretion in employing the claimant fund mechanism.

### B

The district court's notice of the settlement did not violate either Federal Rule of Civil Procedure 23 or due process. Federal Rule of Civil Procedure 23(e)(1) requires a court to "direct notice [of a proposed settlement] in a reasonable manner to all [settlement] class members who would be bound by the proposal." Rule 23(e) requires notice that describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane,* 696 F.3d at 826 (internal quotation marks omitted). However, Rule 23(e) "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Id.*

[11] Objectors argue that the notice provided in this settlement to class members violated Rule 23 and class

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 12 of 19 Page ID #:10006

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

members' due process rights. *See Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1350–51 (9th Cir.1980) ("Although [Rule 23(e) ] accords a wide discretion to the District Court as to the form and content of the notice, due process requires its presence and constitutional adequacy."). We review "de novo whether notice of a proposed settlement satisfies due process." *Torrisi,* 8 F.3d at 1374.

 [12]  Cope and Bandas argue that the notice was deficient for failing to provide an estimate as to how much of an award each claimant would receive, not disclosing what cost an average claimant had incurred due to the anti-competitive conduct at issue, neglecting to state the fact that administration costs would be deducted from the settlement fund, and not revealing that, according to Cope and Bandas, state class attorneys could claim fees from the settlement fund that would further reduce the amount available to class members and drive the attorneys' fees request over 25%. Sullivan contends that the dual notice provided to class members—including both information regarding the ongoing Netflix litigation and the settlement with Walmart—was misleading and constitutionally and statutorily deficient.

 **\*7**  [13]  The notice provided in this settlement, in both mail and email form, was sufficient under the Constitution and Rule 23(e). First, none of the cases Objectors cite require the level of specificity they claim is needed. Indeed, as we made clear in *Lane,* Rule 23(e) requires sufficient detail simply "to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane,* 696 F.3d at 826 (internal quotation marks omitted); *see also Rodriguez,* 563 F.3d at 962 (holding that a notice contained "adequate information" when it did not exaggerate class representative support for the settlement and described "the aggregate amount of the settlement fund and the plan for allocation"). Here, the notice meets the requirements articulated in *Lane* and *Rodriguez.* The email notice provides simple and straightforward information about the class action, about the status of the cases against both Netflix and Walmart, about what action class members may take in either case, and about the uncertain nature of the Netflix litigation and the need to check the website for more detail. Most importantly, the notice states the amount of the settlement fund with Walmart, the amount class counsel will seek in fees, litigation expenses, and incentive awards, the fact that class counsel will seek payment for other costs from the fund, the fact that class members will need to submit a claim to obtain relief, an internet link and phone number to obtain a claim form, and the deadline for objecting or submitting a claim. The mail form is substantially the same. The e-mail and mail notices, which did not need to and could not provide an exact forecast of how much each class member would receive, gave class members enough information so that those with "adverse viewpoints" could investigate and "come forward and be heard." *Lane,* 696 F.3d at 826.

To the extent Cope and Bandas argue the notice fails to inform class members of the possibility that state class counsel will request attorneys' fees, in addition to the 25% in the fee request in this case, the district court was within its discretion to reject that argument. Paragraph 13.2 of the Settlement Agreement clarifies that state attorneys' fees and other costs will come from the fees requested pursuant to Paragraph 6.1.1.1. And, pursuant to Paragraph 6.1.1.1, class counsel requested attorneys' fees totaling 25% of the settlement fund. Class counsel made clear at the fairness hearing that any fee request from state class counsel would come from the fee award granted in this case. The court did not abuse its discretion in interpreting Paragraph 13.2 as class counsel recommended.

 [14]  Finally, we disagree with Sullivan that notice was deficient because class members received information about both the Netflix and Walmart cases in one notice and because the e-mail did not include information about the district court's decision to grant summary judgment for the defendant in the Netflix case. While it is true that the initial e-mail notice came out shortly before the summary judgment decision but did not forecast it, the notice sent by regular mail was promptly updated, and the website was too. The notice in this case was not perfect, but the court did not abuse its discretion in approving the notice plan and ultimately approving the settlement.

### C

 **\*8**  The district court did not err in approving the settlement as fair, reasonable, and adequate. As noted above, we consider the eight *Churchill* factors when assessing whether a settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 946. Cox points to specific provisions in the agreement to argue that the settlement was not fair, reasonable, and adequate, and she contends that the district court failed to adequately explain its decision. We consider each argument in turn.

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

Case 2:13-ml-02424-GW-FFM   Document 434-1   Filed 03/18/15   Page 13 of 19   Page ID #:10007

### 1

**[15]** Cox argues the incentive awards in this case—$5,000 for each of nine class representatives—were unreasonably large and thus unfair. Cox cites to *Staton v. Boeing, Co.,* 327 F.3d 938 (9th Cir.2003), with the $12 each claimant will receive. But *Staton* does not support her argument. In *Staton,* we reversed in part due to incentive awards that averaged $30,000 for 29 class representatives, totaling $890,000. *Staton,* 327 F.3d at 976–77. Thus, the average incentive award was 30 times the $1000 that unnamed class members received. *Id.* at 948–49, 976–77. More importantly, the incentive payments as a whole made up roughly 6% of the total settlement (estimated, on the large end, to be $14.8 million). *Id.* In contrasting the *Staton* facts with other cases and reversing because the *Staton* incentive awards were too large, we looked to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* at 977. In this case, nine class representatives receive $5,000, totaling $45,000, while unnamed class members receive $12. While it is true that a $5,000 incentive award is roughly 417 times larger than the $12 individual award, we focused less on that fact in *Staton* and more on the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards. *Id.* at 977. Here, incentive awards are $5,000, an amount we said was reasonable in *Staton. Id.* at 976–77. $5,000 is considerably less than the average of $30,000 in *Staton.* There are nine class representatives, compared with the 29 in *Staton. Id.* Finally, the $45,000 in incentive awards makes up a mere .17% of the total settlement fund of $27,250,000, which is far less than the 6% of the settlement fund in *Staton* that went to incentive awards. *Id.* at 948–49, 976–77. Thus, under *Staton,* the district court did not abuse its discretion in approving the settlement awards, especially considering its conclusion that the litigation was "complicated" and took up quite a bit of the class representatives' time. Further, as we noted previously, we approved an identical incentive fee in *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 463.

### 2

**[16]** Cox also argues that two provisions in the settlement agreement, a reverter provision that she alleges allows Walmart to keep excess settlement funds and a confidential opt-out provision that allows Walmart to leave the settlement agreement at any time, make the agreement unfair. We disagree. One clause of the reverter provision, Paragraph 11.1.1, applies only if the settlement is not approved, so any argument regarding that clause is moot. The other relevant clause, Paragraph 11.1.4, allows a return of funds to Walmart only if "Wal–Mart has transferred monies in excess of the amount needed to pay" all costs and claims under the settlement. The district court did not abuse its discretion in deciding that these provisions do not allow for any improper reversion of allocated settlement funds to Walmart. The opt-out provision, Paragraph 9.4, allows Walmart to opt out if a certain percentage of class members opt out of the settlement. [7] Only the exact threshold, for practical reasons, was kept confidential. And because the court has granted final approval of the settlement, that threshold necessarily has not been met and the court therefore did not abuse its discretion in holding this issue was moot.

### 3

**\*9** **[17]** Finally, Cox argues the court abused its discretion by failing to fully explain its decision under the *Churchill* factors. Cox cites *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242–43 (9th Cir.1998) for the proposition that the district court needed to provide a detailed explanation of its decision to approve the settlement, along with a response to objections, in a written order. Cox misreads *Linney.* In that case, we stated instead that a court needs to provide a reasoned explanation, along with a response to objections, either in an order or somewhere else in the record. *Linney,* 151 F.3d at 1242–43. Moreover, it is important to remember that our review of a fairness determination is " 'extremely limited,' and we will set aside that determination only upon a 'strong showing that the district court's decision was a clear abuse of discretion.' " *Lane,* 696 F.3d at 818 (quoting *Hanlon,* 150 F.3d at 1026–27).

Here, the district court did not abuse its discretion. At the March 14, 2012 hearing, the judge considered many of the objections to the settlement and explained her decision to reject each of them. The record reflects that she considered the *Churchill* factors, most importantly the class's chance of success if it continued to pursue litigation. Given her decision in the corresponding Netflix case and the length and complexity of the case thus far, she reasoned that the settlement was fair in large part because it would provide class members with their only chance at relief. In her March

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 14 of 19 Page ID #:10008

In re Online DVD-Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

29, 2012 written order, she provided additional reasoning, explaining that the settlement was in the public interest and followed vigorous arm's length negotiation between both sides of the litigation. She also listed the *Churchill* factors, noting briefly that she had considered each, as is reflected in the record. Between the order and the fairness hearing, the court provided sufficient explanation for its decision and did not abuse its considerable discretion in approving a settlement. *See Lane, 696 F.3d at 818*.

## IV

 [18]  [19]  The district court did not err in approving the fee award. Plaintiffs' class counsel asked for attorneys' fees in the amount of 25% of the overall settlement fund of $27,250,000 and the district court granted class counsels' request. In awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 941*. In this circuit, there are two primary methods to calculate attorneys fees: the lodestar method and the percentage-of-recovery method. *Id. at 941–42*. Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%. *Id. at 942*. The lodestar method requires "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."*Id. at 941*.

 *10  [20]  While a district court has discretion in calculating fees, or approving a fee request, we have held that a district court "abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward." *In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir.2010)* (internal quotation marks omitted). One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method. For example, a crosscheck using the lodestar method "can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate.' " *In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 945* (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 n. 40 (3d Cir.1995)*).

### A

 [21]  We first consider the argument, advanced by several objectors, that the attorneys' fee award must comply with provisions of CAFA governing "coupon settlements." We conclude the district court properly decided that the portion of the settlement that will be paid in Walmart gift cards was not a "coupon settlement" within the meaning of CAFA. CAFA directs courts to apply heightened scrutiny to coupon settlements. *28 U.S.C. § 1712(e)*; *see also In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir.2013)* (citing *Synfuel Tech., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 654 (7th Cir.2006)* ("[W]e note that in that statute Congress required heightened judicial scrutiny of coupon-based settlements....")). Objectors' primary reason for raising CAFA is Section 1712's requirement that "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." *28 U.S.C. § 1712(a)*. In other words, Objectors contend that the Walmart gift cards are coupons and fall under CAFA and, as a result, the district court erred by calculating the fee award as a percentage of the overall settlement fund, including the total dollar value of the gift cards, instead of calculating the portion of the fee award based on the gift cards as a percentage of the gift cards that were actually redeemed.

The district court correctly held that the Walmart gift cards in this settlement do not constitute a coupon settlement that falls under the umbrella of CAFA.[8] In construing a statute, we first determine whether the statutory language is plain and unambiguous, examining not only the text, but "the structure of the statute as a whole, including its object and policy." *Children's Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090, 1096 (9th Cir.1999)*. If the plain language is unambiguous, our inquiry is at an end. *Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 877–78 (9th Cir.2001)* (en banc).

Because Congress does not define the ambiguous term "coupon" within the statute, *see 28 U.S.C. § 1711*; *see also In re EasySaver Rewards Litig., 921 F.Supp.2d 1040, 1047 (S.D.Cal.2013)* ("[CAFA] does not define what constitutes a 'coupon.' "), "we may 'look to other interpretive tools, including the legislative history' in order to determine the statute's best meaning." *In re HP Inkjet Printer Litig., 716 F.3d at 1181* (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 567, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005)*). CAFA's legislative history, along with the decisions

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 15 of 19 Page ID #:10009

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

of district courts that have considered the issue, convince us that these gift cards are not coupons.

**\*11** In CAFA's findings and purposes, Congress emphasized its concern about settlements when class members receive little or no value, including settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4 (2005). The Senate Judiciary Committee's Report offers more detail, stating that congressional hearings have exposed class action settlements in which "class members receive nothing more than promotional coupons to purchase more products from the defendants." S.Rep. No. 109–14, at 15 (2005), 2005 U.S.C.C.A.N. 3, 16. The report goes on to give twenty-nine examples of problematic coupon settlements. *Id.* at 15–20. The report cites and criticizes coupon settlement awards that provide class members with "$30 to $40 discounts" on a future cruise, "a $5 to $10 voucher good for future purchases of particular computer hardware or software products", "$1 off every subsequent $5 purchase" at a chain of restaurants, "a 30 percent discount on selected products" during a one-week time period, $55 to use on a purchase of a new crib from a defendant crib producer accused of making defective cribs, "$1.25 off a $25 dollar [video] game", and so on. *Id.* at 15–17.

The Walmart–Netflix settlement differs from the settlements that drew the attention of Congress. Affording over 1 million class members $12 in cash or $12 to spend at a low-priced retailer does not leave them with "little or no value." The district court did not err when it stated simply that "$12, while not a lot of money these days even at Wal–Mart, is $12." Moreover, this case is distinguishable from every single coupon-settlement example in the Senate report. The report focuses on settlements that involve a discount—frequently a small one—on class members' purchases from the settling defendant. S.Rep. No. 109–14, at 15–20; *see also True v. Am. Honda Motor Co.,* 749 F.Supp.2d 1052, 1069 (C.D.Cal.2010) (stating that $500 or $1000 rebates off the purchase of a new Honda or Acura vehicle are coupons and quoting *Fleury v. Richemont North America, Inc.,* No. C–05–4525 EMC, 2008 WL 3287154, at \*2 (N.D.Cal. Aug. 6, 2008) for the proposition that coupons offer only " 'a discount on another product or service offered by the defendant in the lawsuit' "). These discounts require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services. The gift cards in this case are different. Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his or her own money and can choose from a large number of potential items to purchase. Even if the gift card is only worth $12, it gives class members considerably more flexibility than any of the coupon settlements listed in the Senate report.

**\*12** District courts that have considered the issue have not classified gift cards as coupon settlements falling under CAFA. *See Reibstein v. Rite Aid Corp.,* 761 F.Supp.2d 241, 255–56 (E.D.Pa.2011) (holding that $20 Rite Aid gift cards with "actual cash value," that will be mailed to "(mostly) regular customers, have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers ... have need", are "more like 'cash' than 'coupons' ") [9]; *Fernandez v. Victoria Secret Stores, LLC,* No. CV 06–04149, 2008 WL 8150856, at \*2, \*4–16 (C.D.Cal. Jul. 21, 2008) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with gift cards to Victoria's Secret); *Petersen v. Lowe's HIW, Inc.,* Nos. C 11–01996 RS, C 11–03231 RS, C 11–02193 RS (N.D.Cal. Aug. 24, 2012) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with $9 gift cards to Lowe's); *see also In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,* MDL No. 1967, Master Case No. 08–1967, 2011 WL 1790603, at \*2–4 (W.D.Mo.2011) (holding that a settlement that provides class members with vouchers to obtain new products was not a coupon settlement because the vouchers do not require class members to spend their own money and do not require class members to purchase the same or similar products as those that gave rise to the litigation). Similar to the gift cards in these cases, the Walmart gift cards can be used for any products on walmart.com, are freely transferrable (though they cannot be resold on a secondary market) and do not expire, and do not require consumers to spend their own money.

Our conclusion that the settlement does not constitute a "coupon settlement" within the meaning of CAFA does not conflict with the Seventh Circuit's decision in *Synfuel Technologies, Inc.,* 463 F.3d at 654, as Frank suggests. The pre-paid shipping envelopes in *Synfuel* are different than the Walmart gift cards. Unlike a pre-paid shipping envelope, a gift card to walmart.com does not simply offer class members

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

Case 2:13-ml-02424-GW-FFM   Document 434-1   Filed 03/18/15   Page 16 of 19   Page ID #:10010

one type of complete product. It offers them a set amount of money to use on their choice of a large number of products from a large retailer. Like the gift cards to Rite Aid in *Reibstein,* part of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products. That distinction also separates these gift cards from the e-credits we deemed coupons in *In re HP Inkjet Printer Litig.,* 716 F.3d at 1176 (labeling e-credits, which could be used to obtain Hewlett–Packard "printers and printer supplies," coupons).

Frank also argues that failing to apply CAFA to these gift cards will "eviscerate the Class Action Fairness Act," because settlements will be able to avoid CAFA merely by labeling their coupons as gift cards. Our holding will have no such effect. First, gift cards are a fundamentally distinct concept in American life from coupons. *Cf.* 15 U.S.C. § 1693*l*–1 (regulating gift cards, under the 1978 Electronic Fund Transfer Act and the Credit Card Accountability Responsibility and Disclosure Act of 2009, as an electronic form of cash (i.e., similar to credit or debit cards)). District courts are more than capable of ferreting out the deceitful coupon settlement that merely co-opts the term "gift card" to avoid CAFA's requirements. Second, our holding is limited. We conclude only that the gift cards in this case are not subject to CAFA, without making a broader pronouncement about every type of gift card that might appear.

*13  Finally, Frank raises the concerns that these gift cards will not disgorge Walmart of ill-gotten gains and will force class members to buy from the defendant in their class action. But, giving thousands of consumers the ability to purchase $12 in goods from the Walmart website for free will not be insignificant to the retailer. Moreover, this case does not present the same problems as one like *Young v. Polo Retail, LLC,* in which the class members were former Polo Retail employees who complained about being forced to purchase Polo clothing and were then given Polo Retail gift cards. No. C–02–4546, 2006 WL 3050861, at *3–5 (N.D.Cal.2006) ("[W]hy would former employees, who allegedly were forced to buy a great deal of unwanted Polo products, desire product vouchers so that they could purchase even more clothes?"). Here, class members are suing due to an online-DVD rental agreement between Walmart and Netflix. Since Walmart sells many products beyond DVDs, class members have less reason to be wary of a gift card to the defendant retailer than did the plaintiffs in *Young.* Moreover, the claimants in this case had the option of obtaining cash instead of a gift card, undercutting the argument that the settlement forces them to buy from the defendant. In sum, we hold that the Walmart gift cards in this case are not coupons that fall under the umbrella of CAFA. [10] The district court did not err in failing to apply CAFA to this case. [11]

**B**

[22]  The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses. Frank argues the $4.5 million in notice and administrative costs, which facilitate alerting class members to the settlement and processing claims submitted by class members, do not inure to the benefit of the class. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 942 (noting that a percentage-of-recovery fee award is calculated by taking a percentage of the "common fund for the *benefit of the entire class* " (emphasis added)). He argues the district court's mode of calculation fails to encourage class counsel to reduce notice and administrative costs. He also contends that by basing the fee award on the entire common fund, some of class counsels' fees are simply a percentage of their litigation expenses award—thus their work is being "double-count[ed]."

The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses. We have repeatedly held "that the reasonableness of attorneys' fees is not measured by the choice of the denominator." *Powers v. Eichen,* 229 F.3d 1249, 1258 (9th Cir.2000) (rejecting an objector's argument that a fee award in a securities settlement should be based on "net recovery," which does not include "expert fees, litigation costs, and other expenses"); *see also Staton,* 327 F.3d at 974–75 ("The district court also did not abuse its discretion by including the cost of providing notice to the class ... as part of its putative fund valuation.... We have said that 'the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable.' " (quoting *Powers,* 229 F.3d at 1258)). Here, the district court concluded that class counsels' fee request, which applied the 25% benchmark percentage to the entire common fund, was reasonable. Indeed, the court explicitly explained how administrative costs in particular make it possible to distribute a settlement award "in a meaningful and significant way."

Case 2:13-ml-02424-GW-FFM Document 434-1 Filed 03/18/15 Page 17 of 19 Page ID #:10011

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

Similarly, notice costs allow class members to learn about a settlement and litigation expenses make the entire action possible. Thus, the court acted within its discretion under this court's precedent in *Powers* and *Staton.* [12]

### C

**\*14** **[23]** The district court provided adequate notice to the class of the attorneys' fee petition. Federal Rule of Civil Procedure 23(h)(1) requires a claim for attorneys' fees to be made by motion under Rule 54(d)(2) and for "[n]otice of the motion [to] be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d at 993–95, analyzed the rule and rejected as insufficient Rule 23(h) notice when the motion for attorneys' fees was due after the deadline for class members to object to the attorneys' fees motion. In other words, even though class counsel had provided preliminary notice of the total amount they would seek in fees, they had not provided class members with "an adequate opportunity to object to the motion itself because, by the time they were served with the motion, the time within which they were required to file their objections had already expired." *Id.* at 994.

Citing *In re Mercury,* Objectors argue that class counsel here failed to provide adequate notice of their attorneys' fee petition to class members under Rule 23(h). [13] *See In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d at 993–94 ("The plain text of [Rule 23(h) ] requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely the preliminary notice that such a motion will be filed."). Objectors argue that by stating in the email and mail notices only that class counsel would seek attorneys' fees in the amount of 25% of the common fund, class counsel did not provide the "[n]otice of the motion" required by Rule 23(h).

The district court did not abuse its discretion in its approval of the attorneys' fees request. Here, the notice e-mailed and mailed to class members informed them that class counsel would be seeking fees in the amount of 25% of the total settlement fund of $27,250,000. The notice also gave class members a clear deadline of Feb. 14, 2012 for filing an objection. The district court set the deadline for filing a fee motion fifteen days before the deadline for filing an objection. Indeed, the motion was filed on January 30, 2012, and the objection deadline was February 14, 2012. This schedule satisfies the requirements of *In re Mercury.*

### D

**[24]** The district court provided an adequate explanation of its rationale. In *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047–50 (9th Cir.2002), we listed several factors courts may consider in assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method. These factors include the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis. [14] *See id.* at 1048–50 (internal quotation marks omitted). In addition, a court may cross-check its percentage-of-recovery figure against a lodestar calculation. *Id.* at 1050.

**\*15** **[25]** Sullivan argues the district court failed to adequately explain its attorneys' fee award, and that the case should be remanded for the court to apply the list of six factors he gleaned from *Craft v. County of San Bernardino,* 624 F.Supp.2d 1113, 1116–17 (C.D.Cal.2008). [15] While there are no doubt many factors that a court could apply in assessing an attorneys' fees award and while *Vizcaino* does not purport to establish an exhaustive list, we conclude the district court did not abuse its discretion in its analysis, explanation, and approval of class counsels' request for attorneys' fees.

First, class counsel requested, and the court awarded, the 25% benchmark award only. While the benchmark is not per se valid, it is a helpful "starting point." *Vizcaino,* 290 F.3d at 1048. Second, the court did compare the benchmark to the summary lodestar numbers provided by class counsel and concluded those lodestar estimates were three times the benchmark. The district judge noted that while she frequently reduces a lodestar request, she has never reduced one by half. Thus, where, as here, the lodestar amount was *three times* the benchmark, it was not an abuse of discretion for the district court to accept the benchmark using a quick cross-check of class counsel's lodestar summary figures. Third, the judge did provide a reasoned explanation for her decision to approve the fee request, both in her order and in an oral ruling. The judge addressed many of Objectors' arguments, summarized her

Case 2:13-ml-02424-GW-FFM   Document 434-1   Filed 03/18/15   Page 18 of 19   Page ID #:10012

In re Online DVD-Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

lodestar cross-check, and, applying a number of the *Vizcaino* factors, correctly noted that class counsel risked great time and effort and advanced significant costs on behalf of the class action. Thus, the court did not abuse its discretion in the explanation of its decision to approve the attorneys' fees award.[16]

## V

In sum, we affirm the district court's decision to approve the settlement between the class of Netflix subscribers and Walmart, to certify the settlement class, and to grant class counsels' motion for attorneys' fees.

**AFFIRMED.**

**Parallel Citations**

15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

## Footnotes

*     The Honorable Lloyd D. George, Senior District Judge for the U.S. District Court for the District of Nevada, sitting by designation.
1     For ease of reference, "Wal–Mart Stores, Inc." and "walmart.com USA LLC" shall be collectively referred to as "Walmart" throughout this opinion.
2     Netflix had alleged that Plaintiffs' lead counsel, Robert G. Abrams, had a conflict of interest because he had moved to a new firm, Baker & Hostetler, LLP, that represents Walmart on other, unrelated matters.
3     The court chose an ending date for the class (i.e., a person who subscribes to Netflix after the ending date is not a class member) of September 2, 2011.
4     Prior to final approval of the Walmart settlement, but after preliminary approval and after the initial notice was e-mailed to class members, the court granted Netflix's motion for summary judgment on November 23, 2011. The settlement website was updated to reflect the court's decision to grant Netflix's summary judgment motion. The version of the notice that was subsequently mailed to class members who did not receive an email was also updated.
5     Incorporating Frank's arguments regarding the attorneys' fees in this case, Cox also claims class counsel "over-inflated their own fee award at the expense of unnamed class members," thereby creating a conflict of interest that bars certification. Because we reject Frank's arguments that the attorneys' fees in this case are unreasonable or over-inflated, *infra,* we also reject Cox's arguments that their fee request presents a conflict of interest.
6     Settlements in which the settlement agreement is negotiated *prior* to formal class certification require "an even higher level of scrutiny." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 946. Here, the court gave preliminary certification of the *settlement class* after the settlement agreement had been reached, and final approval did not occur until the court's March 29, 2012 order. Unlike in *In re Bluetooth,* however, the court did certify a Netflix litigation class in the action against both Netflix and Walmart before a settlement was reached. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 939 (noting that "before any motion was made to certify a class for merits purposes," the parties reached a settlement agreement); *see also* William B. Rubenstein, *Newberg on Class Actions* § 11:27 (4th ed. 2002) ("The Manual [of Complex Litigation] also notes that approval under Rule 23(e) of settlements involving settlement classes, however, requires closer judicial scrutiny than approval of settlements where class certification has been litigated."). The litigation and settlement classes in this case are substantially the same. Thus, since the district court did not apply any heightened scrutiny, and since the parties have not raised this issue on appeal, we assume, without deciding, that the heightened scrutiny in *In re Bluetooth* does not apply here. *See Rodriguez,* 563 F.3d at 963–64 (applying the eight *Churchill* factors, but not heightened scrutiny, in a case in which settlement negotiations came after certification of a litigation class but before certification of a settlement class).
7     Class counsel argues Cox waived this argument by not raising it below. Since the district court did rule on it, however, we consider it on appeal. *United States v. Northrop Corp.,* 59 F.3d 953, 957 n. 2 (9th Cir.1995).
8     Frank argues that the issue of whether CAFA applies to the gift card portion of the settlement is an issue of statutory interpretation that should be reviewed de novo. *Bush v. Cheaptickets, Inc.,* 425 F.3d 683, 686 (9th Cir.2005) ("As we consider CAFA's requirements, we may review the construction, interpretation, or applicability of a statute de novo."). Even under de novo review, we hold that CAFA does not apply.
9     Frank attempts to distinguish Reibstein from this case by arguing the gift cards in Reibsten, unlike in this case, " 'have actual cash value' and 'are freely transferrable.' " However, the Reibstein gift cards are not significantly different than in this case. The Reibstein court clarifies, elsewhere in the decision, that the Rite Aid gift cards are " 'not redeemable for cash' " and simply that they are "freely

Case 2:13-ml-02424-GW-FFM   Document 434-1   Filed 03/18/15   Page 19 of 19   Page ID #:10013

In re Online DVD Rental Antitrust Litigation, --- F.3d ---- (2015)
15 Cal. Daily Op. Serv. 1987, 2015 Daily Journal D.A.R. 2322

transferrable." *Reibstein,* 761 F.Supp.2d at 246. Similarly, the gift cards in this settlement agreement are "fully transferrable," though they cannot be resold. Both appear to be equally freely transferrable and, to the extent they have cash value, it is because they are equal to a certain dollar amount and can be spent on a variety of useful goods.

10  Because we reject Objectors' argument that this settlement should fall under CAFA, we also reject Objectors' argument that the case should be remanded for the district court to analyze the settlement itself under the heightened scrutiny required by CAFA.

11  Pointing to empirical studies, Zimmerman also argues gift cards are generally not worth their face value. He raises this point, however, in the context of arguing the gift cards in this case are coupons. Since we have held that CAFA does not apply to this settlement, we need not consider this argument. Nevertheless, courts still have an obligation to review a settlement carefully, whether CAFA applies or not. Fed.R.Civ.P. 23(e)(2). Indeed, some district courts have valued gift cards, in settlements, at less than their dollar value. *Fernandez,* 2008 WL 8150856 at *10–11 (valuing Victoria's Secret gift cards at 85% of their face value and thus valuing the $10 million gift card settlement fund at $8.5 million "for [the] purposes of evaluating counsel's fee request"). Even if we construed Zimmerman's argument to mean he seeks a remand regardless of whether CAFA applies, we still would conclude the court did not abuse its discretion in valuing the Walmart gift cards at 100% of their face value. Although the court did not explicitly consider on the record whether the gift cards might be worth less than face value, the court did note that the "vast majority" of class members elected to obtain gift cards, concluding this settlement was similar to an all-cash settlement. Moreover, unlike the gift cards in *Fernandez* or the vouchers in *Young,* these gift cards provide class members with the ability to purchase a wide variety of items. Thus, the court was within its discretion to value the gift cards at 100% of their face value.

12  Sullivan briefly argues that some of the litigation expenses are not properly reimbursable, because they relate to the related litigation against Netflix. We disagree and hold that the district court did not abuse its discretion in approving class counsel's request for $1.7 million in litigation expenses. The court oversaw both the Walmart settlement and the litigation against Netflix and interacted with attorneys on both sides. It was within its discretion to accept class counsels' contentions that the expenses requested were "only approximately half the expenditures by Class Counsel" on the litigation and that certain experts were needed in the Walmart litigation to help push the company toward settlement.

13  Sullivan contends that because class counsels' notice regarding the settlement, including the notice of the attorneys' fee request, violates due process, the court should review the issue de novo. *See Torrisi,* 8 F.3d at 1374 ("We review de novo whether notice of a proposed settlement satisfies due process."). Sullivan's argument, however, focuses on whether the notice of the attorneys' fees request violates Rule 23(h). Thus, we review this argument for abuse of discretion. *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d at 993 (reviewing a challenge under Rule 23(h) to notice of an attorneys' fee motion under the abuse of discretion standard).

14  Although the Supreme Court in *City of Burlington v. Dague,* 505 U.S. 557, 566, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) rejected using a case's contingency status for "the determination of a reasonable fee," it did so in the context of using a lodestar method to calculate the fee. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 942 n. 7 (noting, in a discussion of the lodestar calculation method, that the Supreme Court had rejected the "contingency" factor that this court established in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975)). Thus, the *Vizcaino* court, in analyzing a percentage-of-recovery fee request, appropriately noted that class counsel had litigated the action on contingency for eleven years. *Vizcaino,* 290 F.3d at 1050.

15  In addition to arguing for remand, Sullivan also argues that "six 'special circumstances' justify (and mandate) an award of less than the 'benchmark' " in this case. These special circumstances include undisclosed conflicts of interest on the part of class counsel, the lack of risk and low level of skill needed to litigate the Netflix and Walmart cases, and the "partial" nature of the settlement. Because it appears these "circumstances" are what Sullivan believes the district court should properly apply on remand to reduce the attorneys' fees award, and because we hold that the district court did not abuse its discretion in approving the fee award or in its explanation of that decision, we do not address each of these "special circumstances" individually.

16  Cope and Bandas also argue that the district court failed to properly respond to their argument that class counsels' fee petition was substantively insufficient. We conclude, however, that the district court did provide a reasoned explanation. Moreover, Cope and Bandas's citation to *In re Bluetooth,* which involves a lodestar fee request, does not support its contention that class counsel's fee motion was insufficiently detailed.

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.