*<u>In re Hyundai and Kia Fuel Economy Litigation</u>*, Case No. 13-ML-2424-GW-FFM
Partial Tentative Rulings on Motions for Attorneys' Fees

[Introduction, background and legal standard sections omitted]

### III. <u>Analysis</u>

There have been six separate motions for attorneys' fees filed in this multidistrict litigation. Because this case involves a settlement that is not strictly a common fund settlement, and the Defendants will pay attorneys' fees separately from the amount allocated to those covered by the class, the logical method to use in evaluating the requests is the lodestar method. Indeed, all motions presently before the Court, excepting one, justify their requests using solely the lodestar method. The Court will consider each motion in turn.

#### A. **Plaintiff Kathleen Wilson's Motion for Attorneys' Fees and Costs**

Kathleen Wilson's case was one of the original twelve the JPML consolidated in the present MDL. Lewis G. Adler and Paul DePetris, counsel for Plaintiff Kathleen Wilson, seek approval of a fee of $78,964.00, inclusive of costs incurred in the amount of $229. The two attorneys representing these plaintiffs billed at $300 per hour and $250 per hour, respectively, and expended a total of 284 hours litigating this case. Counsel compares these billing rates with those used by Community Legal Services of Philadelphia for those with similar years of experience. Community Legal Services would use a lodestar rate of approximately $600-650 for Mr. Adler, who has more than 25 years of experience, and $435-505 for Mr. Lewis, who has 16-20 years of experience. *See* Exh. 3 to Motion for Attorneys' Fees, Docket No. 369-5.

The rates counsel requests the Court use are lower than the comparable Community Legal Services rates counsel has presented as a guideline. Furthermore, the rates are lower than or comparable to the lodestar rates that other counsel in this same MDL are requesting. *See* discussion, *infra*. Counsel have also attached *detailed* billing sheets that show the number of hours and type of work counsel did in this case, which the Court has reviewed and found reasonable. The Court would note, however, that other Non-Settling Plaintiffs have agreed to awards that include up to 80% reductions in the lodestar amount, whereas here it appears that Wilson's counsel has requested the full lodestar amount. However, given that this motion for attorneys' fees and costs was filed without objection from Defendants, the Court would find that the fees requested are presumptively reasonable, and would grant counsel for Kathleen Wilson's

motion for attorneys' fees and costs.

### B. *Bird*, *Krauth*, and *Hasper* Plaintiffs' Motion for Attorneys' Fees and Costs

Consumer Watchdog and its co-counsel (collectively, the "Consumer Watchdog Counsel") in the *Bird*, *Krauth* and *Hasper* actions move for the Court to approve a grant of attorneys' fees in the amount of $2,789,522.50 as well as $31,329.97 in litigation costs. They also move for incentive payments to the named plaintiffs in the *Bird*, *Krauth*, and *Hasper* actions. Although the plaintiffs in these actions were among the Non-Settling Plaintiffs who objected to the class settlement, Consumer Watchdog justifies its request by detailing the investigatory work it conducted in filing and pursuing these three actions and by arguing that its actions contributed to shaping the settlement. Consumer Watchdog emphasizes the research it conducted and the objections it made regarding the proposed class settlement, which it argues resulted in substantial improvement of the proposed settlement and the accompanying documents. Docket No. 371-1, at 9:1-10:13.

As an initial matter, the Court notes, as do Defendants in their Opposition, that Consumer Watchdog counsel's requested lodestar amount is approximately the same as the $2.7 million in attorneys' fees requested by one of the co-class counsel in this litigation (*i.e.* Hagens Berman Sobol Shapiro LLP in the *Brady* and *Hunter* cases). In contrast with co-class counsel, Consumer Watchdog Counsel did not participate in settlement discussions and did not represent the primary plaintiffs in this MDL. Further, Consumer Watchdog's requested amount is more than twice the figure agreed to by liaison counsel (*i.e.* Girard Gibbs) whose work contributed myriad times more to the efficient and successful litigation/settlement efforts in this case.

Consumer Watchdog states that they devoted 2,778.2 hours to pursuing this litigation, which, according to their proposed lodestar rates, would result in a lodestar value of $1,488.697.50. Exh. B to Declaration of Laura Antonini, Docket No. 371-2. The listed rates of the three Consumer Watchdog attorneys are $925/hour, $650/hour, and $350/hour. *Id.* The Court finds the $925 amount proposed for Mr. Rosenfeld especially exorbitant in the context of the actual work that Consumer Watchdog did in this case. Additionally, Consumer Watchdog has not submitted detailed billing records with its request, citing attorney-client privilege and attorney work product. Instead, it relies on summaries of the tasks that it completed with respect to this litigation without accompanying hours estimates. *See* Declaration of Laura Antonini, Docket No. 371-2, ¶ 10. Other firms that Consumer Watchdog engaged to assist in its litigation

efforts charge similarly high billing rates at, for example, over $700/hour. The motion and attached declarations and exhibits do not include any numerical comparison of these rates with those typically charged by similarly situated attorneys, and the Court does not believe these rates are justified when comparing the type and complexity of work that Consumer Watchdog counsel engaged in with the work that co-class counsel and liaison counsel did.

The Ninth Circuit has held that under certain circumstances, attorneys for objectors may be entitled to attorneys' fees. *See Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir.2012). Courts have discretion to award objectors expenses and incentive awards when the objections result in a benefit conferred to the class. *See, e,g.*, *In re Apple Inc. Sec. Litig.*, No. 5:06–cv–5208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011) (granting an incentive award to fairly compensate objector's counsel). However, "[i]n the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they are not entitled to fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). Courts may reduce a requested fee award, or deny one altogether, where a fee request appears unreasonably inflated. *Jadwin v. Cnty. of Kern*, 767 F.Supp.2d 1069, 1100 (E.D. Cal. 2011). Furthermore, it is not error "to deny fees to objectors whose work is duplicative, or who merely echo each other's arguments and confer no unique benefit to the class." *Rodriguez*, 688 F.3d at 658-59.

Defendants oppose Consumer Watchdog counsel's request. The Court agrees with many of the issues raised in Defendants' objection, in particular the arguments regarding the actual contribution Consumer Watchdog Counsel made in terms of improving the settlement agreement. The Court notes that counsel objected at all times to the settlement and did not participate in settlement discussions. The main objection Consumer Watchdog made that the Court took as well-made was the addition of a web-based claims system; however, as Defendants point out, this objection was primarily made by liaison counsel. Furthermore, it was the *Espinosa* action, rather than the *Bird* action, which served as the initial catalyst for recovery in the MDL. It is also unclear why Consumer Watchdog required the assistance of four additional law firms in order to pursue its claims in these actions. This, coupled with the fact that detailed billing statements were not submitted to the Court for either Consumer Watchdog itself or any of the firms it engaged, weighs heavily against finding that the requested amount is reasonable. Though the Court could choose to deny Consumer Watchdog Counsel any attorneys' fees, it would award some fees but nowhere near the amounts that it requests, or even fees resembling

the amount the Court will approve for Liaison Counsel, *infra*.  Drafting discovery requests and making objections that were often superfluous or not well-taken does not merit the thousands of hours of work that Consumer Watchdog Counsel claims was expended in this case.  The primary consideration the Court would take into account in evaluating attorneys' fees claims is the benefit obtained for the class.  *In re Bluetooth*, 654 F.3d at 942.  Furthermore, "objectors who do not increase the fund or otherwise substantially benefit the class members are not entitled to fees, even if they bring about minor procedural changes in the settlement agreement."  *Rodriguez*, 688 F.3d at 658 (internal quotations omitted).  Here, the Court finds some evidence of limited benefits which Consumer Watchdog Counsel's efforts conferred upon the class, but there is virtually no evidence that the thousands of hours of work Consumer Watchdog Counsel allegedly completed was necessary to further the litigation or to adequately represent the class.  The Court would deny Consumer Watchdog Counsel's current fees motion.  It would request additional documentation and new briefing from Consumer Watchdog Counsel on a more reasonable request for attorneys' fees that addresses the Court's concerns and furthermore is in line with the requests from other non-settling plaintiffs' counsel in this case.  As for the request for incentive payments to the named plaintiffs in the *Bird*, *Krauth*, and *Hasper* actions, the Court would grant the request, but only in the amount of $1,250.00.

### C.  *Hunter* and *Brady* Plaintiffs' Motion for Attorneys' Fees and Costs

Co-class counsel who represent the Settling Plaintiffs in the *Hunter* and *Brady* cases (the "*Hunter/Brady* Counsel") filed an unopposed motion for attorneys' fees and costs in the amount of $2,700,000 for attorneys' fees and $250,000 in expenses.  This motion was filed pursuant to an agreement regarding attorneys' fees the *Hunter*/*Brady* Counsel reached with Defendants.  The requested attorneys' fees are based on a total lodestar of $1,909,995, representing 5,512 hours of work thus far.  Counsel estimate that the expected lodestar at the conclusion of this case will be approximately $2,209,000.  Docket No. 374-1, at 13:1-4.  Compared with this lodestar amount, the actual requested amount includes a lodestar multiplier of 1.22.  *Id.* at 13:4-8.

Given the complexity and volume of work that counsel engaged in in order to diligently pursue this case and develop its primary theory of liability, the Court finds that the lodestar amount is reasonable.  Furthermore, the estimated multiplier of 1.22x falls within the acceptable range for class counsel in this complex and multi-year MDL.  Courts in the Ninth Circuit have approved similar multipliers.  *See, e.g.*, *McIntosh v. McAfee, Inc.*, 2009 WL 673976, at *2

(N.D.Cal.2009) (applying a multiplier of 1.2); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (C.D.Cal.2004) (applying multiplier of 1.25). Furthermore, these fees are fair in the context of the amount the class may receive in the settlement.

### D. *Espinosa* Plaintiffs' Motion for Attorneys' Fees and Costs

The other co-class counsel in this case, the *Espinosa* Counsel, have requested attorneys' fees and costs of $6 million, and have also requested service awards for named plaintiffs Lillian Levoff and Thomas Ganim. The rates for *Espinosa* counsel range from $450/hour to $650/hour, and the "blended lodestar" rate is approximately $600/hour. In comparison with co-class counsel, these rates are equal to or lower than the rates suggested by the *Hunter/Brady* Counsel. The number of hours worked, at 3,029.4, is also comparable to that of co-class counsel.

Here, although the Court finds the initial lodestar value *Espinosa* Counsel sets forward reasonable, especially in comparison with the lodestar amount from co-class counsel, it questions why the multiplier *Espinosa* Counsel requests is much higher than the multiplier agreed to by the *Hunter/Brady* Counsel. Although the requested attorneys' fees of $6 million is well within the amount acceptable under a common fund method of calculating fees, under the lodestar method it represents a 3x multiplier, far higher than the 1.22x multiplier *Hunter/Brady* Counsel have requested. The Court acknowledges that *Espinosa* was filed prior to the *Hunter* and *Brady* actions, that it was the first to pursue the fuel efficiency claims, and that the *Espinosa* action was in part a catalyst for the MDL and the settlement. This might merit a greater lodestar multiplier. However, the legal theories in the *Hunter* and *Brady* cases were the primary ones that gave rise to the class settlement. Furthermore, the *Espinosa* Counsel has failed to make a compelling argument for how they were more involved in the actual settlement discussions than the *Hunter/Brady* Counsel. The difference between the $6 million requested by the *Espinosa* Counsel and the $2.7 million requested by the *Hunter/Brady* Counsel, is, simply put, too high – and the Court cannot justify granting such a request. The Court would request that the *Espinosa* Counsel at the hearing further explain why it should be awarded a 3x multiplier when *Hunter/Brady* Counsel only sought a 1.22x multiplier. The Court will, however, grant the request for service awards to the named plaintiffs.

### E. Liaison Counsel and Associated Non-Settling Plaintiffs' Counsel's Joint Motion for Attorneys' Fees and Costs

Girard Gibbs LLP ("Liaison Counsel"), whom the Court designated to be the liaison for

5

the vast majority of Non-Settling Plaintiffs, has requested attorneys' fees in the amount of 1,257,000 and expenses in the amount of $1,005.11.  Other Non-Settling Plaintiffs' counsel who worked with Liaison Counsel,[1] with the exception of one firm, have requested attorneys' fees in amounts ranging from $5,000 to $346,000, and Defendants do not oppose these requests.  As Defendants note, these final numbers represent reductions of 27% to 80% off the firms' proposed lodestar amounts.  Docket No. 399, at 1:5-7.

The Court finds that these requested fees, with the exception of the request of Bonsignore, PLLC, are presumptively reasonable, as they are discounted from the lodestar amounts in percentages that account for the fact that the Non-Settling Plaintiffs had a more minor role in the MDL and did not participate negotiating the primary settlement.  Additionally, the higher amount requested by Liaison Counsel is eminently reasonable given that Liaison Counsel efficiently managed the requests from well over 20 different law firms and effectively represented the interests of Non-Settling Plaintiffs throughout this litigation.  This included actively participating in revisions to the proposed settlement in a manner that addressed many weaknesses in the original proposed settlement.  Finally, the requested amounts were agreed upon after negotiation with Defendants, and Defendants do not oppose the motion for the negotiated fee amounts.  Thus, the Court would grant the motion with respect to Liaison Counsel and the associated Non-Settling Plaintiffs' counsel, with the exception of Bonsignore, PLLC.

The firm of Bonsignore, PLLC ("Bonsignore") requests fees of $357,485, which is the full lodestar amount; this is the sole fee request that Defendants oppose.  The Court finds that Bonsignore has set forward no reason why their firm should receive the full lodestar amount while the other Non-Settling Plaintiffs' counsel would receive a reduced lodestar amount. However, in its Reply, Bonsignore has indicated it would agree to a fee that represents a 25% reduction in its lodestar.  Docket No. 411, at 6-7.  However, Bonsignore has not made a compelling argument for how the firm's efforts benefitted the class as a whole, any more so than counsel for other Non-Settling Plaintiffs.  Counsel for Bonsignore should address this issue at the hearing.

### F.  Virginia Plaintiffs' Motion for Attorneys' Fees and Costs

The Virginia Plaintiffs move for the Court to approve a request for $800,172.79, which

---

[1] "Non-Settling Plaintiffs counsel" is used in this section to refer to only the counsel named in this particular motion and who worked through Liaison Counsel, and does not include counsel for Non-Settling Plaintiffs who chose to work independently of Liaison Counsel.  See Docket No. 399.

includes out-of-pocket expenses totaling $39,822.79.[2] The two attorneys involved allegedly performed 1,459.5 hours of legal work at $350/hour, and 998.1 hours of legal work at $250/hour. Docket No. 393-1, at 1:16-21.

The Court finds that the Virginia Plaintiffs' counsel's work did not meaningfully contribute to the class settlement in this MDL. As Defendants point out, the Virginia actions were not filed until August 2013, long after the settlement in this case had been initially announced. The Virginia Plaintiffs' objections to class certification and to the settlement were mostly meritless, and their appeal of the Court's preliminary approval of the settlement was summarily denied. Furthermore, the Virginia Plaintiffs were among the most vehement objectors to the proposed settlement, but despite this, their objections did not serve to increase the settlement amount or otherwise benefit the class members. Objecting counsel cannot litigate in a manner that indicates that they will totally reject a class settlement while on the other hand attempting to gain attorneys' fees from that same settlement. Other Non-Settling Plaintiffs, who, through Liaison Counsel, worked constructively with Settling Plaintiffs, Defendants, and the Court to improve the terms of the settlement, have requested far less in attorneys' fees. *See* Appendix, Docket No. 378 (setting forward fee requests for Non-Settling Plaintiffs associated with Liaison Counsel). Since the Virginia Plaintiffs' counsel's work was largely duplicitous or without merit, and further did not seem to be directed at conferring benefit to the class, the Court would be disinclined to find that that any request for fees should be granted, much less attorneys' fees and costs totaling $800,000.

---

[2] The "Virginia Plaintiffs" refers to the plaintiffs in: *Gentry, et al. v. Hyundai Motor America*; *Abdurahman, et al. v. Hyundai Motor America*; and *Abdul-Mumit, et al v. Hyundai Motor America*.