QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Joseph R. Ashby (Bar No. 248579)
  josephashby@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

  Karin Kramer (Bar No. 87346)
  karinkramer@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Attorneys for Defendants Hyundai Motor
America and Hyundai Motor Company

DYKEMA GOSSETT PLLC
  James P. Feeney (Bar No. 219045)
  *jfeeney@dykema.com*
  Benjamin W. Jeffers (*pro hac vice*)
  *bjeffers@dykema.com*
  Dommond E. Lonnie (Bar No. 142662)
  *dlonnie@dykema.com*
333 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 487-1800
Facsimile: (213) 487-1850

Attorneys for Defendant Kia Motors
America, Inc.

[LIST OF COUNSEL CONTINUED ON
NEXT PAGE]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| IN RE:  HYUNDAI AND KIA FUEL ECONOMY LITIGATION | CASE NO. 2:13-ML-02424 |
| | **JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |
| | Date:  June 11, 2015<br>Time:  9:30 a.m. |
| | Courtroom:  10, Spring Street<br>Hon. George H. Wu |

HOGAN LOVELLS US LLP
  Dean Hansell (Bar No. 93831)
  dean.hansell@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4665
Facsimile: (310) 785-4601

  Michael L. Kidney (*pro hac vice*)
  michael.kidney@hoganlovells.com
555 Thirteenth St., NW
Washington, DC 20004
Telephone: (202) 637-5883
Facsimile: (202) 637-5910

Attorneys for Defendants Hyundai Motor
America and Hyundai Motor Company

HAGENS BERMAN SOBOL SHAPIRO LLP
  Robert B. Carey (*pro hac vice*)
  *rob@hbsslaw.com*
  John DeStefano (*pro hac vice*)
  *johnd@hbsslaw.com*
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012

Attorneys for Plaintiffs in the *Brady* and *Hunter* Actions

MCCUNEWRIGHT LLP
  Richard D. McCune (Bar No. 132124)
  *rdm@mccunewright.com*
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

Attorneys for Plaintiffs in the *Espinosa* Action

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that, on June 11, 2015, at 9:30 a.m. or as soon

3   thereafter as the matter may be heard, defendant Hyundai Motor America ("HMA")

4   and Kia Motors America, Inc. ("KMA"), and plaintiffs Nicole Hunter, Kaylene

5   Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson,

6   Erin Fanthorpe, Eric Hadesh, Michael Keeth, John Kirk MacDonald, Michael

7   Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Gary Pincas, Brandon Potter,

8   Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory

9   Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, Richard Williams

10  from the *Brady* and *Hunter* actions, and Thomas Ganim and Lillian Levoff from the

11  *Espinosa* action, will and hereby do move the above-entitled Court pursuant to

12  Federal Rule of Civil Procedure 23 for an order granting final approval to the class

13  settlement, certifying the settlement class, and for an order granting incentive

14  awards in the amount of $1,250 to the class representatives from the *Brady* and

15  *Hunter* actions.[1]

16         The motion for an order granting final approval to the class settlement and

17  certifying the settlement class is made on the grounds that (i) the class members

18  have received sufficient notice of the proposed settlement, (ii) certification of the

19  settlement class is appropriate, and (iii) the settlement is fair, reasonable, and

20  adequate.  The motion for an order granting incentive awards in the amount of

21  $1,250 to the class representatives from the *Brady* and *Hunter* actions is made on

22  the basis that such awards are appropriate based on the time and effort expended by

23  those class representatives.

24

25  _____

26      [1]  The request for incentive awards for the *Espinosa* plaintiffs was the subject of

27  a separate filing.  Defendants join for the limited purposes of settlement without
    admitting the substantive allegations.

28

This motion is based upon this Notice of Motion and Motion, the attached Joint Memorandum of Points and Authorities in support thereof, the Settling Plaintiffs' Memorandum of Points and Authorities in support thereof, the Declaration of Sandy Zielomski, the Declaration of Paul King, the Declaration of Linda S. Mullenix, the Supplemental Expert Reports of Dwight J. Duncan, the Declaration of Robert B. Carey, the Declaration of Richard D. McCune, the Declaration of Joseph R. Ashby, all pleadings and papers on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

DATED:  March 30, 2015                QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP

                                      By  /s/ Shon Morgan
                                          Shon Morgan
                                          Attorneys for Defendants Hyundai Motor
                                          America and Hyundai Motor Company


DATED:  March 30, 2015                DYKEMA GOSSETT PLLC

                                      By  /s/ James P. Feeney
                                          James P. Feeney
                                          Attorneys for Defendant Kia Motors
                                          America, Inc.

1    DATED:  March 30, 2015              HAGENS BERMAN SOBOL SHAPIRO LLP

2
                                          By _/s/ Robert B. Carey_____
3                                            Robert B. Carey
                                             Attorneys for Plaintiffs in the *Brady* and
4                                            *Hunter* Actions

5

6

7    DATED:  March 30, 2015              MCCUNEWRIGHT,  LLP

8
                                          By _Richard D. McCune_____
9                                            Richard D. McCune
                                             Attorneys for Plaintiffs in the *Espinosa*
10                                           Action

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................. 1

BACKGROUND ................................................................................ 2

ARGUMENT ..................................................................................... 6

I.    CLASS MEMBERS HAVE RECEIVED SUFFICIENT NOTICE OF THE PROPOSED SETTLEMENT ....................................................... 6

    A.    The Notice Forms Provide Individual Notice To Class Members Targeted To Elicit A Robust Response ........................................ 6

    B.    The Claim Forms Provide A Simple Process For Participation In Or Exclusion From The Settlement ...................................... 9

II.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE ........ 10

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 11

    A.    The Response From Class Members Shows Broad Support For The Settlement ......................................................................... 12

        1.    High Participation Rates In The Claims Process And The Lifetime Reimbursement Program Show Strong Support For The Settlement ....................................................... 12

        2.    Objectors' Complaints Provide No Basis For The Court To Reject The Settlement ....................................................... 13

            (a)    The Settlement Fairly Compensates Class Members ....... 14

            (b)    Class Notice Was Adequate ............................................. 15

            (c)    The Attorneys' Fees Awarded Hagens Berman Are Reasonable ......................................................................... 17

            (d)    A Claims Process Is Appropriate Here ........................... 17

            (e)    Miscellaneous Remaining Objections .............................. 18

    B.    The Scope Of The Release Is Appropriate ............................. 18

IV.    INCENTIVE AWARDS TO THE BRADY AND HUNTER PLAINTIFFS ARE APPROPRIATE ...................................................... 20

CONCLUSION ................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Page</u>**

3

### <u>Cases</u>

4   *Briggs v. United States*,
        2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ..................................................... 11

5

6   *Class Plaintiffs v. City of Seattle*,
        955 F.2d 1268 (9th Cir. 1992) ........................................................................... 19

7   *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ....................................................... 11, 12, 13, 15

8

9   *In re Bluetooth Headset Products Liability Litigation*,
        654 F.3d 935 (9th Cir. 2011) .............................................................................. 17

10  *In re Compact Discount Minimum Advertised Price Antitrust Litigation*,
        370 F. Supp. 2d 320 (D.Me.2005) .................................................................... 13

11

12  *In re NASDAQ Market-Makers Antitrust Litigation*,
        187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................... 19

13  *In re New Motor Vehicles Canadian Export Antitrust Litigation*,
        2011 WL 1398485 (D. Me. April 13, 2011) ..................................................... 13

14

15  *In re Online DVD-Rental Antitrust Litigation*,
        2015 WL 846008 (9th Cir. 2015) ........................................................... 15, 16, 18

16  *In re Toys R Us-Del., Inc.*,
        295 F.R.D. 438 (C.D. Cal. 2014) ....................................................................... 20

17

18  *Lane v. Facebook, Inc.*,
        696 F.3d 811 (9th Cir. 2012) ....................................................................... 15, 16

19  *Moore v. Verizon Commc'n Inc.*,
        2013 WL 4610764 (N.D.Cal. Aug. 28, 2013) .................................................. 13

20

21  *National Rural Telecomms. Cooperative v. DIRECTV, Inc.*,
        221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 11

22  *Petruzzi's, Inc. v. Darling - Delaware Co., Inc.*,
        983 F. Supp. 595 (M.D. Pa. 1996) .................................................................... 12

23

24  *Schaffer v. Litton Loan Servicing, LP*,
        2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ............................................... 20

25  *Shames v. Hertz*,
        2012 WL 5392159 (S.D. Cal. 2012) .................................................................. 18

26

27  *Smith v. CRST Van Expedited, Inc.*,
        2012 WL 5873701 (S.D. Cal. 2012) .................................................................. 19

28

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................. 11, 17

*Stoner v. CBA Information Services*,
  352 F. Supp. 2d 549 (E.D. Pa. 2005) ........................................................ 12

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................................... 20

*Walter v. Hughes Commc'ns, Inc.*,
  2011 WL 2650711 (N.D. Cal. 2011) ......................................................... 13

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ......................................................................... 19

## **Statutes**

28 U.S.C. § 1715 ................................................................................................. 7

Fed. R. Civ. P. 23 ............................................................................................ 6, 7

## **Miscellaneous**

2 *Newberg on Class Actions* §10.14 (3d ed. 1992) ...................................... 13

## **Preliminary Statement**

This motion for final approval is the culmination of a process this Court has overseen since the inception of the MDL.  Following the filing of motions for preliminary approval and certification of a settlement class in December 2013, the defendants, settling plaintiffs, and liaison counsel engaged in a process that simplified and streamlined the claims process.  In addition, the Court undertook a careful and extensive review of the notice and claim documents, which ensured they accurately and understandably conveyed the terms of the settlement to class members.  These efforts resulted in a process leading to multiple forms of notice that reached  the class.  The broad reach of the notice, the ease of the claims process, and the valuable class benefits led to a very substantial number of class members claiming benefits either through defendants' voluntary Lifetime Reimbursement Program, or through the settlement itself.

The notice process readily satisfies the requirements of Rule 23.  It provides for a multifaceted process that included (i) a short-form mailer to class members; (ii) email notification to class members; (iii) a long-form notice; (iv) flyers at dealerships concerning the proposed settlement; and (v) a website providing comprehensive settlement information.  The efficacy of this notice process was validated by the substantial response rate by class members to date.  The efficacy of the notice process has been further validated by Professor Linda Mullenix, a recognized expert in class action procedures and settlements, who concluded that "the combined voluntary LRP programs and the litigation agreement evidence a robust participation rate."

The other requirements for final approval of the class settlement and certification of a settlement class are also satisfied.  The preliminary approval of the settlement and preliminary certification of a settlement class were extensively briefed, with the Court considering multiple opposing views.  As explained in

settling plaintiffs' separate memorandum in support of final approval, the settlement is fair, reasonable, and adequate.

Finally, the parties agree that incentive awards in the amount of $1,250 to the class representatives in the *Brady* and *Hunter* actions are appropriate based on their level of participation and effort in this litigation.

## Background

**The MDL Litigation.**  On November 2, 2012, defendants announced adjustments to the EPA MPG estimates for certain Hyundai and Kia vehicles. (HMA press release (Declaration of Joseph R. Ashby, Exh. 1)).  At the same time, defendants voluntarily initiated a Lifetime Reimbursement Program to compensate owners and lessees for fuel costs associated with the ratings adjustments. (Defendants' reimbursement program webpages (*id*., Exhs. 2, 3)).  The voluntary program also provided consumers with a 15 percent premium to compensate them for any inconvenience.  (*Id*.)

Before the November 2, 2012 announcement, plaintiffs in *Espinosa* (filed in January 2012) and *Gordon* had filed suit alleging claims of false advertising in connection with the fuel economy of certain class vehicles.  Following the November 2 announcement, 51 putative class actions and two mass actions were filed related to the ratings adjustments.  (*Id*., ¶¶ 6-7).  The cases generally alleged that defendants misstated the EPA estimates in the vehicles that were the subject of the November 2 announcement, and sought compensation for owners and lessees of those vehicles.  (*See*, *e.g.*, *Brady* Complaint, ¶¶ 1-5 (*id*., Exh. 4)).

The Judicial Panel on Multidistrict Litigation consolidated these cases, including the two earlier-filed cases (*Espinosa* and *Gordon*), in this MDL as of February 5, 2013.  (Feb. 5, 2013 JPML Master Transfer Order (Dkt. No. 1)). Following multiple mediation sessions, with the assistance of the Honorable Stephen J. Sundvold (Ret.), defendants and plaintiffs from the cases known as *Brady*, *Hunter*, and *Espinosa* (collectively, the "Settling Parties") reached a

settlement-in-principle.  (Carey Decl., ¶ 9 (Dkt. No. 185-3 at 6-7); McCune Decl., ¶ 17 (Dkt. No. 185-4 at 6)).  After the Settling Parties informed the Court of the settlement-in-principle, the parties began confirmatory discovery to confirm the reasonableness of the proposed settlement, a process closely overseen by the Court.  (Ashby Decl., ¶¶ 8-11).

The confirmatory discovery process began on April 18, 2013 and continued for eight months.  Defendants disclosed the material terms of the settlement and provided materials from the mediations to plaintiffs' counsel who had not participated in the settlement ("non-settling plaintiffs") and who signed a confidentiality agreement.  (*Id*., ¶ 8).  The ensuing confirmatory discovery included, *inter alia*, (i) production of more than 300,000 pages of documents by defendants; (ii) 11 under-oath, deposition-style interviews of key employees; and (iii) privilege logs for interviewees' documents and data.  (*Id*., ¶¶ 9-11).

The confirmatory discovery process was the product of active negotiation among the parties.  Many counsel participated in the interviews, both in the United States and South Korea, and had full opportunity to explore issues they deemed important.  (*Id*., ¶ 10).  The interviews were rescheduled several times to ensure that plaintiffs had the documents they wanted and adequate opportunity to review them before the interviews began.  (*Id*.).  The Court presided over a robust discovery motion practice.

On December 23, 2013, after confirmatory discovery had concluded, the *Brady*, *Hunter* and *Espinosa* plaintiffs filed a motion for preliminary approval of the proposed settlement.  (Mem. in Supp. of Mot. for Prelim. Approval (Dkt. No. 185-1)).  The Court considered the matter over an eight month period, during which it ordered multiple rounds of briefing concerning the fairness of the settlement terms and the sufficiency of the class notice and claims process, heard oral argument, and addressed multiple issues raised by various parties, including among them several issues raised by the Virginia plaintiffs represented by the *Gentry, Abdurahman,* and

*Abdul-Mumit* matters.  (*See*, *e.g*., June 26, 2014 Min. Order (Dkt. No. 268); July 24, 2014 Min. Order (Dkt. No. 293); Sept. 29, 2014 Min. Order (Dkt. No. 334)). During this period, the Settling Parties filed two addenda to the proposed settlement and an amended settlement agreement.  (Addendum to Settlement Agreement (Dkt. No. 206-1); Second Addendum to Settlement Agreement (Dkt. No. 226-1); Amended Settlement Agreement (Dkt. No. 354-1)).  On August 29, 2014, the Court granted preliminary approval of the proposed settlement and notice process.  (Aug. 29, 2014 Order (Dkt. No. 319)).

**The Settlement.**  The settlement provides for certification of a nationwide Settlement Class, consisting of all current and former owners and lessees of a "Class Vehicle" who owned or leased their vehicle on or before November 2, 2012. (Amended Settlement Agreement, § 1.5 (Dkt. No. 354-1)).  The Class Vehicles are listed in Exhibit A to the proposed settlement.[2]  (*Id*., Exh. A).

The proposed settlement offers consumers a choice among several forms of compensation.  A lump-sum cash payment is offered to class members in the form of a debit card.  (*Id*., §§ 3.1, 3.2.).  Class members may choose to receive the lump sum payment itself, or one of two alternative forms of compensation in greater amounts:  a dealer service credit at 150% of the lump sum or a new car purchase

---

[2]   The 2012 Kia Soul Eco 1.6L was one of the Kia vehicles with an adjusted EPA MPG estimate and it was listed on the schedule of class vehicles attached to the Settlement Agreement.  During settlement negotiations, however, KMA understood there to be no such vehicles owned by potential class members.  Since then, KMA has learned that four 2012 Kia Soul Eco 1.6L vehicles were sold at auction prior to November 2, 2012.  Owners of these four vehicles may be eligible for compensation as current non-original owners.  Using the same methodology used to calculate compensation for the other vehicles that are part of the settlement, a current non-original owner of a 2012 Kia Soul Eco 1.6L is entitled to a lump-sum debit card amount of $460 (before deducting amounts received under the lifetime reimbursement program).  KMA provided notice to these vehicle owners at the same time, and on the same terms, as other class members.

credit at 200% of the lump sum. (*Id.*). Each is described below. Although it is not a formal term of the settlement, class members may also elect to remain in or register for the Lifetime Reimbursement Program, in recognition of the fact that some class members (such as high-mileage drivers) may realize the greatest benefits through that program. Defendants have extended the registration deadline for the Lifetime Reimbursement Program from December 31, 2013 to the end of the settlement claims period.

The lump-sum payment amount will be in the form of a cash debit card that may be used like a credit card or used at an ATM. (*Id.*, § 3.2.1). No issuer fees will be imposed on class members. The entire balance of the debit card can be deposited to a checking or other bank account. (*Id.*). The dealer service credit compensation will be in the form of a debit card valued at 150% of the lump sum amount to which the class member would be entitled. (*Id.* § 3.2.2.). No issuer fees will be imposed on class members, and the service credit may be used at an authorized Hyundai or Kia dealer towards any merchandise, parts, or service. (*Id.*).

The new car rebate certificate will be in the form of a certificate valued at 200% of the lump sum amount to which the class member would be entitled. (*Id.* § 3.2.3.). No issuer fees will be imposed on class members, and the new car rebate may be used toward the purchase of a new Hyundai or Kia vehicle. (*Id.*).

Any current original owner, current lessee, or current fleet owner of an Elantra, Accent, Veloster, or Sonata Hybrid Class Vehicle who remains in the Lifetime Reimbursement Program is eligible to receive the following additional compensation: (i) $100 for a current original owner; or (ii) $50 for a current lessee or current fleet owner. Like the other compensation under the settlement, this compensation will be in the form of a debit card, and class members may elect to receive it in the form of a dealer service credit or new car rebate certificate worth 150% or 200% of the additional compensation amount, respectively. (*Id.* §§ 3.1.8, 3.2.).

1

## **Argument**

2
### **I.    CLASS MEMBERS HAVE RECEIVED SUFFICIENT NOTICE OF THE PROPOSED SETTLEMENT**

3

4
An extensive effort was undertaken to make sure that the notice of the

5
proposed settlement sent to class members was more than adequate.  The Court and

6
the parties spent considerable time on the notice program, leading to an end-result

7
that included a number of refinements to the original proposal.

8
Notice is multi-faceted.  It includes:  (i) a short-form mailer to class members;

9
(ii) email notification to class members; (iii) a long-form notice; (iv) flyers at

10
dealerships concerning the proposed settlement; and (v) a website providing

11
comprehensive settlement information.  This notice apparatus easily satisfies the

12
requirements of Rule 23; its adequacy has been validated by the substantial response

13
rate by class members to date.  The multi-faceted notice program "complied with the

14
procedural and substantive requirements for an adequate notice program."

15
(Declaration of Linda S. Mullenix, ¶ 41).

16
### **A.    The Notice Forms Provide Individual Notice To Class Members Targeted To Elicit A Robust Response**

17
Rule 23 requires that class members be given reasonable notice of a proposed

18
settlement, "including individual notice to all members who can be identified

19
through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1).  The notice must

20
state "clearly and concisely . . . in plain, easily understood language" the following:

21
the nature of the action; the definition of the class; the class claims, issues, or

22
defenses; that class members may appear through counsel; that class members may

23
exclude themselves; and the binding effect of a class judgment on class members.

24

25

26

27

28

Case No. 2:13-ML-02424
JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

Fed. R. Civ. P. 23(c)(2)(B).[3]  The notice forms sent to class members here fulfill each of these requirements.

**Short-Form Mailer.**  Class members were mailed short-form notices stating they are likely entitled to significant compensation under the proposed settlement. (HMA short-form mailer (Dkt. No. 342-2); KMA short-form mailer (Dkt. No. 342-5); Declaration of Sandy Zielomski ("Zielomski Decl."), ¶ 4; Declaration of Paul King ("King Decl."), ¶ 4).  The Hyundai mailer states that the "potential average maximum settlement benefit for those who elect a lump sum cash payment is $353." (Dkt. No. 342-2 at 2).  Similarly, the Kia mailer states that the "potential average maximum settlement benefit for those who elect a lump sum cash payment is $667." (Dkt. No. 342-5 at 2).  The mailer also provides each class member with a unique class member ID number, describes the nature of the underlying litigation, directs class members to the settlement website, provides a phone number and addresses where additional information can be obtained, and states the deadlines for exclusion from or objection to the settlement and for submission of claims.  (Dkt. No. 342-2 at 2; Dkt. No. 342-5 at 2).[4]

**Email Notification.**  Class members also have been sent email notification of the proposed settlement.  (Email notice (Dkt. No. 271-2); Zielomski Decl., ¶ 4; King Decl., ¶ 4).  The email notification provides class members with their unique class member ID number and informs class members of the types of compensation

---

[3]   28 U.S.C. § 1715(b) also provides that notice of a proposed settlement must be "serve[d] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official."  Defendants provided this required notice on January 2, 2014.  (Declaration of Alan Vasquez, ¶¶ 2-4 (Dkt. No. 257 at 3-4)).

[4]   Defendants have spent significant resources in connection with sending the short-form mailer to class members.  (*See* Zielomski Decl., ¶ 4; King Decl., ¶ 4).

available under the proposed settlement, as well as other information concerning the settlement and claims process.  (Dkt. No. 271-2 at 2-3.)

**Long-Form Notice.**  There is also a long-form notice available for class members on the respective settlement websites.  Class members are directed to this notice by the short-form mailer and email notification.  (HMA short-form mailer (Dkt. No. 342-2); KMA short-form mailer (Dkt. No. 342-5); Email notice (Dkt. No. 271-2)).  The long-form notice provides class members with details regarding the proposed settlement and claims process, including information concerning the voluntary Lifetime Reimbursement Program, settlement benefits, participation in the settlement, exclusion from the settlement, objecting to the settlement, maximum amount of attorney fees sought by Class Counsel, and entitlement to representation by counsel.  (HMA long-form notice (Dkt. No. 342-1); KMA long-form notice (Dkt No. 342-4)).  The notice also provides a phone number and email address at which class members can obtain additional information.  (*Id*.).

**Dealer Flyers.**  To provide yet a further opportunity for notice, authorized Hyundai and Kia dealerships have been provided with flyers to hand out to interested consumers.  (*See* Amended Settlement Agreement, Exh. E (Dkt. No. 354-1 at 58-59)).  The flyers describe the proposed settlement and provide the URL for the settlement website, where comprehensive information regarding the settlement can be found.  (*Id*.).

**Settlement Website.**  Each of the notice documents directs class members to the Hyundai or Kia settlement website, which are located at https://www.hyundaimpgclasssettlement.com and https://www.kiampgclasssettlement.com.  The settlement website contains:  (i) an online claim submission platform; (ii) the long-form class notice; (iii) status updates on the litigation; (iv) answers to frequently asked questions; (v) a hard copy claim form; (vi) the settlement agreement; and (vii) a mileage reimbursement program estimator.

**B.**   **The Claim Forms Provide A Simple Process For Participation In Or Exclusion From The Settlement**

The claim form enables class members to submit claims—via email, fax, or mail—by completing the following simple steps:  (i) identification of vehicle model; (ii) identification of ownership or leasing status; (iii) choosing lump sum payment or voluntary Lifetime Reimbursement Program; (iv) selecting type of lump sum payment; (v) indicating qualification for additional compensation; (vi) providing personal and vehicle information; and (vii) signing the form.[5]  (HMA claim form (Dkt. No. 342-3); KMA claim form (Dkt. No. 342-6)).  The settlement website also provides an online claim submission platform, where class members can submit claims by following the above steps.[6]  To simplify the process even further, the name, address, and vehicle model fields are pre-populated in the online platform once a unique class member ID number and a VIN number are entered.

Requesting exclusion from the settlement or objecting to it is also simple.  To request exclusion, class members need only send a letter to class counsel stating their request, along with basic personal and vehicle information.  (HMA long-form notice at 14 (Dkt. No. 342-1); KMA long-form notice at 13 (Dkt. No. 342-4).  To object, class members need only send a letter to liaison counsel stating the reasons for objection, along with basic personal and vehicle information.  (Dkt. No. 342-1 at 15-16; Dkt. No. 342-4 at 15).

———————————————

[5]   Certain class members are also required to submit validating documents for security and verification purposes.  For instance, class members:  (i) lacking their unique class member ID number must provide proof of ownership or lease; (ii) with a new address not previously on file must provide proof of address; (iii) who are former owners or lessees must provide proof of mileage at purchase and sale; and (iv) asserting entitlement to additional compensation must provide proof of qualification.  (HMA claim form at 9 (Dkt. No. 342-3); KMA claim form at 9 (Dkt. No. 342-6).

[6]   *See* https://www.hyundaimpgclasssettlement.com/claim.

## II.   CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

In conjunction with their motion for preliminary approval, on December 23, 2013, the Settling Plaintiffs moved to certify the class for settlement purposes only. (*See* Mem. in Supp. of Mot. for Certification of Settlement Class (Dkt. No. 184-1)). The class consisted of "[a]ll current and former owners and lessees of a Class Vehicle . . . who were the owner or lessee, on or before November 2, 2012, of such Class Vehicle that was registered in the District of Columbia or one of the fifty (50) states of the United States."[7]  (*Id.* at 1).  Defendants joined in the motion for settlement purposes only, without otherwise agreeing that the requirements of Rule 23 had been met.

The Court granted the motion in August 2014, and in doing so, rejected the issues raised by the *Gentry* plaintiffs, the only group to object to certification.  (*See* Aug. 29, 2014 Order Granting Prelim. Approval and Certifying Settlement Class (Dkt. No. 319)).  The *Gentry* plaintiffs had argued that not all of the Rule 23 requirements had been satisfied for class certification, certification violated principles of federalism and the Class Action Fairness Act, and Virginia law should govern the Virginia claims.  (*See generally* Mem. in Opp'n to Certification of Proposed Settlement Class (Dkt. No. 229); Supp. Objections to Proposed Nationwide Settlement (Dkt. No. 276)).  After reviewing briefing on these issues, the Court rejected all of these arguments, concluding the proposed Settlement Class

---

[7]   The Agreement expressly excluded from the Class:  (1) Rental Fleet Owners; (2) government entities, except to the extent that a government entity is the owner or lessee of a Fleet Class Vehicle (in which case such government entity is not excluded from the Class); (3) judges assigned to the MDL Litigation, including the judge or judges assigned to any lawsuit prior to the transfer of that lawsuit to the MDL Litigation; and (4) persons who have previously executed a release of HMA or KMA that includes a claim concerning the fuel economy of such Class Vehicle.  ( Aug. 29, 2014 Order Granting Prelim. Approval of Class Settlement and Certifying Settlement Class at 1-2 (Dkt. No. 319)).

met the requirements for class certification in the settlement context.  (*See* June 26,
2014 Min. Order (Dkt. No. 267); July 24, 2014 Min. Order (Dkt. No. 290); Aug. 21,
2014 Min. Order (Dkt. No. 317)).  The Ninth Circuit subsequently denied the
*Gentry's* plaintiffs' petition for permission to appeal the Court's class certification
order.  (Nov. 13, 2014 Ninth Cir. Order Den. Rule 23(f) Pet. (Dkt. No. 362)).

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Under Federal Rule of Civil Procedure 23(e), the Court must approve all
settlement agreements that will bind absent class members.  *See Briggs v. United
States*, 2010 WL 1759457, at *3 (N.D. Cal. Apr. 30, 2010).  Final approval involves
an assessment of whether the class action settlement, as a whole, is fundamentally
fair, adequate, and reasonable.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV,
Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Staton v. Boeing Co.*, 327 F.3d 938, 952
(9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.
1998)).

The Ninth Circuit has established various factors that guide the determination
of whether the settlement is fair, adequate, and reasonable:  (1) the strength of the
plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further
litigation; (3) the risk of maintaining class action status throughout the trial; (4) the
amount offered in settlement; (5) the extent of discovery completed; (6) the stage of
the proceedings; (7) the experience and views of counsel; and (8) the reaction of the
class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026.  Here, each
factor supports the conclusion that the Settlement is fundamentally fair, adequate,
and reasonable and should be approved.

In addition to the bases set forth in the briefing on preliminary approval of the
class settlement and the Court's decisions on preliminary approval of the class
settlement, and set forth in this memorandum, the fairness, reasonableness, and
adequacy of the settlement is supported by Settling Plaintiffs' Separate
Memorandum in Support of Final Approval.

### A.     The Response From Class Members Shows Broad Support For The Settlement

#### 1.     High Participation Rates In The Claims Process And The Lifetime Reimbursement Program Show Strong Support For The Settlement

The reaction of the class favors final approval of the Settlement. *See Hanlon*, 150 F.3d at 1026.  Prior to notice dispatch, the lifetime reimbursement program participation rate was 63.3% (for HMA) and 50.0% (for KMA).  As of March 26, 2015, 19.4% of the Hyundai class and 23.8% of the Kia class have made claims under the Settlement.  More broadly, 63.7 percent of class members have taken advantage of (and qualified for) one of the compensation options offered to them. 51.8 percent have enrolled in the Lifetime Reimbursement Program; 11.9 percent elected to receive a lump-sum payment, dealer service credit, or new car purchase credit under the Settlement.  Another 4.79% have pending claims.  (*See* Zielomski Decl., Exh. A; King Decl., Exh. A).  Response rates above 50% are "rare" and demonstrate strong enthusiasm for the Settlement among class members.  *See Petruzzi's, Inc. v. Darling Delaware Co., Inc.*, 983 F. Supp. 595, 605 (M.D. Pa. 1996).

Case law and academic literature acknowledge that response rates in consumer class actions are often low, and unequivocally support the conclusion that the response rate here shows strong support for the Settlement.  *See, e.g.*, Mullenix Decl. ¶ 28[8] ("Based on publically available information relating to participation in claims-made settlements, the claim response rate of 18.3% for the Hyundai class and 22.1% for the Kia class currently is well within an expected range of claims participation for such settlements."); *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d

---

[8]   The Declaration of Professor Mullenix relied on the settlement participation reports that had participation data as of February 28, 2015.  However, the declarations of Sandy Zielomski and Paul King provide participation report data as of March 26, 2015.  The data discussed in the brief is as of March 26, 2015.

1  549, 552 (E.D. Pa. 2005) ("Over 16% of 11,980 class members notified have

2  submitted claim forms seeking to participate in the settlement.  Only 18 members

3  have chosen to opt out and only five have filed what could be considered objections

4  to the proposed settlement.  This relatively high response rate indicates a more than

5  favorable class reaction."); *Moore v. Verizon Commc'n Inc.*, 2013 WL 4610764, at

6  *8 (N.D.Cal. Aug. 28, 2013) (granting final approval of class action settlement with

7  3% claims rate); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011

8  WL 1398485 (D. Me. April 13, 2011) (finding favorable class reaction in a 3.9%

9  response rate); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370

10  F.Supp.2d 320, 321 (D.Me.2005) (two percent submission rate); *Walter v. Hughes

11  Commc'ns, Inc.*, 2011 WL 2650711, at *13 (N.D. Cal. 2011) (using a "generous"

12  ten percent response rate to calculate reasonable attorneys' fees).

13        It is an "economic reality" that not all class members will file proofs of claim,

14  and this alone is no basis for rejecting an otherwise fair and equitable settlement.

15  *See* 2 *Newberg on Class Actions* §10.14 (3d ed. 1992).  So too here.  Though some

16  class members will decide not to participate for reasons of their own choosing,

17  providing compensation to over 60 percent of the class is a remarkable achievement

18  in a class action and supports approval under *Hanlon*.

19        **2.**    <u>**Objectors' Complaints Provide No Basis For The Court To Reject The Settlement**</u>

20

21        Of the 868,067 notices mailed to class members, 38 of those class members

22  submitted objections to the Settlement.  (*See* Zielomski Decl., Exh. A; King Decl.,

23  Exh. A; Appendix A).  Of the 38 objections to the Settlement, 15 objectors

24  complained that they personally would not be fully compensated by the options

25  provided to them under the Settlement Agreement.  These objectors have two

26  primary complaints: first, that the Settlement fails to fully compensate them based

27  on their own calculations of gas prices and the fuel economy of their own vehicles,

28  and second, that Defendants should be required to buy back Class Vehicles to

-13-

compensate owners for an alleged decline in their Class Vehicle's resale value as a result of the restated fuel economy rating.  Neither argument calls into question the fairness or adequacy of the Settlement.[9]

> **(a)**      **The Settlement Fairly Compensates Class Members**

First, objectors complain that the lump-sum payment does not cover the full extent of economic damage caused by the restated fuel economy ratings, i.e., that it does not fully cover the cost of the additional gasoline they may need to buy going forward.  As set forth in more detail in Plaintiffs' Separate Memorandum in Support of Final Approval, plaintiffs explain their view that the lump-sum payments represent an adequate compromise of class members' claims, judged by reasonable metrics for the increased fuel expense for each model-year class vehicle.  This objection also ignores the fact that all class members may choose to enroll in the Lifetime Reimbursement Program, which is designed to do exactly what objectors request:  to provide compensation for increased fuel costs over the life of the vehicle.  (Amended Settlement Agreement, § 5 (Dkt. No. 354-1); ; HMA long-form notice at 7-11 (Dkt. No. 342-1); KMA long-form notice at 7-11 (Dkt. No. 342-4)).  To the extent objectors find the lump-sum payment inadequate, they are free to claim other compensation options.

Second, objectors argue that class counsel should have bargained for a deal that compensates them for the harm the restated fuel economy ratings caused to their vehicle's resale and trade-in values.  Most of these objectors ignore the availability of a new car purchase credit, as well as the absence of evidence indicating a decline in re-sale value of the Class Vehicles attributable to fuel economy issues.  (Amended Settlement Agreement, §  3.2.3); HMA long-form notice at 8 (Dkt. No. 342-1); KMA long-form notice at 8 (Dkt. No. 342-4)).

---

[9]   The individual objections are discussed in the appendix to this memorandum.

1    Both sets of objections amount to an argument that objectors wish the

2    Settlement were more favorable to them.  But the possibility "that the settlement

3    could have been better" for objectors "does not mean the settlement presented was

4    not fair, adequate, or reasonable.  Settlement is the offspring of compromise; the

5    question [the court] addresses is not whether the final product could be prettier,

6    smarter, or snazzier, but whether it is fair, adequate, and free from collusion."

7    *Hanlon*, 150 F.3d at 1027.  The settlement at issue satisfies that standard.

8                    **(b)    Class Notice Was Adequate**

9    Two class members argue that the Settlement should be rejected because they

10   allege the notice to be inadequate.  One objector argues that the Settlement Notice

11   should detail how fuel reimbursement options and lump-sum payments are

12   calculated, while the other objects on the ground that he personally did not receive

13   notice and learned of the lawsuit through other means.  Given the multiple forms of

14   notice available to this class, and the high level of detail already provided, a claim of

15   inadequate notice is specious.  Moreover, the mileage calculator on the settlement

16   website enables class members to compare compensation options based on their

17   personal circumstances.[10]

18   All that is required of notice to the class is "sufficient detail simply to alert

19   those with adverse viewpoints to investigate and to come forward and be heard."  *In*

20   *re Online DVD-Rental Antitrust Litig.*, 2015 WL 846008, at *7 (9th Cir. Feb. 27,

21   2015) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)) (internal

22   quotations omitted).   Here, the long form notice clearly states the consequences of

23   not filing a claim form.  (HMA long-form notice at 2-3, 12-13, 16 (Dkt. No. 342-1);

24   KMA long-form notice at 2-3, 12-13, 15 (Dkt. No. 342-4).  Class members are

25   explicitly warned that, "[u]nless [they] exclude [themselves]," they "give up the

26   

27        [10]   *See* https://www.hyundaimpgclasssettlement.com/lifetime_estimator.

28

right to sue HMA, KMA, Hyundai America Technical Center, Inc., . . . Hyundai
Motor Company, Kia Motor Corporation, all affiliates of the Hyundai Motor Group,
and any other related entity for the claims that this Settlement resolves."  (HMA
long-form notice at 13 (Dkt. No. 342-1); KMA long-form notice at 12 (Dkt. No.
342-4).  The notice further provides detail on how class members may exclude
themselves, and both the long-form notice and the short-form mailer state deadlines
for submitting claims and opting out.  (HMA long-form notice at 1-3, 12-17 (Dkt.
No. 342-1); KMA long-form notice at 1-3, 11-15 (Dkt. No. 342-4); HMA short-
form mailer (Dkt. No. 342-2); HMA short-form mailer (Dkt. No. 342-5)).[11]  The
notice was refined over a period of months, and the notice that ultimately went to
class members has been revised to streamline information, increase clarity, and
avoid class member confusion.  This information—presented clearly, accurately,
and in straightforward language—more than suffices under established law.  *See,
e.g.*, *In re Online DVD Rental Antitrust Litig.*, 2015 WL 846008, at *7 (approving a
very similar notice to the one issued here, finding that it provided "simple and
straightforward information about the class action" in satisfaction of *Lane*'s
requirement that notice provide class members enough information to permit those
with "adverse viewpoints" to investigate and "come forward and be heard").

---

[11]   The notice explains that the Lifetime Reimbursement Program formula is
based on three factors:  (1) the number of miles a Class Vehicle has been driven; (2)
the difference between the original and revised combined fuel economy ratings of
the vehicle, in miles per gallon; and (3) a 52-week average fuel price for the area in
which the owner lives, based on U.S. Energy Information Association data.  (HMA
long-form notice at 7 (Dkt. No. 342-1); KMA long-form notice at 7 (Dkt. No. 342-
4).

**(c)**  **The Attorneys' Fees Awarded Hagens Berman Are Reasonable**

Six objectors contend that attorneys' fees are too high and justify the court rejecting the Settlement.  These objectors variously argue that (a) the Lifetime Reimbursement Program fully compensated the class, and therefore counsel conferred no additional benefit; and (b) counsel's hourly rates are excessive and should be reduced.[12]

The concern with large awards of attorneys' fees, i.e., the possibility that class counsel bargained away something of value to the class for his own personal gain, is not an issue here.  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d at 971; *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947-49 (9th Cir. 2011).  The Settlement requires Defendants to pay counsel separately—and counsel's fees thus have no direct impact on the class' recovery.  Moreover, the reasonableness of counsel's requested fees has been extensively briefed and was the subject of a hearing on March 19, 2015.  (*See* Mar. 19, 2015 Min. Order (Dkt. No. 437)).

**(d)**  **A Claims Process Is Appropriate Here**

Two objectors argue that the Settlement should be rejected because courts generally disfavor claims-made settlements.  These objectors do not point to any specific defects in the claims process; instead, they simply would prefer Defendants provide some type of automatic rebate to all class members.

As discussed above, a claims-made process is the best approach in this case.  Only a claims-made process permits consumers to choose among several options, a key feature of the Settlement.  Even were that not the case, "there is nothing

---

[12]  Several of the objections about attorneys' fees were based on the incorrect belief that defendants had agreed to pay class counsel attorneys' fees of $12 million.  There has been no agreement for payment of attorneys fees for class counsel in the *Espinosa* action, and the agreement for payment of the attorneys' fees to class counsel in the *Hunter* and *Brady* actions is for substantially less than $12 million.

1  inherently objectionable with a claim-submission process." *Shames v. Hertz*, 2012

2  WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012); *see also In re Online DVD-Rental*

3  *Antitrust Litig.*, 2015 WL 846008, at *5-6 (upholding district court approval of a

4  claims-made settlement fund over objections by class members).  The claims-made

5  process does not undermine the fairness or adequacy of the settlement.

6          **(e)**      **Miscellaneous Remaining Objections**

7        Objectors also offer various miscellaneous objections concerning the scope of

8  the settlement class, the adequacy of the restated MPG, and class response rates.

9  Four objectors each argue that (1) the settlement class is either under or overbroad;

10  (2) the restated MPG remains inaccurate as to his particular vehicle; (3) a different

11  ownership status applies to her claim; and one objector, the named plaintiff in *Bird*,

12  argues that class response rates have been inadequate.  As to the first argument

13  about the scope of the class, this Court already has addressed the appropriate class

14  definition on multiple occasions, and objectors provide no new argument here.  The

15  second objection reflects an individualized complaint about in-use gas mileage

16  rather than the class-wide ratings issues that are the focus of this case, and it casts no

17  light on the adequacy of the Settlement for other class members.  The third objection

18  reflects a dispute about an individual claim regarding the classification of a lessee

19  who, after November 2, 2012, exercised an option to purchase a class vehicle.  This

20  objection may raise individualized or claim-related issues but does not call the

21  overall fairness of the settlement into question.  Finally, as discussed above, Mr.

22  Bird's objection fails because the claims rate demonstrates enthusiastic support for

23  the Settlement among the class.

24      **B.**    **The Scope Of The Release Is Appropriate**

25        The scope of the release in the settlement agreement is appropriate under

26  established law.  "[A] federal court may release not only those claims alleged in the

27  complaint, but also a claim based on the identical factual predicate as that

28  underlying the claims in the settled class action[,] even though the claim was not

-18-

Case No. 2:13-ML-02424

JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

presented and might not have been presentable in the class action." *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (internal quotation marks omitted); *see also Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *3 (S.D. Cal. Nov. 20, 2012) ("[I]t is well within this Court's authority to release derivative claims, even if they are not expressly asserted in the complaint.").

The scope of the release here is consistent with this principle. It is limited to (a) claims that were actually asserted in the MDL litigation and (b) claims relating to the fuel economy, advertising of the fuel economy, or disclosures and filings relating to the fuel economy of Class Vehicles. (Amended Settlement Agreement, § 13.2 (Dkt. No. 354-1)). The Settlement explicitly reserves class members' right to relief for any (i) personal injury; (ii) damage to tangible property other than a Class Vehicle; and (iii) claims that pertain to anything other than the Class Vehicles. (*Id.*).

Class members have been informed of their rights in the long-form notice, which advises them that failure to object "means that you can't sue, continue to sue, or be part of any other lawsuit against HMA, KMA, Hyundai America Technical Center, Inc. . . . , Hyundai Motor Company, Kia Motors Corporation, all affiliates of the Hyundai Motor Group, or any other related entity or person," but that the Settlement would not prohibit class members from pursuing personal injury claims or claims related to anything other than a Class Vehicle. (HMA long-form notice at 12 (Dkt. No. 342-1); KMA long-form notice at 11 (Dkt. No. 342-4). That the scope of the release has been fully disclosed in the Class Notice with "opportunity for opting out" further confirms the fairness and reasonableness of the releases. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 482 (S.D.N.Y. 1998) (*citing Weinberger v. Kendrick*, 698 F.2d 61, 79 (2d Cir. 1982)); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 739 F. Supp. 896, 903-04 (S.D.N.Y. 1990) ("Notice of the release provision was provided to members of the plaintiff class, who were given the opportunity to opt out . . . . This option allowed those absent class members who believed that the settlement was not in their best interests to leave the

class and conduct the litigation on their own.").  Accordingly, the Settlement properly requires class members to release claims relating to the MDL in order to make claim damages under the Settlement.

## IV.   INCENTIVE AWARDS TO THE BRADY AND HUNTER PLAINTIFFS ARE APPROPRIATE

Counsel in the *Hunter* and *Brady* cases request an incentive award of $1,250 for each of the named plaintiffs in their cases.[13]  Defendants have reached an agreement with counsel on the $1,250 award.  (Mar. 19, 2015 Min. Order at 4 (Dkt. No. 437)).  Plaintiffs believe that the award reflects the time and effort these class members have spent participating in the preparation and filing of the complaints, monitoring the lawsuit and progress of settlement, and communicating with class counsel regarding settlement terms.  The value of the incentive award is appropriate here given "the amount of time and effort spent by" these class representatives on the litigation.  *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *18 (C.D. Cal. Nov. 13, 2012) (*quoting Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995));  *see also In re Toys R Us-Del., Inc.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014) (explaining the appropriate size of the incentive award hinges largely on the time and effort of the named plaintiffs and whether they "remained fully involved and expended considerable time and energy during the course of the litigation") (quoting *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006)).

---

[13]   The named plaintiffs in *Brady* and *Hunter* are Nicole Hunter, Kaylene Brady, Travis Brissey, Ronald Burkard, Adam Cloutier, Steven Craig, John Dixson, Erin Fanthorpe, Eric Hadesh, Michael Keeth, John Kirk MacDonald, Michael Mandahl, Nicholas McDaniel, Mary Moran-Spicuzza, Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory Sonstein, Roman Starno, Gayle Stephenson, Andres Villicana, and Richard Williams.

## __Conclusion__

Settling parties respectfully request the Court finally approve the class settlement, certify the settlement class, and make incentive awards of $1,250 to the *Brady* and *Hunter* plaintiffs.

DATED:  March 30, 2015

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Shon Morgan*
      Shon Morgan
      Attorneys for Defendants Hyundai Motor America and Hyundai Motor Company

DATED:  March 30, 2015

DYKEMA GOSSETT PLLC

By  */s/ James P. Feeney*
      James P. Feeney
      Attorneys for Defendant Kia Motors America, Inc.

DATED:  March 30, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Robert B. Carey*
      Robert B. Carey
      Attorneys for Plaintiffs in the *Brady* and *Hunter* Actions

1   DATED:  March 30, 2015              MCCUNEWRIGHT,  LLP

2
                                       By _/s/ Richard D. McCune_____
3                                          Richard D. McCune
                                           Attorneys for Plaintiffs in the *Espinosa*
4                                          Action

5

6

7

8

9   **C.D. Cal. L. R. 5-4.3.4(a)(2) Attestation**

10  Pursuant to Local Rule 5-4.3.4(a)(2), I attest that all other signatories listed, and on

11  whose behalf the filing is submitted, concur in the filing's content and have

12  authorized the filing.

13                                       _/s/ Shon Morgan_____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Appendix

| Name | Summary of Objections | Cross-Reference[14] |
|---|---|---|
| *Objections Postmarked On or Before March 5, 2015* | | |
| Acker, Andrew | Acker objects to the amount of compensation he will receive under the Settlement as an owner of a 2013 Kia Sorento as compared to the owner of a 2012 Kia Sorento. | (a) Settlement Fairly Compensates Class Members |
| Allen, Jimmy | Allen objects to the Settlement on the ground that Defendants should be required to admit wrongdoing. | (e) Miscellaneous Objections |
| Arnold, Lester | Arnold objects to the Settlement on the ground that it allegedly fails to compensate him for his losses. | (a) Settlement Fairly Compensates Class Members |
| Baugh, Jennifer | Baugh objects to the Settlement on the ground that it allegedly fails to compensate her for increased fuel expenses. | (a) Settlement Fairly Compensates Class Members |
| Blankenship, Karal | Blankenship objects to the Settlement on the ground that it allegedly fails to compensate him for a decrease in trade-in value, and further objects on the unrelated ground that he believes Hyundai Accents to have design flaws. | (a) Settlement Fairly Compensates Class Members |
| Bohn, Robert | Bohn objects on the ground that the Settlement allegedly fails to compensate him for a decrease in trade-in value. | (a) Settlement Fairly Compensates Class Members |
| Burkett, William | Burkett objects on the ground that class counsel's fees are unreasonable and urges the Court to award class counsel the average hourly wage of class members in lieu of their proposed fee awards. | (c) Attorneys' Fees Are Proportionate to Settlement |
| Carlson, Dennis | Carlson objects on the ground that the restated efficiency ratings are misleading. | (e) Miscellaneous Objections |

---

[14]   Section III(A)(2) of the parties' Joint Motion for Final Approval addresses the objectors' arguments.  The cross-referenced sub-sections, as set forth in the "Cross-Reference" column, direct the Court to the discussion of each objection within Section III(A)(2).

| Name | Summary of Objections | Cross-Reference[14] |
|---|---|---|
| Collins, Robert | Collins objects on the ground that the Settlement provides him with little compensation on top of the compensation he has already accepted through the Lifetime Reimbursement Program, and further objects that the Settlement allegedly fails to compensate him for a decrease in trade-in value. | (a) Settlement Fairly Compensates Class Members |
| DeVita, Philip | DeVita objects to the Settlement on the ground that it allegedly fails to compensate him for increased fuel expenses, which he alleges have caused him damage in the amount of $7,760. | (a) Settlement Fairly Compensates Class Members |
| Di Fini, Katrina | Di Fini objects to the Settlement on the grounds that the Settlement allegedly fails to compensate her for a decrease in trade-in value, and further objects that she has experienced delays in obtaining reimbursements under the Lifetime Reimbursement Program. | (a) Settlement Fairly Compensates Class Members |
| Eisenbach, Edward | Eisenbach objects on the ground that he would not have purchased an Elantra were it not for the stated fuel economy ratings.  Eisenbach further objects that the Settlement allegedly fails to compensate him for his inability to trade in his vehicle. | (a) Settlement Fairly Compensates Class Members |
| Hanrahan, John and Marilyn | The Hanrahans object on the ground that their Sorrento allegedly gets only 11.2 miles per gallon.  The Hanrahans further object that they did not receive notice of the Settlement. | (a) Settlement Fairly Compensates Class Members; (b) Notice Was Adequate |
| Hanson, Eric | Hanson objects to the Settlement on the ground that it allegedly fails to compensate him for his losses. | (a) Settlement Fairly Compensates Class Members |
| Hutcheson, Leigh and Roland, Dana | The Hutchesons object to the Settlement on the ground that the Settlement Class is overbroad and common issues do not predominate.  The Hutchesons further object that the Court should require Defendants to automatically disburse funds to class members.  Finally, the Hutchesons contend that attorneys' fees should be calculated based on the actual benefit (e.g., the value of claims made) of the Settlement to the class. | (c) Attorneys' Fees Are Proportionate to Settlement |

| Name | Summary of Objections | Cross-Reference[14] |
|---|---|---|
| Kenton, Chris | Kenton objects to the Settlement on the ground that it allegedly fails to compensate him for increased fuel expenses. | (a) Settlement Fairly Compensates Class Members |
| Killinger, Kimberly | Killinger objects to the Settlement on the ground that it allegedly fails to compensate her for a decrease in trade-in value. | (a) Settlement Fairly Compensates Class Members |
| Lindsey, David | Lindsey objects on the grounds that (1) the claims process is confusing and burdensome; (2) certain cash-out options must be redeemed within an unfairly short time period; and (3) the Settlement fails to fully compensate class members for their losses. | (a) Settlement Fairly Compensates Class Members; (d) Claims Process is Appropriate Here |
| McDonough, Colin | McDonough objects on the ground that the restated fuel economy ratings cause him $480 in damages per year, while he is only entitled to a one-time, lump-sum payment of $410 under the Settlement's cash-out options.  McDonough requests that Hyundai replace his engine with a V-6 engine as full remedy. | (a) Settlement Fairly Compensates Class Members |
| Oswalt, Mike | Oswalt objects to the Settlement on the ground that the Lifetime Reimbursement Program fully compensates class members.  Because class counsel has not conferred any benefit upon the class, counsel's fees are excessive. | (c) Attorneys' Fees Are Proportionate to Settlement |
| Petardi, Nicole | Petardi objects to the Settlement on the ground that it allegedly fails to compensate her for her losses, and further objects that purchasers of other models are entitled to greater lump-sum payments. | (a) Settlement Fairly Compensates Class Members |
| Scharbrough, Barry and Mary Ann | The Scharbroughs object on the ground that the settlement class is too narrow and should be required to cover other Hyundai models. | (e) Miscellaneous Objections |
| Soberman, Myrna | Soberman objects to the Settlement on the ground that she personally was misclassified as a Lessee, rather than an owner, for the purposes of redeeming claims. | (d) Miscellaneous Objections |

| Name | Summary of Objections | Cross-Reference[14] |
|---|---|---|
| Stein, Natalie | Stein objects on the ground that the restated fuel economy ratings cause her damage in the amount of $1,053 per 36,000 miles, while she is only entitled to a one-time, lump-sum payment of $353 under the Settlement's cash-out options. | (a) Settlement Fairly Compensates Class Members |
| Stevens, Jared | Stevens objects to the Settlement on the ground that it allegedly fails to compensate her for a decrease in trade-in value. | (a) Settlement Fairly Compensates Class Members |
| Thompson, John | Thompson objects to the Settlement on the ground that the restated fuel economy ratings are likely to cost him $3,000 in fuel over the next 10 years, while he is only entitled to a one-time, lump-sum payment under the Settlement's cash-out options.  Further, Thompson objects on the ground that he believes Hyundai's behavior was malicious. | (a) Settlement Fairly Compensates Class Members |
| Trump, Kyle | Trump objects to the Settlement on the grounds that (1) the Lifetime Reimbursement Program does not adequately compensate class members for the cost of fuel; (2) lump-sum payments are inadequate to cover additional gas; (3) certain cash-out options must be redeemed within an unfairly short time period; and (4) Defendants should not keep unexpended funds on Cash Debit Cards, Dealer Service Debit Cards, or New Car Rebate Certificates. | (a) Settlement Fairly Compensates Class Members |
| Van Becelaere, Don | Van Becelaere objects to the Settlement on the ground that the lump-sum cash-out options fail to compensate him for a decrease in trade-in value. | (a) Settlement Fairly Compensates Class Members |
| Walter, James | Walter objects to the Settlement on the ground that the lump-sum cash-out options fail to compensate him for a decrease in trade-in value.   Walter argues that Defendants should be required to buy back all Class Vehicles. | (a) Settlement Fairly Compensates Class Members |

| Name | Summary of Objections | Cross-Reference[14] |
|------|----------------------|---------------------|
| Woods, Gregory | Woods objects on the ground that the settlement fund will not adequately compensate the class, particularly after class counsel's fees are taken from the fund. | (c) Attorneys' Fees Are Proportionate to Settlement |
| **Objections Postmarked After March 5, 2015** | | |
| McQuade, Robert Scott | McQuade objects on the grounds that restated fuel economy ratings are not borne out by his experience.  McQuade further objects on the ground that Defendants have not replaced rusting metal under their 7-year/100,000 mile anti-perforation warranty. | (e) Miscellaneous Objections |
| Miller, Amanda | Miller objects to the Settlement on the ground that it allegedly fails to compensate her for a decrease in trade-in value. | (a) Settlement Fairly Compensates Class Members |
| **Objections Received Without Postmark** | | |
| Parsadanyan, Bagrat | Parsadanyan objects to the Settlement on the ground that restated fuel economy ratings are not borne out by his experience, and further objects that the "amount of the settlement" is inadequate. | (e) Miscellaneous Objections |
| **Objections Filed With Court and Not Mailed to Liaison Counsel** | | |
| Ahearn, Caitlin and York, Andrew (Dkt. No. 417 (Mar. 5, 2015)) | Ahern objects on the grounds that the Settlement is unfairly allocated between class counsel and the class, and that the Settlement should automatically disburse funds to class members who are not enrolled in the Lifetime Reimbursement Program. | (c) Attorneys' Fees Are Proportionate to Settlement |
| Bird, Louis (Dkt. No. 418 (Mar. 5, 2015)) | Bird objects separately in order to preserve an objection that class participation rates signal low approval for the settlement. | (e) Miscellaneous Objections |
| Fetsch, Peri (Dkt. No. 414 (Mar. 2, 2015)) | Fetsch objects to the Settlement on the grounds that (1) notice was defective in not specifying how lump-sum payments are to be calculated; (2) the data used to calculate fuel costs under the Lifetime Reimbursement Program is less | (b) Notice Was Adequate; (d) Claims Process is Appropriate Here |

| Name | Summary of Objections | Cross-Reference[14] |
|---|---|---|
| | accurate than data available from other sources; (3) certain cash-out options must be redeemed within an unfairly short time period; (4) the release is overinclusive; (5) the Court did not compare the value of this settlement to the value of comparable settlements; and (6) the claims process is overly burdensome. | |
| Sberna, Antonio (Dkt. No. 416 (Mar. 5, 2015)) | Sberna's objection incorporates all arguments made in the *Krauth* Plaintiffs' Opposition to *Brady/Hunter/Espinosa* Plaintiffs' Motion for Preliminary Approval. (Dkt. No. 236). Sberna writes separately to object that attorneys' fees should be calculated based on the actual benefit (e.g., the value of claims made) of the Settlement to the class. | (c) Attorneys' Fees Are Proportionate to Settlement |