RICHARD D. McCUNE (#132124)
rdm@mccunewright.com
ELAINE S. KUSEL (*Pro Hac Vice*)
esk@mccunewright.com
JAE (EDDIE) K. KIM (#236805)
jkk@mccunewright.com
MCCUNEWRIGHT LLP
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiffs in *Espinosa, et al. v. Hyundai Motor America, et al.*
[Plaintiffs, Lillian E. Levoff, Thomas Ganim, Daniel Baldeschi]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION** | MDL Case No.: 2:13-ml-2424-GW (FFMx) |
| | Hon. George H. Wu |
| | **PUBLIC VERSION** |
| | ***ESPINOSA* PLAINTIFFS' COUNSEL McCUNEWRIGHT, LLP'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY FEES** |
| | [Declaration of Richard D. McCune filed concurrently herewith] |
| | Date: May 7, 2015<br>Time: 9:30 a.m.<br>Courtroom: 10 - Hon. George H. Wu |

# MEMORANDUM OF POINTS AND AUTHORITIES

In a tentative decision on attorney fees, the Court recognized that McCuneWright's fee request is within the bounds acceptable under common fund methodology, but expressed concern that the requested lodestar multiplier of three was too high in light of the fact that co-lead counsel has agreed to accept a much lower multiplier. It then provided McCuneWright an opportunity to submit a further brief on the issue.

As shown below, McCuneWright's $6 million fee request is appropriate under the lodestar method because of the unique risk undertaken by McCuneWright in litigating the novel and complex issues in this matter. The fee request is also supported by the precedent set by the Toyota MDL litigation where lodestar multipliers ranged from 1 to 3.7 based on the difference in risks assumed by each firm.  Finally, the reasonableness of the McCuneWright's request is confirmed by the percentage cross check.

## I   McCuneWright's Requested Fee Is Not Unreasonable Simply Because Other Counsel Have Agreed to Accept Less in Fees

It is routine for plaintiffs' counsel in class actions to agree to disparate fees for work in the same action, or for very similar work in different cases. The fact that co-lead counsel, who became involved in a different stage of the litigation than McCuneWright, has agreed to accept a lesser fee does not make McCuneWright's fee request unreasonable.  *Moore v. Verizon Communications Inc.*, 2014 WL 588035, at *6 (N.D. Cal., Feb. 14, 2014).  In *Moore v. Verizon*, Defendant argued that the amount of attorneys' fees sought was unreasonable because the same counsel had agreed to accept $2,000,000 less in fees to settle an almost identical case which involved a larger class, more motion practice, and far more discovery.  The court in *Moore* rejected that argument, noting that a number of factors contribute to the amount of attorneys' fees counsel may be willing to accept in a particular case – but the only factors relevant to the reasonableness inquiry were those factors previously laid out by the Ninth Circuit, which included risk, complexity of the issues, and delay in payment.  *Id.*  Here, it is precisely

-1-

the difference in risk and novelty and complexity of work that justifies a higher multiplier for McCuneWright.

## II    The Result and the Risk Assumed by McCuneWright in Securing the Result Here Entitles It to a 3 Multiplier

McCuneWright's fee request calculated under the lodestar method would result in a 3 multiplier, a multiplier well within the bounds of reasonableness accepted by the courts. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *Reed v. 1-800 Contacts*, 2014 WL 29011, at *9 (S.D. Cal. Feb. 14, 2014) (approving counsel's request for a multiplier of 2.9, noting that while the issues were not particularly novel or complex, class counsel achieved a very successful settlement, the amount satisfied the percentage-of-recovery cross-check, and the Ninth Circuit frequently approves even higher multipliers). *See also Milgram v. Chase Bank USA, N.A. et al.*, CV 10-336-GW-PJW, Dkt. No, 65, at ¶¶ 15-17 (C.D. Cal. Nov. 22, 2011) (plaintiffs request of 25 percent supported by lodestar cross check which resulted in a 2.96 multiplier) (the opinion is attached to the Declaration of Richard D. McCune in Support of *Espinosa* Plaintiffs' Counsel McCuneWright, LLP's Supplemental Brief in Support of Motion for Attorney Fees ("McCune Supp. Decl."), at ¶ 2, Ex. 1).

A lodestar multiplier may be applied to account for the quality of representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented. *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 26, 97 Cal. Rptr. 2d 797 (2000). Here, the multiplier accepted by co-lead counsel does not account for either the significant contingent risk or the novelty and complexity of the issues that McCuneWright litigated in this matter. Accordingly, McCuneWright is entitled to an enhanced multiplier.

### A.    A Lodestar Multiplier of 3 for McCuneWright Is Supported by the Fact That McCuneWright Assumed Far More Risk Than any Other Counsel in This Action

A district court must apply a multiplier to the attorney's fees calculation, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if

-2-

they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997, 1008 (9th Cir. 2002) (citation omitted).

### 1. *The Espinosa Action Presented Novel and Complex Issues and Was Uniquely Risky Entitling McCuneWright to a Significant Multiplier*

To determine the risk involved in the case, the Court should evaluate the risk at the "outset" of litigation that is when an attorney determines that there is merit to the client's claim and elects to pursue the claim on the client's behalf. *Id.* at 1009. Here, the level of risk that McCuneWright faced should be evaluated by the level of risk the firm faced when it began its investigation of the *Espinosa* action. (Declaration of Richard D, McCune in Support of *Espinosa* Plaintiffs' Counsel McCuneWright, LLP's Motion for Award of Attorneys Fees ("McCune Mot. Decl.") (Dkt. 377-3), at ¶ 10.)

By late 2011, a variety of news outlets had published articles calling into question the accuracy of advertised fuel economy of the 2011 Hyundai Elantra, and there were numerous complaints about the poor fuel economy of the Elantra in the public domain. (*Espinosa* Second Amended Complaint ("*Espinosa* SAC") (Case No. CV 12-00800 GW (FFM), Dkt. 40), at ¶¶ 47-50.) However, only McCuneWright took the risk of filing a complaint alleging that Hyundai had inflated the fuel economy of the Elantra, by far the highest selling vehicle of all of the class vehicles. In filing *Espinosa*, McCuneWright knew that the case would be heavily contested and fraught with risk. (McCune Mot. Decl. (Dkt. 377-3), at ¶11.)

While McCuneWright believed it had a meritorious case, it was far from certain that the complaint could withstand a motion to dismiss, particularly given the risk of federal preemption based on the federal government's involvement in the regulation of fuel economy claims. Moreover, even if *Espinosa* survived a motion to dismiss, there was significant risk in proving that Hyundai's fuel economy figures were in fact inflated, establishing damages, and demonstrating that a class was certifiable, because it would be difficult to prove that consumers relied on Defendant's advertised representations as to

-3-

fuel economy when purchasing or leasing their vehicles and would not have made such decisions but for Defendant's conduct.

The fact that the issues in *Espinosa* were risky is clear from unfavorable decisions in other consumer fraud cases asserting claims related to vehicle fuel economy. *See, e.g. Brett v. Toyota Motor Sales, U.S.A., Inc.*, 2008 WL 4329876 (M.D. Fla., Sept. 15, 2008) (state law claims related to fuel economy of the Prius preempted by EPA and FTC regulations required ads to contain MPG representations); *Godfrey v. Toyota Motor North America, Inc.*, 2008 WL 2397497 (W.D. Ark. June 11, 2008) (same). Perhaps as a result of these substantial risks and challenges, although the consumer advocacy arm of counsel for the Krauth/Hausper plaintiffs publicly discussed the allegations that the Elantra's fuel economy was overstated and wrote a letter to the EPA on the subject in November 2011, they did not file a complaint until July 2011. (*Espinosa* SAC, at ¶ 52)

Moreover, by the time that the Krauth/Hasper counsel did file a case -- the *Bird* action -- on July 3, 2012, the risk associated with the claims asserted therein had diminished because the *Espinosa* action had already survived Hyundai's motion to dismiss premised on the same type of claims asserted in *Bird*. (McCune Mot. Decl. (Dkt. 377-3), at ¶ 13.) While the risk of surviving a motion to dismiss had decreased, McCuneWright was still facing significant risk. By July 2012, McCuneWright had stepped up its investment of resources in the case. The firm's attorneys were in the midst of review of 30,000 pages of document discovery in preparation for a motion for class certification and had retained experts and consultants, including a consumer expectation and marketing expert and an economics expert, in conjunction with that motion. (*Id.*, at ¶15.) On September 14, 2012, McCuneWright filed a motion for class certification relying on more than 70 Hyundai documents, and expanded the complaint to include allegations that Hyundai's advertising that four of its vehicles "got 40 mpg" were false and misleading. (*Id.*, at ¶ 17.)

It was not until after Hyundai and Kia issued a joint press release on November 2, 2012, acknowledging that the reported fuel economy of the Elantra and numerous other

[Public Version] *Espinosa* Pls.' Counsel McCuneWright, LLP's Supplemental Memo. P&A's ISO Motion for Attorney Fees
CASE NO.: ML-13-2424-GW (FFMx)

1  models were in fact inflated, that the vast majority of the actions consolidated in this
2  MDL were filed. Specifically, the *Hunter* and *Brady* cases were filed by Co-Lead
3  Counsel on November 2 and 6, 2012, respectively.  At that juncture, there was little to no
4  risk in proving that Hyundai and Kia's fuel economy figures were inflated, inasmuch as
5  Hyundai and Kia's press release had already conceded the fact.

6  However, while the odds of surviving a motion to dismiss had improved, there
7  remained substantial risk in the *Espinosa* action.  Oral argument on the contested class
8  certification motion was held on November 29, 2012, but the court declined to certify the
9  class requesting supplemental briefing on both December 3 and December 18, requiring
10 McCuneWright to work on the contested Class Certification motion through the
11 beginning of 2013.  This work did not stop until February 12, 2013, when a settlement in
12 principle was reached.

13 Approximately 60 percent of McCuneWright's claimed lodestar was incurred for
14 work related to active litigation of the case prior to the settlement on February 12, 2013.
15 (McCune Supp. Decl., at ¶ 3; Declaration of Richard D. McCune in Support of *Espinosa*
16 Plaintiffs' Counsel McCuneWright, LLP's Reply to Defendants' Opposition to *Espinosa*
17 Plaintiffs' Motion for Fees, Expenses, and Incentive Awards (Dkt. 412-1), at ¶¶ 6-13.)
18 Moreover, the parties agree that this work provided the necessary basis for the court and
19 counsel to enter into the settlement and then confirm that the proposed settlement was fair
20 reasonable and adequate.  (Defendants' Joinder and Reply in Support of Motion for
21 Preliminary Approval Of Class Settlement (Dkt. 250), at p. 1:1-12.) By contrast, while
22 there is no question that Hagens Berman did excellent and substantial work in this case
23 which resulted in significant value to the class and entitled the firm to fees and likely a
24 much higher multiplier than to which they elected to agree for their own reasons, there is
25 also no question that the confirmatory discovery work done later in the case was less
26 complex than the issues litigated in *Espinosa* and there was far less risk than was
27 assumed by McCuneWright during the time most of their work was done in this case.
28

### B. For the Firms in the Toyota Sudden Acceleration MDL, Lodestar Multipliers Ranged From 1 to 3.70, Supporting McCuneWright's Request for a 3 Multiplier in This Action

The fee awards *In re: Toyota Motor Corp Unintended Acceleration Marketing, Sales Practices, and Product Liability Litigation*, MDL No. 2151, ("Toyota MDL"), the recent and other large vehicle MDL in this district, also supports McCuneWright's request here. In the economic loss class cases in the Toyota MDL, the court appointed three co-lead class counsel (Hagens Berman Sobol & Shapiro, Cotchett Pitre & McCarthy, and Susman Godfrey). There were approximately twenty-three other firms who also performed work in the case.

After settlement, the Court awarded Plaintiffs' counsel $200 million in fees. That award reflected approximately a 2.75 multiplier of the combined lodestar submitted by the twenty-six firms (including co-lead counsel) who had contributed to the case. Co-lead Counsel then allocated those funds among these firms. Firms exposed to the least risk in the case were provided a 1 multiplier, and the class counsel who had assumed the most risk received between 3.5 and 3.7 multipliers (Susman Godrey – 3.5, Cotchett Pitre & McCarthy -3.5, and Hagens Berman – 3.7). Other firms who had assumed some heightened risk, but not the same risk as Co-lead counsel, received multipliers in between those numbers. (McCune Supp. Decl., at ¶ 4, Ex. 2 (Toyota Fee Allocation).)

Here, as in the Toyota MDL, there were substantial differences in the level of risk assumed among the firms involved in the case. In the Toyota MDL, while all of the firms became involved in the case at approximately the same time, co-lead class counsel assumed greater risk by devoting more work and resources to litigation of the case, which could have led to far greater losses had the case not had a favorable result. This risk differential supported awarding the class counsel firm assuming the most risk, Hagens Berman Sobol & Shapiro, almost four times the multiplier of the firms assuming the least risk.

That same rationale applies even more so here where the risk borne in the *Espinosa* litigation was substantially greater prior to Hyundai's announcement and the filing of the

other actions in the MDL, and supports the reasonableness of McCuneWright's request for a 3 multiplier even when accounting that other firms that had much less risk agreed to a much lower multiplier.

**III  If the Court Utilizes the Lodestar Method, the Reasonableness of the Fee Award Should be Evaluated by Cross Check Against the 25 Percent Benchmark**

While a district court has discretion in choosing a methodology to calculate fees, a district court abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable award that provides a windfall to either party. *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011). One way a district court can demonstrate that its use of a particular method or amount awarded is reasonable is by conducting a cross check using the other method. *In re Online DVD Rental Antitrust Litigation,* 2015 WL 846008, at *10 (9th Cir. Feb. 27, 2015).

Here, a fee award based on 25 percent of the ███████ gross settlement[1] amount would result in a ███████ fee. If the court uses the lodestar approach as a primary method of fee calculation, the fee so calculated should be reasonable when cross-checked against the ███████ benchmark. *In Re Online DVD Rental*, 2015 WL 846008 at *10; *Suzuki v. Hitachi Global Storage Technologies*, 434 Fed. Appx. 695 (9th Cir. 2011).

Here, McCuneWright's $6 million fee request represents a little more than a ███ of the ███████ benchmark. If the court were to award McCuneWright its requested fee, the total fees awarded to plaintiffs' counsel would be $11,605,274,[2] or only approximately ███ of the total 25 percent benchmark, which clearly would withstand the cross check.

By contrast, if the Court were to adopt the argument that McCuneWright deserves a multiplier closer to that accepted by Hagens Berman, the total fee awarded to settling

---

[1] Declaration of Robert B. Carey in Support of Settling Plaintiffs' Motion for Final Settlement Approval (Dkt. 442), at ¶ 8, Ex. A (Dkt. 453), at ¶ 5.3, Ex. B (Dkt. 454), at ¶ 5.3.

[2] This is McCuneWright's understanding that Hyundai has agreed, or the Court has ordered to be paid, to co-lead counsel, liaison counsel and "non-settling counsel".

[Public Version] *Espinosa* Pls.' Counsel McCuneWright, LLP's Supplemental Memo. P&A's ISO Motion for Attorney Fees
CASE NO.: ML-13-2424-GW (FFMx)

counsel would drop to less than ▇ percent, far below the 25 percent benchmark fee. Given the excellent result obtained for the class, the risk assumed by counsel, the skill required and the contingent nature of the litigation, and that it does not result in an unreasonable multiplier, such a departure from the benchmark fee is not warranted. *Vizcaino*, at 1048-50.

In a similar case, a court refused to award a fee based on lodestar when it would result in a windfall to the defendant. *Guschausky v. American Family Life Assurance Co.*, 851 F. Supp 2d 1252 (D. Mont. 2012). In *Guschausky*, the court utilized a constructive common fund approach to estimate the settlement amount at $6,601,633 and awarded fees of 25 percent of that amount, noting that to award plaintiffs' counsel their lodestar of approximately $300,000, an amount equivalent to 4.5 percent of the settlement amount, would result in a windfall to the defendant.

Defendant agreed to pay McCuneWright a reasonable fee. If the Court awards McCuneWright a fee based on lodestar and a lodestar multiplier influenced by other counsel who were in a different position and assumed less risk than McCuneWright, then Defendant would receive a windfall. When there is a successful outcome that generates significant compensation for the class following risky litigation, Plaintiffs' counsel should be rewarded for their risk and work. That can best be accomplished by aligning Plaintiffs' counsel's interests with the class by awarding them a percentage of the benefit they created for the class. But if that is not done, then Plaintiff counsel should be awarded a significant multiplier to account for that risk. McCuneWright submits that in this case, like in the Toyota MDL, that multiplier should be at least 3.

DATED: April 9, 2015.

Respectfully submitted,

MCCUNEWRIGHT LLP

BY: /s/ Richard D. McCune
Richard D. McCune
Attorneys for *Espinosa* Plaintiffs

-8-