# EXHIBIT 1

HARVEY ROSENFIELD (SBN 123082)
harvey@consumerwatchdog.org
PAMELA PRESSLEY (SBN 180362)
pam@consumerwatchdog.org
LAURA ANTONINI (SBN 271658)
laura@consumerwatchdog.org
**CONSUMER WATCHDOG**
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522 / Fax: (310) 392-8874

JONATHAN W. CUNEO
jonc@cuneolaw.com
WILLIAM ANDERSON
wanderson@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, NE
Washington, DC 20002
Tel: (202) 789-3960 / Fax: (202) 789-1813

STEVE M. CAMPORA (SBN 110909)
scampora@dbbwlaw.com
ROBERT A. BUCCOLA (SBN 112880)
rbuccola@dbbwlaw.com
CRAIG C. SHEFFER (SBN 131243)
csheffer@dbbwlaw.com
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500 / Fax: (916) 379-3599

NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000 / Fax: (650) 692-3606

*Attorneys for the Krauth and Hasper, et al. Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | Case No. 2:13-ml-02424-GW-FFM |
| | **CORRECTED SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| | Date:        May 7, 2015 |
| | Time:        9:30 a.m. |
| | Judge:       Hon. George H. Wu |
| | Courtroom:   10 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.   THE WORK OF THE CONSUMER WATCHDOG LEGAL TEAM WAS REASONABLE, BENEFITTED THE CLASS AND IMPROVED THE SETTLEMENT. ........................................................................................2

III.   THE *KRAUTH/HASPER* PLAINTIFFS ARE PREVAILING PARTIES.........3

   A.   The Consumer Watchdog Legal Team Was Litigating Against Hyundai Prior to the Settlement Announcement. ...........................................................4

   B.   The Consumer Watchdog Legal Team Continuously Worked to Obtain, Confirm and Improve the Settlement. ...................................................4

   C.   The Consumer Watchdog Legal Team's Criticisms of the Settlement Were Meritorious. .............................................................................................6

   D.   The Court Acknowledged and Often Explicitly Agreed with the Consumer Watchdog Legal Team's Concerns. ....................................................8

   E.   The *Krauth/Hasper* Plaintiffs Must be Treated as Prevailing Parties for Purposes of this Motion.......................................................................8

   F.   Even Under the "Objector" Standard, the *Krauth/Hasper* Plaintiffs Are Entitled to Compensation. .................................................................10

IV.   THE RECORD SUPPORTS THE CONCLUSION THAT THE CONSUMER WATCHDOG LEGAL TEAM'S WORK CATALYZED THIS SETTLEMENT. 11

V.   THE CONSUMER WATCHDOG LEGAL TEAM PROPERLY DEPLOYED THE RESOURCES REASONABLY REQUIRED AT ALL TIMES DURING THE LITIGATION. ........................................................................................12

VI.   THE REQUESTED HOURLY RATES ARE JUSTIFIED.............................14

VII.   REVISED AMOUNT OF REQUEST....................................................16

VIII.   EXPENSES AND INCENTIVE AWARDS .................................................18

IX.   CONCLUSION.................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*First Nat. Ins. Co. of Am. v. MBA Const.*,
   2005 WL 3406336 (E.D. Cal. Dec. 12, 2005).........................................12

*Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140 (2006) ...........................9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)........................................................9

*In re Apple Inc. Sec. Litig.*,
   2011 WL 1877988 (N.D. Cal. May 17, 2011) ...................................................10

*In re Bluetooth Headset Products Liability Litigation (Bluetooth)*,
   654 F.3d 935 (9th Cir. 2011).........................................................................10

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012)..........................................3, 10

*Tipton–Whittingham v. City of L.A.*, 34 Cal.4th 604 (2004) ...............................12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...............................10

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999).................11

**Statutes**

California Civil Code

§ 1750 et seq. .....................................................................................................9

§ 1780(e).............................................................................................................9

California Code of Civil Procedure

§ 1021.5 ..............................................................................................................9

§ 1021.5(a)..........................................................................................................9

**Other Authorities**

*California Attorney Fee Awards* (Third Ed.) Richard M. Pearl § 9.104 .................15

## I. **INTRODUCTION**[1]

In response to the Court's request, this Supplemental Brief provides:

(1) A detailed breakdown of the Consumer Watchdog Legal Team's work on behalf of the Hyundai and Kia Class Members since 2012, organized by 24 discrete *litigation events*, and,

(2) A revised compensation request that proposes a 66% reduction in compensation from the original request.

The concurrently filed Supplemental Declaration of Laura Antonini ("Supp. Antonini Decl.") provides an itemized explanation of the hours spent on certain tasks performed by *each attorney*. That declaration, and this brief, support our contention that the time spent by the Consumer Watchdog Legal Team – in state court prior to this Multidistrict Litigation (MDL) proceeding, in centralizing the cases in this MDL in this Court, during the confirmatory discovery phase, and during the process of improving the Settlement, particularly the notice and claims process – was reasonable and benefitted the Class.

Portions of the Court's Tentative appear to regard the *Krauth* and *Hasper* Plaintiffs as objectors. To the contrary, they are named party Plaintiffs on whose behalf the Consumer Watchdog Legal Team has been working for over *two years*. This MDL proceeding is the *direct result* of the work of the Consumer Watchdog Legal Team in investigating and exposing the Defendants' misrepresentations. It is uncontroverted fact that Consumer Watchdog, a nationally-recognized non-profit charitable organization founded in 1985, sounded the alarm about Hyundai's misrepresentations directly to the EPA and other governmental actors before any

---

[1] This Supplemental Brief addresses the issues raised by the Court in its March 19, 2015 Tentative Ruling ("Tentative") (Dkt. 436-1) concerning the Motion For Payment of Attorneys' Fees, Reimbursement of Expenses and Compensation to Named Plaintiffs ("Motion") (Dkt. 371) made by counsel for the *Krauth* and *Hasper* Plaintiffs ("the Consumer Watchdog Legal Team" or "Consumer Watchdog counsel").

case was filed, and even before the EPA instituted its audit and investigation of Hyundai's misrepresentations. Consumer Watchdog counsel subsequently filed suit in California state court and later in this Court, and successfully petitioned the MDL Panel for all other federal cases to be centralized here. After the settlement was announced, we sought – and obtained – improvements in its terms on behalf of Hyundai and Kia customers. Our efforts continue to this day.

When placed in this context, it is logical that the Consumer Watchdog Legal Team expended more hours than most of the Plaintiffs' counsel in this case.

While the Consumer Watchdog Legal Team continues to believe it is entitled to compensation for *all* of the work it reasonably performed on behalf of Hyundai and Kia consumers, it has honored the Court's request here.

By organizing the breakdown of time expended into discrete *litigation events* per the Court's directive, we are submitting only our time for specific enumerated tasks in which we participated and which accomplished a goal pertinent to the Settlement. This process, by itself, reduced our original request by 634.55 hours, for a revised lodestar of $2,447,242.50.

This brief proposes a further $1,497,242.50 reduction to the revised lodestar amount. The requested award of fees is now $950,000. This is a 66% reduction in compensation from the amount sought in the original Motion. This is a far greater reduction than agreed to by the vast majority of the plaintiff lawyers in this case, particularly by the firms that, like the Consumer Watchdog Legal Team, were assigned specific tasks by Liaison Counsel like interviewing key witnesses and drafting discovery.

## II. THE WORK OF THE CONSUMER WATCHDOG LEGAL TEAM WAS REASONABLE, BENEFITTED THE CLASS AND IMPROVED THE SETTLEMENT.

As detailed in the Supplemental Declaration of Laura Antonini (and the four

CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

2

hundred pages of briefing previously submitted to the Court[2]), the factual record in this case – including the Court's own comments at numerous status conferences – supports the reasonableness of the time expended by Consumer Watchdog counsel over the last three years in advancing the interests of the Class and the benefits conferred upon the Class.

### III.   **THE *KRAUTH/HASPER* PLAINTIFFS ARE PREVAILING PARTIES.**

As set forth in the Motion and Reply, the *Bird, Krauth* and *Hasper* Plaintiffs are entitled to compensation as "prevailing parties." (Motion at 10-15; Reply at 3-15). However, in discussing the Consumer Watchdog Legal Team's Motion, the Tentative applies the standard applicable to objectors.

Objectors are non-named class members who, upon receiving class notice of the proposed settlement, submit an opposition at the final fairness hearing.[3] *See, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012). To suggest that the named Plaintiffs in *Krauth* and *Hasper* – parties in this proceeding – are objectors misconstrues the role they played in this litigation on behalf of themselves and other Hyundai and Kia customers.

Additionally, because there is a difference in the legal standards applicable to compensation of "parties" versus "objectors," treating the *Krauth* and *Hasper* plaintiffs as "objectors" would lead to an improper analysis of the fee request. The proper test is whether the time spent by the Consumer Watchdog Legal Team was *reasonable*.

---

[2] *See* Motion (Dkt. 371); Decl. of Laura Antonini in Support of Motion ("Antonini Decl.") (Dkt. 371-2); Decl. of William Anderson in Support of Motion (Dkt. 385-1); Decl. of Anne Marie Murphy in Support of Motion (Dkt. 385-2); Decl. of Steven M. Campora in Support of Motion (Dkt. 371-3); *Krauth*/*Hasper* Plaintiffs' Reply in Support of Motion ("Reply") (Dkt. 420); Decl. of Laura Antonini in Support of Reply ("Antonini Reply Decl.") (Dkt. 420-1).

[3] Consumer Watchdog counsel has filed an objection on behalf of Mr. Louis Bird, the named plaintiff in *Bird v. Hyundai Motor America*, Sacramento Superior Court Case No. 34-2012-00127249. (Dkt. 418).

CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

3

### A. The Consumer Watchdog Legal Team Was Litigating Against Hyundai Prior to the Settlement Announcement.

The existence of a settlement in this matter was announced on February 14, 2013, at the first MDL hearing before this Court.[4] However, *fourteen months prior to that*, Consumer Watchdog brought the misrepresentations at issue here to the attention of the EPA and the public. In 2011, when Consumer Watchdog first confronted Hyundai about the misrepresentations at issue here, the *Espinosa* case did not exist and no investigation by the EPA had been initiated, let alone concluded.

Lawyers for Consumer Watchdog subsequently prepared the *Bird* suit, filed it in Sacramento Superior Court in July 2012, and began intensively litigating the case months before this MDL. After the EPA confirmed (and Defendants acknowledged) the misrepresentations and it became clear that the federal courts would begin adjudicating the claims, the Consumer Watchdog Legal Team filed the *Krauth* suit (and later *Hasper*) and petitioned the MDL panel to centralize all related litigation here. None of this work on behalf of the Class can be fairly characterized as objecting. The time spent in both forums was reasonable and directly influenced the results obtained here.

### B. The Consumer Watchdog Legal Team Continuously Worked to Obtain, Confirm and Improve the Settlement.

Liaison Counsel was appointed on March 28, 2013, and Consumer Watchdog counsel worked with Liaison Counsel and other Non-Settling Plaintiffs (1) to obtain the terms of the settlement; (2) to obtain and review the discovery that the Settling Parties had presumably exchanged *prior* to the settlement; and, (3) to obtain confirmatory discovery, including interviews, after it became clear that the

---

[4] A two-page "term sheet" was presented to the Consumer Watchdog Legal Team on February 21, 2013, and filed with the Court on February 26, 2013. (*Espinosa*, Dkt. 105, Exh. 1). The full Settlement itself was not presented until December, 23, 2013. (Dkt. 185, Exh. 1).

---

1    pre-settlement discovery was inadequate to assess the proposed settlement.

2    Consumer Watchdog counsel were actively involved during that period, and

3    directly engaged in work which was assigned and coordinated by Liaison Counsel.

4         Unlike most other Plaintiffs' counsel (most of whom are located elsewhere),

5    Consumer Watchdog's Los Angeles-based lawyers attended every status

6    conference during this period. The Consumer Watchdog Legal Team took the lead

7    on matters that Liaison Counsel asked us, or agreed to allow us, to pursue. (*See,

8    e.g.*, Supp. Antonini Decl., ¶¶69, 79, 81). Our efforts were devoted to maximizing

9    the information available by which to judge the terms of the settlement – which

10   throughout this period consisted solely of a two-page term sheet. *Defendants did

11   not produce the actual settlement agreement until December 2013*, by which time

12   the confirmatory discovery had been completed.

13        Prior to and at the outset of this period, the Consumer Watchdog Legal

14   Team was also actively litigating the *Bird* case in Sacramento. As explained in our

15   Reply (at 6:9-7:3), under established law Consumer Watchdog counsel were

16   obligated and authorized to proceed with the state litigation. The time spent on the

17   tasks performed in that litigation was reasonable, and led directly to significant

18   discovery subsequently utilized in this litigation to judge the adequacy of the

19   settlement.

20        It was not until January 2014, when the Court requested the Non-Settling

21   Plaintiffs to present their positions on the settlement, that Consumer Watchdog

22   counsel first expressed serious reservations about the terms of the settlement in a

23   lengthy critique circulated to Liaison Counsel and other Non-Settling Plaintiffs on

24   January 22, 2014 and filed with the Court on January 30. (Dkt. 211-3). At that

25   time, Liaison Counsel and many other Non-Settling Plaintiffs expressed similar

26   concerns. (Dkt. 211). It bears emphasizing that Consumer Watchdog had already

27   been involved in the investigation and/or litigation of Hyundai's

28   misrepresentations for more than two years at this point.

From January through May 2014, Liaison Counsel negotiated improvements to the proposed settlement. The Tentative correctly points out that Consumer Watchdog counsel did not participate in those settlement discussions:[5] Liaison Counsel assumed that responsibility. During this period the Consumer Watchdog Legal Team mostly communicated with Liaison Counsel directly and via conference calls of Non-Settling Plaintiffs convened by Liaison Counsel; it also reviewed the two amendments to the Settlement. Two of the issues identified in the Consumer Watchdog Legal Team's January critique were addressed by those amendments: Defendants established an online claims process and eliminated the burdensome requirement that Class Members send an opt-out letter to both Settling Plaintiffs' and Defendants' counsel. (*Compare* Dkt. 211-3 at 9 *with* Dkt. 264-1). Many others were addressed subsequently. (Supp. Antonini Decl., ¶¶ 95, 98, 102; Dkt. 211-3).

In summary, from February 2013 through May 2014, the Consumer Watchdog Legal Team was in the *same party posture as all other Non-Settling Plaintiffs' counsel* – all of whom Defendants have agreed to compensate for their time. By requesting fees for our work during that time, which was reasonable, Consumer Watchdog counsel does not gainsay the contribution of any other Non-Settling Plaintiffs' counsel or Liaison Counsel.

Conversely, it seems unjust to retroactively differentiate or penalize the work of counsel for the *Krauth* and *Hasper* Plaintiffs because they chose to press for improvements rather than support the settlement as proposed.

## C. The Consumer Watchdog Legal Team's Criticisms of the Settlement Were Meritorious.

It was not until May 2014 – the date set for Opposition to the Motion for Preliminary Approval – that the *Krauth* and *Hasper* Plaintiffs formally stated their

[5] The 2012 negotiations between the Defendants and the Settling Parties were conducted without our knowledge or participation (or, as far as we know, the knowledge of any of the other plaintiffs' lawyers).

CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

6

opposition to the settlement agreement produced by the Defendants in December 2013.

The *Krauth* and *Hasper* Plaintiffs' opposition focused on the notice and claims process, which contained a number of judicial "red flags." (*Krauth/Hasper* Plaintiffs' Opposition to Motion for Preliminary Approval (Dkt. 236)). They contended that the short and long form notices and the printed claims forms, at a total of sixteen pages, were convoluted, prolix and likely to discourage participation in the settlement. Because all unclaimed money would remain in the coffers of the Defendants, they stood to gain from these flaws in the claims process. The Consumer Watchdog Legal Team also expressed concern that permitting Defendants to self-administer the claims process posed the same conflict of interest.

The Consumer Watchdog Legal Team urged the Court to reject the claims process in favor of requiring Hyundai and Kia to simply send their customers the money they were entitled to under the settlement.

While the Court did not agree with the proposal to dispense with the requirement of a claims process, that aspect of the critique was valid. In fact, the Court *explicitly recognized the problems* raised by the *Krauth* and *Hasper* Plaintiffs, but stated that it would attempt to address those problems through improvements to the ease and clarity of the notice and claims process, reserving the option of further action if the claims rate proved low (and it has). (*See* Supp. Antonini Decl., ¶ 98; Antonini Decl., ¶¶ 97, 99; Antonini Reply Decl., ¶ 20).

Through six rounds of line-by-line revisions, five briefs and five hearings, the Consumer Watchdog Legal Team *alone* pressed for further changes. No other plaintiffs' counsel made similar arguments or briefed these issues during this time period.[6] (Supp. Antonini Decl. ¶¶ 91-106; Antonini Decl., ¶¶ 94-103; Antonini

---

[6] During this period, the Consumer Watchdog Legal Team sometimes sent its detailed redlines to Liaison Counsel, and sometimes filed them with the Court, as

CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

7

Reply Decl., ¶¶ 14-18). The result was substantial improvements to the notice and claims process. By no means was this the easy route to take—hopefully it is apparent that the goal of this work was unwaveringly to improve the prospects that Class Members would be able to take advantage of the benefits provided by the Settlement.

### D. The Court Acknowledged and Often Explicitly Agreed with the Consumer Watchdog Legal Team's Concerns.

For nearly two years, the Court has repeatedly acknowledged and often embraced the suggestions and concerns of the Consumer Watchdog Legal Team on both substance and procedure. On many occasions, the Court would say in response to our advocacy, "I agree," "I appreciate that," and turn to the Settling Parties for their response. (*See, e.g.*, Supp. Antonini Decl. at ¶¶ 95, 98, Exhs. F, H, I, J, K, L).

While Consumer Watchdog counsel recognize that the Court is not inclined to provide full compensation for their efforts, when put in the context of the Court's prior statements it is impossible to ignore the fact that the Consumer Watchdog Legal Team has worked hard for the Class and made contributions throughout the litigation.

### E. The *Krauth/Hasper* Plaintiffs Must be Treated as Prevailing Parties for Purposes of this Motion.

Investigating the Defendants' misconduct and litigating against them in two forums for over two years is not the work of objectors. The Plaintiffs in *Krauth* and *Hasper* were *parties* throughout this MDL proceeding, even if they were "Non-Settling" Plaintiffs for most of it. (Louis Bird, named plaintiff in the California case, must also be considered a prevailing party under the catalyst theory, discussed below.)

---

directed by the Court. (Supp. Antonini Decl., ¶ 100). Liaison Counsel described his role during this period as a "conduit" between the Defendants and the Consumer Watchdog Legal Team. (Jul. 24, 2014 Hrg. Tr. at 23:13-18).

CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

8

As our Motion and Reply discuss in greater detail (Dkts. 371, pp. 10-15, and 420, pp. 15-17, respectively), the two California statutes operative here – the Consumers Legal Remedies Act (California Civil Code § 1750 et seq.) and California Code of Civil Procedure § 1021.5 ("CCP § 1021.5") – provide that Consumer Watchdog counsel for named plaintiffs are entitled to compensation as "successful" or "prevailing" parties. Under the CLRA, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140, 153 (2006). The CLRA instructs that prevailing parties "*shall*" be compensated. Cal. Civ. Code § 1780(e). CCP § 1021.5(a) states that fees should be awarded if a "significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons…"

The *Bird, Krauth* and *Hasper* Plaintiffs need only show they "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In such a case, "plaintiffs may receive fees for all hours reasonably spent litigating a case even if they do not prevail on every claim or legal theory." *Id.* at 1944 (Brennan, J., dissent) (concurring with the majority opinion to the extent that plaintiffs may receive such fees).

Here, the *Krauth* and *Hasper* Plaintiffs have prevailed on each of the claims set forth in their complaints. (Motion at 12-16; Reply at 15-17).

That the Defendants selected attorneys for *other* named plaintiffs to settle with does not transform the plaintiffs in *Krauth* and *Hasper* from parties to objectors, or from winners to losers. This is not a medieval "game of thrones" where whoever wins the crown earns the right to behead everyone else.

Requests for attorneys' fees from prevailing parties must be judged by whether the time spent was reasonable.

CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES; Case No. 2:13-ml-02424-GW-FFM

9

1    Three of the four cases cited in the Tentative address requests for

2  compensation by attorneys representing unnamed class members who filed

3  objections prior to the fairness hearing. *Rodriguez v. Disner*, 688 F.3d 645, 658

4  (9th Cir.2012); *In re Apple Inc. Sec. Litig.*, 2011 WL 1877988 (N.D. Cal. May 17,

5  2011); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002).

6    Respectfully, those cases do not apply to the instant situation, in which an

7  intervening settlement between defendants and other plaintiffs alters the expected

8  course of litigation, but named plaintiffs continue their advocacy to improve the

9  result.

10   ### F. Even Under the "Objector" Standard, the *Krauth/Hasper* Plaintiffs Are Entitled to Compensation.

11

12   Even if the Court were to treat the Plaintiffs in *Krauth* and *Hasper* as

13  objectors (it should not), Consumer Watchdog counsel's advocacy on their behalf,

14  detailed here, in the Motion (at 3-10) and Reply (at 3-15), still warrants

15  compensation under the "substantial benefit" standard typically applied to

16  objectors.

17   Finally, apart from the substantive improvements in the Settlement achieved

18  by the Consumer Watchdog Legal Team, its continuous efforts to protect the Class

19  by insisting that the Settling Parties disclose and justify the terms of their

20  Settlement constitutes a direct benefit to the Class in and of itself. This is

21  particularly true during a phase of litigation in which, courts frequently note, the

22  adversarial process may be absent. *See, e.g.*, *In re Bluetooth Headset Prods. Liab.*

23  *Litig. (Bluetooth),* 654 F.3d 935, 946 (9th Cir. 2011). Counsel for the Defendants

24  have acknowledged this role, stating, for example, at the initial hearing on the

25  Motion for Preliminary Approval, "[w]e have had continued prodding from the

26  Consumer Watchdog parties." (Supp. Antonini Decl., Exh. J at 12:16-17). The

27  Ninth Circuit has held that such protective advocacy creates "an adversarial

28  context" and constitutes a "substantial contribution" for which compensation

---

**CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

should be awarded. *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).

## IV.   THE RECORD SUPPORTS THE CONCLUSION THAT THE CONSUMER WATCHDOG LEGAL TEAM'S WORK CATALYZED THIS SETTLEMENT.

The Tentative suggests that "it was the *Espinosa* action, rather than the *Bird* action, which served as the initial catalyst for recovery in the MDL." (Tentative at 3). Consumer Watchdog counsel respectfully suggest that a different conclusion is supportable.

First, there is nothing in the factual record to suggest that *Espinosa* alone led the Defendants to settle with the McCune Wright and Hagens Berman firms. By contrast, there is factual support for treating the efforts of the Consumer Watchdog Legal Team as the catalyst. It was Consumer Watchdog that communicated with the EPA, as this Court has previously recognized. (Dkt. 182 at 5). The *Espinosa* and *Brady* complaints incorporate and acknowledge Consumer Watchdog's communications. (Motion at fns. 5, and 6). Moreover, internal documents obtained from Hyundai through confirmatory discovery provide factual support for the conclusion that the *Bird* litigation catalyzed the Defendants' subsequent actions. (Motion at 4:1-7; Antonini Decl. ¶¶ 28-30; Reply at 4:1-5:4; Antonini Reply Decl. ¶ 4).

Both *Bird* and *Espinosa* were being aggressively litigated prior to the EPA announcement.  That the Defendants chose to approach the McCune Wright and Hagens Berman firms for a settlement does not *ipso facto* establish a factual basis to conclude that those firms catalyzed the settlement. Indeed, it could be equally speculated that it was the prospect of litigating a national class action against the Consumer Watchdog Legal Team, which had proven itself a highly determined and skilled adversary in state court, that catalyzed the Defendants to seek out other counsel. Ultimately, given the factual record, there is at least as much support for the proposition that the Consumer Watchdog Legal Team's efforts catalyzed the

1   EPA's action, the Defendants' response to the EPA (the Voluntary Program), and

2   subsequently this Settlement.[7]

3       Second, as a matter of law, compensation under the catalyst theory does not

4   depend on being the first to file or one of the firms that negotiated the proposed

5   settlement. *Bird* meets the catalyst criteria: "(1) the lawsuit was a catalyst

6   motivating the defendants to provide the primary relief sought; (2) [] the lawsuit

7   had merit and achieved its catalytic effect by threat of victory, not by dint of

8   nuisance and threat of expense ... and, (3) [] the plaintiffs reasonably attempted to

9   settle the litigation prior to filing the lawsuit." *Tipton–Whittingham v. City of L.A.,*

10  34 Cal. 4th 604, 608 (2004). (Motion at 13-14; Reply at 9-10).

11      Finally, even if this Court were to select *Espinosa* as the catalyst here, "a

12  trial court may, in its discretion, determine that time reasonably expended on an

13  action includes time spent on other separate but closely related court proceedings."

14  *First Nat. Ins. Co. of Am. v. MBA Const.*, 2005 WL 3406336, at *5 (E.D. Cal. Dec.

15  12, 2005) (awarding fees for related state court case). (Reply at 8).

16  **V.   THE CONSUMER WATCHDOG LEGAL TEAM PROPERLY**
17  **DEPLOYED THE RESOURCES REASONABLY REQUIRED AT**
    **ALL TIMES DURING THE LITIGATION.**

18      The Court asked for more information as to  "why Consumer Watchdog

19  required the assistance of four additional law firms in order to pursue its claims in

20  these actions." (Tentative at 3). As noted, the answer lies in the chronology of

21  events, and circumstances unique to Consumer Watchdog counsel's role.

22      Consumer Watchdog attorneys recruited the team of lawyers it thought

23  necessary to professionally litigate the Defendants' misrepresentations *to trial*

24  against the powerhouse legal firms that Hyundai and Kia would field, beginning

25  _____

26  [7] Recall that the Court rejected a request for more detailed discovery of Defendants'
    communications concerning Consumer Watchdog that might have provided more
27  insight into this issue. (Supp. Antonini Decl., ¶ 80, Exh. I; Dkt. 182 at 7; Dkt. 201;
    July 24, 2014 Tentative Ruling at 7).
28

1    *nearly a year before the events giving rise to this MDL*. That litigation began in

2    state court and continued in a highly adversarial manner for months before (and

3    after) the first hearing in this MDL.

4    Once the litigation became national in scope, and Consumer Watchdog

5    counsel petitioned the MDL panel for this proceeding, it was clear more resources

6    would be necessary to properly litigate a federal case, especially given Hyundai's

7    aggressive posture in the state court case. *At that time, there was no indication that*

8    *Hyundai and Kia were in the process of negotiating a settlement* with other law

9    firms.

10   Even after the Settlement was announced in February 2013, Consumer

11   Watchdog counsel had both the right and the duty to continue to litigate in state

12   court until a definitive resolution in this forum was at hand, based on established

13   case law. (*See* Reply at 6:9–7:3).

14   Finally, the Court on many occasions noted that the Non-Settling Plaintiffs

15   had the right to assure themselves of the bona fides of the proposed settlement

16   before this forum. Working through Liaison Counsel, the Consumer Watchdog

17   Legal Team actively exercised that right (as did other Non-Settling Plaintiffs).

18   It is easy to suggest, in hindsight, that the *Krauth/Hasper* Plaintiffs did not

19   need to field the team of experienced and accomplished lawyers Consumer

20   Watchdog recruited back in 2012.  However, at that point, Consumer Watchdog

21   was readying itself for protracted adversarial litigation against a Defendant with

22   superior funding and much to lose.

23   Ultimately, the issue for the Court in this context is whether the time

24   actually expended was *reasonable*. As detailed in the Supplemental Declaration of

25   Laura Antonini and our other briefing, the Consumer Watchdog Legal Team

26   carefully apportioned the work to minimize duplication and limit the expenditure

27   of resources. An examination of the itemization of time spent on each litigation

28   event by Consumer Watchdog counsel shows that they were efficiently staffed.

1   • The Sacramento firm of Dreyer Babich Buccola Wood Campora, LLP

2   assumed day-to-day responsibility for the *Bird* litigation, but spent very little time

3   on the MDL.

4   • Individual attorneys from the firms of Cotchett, Pitre & McCarthy, LLP

5   and Cuneo Gilbert & LaDuca, LLP, and Consumer Watchdog, took the lead in

6   various events in the confirmatory discovery process in this MDL.

7   • Consumer Watchdog lawyers took the lead in addressing the deficiencies

8   in the Settlement.

9   • Consumer Watchdog's lawyers developed and executed the overall

10  strategy in consultation with our colleagues in the other firms.

11  ## VI.   THE REQUESTED HOURLY RATES ARE JUSTIFIED.

12      The Tentative requests more specific support for the hourly rates of the

13  "[o]ther firms that Consumer Watchdog engaged to assist in its litigation efforts....

14  The motion and attached declarations and exhibits do not include any numerical

15  comparison of these rates with those typically charged by similarly situated

16  attorneys." (Tentative at 3). Attached are supplemental declarations from three

17  firms that compare their hourly rates to those in the Pearl Declaration

18  accompanying the Motion (Dkt. 371-6, Exh. A) and provide further support for the

19  hourly rate.

20      Far be it for Consumer Watchdog to defend the hourly rates of corporate

21  lawyers in Southern California, but as the Court acknowledged (Mar. 19, 2015

22  Hrg. Tr. at 15:1-9), lawyers representing the pubic interest are entitled to rates

23  comparable to those of lawyers fielded by Defendants. The Motion and

24  accompanying declarations of Richard Pearl (Antonini Reply Decl., Exh. R) and

25  Laura Antonini (Antonini Reply Decl., ¶¶ 28-35) establish, based on detailed

26  comparisons to similarly situated attorneys, that the hourly rates of Consumer

27  Watchdog's lawyers are proper, including Mr. Rosenfield's. The evidence shows

28  that Mr. Rosenfield's hourly rate is comparable, or lower than, that of other

attorneys with equivalent experience, expertise and stature within the legal community. (*Id.*, ¶ 34). With 36 years of experience, not to mention a national reputation as a consumer advocate and the founder of one of the preeminent consumer advocacy non-profits in the country, the requested rate is supported. Indeed, Mr. Rosenfield's hourly rate was determined to be reasonable several months ago by Federal District Court Judge David O. Carter against a challenge by the Defendant in *Doe, et al. v. United Healthcare Insurance Company, et al.*, (Case No. SACV 13-0864 DOC(JPRx), (C.D. Cal. Oct. 15, 2014). (See Antonini Reply Decl., ¶ 33 and Exh. R; Pearl Decl., ¶ 10).

Defendants have not offered any countervailing data to rebut that provided in the Pearl Declaration. Nor have they disclosed the hourly rates of their own lawyers.[8]

The fact that other plaintiffs' counsel in this proceeding agreed to accept substantial reductions in the *amount* of fees to which they would otherwise be entitled does not "create" a new marketplace determination of the proper hourly rate for any other counsel.

The California rule is that "the requested rate should be awarded if in line with rates of reasonably comparable attorneys performing *reasonably comparable services*." (Richard M. Pearl, *California Attorney Fee Awards* (Third Ed.) ("Pearl Treatise"), § 9.104 [emphasis added]). This is not a situation where plaintiff's counsel is seeking rates for work that could be performed by paralegals. (*Id.* at § 9.110). Like the leading lawyers from the other firms, Mr. Rosenfield principally directed the litigation strategy; communicated with co-counsel, Liaison Counsel and counsel for other plaintiffs; edited drafts of important documents; and

---

[8] According to the Pearl Declaration, the Quinn Emanuel firm, lead trial counsel for Hyundai in this case, bills hourly rates for comparable attorneys that exceeded the rate requested by Mr. Rosenfield. (Antonini Reply Decl., ¶ 34 and Exh. R, Pearl Decl., ¶ 13). Mr. Rosenfield founded Consumer Watchdog in 1985, one year before the Quinn Emanuel firm opened for business.

appeared at hearings. (Supp. Antonini Decl., ¶¶ 54, 57, 61, 62, 64-70, 73, 79-82, 93, 95, 98, 101; Antonini Reply Decl., ¶¶ 12, 13, 32).

It is true that settling counsel uniquely bear responsibility for tasks such as settlement negotiations and preparing the required paperwork for this Court's review. However, their responsibility for obtaining the discovery required to justify the Settlement was shared here by Consumer Watchdog counsel and other Non-Settling Plaintiffs.

Moreover, fighting to improve the Settlement against a phalanx of settling defense and plaintiffs' lawyers vigorously defending the settlement should be considered equally challenging. *It certainly has proved to be far riskier.*

Once an attorney's hourly rate has been justified through comparability analysis, and provided that counsel is performing tasks commensurate with his skill and expertise, there is no basis to set different hourly rates for comparable attorneys depending upon whether the attorney is representing a settling versus non-settling party.

## VII.   REVISED AMOUNT OF REQUEST.

The Court has requested that Consumer Watchdog Legal Team submit a "more reasonable request for attorneys' fees that addresses the Court's concerns and furthermore is in line with the requests from other non-settling plaintiffs' counsel in this case." (Tentative at 4).

The process of allocating the time spent to discrete "litigation events" as requested by the Court reduced the overall lodestar by approximately 634.55 hours, with a lodestar value of $342,280.00. The revised total lodestar is $2,447,242.50.

In response to the Court's directive, Consumer Watchdog counsel is prepared to further reduce the revised lodestar by $1,497,242.50 to $950,000.  This represents an approximately 66% reduction to the original request in the Motion.

The following table summarizes the litigation events for which the Consumer Watchdog Legal Team seeks compensation:

| **Litigation Event** | **Hours** | **Lodestar** |
|---|---|---|
| Research, Drafting and Filing the *Bird* Complaint | 281.45 | $129,506.25 |
| *Bird* Discovery Requests and Motions | 443.05 | $222,093.75 |
| *Bird* Opp. to Hyundai's Demurrer to Complaint | 81.4 | $35,902.50 |
| Responding to Consumers (Jul. – Nov., 2012) | 7.1 | $2,777.50 |
| *Bird* First Amended Complaint | 43.15 | $19,165.00 |
| *Bird* Oppositions to Hyundai's Motions to Stay | 96.9 | $52,702.50 |
| *Bird* Statements and Joint Stipulations Regarding the Status of the MDL | 94.95 | $48,157.00 |
| Communications with Plaintiff in *Bird* | 5.8 | $1,842.50 |
| Research, Drafting and Filing the *Krauth* Complaint | 102.4 | $57,781.25 |
| MDL Petition | 440.1 | $233,484.00 |
| Research, Drafting and Filing the *Hasper* Complaint | 371.3 | $187,969.25 |
| February, 2013 MDL Hearings | 87.85 | $59,348.75 |
| Obtaining and Reviewing Pre-Settlement Discovery | 303 | $180,521.25 |
| Revising and Drafting Document Requests | 105.3 | $65,981.25 |
| Reviewing and Assessing Defendants' Document Productions and Ensuring Non-Settling Plaintiffs' Participation in Interviews | 299.7 | $190,342.50 |
| Preparing for and Participating in Hyundai and Kia Witness Interviews | 381.35 | $193,258.75 |
| Moving to Compel Document Requests and Privilege Log | 224.35 | $125,893.75 |
| Initial Settlement Analysis and Improvements | 446 | $234,807.25 |
| Opposition to Motion for Preliminary Approval | 353.6 | $225,267.50 |
| Response to Settling Parties' Supplemental Brief in Support of Preliminary Approval | 171.55 | $102,290.00 |
| Further Notice and Claim and Settlement Improvements | 121.25 | $61,488.75 |
| Analyzing Claims Rate | 25.25 | $9,913.75 |
| Communications with Plaintiffs in *Krauth* and *Hasper* | 8.9 | $3,700.00 |
| Responding to Consumers (Nov. 2012 – Dec. 2014) | 7.7 | $3,037.50 |
| TOTAL | 4,503.4 | $2,447,242.50 |
| **REVISED REQUEST** | | **$950,000** |

1   We believe the revised amount of $950,000 is in line with the metrics
2   articulated by the Court. It compares favorably to other compensation requests the
3   Defendants have agreed to pay:

4       • The proposed amount is 34.05% of the Consumer Watchdog Legal Team's
5   lodestar requested in the original Motion. That is *much lower* than the average
6   percentage the Court approved for all firms in this proceeding (45.37%).

7       • Other Non-Settling firms that were actively involved in the confirmatory
8   discovery phase of this MDL – like Consumer Watchdog counsel – were
9   compensated at a higher rate. Consumer Watchdog Legal Team was one of the five
10  sets of firms that interviewed the witnesses provided by Defendants.  Consumer
11  Watchdog counsel were among a larger number of firms that assisted in drafting or
12  reviewing discovery. Defendants have agreed to pay these firms an average of
13  63.7% of their requested lodestar.

14      • Like the state *Bird* case, the McCune Wright firm was separately litigating
15  the *Espinosa* action prior to the EPA Announcement and this MDL. As noted
16  above, *Espinosa* has no greater claim to being a catalyst to the EPA action and the
17  settlement than *Bird.* However, the McCune Wright firm is seeking a multiplier of
18  3, while the Consumer Watchdog Legal Team now submits a request for a negative
19  multiplier.

20      • Consumer Watchdog counsel alone challenged the adequacy of the notice
21  and claims process from May through October 2014.

22  **VIII.   EXPENSES AND INCENTIVE AWARDS**

23      The Consumer Watchdog Legal Team has requested $31,329.97 in fully
24  itemized litigation expenses. (Motion at 22-23). The Court did not address the
25  Consumer Watchdog Legal Team's requested expenses in the Tentative. The
26  Tentative provided $1,250 incentive awards for the fourteen named plaintiffs
27  represented by the Consumer Watchdog Legal Team in *Bird, Krauth,* and *Hasper.*
28  (Tentative at 4).

1

## IX. <u>CONCLUSION</u>

2

Over the course of this proceeding, the Court has noted that it is "notoriously

3

stingy" when it comes to fee motions. The Consumer Watchdog Legal Team was

4

prepared to take that risk in order to advance the important rights of consumers at

5

stake here. The record demonstrates that our efforts were reasonable, and

6

materially improved the settlement for Hyundai and Kia customers. Lawyers who

7

are willing to fight harder for the Class should be rewarded, not penalized.

8

9

Respectfully submitted,

10

Dated:  April 20, 2015          **CONSUMER WATCHDOG**

11

12

By:   */s/ Laura Antonini*
        Laura Antonini

13

14

Harvey Rosenfield
Pamela Pressley

15

2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405

16

Tel: (310) 392-0522

17

Fax: (310) 392-8874

18

Jonathan W. Cuneo

19

William H. Anderson
**CUNEO GILBERT & LADUCA, LLP**

20

507 C Street, N.E.

21

Washington, DC 20002
Tel: (202) 789-3960

22

Fax: (202) 789-1813

23

24

Niall P. McCarthy
Anne Marie Murphy

25

Eric J. Buescher
**COTCHETT, PITRE & McCARTHY, LLP**

26

840 Malcolm Road

27

Burlingame, CA 94010
Tel: (650) 697-6000

28

Fax: (650) 692-3606

---

**CORRECTED SUPP. MEMO OF P&A ISO *KRAUTH/HASPER* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES;** Case No. 2:13-ml-02424-GW-FFM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Craig C. Sheffer
Steve M. Campora
Robert A. Buccola
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
Fax: (916) 379-3599

*Attorneys for the Krauth and Hasper, et al. Plaintiffs*

---