Case 2:13-ml-02424-GW-FFM   Document 467   Filed 04/27/15   Page 1 of 17   Page ID #:10900

```
HARVEY ROSENFIELD (SBN 123082)
harvey@consumerwatchdog.org
PAMELA PRESSLEY (SBN 180362)
pam@consumerwatchdog.org
LAURA ANTONINI (SBN 271658)
laura@consumerwatchdog.org
```
**CONSUMER WATCHDOG**
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522 / Fax: (310) 392-8874

JONATHAN W. CUNEO
jonc@cuneolaw.com
WILLIAM ANDERSON
wanderson@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, NE
Washington, DC 20002
Tel: (202) 789-3960 / Fax: (202) 789-1813

STEVE M. CAMPORA (SBN 110909)
scampora@dbbwlaw.com
ROBERT A. BUCCOLA (SBN 112880)
rbuccola@dbbwlaw.com
CRAIG C. SHEFFER (SBN 131243)
csheffer@dbbwlaw.com
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500 / Fax: (916) 379-3599

NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000 / Fax: (650) 692-3606

*Attorneys for the Krauth, Hasper, et al., and Bird Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: HYUNDAI AND KIA FUEL ECONOMY LITIGATION | Case No. 2:13-ml-02424-GW-FFM<br><br>***KRAUTH/HASPER/BIRD* PLAINTIFFS' CONDITIONAL OPPOSITION TO JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:      June 11, 2015<br>Time:     9:30 a.m.<br>Judge:    Hon. George H. Wu<br>Courtroom: 10 |

***KRAUTH/HASPER/BIRD* PLAINTIFFS' CONDITIONAL OPP. TO MOTION FOR FINAL APPROVAL:** Case No. 2:13-ml-02424-GW-FFM

# TABLE OF CONTENTS

I. INTRODUCTION. ............................................................................................ 1

II. 'RED FLAGS' PREVIOUSLY IDENTIFIED BY THE *KRAUTH/HASPER* PLAINTIFFS . ................................................................................................... 2

III. THE CLAIMS RATE IS LOW. ........................................................................ 5

   A. The Lump Sum Payment Claims Rate is Less than 20%. ............................. 5

   B. Participation in the Voluntary Program is Not Part of the Settlement Claims Rate. ................................................................................................................ 6

   C. Under these Circumstances, a Claims Rate of Less than 20% is Low. .......... 8

IV. AN ESTIMATED 300,000 CLASS MEMBERS ARE NOT RECEIVING A BENEFIT OF ANY KIND EITHER UNDER THE SETTLEMENT OR THE VOLUNTARY PROGRAM. ............................................................................. 9

V. MEASURES MUST BE TAKEN TO INCREASE THE CLAIMS RATE. ..... 10

   A. Defendants Should Automatically Send Checks to Class Members who Have Not Submitted a Claim. ...................................................................... 11

   B. Alternatively, Defendants Should Send Supplemental Notice to Class Members. ..................................................................................................... 13

VI. CONCLUSION. ............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ............................................. 6, 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................... 3

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ......................... 11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................. 3

**Statutes**

Federal Rules of Civil Procedure

Rule 23(e) ................................................................................................................... 3

**Other Authorities**

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) ......... 13

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist
    and Plain Language Guide (2010) ...................................................................... 13

The Consumer Watchdog Legal Team submits this conditional Opposition to the Motion for Final Approval on behalf of the *Krauth/Hasper* Plaintiffs and Plaintiff/Objector Louis Bird in *Bird v. Hyundai Motor America,* Sacramento Superior Court Case No. 34-2012-00127249.

## I. INTRODUCTION.

Prior to granting preliminary approval of the Settlement, the Court ordered Settling Parties to utilize email notice and make a number of improvements to the language and format of the notice and claim forms in response to the *Krauth/Hasper* Plaintiffs' concerns that complicated documents and a lengthy claims process would result in limited Class Member participation. Those crucial improvements have undoubtedly resulted in more Class Members receiving compensation.

The Court has, however, consistently stated that it may "find a problem with fairness" (Jun. 26, 2014 Hrg. Tr. at 60:10) if the Settlement's claims rate turned out to be low, and would require Settling Parties to take measures to increase participation.

In fact, over four months after Notice began going out, the claims rate is less than 20%. As the *Krauth/Hasper* Plaintiffs discussed in their Opposition to Preliminary Approval, the low claims rate, combined with the provision permitting Defendants to retain unclaimed funds, provides an unjustified windfall for Hyundai and Kia.

A simple way to rectify the low claims rate would be to automatically send Lump Sum Payments to Class Members via check. This would be especially appropriate for those who are entitled to the additional "4x40" compensation, but have unaccountably not filed the required claim. Alternatively, sending supplemental notice to Class Members who have not made a claim and extending the claims deadline (presently July 6, 2015) for three extra months would also

increase participation.

Pursuant to the Court's direction at the March 19, 2015 hearing (Mar. 19, 2015 Hrg. Tr. at 52:18 - 53:2), counsel for the *Krauth/Hasper* Plaintiffs met and conferred by phone and through written correspondence with counsel for Defendants, Settling Plaintiffs, and Liaison Counsel to discuss the claims rate and potential remedial measures. Defendants' counsel and counsel for *Krauth/Hasper/Bird* Plaintiffs have a mediation scheduled. For this reason, the parties agreed to extend the deadline for oppositions and replies to the Motion for Final Approval and filed a Joint Stipulation Modifying Briefing Schedule Re Motion for Final Approval on April 26, 2015. (Dkt. 466). The Court has not granted the extension at the time of this filing.

## II. 'RED FLAGS' PREVIOUSLY IDENTIFIED BY THE *KRAUTH/HASPER* PLAINTIFFS.

A detailed description of the history of this litigation between January, 2012 and May 30, 2014 is set forth in the Opposition to Preliminary Approval. (Exh. 2 at 2:12 -11:13).[1]

Courts are increasingly sensitive to protecting the rights of absent class members, to whom the court owes a duty to carefully scrutinize proposed settlements to ensure that they are "fundamentally fair, adequate, and reasonable." Fed. R. of Civ. P. 23(e). *See also Hanlon v. Chrysler Corp.*, 150

---

[1] The *Krauth/Hasper* Plaintiffs incorporate by reference their briefs and comments to the Court and Settling Parties regarding the Settlement, including the *Krauth/Hasper* Plaintiffs' January, 2014 Memo re Proposed Settlement (Dkt. 211-3); *Krauth/Hasper* Plaintiffs' Opposition to *Brady/Hunter/Espinosa* Plaintiffs' Motion for Preliminary Approval ("Opposition to Preliminary Approval") (Dkt. 236); *Krauth/Hasper* Plaintiffs' Response to Settling Parties' Supplemental Brief in Support of Preliminary Approval of Class Settlement and Certification of Settlement Class (Dkt. 277); *Krauth/Hasper* Plaintiffs' Statement Re Settling Parties' Submission of Proposed Final Notice and Claim Documents (Dkt. 311);

F.3d 1011, 1026 (9th Cir. 1998) (citations omitted); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

There remain a number of "red flags" that render the present Settlement, though improved, unfair, unreasonable, and inadequate under the Federal Rules of Civil Procedure, case law and the best practices for class action settlements as promulgated by recognized authorities (*See* Exh. 2 at 11:13 – 23:18).

The *Krauth/Hasper* Plaintiffs filed an Opposition to Preliminary Approval on May 30, 2014, arguing that the Court should reject preliminary approval because the class notices (post card and long form) and the claims form were highly confusing, the claims process was cumbersome, and unnecessary in any event. Due to the inadequacies of the notice, they contended, it was likely that relatively few Class Members would be able to avail themselves of the relief ostensibly provided by the Settlement. Moreover, the Opposition to Preliminary Approval argued, Hyundai and Kia had structured the Settlement in this manner to improperly escape accountability for their misconduct, as the Settlement permitted Hyundai and Kia to keep all unclaimed and expired funds (the constructive "reverter"). The Opposition to Preliminary Approval also argued it was improper for Hyundai and Kia to administer the Settlement.

To cure these defects, the *Krauth/Hasper* Plaintiffs requested that the Court deny the Motion for Preliminary Approval unless Settling Parties: (1) eliminated the requirement of a claim form, (2) eliminated the constructive "reverter," (3) appointed a neutral third party to administer the Settlement rather than Defendants, (4) replaced the postcard notice with a letter in larger font containing clear and prominent information, (5) revised the Long Form Notice to contain clear, prominent, and required information, (6) required Defendants to provide periodic reports on the claims rate. (Exh. 2 at 23:18 – 24:10). The Settling Parties made the change suggested at (4); the Court ordered the changes suggested at (5) and (6).

The Court agreed with the *Krauth/Hasper* Plaintiffs that the notice and claim forms and process needed improvement and after six rounds of revisions, five briefs, and five hearings, the format and language of the notice and claim documents was greatly improved so that Class Members would better understand what they are entitled to under the Settlement and more Class Members would receive notice of the Settlement.

Though the Court rejected the *Krauth/Hasper* Plaintiffs' challenges to the requirement of a claim form, the constructive "reverter," and Hyundai and Kia's role as the claims administrator, the Court promised to monitor the claims process and if the claims rate was low, take further action, for example to require further notice, and extend the claims period accordingly.[2]

---

[2] *See, e.g.*, Jun. 26, 2014 Hrg. Tr. at 60:5-11 ("if I find that there has not been a significant participation [in the settlement] … I may find a problem of fairness or a problem of the settlement because of the lack of participation"); Jul. 24, 2014 Hrg. Tr. at 9:5-21 ("What I am proposing is a notice, notice set dates such that, obviously, we wouldn't tell class members that we are like bifurcating the notice but something that initially the notices go out, and there would be a certain period of time. At the end of that period of time, we can get a percentage count of the responses because in a situation of this sort, it would seem to me that everybody who gets one of these notices, it is in their best interest to respond in some way, shape or form because, you know, it is basically money to them. So if there is not a response, it would seem to me -- and if there is a lot of nonresponses, then it seems to me there may a question as to the efficacy of the notice and the efficacy of the process"); Jul. 24, 2104 Tentative Ruling at 4, fn. 1 ("this Court is inclined to require the period for class members' responses to be set such that at the end of a preliminary period a calculation of the percentage of eligible members who responded could be made – so that, if the turn-out was particularly low, there could be a secondary notification to the then non-responding class members"); Aug. 21, 2014 Hrg. Tr. at 21:18-21 ("if, in fact, that I find that the responses is not what I consider to be up to snuff, I will extend the deadline period").

### III. THE CLAIMS RATE IS LOW.

**A. The Lump Sum Payment Claims Rate is Less than 20%.**

The principle benefit of the Settlement is the Lump Sum Payment option (for purposes of discussing the claims rate, we consider the Lump Sum Payment claims rate as including claims for the cash card, dealer service card and new card certificate).

According to the claims data provided by Defendants,[3] an estimated 14.1% of Hyundai Class Members[4] and 18% of Kia Class Members[5] have filed a claim for

---

[3] All figures discussed herein are based on the public, unredacted information in the Joint Motion for Final Approval of Class Settlement ("Joint Motion") (Dkt. 444) and the claim reports attached to declarations filed in support of the Joint Motion. (Zielomski Decl., Exh. A; King Decl., Exh. A). Those reports contain data that is current as of March 26, 2015. Defendants have provided Consumer Watchdog counsel with an updated claims report that is current as of March 30, 2015. For the purpose of this filing, we refer to the publicly available data.

[4] This estimate is based on Hyundai's data for completed and pending claims. Of the 84,397 completed Hyundai claims, 61,129 chose the Lump Sum Payment option. The claims rate for completed Lump Sum Payments is thus 10.7% (61,129/572,278 Notices sent). We estimate that even if all the pending claims are completed, this value will only reach 14.1**%** (72.4% of the completed claims are for the Lump Sum Payment; 72.4% of 26,865 pending claims = 19,450; 61,129 completed Lump Sum Payment claims + 19,450 estimated pending Lump Sum Payment claims = 80,579; 80,579/572,278 = 14.1%).

[5] This estimate is based on Kia's data for completed and pending claims. Of the 55,674 completed Kia claims, 42,314 chose the Lump Sum Payment option. The claims rate for completed Lump Sum Payments is thus 14.3% (42,314/295,789 Notices sent). We estimate that even if all the pending claims are completed, this value will only reach 18% (76% of the completed claims are for the Lump Sum Payment; 76% of 14,767 pending claims = 11,223; 42,314 completed Lump Sum Payment claims + 11,223 estimated pending Lump Sum Payment claims = 53,537; 53,537/295,789 = 18%).

the Lump Sum Payment.  Thus, an estimated 89% (733,951 of 823,067) of Class Members have not submitted a claim for a Lump Sum Payment.[6]

### B. Participation in the Voluntary Program is Not Part of the Settlement Claims Rate.

While the *Krauth/Hasper* Plaintiffs contend that the only benefits created by the Settlement are those actually created by the Settlement, Hyundai and Kia now contend that for purposes of assessing the claims rate under the Settlement, those customers who took advantage of the unilateral and Voluntary Program, announced by Defendants on November 2, 2012 (prior to this MDL and the filing of most of the related cases), should be considered to have made a claim under the Settlement. In other words, Defendants argue that those affected customers who enrolled in the Voluntary Program before Notice of the Settlement went out should be treated as claimants under the Settlement. According to Hyundai and Kia, therefore, the participation rates are a "remarkable" 63.3% (for Hyundai) and 50.0% (for Kia). (Joint Motion at 12:1 – 13:18, 13:15-18).

The Settling Parties cannot include participation in the Voluntary Program as Settlement participation. *See Eubank v. Pella Corp.*, 753 F.3d 718, 725-727 (7th Cir. 2014) (calling parties' estimate of the value of a class action settlement "an exaggeration" where the estimate "include[d] the value of [] warranty extensions even though they were a contractual entitlement that preceded the settlement rather than being conferred by it and thus were not part of the value created by the settlement").

The Voluntary Program not only pre-dated the Settlement, it was explicitly identified by the Hagens Berman firm, counsel for the *Hunter* and *Brady* Plaintiffs, as inadequate, necessitating the lawsuit they filed. (*See Brady et al. v. Hyundai Motor America et al.,* ¶¶6-13 (C.D. Cal. Nov. 6, 2012) (Dkt. 1)). Accordingly,

---

[6] This number reflects the completed claims and estimated pending claims (*see* fns 4 and 5) for the Lump Sum Payment.

Class Members who enrolled in the Voluntary Program prior to Notice going out, as well as Class Members who enrolled in the Voluntary Program through the Settlement website (or paper claim form) for the first time, should not be considered participants in the Settlement since the Settlement did not create the benefit they are presently receiving. Indeed while the Lump Sum Payments are contingent upon final approval of the Settlement, Voluntary Program payments are not.

Moreover, the fact that Class Members can participate in the Voluntary Program (even those Class Members who signed up after the original December 31, 2013 deadline) without releasing their rights under the Settlement is proof that the Voluntary Program is distinct from the Settlement.[7]

Further, Hyundai and Kia's current position conflicts with statements they have previously made.[8] And while the Settling Plaintiffs are also sponsoring the

---

[7] Class Members who were registered for the Voluntary Program prior to Notice going out are told that if they do nothing they will remain in the Voluntary Program. (*See, e.g.,* FAQ, https://www.hyundaimpgclassSettlement.com/faq (last visited Apr. 24, 2015) ("If you are already participating in the Lifetime Reimbursement Program, you do not need to take any further action to remain in the program")). And Class Members had the opportunity to opt out of the Settlement by March 5, 2015 – without releasing their rights – and still remain in or register for the Voluntary Program. (*See* Dkt. No 342-1 at 3 ("If you are already enrolled in or register for the Lifetime Reimbursement Program by June 5, 2015, you will be able to remain in the program and continue to receive its benefits even if you excluded yourself from the Settlement"); FAQ, https://www.hyundaimpgclassSettlement.com/faq (last visited Apr. 24, 2015) ("If you do exclude yourself, you can keep any reimbursement you already received and you may continue receiving reimbursements pursuant to the Lifetime Reimbursement Program in the future, but you will not have the right to share in the benefits offered in the Settlement")).

[8] *See* Opposition to *Espinosa* Plaintiffs' Motion for Fees, Expenses and Incentive Awards at 1:13-18 ("In addition to overstating their influence on the Settlement, the *Espinosa* plaintiffs mischaracterize the value of the Settlement traceable to the litigation. Although benefits available to Class Members approach $400 million,

*KRAUTH/HASPER/BIRD* **PLAINTIFFS' CONDITIONAL OPP. TO MOTION FOR FINAL APPROVAL:** Case No. 2:13-ml-02424-GW-FFM        7

Motion for Final Approval, in a filing made concurrently with the Joint Motion, Settling Plaintiffs do not include Voluntary Program participation prior to December 31, 2013 in their assessment of the Settlement.[9]

Even if Class Members who enrolled in the Voluntary Program after they received the Settlement Notice are included in the Settlement claims rate, the result is still that less than one in five Class Members are receiving compensation from claims submitted through the Settlement process. (For example, including the estimated 3,318 Hyundai and 3,478 Kia post-Notice enrollments in the Voluntary Program would increase the overall claims rate by less than 2%.)[10]

**C. Under these Circumstances, a Claims Rate of Less than 20% is Low.**

Settling Parties argue that the claims rate is high here, even without bootstrapping participation in the Voluntary Program prior to December 31, 2013 to the Settlement. They claim that a response rate of less than 20% "shows strong support for the Settlement" since "[c]ase law and academic literature acknowledge that response rates in class actions are often low[.]" (Joint Motion at 12:17 – 20; Mullenix Decl., ¶28 ("Based on publicly available information relating to participation in claims-made settlements, the claim response of 18.3% for the

---

the bulk of that figure emanates from the voluntary reimbursement program Hyundai and Kia announced two months before the *Espinosa* plaintiffs participated in the first Settlement mediation. The Settlement provides a modest supplement to this value") (Dkt. 398).

[9] Settling Plaintiffs' "valuation accounts for lump-sum payments actually claimed by class members, new car rebates and service credits actually claimed by class members, and first claims under the Lifetime Reimbursement Program that resulted from the extension of the program deadline [post-December 31, 2013]." Separate Memorandum of Settling Plaintiffs in Support of Final Approval at 4:3-10 (Dkt. 441).  Settling Plaintiffs state, "The two [Hyundai and Kia] valuations total $97 million." *Id.* at 5:7; *see also id.* at 4:18-22 (redacted material), 5:4-7 (redacted material).

[10] This estimate is based on Hyundai's and Kia's data for completed and pending claims.

Hyundai class and 22.1% for the Kia class currently is well within an expected range of claims participation for such settlements").

By any standard, and certainly judged by the goal of class actions (to compensate all class members) and the best practices articulated by commentators, that less than one in five Class Members are getting the benefit of the Settlement, and Defendants are paying out less than 20% of the $392 million value that they originally assigned to this Settlement on December 23, 2013, is inadequate. (*See, e.g.*, Dkt. 185-2 at 121-127).

That class action participation rates are typically low – or that there are few opt-outs -- does not support the Settling Parties' conclusion that Class Members strongly support this Settlement. *See Eubank v. Pella Corp.*, 753 F.3d at 728 ("Virtually no one who receives notice that he is a member of a class in a class action suit opts out. He doesn't know what he could do as an opt-out. He's unlikely to hire a lawyer to litigate … a low opt-out rate is no evidence that a class action settlement was 'fair' to the members of the class"). Regardless of whether claims rates in class actions are historically low, the Court should ensure Class Members' interests are not being compromised by the structure of the Settlement and that their participation in its benefits are maximized.

### IV. AN ESTIMATED 300,000 CLASS MEMBERS ARE NOT RECEIVING A BENEFIT OF ANY KIND EITHER UNDER THE SETTLEMENT OR THE VOLUNTARY PROGRAM.

For purposes of a global assessment of compensation to Class Members either through the Settlement or the pre-existing Voluntary Program, combining the number of individuals filing claims for Settlement benefits and those participating in the Voluntary Program reveals that an estimated 301,546 Class Members did not receive any benefit whatsoever (as of March 26, 2015).[11] That

---

[11] Hyundai: An estimated 189,344 (33%) of Hyundai Class Members are not receiving any compensation. 21,190 (25.1%) of completed Hyundai claims were

constitutes nearly one-third of the Class. This is particularly problematic for a case in which Defendants have conceded liability and paid the largest Clean Air Act fine in United States history for what EPA Administrator Ms. Gina McCarthy said was "by far the most egregious case" of any mileage misstatement. David Shepardson, *Hyundai,Kia Agree to $360M MPG Settlement, Detroit News*, Detroit News (Nov. 3, 2014), http://www.detroitnews.com/story/business/autos/foreign/2014/11/03/hyundai-kia-agree-million-mpg-settlement/18404545/; *see* Press Release, EPA, United States Reaches Settlement with Hyundai and Kia in Historic Greenhouse Gas Enforcement Case (Nov. 3, 2014), http://yosemite.epa.gov/opa/admpress.nsf/596e17d7cac720848525781f0043629e/15519081fbf4002285257d8500477615.

### V. <u>MEASURES MUST BE TAKEN TO INCREASE THE CLAIMS RATE.</u>

The *Krauth/Hasper/Bird* Plaintiffs propose the following methods by which the Settling Parties can increase the claims rate.[12]

---

submitted by "new" claimants and an estimated 6,743 of the pending claims are from "new" claimants; 355,001 were enrolled in the Voluntary Program prior to the Notice going out. Thus, an estimated 189,344 Hyundai Class Members are not receiving compensation. (*See* Zielomski Decl., Exh. A). Kia: An estimated 112,202 (37.9%) of Kia Class Members are not receiving any compensation. 23,583 (42.4%) of completed Kia claims were submitted by "new" claimants and an estimated 6,261 of the pending claims are from "new" claimants; 153,743 were enrolled in the Voluntary Program prior to Notice going out. Thus, an estimated 112,202 are not receiving compensation. (*See* King Decl., Exh. A).

[12] The Court has not yet ruled on the application for attorneys' fees it ordered the *Krauth/Hasper* Plaintiffs to submit. In all Court filings, oral comments to the Court, and communications with Settling Parties related to the fee application, the *Krauth/Hasper* Plaintiffs have been clear that they intended to continue to seek improvements to the Settlement in if Class Member participation rates turned out to be low. (*Krauth/Hasper* Plaintiffs' Motion for Payment of Attorneys' Fees, Reimbursement of Expenses and Compensation to Named Plaintiffs ("Fee Motion") at 3:10-16 (Dkt. 371); Declaration of Laura Antonini in Support of Fee

### A. Defendants Should Automatically Send Checks to Class Members who Have Not Submitted a Claim.

At this point in the process, maximizing the Class's receipt of the Lump Sum Payment – the principal benefit of the Settlement – is critical. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (court opines that "it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund").

The low participation rate in this Settlement can and should be addressed with one simple fix: <u>automatically send the Lump Sum Payment to the approximately 300,000 Class Members who are not getting any compensation through the Voluntary Program or the Settlement in the amount of the applicable Lump Sum Payment.</u> The Settling Parties' justification for the claims-made nature of this Settlement has been that Class Members need the claim form in order to identify which compensation option they want under the Settlement. Once the claims deadline of July 6, 2015 passes, Class Members will no longer have *any* options. Thus, there is no reason these Class Members should not be automatically sent the Lump Sum Compensation to which they are entitled.

A review of the claims rate for the additional "4x40" compensation submitted by Hyundai's "4x40" Class Members highlights the need for further remedial measures here. Under the Settlement, "4x40" Class Members who register for or remain in the Voluntary Program must submit a claim to get the

---

Motion at ¶¶20, 22, 106; *Krauth/Hasper* Plaintiffs' Reply in Support of Fee Motion ("Reply in Support of Fee Motion") at 22:15 – 23:6 (Dkt. 420); Declaration of Laura Antonini in Support of Reply in Support of Fee Motion at ¶¶19-20 (Dkt. 420-1)); *see also* Corrected Supplemental Memorandum of Points and Authorities in Support of *Krauth/Hasper* Plaintiffs' Motion for Payment of Attorneys' Fees and Reimbursement of Expenses (Dkt. 461-1); Corrected Supplemental Declaration of Laura Antonini in Support of Fee Motion (Dkt. 461-2).

1  additional compensation. The extent to which "4x40" Class Members who were
2  previously enrolled in the Voluntary Program prior to Notice going out and who
3  did not file a claim for the additional "4x40" compensation strongly suggests that
4  the Notice failed to properly apprise them of their rights.[13] Thus, Defendants
5  should also automatically send the "4 x 40" compensation to Class Members who
6  were already enrolled in the Voluntary Program but who did not submit a claim in
7  response to the Settlement Notice, in the amount to which they are entitled.

   As stated in prior briefing, under the particular circumstances of this case, in which Defendants (1) have conceded uniform liability, (2) can identify Class Members from their records, and (3) have information to ascertain the Lump Sum Payment owed to each individual Class Member, there is *no reason* to deprive these Class Members of the Settlement benefits.

   This process would ensure that a maximum number of Class Members get the compensation to which they are entitled by virtue of this Settlement. "Whenever there is an option available to distribute fairly a class recovery without requiring a proof of claim by class members as a precondition to sharing in that recovery, the automatic distribution of the class recovery to eligible class members is the preferable option and is more consistent with the objectives of the class action rule." Alba Conte & Herbert Newberg, Newberg on Class Actions § 8:35, at 272 n.3 (4th ed. 2002); *see* Federal Judicial Center, Judges' Class Action Notice

---

[13] Based on the data provided by Defendants, an estimated 75% of Hyundai Class Members have "4x40" claims. (*See* Zielomski Decl., Exh. A). Thus, an estimated 266,251 of the 355,001 Hyundai Class Members enrolled in the Voluntary Program prior to Notice going out are entitled to the additional "4x40" compensation. Of the 355,001 Hyundai Class Members who enrolled in the Voluntary Program prior to Notice going out, only 63,207 have submitted (completed) claims. (Zielomski Decl., Exh. A). It is highly unlikely that the approximately 200,000 remaining eligible Class Members from this group understood they were entitled to the additional "4x40" compensation.

and Claims Process Checklist and Plain Language Guide at 6 (2010) ("In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members").

### B. Alternatively, Defendants Should Send Supplemental Notice to Class Members.

Alternatively, participation will undoubtedly increase if Defendants supplement the existing Notice that has already gone out with a reminder letter sent via US mail, and by email, to the Class Members who have not submitted a claim through the Settlement website. If supplemental notice is sent out, the claims deadline of July 6, 2015 would need to be extended by approximately three months to October 6, 2015, in order for people to have enough time to receive, review and respond to the notice. The Court has previously stated it would require supplemental notice under the circumstances presented here. (*See* fn. 2).

## VI. CONCLUSION.

Absent any further voluntary actions by the Defendants to increase participation in the Settlement, the *Krauth/Hasper/Bird* Plaintiffs ask the Court to intervene as it has in the past. For the reasons set forth above and in the *Krauth/Hasper/Bird* Plaintiffs' prior briefing and comments (attached hereto as Exhibits 1 through 7), the *Krauth/Hasper/Bird* Plaintiffs respectfully request the Court continue any ruling on the Joint Motion for Final Approval until the participation rate in the Settlement has increased.

Respectfully submitted,

Dated: April 27, 2015

**CONSUMER WATCHDOG**

By: */s/ Laura Antonini*
      Laura Antonini

---

*KRAUTH/HASPER/BIRD* **PLAINTIFFS' CONDITIONAL OPP. TO MOTION FOR FINAL APPROVAL:** Case No. 2:13-ml-02424-GW-FFM

13

Harvey Rosenfield
Pamela Pressley
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874

Jonathan W. Cuneo
William H. Anderson
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Niall P. McCarthy
Anne Marie Murphy
Eric J. Buescher
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 692-3606

Craig C. Sheffer
Steve M. Campora
Robert A. Buccola
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
Fax: (916) 379-3599

*Attorneys for the Krauth, Hasper, et al. and Bird Plaintiffs*